IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. _____ |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | JURY TRIAL DEMANDED, |
| | : | PURSUANT TO FED.R.CIV.P. 38 |
| Defendant. | : | |

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff in the above-styled action and hereby files her Complaint as follows:

1.

This case involves the sex trafficking of a child. Plaintiff J.G. was trafficked for sex as a minor at the United Inn & Suites hotel located at 4649 Memorial Drive, Decatur, Georgia 30032 (the "United Inn"). Plaintiff is identified only by her initials given the nature of the case and that she was a minor at the times pertinent to the events alleged herein.[1]

2.

Sex trafficking and other sex crimes are common occurrences at the United Inn. Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("Northbrook") chose to ignore, allow, condone, facilitate, support, and permit such activity at the United Inn. Northbrook is liable to Plaintiff for its actions and failures to act. The basis for Northbrook's liability is straightforward:

    a) The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by

---

[1] A Motion for Protective Order regarding Plaintiff's identity is being filed contemporaneously herewith.

receiving anything of value from participation in a venture which that person **knew or should have known** has engaged in an act in violation of" the TVPRA.  Northbrook knowingly benefited from participation in a venture which it knew or should have known engaged in an act in violation of the TVPRA because it (i) rented the rooms at the United Inn in which Plaintiff was sex trafficked, (ii) collected fees for rental of those rooms, and (iii) did so notwithstanding that it knew or should have known that Plaintiff was a victim of sex trafficking.   As such, Northbrook is liable to Plaintiff for her damages under the TVPRA.

b) United Inn negligently breached duties imposed by law, assumed by contract and behavior, and voluntarily undertaken. United Inn knew or should have known of the foreseeable risk of sex trafficking and other sex crimes at the United Inn and failed to act as similarly situated businesses would in like circumstances. As such, United Inn is liable to Plaintiff for her damages under Georgia common law.

## PARTIES, JURISDICTION, AND VENUE

3.

Plaintiff J.G. is a citizen of the United States of America and a resident of the State of Georgia.  She consents to the jurisdiction of this Court.  Though Plaintiff J.G. was a minor when she was trafficked, she is now an adult.

4.

Northbrook's principal office address is 4649 Memorial Drive, Decatur, Georgia 30032.  Northbrook's registered agent for service of process is Ashar M. Islam, 2737 Sheraton Drive, Macon, Georgia 31204, where Northbrook can be served.[2]

5.

Jurisdiction and venue are proper as to Northbrook and Northbrook was properly served with process in this action.

6.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, because Plaintiff asserts claims arising under 18 U.S.C. § 1595(a),

---

[2] Whenever reference is made in this Complaint to any action, inaction, or conduct of Northbrook, the allegation is that Northbrook engaged in the action, inaction, or conduct at issue by or through one or more of its officers, directors, agents, employees, or representatives who was engaged in the management, direction, control, or transaction of the ordinary business and affairs of Northbrook.

and pursuant to 28 U.S.C. § 1367, because Plaintiff's state law claims form part of the same case or controversy as her federal law claims.

7.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

**INTRODUCTION**

8.

Plaintiff J.G. was trafficked for sex as a minor at the United Inn in violation of 18 U.S.C. § 1591.

9.

At all times relevant hereto, Northbrook owned, operated, maintained, controlled, and managed the United Inn.

10.

At all times relevant hereto, Northbrook directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the United Inn, giving Northbrook specific and direct knowledge of crimes and sex trafficking at the hotel during the relevant period.

11.

Northbrook knew or should have known that Plaintiff was sex trafficked at the United Inn.  Sex trafficking is a well-documented and pervasive problem in hotels and motels.  During the period at issue, Northbrook knew or should have known common signs of sex trafficking as well as policies to prevent, identify, and deter sex trafficking at the United Inn, and furthermore, to ensure Northbrook was not profiting from sex trafficking, as required by federal law.  But Northbrook chose to profit from the sex trafficking ventures in which it participated, including the trafficking of Plaintiff, rather than to take reasonable and known steps to prevent, identify, and deter sex trafficking at the United Inn.  In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff.

12.

Under Georgia law, Northbrook had a duty to exercise ordinary care to keep United Inn's premises in a reasonably safe condition and not to expose business invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions.  Northbrook also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises.  Likewise, Northbrook had other duties described further herein, including the duty to train hotel personnel, supervise hotel

personnel, monitor the property, secure the property, remediate the property in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

13.

By encouraging others to enter United Inn's premises and to pay monies for the use of the premises, Northbrook made an implied representation that it had exercised reasonable care to make those premises safe for those coming upon the property, including the Plaintiff.

14.

Northbrook breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff (and other minors) at the United Inn in exchange for commercial gain and in total disregard of the rights of the Plaintiff, as well as others who were similarly exploited at the United Inn.

