IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. 1:20-cv-05233-MLB |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | |
| | : | |
| Defendant. | : | |

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
NORTHBROOK'S SECOND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR DAMAGES (ECF No. 37-1)</u>**

*Doe #1 v. Red Roof Inns, Inc.*, which regards franchisor liability, is dispositive of Defendant Northbrook's motion. 21 F.4th 714 (11th Cir. 2021). Northbrook owned and operated the United Inn & Suites where Plaintiff was sold for sex as a child. Judge Jordan concurred in *Doe #1* to "emphasize" that "similar claims against those who own, operate, or manage the hotels . . . would withstand a Rule 12(b)(6) motion to dismiss." *Id.* at 729. The *Doe #1* allegations are "substantially similar" to this case. (ECF No.37-1 at 8). Still, Northbrook persists in analogizing itself to Wyndham Hotels & Resorts, the largest hotel franchisor in the world. Its motion should be denied.

## **INTRODUCTION**

In 2018 and 2019, Plaintiff was sex trafficked as a child out of a hotel room at the United Inn & Suites ("United Inn"), (Compl. ¶17), owned and operated by Northbrook, (*id.* ¶9). In exchange for renting rooms to Plaintiff's traffickers, Northbrook earned revenue. (*Id.* ¶¶35, 36). Many red flags should have alerted Northbrook that Plaintiff was a sex trafficking victim, including her behavior and appearance, her traffickers' activities, the hotel's history with her traffickers, the condition of the rooms in which she was trafficked, the volume of visitors to the rooms, and more. (*Id.* ¶¶16-72). As further explanation, Plaintiff adopts and incorporates her initial response brief (ECF No.18) herein.

Based on these facts, among others, Plaintiff sued Northbrook for violation of 18 U.S.C. § 1595(a)[1] by knowingly benefitting from participation in a venture that it knew or should have known violated 18 U.S.C. § 1591.

Northbrook's motion to dismiss should be denied for five reasons:

First, *Doe #1* concerns franchisors, and finds that allegations "similar" to Plaintiff's against hotel owners-operators are sufficient to withstand a motion to dismiss. 21 F.4th at 726, 729. *See infra* at I.

Second, the *Doe #1* plaintiffs were trafficked as adults, Plaintiff as a minor. Thus, Plaintiff's claim is subject to a lower standard of proof than the claims made by the *Doe #1* plaintiffs. *See infra* at I.

Third, as in its original motion, Northbrook mischaracterizes or ignores Plaintiff's actual allegations and improperly applies a heightened pleading standard. *See, e.g.,* I.a. & I.b.

Fourth, Plaintiff has plausibly alleged Northbrook's negligence because Plaintiff was an invitee under Georgia law, and even if she were not, Plaintiff has alleged that Northbrook's actions in allowing minor sex trafficking were willful and wanton. (Compl. ¶ 15). *See infra* at II.

---

[1] Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589, *et seq.* ("TVPRA").

## <u>SUMMARY OF COMPLAINT</u>

In relevant part, Plaintiff's Complaint contains an introductory section (¶¶8 - 72), which is divided into three sub-sections:

**(1)** Plaintiff's Minor Sex Trafficking at the United Inn (¶¶16 – 43),

**(2)** Sex Trafficking and Other Crimes were Frequent and Foreseeable at the United Inn (¶¶44 – 52), and

**(3)** Northbrook's Knowledge of Sex Trafficking (¶¶53 – 72).

The first section—which Northbrook primarily focuses on in its motion to dismiss—sets forth plausible allegations that Plaintiff was sex trafficked as a child at the United Inn out of a hotel room that Northbrook rented to Plaintiffs' traffickers for revenue, that Northbrook had constructive or actual knowledge that Plaintiff was trafficked at the United Inn, and that Northbrook took part in a common undertaking or enterprise involving risk and potential profit through engaging in transactions and dealings with Plaintiffs' traffickers.

Plaintiff's Complaint speaks for itself, but a few illustrative allegations show the sufficiency of Plaintiff's TVPRA allegations:

- <u>Plaintiff alleges that she was sex trafficked as a child at the United Inn & Suites, which Northbrook operated</u>: "At all times relevant hereto, Northbrook owned, operated, maintained, controlled, and managed the United Inn." (Compl. ¶ 9);

"Plaintiff was sex trafficked as a minor at the United Inn from 2018 to 2019[,]" (*Id.* ¶17) by "multiple traffickers … [who] carried weapons and operated openly and brazenly on the hotel's premises, common areas, and approaches," (*Id.* ¶20).

