UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,

        Plaintiff,

    v.

NORTHBROOK INDUSTRIES,
INC., D/B/A UNITED INN AND
SUITES,

        Defendant.

CIVIL ACTION NO.

1:20-CV-05233-SEG

## **O R D E R**

This case is before the Court on Defendant's Second Motion to Dismiss Plaintiff's Complaint for Damages (Doc. 37). Having carefully considered the parties' positions and the applicable law, the Court enters the following order.

## I.    **Background**

Plaintiff, proceeding anonymously as J.G., alleges that in 2018 and 2019, she was trafficked for sex as a minor while residing at the United Inn, a hotel owned, operated, maintained, controlled, and managed by Defendant Northbrook Industries, Inc. ("Northbrook"). (Compl. ¶¶ 8-10, 20.) Plaintiff contends that while staying at the United Inn, she exhibited numerous well-known and visible signs, characteristics, and behaviors common to minor sex trafficking victims, including her age and appearance, "physical deterioration,

poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others . . . loitering, and soliciting male patrons." (*Id.* ¶ 23.) She allegedly stayed at the United Inn for up to two weeks at a time in the company of various, adult men. (*Id.* ¶¶ 28, 31.) She allegedly lacked "control of or possession of money." (*Id.* ¶ 23.) Plaintiff would also allegedly interact with United Inn staff while wearing "little clothing" in "rooms replete with evidence of sex trafficking." (*Id.* ¶ 29.)

Plaintiff alleges that dozens of adult men—sometimes more than eight in one day—visited the rooms in which Plaintiff was trafficked to purchase sex. (*Id.* ¶¶ 23, 25.) These men allegedly arrived at the hotel in view of the hotel's lobby, which had a large window facing the parking lot. (*Id.* ¶ 25.) According to Plaintiff, other women and minors were also sex trafficked at the United Inn while Plaintiff was there. (*Id.* ¶ 24.) Plaintiff further alleges that her sex traffickers "carried weapons and operated openly" on the hotel's premises, common areas, and approaches. (*Id.* ¶ 20.) Throughout her stays at the United Inn, Plaintiff allegedly walked around the hotel premises and common area, (again) "often" wearing "little clothing," even during periods when school was in session for children of Plaintiff's age. (*Id.* ¶ 31.)

Plaintiff's rooms at the United Inn allegedly contained condoms, drugs, weapons, and a large number of towels, sheets, and tissues. (*Id.* ¶ 26.) Plaintiff

contends that on more than one occasion, Northbrook employees entered Plaintiff's room (for example, when housekeeping staff cleaned the room) and knew or should have known that the contents of her room were indicative of commercial sex activity. (*Id.* ¶ 27.)

Plaintiff further alleges that the persons involved in trafficking her for sex had previously rented rooms at the United Inn for sex trafficking purposes. (*Id.* ¶ 37.) Moreover, Plaintiff asserts that Northbrook's employees acted as lookouts for Plaintiff's sex traffickers, alerting them to police activity at the hotel as well as warning about guest complaints and high visitor traffic drawing unwanted attention. (*Id.* ¶ 39.) Plaintiff alleges at least one of her sex traffickers paid Northbrook's employees to act as lookouts. (*Id.* ¶ 40.) Ultimately, Plaintiff alleges that Northbrook, which received revenue from room rentals, knew or should have known that she was a victim of trafficking based on her appearance, her behavior, and the number of adult men coming and going from her hotel room. (*Id.* ¶¶ 41, 43.)

## II.    Procedural History

On December 28, 2020, Plaintiff filed this suit against Northbrook alleging two causes of action: (1) violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), and (2) common law negligence. (Doc. 1.) On February 12, 2021, Northbrook filed a motion to dismiss Plaintiff's claims.

3

(Doc. 15.)   On July 30, 2021, the Court stayed the case while the Eleventh Circuit Court of Appeals considered a case with similar allegations, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).  (Doc. 31.)  On December 22, 2021, the Eleventh Circuit issued its decision, and, on December 30, 2021, the Court reopened this case and directed Northbrook to re-file its motion to dismiss in consideration of the Eleventh Circuit's decision.   (Doc. 36.) Northbrook then filed its second motion to dismiss on January 12, 2022.  (Doc. 37.)  Plaintiff submitted a response (Doc. 39) to which Northbrook replied (Doc. 41).  The motion is now ripe for review.

