IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,                              :
                                   :
          Plaintiff,               :
                                   :        CIVIL ACTION FILE
     vs.                           :
                                   :        NO. 1:20-cv-05233-SEG
NORTHBROOK INDUSTRIES,             :
INC., D/B/A UNITED INN AND         :
SUITES,                            :
                                   :
          Defendant.               :

### PLAINTIFF J.G.'S MOTION FOR SANCTIONS AGAINST DEFENDANT AND MEMORANDUM IN SUPPORT

## **TABLE OF CONTENTS**

BACKGROUND……………………………………………………………...2

I.   Plaintiff Sued United Inn & Suites in December 2020…………………….2

II.  Plaintiff Served Her Initial Discovery Requests on Defendant in
     September 2022, and Defendant Responded in November 2022………....2

III. Plaintiff's February 2023 Deposition of Defendant's 30(b)(6)
     Representative Revealed Defendant Did Not Search Its ESI
     or Relevant Files Before Responding to Plaintiff's September
     Discovery Requests…………………………………………………………..3

IV.  Plaintiff Spent the Next Two Months Trying to Get Defendant
     to Search for and Produce Documents Plaintiff Requested in
     September 2022…………………………………………………………………4

V.   Defendant Produced Approximately 3,500 Pages—Including the
     Most Important in the Case—After Discovery Was Supposed to
     Close and Eight Months after Plaintiff Initially Requested the
     Documents………………………………………………………………………8

VI.  In the Weeks After Defendant's April 20th Production of
     Smoking-Gun Documents, Plaintiff Scrambled to Revise
     Her Discovery Strategies, Retake Depositions, and Re-Visit
     Previous Discovery Work……………………………………………………12

ARGUMENT……………………………………………………………………..14

I.   Defendant Must Be Sanctioned Under Rule 26(g)(3) Because
     Defendant Did Not Conduct a "Reasonable Inquiry" of the
     Records in its Possession, Custody, or Control Before
     Responding to Plaintiff's Discovery Requests……………………………..16

II.  In Addition to the Mandated Sanctions, Discretionary Sanctions
     are Also Warranted Because of the Magnitude of Defendant's

Negligence, Defendant's Delay in Correcting It, and the
Prejudice to Plaintiff…………………………………………………..19

III.    Plaintiff Requests Targeted Sanctions Under Rule 26(g)(3),
Rule 37(c)(1), and the Court's Inherent Powers Because of
Defendant's Discovery Negligence…………………………………...24

In this case concerning sex trafficking of a minor, Defendant responded to Plaintiff's discovery requests without searching for or producing records from its electronically stored information (ESI), sex trafficking file, and staffing files. Four months later, in depositions, Plaintiff uncovered the problem. Two months later, after Plaintiff's repeated requests and weeks after discovery was supposed to close, Defendant searched its ESI and relevant business files and produced 3,500 new pages. The late documents, which are the most critical in the case, include smoking-gun police notices to the hotel identifying Plaintiff as a "missing" 16-year-old on the property. Defendant's late production conflicts with earlier discovery responses on material issues, like whether Defendant knew the Plaintiff, who worked at the hotel, and training of staff. Sanctions are required under Rule 26(g)(3) because Defendant failed to make a "reasonable inquiry" before responding to discovery.

Sanctions are also appropriate under this Court's discretionary power because of the scale of Defendant's discovery negligence, Defendant's delay in correcting it, and the prejudice Defendant's negligence caused and will cause Plaintiff. Defendant's late, pivotal production meant Plaintiff wasted and misdirected resources in the discovery period and then had to re-do discovery work and revise strategies in the weeks *after* discovery was supposed to have closed on March 31, 2023 (Doc. 51). For these reasons, sanctions must *and* should be imposed here.

## BACKGROUND

### I.    Plaintiff Sued United Inn & Suites in December 2020.

On December 28, 2020, Plaintiff J.G. sued Defendant Northbrook Industries, Inc. d/b/a United Inn & Suites ("Defendant" or "United Inn") and alleged that United Inn is liable to her for violation of 18 U.S.C. 1595(a) and for negligence because she was sex trafficked as a 16-year-old at United Inn for weeks in October – November 2018 and for days in January 2019.  Defendant filed an answer on August 15, 2022, (Doc. 45), because of Rule 12(b)(6) briefing.  (*See* Doc. 50 at ⁋⁋ 1 – 11).  The case was assigned to a four-month discovery track.  (Doc. 45).  On December 16, 2022, the parties filed a joint motion to extend the discovery deadline by 90 days to March 31, 2023 (Doc. 50), which the Court granted, (Doc. 51).