15.

Northbrook acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the United Inn to combat the well-known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the United Inn on the pervasiveness of sex trafficking in

the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the United Inn to prevent sex trafficking at the hotel, by allowing rooms at the United Inn to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the United Inn about which Northbrook had actual and/or constructive knowledge.  Through such actions and omissions, among others, the Defendant allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

A.    **Plaintiff's Minor Sex Trafficking at the United Inn**

16.

During the entire period Plaintiff was sex trafficked at the United Inn, she was a minor.

17.

Plaintiff was sex trafficked as a minor at the United Inn from 2018 to 2019, during which time she was an invitee of the United Inn.

18.

Minor sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act

who is under the age of 18. 18 U.S.C. § 1591(a)(1), *et seq.*  Minor sex trafficking also includes knowingly benefitting financially from participation in a venture, knowing or in reckless disregard, that the venture has committed one of the acts listed in paragraph 18 U.S.C. § 1591(a)(1).  *See* 18 U.S.C. § 1591(a)(2).

19.

Minor sex trafficking does *not* require evidence that the victim was subject to "force, fraud, or coercion."  18 U.S.C. § 1591(a)(1), *et seq.*

20.

Plaintiff was sex trafficked at the United Inn by multiple traffickers over 2018 and 2019.  Plaintiff's sex traffickers carried weapons and operated openly and brazenly on the hotel's premises, common areas, and approaches.

21.

At least some of Plaintiff's traffickers sold drugs out of the room/s in which Plaintiff was sex trafficked at the United Inn.  On many days, more than 10 buyers visited the room/s in which Plaintiff was sex trafficked at the United Inn—some were there to buy drugs and others there to buy sex with Plaintiff.

22.

During at least part of the time Plaintiff was sex trafficked at the United Inn, Plaintiff's traffickers also sex trafficked other women (and minors) out of the same

room/s in which Plaintiff was sex trafficked.  On some days, more than eight adult male visitors came to the room/s in which Plaintiff was trafficked to purchase sex.

23.

While she was trafficked for sex at the United Inn, Plaintiff exhibited numerous well-known and visible signs of a minor sex trafficking victim, including her age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, and soliciting male patrons.

Northbrook knew or should have known of these many signs, which Plaintiff displayed during her stay at the United Inn while she was in common areas and approaches to the property.

24.

During the period Plaintiff was sex trafficked at the United Inn, other women and minors were also sex trafficked at the United Inn.  Plaintiff believes some were trafficked by Plaintiff's traffickers and others by other traffickers.  Many such victims displayed the signs described in the foregoing paragraph.

25.

While Plaintiff was sex trafficked at the United Inn as a minor, dozens of adult men visited the room/s in which she was trafficked to purchase sex.  The adult men

arrived in view of the hotel's lobby, which had a large window facing the parking lot.  Northbrook knew or should have known that the large number of adult male visitors to the room was indicative of commercial sex activity, including minor sex trafficking.  Northbrook negligently failed to respond to the evidence it knew or should have known indicated minor sex trafficking, including, for example, by failing to control or monitor the frequent male visitors.

26.

Plaintiff's room/s at the United Inn contained condoms, drugs, weapons, and a large number of towels, sheets, and tissues.

27.

On more than one occasion at the United Inn, Northbrook employees, agents, and/or representatives entered the room/s in which Plaintiff was sex trafficked at the United Inn.  For example, housekeeping at the United Inn cleaned the room/s in which Plaintiff was trafficked.  Northbrook knew or should have known that the contents of Plaintiff's room/s at the United Inn were indicative of commercial sex activity, including minor sex trafficking.

28.

On other occasions at the United Inn, Plaintiff—a minor staying at the hotel for extended periods in the company of various adult men—asked Northbrook

employees, agents, and/or representatives (*e.g.*, housekeeping and/or front desk staff at the United Inn) for extra sheets, towels, and tissues.

29.

When Plaintiff interacted with United Inn staff, she often wore little clothing and stood in rooms replete with evidence of sex trafficking that had been reserved by sex traffickers and drug dealers.  Northbrook's employees, agents, and/or representatives, including its housekeeping staff, knew or should have known Plaintiff was a minor victim of sex trafficking at the hotel through its opportunities to observe Plaintiff and the rooms in which she was repeatedly victimized.

30.

Plaintiff was required to turn over money to her traffickers at the United Inn.

31.

Northbrook had ample opportunity to observe the age and appearance of Plaintiff at the United Inn. Plaintiff stayed at the United Inn for up to weeks at time. Throughout her stays at the United Inn, Plaintiff walked around the hotel premises, common areas, and approaches, even during periods when school was in session for children of Plaintiff's age.  Plaintiff often wore little clothing when she walked around the premises, common areas, and approaches and talked to different adult men.  Further, as described, Plaintiff talked to Northbrook employees, agents, and/or

representatives during her stays at the United Inn.