- Plaintiff alleges that the condition of her room, her physical appearance, the large volume of visitors to her room, and her traffickers' historical conduct at the hotel gave Northbrook constructive or actual knowledge of Plaintiff's victimization: "While she was trafficked for sex at the United Inn, Plaintiff exhibited numerous well-known and visible signs of a minor sex trafficking…" (*Id.* ¶23). "On many days, more than 10 buyers visited the rooms in which Plaintiff was sex trafficked at the United Inn—some were there to buy drugs and others there to buy sex with Plaintiff." (*Id.* ¶21) "While Plaintiff was sex trafficked at the United Inn as a minor, dozens of adult men visited the room/s in which she was trafficked to purchase sex. The adult men arrived in view of the hotel's lobby, which had a large window facing the parking lot[.]" (*Id.* ¶25). "Plaintiff's room/s at the United Inn contained condoms, drugs, weapons, and a large number of towels, sheets, and tissues." (*Id.* ¶26). "On information and belief, Plaintiff's traffickers (and their associates) had previously rented rooms and trafficked women for sex at the United Inn." (*Id.* ¶37).

- Plaintiff alleges that she talked to Northbrook employees during her trafficking, some of whom visited and cleaned Plaintiff's room: "On more than one occasion at the United Inn, Northbrook employees, agents, and/or representatives entered the room/s in which Plaintiff was sex trafficked at the United Inn. For example, housekeeping at the United Inn cleaned the room/s in which Plaintiff was trafficked[.]" (*Id.* ¶27). "On other occasions at the United Inn, Plaintiff—a minor staying at the hotel for extended periods in the company of various adult men— asked Northbrook employees, agents, and/or representatives (e.g., housekeeping and/or front desk staff at the United Inn) for extra sheets, towels, and tissues." (*Id.* ¶28).

- Plaintiff alleges that Northbrook employees talked to Plaintiff's traffickers and that Plaintiff's traffickers (or their associates) rented the rooms in which Plaintiff was victimized: "Plaintiff's traffickers and their associates interacted with Northbrook employees, agents, and/or representatives who accommodated the traffickers' requests and thereby facilitated and assisted Plaintiff's minor sex trafficking." (*Id.* ¶34). "On information and belief, Plaintiff's traffickers (or their associates) rented rooms in which Plaintiff was sex trafficked as a minor." (*Id.* ¶35).

- Plaintiff alleges Northbrook earned revenue from renting the rooms in which Plaintiff was victimized: "Northbrook collected revenue from rental of the rooms in which Plaintiff was trafficked for sex." (*Id.* ¶36).

- Plaintiff alleges that Northbrook employees had a reasonable opportunity to observe her age: "Northbrook had ample opportunity to observe the age and appearance of Plaintiff. … Plaintiff stayed at the United Inn for up to weeks at time. Throughout her stays at the United Inn, Plaintiff walked around the hotel … even during periods when school was in session for children of Plaintiff's age." (*Id.* ¶31).

The second section of the Complaint alleges that during all relevant periods Northbrook was on notice of widespread criminal activity, including sex crimes, at the United Inn. Finally, the third section alleges that Northbrook was on notice during all relevant periods of the high risk of sex trafficking at the United Inn given the prevalence of sex trafficking in the hospitality industry generally and in metro Atlanta specifically, and further, that Northbrook knew or should have known of reasonable steps to identify and address sex trafficking at the United Inn.

## LEGAL STANDARD

Rule 8(a)(2) requires a Complaint to set forth, in relevant part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, Rule 8(e) requires that pleadings "be construed so as to do justice." Particularity is not required in a pleading unless alleging "fraud or mistake." Rule 9(b).

On a motion to dismiss, this Court must take the "factual allegations in the complaint as true and construe them in the light most favorable to" the plaintiff. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). That is, this Court must construe the Complaint "broadly," such that it need only include "enough factual matter to . . . suggest the required element[s]" for a claim. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)). "A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Federal Rules of Civil Procedure "do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *In re Se. Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir. 1995). Plaintiff's claims may only be dismissed if "the facts as pled do not state a claim for relief that is plausible on its face." *Edwards*, 602 F.3d at 1291 (citations omitted).

**ARGUMENT**

Plaintiff has plausibly alleged each of the required elements of a TVPRA beneficiary claim, namely "that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1*, 21 F.4th at 719. Thus, Northbrook's motion to dismiss should be denied.