## III.  Legal Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co.*, 491 F. App'x 988, 989 (11th Cir. 2012).   Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a complaint to be "plausible on its face," the facts alleged must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wooten v. Quicken Loans, Inc.* 626 F.3d 1187, 1196 (11th Cir. 2010).  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss entails a two-pronged approach: (1) a court must identify any allegations in the pleading that are merely legal conclusions to which the "assumption of truth" should not apply, and (2) where there are remaining well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## IV. Discussion

In its motion, Northbrook contends that Plaintiff's TVPRA and negligence claims fail as a matter of law and should be dismissed.  The Court addresses these claims in turn.

**A. TVPRA Claim**

The Trafficking Victims Protections Reauthorization Act ("TVPRA") offers a civil remedy to people who have experienced certain types of human trafficking.  18 U.S.C. § 1595(a).  The statute states in part:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Under the TVRPA, therefore, a victim of sex trafficking may bring either (a) a direct civil claim against the perpetrator of their trafficking or (b) a "beneficiary" civil claim against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).  In this case, Plaintiff is not suing the perpetrator of her trafficking; instead, she seeks to establish beneficiary liability on Northbrook, a business that she claims knowingly benefited from sex trafficking.

The Eleventh Circuit Court of Appeals, in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), articulated the elements of a TVPRA beneficiary claim.  To state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* at 726.

In order for Plaintiff's TVPRA beneficiary claim to survive Northbrook's motion to dismiss, Plaintiff must plausibly allege facts sufficient to satisfy each of these four elements. For the following reasons, the Court finds that her complaint does so.

### 1. Element One: "Knowingly Benefited"

To satisfy the first element of a TVPRA beneficiary claim, a plaintiff must allege that the defendant "knew it was receiving some value from participating in the alleged venture." *Red Roof Inns*, 21 F.4th at 724. Here, Plaintiff's complaint alleges that Northbrook collected revenue from the rental of the rooms in which Plaintiff was trafficked for sex. (Compl. ¶ 36.) Specifically, Plaintiff alleges that Northbrook, as the owner and operator of the United Inn, knowingly received a percentage of the revenue generated from the rate charged and paid for the rooms in which Plaintiff was trafficked. (*Id.* ¶ 75.) Several district courts, including this one, have found that the rental of a room constitutes a financial benefit from a relationship with the trafficker

sufficient to meet this element of the § 1595(a) standard. *A.G. v. Northbrook Indus., Inc.*, 1:20-CV-05231-JPB, 2022 WL 1644921, at *2 (N.D. Ga. May 24, 2022); *G.W. v. Northbrook Indus., Inc.*, 1:20-CV-05232-JPB, 2022 WL 1644923, at *2 (N.D. Ga. May 24, 2022); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp.3d 959, 965 (S.D. Ohio 2019); *S.Y. v. Naples Hotel Co.*, 476 F. Supp.3d 1251, 1257 (M.D. Fla. 2020) (collecting cases). The Court agrees that such an allegation is sufficient to satisfy this element. Therefore, Plaintiff plausibly alleges the first element of her TVPRA beneficiary claim.

## 2. Element Two: Participation in a Venture

Next, Plaintiff must allege that Northbrook "participat[ed] in a venture" under circumstances that would violate the TVPRA. 18 U.S.C. § 1595(a). In the context of a civil suit, the Eleventh Circuit has defined "participation in a venture" as "t[aking] part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns*, 21 F.4th at 725. Unlike in the criminal provisions of the TVPRA, there is no scienter requirement for civil TVPRA beneficiary claims. *Id.* at 724. In other words, a plaintiff need not show that the defendant "knowingly facilitated a violation" under the TVPRA. *Id.*

To determine what conduct does and does not reach the level of "participation in a venture," the Court looks to the Eleventh Circuit's analysis

in *Red Roof Inns*.  In that case, the plaintiffs were sex trafficking victims who sued the franchisors of the hotels at which they were trafficked.  *Id.* at 719.  To show that the franchisors participated in a sex trafficking venture with the plaintiffs' sex traffickers, the plaintiffs alleged that the franchisors received revenue from renting rooms to the sex traffickers, oversaw operations and hotel policies, controlled the training of managers, and "took remedial action when revenue was down." *Id.* at 726-27.  The only allegations the plaintiffs made as to the franchisors' knowledge or participation in the sex trafficking venture were that "the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking" and the franchisors "received reviews mentioning sex work occurring at the hotels." *Id.* at 727.  The Eleventh Circuit deemed these allegations to be insufficient to establish the franchisors' participation in a common undertaking or enterprise with the plaintiffs' sex traffickers, stating that "observing something is not the same as participating in it." *Id.*