### II.    Plaintiff Served Her Initial Discovery Requests on Defendant in September 2022, and Defendant Responded in November 2022.

On September 22, 2022, Plaintiff served Defendant with written discovery requesting Defendant's documents on a variety of subjects, including sex trafficking and commercial sex, Plaintiff and other minor trafficking victims, security at the hotel, crime at the hotel, staff training, names of staff, and more.  (Exhibit 1). Plaintiff's requests sought Defendant's responsive "Documents" and "Communications," which were defined broadly to include electronically stored information ("ESI")—*e.g.*, e-mails, text messages, and computer records.  On

2

November 2, 2022, Defendant responded (Exhibit 2) and produced 623 pages. None of the produced pages were emails, text messages, sex trafficking records, payroll records, or staffing records. Plaintiff understood that Defendant served its responses after conducting a reasonable search and producing the responsive documents in its possession, custody, or control. Plaintiff had no reason to believe otherwise then.

## III. Plaintiff's February 2023 Deposition of Defendant's 30(b)(6) Representative Revealed Defendant Did Not Search Its ESI or Relevant Files Before Responding to Plaintiff's September Discovery Requests.

In a February 2023 deposition, Defendant's 30(b)(6) representative admitted that significant ESI sources had not been searched prior to responding to Plaintiff's September 2022 discovery requests, including the hotel's Gmail account, the hotel's computer, and the hotel's text messages.[1] Plaintiff would not have learned about such key undisclosed information sources without asking specific questions about Defendant's collection of responsive information—questions that Defendant should have considered as part of its diligence in responding to Plaintiff's September discovery requests. The February 2023 depositions established that Defendant had not made a reasonable inquiry before responding to Plaintiff's September requests.

---

[1] Plaintiff subsequently learned through re-opened depositions in May 2023 that as of February 2023 the hotel also had not searched its sex trafficking files or its staff files for, among other things, payroll records and names of staff working at the property during the relevant period.

3

The gravity of Defendant's discovery negligence and whether Defendant would act in a timely fashion to correct it remained unclear.[2]

## IV.    Plaintiff Spent the Next Two Months Trying to Get Defendant to Search for and Produce Documents Plaintiff Requested in September 2022.

On February 23, 2023, the day after the revelatory deposition, Plaintiff's counsel asked Defendant's counsel for the newly identified document sources to be searched and responsive documents to be produced because such records had been requested in September 2022.  (Exhibit 3).

On February 24, 2023, Plaintiff's counsel served supplemental discovery requests that were essentially duplicative of Plaintiff's September requests.  (Exhibit 4).  Defendant did not respond for weeks.

On March 20, 2023, Plaintiff's counsel emailed Defendant and followed up about "business emails, business text messages, payroll records, and other critically relevant documents" that Plaintiff "ha[d] not yet received" "even though the depositions … nearly one month ago" revealed that such documents were in Defendant's possession "and [Plaintiff's] original requests for production of documents served in September 2022 asked for such documents."     (Exhibit 5).

---

[2] Plaintiff did not understand the magnitude of Defendant's negligence until Defendant produced approximately 3,500 pages, many of which were smoking-gun documents, on April 20, 2023—more than 20 days after discovery was scheduled to close on March 31, 2023, (Doc. 51).

Defendant did not respond to the email until April 7th, after the March 31st fact discovery deadline.[3]  (Doc. 51).

On March 27, 2023—Defendant's deadline to respond to Plaintiff's supplemental requests (which duplicated the September 2022 requests)—Defendant did not produce any documents.   Instead, Defendant said it "will produce" documents responsive both to Plaintiff's September requests and February supplemental requests.  (Exhibit 6).  Defendant did not request an extension of time from Plaintiff and Plaintiff did not grant one.

On March 28, 2023, Plaintiff emailed Defendant to address Defendant's failure to produce the requested documents in response to the September requests and the February supplemental requests.  (Exhibit 7).

On March 29, 2023, Defendant's counsel responded, in part:

I have made arrangements to extract from my clients' devices the emails and text messages that are responsive to the outstanding requests.  The current plan is for that to happen next week.  We will produce documents as soon as possible thereafter, although without knowing the volume of documents I can't give you a date certain for production.  I will plan to check back in with you on timing once we've done the extraction and have a sense of the volume of materials to be produced.  (Exhibit 8).