32.

Northbrook knew or should have known that the United Inn was utilized for sex trafficking and other crimes.  When Plaintiff was sex trafficked at the United Inn, she witnessed other minors and young women being trafficked for sex at the hotel.  As a result, a large number of buyers frequented the hotel each day to pay for commercial sex.

33.

Northbrook sells condoms behind the front counter of the hotel.  On information and belief, Northbrook employees, agents, and/or representatives sold condoms to sex traffickers, purchasers of commercial sex, and victims of trafficking.

34.

Plaintiff's traffickers and their associates interacted with Northbrook employees, agents, and/or representatives who accommodated the traffickers' requests and thereby facilitated and assisted Plaintiff's minor sex trafficking.

35.

On information and belief, Plaintiff's traffickers (or their associates) rented rooms in which Plaintiff was sex trafficked as a minor.

36.

Northbrook collected revenue from rental of the rooms in which Plaintiff was trafficked for sex.

37.

On information and belief, Plaintiff's traffickers (and their associates) had previously rented rooms and trafficked women for sex at the United Inn.  As such, Plaintiff's traffickers were familiar to Northbrook employees, agents, and/or representatives at the time they trafficked Plaintiff for sex at the United Inn.  Further, on information and belief, Northbrook reviewed hotel performance data, room occupancy data, and profitability data in connection with managing and/or operating the United Inn.

38.

On information and belief, at least one of Northbrook's employees, agents, and/or representatives who worked at the front desk at the United Inn bought drugs from at least one of Plaintiff's traffickers.

39.

On information and belief, Northbrook's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn by, among other things, acting as lookouts for Plaintiff's

traffickers and informing the traffickers of police activity at the hotel as well as warning Plaintiff's traffickers about guest complaints and high visitor traffic drawing unwanted attention.

40.

On information and belief, at least one of Plaintiff's traffickers paid Northbrook's employees, agents, and/or representatives to act as lookouts and notify the trafficker of police activity at the hotel, among other things.

41.

On information and belief, Northbrook turned a blind eye to safety and security issues at the United Inn & Suites when revenue was satisfactory, even when Defendant knew or should have known part of the profits were derived from sex trafficking ventures victimizing Plaintiff and other women and minors.

42.

At all relevant times, Northbrook received revenue from room rentals at the United Inn, including the rooms in which Plaintiff was trafficked.

43.

As described in the foregoing paragraphs, Northbrook knew or should have known that Plaintiff was a minor victim of sex trafficking who was being sex trafficked at the United Inn, over which Northbrook exercised control.  Northbrook

negligently failed to respond to the evidence described in the foregoing paragraphs showing Northbrook knew or should have known Plaintiff was a minor victim of sex trafficking.

**B.     Sex Trafficking and Other Crimes were Frequent and Foreseeable at the United Inn**

44.

Plaintiffs' traffickers chose to traffic Plaintiff at the United Inn because of the hotel's sordid reputation as a hub of sex trafficking and other sex crimes.

45.

Northbrook knew or should have known that the United Inn and its approaches were rife with crime, including minor sex trafficking, before, during, and after Plaintiff's sex trafficking.   Northbrook nonetheless permitted Plaintiff to be sex trafficked at the United Inn.

46.

Northbrook knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's minor sex trafficking at the United Inn. Specifically, and based on publicly available information and police reports, Northbrook knew or should have known of the following crimes, among others, occurring on United Inn's premises and approaches prior to Plaintiff's sex trafficking:

a.  In September 2011, a man smothered and then strangled a woman to death at the United Inn before having sex with her dead body over the course of two days at the hotel.[3]

b.  On August 7, 2012, a woman was arrested at the United Inn on a prostitution warrant.

c.  On May 30, 2012, a woman staying in room 320 at the United Inn reported that she was being harassed by written messages left on her door and phone calls requesting sexual acts in exchange for money at the hotel.

d.  On July 16, 2014, a woman was arrested for prostitution in room 326 of the United Inn.

e.  On July 23, 2014, a woman reported being raped by a man in room 239 of the United Inn when a man forcibly had sex with her and did not pay her afterwards.

f.  On August 12, 2015, a woman was arrested for prostitution at the United Inn after meeting two undercover police officers in the parking lot and walking to room 101 of the hotel.  The woman did not have a

---

[3] *Norman v. State*, Case No. S-15-A-1525, (Ga. S. Ct. Jan. 19, 2016).

key to the room and left the officers waiting at the room while she went back to the front desk to get a key to the room for the encounter.