Northbrook has only challenged the sufficiency of Plaintiff's allegations as to the second and fourth prongs. (ECF No.37-1 at 8-16).[2] As such, Northbrook has conceded the adequacy of Plaintiff's allegations as to the remaining prongs (the first and third). Therefore, the allegations relating to those prongs are not addressed here, though they are in Plaintiff's initial response brief, incorporated here. (ECF No.18).

**I.** **_Doe #1_ is dispositive of Northbrook's motion, which asks this Court for an unprecedented ruling.**

Northbrook asks this Court to defy *Doe #1* and do what no other court in the country has done: dismiss a TVPRA sex trafficking lawsuit against the owner-

---

[2] While Northbrook's original motion to dismiss challenged Plaintiff's allegations as to all four elements, Northbrook's supplemental motion "replaces the [original] brief." (ECF No.37-1 at 1).

operator of the hotel where Plaintiff was trafficked and where Plaintiff ***directly***

***interacted with staff while she was being trafficked at the hotel***.[3] Only one court

---

[3] Denying dismissal of TVPRA claims against ***all*** hotel defendants—franchisors and owners. *See, e.g.*, *J. B. v. G6 Hosp., LLC*, 19-CV-07848-HSG, 2021 WL 4079207, (N.D. Cal. Sept. 8, 2021); *S. Y. v. Best W. Int'l, Inc.*, 2:20-CV-616-JES-MRM, 2021 WL 2315073, (M.D. Fla. June 7, 2021) (Judge Steele has entered 28 substantially similar opinions denying motions to dismiss in related cases); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020); *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV, 2020 WL 6121939 (S.D. Fla. Sept. 30, 2020); *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 185 (E.D. Pa. 2020); *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845 (W.D. Wash. Apr. 17, 2020), report and recommendation adopted, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020); *A.C. v. Red Roof Inns, Inc.*, No. 2:19-CV-4965, 2020 WL 3256261 (S.D. Ohio June 16, 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 962 (S.D. Ohio 2019); *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017).

Granting dismissal of TVPRA claims against some franchisor defendants, ***not*** hotel owners or managers: *See, e.g.*, *Lundstrom v. Choice Hotels Int'l, Inc.*, 21-CV-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021); *A.B. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-CV-01992-IM, 2021 WL 1235241 (D. Or. Mar. 31, 2021) (no hotel owner in case); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) (same); *J.L. v. Best W. Int'l, Inc.*, No. 19-CV-03713-PAB-STV, 2021 WL 719853 (D. Colo. Feb. 24, 2021) (same); *E.S. v. Best W. Int'l, Inc.*, No. 3:20-CV-00050-M, 2021 WL 37457 (N.D. Tex. Jan. 4, 2021) (same); *K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-CV-1213-AJ, 2020 WL 8674188 (D.N.H. Sept. 28, 2020) (same); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 700 (E.D. Mich. 2020) (same); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) (same); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, (N.D. Cal. July 30, 2020) (same); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 150 (E.D.N.Y. 2020) (hotel owners did not move to dismiss); *Doe 1 v. Red Roof Inns, Inc.*, No.

in the country has dismissed TVPRA claims against a hotel owner-operator, and there the plaintiff "never allege[d] that she saw or approached employees" of the hotel. *J. B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020). Every other court has either denied dismissal of all defendants or granted dismissal to some franchisor defendants but not to hotel owner-operators. The reason is simple: what a defendant hotel owner or manager who saw a plaintiff-victim at the hotel "should have known"[4] about the plaintiff-victim's status or the venture at the hotel is a question of fact not appropriate for resolution on a motion to dismiss.

*Doe #1*, which concerns TVPRA beneficiary claims against franchisors, 21 F.4th at 729, is consistent with this unbroken line of caselaw, some of which *Doe #1* favorably cites, 21 F.4th at 725 (citing *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171, 183 (E.D. Pa. 2020)), and 730 (citing *S.Y. v. Naples Hotel Co.*, 476 F.Supp. 3d 1251, 1256–57 (M.D. Fla. 2020)). Indeed, Judge Jordan "emphasize[d]" in his concurrence that, "as the court explains, ***similar claims [to those raised against the franchisors in Doe #1] against those who own, operate, or manage the hotels in question (e.g., franchisees) would withstand a Rule 12(b)(6) motion to dismiss***."

1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) (granting franchisors' motions but denying hotel owners' motions in four related cases).

[4] The legal standard under 18 U.S.C. § 1595(a).

21 F.4th at 729 (emphasis added). In other words: Though *Doe #1* affirmed the dismissal of Plaintiff's claims against franchisors, it would have found "similar claims" sufficient against a hotel owner-operator.