Although plaintiffs in *Red Roof Inns* failed plausibly to allege facts that satisfied the second element of a TVPRA beneficiary claim, the Eleventh Circuit in that case provided insight into the kind of conduct that, if alleged, *would* pass muster under the TVPRA.  For example, the court endorsed the holding in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), a First Circuit case

in which a sex trafficking victim's suit against the operators of the hotel where she was held hostage and sexually abused survived a motion to dismiss. In *Ricchio*, the First Circuit concluded that the plaintiff had adequately alleged the hotel operators' association with a sex trafficking venture because the plaintiff's abuser "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit." *Id.* at 555. Further, the *Ricchio* plaintiff alleged that, by renting a room to her abuser, the hotel operators were "associating with him in an effort to force [the plaintiff] to serve their business objective." *Id.* The Eleventh Circuit in *Red Roof Inns* determined that "these kinds of allegations would establish a hotel operator's participation in a venture with a sex trafficker." 21 F.4th at 725-26.

This Court additionally finds persuasive the concurring opinion in *Red Roof Inns*, in which Judge Jordan drew a distinction between a franchisor and a hotel operator in the context of a TVPRA case. *Id.* at 729-30. Specifically, the concurring opinion underscored that the Eleventh Circuit's "opinion addresses the plaintiffs' TVPRA 'beneficiary' claims against franchisors, which do not operate or manage the hotels at which sex trafficking allegedly occurred." *Id.* at 729. But, "similar claims against those who own, operate, or manage the hotels in question . . . would withstand a Rule 12(b)(6) motion to dismiss." *Id.*

Courts in other districts have similarly grappled with the question of what conduct constitutes a defendant's participation in a venture under § 1595(a). In reviewing these cases, the factor that appears to differentiate plaintiffs who adequately state TVPRA beneficiary claims from those who do not is that the successful plaintiffs "connect the dots" between the plaintiff's particular experience as a victim of trafficking and the specific defendant in the case. *See, e.g.*, *G.G. v. Salesforce.com, Inc.* No. 20-cv-02335, 2022 WL 1541408, at *12 (N.D. Ill. May 16, 2022); *B.M. v. Wyndham Hotels & Resorts, Inc.* No. 20-cv-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020).

One way to connect the dots is to allege a "direct association" between the beneficiary and the plaintiff's trafficker. *See G.G.*, 2022 WL 1541408, at *12; *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020). Another way is to show a "continuous business relationship" between a defendant hotel and a sex trafficker where the defendants rented rooms to people it knew or should have known were engaged in sex trafficking. *See Northbrook*, 2022 WL 1644921, at *3 (finding such conduct sufficient to show participation in a venture); *S.Y. v. Best Western Int'l, Inc.*, 2:20-cv-616-JES-MRM, 2021 WL 2315073, at *4 (M.D. Fla. June 7, 2021) (same); *M.A.*, 425 F. Supp.3d at 971 (same); *H.H. v. G6 Hosp., LLC*, No. 2:19-cv-755, 2019 WL 6682152, at *5 (S.D. Ohio Dec. 6, 2019) (same); *Ricchio*, 853

F.3d at 555 (looking to "prior commercial dealings . . . which the parties wished to reinstate for profit" as evidence of the hotel defendant's participation in a venture).

Here, Plaintiff has plausibly alleged Northbrook's participation in a venture with the persons who were engaged in trafficking Plaintiff for sex. Unlike in *Red Roof Inns* (which involved defendant hotel franchisors), Plaintiff brings her TVPRA beneficiary claim against the *operator* of the hotel in which she was allegedly trafficked—an operator that was closely involved with the daily management of the hotel and allegedly did far more than simply receive revenue and reviews mentioning sex work.  (*See* Compl. ¶ 10.)