---

[3] Plaintiff's March 20th email also provided suggested search terms to run across Defendant's email.  Defendant should have developed and run search terms in September 2022 after receiving Plaintiff's discovery requests.  Fed. R. Civ. P. 26(g)(3) (duty to make "reasonable inquiry").

Discovery was, at that time, set to close on March 31, 2023, under Doc. 51—*i.e.*, Defendant's "arrangements" to gather the documents requested in September 2022 and again in February 2023 were set to go into motion *after* the fact discovery deadline.   On March 29, 2023, Plaintiff responded by saying, in part:

> There is no explanation in your email for why the "current plan" was not set in motion in September 2022 when the original requests for production were received.  Or on the day of your client's depositions in February 2023 based on their testimony.  Or the day after when I emailed about the documents.  Or the day after that when I sent supplemental requests for production.  Or in the following weeks when I've sent repeated emails about overdue documents. The "current plan" is not even scheduled to go into motion until more than a week after the documents are due, and after discovery closes.

> More worrying, I received no advance notice of this plan until I emailed you about your client's failure to properly respond to the supplemental discovery requests, and I never received a request for my consent to this "plan," as if the rules in the FRCP and the Court's discovery deadlines are not enforceable and real.

> Your email also ignores that many of the documents requested in September 2022 and again in February 2023 that have still not been produced have nothing to do with your client's emails and text messages.  For example, payroll records, records from Dekalb County trainings, and so forth and so on (there are other categories of documents that I am not going to itemize again here, but that are laid out in both sets of prior requests for production of documents).  (Exhibit 8).

On March 30, 2023, Plaintiff's counsel and Defendant's counsel conferred by phone about Defendant's discovery negligence.  (Exhibit 9).  Defendant's counsel explained that Defendant was gathering documents and preparing to run search terms.  Left without a good option, Plaintiff's counsel agreed to give Defendant until

April 21, 2023 to respond fully and completely to Plaintiff's discovery requests. Plaintiff's counsel still did not know the significance of the forthcoming documents.

On March 31, 2023, Plaintiff's counsel drafted a motion and proposed order to extend discovery, which order provided that Plaintiff would have through May 31, 2023 to conduct additional fact discovery on account of the documents Defendant intended to produce late. (Exhibit 9). Plaintiff filed the motion and proposed order, (Docs. 60, 60-1),[4] which the Court granted, (Doc. 61). Plaintiff's counsel also sent an email to Defendant about potentially re-opening Defendant's depositions depending on the contents of the late documents. (Exhibit 10).

On April 6, 2023, Defendant responded to Plaintiff's March 20th email referenced above about search terms to run across Defendant's data. (Exhibit 11). In subsequent April emails, Defendant objected to running certain basic terms, including the name of Defendant's owner. (Exhibit 12).

On April 14, 2023, Defendant's counsel emailed and said Defendant was "midstream on the document review" of documents hitting on search terms. (Exhibit 13). Later that day, Plaintiff's counsel responded in part:

> Plaintiff JG has repeatedly requested documents that do not require use of search terms. For example, she has requested on multiple occasions payroll records and training records, among other documents. She first requested

---

[4] Doc. 60 outlines that Defendant's discovery negligence necessitated the discovery extension. Plaintiff did not want the extension but had no alternative.

such documents 8 months ago.  Your client's witnesses testified that such documents exist and are in their possession in hard-copy form.  Can you please produce those now?  They are very long overdue and there is no reason to hold on producing those until next Friday, when your client's documents hitting on search terms are due to be produced.  (Exhibit 13).

**V.    Defendant Produced Approximately 3,500 Pages—Including the Most Important in the Case—After Discovery Was Supposed to Close and Eight Months after Plaintiff Initially Requested the Documents.**

On April 20, 2023, weeks after discovery was supposed to close on March 31, 2023 (Doc. 51), Defendant produced approximately 3,500 pages that Plaintiff had requested in September 2022 and again in February 2023.  The late April 2023 production included smoking-gun documents:

- Emails dated October 29, 2018 from a law enforcement investigator to the United Inn manager about Plaintiff, a 16-year-old "missing person."  The investigator told the hotel manager that the investigator was "advised by [J.G.'s] guardian that she was staying at United Inn located at 4649 Memorial Drive."  The email attached a BOLO (Be On the Lookout) Notice about Plaintiff with Plaintiff's name, photo, and physical description.[5]  (*See, e.g.*, Exhibit 25).

---

[5] United Inn received several emails from law enforcement dated October 29, 2018 attaching BOLO notices saying that Plaintiff had been missing since October 9, 2018 and was believed to be at United Inn.  Plaintiff has alleged she was trafficked at United Inn from October – November 2018, so the timing and specificity of these emails is smoking-gun notice evidence that corroborates Plaintiff's claims.