g.  On August 26, 2015, two armed men attempted to sexually assault a woman, who they also robbed, in room 120 of the United Inn.

h.  On December 24, 2016, a woman staying in room number 40 at the United Inn reported she was sexually assaulted by a man staying in room 116.

i.  On June 3, 2017, a man was arrested after beating a woman in room 345 of the United Inn over monies owed for sexual favors.

j.  On June 20, 2017, police responded to a fight between a prostitute and her pimp in room 101 at the United Inn.  The pimp left this prostitute's room after the fight to go stay in another woman's room at the hotel.

k.  On July 20, 2017, the Metro Atlanta Child Exploitation Task Force conducted an operation "in reference [to] child and adult prostitution" at the United Inn.  Police arrested a woman for prostitution in room 132 of the United Inn, wherein a toddler was also in the room.

l.  In April 2018, a man was beaten to death standing in front of room 320 at the United Inn.

47.

Northbrook did not act to address or combat this gruesome history prior to Plaintiff's trafficking.  Indeed, Northbrook continued to allow, condone, and permit sex trafficking and other sex crimes at the hotel *after* Plaintiff was trafficked for sex at the United Inn.  Specifically, and based on publicly available information and police reports, Northbrook knew or should have known of the following sex crimes, arrests, and incidents, among others, occurring on United Inn's premises and approaches after Plaintiff was sex trafficked at the United Inn with another minor:

   a. On March 24, 2019, a man at the United Inn reported that a prostitute at the hotel had stolen his car.

   b. On April 8, 2019, a woman reported that she was raped in room 126 of the United Inn after witnessing a man get shot at the hotel.

   c. On October 22, 2019, two women and one man were arrested in room 118 of the United Inn for prostitution, pimping, and keeping a place of prostitution at the United Inn.

   d. On November 27, 2019 a woman reported that a man attempted to rape her in room 117 of the United Inn.

   e. On January 8, 2020, a woman was arrested for prostitution in room 141 of the United Inn.  This woman's sister was also staying at the United

Inn, in room 139.  Both rooms were registered to one man, who was trafficking several women.  The woman made several calls to this man from jail and discussed staying quiet, moving other victims to a different hotel, and recruiting other women while the woman was in jail. The man was then issued warrants for pimping and keeping a place of prostitution at the United Inn.

f.  On January 10, 2020, a man was arrested at the United Inn on a keeping a place of prostitution warrant.

g.  On February 10, 2020, a man reported he was sexually assaulted multiple times at the United Inn.[4]

48.

As further evidence that Northbrook allowed, condoned, and permitted sex trafficking and other crimes at the hotel before and after Plaintiff was trafficked for sex at the United Inn, online reviews for the hotel indicate such activity was commonplace before and after Plaintiff was trafficked.  Specifically, Northbrook knew or should have known of the following sex crimes, arrests, and incidents,

---

[4] The list of graphic conduct set forth in paragraphs 46 and 47 is merely illustrative of the rampant sex crimes occurring at the United Inn about which Northbrook knew or should have known.  The full record is publicly available in voluminous police reports, among other places.

among others, occurring on United Inn's premises and approaches before and after Plaintiff was sex trafficked at the United Inn:

- "[T]hey cook drugs here… Been coming around here for 9 months to visit family who stay there and this is horrific."  (Google.com, 2018)

- "[L]ots of hustlers stand out front of the hotel during the night; not to mention a hot spot for prostitution." (Google.com, 2018)

- "Full of … drugs." (Google.com, 2019)

- "[L]oitering all around the building." (Google, 2019)

49.

On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the United Inn.

50.

In 2018, the Dekalb County Commission cited the United Inn for 447 violations of county fire, health, and building codes—more violations than any other hotel or motel in Dekalb County in 2018.  Northbrook paid $60,345 to Dekalb County in 2018 because of those violations.[5]

---

[5] https://www.ajc.com/news/local-govt--politics/dekalb-news-extended-stay-hotel-inspections-lead-397-citations/V3NEXD3pPIdLloPfzOSzMP/#:~:text=Twelve%20extended%20stay%2

51.

By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the United Inn generally, and in response to Plaintiff's sex trafficking at the United Inn specifically, Northbrook's employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn.

52.

As a direct and proximate result of Northbrook's acts and omissions, and Plaintiff being trafficked for sex as a minor at the United Inn, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.  Such injuries and damages were reasonably foreseeable to Northbrook.

## C.   **Northbrook's Knowledge of Sex Trafficking**

53.

Northbrook knew or should have known of the existence of minor sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, the United Nations' adoption of the Palermo Protocol, to prevent,

---

0hotels%20in,fire%2C%20health%20and%20building%20codes (last visited Nov. 20, 2020).

suppress, and punish trafficking in persons, and the passage of O.C.G.A. § 16-5-46 in 2007.