Judge Jordan's guidance applies here. Unlike the defendants at issue in *Doe #1*, Northbrook is the owner-operator of the United Inn. And this case involves "similar claims" to those at issue in *Doe #1*. Northbrook devoted more than 25% of its brief (5 out of 19 pages) to summarizing *Doe #1*,[5] because, as Northbrook concedes, "the allegations found to be insufficient in *Jane Doe* are substantially similar to the allegations against Northbrook." (ECF No.37-1 at 8).[6] Likewise, this Court has noted that *Doe #1* involved "nearly identical arguments raised by Defendant in this case." (ECF No.31 at 2). And in a case this Court called "similar"

---

[5] The summary omits mention of Judge Jordan's concurrence.

[6] Comparison of the *Doe #1* allegations against the hotel owners-operators and Plaintiff's Complaint bears out the similarities. *Compare Jane Doe 1 v. Red Roof Inns, Inc., et al.*, Case 1:19-cv-03840-WMR, ECF No.396 at 4-10 (N.D. Ga. Feb. 3, 2021) *with* Complaint at ¶¶ 16-70.

One of the differences between *Doe #1* and this case is that Plaintiff is a child trafficking victim, whereas the plaintiffs in *Doe #1* were adult victims. Thus, the standard of proof is lower in this case. An adult trafficking victim making a § 1595(a) beneficiary claim must plausibly allege that the beneficiary should have known that force, fraud, or coercion was used to perpetrate the trafficking, whereas a child victim making a § 1595(a) beneficiary claim (like Plaintiff) must plausibly allege only that the beneficiary should have known commercial sex was occurring and had a reasonable opportunity to observe the Plaintiff. *See* 18 U.S.C. § 1591(a)(2); *see also* § 1591(c); *Doe #1*, 21 F.4th at 723.

to the instant case, (*id.* at 2-3), Judge Boulee found the *Doe #1* case concerns a "similar fact pattern to the fact pattern presented here," *A.G. v. Northbrook Industries, Inc.*, 1:20-cv-5231-JPB, ECF No.30 at 2 (N.D. Ga. July 27, 2021). Because the instant case involves "similar claims" to those at issue in *Doe #1*, and it is against a hotel owner-operator (Northbrook), according to *Doe #1*, the motion to dismiss should be denied.[7]  21 F.4th at 726.

The *Doe #1* discussion of *Ricchio* (which is what Judge Jordan's concurrence ostensibly refers to when it says, "as the court explains") further supports the conclusion that Plaintiff's allegations are sufficient.  In its analysis of *Ricchio*, the *Doe #1* Court pointed to three factual allegations made by the plaintiff in that case ((1) "The plaintiff was held hostage and sexually abused at the hotel"; (2) "[T]he trafficker's prior commercial dealings with the hotel operators and desire to reinstate those dealings"; and (3) "That by renting a room to the trafficker, the hotel operators were associating with him in an effort to force the plaintiff to serve their business

---

[7] Notably, Judge Ray, the District Court judge handling the four *Doe* cases, denied all motions to dismiss "similar claims" against hotel owners-operators in all four *Doe* cases. *Jane Doe 1 v. Red Roof Inns, Inc., et al.*, Case 1:19-cv-03840-WMR, ECF No.396 (N.D. Ga. Feb. 3, 2021); *Jane Doe 2 v. Red Roof Inns, Inc., et al.*, Case 1:19-cv-03841-WMR, ECF No.385 (N.D. Ga. Feb. 3, 2021); *Jane Doe 3 v. Red Roof Inns, Inc., et al.*, Case 1:19-cv-03843-WMR, ECF No.327 (N.D. Ga. Feb. 3, 2021); *Jane Doe 4 v. Red Roof Inns, Inc., et al.*, Case 1:19-cv-03845-WMR, ECF No.291 (N.D. Ga. Feb. 3, 2021).

objectives[]") and found: "***these kinds of allegations*** would establish a hotel operator's participation in a venture with a sex trafficker." 21 F.4th at 726 (emphasis added). That is, the *Doe #1* Court found a discrete list of facts from *Ricchio*—not the entire *Ricchio* fact pattern—to be sufficient to allege (with the other required TVPRA elements) a TVPRA beneficiary claim against a hotel owner-operator.