Further, Plaintiff has asserted facts sufficient to allege both a "direct association" and a "continuous business relationship" between Northbrook and her traffickers.  (*See id.* ¶¶ 11, 37, 39-40.)  As for the "direct association," Plaintiff alleges that "Northbrook's employees, agents, and/or representatives" assisted those who trafficked Plaintiff by "acting as lookouts for Plaintiff's traffickers and informing the traffickers of police activity at the hotel as well as warning Plaintiff's traffickers about guest complaints and high visitor traffic drawing unwanted attention." (*Id.* ¶ 39.)  Plaintiff further alleges that at least one of her traffickers paid Northbrook's employees, agents, and/or representatives to act as lookouts and to notify the trafficker of police activity

at the hotel. (*Id.* ¶ 40.) These allegations directly link specific conduct of Northbrook employees to the advancement of the sex trafficking operation and, as such, are sufficient to satisfy the second element of the TVPRA beneficiary claim.

Plaintiff, however, goes further. She also alleges a "continuous business relationship" akin to the one described in *Ricchio*. Plaintiff alleges that her traffickers had previously rented rooms at the United Inn to traffic women for sex, and Northbrook should have known that the traffickers were back again to engage in sex trafficking with Plaintiff. (*Id.* ¶¶ 11, 37.) In support of the "continuous business relationship" theory, Plaintiff specifically asserts that: she and other sex trafficking victims at the United Inn exhibited obvious signs, characteristics, and behaviors of minor victims of sex trafficking such as "inappropriate" appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, loitering, and soliciting male patrons (*Id.* ¶¶ 23-24); her sex traffickers carried weapons and "operated openly" on the hotel's premises, common areas, and approaches (*Id.* ¶ 20); dozens of adult men—and sometimes more than eight in one day—came to Plaintiff's room "in view of the hotel's lobby" to purchase sex (*Id.* ¶¶ 22-25); Plaintiff would interact with United Inn staff while wearing "little clothing" (*Id.* ¶ 29); and, on multiple occasions, United Inn staff entered Plaintiff's room, which contained condoms,

drugs, weapons, and a large number of towels, sheets, and tissues (*Id.* ¶¶ 26-27).  As in *Northbrook*, *S.Y.*, *M.A.*, *H.H.*, and *Ricchio* (cited above), these allegations are sufficient to plausibly allege at this stage of the case that Northbrook participated in a venture with Plaintiff's traffickers by renting rooms to people it knew or should have known were engaging in sex trafficking.

The foregoing allegations, which are indicative of Northbrook's alleged common undertaking with Plaintiff's sex traffickers, distinguish this case from a recent case in this district in which a plaintiff failed to state a TVPRA beneficiary claim.  In *A.B. v. H.K. Grp. of Co.*, 1:21-cv-1344-TCB, 2022 WL 467786 (N.D. Ga. Feb. 9, 2022), a plaintiff failed to plausibly allege a hotel owner/manager's participation in a sex trafficking venture.[1]  In that case, the plaintiff alleged only that the defendants observed the plaintiff's physical appearance and the condition of her room, and that by failing to assist her or alert authorities, the defendants participated in a sex trafficking venture.  2022 WL 467786, at *10-11.  The Court dismissed the plaintiff's TVPRA claim, finding that, at most, plaintiff alleged "[d]efendants observed and/or had actual or constructive knowledge of the illegality of sex trafficking

---

[1] See also *C.C. v. H.K. Grp. of Co.*, 1:21-cv-1345-TCB, 2022 WL 467813 (N.D. Ga. Feb. 9, 2022), a companion case to *A.B.* in which the Court reached the same conclusion based on facts identical to those alleged in *A.B.*

allegedly occurring in its hotels." 2022 WL 467786, at *10-11. Here, by contrast, Plaintiff's allegations—namely, that Northbrook employees were paid to assist Plaintiff's sex traffickers by acting as lookouts, and that Northbrook previously rented rooms to Plaintiff's sex traffickers and rented to them again despite having constructive knowledge of their intent to traffic Plaintiff—go far beyond mere observation of potential sex trafficking.