- Sex trafficking training materials, including a document stating, "hotels and motels are one of the locations where sex trafficking is known to occur at higher rates," and another advertising a free training course with "basic information about how to identify human trafficking and/or related activity."

- Text messages between the hotel's owner and the hotel's security guards about crime at the hotel, including commercial sex activity. For example, texts about a shooting the year prior to Plaintiff's trafficking that says, "[s]o far all I know is that it was prostitution related," and others about women selling "sexual relations" at United Inn four months before Plaintiff's trafficking.

- A letter from the Dekalb County Police Department to United Inn in the year prior to Plaintiff's trafficking that says, in relevant part: "[t]he Dekalb County Police Department is able and willing to work with you on efforts to implement prevention measures at your hotel and answer any questions … contact Lieutenant DC Thomas at 404-822-5308 or dcthomas1@dekalbcountyga.gov." (Exhibit 26).

- A purported complete list of employees working at hotel during relevant period.[6]

---

[6] Plaintiff is unsure who worked at the hotel during the relevant period because Defendant has produced conflicting information. Defendant was required

- Correspondence with the FBI about a sex trafficking investigation.

Defendant's failure to produce these sorts of documents until April 20th—after the fact discovery deadline and eight months after Plaintiff's repeated requests—resulted from discovery negligence.  More troubling, many of the April 2023 documents and responses materially conflict with Defendant's earlier discovery responses:

- In its November 2022 discovery responses, and in February depositions, Defendant claimed it had never seen J.G. and did not know her. (*See, e.g.,* Exhibit 23 at 210 – 211).  But in late April 2023 Defendant produced multiple emails with Plaintiff's name, photo, age, and physical description, which emails said

---

to disclose its staff in its initial disclosures, and in response to Plaintiff's September 2022 discovery requests.  (*See* Fed. R. Civ. P. 26(a)(1)(A)(i); *see also* Exhibit 2, Dft's Interrogatory Responses at pp. 2-3).  Defendant subsequently provided inconsistent information about who worked at the hotel.  (*See* Exhibit 27 (showing inconsistencies in information produced in discovery)).  As a result, Plaintiff is unclear who worked at the hotel and when.

Worse, Defendant has not provided contact information for all the people on its fluctuating list of staff.  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  Most employers have basic contact information for their employees.  Defendant does not because it paid at least some employees in cash and did not prepare tax records.  (Exhibit 21 at 360-363, 395-396).  With a changing cast of characters, and no contact information for many of them, Plaintiff is unable to investigate the case adequately, identify and interview staff with information about the operations of the hotel, or respond to Defendant's claims that, for example, it trained its staff on sex trafficking indicators and received no crime reports from staff.

Plaintiff was a "missing" 16-year-old at United Inn for weeks.[7]  (*See, e.g.,* Exhibit 25).

- In its Initial Disclosures and November 2022 discovery responses, Defendant purported to provide a full employee list.  (Exhibit 2, Dft's Responses to Interrogatories at pp. 2 – 3; Exhibit 2a, Dft's Initial Disclosures).  But in April 2023 Defendant produced new and different staff names, first names only for some staff, and no contact information for some staff.  (*See* FN 6; Exhibit 27).

- In its November 2022 discovery responses, and in February depositions, Defendant claimed it had no training documents about sex trafficking indicators or red flags.  (*See, e.g.,* Exhibit 23 at 187:13-20; *see also* Exhibit 2, Dft's Interrogatory Responses at p. 12).[8]  But in late April 2023 Defendant produced an undated sex trafficking training document that it now claims was in its "sex trafficking file" for years.  (Exhibit 24 at 148-149; Exhibit 21 at 384 – 389).

---

[7] In its Motion to Dismiss, Defendant argued that "[t]he Complaint fails to plausibly allege that Northbrook knew anything at all about this Plaintiff."  (Doc. 37-1).  Defendant did not search Plaintiff's name in its ESI until 2.5 years into the litigation and after discovery was supposed to close.

[8] Defendant objected to producing Documents and Communications concerning "red flags and/or indicators of Prostitution and/or Sex Trafficking" on the basis that the request was "undefined, vague and ambiguous, such that Northbrook cannot respond to the Request."  (Exhibit 2, Dft's Responses to Requests for Production at p. 39).