54.

Northbrook knew or should have known that hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

55.

Northbrook knew or should have known the following: The National Human Trafficking Hotline has reported that ninety-two percent of the calls it received involving hotels and motels reported sex trafficking, and another two percent reported a combination of sex and labor trafficking.[6] A 2012 study found that 63 percent of trafficking incidents occurred in hotels.[7] And the Polaris Project found

---

[6] *Human Trafficking and the Hotel Industry*, Polaris Project, https://polarisproject.org/sites/default/files/human-trafficking-hotel-industry-recommendations.pdf (last visited Nov. 15, 2020).
[7] Jon Conte, *et al., Inhospitable to Human Trafficking Program Evaluation*, at 2, Businesses Ending Slavery and Trafficking, (July 2014),

that "75% of [trafficking] survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation . . . . Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."

56.

Northbrook knew or should have known that attorneys for the hotel industry estimated and reported to hotel industry representatives that eight out of ten human trafficking arrests occur in or around hotels,[8] and that the industry had been warned, among other things, to "Make sure hotel not complicit," "Manager not looking the other way," and "No pay off for silence or lack of curiosity."[9]

57.

Northbrook knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-

_____

https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf at 5 (last visited Nov. 15, 2020).

[8] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry*, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983.

[9] Rich Keating, Human Trafficking: What Is it and How It Impacts the Hospitality Industry, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 at 6 (last visited Nov. 15, 2020).

Protection Code of Conduct (the "Code") in the United States in 2004.[10]

58.

Northbrook knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to combat sex trafficking, identifies six reasonable and logical steps hotels and motels can take to prevent child sex trafficking:

    a.  establish corporate policy and procedures against sexual exploitation of children;

    b.  train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

    c.  include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

    d.  provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

---

[10] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited Nov. 15, 2020).

e.  support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

f.  report annually on the company's implementation of Code-related activities.

59.

Northbrook knew or should have known that ECPAT is only one of several high-profile organizations that have for years given hotels and motels the tools to address the scourge of sex trafficking at hotels.

60.

Northbrook knew or should have known that the American Hotel and Lodging Association states on its website that a "30-minute online training program, developed by ECPAT-USA in collaboration with the hotel industry, is now available for free. This offering discusses intersections between human trafficking and the hotel industry and offers free tools and resources to go along with the training to help companies combat trafficking."[11]

61.

Northbrook knew or should have known that the American Hotel and Lodging

---

[11] https://www.ahla.com/issues/human-trafficking (last visited Nov. 15, 2020) (emphasis added).

Association website links to a free ECPAT training on sex trafficking.[12]

62.

Northbrook knew or should have known that the free ECPAT training available through the American Hotel and Lodging Association website states: "***The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity***… ***From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property***… ***With proper training, a front desk agent or a housekeeper can notice that something is not right and respond***."[13]  Defendant knew or should have known they had access to ECPAT's free training materials.

63.

Northbrook knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and stop human trafficking.  DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

---

[12] *Id.*

[13] https://www.ecpatusa.org/hotel-training (last visited Nov. 15, 2020) (emphasis added).

a.  persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b.  persons who lack freedom of movement or are constantly monitored;

c.  persons who have no control over or possession of money or ID;

d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g.  extended stay with few or no personal possessions in the room;

h.  excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i.  the same person reserves multiple rooms;

j.  a room is rented hourly, less than a day, or for an atypical extended stay;

k.  attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n.  waiting at a table or bar and picked up by a male (trafficker or customer)

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

64.

Northbrook knew or should have known that since 2001, sex trafficking has been front-page news in Atlanta, when the Atlanta Journal-Constitution published Jane Hansen's groundbreaking series, *Selling Atlanta's Children*.

65.

Northbrook knew or should have known that, in 2011, then-Attorney General (AG) Sam Olens initiated a well-publicized, multi-year campaign to combat sex trafficking in Georgia.  AG Olens worked with the Georgia General Assembly to strengthen Georgia's human trafficking law by enhancing the penalties under the state's criminal statute.

66.

Northbrook knew or should have known that, in 2013, AG Olens announced

a statewide campaign, "Georgia's Not Buying It," to combat child sex trafficking. As part of the campaign, AG Olens' office "collaborated with partners to conduct trainings and increase awareness," which included "multiple trainings for the hotel industry."[14]

67.

Northbrook knew or should have known that, on September 15, 2013, the Georgia legislature passed O.C.G.A. § 16-5-47 requiring hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted." The contents of the notice are prescribed by statute but must "provide information giving individuals a method to contact the National Human Trafficking Hotline and the Statewide Georgia Hotline for Domestic Minor Trafficking." Failure to comply with O.C.G.A. § 16-5-47 is a misdemeanor.