The Eleventh Circuit conspicuously did not rely upon the allegations in *Ricchio* that the hotel operator had actual knowledge and involvement because *Doe #1* explicitly held—after a lengthy analysis—that actual knowledge and involvement is not required to state a TVPRA claim. 21 F.4th at 724–726 ("[T]he defendant must have either actual or constructive knowledge that the venture . . . violated the TVPRA as to the plaintiff."). The court considered and rejected the argument that a plaintiff must "prove that the defendant knowingly facilitated a violation" because it would "make the 'should have known' language superfluous." *Id.* at 724.[8]

---

[8] *Doe #1* favorably cites two district court opinions that held allegations like those at issue here were sufficient to survive a motion to dismiss a TVPRA claim against a hotel owner-operator. *Doe #1*, 21 F.4th at 725 (citing *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171, 183 (E.D. Pa. 2020)), and 730 (citing *S.Y. v. Naples Hotel Co.*, 476 F.Supp. 3d 1251, 1256–57 (M.D. Fla. 2020)).

In *A.B.* the Court rejected the defendant-hotel's argument that participation in a venture required proof that the defendant participated in the sex trafficking act itself and held: "We construe the Act under its terms as imposing liability should a jury find the business benefitted from participating in a venture it knew or should have known engaged in trafficking." 455 F. Supp. 3d at 182. Notably, the *A.B.* Court cited nineteen times to *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d

Plaintiff's Complaint plausibly alleges the three *Ricchio* factors cited in *Doe #1*, *see* I.a., but even if there were distinctions between the referenced *Ricchio* claims and Plaintiff's, that does not change the outcome. As discussed *infra*, Plaintiff plausibly alleges each of the four required elements of a TVPRA beneficiary claim. Further, *Doe #1* says the *Ricchio* allegations are sufficient, not required. 21 F.4th at 726. *Richhio* itself emphasizes: "***We repeat*** that we ***do not*** present this summary [of the allegations] as necessarily exhausting every variant of statutory violation and basis for civil liability that could survive the general Rule 12(b)(6) motion." *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.) (emphasis added). Nor would it make sense for *Ricchio*'s allegations to be required to survive a motion to dismiss; the allegations in *Doe #1* differ from those in *Richhio*, yet Judge Jordan said that "similar claims" to those in *Doe #1* "would withstand a Rule 12(b)(6) motion to dismiss" against "those who own, operate, or manage the hotels in question." 21 F.4th at 729.[9] In sum, Plaintiff plausibly alleges the three elements from *Ricchio*

959, 962 (S.D. Ohio 2019), which held that "[]Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking." And in *S.Y.*, the other district court case favorably cited in *Doe #1*, the Court ruled similarly that "actual participation in the sex trafficking act itself is not required to state a claim under section 1595." 476 F. Supp. 3d at 1256.

[9] To be clear, *Doe #1* also does ***not*** say that TVPRA allegations against an owner-operator must be "similar" to those against the franchisors in *Doe #1* to survive a motion to dismiss, only that such allegations would be sufficient.

relied upon in *Doe #1*, but regardless, the *Ricchio* fact pattern is not the only fact pattern that can withstand a 12(b)(6) motion to dismiss a TVPRA claim against a hotel owner-operator.

This Court should reject Northbrook's gambit to defy *Doe #1* and the dozens of district court decisions denying 12(b)(6) motions against hotel owners-operators in TVPRA cases and find that Plaintiff has plausibly alleged a beneficiary theory under the TVPRA against Northbrook because she makes "similar claims" to those in *Doe #1*, including, for example, that she and her traffickers interacted with hotel employees during her trafficking at the hotel. (Compl. ¶¶ 29-34). Specifically, Plaintiff has adequately alleged the following required elements of a TVPRA claim contested by Northbrook's motion.

      **a.**    **TVPRA Element 2: Plaintiff plausibly alleged that Northbrook knowingly benefitted from taking part in a common undertaking or enterprise involving risk and potential profit.**

Plaintiff's Complaint satisfies the second element of a TVPRA claim by plausibly alleging that Northbrook "t[ook] part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 726. "[T]he participation element of a 'beneficiary' claim under § 1595(a) does ***not*** require that the defendant in question have participated in the sex trafficking act itself." *Id.* at 729. (emphasis added).