Notwithstanding these allegations, Northbrook believes the Court should discount Plaintiff's alleged facts with respect to the "participation in a venture" element for two reasons. First, Northbrook contends that Plaintiff makes only "boilerplate allegations," and does so "on 'information and belief,' without any factual basis." (Doc. 37-1 at 12.) The Court is not convinced by this argument. On the contrary, the allegations discussed above contain specific details of Northbrook's alleged conduct that are not mere formulaic recitations of elements—especially when viewing all allegations in the light most favorable to Plaintiff, as the Court must do on a 12(b)(6) motion. Further, as stated in a case Northbrook cites in favor of its position, *"Twombly's* 'plausibility' standard d[oes] not prevent a plaintiff from pleading facts based upon information and belief, 'where the facts are peculiarly within the possession and control of the defendant.'" *Boateng v. Retirement Corp. of Am. Partners, L.P.*, No. 1:12-cv-01959-JOF, 2013 WL 12061901, at *4 (N.D. Ga.

March 5, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d. Cir. 2010)).  Here, Plaintiff, a victim of underage sex trafficking, likely has uniquely inferior access to the facts in Northbrook's possession at this point in the litigation.    Accordingly,  it  would  be  inconsistent  with  the  *Twombly* framework to discount Plaintiff's allegations solely on account of some of them being based "on information and belief."

Second, Northbrook contends that, to the extent Northbrook employees took part in a common enterprise with Plaintiff's sex traffickers, such conduct was outside the scope of their employment and cannot be imputed to Northbrook.  Northbrook may ultimately be correct in this assertion, but discovery will be necessary to elucidate the relevant facts.  It would be premature at the 12(b)(6) stage for the Court to dismiss on these grounds. *See Johnson St. Props., LLC v. Clure*, 805 S.E.2d 60, 66 (Ga. 2017) ("Typically, questions of the existence and extent of an agent's authority are generally for the triers of fact") (internal quotation marks omitted); *see also Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp.3d 1338, 1357 (N.D. Ga. 2018).

Because Plaintiff asserts specific facts as to Northbrook taking part in a common undertaking or enterprise involving risk or potential profit with

her sex traffickers, she has plausibly alleged the second element of her

TVPRA claim.[2]

### 3. Element Three: The Venture Violated the TVPRA as to Plaintiff

To satisfy the third element, the plaintiff must allege that "the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff." *Red Roof Inns*, 21 F.4th at 725.  The TVPRA criminalizes various acts of human trafficking.  18 U.S.C. § 1591.  In this case, Plaintiff specifically alleges that she was trafficked in violation of § 1591(a), which makes it a crime to "caus[e]" a person under 18 years old to "engage in a commercial sex act." (Compl. ¶ 8); 18 U.S.C. § 1591(a). Consequently, Plaintiff must plausibly allege that the venture in which Northbrook participated caused Plaintiff to engage in a commercial sex act.  18 U.S.C. § 1591(a); *Northbrook*, 2022 WL 1644921, at *3.

---

[2] This Court's conclusion with respect to the second TVPRA element is in line with *A.G. v. Northbrook Indus., Inc.*, 1:20-CV-05231-JPB, 2022 WL 1644921 (N.D. Ga. May 24, 2022) and *G.W. v. Northbrook Indus., Inc.*, 1:20-CV-05232-JPB, 2022 WL 1644923 (N.D. Ga. May 24, 2022), two other minor sex trafficking cases currently proceeding against Northbrook.  In those cases, this Court found the plaintiffs' TVPRA beneficiary claims, which were based on substantially similar facts to the facts in the instant case, adequately alleged Northbrook's participation in a venture and survived a 12(b)(6) motion to dismiss.

The Court finds that Plaintiff's allegations are more than sufficient to show that the venture alleged in the complaint violated the TVPRA as to Plaintiff.  Plaintiff alleges, and Northbrook does not dispute, that she was sex trafficked as a minor and was caused to engage in commercial sex acts with dozens of adult men from 2018 to 2019.  (Compl. ¶¶ 17, 25.)  As a result, Plaintiff has satisfied the third element of her TVPRA beneficiary claim.  *See Northbrook*, 2022 WL 1644921, at *3 (finding substantially similar allegations sufficient to satisfy the third TVPRA element).

### 4. Element Four: Defendant Knew or Should Have Known the Venture Violated the TVPRA as to Plaintiff

The final element of a TVPRA beneficiary claim comes from the statutory requirement that the defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter."  18 U.S.C. § 1595(a).  This requires the plaintiff to allege that the defendant had either actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff.  *Red Roof Inns*, 21 F.4th at 725.  Knowledge is defined as "a[n] awareness or understanding of a fact or circumstance."  *Red Roof Inns*, 21 F.4th at 725 (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019)).  Constructive knowledge, on the other hand, is "that knowledge which 'one using reasonable care or diligence should have.'"  *Id.* (quoting *Constructive*

*Knowledge*, Black's Law Dictionary (11th ed. 2019)).  Thus, Plaintiff must plausibly allege that Northbrook had at least constructive knowledge that the venture in which it participated and from which it benefited violated the TVPRA as to Plaintiff.  *Red Roof Inns*, 21 F.4th at 725.