- In its November 2022 discovery responses, Defendant claimed all its communications with law enforcement were oral. (Exhibit 2, Dft's Responses to Requests for Production at p. 15).  But in late April 2023 it produced text messages with law enforcement about the hotel, a letter from law enforcement about the need for the hotel to take measures to stop crime on the property, (Exhibit 26), and emails with law enforcement about Plaintiff specifically, (*see, e.g.,* Exhibit 25).

## VI.    In the Weeks After Defendant's April 20th Production of Smoking-Gun Documents, Plaintiff Scrambled to Revise Her Discovery Strategies, Retake Depositions, and Re-Visit Previous Discovery Work.

On May 2, 2023, Plaintiff reopened depositions of Defendant's owner, manager, and 30(b)(6) representative based on the late documents.  (Doc. 62).  To prepare for those depositions, Plaintiff's counsel re-reviewed the prior deposition testimony of Defendant's owner, manager and 30(b)(6) witness, re-reviewed Defendant's original production and discovery responses and compared them to Defendant's later production and supplemental responses, and developed new strategies based on the late production and its conflicts with earlier information.

On May 9, 2023, Plaintiff's counsel and Defendant's counsel talked by phone about several matters, including Plaintiff's intention to raise Defendant's discovery negligence with the Court based on Defendant's failure to search its emails,

computer, text messages, or sex trafficking file, and failure to produce smoking-gun documents until after discovery was to close on March 31, 2023.

On May 12, 2023, Plaintiff served supplemental discovery requests based on Defendant's April 20th production and the May 2nd re-opened depositions. (Doc. 63; Exhibit 14). Plaintiff served several third-party subpoenas too. (Docs. 64, 73).

On May 19, 2023, Plaintiff's counsel emailed Ms. Pittman and notified the Court of a discovery dispute between the parties. (Exhibit 15). On May 24, 2023, Plaintiff submitted her discovery dispute statement to Ms. Pittman and the Court, with Defendant's counsel copied. (Exhibit 16). On May 26, 2023, the Court held a telephone conference regarding the discovery dispute. Following the hearing, the Court ruled:

> After hearing from the parties concerning Plaintiff's request to file a motion for sanctions against Defendant, the Court authorized Plaintiff to file a motion for sanctions if the parties, after a further good faith attempt to confer, are unable to resolve the matter. (Doc. 72).[9]

---

[9] Plaintiff's counsel is litigating two related sex trafficking cases against United Inn & Suites (*A.G. v. United Inn*, Case No. 1:20-cv-05231-JPB, and *G.W. v. United Inn*, Case No. 1:20-cv-05232-JPB), and those cases involve a substantially similar discovery dispute. During a June 14, 2023 hearing about Defendant's discovery negligence in those cases, Judge Boulee authorized Plaintiff to file a motion for sanctions and said it sounded to him like Defendant had "screwed up pretty big time."

On May 26, 2023, in conformity with the Court's instruction, Plaintiff's counsel reached out to Defendant's counsel to schedule time to discuss the dispute further. (Exhibit 17). The Parties subsequently conferred in June 2023 by phone and via email. (Exhibits 18, 18a, 19). The Parties were unable to resolve the matter. Defendant was unwilling to agree to any of the sanctions Plaintiff is proposing in Section Three.

On June 26 and 30, 2023, Defendant produced more documents, and responded to Plaintiff's requests saying, in part, that United Inn "will produce" responsive documents. After exchanges in July and August, Defendant's counsel clarified that she was not aware of any more responsive documents. (Exhibit 20).

## **ARGUMENT**

The Court "must" impose sanctions under Rule 26(g)(3) because Defendant did not make a "reasonable inquiry" of its emails, computer, text messages, and business files before responding to Plaintiff's September 2022 requests. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (Rule 26(g)(3) was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1305 (11th Cir. 2003) (same). Eight months after Plaintiff sent her initial discovery requests, and almost three weeks after discovery was to close on March 31, 2023,

14

Defendant finally searched its ESI, sex trafficking file, and staff files, and produced 3,500 pages, including many smoking-gun documents. The late documents and responses materially conflict with information Defendant provided earlier in discovery on critical issues like whether the hotel knew Plaintiff, who worked at the hotel during the relevant period, whether the staff at the hotel was trained on sex trafficking, and the hotel's communications with law enforcement about crime.