68.

Northbrook knew or should have known that, in 2016, AG Olens announced

---

[14]   https://law.georgia.gov/press-releases/2013-03-18/attorney-general-olens-law-enforcement-announce-campaign-fight-sex (last visited Nov. 15, 2020).

a statewide campaign to combat child sex trafficking entitled, "Unmasked." The campaign featured a public-service announcement, which played on various TV and radio stations.[15]

69.

Northbrook knew or should have known that Atlanta was a national hub of sex trafficking and that the crime was prevalent in the city, including at the United Inn. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.[16] Over the last two decades, sex trafficking has generated billions of dollars in illicit profits in metro Atlanta alone. Northbrook has received and retained some of those

---

[15]   https://law.georgia.gov/press-releases/2016-04-26/attorney-general-sam-olens-announces-statewide-campaign-combat-child-sex (last visited Nov. 15, 2020).

[16] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited Oct. 21, 2020); *see also* Meredith Dank, et.al, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited Oct. 21, 2020).

illicit profits through renting hotel rooms used for the trafficking of Plaintiff and other minors.

70.

Northbrook knew or should have known that in 2018 the National Human Trafficking Hotline ranked Georgia fourth among states in human trafficking.[17]

71.

Northbrook knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, and particularly child sex trafficking,"[18] and as "the number one city for child sex trafficking."[19]

72.

Northbrook knew or should have known that sex trafficking is particularly pervasive in DeKalb County, where the United Inn is located.   Northbrook knew or should have known that in the year before Plaintiff was trafficked as a minor in

---

[17] Anna Varela, *Human Trafficking Ensnares More Than Half of Metro Atlanta's Homeless Youth, Georgia State Study Shows*, Georgia State University, (Oct. 21, 2019) https://news.gsu.edu/2019/10/21/homeless-youth-trafficking/.
[18] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited Nov. 5, 2020)
[19] *Id.*

DeKalb County, the County police had the tragic but commendable distinction of rescuing more sex trafficking victims than any other unit in Georgia.[20]

### COUNT I
### STATUTORY LIABILITY
### 18 U.S.C. § 1595

73.

Plaintiff incorporates Paragraphs 1 through 72 as if fully restated herein verbatim.

74.

In violation of the TVPRA, 18 U.S.C. § 1595(a), Northbrook knowingly benefitted from participation in a venture that Northbrook knew or should have known engaged in acts in violation of the TVPRA.

75.

Northbrook knowingly benefitted from Plaintiff's sex trafficking by receiving a percentage of the revenue generated by the operation of the United Inn, including a percentage of the revenue generated from the rate charged and paid for the rooms in which Plaintiff was trafficked.

---

[20] Joshua Sharpe, *Report: DeKalb Cops Rescue the Most Sex Trafficking Victims in Georgia*, Atlanta Journal-Constitution, May 18, 2017 https://www.ajc.com/news/local/report-dekalb-cops-rescue-the-most-sex-trafficking-victims-georgia/Lg6rXccQPCcqTITunbEW0M/.

76.

Northbrook participated in a sex trafficking venture by providing to Plaintiff's traffickers the necessary venue for Plaintiff's minor sex trafficking.  In the course of this venture, multiple men paid to have sex with Plaintiff J.G. at the United Inn.  For a fee, Northbrook provided the crime scene, a room at the United Inn, where Plaintiff was sold for sex.

77.

The venture in which Northbrook participated was in or affecting interstate commerce.

78.

Northbrook knew or should have known the venture engaged in acts in violation of the TVPRA because Northbrook, its employees, agents, and representatives, had the opportunity to observe Plaintiff, a minor, at the hotel, with and without her trafficker, and with other minor sex trafficking victims.  Further, Northbrook, its employees, agents, and representatives, had the opportunity to observe the signs of minor sex trafficking exhibited by Plaintiff, her traffickers, the other victims, the room/s in which she was trafficked, and the frequent traffic of adult male buyers to the minor J.G.'s room/s.

79.

Northbrook knew or should have known the venture engaged in acts in violation of the TVPRA because Northbrook, its employees, agents, and representatives, knew or should have known of other minor sex trafficking and sex crimes at the hotel before, during, and after Plaintiff was trafficked for sex at the United Inn.

80.

Northbrook is directly and vicariously liable under § 1595(a) for the actions of its employees, agents, and representatives.

81.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Northbrook's participation in this sex trafficking venture.

82.

Northbrook is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

83.

Northbrook is jointly and severally liable for damages arising from the

indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## COUNT II
## NEGLIGENCE ALLEGATIONS

### 84.

Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

### 85.

At all relevant times, Northbrook controlled the operation and management of the United Inn.