Here, Plaintiff has made the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." 21 F.4th at 726. Plaintiff alleges that her traffickers "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit." *Id.* at 725; *see* (Compl. ¶¶ 29, 34, 35, 37). The parties "commercial dealings" stopped and re-started multiple times. (Compl. ¶ 31) (alleging "stays at the United Inn" lasted "for up to weeks at time.") Those facts alone are evidence of prior commercial dealings (the initial room rental versus subsequent room rentals), which the hotel wished to continue (and did continue) because it was renting the rooms to Plaintiff's sex traffickers for profit. In total, Plaintiff plausibly alleges that Northbrook engaged in a "common undertaking or enterprise" (*e.g.*, providing hotel rooms to a customer for rent in exchange for payment) with Plaintiff's traffickers that "involve[ed] risk" (of trafficking or otherwise) and "potential profit."[10] Therefore, "these kinds of allegations" show Northbrook's participation in a venture with Plaintiff's trafficker. *Doe #1*, 21 F.4th at 726; *see also M.A., Inc.*, 425 F. Supp. 3d at 962 (S.D. Ohio 2019) ("[]Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595

---

[10] As discussed in connection with the 4th element of TVPRA claim, Northbrook engaged in this conduct with constructive or actual knowledge that Plaintiff was a minor trafficking victim.

by alleging that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking.").[11]

If more were needed (it isn't), Plaintiff also alleged that Northbrook operated, controlled, and managed the United Inn where Plaintiff was openly trafficked as a minor, that Northbrook employees talked with Plaintiff and her traffickers during the period at issue, that Northbrook employees entered Plaintiff's rooms during the period at issue and saw the paraphernalia associated with sex trafficking strewn about the room, and that a large volume of adult men regularly visited Plaintiff's room for brief periods. (Compl. ¶¶9, 10, 29, 33.) Thus, Plaintiff's allegations show Northbrook operated the hotel and earned revenue from doing so, including by renting for money the hotel rooms to Plaintiff's traffickers that were used to

---

[11] Northbrook contends that certain employee conduct was "unauthorized." (ECF No.37-1 at 12-13). That is a question of fact asserted with no support by Northbrook in its brief and it is not appropriate for resolution at the 12(b)(6) stage. In any event, as to the TVPRA claim (not the negligence claims) Plaintiff is not relying on what Northbrook claims for the first time in a brief was "unauthorized conduct" to allege a "common undertaking or enterprise." Plaintiff specifically alleges the actions of Northbrook's employees were within the course and scope of their employment. (Compl. ¶ 4, n.2). Plaintiff's claim is that Northbrook collected revenue for rental of hotel rooms in which Plaintiff was sex trafficked, even though Northbrook knew or should have known that the rooms would be used to sex traffic Plaintiff based on interactions between Northbrook's staff and Plaintiff, and Northbrook's staff and her traffickers.

victimize Plaintiff. These "common undertaking[s] or enterprise[s]" "involve[ed] risk" (of trafficking or otherwise) and "potential profit."

Northbrook's arguments in response fall short. To start, Northbrook critiques certain allegations as "boilerplate" and "standard fare." (ECF No.37-1 at 12). Calling allegations of minor sex trafficking "boilerplate" and "standard fare" is unseemly. It is true, however, that this is one of three cases alleging minor sex trafficking at the United Inn—and the allegations are similar across those cases. *See A.G. v. Northbrook Industries, Inc.*, 1:20-cv-5231-JPB, (N.D. Ga.); *G.W. v. Northbrook Industries, Inc.*, 1:20-cv-5232-JPB, ECF No.30 at 2 (N.D. Ga.). The Federal Rules of Civil Procedure require plausible pleading, not novel pleading. In fact, similar allegations across similar types of cases may be a hallmark of plausibility where the similarities show that certain types of illegal activity (*e.g.*, sex trafficking) occur and manifest in similar ways across similar businesses (*e.g.*, hotels with high crime rates and low attention to security).

Underlying Northbrook's focus on "boilerplate" and "standard fare" allegations is the claim that Plaintiff has not provided a sufficient factual basis for her allegations. (*See* ECF No.37-1 at 9, 12, 17.) This is wrong; for example, Plaintiff clearly alleges in relevant part that she was sex trafficked as a child in 2018 and 2019 at the United Inn & Suites (*id.* ¶¶8, 16) by multiple adult traffickers who "carried

weapons and operated openly and brazenly on the hotel's premises," (*id.* ⁋20).

Plaintiff also alleges that during her trafficking she talked with Northbrook employees, including front desk and housekeeping staff, (*id.* ⁋28), and that her traffickers talked to Northbrook employees too, (*id.* ⁋34). Further, Plaintiff alleged that "on information and belief, Plaintiff's traffickers (or their associates) rented rooms in which Plaintiff was sex trafficked as a minor," (*id.* ⁋35).

Northbrook's particularity objections are not just factually incorrect, they are also legally flawed. "A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Federal Rules of Civil Procedure "do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *In re Se. Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir. 1995).[12] Northbrook is free to use the discovery process to inquire further.