    The Court finds that Plaintiff has adequately alleged that Northbrook had actual or constructive knowledge of Plaintiff's sex trafficking at the United Inn.  In Plaintiff's complaint, she alleges that Northbrook knew or should have known about the sex trafficking venture based on the following: "[Plaintiff's] age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, and soliciting male patrons." (Compl. ¶ 23.)  Also relevant to this element are Plaintiff's allegations that she interacted with United Inn staff while exhibiting the above signs and characteristics of trafficking (*Id.* ¶ 29); dozens of adult men visited Plaintiff's room (*Id.* ¶ 25); Plaintiff's sex traffickers "carried weapons and operated openly and brazenly on the hotel's premises, common areas, and approaches" (*Id.* ¶ 20); and Plaintiff's room, which Northbrook employees entered on more than one occasion, contained condoms, drugs, weapons, and many towels, sheets, and tissues (*Id.* ¶¶ 26-27).  Significantly, Plaintiff also alleges that her sex traffickers had previously trafficked victims at the United Inn and some of

Northbrook's employees acted as lookouts for Plaintiff's traffickers. (*Id.* ¶¶ 37, 39.) Courts considering similar allegations have found them sufficient to infer at this stage of the case that a defendant knew or should have known of the sex trafficking venture, and this Court finds these allegations sufficient as well. *Northbrook*, 2022 WL 1644921, at *4; *S.Y.*, 476 F. Supp.3d at 1257 (collecting cases).

As explained in the preceding paragraphs, Plaintiff has sufficiently alleged facts to support each element of her TVPRA beneficiary claim.

### B. Negligence Claim

Plaintiff brings a negligence claim against Northbrook, alleging that she was an invitee on Northbrook's premises and that Northbrook breached its duty to her by failing to exercise reasonable care in the operation of the United Inn. (Compl. ¶¶ 84-111.) Northbrook contends it owed no duty to Plaintiff and seeks to dismiss Plaintiff's negligence claim on two grounds: (1) Plaintiff fails to plausibly allege that she was an invitee on Northbrook's premises, and (2) Plaintiff was not on Northbrook's premises "for any lawful purpose."

### 1. Whether Plaintiff Was an Invitee on Northbrook's Premises

With respect to Northbrook's invitee argument, the Court finds at this preliminary stage of the litigation that Plaintiff has plausibly alleged her status as an invitee on Northbrook's premises. The duty of an owner or

occupier of land to invitees on its premises is prescribed by O.C.G.A. § 51-3-1 which states as follows:

> Duty of owner or occupier of land to invitee. Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51-3-1.

The test to determine whether one is an invitee is "whether the party coming onto the business premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was for business with one other than the owner or occupier." *Freeman v. Eicholz*, 705 S.E.2d 919, 923 (Ga. App. 2011).

The facts in this case as averred in Plaintiff's complaint do not make for a straightforward determination of Plaintiff's status on Northbrook's premises. *See A.B.*, 2022 WL 467786, at *5. Plaintiff alleges that, although her traffickers were the ones who rented the rooms in which she stayed, Northbrook owed Plaintiff a duty as an invitee on its premises. (Compl. ¶¶ 35, 86.) There is no question that one who rents a hotel room is an invitee on the hotel's premises. *See, e.g., Briddle v. Cornerstone Lodge of Am., LLC*, 654

21

S.E.2d 188, 189 (Ga. App. 2007). However, Georgia law appears at best unsettled as to whether a hotel invitee's guest is an invitee, licensee, or something else. This classification is of paramount importance because it dictates the scope of the duty owed to the guest. *See Martin v. Six Flags Over Ga. II, L.P.*, 801 S.E.2d 24, 29 (Ga. 2017).