The magnitude of Defendant's discovery negligence, Defendant's delay in correcting it, and the resulting prejudice to Plaintiff also justifies discretionary sanctions under Rule 37(c)(1) and the Court's inherent powers. *See Malautea*, 987 F.2d at 1542; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[The] inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct[.]") Plaintiff relied on Defendant's incomplete production to investigate her case, search for documents, find witnesses, depose witnesses, prepare and serve discovery requests and subpoenas, and generally conduct pre-trial discovery and investigation. After Defendant's surprise admission in depositions about ESI in its possession that had not been produced, Defendant took two more months to produce it—after the fact discovery deadline had passed. The late, critical documents materially impacted Plaintiff's investigative, discovery, and case strategies, and meant Plaintiff wasted

and misdirected resources in the discovery period, and needed to revisit and re-do discovery work in the weeks after discovery was supposed to have closed. For these reasons and others set forth below, both mandatory and discretionary sanctions are warranted. The specific sanctions Plaintiff requests are discussed in Section Three.

## I.   Defendant Must Be Sanctioned Under Rule 26(g)(3) Because Defendant Did Not Conduct a "Reasonable Inquiry" of the Records in its Possession, Custody, or Control Before Responding to Plaintiff's Discovery Requests.

Defendant must be sanctioned under Rule 26(g)(3) for failure to make a "reasonable inquiry" of its records until eight months after Plaintiff's discovery requests and weeks after discovery was to close. Discovery responses "must be signed" by an attorney or a party, and "by signing an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the responses are complete and correct. Fed. R. Civ. P. 26(g)(1); *see also In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F.Supp.2d 1335, 1350 (2012) ("Rule 26(g) broadly 'imposes an affirmative duty to engage in pretrial discovery in a responsible manner[.]'"). The "reasonable inquiry" standard is "an objective standard similar to the one imposed by Rule 11." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment.

Failure to conduct a "reasonable inquiry" before responding to discovery triggers *mandatory* sanctions: "If a certification violates this rule without substantial

justification, the court on motion or on its own **must** impose an appropriate sanction on the signer, the party, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added). Rule 26(g)(3) leaves it to the Court to decide the appropriate sanction for a violation; although "Rule 26(g) '[is] cast in mandatory terms,'…the mandate of the provision[] extends only to whether a court must impose sanctions, not to which sanction it must impose." *Chambers*, 501 U.S. at 51; Fed. R. Civ. P. 26(g)(3).

Here, Defendant did not conduct a "reasonable inquiry" of its records because it did not search its emails, computer, text messages, sex trafficking file, or payroll file for responsive documents before responding to Plaintiff's discovery requests. In 2023, ESI collection and production is a necessary part of litigation. *See, e.g., Venator v. Interstate Resources, Inc.*, 2016 WL 1574090 at *10 (S.D. GA. April 15, 2016) (sanctions imposed under Rule 26(g) because Defendant only searched his "inbox, outbox, sent items, and deleted items" for responsive documents, but "searched no other areas on his computer or [Defendant's] computer system"); *see also In re Delta*, 846 F. Supp. 2d at 1351 (Rule 26(g) sanctions "[were] appropriate for Delta's failure to ensure that all collected hard drives were actually searched and to locate the back-up tapes in the evidence locker"); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2052 (3d ed. 2010) (collecting cases where parties asserted opponent neglected to produce all ESI and sanctions

17

appropriate under Rule 26(g)).  Likewise, Defendant's failure to search its business files for sex trafficking materials, payroll records, and staff lists is indefensible.

Naturally, Plaintiff's discovery requests asked for Defendant's responsive business records, whether electronic or hard copy.  For example, Plaintiff's September 2022 requests defined the terms "Documents" and "Communications" to include emails, text messages, business files, and the like.  (Exhibit 1).  The Federal Rules, of course, focus on ESI as well as other sources of information, too.  For example, Rule 34, which governs requests for production of documents, is entitled: "Producing Documents, Electronically Stored Information, and Tangible Things, or Entering onto Land, for Inspection and Other Purposes."

Because Defendant did not make a "reasonable inquiry" of its records, sanctions are mandatory under Rule 26(g)(3).[10]  In Section Three, Plaintiff spells out the sanctions she is requesting, and the basis for them.  Before addressing the requested sanctions, Plaintiff explains why sanctions are not just mandatory, they are also warranted under the Court's discretionary authority.

---

[10] While sanctions are not mandatory if a party had a "substantial justification" for failure to make a "reasonable inquiry," Defendant had no "substantial justification" here for its failure to run basic searches (including Plaintiff's name) across its ESI and paper records.

II.    **In Addition to the Mandated Sanctions, Discretionary Sanctions are Also Warranted Because of the Magnitude of Defendant's Negligence, Defendant's Delay in Correcting It, and the Prejudice to Plaintiff.**

Setting aside the required sanctions under Rule 26(g)(3), the Court should exercise its discretion under Rule 37(c)(1) and its inherent powers to impose sanctions because of the magnitude of Defendant's discovery negligence, Defendant's delay in correcting it, and the prejudice to Plaintiff.