### 86.

At all relevant times, Northbrook owed a duty to invitees to the United Inn, including Plaintiff, to exercise ordinary care in keeping the premises and approaches of United Inn safe from criminal activity, especially minor sex trafficking. Northbrook also voluntarily undertook actions that created additional duties to provide adequate safety and security at the United Inn.

### 87.

 Northbrook breached its duty to Plaintiff and failed to act as similarly situated businesses would in like circumstances by failing to exercise even ordinary care to keep the premises and approaches of United Inn safe and by negligently permitting

criminal activity, especially minor sex trafficking, to exist and flourish at the United Inn.

88.

Northbrook knew or should have known the steps to take to prevent the United Inn from being used as a venue for Plaintiffs' minor sex trafficking. As stated in paragraph 62: "The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity… From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property… With proper training, a front desk agent or a housekeeper can notice that something is not right and respond."[21]

89.

Northbrook knew or should have known ECPAT's Code, yet negligently failed to implement appropriate steps to prevent child sex trafficking at the United Inn, such as:

a)   establishing corporate policies and procedures against sexual exploitation of children;

[21] https://www.ecpatusa.org/hotel-training (last visited Nov. 15, 2020) (emphasis added).

b)      training employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c)      including a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d)      providing information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e)      supporting, collaborating, and engaging stakeholders in the prevention of sexual exploitation of children; and

f)      reporting annually on the company's implementation of Code-related activities.

90.

Northbrook knew or should have known the Department of Homeland Security ("DHS") guidelines on prevention of sex trafficking. Yet Northbrook negligently failed to implement appropriate steps, such as training its employees, managers, and agents, on those guidelines and on warning signs that indicate the presence of sex trafficking on the hotel premises, including:

a)      persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b)      persons who lack freedom of movement or are constantly monitored;

c)      persons who have no control over or possession of money or ID;

d)      persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e)      requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f)      the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g)      extended stay with few or no personal possessions in the room;

h)      excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i)      the same person reserves multiple rooms;

j)      a room is rented hourly, less than a day, or for an atypical extended stay;

k)      attempts to sell items to or beg from patrons or staff;

l)      cars in the parking lot regularly parked backward, so the license plates are not visible;

m)     loitering and solicitation of male patrons;

n)      waiting at a table or bar and picked up by a male (trafficker or customer);

o)      persons asking staff or patrons for food or money; and

p)      persons taking cash or receipts left on tables.

91.

ECPAT's Code and DHS' guidelines were only two of the many authorities Northbrook could and should have relied upon to address and combat sex trafficking at the United Inn.  For example, the American Hotel and Lodging Association links to a "free" ECPAT training that is only "30-minute[s]" and easily available "online."[22]   Northbrook knew or should have known it had access to such free training materials for its employees, managers, and agents.

92.

Despite what Northbrook knew or should have known about the illegal activity at the United Inn, including multiple reports and arrests related to sex trafficking and other sex crimes at the United Inn prior to Plaintiff's minor sex trafficking, Northbrook negligently failed to implement reasonable, appropriate, and adequate measures to protect its invitees, including Plaintiff, from becoming a victim of sex trafficking at the United Inn.  To the contrary, Northbrook continued its

---

[22] https://www.ahla.com/issues/human-trafficking (last visited Nov. 15, 2020) (emphasis added).

venture to profit from the operation of the United Inn and the minor sex trafficking and other sex crimes incorporated into the United Inn's operations.

93.

Northbrook negligently failed to implement policies and procedures to prevent, identify, and deter sex trafficking at the United Inn and to ensure it was not profiting from sex trafficking, as required by state and federal law.

94.

Prior to and including the time when Plaintiff was trafficked at the United Inn, Northbrook negligently maintained, inspected, secured, patrolled, managed, and operated the United Inn. Northbrook had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol, manage, and operate the premises, but negligently failed to exercise ordinary care, thereby creating an unreasonable risk of injury to invitees, including Plaintiff.

95.

Northbrook had actual and constructive knowledge of criminal activity, including sex trafficking and other sex crimes, at and around the United Inn prior to Plaintiff's minor sex trafficking.

96.

Northbrook had actual and constructive knowledge of the dangerous and hazardous conditions existing at the United Inn due to the knowledge of its employees, managers, and agents and due to the prior criminal activity and dangers associated with the property and surrounding high crime area.

97.

Plaintiff's minor sex trafficking was foreseeable to Northbrook because it knew or should have known about the actual events with Plaintiff at the United Inn, as well as the history of sex trafficking and other sex crimes at the United Inn and other hotels in the area and the history of criminal activity at and around the United Inn and in the surrounding high-crime area.