Finally, Northbrook's dismissal argument on the second element of a § 1595(a) beneficiary claim improperly latches onto *Ricchio* to argue that any factual differences between *Ricchio*'s sex trafficking and Plaintiff's sex trafficking show

---

[12] Some of Northbrook's particularity objections may be suited for a Rule 56 motion, but not a 12(b)(6) motion. *See, e.g.*, (ECF No.37-1 at 12 (objecting that Plaintiff did not set out "[a] factual basis for attributing such activity to the specific hotel in question[.]").)

Plaintiff's Complaint is deficient under 12(b)(6). (ECF No.37-1 at 10, n.4). As noted, *Doe #1* says the ***opposite***: The *Doe #1* allegations differ from those at issue in *Richhio* ***yet "similar claims"*** to those at issue in *Doe #1* ***"would withstand a Rule 12(b)(6) motion to dismiss***" against "those who own, operate, or manage the hotels in question." 21 F.4th at 729. Therefore, Northbrook's insinuations that the *Ricchio* fact pattern is the only fact pattern that can withstand a 12(b)(6) motion are mistaken.

For all these reasons, Plaintiff has plausibly alleged that Northbrook "t[ook] part in a common undertaking or enterprise involving risk and potential profit," and Northbrook's dismissal arguments to the contrary should be rejected

> **b.  TVPRA Element 4: Plaintiff plausibly alleged that Northbrook had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to Plaintiff.**

Northbrook's argument on the fourth TVPRA element that, "[i]n short, the Complaint does not plausibly allege that Northbrook knew this Plaintiff was being trafficked for sex at the United Inn," (ECF No.37-1 at 16), is demonstrably wrong. It is also the wrong legal standard because it incorrectly suggests actual knowledge is required, when, in fact, constructive knowledge is sufficient. Because Northbrook again relies upon a distorted, partial reading of the Complaint to support its position, it is again necessary to point out key allegations that Northbrook ignores.

*Doe #1* does not reduce to a bright line test the fourth element of the TVPRA, likely because the potential factual scenarios amounting to actual or constructive knowledge are unlimited. Plaintiff has more than adequately alleged that Northbrook had actual or constructive knowledge of Plaintiff's sex trafficking at the hotel. To begin, Plaintiff plausibly alleged that she was sex trafficked as a minor at the United Inn & Suites. (Compl. ¶17). Further, she has plausibly alleged that "Northbrook had ample opportunity to observe [her] age and appearance … at the United Inn. Plaintiff stayed at the United Inn for up to weeks at time. Throughout her stays at the United Inn, Plaintiff walked around the hotel premises, common areas, and approaches, even during periods when school was in session for children of Plaintiff's age." (*Id.* ¶31). In addition, Plaintiff plausibly alleged a litany of facts that other courts have found sufficient to claim actual or constructive knowledge (*see, e.g.*, *A.B.*, 455 F.Supp.3d at 183; *S.Y.*, 476 F.Supp. 3d at 1256–57,[13] note 3): Plaintiff talked to Northbrook employees (including front desk and housekeeping staff), Plaintiffs' traffickers talked to Northbrook employees, Northbrook employees visited and cleaned the rooms in which Plaintiff was trafficked, those rooms contained trafficking paraphernalia at the times that Northbrook staff entered the rooms, Plaintiff's physical appearance and young age (which Northbrook employees

---

[13] As noted, *Doe #1* favorably cites to *A.B. and S.Y.*

observed) indicated she was a victim, dozens of adult men visited her rooms for short periods of time, and Plaintiffs' traffickers' had interacted with Northbrook employees before. *See* Summary of Complaint. A reasonable jury could find any one of these facts, or any combination thereof, sufficient to show "knowledge which 'one using reasonable care or diligence should have.'" *Doe #1*, 21 F.4th at 725 (quoting *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019)). Northbrook's motion ignores them.

Finally, Northbrook criticizes "background information" in the Complaint, (ECF No.37-1 at 15), but that conflicts with *Doe #1* too. In *A.B.*, which the Eleventh Circuit favorably cited, the defendant-hotel challenged similar "background" allegations and the court rejected the same position: "At this [12(b)(6)] stage, we read A.B.'s allegations regarding the hospitality industry generally as background and supporting A.B.'s allegation that Marriott, along with other hotel brands, knew about the problem of sex trafficking." *See, e.g.*, 455 F. Supp. 3d at 193.

## II. <u>Plaintiff was an invitee and, regardless, Northbrook injured her willfully and wantonly.</u>

Plaintiff was an invitee under Georgia law, but regardless of Plaintiff's status as an invitee, licensee, or trespasser, Northbrook owed her duties that it breached as alleged in her Complaint.