The Court observes that in most circumstances, an invitee's guest stands in the invitee's shoes and is herself an invitee. *See* 43A C.J.S. *Inns, Hotels, and Eating Places* § 47 (2021) ("Persons who respond to an invitation, either express or implied, to visit or call on registered guests of an inn at proper times are invitees . . . ."); *Anderson v. Cooper*, 104 S.E.2d 90 (Ga. 1958) (holding that parent-customer's infant child was an invitee because the parent would not have been present at the business if she could not bring her child—thus the business owner benefitted from the child's presence); *Cham v. ECI Mgmt. Corp.*, 856 S.E.2d 267, 279 (Ga. 2021) (Peterson, J., dissenting) (noting that similar to *Anderson*, where it was "'obvious' that a store owner would receive a benefit from permitting an invitee's guest to be present," in the case under consideration, "when renters are allowed to host guests, the guests are thus implicitly invited by the landlord"); *Ortner v. Linch*, 128 So.2d 152, 153 (Fla. Dist. Ct. App. 1960) ("a guest of a guest in the hotel" has "the status of . . . an invitee." (citing *Steinberg v. Irwin Operating Co.*, 90 So.2d 460, 461 (Fla.

1956))); *Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483, 491 (Md. Ct. Spec. App. 2005) ("Generally, a property owner owes the same duty to the guest of an invitee as it owes to the invitee himself."); *Mackey v. Allen*, 396 S.W.2d 55, 58 (Ky. Ct. App. 1965) ("[B]ecause her visit to the premises was 'for the convenience or arose out of the necessities' of another person who definitely was in the [business] for purposes of the possessor's business," "a business invitee's guest is also an invitee.").

Considering Georgia law and the settled law of other jurisdictions, the Court holds that at this preliminary stage, Plaintiff has sufficiently alleged that—as the guest of an invitee—she was herself an invitee.

### 2. Whether Plaintiff Was Induced Onto Northbrook's Premises "For Any Lawful Purpose"

Northbrook argues that O.C.G.A. § 51-3-1 requires that, in order to be an invitee entitled to a duty of care, a person must be on the subject premises "for any lawful purpose." Because Plaintiff was on Northbrook's premises for sex trafficking (i.e., an *unlawful* purpose), Northbrook posits, Plaintiff was not entitled to the duty of care owed to invitees.

Northbrook misconstrues O.C.G.A. § 51-3-1. The statute does not preclude those who commit—or are victims of—unlawful acts from being invitees; rather, the plain language of the statute applies when the "*owner or*

23

*occupier of land*, by express or implied invitation, *induces or leads* others to come upon his premises *for any lawful purpose*." O.C.G.A. § 51-3-1 (emphasis added); *see Stephens v. Clairmont Ctr., Inc.*, 498 S.E.2d 307, 309 (Ga. App. 1998) (noting that assailants "posing as customers" had "entered the shop as business invitees, not intruders"). Thus, the question is not whether Plaintiff engaged in unlawful activity while on Northbrook's property. Instead, the relevant inquiry is whether Northbrook induced or led Plaintiff to come upon its property for a lawful purpose.

Plaintiff, in alleging her status as an invitee, suggests Northbrook invited her onto its property for a lawful purpose. Northbrook, however, believes that this invitee argument is irreconcilable with Plaintiff's contention that Northbrook participated in a venture with Plaintiff's traffickers and "Northbrook knew or should have known the venture engaged in acts in violation of the TVPRA." (Compl. ¶ 78.) The Court acknowledges the potential inconsistency between these positions. Nonetheless, Federal Rule of Civil Procedure 8 provides that, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3); *see Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 647 (11th Cir. 2019) ("[W]e explicitly permit litigants to assert inconsistent positions when pleading their case."). As such, the Court is unwilling to dismiss Plaintiff's negligence claim pursuant

to O.C.G.A. § 51-3-1 before the record has been developed. Discovery will shed light on facts pertinent to the relationships between Plaintiff, Northbrook, and Plaintiff's traffickers, and those facts will guide the ultimate determination of whether an invitor-invitee relationship existed between Northbrook and Plaintiff. The Court declines, at this early point in the litigation, to find Plaintiff's negligence claim deficient as a matter of law.

## V.    Conclusion

For the foregoing reasons, Northbrook's Second Motion to Dismiss for Failure to State a Claim (Doc. 37) is **DENIED**.

**SO ORDERED** this 2nd day of August, 2022.

SARAH E. GERAGHTY
United States District Judge