Defendant failed to conduct basic ESI searches until after discovery closed because of negligence.  This is not a case, in other words, where there were a few late-disclosed documents of questionable relevance that were inadvertently overlooked.  To the contrary, the 3,500 pages produced on April 20th, after discovery was supposed to close (Doc. 51), were the hottest in the case, and they were housed in the hotel's primary email account, the hotel owner's and manager's text messages, the hotel's computer, and the hotel's files on sex trafficking, payroll, and staffing.  It defies belief in 2023 that litigants acting in good faith and non-negligently would fail to search and produce such records.

Making matters worse, Defendant did not catch the issue—Plaintiff exposed it through deposition questioning—and then Defendant dragged its feet in correcting it.  It took Defendant 8 months to produce the documents requested in September 2022.  Defendant's delay in providing accurate and complete discovery responses

until after the March 31st deadline violated Rule 26(e)'s "timely" supplementation requirement.  *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839 at 960 (N.D.Ill. 2021) ("[S]upplements made after the close of fact discovery are by definition 'untimely.'").

Defendant will likely argue, like it did at the May hearing, that discretionary sanctions are unwarranted because Plaintiff suffered no prejudice.  That argument is flawed.  To start, sanctions are mandatory under Rule 26(g)(3) for failure to make a "reasonable inquiry" without "substantial justification."  Period.  Prejudice is not part of a Rule 26(g)(3) analysis.  Further, Rule 37(c) does not require a showing of prejudice to trigger sanctions either:

> Although one purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations … ***Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants***. ***Disciplinary sanctions under Rule 37 are intended to serve three purposes***. ***First***, they ensure that a party will not benefit from its own failure to comply. ***Second***, they are specific deterrents and seek to obtain compliance with the particular order issued. ***Third***, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2nd Cir. 2010) (emphasis added); *see also Nat'l Hockey League v. Metro. Hockey Club*, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976) (Rule 37 sanctions are to penalize and to deter).

Even if prejudice were a required part of the analysis (it is not), Plaintiff has been prejudiced by Defendants discovery negligence.  First, Plaintiff cannot rely on the completeness of Defendant's discovery responses and document production in the case. "Rules exist emphasizing the importance of truth in the discovery process and ***the need for a litigant to be able to rely upon the opposing party's discovery responses***." *Green Leaf Nursery*, 341 F.3d at 1305 (emphasis added).  Here, Plaintiff received smoking-gun documents late, inconsistent discovery responses, and documents that Plaintiff was previously told did not exist.  These circumstances undermine Plaintiff's "need … to be able to rely" on Defendant's discovery.  Did Defendant put in effect a litigation hold?  Did Defendant preserve potentially relevant information in its possession, custody, or control during discovery?  Did Defendant properly search its ESI and paper files for responsive information?

Second, Defendant's discovery negligence caused Plaintiff to expend significant time and effort trying to get Defendant to comply with basic discovery obligations.  *See* Exhibits 3 - 20.  Through Plaintiff's depositions of Defendant's witnesses in February, Plaintiff discovered that Defendant had failed to search for and produce responsive documents in its email, business computer, text messages, and business files.  Even after the revelatory February 2023 depositions, it took Defendant 60 more days to produce the hottest documents in the case.  In total, it

21

took 2.5 years to learn that Defendant had emails from law enforcement with Plaintiff's name and photo warning the hotel that she was believed to be a "missing" 16-year-old staying at the hotel during the exact period she has alleged she was trafficked there.

Third, Defendant's discovery negligence caused Plaintiff investigative harm. Defendant produced 3,500 pages on April 20, 2023, three weeks after discovery was supposed to close (Doc. 51), and after producing only 653 pages six months prior. Plaintiff conducted discovery and fact investigation with a private investigator for months with materially incomplete, misleading, and inaccurate information from Defendant. Consequently, Plaintiff wasted time, investigated unnecessary issues, and then redid work upon receiving new documents in late April 2023. Plaintiff devoted significant time to comparing the late documents to prior discovery responses and deposition testimony that is inconsistent with the late documents to determine a course of action. Defendant's shifting lists of hotel staff, and incomplete staff records, *see* FN 6, further compromises Plaintiff's ability to investigate the case and examine Defendant's claims about hotel operations and staff training.