98.

Northbrook breached the duty it owed to Plaintiff by failing to exercise ordinary care to keep its premises safe and negligently permitting criminal activity, especially minor sex trafficking, to exist and remain at the United Inn.

99.

Northbrook knew of, or in the exercise of ordinary care, should have known of the dangerous and hazardous conditions existing on the premises, and the failure to maintain, inspect, secure, patrol, and manage the premises, and that these

conditions were likely to, and did, result in sex trafficking and other sex crimes at the United Inn and again to Plaintiff.

100.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to protect invitees, including Plaintiff, from the risks of minor sex trafficking and other violent crimes.

101.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to warn Plaintiff and other invitees of the dangers at and around the United Inn.

102.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to maintain adequate security devices and personnel to ensure proper use of the property, thereby causing an unreasonable risk of injury to invitees, including Plaintiff.

103.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to maintain policies, procedures, or systems for investigating, reporting, and warning of minor sex

trafficking and other crimes, and negligently maintained the United Inn.

104.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook failed to take appropriate action to remedy or reduce the danger to its invitees and allowed the dangerous environment at the United Inn to worsen and continue to exist unabated, thereby creating a nuisance.

105.

Because Northbrook had knowledge of, or in the exercise of reasonable care should have had knowledge of the dangerous environment at and around the subject premises, Northbrook is liable for the negligent supervision, hiring, training, and retention of its managers, agents, and employees and the entrustment of said property to its managers, agents, and employees. Said negligence proximately caused the damages and injuries to Plaintiff.

106.

Northbrook negligently represented to invitees that the United Inn was properly maintained and that the property was safe.

107.

Northbrook was negligent and said negligence proximately caused Plaintiff's injuries in the following ways, to-wit:

a)   Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

b)   Negligently failing to keep the premises in a state of good repair;

c)   Negligently violating O.C.G.A. § 41-1-1 by creating and maintaining a nuisance;

d)   Negligently failing to provide appropriate and effective security personnel during Plaintiffs' minor sex trafficking at the hotel;

e)   Negligently failing to properly inspect and maintain the premises;

f)   Negligently failing to properly train and supervise its employees regarding sex trafficking and other sex crimes at the hotel;

g)   Negligently failing to properly retain, hire, train, and supervise said employees;

h)   Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

i)   Negligently failing to respond to online reviews and publicly available information;

j)   Negligently failing to prevent loitering and trespassing;

k)   Negligently failing to remove loiterers and trespassers;

l)   Negligently failing to inspect, patrol, or appropriately monitor the

property;

m)    Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

n)    Negligently failing to remediate a long history of crime at the United Inn and the area nearby;

o)    Negligently failing to warn invitees of known hazards at the property; and

p)    Negligently representing to invitees that the property was safe.

108.

Each of the foregoing acts and omissions constitute an independent act of negligence on the part of Northbrook and one or more or all above stated acts were the proximate causes of the injuries sustained by Plaintiff.

109.

Northbrook is liable for Plaintiff's injuries sustained, pain and suffering, the expenses of treatment, and all other elements of damages allowed under the laws of the State of Georgia, including all special, compensatory, incidental, consequential, economic, and punitive damages.

110.

Northbrook is liable for the minor sex trafficking of Plaintiff.

111.

Northbrook's negligence discussed in this count was a cause in fact and a proximate cause of Plaintiff's substantial physical, emotional, and psychological harm and other damages.

## **DAMAGES**

112.

Plaintiff incorporates Paragraphs 1 through 111 as if fully set forth herein.

113.

As a proximate and foreseeable result of Northbrook's negligence and violation of the TVPRA, Plaintiff sustained personal injuries, mental and emotional pain and suffering, mental anguish, and other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia law against Northbrook for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under

Georgia and federal law, including, but not limited to:

a)     Personal injuries;

b)     Past, present, and future conscious pain and suffering;

c)     Loss of enjoyment of life;

d)     Medical expenses;

e)     Mental anguish and emotional distress;

f)     Loss of past, present, and future wages;

g)     Incidental expenses;

h)     All special, compensatory, economic, punitive, and other damages permissible under Georgia law; and

i)     Consequential damages to be proven at trial.

114.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Northbrook and its employees, agents, and representatives were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

115.

Northbrook's actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to

recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia and federal statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to them and against Northbrook for the following:

a) Process issue as provided by law;

b) Plaintiff be awarded actual damages in amounts to be shown at trial from Northbrook;

c) Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages from Northbrook in accordance with the enlightened conscience of an impartial jury;

d) Plaintiff be awarded a trial by jury; and

e) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 28th day of December, 2020.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

Attorneys for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing **Complaint** has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

Attorneys for Plaintiff

51