Plaintiff is an invitee because she has alleged both her traffickers and Northbrook benefited from her sex trafficking at the hotel. (Compl. ¶¶ 30, 33, 40). That is sufficient to show a "mutual benefit" to both Plaintiff's traffickers and the landowner [Northbrook]—*i.e.*, by virtue of Plaintiff's traffickers paying Defendant for the room, Defendant received a "benefit," and by virtue of Plaintiff's traffickers receiving the room, Plaintiff's traffickers received a benefit. Thus, under Georgia law, Plaintiff's traffickers were invitees. *Freeman v. Eichholz*, 308 Ga. App. 18, 21, 705 S.E.2d 919, 923 (2011) ("The accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both[.]"). Further, "[a] tenant's invitee has the same rights towards the landlord as does the tenant. The landlord must exercise due care as to both." Ga. Law of Torts § 5:12; *see also Yates v. Crumbley*, 116 Ga. App. 366, 368, 157 S.E.2d 295, 297 (1967) (same). That means Northbrook (landlord) owed the same duty to Plaintiff's traffickers (tenant) as Plaintiff (tenant's invitee). Because Plaintiff has properly alleged that she was an invitee, Northbrook's arguments are inapposite.[14]

---

[14] Northbrook's "lawful purpose" argument misses the mark. O.C.G.A. § 51-3-1 does not preclude those who commit unlawful acts from being invitees because it focuses on the actions and intent of the owner or occupier of land. *See Stephens*

Regardless, even if Plaintiff were not an invitee (she is), Northbrook has a duty to both licensees and trespassers not to injure them willfully or wantonly. O.C.G.A. §§ 51-3-2(b); 51-3-3(b). And that is precisely what Plaintiff has alleged in Paragraph 15 of her Complaint. Whatever Plaintiff's legal status, she has adequately alleged that Northbrook owes her a duty that it breached, and Northbrook makes no other argument concerning Plaintiff's negligence claims.

Moreover, Northbrook says nothing about Plaintiff's negligent retention and hiring claims. If Northbrook is arguing that its employees were acting in an "unauthorized" fashion outside the scope of their employment, then its employees are simply considered other third-party criminals for which Northbrook owed a duty to Plaintiff. *Tomsic v. Marriott Int'l, Inc.*, 321 Ga. App. 374, 383–84, 739 S.E.2d 521, 531 (2013) ("because his alleged actions against Tomsic were outside the scope of his employment, Sumner is considered a third party for the purposes of premises liability for foreseeable criminal attacks."). For Plaintiff's negligent retention and

---

*v. Clairmont Ctr., Inc.*, 230 Ga. App. 793, 794, 498 S.E.2d 307, 308–309 (1998) (assailants "posing as customers" had "entered the shop as business invitees, not intruders"). When the owner or occupier of land—here, Northbrook—expressly or impliedly "***induces or leads others*** to come upon his premises for ***any*** lawful purpose" the owner or occupier is liable to "such persons." § 51-3-1 (emphasis added). The question is what the owner occupier did, not what an innocent victim of child sex trafficking did. Did Northbrook invite Plaintiff onto its property for a lawful purpose? Or did Northbrook invite Plaintiff onto its property for an unlawful purpose? It clearly knew she was there based on repeated interactions with her.

hiring claims, "[t]he question is not whether the servant was acting within the scope of his authority, but whether in view of his known characteristics such an injury by him was reasonably to be apprehended or anticipated." *Underberg v. S. Alarm, Inc.*, 284 Ga. App. 108, 113, 643 S.E.2d 374, 379 (2007); *Herring v. Berkshire Hathaway Homestate Ins. Co*., No. 1:18-CV-4711-WMR, 2020 WL 6135654, at *3 (N.D. Ga. Sept. 24, 2020). Because Northbrook makes no argument to dismiss these claims, they should not be dismissed.

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that this Court deny Northbrook's original motion to dismiss, and in the alternative, to strike certain paragraphs in Plaintiff's Complaint (ECF No.15), and Northbrook's supplemental motion to do the same (ECF No.37)

This 26th day of January, 2022.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

                              */s/ Patrick J. McDonough*
                              Jonathan S. Tonge
                              jtonge@atclawfirm.com
                              Georgia Bar No. 303999
                              Patrick J. McDonough
                              pmcdonough@atclawfirm.com
                              Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

                              Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing document has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing document into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 26th day of January, 2022.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

Attorneys for Plaintiff