Fourth, Defendant's discovery negligence is likely to cause Plaintiff evidentiary harm. Because Defendant has not produced a consistent list of hotel staff with contact information and does not have payroll records for all staff, Plaintiff

does not know who worked at the hotel during the relevant period, let alone who Defendant may try to call as a witness to testify about their time purportedly working at the hotel. *See* FN 6. "The days of trial by ambush have passed." *Wammock v. Celotex Corp.*, 793 F.2d 1518, 1527 (11th Cir. 1986); *see also King v. City of Waycross, Georgia*, 2015 WL 5468646 at *3 (S.D. Ga. Sept. 17, 2015) ("For years Courts throughout the land have been charged with eliminating 'trial by ambush.' A major purpose of discovery is eliminating surprise.") (quotation and citation omitted)). Further, Defendant's late April 2023 production included a Word document with indicators of sex trafficking. Defendant undoubtedly plans to use the late, mysterious, undated document as affirmative evidence showing that it paid attention to sex trafficking red flags and trained its staff appropriately. Yet Defendant had told Plaintiff in discovery that no such documents exist. (*See, e.g.,* Exhibit 23 at 187:13-20; *see also* Exhibit 2, Dft's Interrogatory Responses at p. 12).

Sixth, and finally, Defendant's discovery negligence harmed the efficient and economical movement of cases, violated the purposes of civil discovery set forth in the Rules, and directed judicial resources to policing bedrock discovery duties.

While prejudice is not a requirement of sanctions under the mandatory sanctions regime of Rule 26(g)(3), or under the deterrent sanctions regime of Rule 37(c)(1), Defendant's discovery negligence prejudiced Plaintiff. Because of that

prejudice, the magnitude of Defendant's error, and Defendant's delay in correcting it, the Court should also exercise its discretion to impose sanctions.

### III. Plaintiff Requests Targeted Sanctions Under Rule 26(g)(3), Rule 37(c)(1), and the Court's Inherent Powers because of Defendant's Discovery Negligence.

Plaintiff requests targeted sanctions for Defendant's discovery negligence under Rules 26(g)(3), 37(c)(1), and the Court's inherent powers.  First, Plaintiff requests reasonable attorneys' fees as set forth in Exhibit 28, which reflects the time and effort Plaintiff's counsel expended to enforce Plaintiff's discovery rights, to obtain basic discoverable information (e.g., responsive ESI and hard-copy business files), and to seek relief from the Court for Defendant's discovery negligence.

Second, Defendant should not be allowed to argue that none of its staff reported concerns about crime and that it trained all its staff on sex trafficking red flags, because Defendant has produced inconsistent information about who worked at the hotel, has not provided contact information for all staff, says it does not have records for staff it paid cash, and claims it only knows a first name for certain staff. Plaintiff cannot challenge Defendant's blanket claims about staff reports of crime and staff trainings because Plaintiff does not know who Defendant's employees were and cannot find them. *See, e.g., Nance v. Ricoh Electronics, Inc.*, 2008 WL 926662 at *3 (N.D. Ga. April 4, 2008) aff'd, 38 Fed. Appx. 99 (11th Cir. 2010) (imposing

24

Rule 37(c)(1) sanction for Rule 26(a) violations).  Alternatively, Plaintiff requests a jury instruction on how Defendant's conflicting and partial staff records compromised Plaintiff's ability to investigate and cross examine Defendant's claims about staff crime reports and staff trainings, among other topics.

Third, Defendant should not be allowed to argue that it had a sex trafficking training document available to staff during the relevant period when it first said that such a document did not exist and then produced an undated document in late April 2023 and claimed it had existed for years in a "sex trafficking file." *See, e.g., Clarke v. Schofield*, 2009 WL 10674468 (M.D. Ga. March 30, 2009) (striking affidavit under Rule 37(c)(1) for Rule 26(a) violation).

Fourth, Defendant should not be allowed to use affirmatively at trial evidence and witnesses it produced or identified late in violation of Rules 26 and 37. Fed.R.Civ.P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.").  If Plaintiff opts to use certain evidence or call witnesses that Defendant produced or identified late, then Defendant of course would be allowed to use that evidence or examine the witnesses too.

## **CONCLUSION**

Plaintiff respectfully requests that the Court impose the requested sanctions for the reasons set forth herein.

This 12th day of October, 2023.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing **Plaintiff J.G.'s Motion for Sanctions Against Defendant and Memorandum in Support** has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing ***Plaintiff J.G.'s Motion for Sanctions Against Defendant and Memorandum in Support*** into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 12th day of October, 2023.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000

Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*