# Exhibit 21

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 2 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 255

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
 2                       ATLANTA DIVISION
 3        A.G.,
                    Plaintiff,
 4                                        Civil Action No.
              vs.
 5                                        1:20-cv-05231-JPB
          NORTHBROOK INDUSTRIES, INC.,
 6        d/b/a UNITED INN AND SUITES,    Volume II
                    Defendant.
 7

          G.W.,
 8                  Plaintiff,
                                          Civil Action No.
 9            vs.
                                          1:20-cv-05232-JPB
10        NORTHBROOK INDUSTRIES, INC.,
          d/b/a UNITED INN AND SUITES,
11                  Defendant.
12        J.G.,
                    Plaintiff,
13                                        Civil Action No.
              vs.
14                                        1:20-cv-05233-SEG
          NORTHBROOK INDUSTRIES, INC.,
15        d/b/a UNITED INN AND SUITES,
                    Defendant.
16

17          CONTINUED VIDEOTAPED 30(B)(6) DEPOSITION OF

18           NORTHBROOK INDUSTRIES, INC. AND INDIVIDUAL

19                 DEPOSITION OF TAHIR SHAREEF

20

21                 May 2, 2023 - 1:15 p.m.
22            1105 West Peachtree Street, NE
23                      Suite 1000
24                    Atlanta, Georgia
25              J. David Brown, B-1401
```

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 3 of 83
30(b)(6) Tahir Shareef                         May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 256

INDEX OF EXHIBITS

EXHIBIT    DESCRIPTION                    PAGE
Exhibit 1  Notice of 30(b)(6) Videotaped Deposition
           for Defendant Northbrook Industries,
           Inc., d/b/a United Inn and Suites and
           Notice to Produce                265

Exhibit 2  4/28/2017 letter from Major Padrick
           to United Suites                 267
Exhibit 3  11/14/2017 email from Chief Sumlin
           to unitedinn4649 attaching Brown
           Protective Services Proposal for
           Security Services                284

Exhibit 4  8/11/2017 Waiver of Appearance and
           Document Receipt                 295
Exhibit 5  8/15, 8/16, and 8/17/2017 email chain
           between Mr. Shareef and Agent
           Strickler                        296
Exhibit 6  Sales and Use spreadsheets       304
Exhibit 7  10/29/2018 email from Inv. Wade to
           unitedinn4649                    309

Exhibit 8  10/29/2018 email from Inv. Wade to
           unitedinn4649                    312
Exhibit 9  10/9/2018 BOLO for J.G.          313
Exhibit 10 10/29/2018 email from Inv. Wade to
           unitedinn4649 attaching Ex. 9    321

Exhibit 11 5/11 and 5/12/2017 email chain
           between Messrs. Ali and Shareef  329
Exhibit 12 12/31/2017 North Brook Industries
           Balance Sheet and Income Statement  333

Exhibit 13 5/12/2017 Magistrate Court of DeKalb
           County Notice of Court Appearance  340

Page 257

Exhibit 14 9/14/2017 Magistrate Court of DeKalb
           County Notice of Court Appearance  342

Exhibit 15 Deferred Sentencing Order with
           attached check                   344
Exhibit 16 State Court of DeKalb County
           violations list                  346

Exhibit 17 email chain between Mr. Shareef and
           DeKalb County                    348
Exhibit 18 2016 1099 for Rashid Iqbal       350
Exhibit 19 4/4/2017 email from Mr. Shareef to
           hnismail@gmail and saad4649@gmail  352

Exhibit 20 2017 1099s for Ms. McMillan and
           Rashid Iqbal                     354
Exhibit 21 2018 1099 for Ms. McMillan       355
Exhibit 22 2017 and 2018 1099s for
           Mr. Sabharwal                    358

Exhibit 23 4/16/2018 email from Mr. Shareef to
           Mr. Ismail                       359
Exhibit 24 8/31/2018 pay day spreadsheet    360
Exhibit 25 5/16/2018 email from Ms. Bold to
           Mr. Shareef                      363

Exhibit 26 5/14/2018 email from Mr. Shareef to
           Bulldog Insurance employees      364
Exhibit 27 text messages between Mr. Shareef
           and Sergeant Weber               367

Exhibit 28 text messages between Mr. Islam and
           Sergeant Weber                   375
Exhibit 29 human trafficking articles       381
Exhibit 30 list of employees at United Inn and
           Suites for years 2017-2019       395

Exhibit 31 email chain between Mr. Shareef
           and Ms. Laity                    397

Page 258

Exhibit 32 11/7/2017 DeKalb County Hotel Motel
           Extended Stay Ordinance          398

Exhibit 33 email chain between Mr. Shareef,
           Mr. Islam, and Ms. Laity         399

           INDEX TO EXAMINATIONS
                                    PAGE
By Mr. Bouchard                     262

Page 259

APPEARANCES OF COUNSEL:
On behalf of the Plaintiffs:
     DAVID H. BOUCHARD, ESQ.
     Finch McCranie LLP
     229 Peachtree Street, NE
     Suite 2500
     Atlanta, Georgia 30303
     404.658.9070

     On behalf of Defendant in the J.G. case:

     DANA RICHENS, ESQ.
     Smith, Gambrell & Russell, LLP
     1105 West Peachtree Street, NE
     Suite 1000
     Atlanta, Georgia 30309
     404.815.3500
On behalf of Defendant in the A.G. and G.W. cases:
     ERIC UNDERRINER, ESQ.
     Hall Booth Smith, P.C.
     2710 Old Milton Parkway
     Suite 200
     Alpharetta, Georgia 30009
     470.386.6900

Also Present:

     BRANDON BRANTLEY, Videographer

2 (Pages 256 - 259)

30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 260

1      P R O C E E D I N G S
2
3           THE VIDEOGRAPHER:  This will be the video
4  deposition of Tahir Shareef individually and as
5  30(b)(6) for Northbrook Industries, Inc., being
6  taken in the matter of A.G. versus Northbrook
7  Industries, Inc. d/b/a United Inn and Suites.
8  Today's date is May 2nd, 2023.  The time on the
9  record is 1:14 p.m.  My name is Brandon Brantley.
10 I'm the videographer.
11          Counsel, please introduce yourselves for
12 the record after which the court reporter will
13 swear in the witness.
14          MR. BOUCHARD:  Good afternoon.  David
15 Bouchard on behalf of Plaintiff A.G., J.G., and
16 G.W.
17          MS. RICHENS:  Dana Richens on behalf of
18 Northbrook Industries in the J.G. matter.
19          MR. UNDERRINER:  Eric Underriner with
20 Hall Booth Smith on behalf of Northbrook Industries
21 in the G.W. and A.G. matters.
22
23
24
25 ///

Page 261

1             TAHIR SHAREEF
2  having been first duly sworn, was examined and
3  testified as follows:
4           MR. BOUCHARD:  Good afternoon,
5  Mr. Shareef.  As you remember, my name is David
6  Bouchard.
7           THE WITNESS:  Good afternoon.
8           MR. BOUCHARD:  And I'm a lawyer here in
9  Atlanta, Georgia.  This deposition that I am going
10 to be taking of you today is on behalf of Plaintiff
11 A.G. in case number 1:20-cv-05231.  The deposition
12 today has been cross-noticed in a couple other
13 matters as well, specifically case number
14 1:20-cv-05232 which is G.W.'s lawsuit and in case
15 number 1:20-cv-05233 which is J.G.'s lawsuit.
16          Counsel for the Defendants in all three
17 cases are present after receiving reasonable
18 notice of the depositions.  All objections other
19 than to the form of a question or to an issue of
20 privilege are preserved.  Is that agreeable?
21          MS. RICHENS:  Yes, it is.
22          MR. UNDERRINER:  Yes.
23          MR. BOUCHARD:  This deposition is taken
24 pursuant to properly served deposition notices and
25 cross-notices and it is taken for all purposes

Page 262

1  permitted under the Federal Rules of Civil
2  Procedure and the Georgia Civil Practice Act
3  including, but not limited to, preservation of
4  testimony and cross-examination.  Is that
5  agreeable?
6           MS. RICHENS:  Yes, it is.
7           MR. UNDERRINER:  Yes.
8           MR. BOUCHARD:  As I'd mentioned before we
9  went on the record Mr. Court Reporter, because
10 there are confidentiality concerns and protective
11 orders in effect in these cases, while I will be
12 referring to the Plaintiffs by their full names,
13 I'd ask that all references to their names today on
14 the record be changed to their initials which is
15 how the cases are captioned.
16          EXAMINATION
17 BY MR. BOUCHARD:
18     Q   Mr. Shareef, we went over this last time,
19 but you understand that the hotel that we are going
20 to be talking about today is the United Inn and
21 Suites at 4649 Memorial Drive, right?
22     A   Yes.
23     Q   And so when I refer to the United Inn,
24 that's the hotel I'm referring to unless I tell you
25 otherwise.  Do you understand that?

Page 263

1      A   Yes.
2      Q   And if I refer to the hotel, that's the
3  hotel I am referring to unless I tell you
4  otherwise.  Do you understand that?
5      A   Yes.
6      Q   Last time we met we talked about the
7  ground rules if you will for a deposition.  Do you
8  remember that?
9      A   Yes.
10     Q   And you remember that obviously like
11 there was last time, once again today there's a
12 videographer here and a court reporter here?
13     A   Yes.
14     Q   And the court reporter is transcribing
15 everything we say.  Do you understand that?
16     A   Yes.
17     Q   That makes it very, very important that I
18 let you finish an answer before I start asking
19 another question and it also makes it important
20 that you wait for me to finish a question before
21 you provide an answer.  Do you understand that?
22     A   Yes.
23     Q   If you at any point are confused by any
24 questions that I ask you today, will you please ask
25 me to clarify?

3 (Pages 260 - 263)

30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 264

1    A    Yes.
2    Q    If you answer a question that I ask you
3 today, I'm going to take that to mean that you
4 understood the question.  Is that fair?
5    A    Yes.
6    Q    Is there any reason whatsoever that you
7 can think of, Mr. Shareef, why you cannot provide
8 good and accurate and complete testimony today?
9    A    There's no certain reason.
10   Q    You're in a position to provide good and
11 accurate and complete testimony today?
12   A    Yes.
13   Q    You remember of course, Mr. Shareef, that
14 you were previously deposed in this case; is that
15 correct?
16   A    Yes.
17   Q    In February 2023?
18   A    Yes.
19   Q    And you understand that we're here today
20 reopening and continuing your deposition?
21   A    Yes.
22   Q    Both in your individual capacity and also
23 in your capacity as the 30(b)(6) representative of
24 Northbrook Industries, Inc.?
25   A    Yes.

Page 265

1    Q    And you understand that as a corporate
2 representative, that means that the answers that
3 you provide are on behalf of the corporate entity
4 Northbrook Industries; is that right?
5    A    Yes.
6    Q    You specifically understand, Mr. Shareef,
7 that there were certain topics that we enumerated
8 in a 30(b)(6) deposition notice that we served on
9 your counsel, right?
10   A    Yes.
11   Q    And as to those topics, any testimony
12 that you provide today will be binding on the
13 corporation Northbrook Industries, Inc.  Do you
14 understand that?
15   A    Yes.
16   Q    Do you understand that one of the reasons
17 we needed to reopen and continue your deposition
18 today is because new documents were produced after
19 your last deposition?
20   A    New documents produced.  Yes.  Yes.
21   Q    You do understand that?
22   A    Yes.
23        (Plaintiff's Exhibit 1 marked)
24 BY MR. BOUCHARD:
25   Q    Let the record reflect I'm showing

Page 266

1 Mr. Shareef what's been marked as Plaintiff's
2 Exhibit 1.
3        Mr. Shareef, you see what I have just
4 handed you?
5    A    Yes.
6    Q    You recognize that as the Notice of
7 Videotaped Deposition for Defendant Northbrook
8 Industries, Inc.?
9    A    Yes.
10   Q    And you see it says 30(b)(6) on the
11 caption at the top?
12   A    Yes.
13   Q    If you turn to the back of this document,
14 Mr. Shareef, specifically the last two pages, which
15 are Exhibit A to the document, you should see a
16 list of 18 topics.  Do you see that?
17   A    Yes.
18   Q    Mr. Shareef, have you had an opportunity
19 to review these topics prior to today?
20   A    Yes.
21   Q    And you understand that it is as to these
22 topics that your testimony will be binding on
23 Northbrook Industries, Inc.?
24   A    Yes.
25        (Plaintiff's Exhibit 2 marked)

Page 267

1 BY MR. BOUCHARD:
2    Q    Showing the witness what's been marked as
3 Plaintiff's Exhibit 2.  And I'll state for the
4 record that it might have been clearer and simpler
5 to simply pick up from the exhibit numbering from
6 your prior deposition.  But we'll treat this as new
7 exhibit numbering for your reopened and continued
8 deposition here.
9        Mr. Shareef, I have handed you
10 Plaintiff's Exhibit 2 which is Bates stamped
11 NBI 002886.  Do you see that?  You see on the
12 bottom right-hand corner, the Bates stamp?
13   A    Oh, that one.  Okay.
14   Q    Yes, sir.
15   A    Yes.  Yes.  Yes.
16   Q    And this is an April 28th, 2017 letter
17 from a Major Padrick with the DeKalb County Police
18 Department dated April 28th, 2017.  Do you see
19 that?
20   A    Yes.
21   Q    And it is directed to the United Suites
22 at 4649 Memorial Drive, right?
23   A    Uh-huh (affirmative).
24   Q    Is that correct?
25   A    Yes.

4 (Pages 264 - 267)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 6 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 268

1    Q    That's your hotel, right?
2    A    Right.
3    Q    And it says here in the first paragraph:
4 The DeKalb County Police Department alongside the
5 DeKalb County Hotel/Motel Task Force, open paren, a
6 program implemented by the DeKalb County CEO's
7 Office, close paren, has been tasked with notifying
8 various hotels with probable concerns for existing
9 and prospective clients. This includes reported
10 crimes at several designated locations during the
11 first quarter of the year, open paren, January 1,
12 2017 through March 31, 2017, the following crimes
13 were reported at the United Suites.
14        Do you see that, sir?
15    A    Yes, I do.
16    Q    You received this letter, Mr. Shareef?
17    A    I don't recall but I may have.
18    Q    This letter I can represent to you was
19 produced by your lawyers in the cases of J.G., A.G.
20 and G.W.
21    A    Uh-huh (affirmative).
22    Q    Do you understand that?
23    A    Yes.
24        MS. RICHENS: May I just explain. This
25 number here, Mr. Shareef, at the bottom NBI.

Page 269

1        THE WITNESS: Uh-huh.
2        MS. RICHENS: That means that we provided
3 it to --
4        THE WITNESS: Okay.
5        MS. RICHENS: -- Mr. Bouchard.
6        THE WITNESS: Okay.
7 BY MR. BOUCHARD:
8    Q    Do you understand that this was provided
9 by, produced by your lawyers in the J.G., A.G., and
10 G.W. matters?
11    A    Yes.
12    Q    Was this a document that you maintained
13 at your business premises, that is the United Inn
14 and Suites?
15    A    Yeah, I have seen some of them, yes.
16    Q    Well, I'm talking about this specific
17 document, Plaintiff's Exhibit 2.
18    A    Uh-huh (affirmative). Yes.
19    Q    Where was this document kept,
20 Mr. Shareef?
21    A    Was this kept. I don't know, but
22 it must be in my filing cabinet.
23    Q    Do you have a filing cabinet at the
24 hotel?
25    A    Yeah.

Page 270

1    Q    And it has files in it?
2    A    Yeah. There are, you know, some files
3 there.
4    Q    Are there files related to correspondence
5 with DeKalb County?
6    A    Yes. There was some trespassing reports
7 and, you know, those things. And this document,
8 you know, may be with those reports. I'm not
9 hundred percent sure.
10    Q    Well, who was responsible at United Inn
11 and Suites for collecting documents responsive to
12 the discovery request served?
13    A    I am.
14    Q    You were responsible?
15    A    Yes.
16    Q    So who would have gathered the documents
17 and then provided those documents to the lawyers on
18 behalf of United Inn and Suites in the J.G., A.G.,
19 and G.W. matters?
20    A    Me.
21    Q    Did you provide this document to your
22 lawyers?
23    A    I may have, but I don't know 100 percent.
24    Q    But you're saying there wouldn't have
25 been anybody else at United Inn who collected the

Page 271

1 documents, it was your job?
2    A    Yes.
3        MS. RICHENS: Excuse me, David, may I ask
4 you. And I should know this but I don't. Is this
5 a document that was just produced in the
6 supplemental production?
7        MR. BOUCHARD: Correct. Yeah.
8        MS. RICHENS: Would you mind if I took a
9 moment to speak with the client. I think it might
10 expedite matters.
11        MR. BOUCHARD: Sure. We can go off the
12 record.
13        THE VIDEOGRAPHER: We're off the record
14 at 1:26 p.m.
15        (A pause was had in the proceedings.)
16        THE VIDEOGRAPHER: Back on the record at
17 1:28 p.m.
18 BY MR. BOUCHARD:
19    Q    Mr. Shareef, Plaintiff's Exhibit 2, was
20 this a document that was maintained in your
21 business files at United Inn and Suites?
22    A    Like I said, there are few documents, you
23 know, I gave to them. But again, I was, you know,
24 a little confused where did this come from. But I
25 can't tell you any specific document, you know,

5 (Pages 268 - 271)

30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 272

1 that is, you know, with me. So that could have
2 been from anywhere.
3     Q   I don't understand that answer. Did you
4 find this document on the street or did you find it
5 at the United Inn and Suites?
6     A   I don't know. It could have been in the
7 United Suites email.
8     Q   So it could have been a document that you
9 found on your business email account?
10     A   Yeah.
11     Q   It also could have been a hard copy
12 document?
13     A   I don't know. That's the reason I was
14 confused.
15     Q   Well, you agree with me that it looks
16 like it has been photocopied, you can see some
17 markings in the left-hand side and it is not lined
18 up properly on the page?
19     A   Right.
20     Q   Do you agree it looks like it was
21 photocopied?
22     A   I don't know.
23     Q   And there's no email that was produced in
24 this case that contains this document. Are you
25 aware of that?

Page 273

1     A   Yes.
2     Q   So you're saying you just don't know if
3 this was in a hard copy file at your business or
4 not?
5     A   That's correct.
6     Q   I wanted to ask you about -- well, let me
7 back up a second. You're not disputing that you
8 had this document in your possession though; is
9 that correct?
10     A   It could have been in an email.
11     Q   There's a list here of crimes that were
12 reported at the United Suites in Plaintiff's
13 Exhibit 2 for the period January 2017 to March 31,
14 2017. One of the crimes listed it says runaway
15 juvenile. Is that familiar to you?
16     A   No.
17     Q   Do you know what crime that is referring
18 to?
19     A   No.
20     Q   When you received this notice, did you
21 call the DeKalb County Police Department to
22 inquire?
23     A   No.
24     Q   Did you have any concerns about there
25 being a reported crime involving a runaway juvenile

Page 274

1 at your property?
2     A   I don't know, you know, if I called them,
3 you know, the DeKalb County for any of these
4 crimes, these incident or not. But I don't know.
5     Q   You don't remember calling them?
6     A   No.
7     Q   Is it possible you did not call them?
8     A   I don't know.
9     Q   The next paragraph says: Please take
10 appropriate security measures to ensure the safety
11 of your patrons. Potential safety measures to
12 implement include, but are not limited to,
13 sufficient lighting, open paren, parking lots,
14 perimeter entrances, stairwells, close paren;
15 property landscaping, open paren, trimming of trees
16 slash bushes around the windows, stairways, walk
17 paths and common areas, close paren; adequate
18 security, open paren, private security, off duty
19 police, rotating days when security present, close
20 paren; proper signage slash surveillance video,
21 open paren, no loitering, unlawful activities not
22 permitted, signage about video surveillance, close
23 paren.
24         Do you see that?
25     A   Yes.

Page 275

1     Q   Do you remember reading this letter when
2 you received it, Mr. Shareef?
3     A   I don't know. It is so long ago, so I
4 don't know.
5     Q   Well, what would be your practice in 2017
6 if you received a letter from the DeKalb County
7 Police Department, would it be important to you?
8     A   Yes, it is important. I read them and I
9 see if there is some overgrown bushes or some
10 lighting problem at the parking lot. I always have
11 the signs there no loitering, unlawful activities.
12 I always have those signs. So if somebody knock
13 down the sign, we put it back.
14     Q   We discussed in your February deposition
15 that for the years 2017 to 2019, the United Inn had
16 security at the property from the hours of
17 10:00 p.m. to 2:00 a.m.
18     A   Yes.
19     Q   But not for the other hours --
20     A   Right.
21     Q   -- is that correct?
22     A   Right.
23     Q   In other words, the United Inn for the
24 years in question had security for four hours a day
25 but not for 20 hours a day?

6 (Pages 272 - 275)

30(b)(6) Tahir Shareef                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 276

1    A    Right.
2    Q    And you told me in February that the
3  DeKalb County Police Department recommended to you
4  and your hotel that you have more security; is that
5  correct?
6    A    I mean they always come in and recommend
7  things.  But I don't know if they specifically -- I
8  mean they if they do see some sign knocked down or
9  something, they may have, you know, tell me these
10  things.
11    Q    Well, that's not what I'm talking about.
12  I'm not asking you about signs.  Last time in
13  February when we talked, you said that the police
14  came about two to three times a week for the years
15  2017 to 2019.
16    A    Uh-huh (affirmative).
17    Q    Do you recall that?
18    A    Yes.
19    Q    And I asked you, I said Mr. Shareef, you
20  know, at some point in time as the owner and
21  general manager of the hotel, did you ever go to
22  the police and say what can I do to try to prevent
23  crime?
24    A    Uh-huh (affirmative).
25    Q    Seems like two to three visits a week

Page 277

1  from the police is a high volume of visits.  And
2  you said that one of the things that they
3  recommended was hiring more security.  Do you
4  remember that?
5        MS. RICHENS:  Objection to the form of
6  the question.
7    A    I don't know.
8  BY MR. BOUCHARD:
9    Q    But you would agree with me that from
10  2017 to 2019, you never had security at the
11  property outside of 10:00 p.m. to 2:00 a.m.?
12    A    I don't.
13    Q    You do not agree or you do agree?
14    A    I agree that I have security only on
15  those times.
16    Q    The last paragraph for Plaintiff's
17  Exhibit 2 says, quote, the DeKalb County Police
18  Department is able and willing to work with you on
19  efforts to implement prevention measures at your
20  hotel and answer any questions.
21        Do you see what I just read?
22    A    Yes.
23    Q    What do you understand the word
24  prevention to mean?
25    A    Prevent the crime.

Page 278

1    Q    What does that mean?
2    A    That mean prevent the crimes.
3    Q    To take action to stop crime from
4  happening in the future?
5    A    Uh-huh (affirmative).
6        MR. UNDERRINER:  Object to the form.
7  BY MR. BOUCHARD:
8    Q    Well, if you don't understand -- I mean
9  is what I just said your understanding of
10  prevention or do you have a different
11  understanding?
12    A    No, I have the understanding of
13  prevention.
14    Q    To try to avoid crime from happening in
15  the future?
16    A    Yes.
17    Q    What do you understand this sentence to
18  mean that I just read, the DeKalb County Police
19  Department is able and willing to work with you on
20  efforts to implement prevention measures at your
21  hotel and answer any questions?
22    A    Yeah, if I have any question and they
23  give me this phone number, I could call them.
24    Q    What about able and willing to work with
25  you on efforts to implement prevention measures?

Page 279

1    A    Meaning that, you know, if they need to,
2  you know, talk to me and maybe suggest something.
3    Q    Did you ever ask them to work with you on
4  efforts to implement prevention measures?
5    A    No.  I have these officer, they are from
6  the same department.  I talk with them all the
7  time.  They work for me.  They come every night.
8  So those are the, you know, question I tell them,
9  you know, that we need to -- what we can do.  And
10  they always, you know, suggested that, you know, we
11  have a problem, call 911, call the cops.
12    Q    Other than Weber and McClelland who I
13  believe you're referring to right now.
14    A    Yes.
15    Q    Did you ever ask the DeKalb County Police
16  Department to work with you on efforts to implement
17  prevention measures at the hotel?
18    A    I don't know.
19    Q    Well, you understand that you're the
20  30(b)(6) representative for Northbrook Industries,
21  Inc. on the topic of, among others, security at the
22  property.  This is my only opportunity before
23  trial, Mr. Shareef, to understand what security
24  measures for example the hotel had in effect during
25  the relevant period.  Do you understand that?

7 (Pages 276 - 279)

30(b)(6) Tahir Shareef                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 280

1    A    Yes.
2    Q    Are you prepared to testify today?
3    A    I am.
4    Q    Did the hotel or did not the hotel take
5    on the DeKalb County Police Department's request
6    and offer -- let me strike that and ask it again.
7         At any point in time did the United Inn
8    and Suites ask the DeKalb County Police Department
9    to work with it on efforts to implement prevention
10   measures at the hotel?
11   A    Like I said, I talked to the Sergeant
12   Weber and Sergeant McClelland, so they are the
13   representative, you know, from the Police
14   Department, same department which you asked me, you
15   know, what I have done. So this is my main source,
16   so I always seek help from them.
17   Q    Other than them, the answer is no?
18   A    That's right.
19   Q    And they were working in an off-duty
20   capacity from 10:00 p.m. to 2:00 a.m.?
21   A    Yes.
22   Q    The rest of the day they were not working
23   at the property, they were working for the DeKalb
24   County Police Department or they were at home or
25   doing something else, right?

Page 281

1         MR. UNDERRINER:  Object to form.
2    A    Maybe.
3    BY MR. BOUCHARD:
4    Q    I mean did they work at your hotel the
5    other 20 hours per day?
6    A    No.
7    Q    And have you produced all the text
8    messages in this case that you have from the years
9    2017 to '19 with Weber and/or McClelland?
10   A    I guess so.
11   Q    So when you say you were communicating
12   with them all the time, that would be reflected in
13   the text messages you produced?
14   A    Yes.
15   Q    Did you ever ask the DeKalb County Police
16   Department to help train your staff on sex
17   trafficking?
18   A    Did I ever ask.  No.
19   Q    Or on commercial sex activity?
20   A    No.
21   Q    Did you ever ask the DeKalb County Police
22   Department to train your staff on indicators of
23   crime?
24   A    Did I ask them.  No.
25   Q    Did you ever ask the DeKalb County Police

Page 282

1    Department to do a security assessment of your
2    property?
3    A    No.
4    Q    Did you ever ask the DeKalb County Police
5    Department to do an assessment of measures you
6    could put in effect to reduce crime on the
7    property?
8    A    Again, my source is those police officer.
9    They are there and I meet them almost nightly
10   basis.  So I ask them, you know, if there's
11   anything -- if there's any question, so I might
12   have asked them.  I don't know.  This is 2017.
13   Q    This letter didn't come from Weber or
14   McClelland, correct?
15   A    Uh-huh (affirmative).
16   Q    Is that right?
17   A    Yes.
18   Q    It came from a Major Padrick, right?
19   A    Okay.  Yes.
20   Q    And McClelland and Weber were working at
21   the United Inn in an off-duty capacity four hours
22   per day prior to this letter being sent to you,
23   right?
24   A    Yes.
25   Q    Did the United Inn take any action based

Page 283

1    on this letter, Plaintiff's Exhibit 2?
2    A    We might have.  Like I told you, whatever
3    we think is appropriate to help, we do it.
4    Q    What I'm asking is in response to your
5    receiving Plaintiff's Exhibit 2, did the hotel
6    implement some new security measure?
7    A    Some new security measure.  I don't know.
8    I think that's -- I don't know but we might have.
9    I don't know.
10   Q    Did the hotel continue doing what it had
11   always done as it relates to security after it
12   received Plaintiff's Exhibit 2?
13        MR. UNDERRINER:  Object to the form.
14   A    Can you repeat the question.
15   BY MR. BOUCHARD:
16   Q    Yeah.  You told me that Weber and
17   McClelland were working four hours per day --
18   A    Uh-huh (affirmative).
19   Q    -- prior to receipt of this letter in
20   2017, right?
21   A    Yes.
22   Q    After you received this letter, that is
23   Plaintiff's Exhibit 2, did you ask Weber or
24   McClelland to start working more hours per day?
25   A    No.

8 (Pages 280 - 283)

30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 284

1    Q    Did you ask other security to come in and
2  start working other hours during the day?
3    A    No.
4    Q    Did you implement any other new security
5  measures after receiving Plaintiff's Exhibit 2
6  based on Plaintiff's Exhibit 2?
7    A    No.
8    Q    So as the owner of the hotel, it is not
9  like you got Plaintiff's Exhibit 2 and you said
10  wow, I am going to implement some new security
11  measures based on what I am reading here?
12        MR. UNDERRINER:  Object to the form.
13  BY MR. BOUCHARD:
14    Q    I didn't hear your answer, sir.
15    A    I don't know how to answer it.  But
16  again, you know, I pass whatever information to my
17  officers, and that's my best source because they
18  working on the same department and they are very,
19  you know, qualified people.
20        (Plaintiff's Exhibit 3 marked)
21  BY MR. BOUCHARD:
22    Q    I'm showing the witness Plaintiff's
23  Exhibit 3 which is Bates stamped NBI 03765 and
24  NBI 03766 through NBI 03774.
25        Mr. Shareef, I have handed you what's

Page 285

1  been marked as Plaintiff's Exhibit 3 which is an
2  email and the attachment to the email.  Do you see
3  that?
4    A    Yes.
5    Q    And it is an email from Chief Sumlin to
6  the hotel's email account at Gmail.  Do you see
7  that?
8    A    Yes.
9    Q    Dated November 14th, 2017; is that right?
10    A    Yes.
11    Q    And this is about seven months after the
12  date on Plaintiff's Exhibit 2, that letter we were
13  just looking at from the DeKalb County Police
14  Department; is that right?
15    A    Yes.
16    Q    Are you familiar with this email and the
17  Proposal for Security Services attached to it?
18    A    Yes, I have seen it.
19    Q    You're familiar with it?
20    A    I may have seen this one that time.  I
21  may have talked to him.  I don't know.
22    Q    Did you review any documents to prepare
23  for your deposition today?
24    A    No, I did not.
25    Q    Have you reviewed the documents that you

Page 286

1  produced in this case?
2    A    The documents, you got it from your --
3  from my United Inn email.  You know, that's a long
4  time ago.  I did not, you know, read, you know,
5  lately what is there.
6    Q    No.  I'm talking about documents that
7  were produced for the first time last week.  Have
8  you read these documents, Mr. Shareef?
9    A    From the emails?  What is the question?
10  Which documents you are -- I don't know.
11    Q    The whole reason that we're here today is
12  because there were documents produced after you
13  were deposed in February.
14    A    Okay.
15    Q    Do you understand that?
16    A    Yes.
17    Q    In fact, those documents were produced
18  last week.  Do you understand that?
19    A    Via email.  Via ...
20    Q    The documents were provided from your
21  lawyer to me last week.  Do you understand that?
22    A    Yes.
23    Q    Have you reviewed those documents in
24  connection with getting ready for your deposition
25  today, Mr. Shareef?

Page 287

1    A    I have seen some.  But I don't know, what
2  is -- how many of them you get it via email?
3        THE WITNESS:  Is that that email we
4  talking about here?  Which document he's
5  concerning?
6        MS. RICHENS:  You received this by email.
7        THE WITNESS:  Email.  Yeah.
8        MS. RICHENS:  He's asking if you remember
9  receiving it?
10  BY MR. BOUCHARD:
11    Q    Well, actually that's not what I'm
12  asking.
13    A    Okay.
14    Q    I'm asking if you have reviewed the
15  documents that your lawyers produced to me last
16  week in this case?
17    A    No.
18    Q    You did not?
19    A    No.
20    Q    But you're prepared to give testimony
21  today on behalf of the corporation?
22    A    But I don't know that this the document,
23  you know, I'll see and I have to remember, you
24  know, what happened in 2017.
25    Q    Well, I'm not asking you to remember

9 (Pages 284 - 287)

30(b)(6) Tahir Shareef                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 288

1 something in 2017 right now. I'm asking if you
2 reviewed this last week after it was produced?
3     A    I did not reviewed this.
4     Q    And you're saying you have not reviewed
5 any of the documents in the last week?
6     A    No, I did not review this.
7     Q    Have you reviewed any other documents in
8 the last week in this case or these cases?
9     A    I may have. But I don't know what we
10 talked about.
11    Q    Have you met with your lawyers prior to
12 today's case -- prior to today's deposition?
13    A    Lawyer, no. We had, you know, phone
14 conversation.
15    Q    Were documents discussed on that phone
16 conversation?
17    A    The deposition, you know, is going to
18 come and --
19         MS. RICHENS: Let me stop you. I don't
20 want you giving any further communication about
21 what we talked about.
22 BY MR. BOUCHARD:
23    Q    I don't need to know and I don't want to
24 know what you discussed with your lawyers. I'm
25 really only asking did you review documents --

Page 289

1     A    Not this --
2     Q    -- as part of --
3     A    Not this --
4     Q    -- your discussion?
5     A    -- document.
6     Q    Do you know who Chief Sumlin is,
7 Mr. Shareef?
8     A    No.
9     Q    Have you ever spoken to him?
10    A    No.
11    Q    Do you know why he sent you this Proposal
12 for Security Services?
13    A    I don't know why he send it to me. I
14 don't know. Maybe at that time we sent a bunch of
15 email to people to have some kind of proposal and
16 this may be one of them.
17    Q    You just said maybe at that time we sent
18 a bunch of email to people requesting proposal.
19 Are you saying you did send emails requesting
20 proposals?
21    A    Email, phone calls, I don't know what
22 happened 2017.
23    Q    Do you believe that in 2017 you asked
24 other security providers to prepare proposals for
25 the United Inn and Suites?

Page 290

1     A    Yes.
2     Q    Do you think Ashar did the same or were
3 you the one --
4     A    No --
5     Q    -- responsible for that?
6     A    -- I'm the one.
7     Q    You were the one?
8     A    Yeah.
9     Q    Why did you do that?
10    A    Trying to find what their services are
11 and how much it cost.
12    Q    Why would you be asking for proposals
13 from other security providers if you already had
14 Weber and McClelland?
15    A    Because I want to see if I can, you know,
16 have the non-police officer security people working
17 maybe few more hours there.
18    Q    What does that mean?
19    A    Meaning that, you know, if they give me
20 proposal, I may have, you know, take their
21 services.
22    Q    Why were you interested in security
23 proposals about security for a few more hours
24 there, as you say, at the hotel?
25    A    Why I am interested. Just like if the

Page 291

1 camera is broken, you know, we change it or add it,
2 you know. Same way, we get the proposal and see if
3 it is doable.
4     Q    I don't think that answers the question
5 I'm asking. Why were you reaching out for more
6 security proposals? I mean you had Weber and
7 McClelland.
8     A    Right.
9     Q    Why are you contacting other companies?
10    A    I mean it is all right to check, you
11 know, their pricing and stuff, you know, and their
12 services.
13    Q    You were shopping for other security?
14    A    Yeah.
15    Q    Were you dissatisfied with Weber or
16 McClelland?
17    A    No. No. I did not say dissatisfy. I
18 just, you know, maybe I can add more hour when they
19 are not available.
20    Q    And they were only available from
21 10:00 p.m. to 2:00 a.m.?
22    A    Yes.
23    Q    So you were shopping for other security
24 services that may be available other hours of the
25 day?

10 (Pages 288 - 291)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 12 of 83
30(b)(6) Tahir Shareef                              May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 292

1    A    Yes.
2    Q    Do you agree with me that it looks like,
3 according to Plaintiff's Exhibit 3, Brown
4 Protective Services would have been available 24
5 hours a day?
6    A    Yes.
7    Q    Did you receive proposals from any other
8 security service providers that would have provided
9 you with 24-hour security at the hotel?
10    A    I don't know.
11        MR. UNDERRINER:  Object to the form.
12 BY MR. BOUCHARD:
13    Q    You don't recall?
14    A    I don't know.
15    Q    Well, do you believe that you received
16 other proposals like this one around that time in
17 2017 when you were shopping?
18    A    I don't know.
19    Q    Well, you have testified earlier today
20 that in 2017 you reached out and requested
21 proposals either by email or phone from other
22 security providers, right?
23    A    Yes.
24    Q    Do you think Brown Protective Services
25 was the only service provider that you reached out

Page 293

1 to or do you think there were others?
2    A    Maybe.  I don't know.  Maybe there are
3 other.
4    Q    Do you think there were or do you not
5 think there were?
6    A    I don't know.
7    Q    But you're the only person who would know
8 that, right, Mr. Shareef?
9    A    Right.
10    Q    And your testimony is I just don't know?
11    A    I mean yeah, I don't know.  That's the
12 best I can remember.
13    Q    Where did you get the name Brown
14 Protective Services from?
15    A    Maybe he left a card there.  He left a
16 business card there.  I don't know how, you know, I
17 had contact with him.
18    Q    Why did you not hire them?
19    A    For maybe any reason.  I don't know.  I
20 don't even recall, you know, what the conversation
21 was with him.  But I don't have the answer.
22    Q    You received this proposal in
23 November 2017, but you decided not to hire Brown
24 Protective Services?
25    A    Yes.

Page 294

1    Q    And you do not recall why?
2    A    I don't know.
3    Q    And you didn't decide in November 2017 or
4 thereafter to hire any other private security
5 company to provide additional security at the
6 property; is that correct?
7    A    I may have.  I don't know.
8    Q    Well, I think the answer is no.  But let
9 me ask again.
10    A    Uh-huh (affirmative).
11    Q    Between 2017 and 2019, other than Weber
12 and McClelland, did you at any time have any other
13 private security at the hotel?
14    A    No.
15    Q    So you've never hired another private
16 security company?
17    A    No.
18    Q    Correct?
19    A    That's right.
20    Q    So we don't know if you got any other
21 proposals other than this proposal in Plaintiff's 3
22 from Brown Protective Services.  But regardless,
23 you didn't hire anybody else, right?
24    A    Right.
25    Q    And what I don't understand is why you

Page 295

1 didn't hire more security?
2    A    There could be their timing issue or my
3 timing issue or some other -- I don't know.
4        (Plaintiff's Exhibit 4 marked)
5 BY MR. BOUCHARD:
6    Q    Mr. Shareef, I'm handing you what's been
7 marked as Plaintiff's Exhibit 4.  And Plaintiff's
8 Exhibit 4 is Bates stamped NBI 2566 to 67.
9 Mr. Shareef, page 1 of Plaintiff's Exhibit 4 is a
10 Business Record Certification in the United States
11 District Court for the Northern District of Georgia
12 and the second page of Plaintiff's Exhibit 4 is a
13 Waiver of Appearance and Document Receipt.  Do you
14 see that?
15    A    Yes.
16    Q    The second page of Plaintiff's Exhibit 4
17 is captioned Northern District of Georgia, In Re:
18 Grand Jury Proceedings, the second page.  Do you
19 see that at the top of the document?
20    A    Yes.
21    Q    Did United Inn and Suites receive a
22 federal grand jury subpoena in 2017?
23    A    Are you talking about this one?
24    Q    I'm asking did United Inn and Suites
25 receive a federal grand jury subpoena in 2017?

11 (Pages 292 - 295)

30(b)(6) Tahir Shareef                                        May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 296

1 Don't worry about what you're holding right now.
2    A  Well, if you talking about this document,
3 I could say yes.
4    Q  Do you remember receiving a subpoena in
5 2017 asking the hotel to produce records?
6    A  I don't know.  If I don't see this paper,
7 I don't even know what you're talking about.  But I
8 have this paper in front of me.
9    Q  Mr. Shareef, has the FBI ever visited
10 United Inn and Suites?
11   A  Yes.
12   Q  I imagine that would be memorable, right?
13   A  Yes.
14   Q  When did that occur?
15   A  I don't know.
16   Q  Was that about 2017?
17   A  I don't know.
18      (Plaintiff's Exhibit 5 marked)
19 BY MR. BOUCHARD:
20   Q  I'm showing you Plaintiff's Exhibit 5
21 which is Bates stamped NBI 2554.  Mr. Shareef,
22 Plaintiff's Exhibit 5 is an email chain between you
23 and Kelly J. Strickler who's an FBI agent, and the
24 email chain is from August 2017.  Do you see that?
25   A  Yes.

Page 297

1    Q  Do you recall this exchange over email
2 with Agent Strickler?
3    A  Looking at the document, yes, I can.
4    Q  Do you recall that you received a
5 subpoena from the FBI requesting that the hotel
6 produce records in August of 2017?
7    A  Yes.
8    Q  How did you get the subpoena?
9    A  How did we get the subpoena.  Someone
10 came and give it to us I think.  I don't know.
11   Q  Somebody from the FBI came to the hotel?
12   A  Could be.
13   Q  You said that you remember the FBI
14 visiting the hotel.
15   A  Yes.
16   Q  You couldn't remember when that was.
17   A  No.
18   Q  How many times did the FBI visit the
19 hotel?
20   A  I don't know.
21   Q  More than once?
22   A  Maybe.  I don't know.
23   Q  More than five times?
24   A  I don't know.  I have no idea.
25   Q  Well, tell me what you remember about the

Page 298

1 FBI visiting the hotel, Mr. Shareef.
2    A  I have no idea when they visit what is
3 the -- what is even the question.  I don't
4 remember.
5    Q  Mr. Shareef, I have asked you do you
6 recall the FBI visiting the hotel and you said yes.
7    A  Uh-huh (affirmative).  Yes.
8    Q  What do you recall about that?
9    A  I can't recall nothing.
10   Q  Except you recall them visiting?
11   A  Yeah.
12   Q  Who did they talk to?
13   A  They must have talked to me.
14   Q  Do you recall them talking to anybody
15 else?
16   A  I don't know.
17   Q  Where did they talk to you?
18   A  At the front desk.
19   Q  How long was the conversation?
20   A  I have no idea.
21   Q  Was it hours long?  Was it minutes long?
22   A  Could be a minute.  Could be an hour.  I
23 don't know.
24   Q  Were you sitting or standing for the
25 conversation?

Page 299

1    A  Usually standing.
2    Q  Was there anybody else present?
3    A  I don't know.
4    Q  Do you know if they talked to anybody
5 else on the property?
6    A  I don't know.
7    Q  Do you know what they did on the property
8 other than speak to you?
9    A  I don't know.
10   Q  So you just have no clear recollection of
11 the FBI visiting the United Inn and Suites?
12   A  No.
13   Q  Is that not a memorable event to you?
14   A  Not really.  If they come and they have
15 check a room, if they ask me something, they ask me
16 the name of the guest or something, I give them a
17 report and that's usually end of it.  I don't know
18 what they asked me.  I don't remember.
19   Q  Did you understand what they were
20 investigating?
21   A  No.
22   Q  Did you ask?
23   A  I must have.
24   Q  Did they answer you?
25   A  They must have answered me.  But I don't

12 (Pages 296 - 299)

30(b)(6) Tahir Shareef                                           May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 300

1 know what they investigating and what is the answer
2 from them.
3     Q    When did you learn that the FBI was
4 investigating minor sex trafficking at the United
5 Inn and Suites?
6         MS. RICHENS: I'm going to object to the
7 form of the question.
8     A    I don't know. I don't know the answer.
9 BY MR. BOUCHARD:
10     Q    Again, Mr. Shareef, this is the only
11 opportunity I have to get answers to some very
12 basic questions relevant to the Plaintiffs' claims
13 in their respective cases prior to trial.
14     A    Right.
15     Q    Your testimony is you have zero
16 recollection of when you learned that the FBI was
17 investigating minor sex trafficking at the United
18 Inn and Suites?
19         MS. RICHENS: Objection as to form.
20     A    They came and, like I said, they asked me
21 if I have any record. Or sometime they ask me if
22 they can go to any room, and I help them open the
23 room sometime. But I don't know in that specific
24 case I have no recollection.
25

Page 301

1 BY MR. BOUCHARD:
2     Q    But you just recalled something that I'd
3 asked you about previously. You said that they
4 asked you to show you a room.
5     A    Yeah.
6     Q    You understand that you're under oath
7 today, sir?
8     A    Yes. Yes. Yes.
9     Q    And so when I ask you a question, you're
10 obligated to give a full and complete answer to it?
11     A    Yeah. But I don't know the timing. And
12 I don't even know the questions after so many
13 years. So if I don't know, I don't know.
14     Q    Well, I asked you what you remembered
15 about their visit.
16     A    Right.
17     Q    And you're now telling me that you
18 remember that they asked you to take them to a
19 room.
20     A    Yes.
21     Q    Is that correct?
22         MS. RICHENS: I'm going to object --
23     A    May have.
24         MS. RICHENS: -- to the form of the
25 question. I think it misstates his prior

Page 302

1 testimony.
2 BY MR. BOUCHARD:
3     Q    Well, Mr. Shareef, is it your testimony
4 that they asked you to take them to a room at the
5 hotel?
6     A    I mean police asked them, you know, to
7 take to the room. And FBI, police, same thing for
8 me. I am not getting your question. For me
9 anybody comes in, you know, the police officer, the
10 FBI, that comes in a uniform, for me the same, they
11 are the authority and they ask me any information.
12 If I have it, I produce them. If I don't have it,
13 I tell them look, I don't have it.
14         I'm going to give you example. Sometimes
15 they come and say okay, I need to know if this
16 person is staying with us. We look at the record.
17 And sometimes they show us a picture. And if there
18 is somebody in there, in the record, we give them
19 the information. But, you know, maybe sometimes we
20 said we have no record, we don't know, nobody
21 recognize this face.
22     Q    I'm asking you specifically about the FBI
23 visit that's referenced in Plaintiff's Exhibit 5
24 because it is pertinent to this case.
25     A    Okay.

Page 303

1     Q    And so that's why I'm focusing on that
2 specific visit and this specific grand jury
3 subpoena that I have asked you about. If you don't
4 have any recollection of the FBI coming, that's
5 fine. But it sounds like you do have some
6 recollection. So that's what I'm trying to
7 understand, what is your recollection of the FBI
8 coming in 2017?
9     A    Okay. Like I said, police officer, FBI,
10 whoever come, they ask anything, we provide them.
11 And after that, you know, I don't know what they do
12 with that information.
13     Q    So you believe you provided to the FBI
14 whatever the FBI asked for; is that what you're
15 saying?
16     A    That's right.
17     Q    And you may have taken the FBI agent or
18 agents to a room at the hotel?
19     A    If they asked for it, yes.
20     Q    But you cannot recall if they did?
21     A    No.
22     Q    And I'm going to ask you again, is there
23 anything else that you can remember about your
24 interactions with the FBI agents in 2017 that you
25 have not already told me?

13 (Pages 300 - 303)

30(b)(6) Tahir Shareef                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 304

1    A    No, I don't know.  I don't have ...
2         (Plaintiff's Exhibit 6 marked)
3   BY MR. BOUCHARD:
4    Q    I'm showing you Plaintiff's Exhibit 6
5   which is one of the documents that you provided to
6   the FBI in 2017, and it is Bates stamped NBI 2568
7   through NBI 2572.  You see that, Mr. Shareef?
8    A    Yes.
9    Q    Do you recall preparing this report for
10  the FBI?
11   A    I mean looking at these documents, this
12  come from my record that time.  So other than that,
13  I don't recall anything.
14   Q    Well, I can represent to you,
15  Mr. Shareef, that this document, NBI 2568, on
16  page 1 of Plaintiff's Exhibit 6 lists for example
17  Kikia S. Anderson in row number 5 there who has
18  pled guilty to sex trafficking A.G. and G.W.  Are
19  you aware of that?
20   A    No.
21   Q    Do you recall preparing this report for
22  the FBI?
23   A    This one?  Yes.
24   Q    You do recall preparing it?
25   A    I mean if we print it, yes.

Page 305

1    Q    Is this a report that's sitting here in
2   2023 you could prepare for the same time period all
3   over again?
4    A    I don't think so.  It goes maybe a month,
5   two months, something, whatever system has the
6   capacity.
7    Q    So if you sat down at your computer in
8   2023 and tried to prepare a report from 2017, you
9   wouldn't be able to do it?
10   A    No.
11   Q    Because this data is no longer available
12  on your business computer?
13   A    That's what I'm guessing.
14   Q    Have you tried to prepare such a report
15  for data from years prior?
16   A    Yes, I guess.
17   Q    Were you able to do so?
18   A    I cannot be able to do it.
19   Q    I noticed that the column that stands for
20  LOS is length of stay.  Do you see that?
21   A    Yes.
22   Q    And some of the guests at the hotel, if
23  you scroll through Plaintiff's Exhibit 6, literally
24  stayed at the hotel for thousands of days.
25   A    Yeah.

Page 306

1    Q    Is that true?
2    A    Yes.
3    Q    The United Inn and Suites is an extended
4   stay hotel?
5    A    That's right.
6    Q    How does the United Inn and Suites comply
7   with the DeKalb County ordinance prohibiting stays
8   consecutive of 180 days or more?
9         MS. RICHENS:  Objection, calls for legal
10  conclusion.
11   A    I don't know.  But I am trying to take
12  few of the same reason few people out from the
13  property, and I just cannot do it because I don't
14  get any help to evict them.  They said they don't
15  want to move.  And even right now there are two
16  people, I take them to the court, I still cannot
17  remove them.
18  BY MR. BOUCHARD:
19   Q    Even though you were having difficulty
20  removing people from the property, you didn't hire
21  more security from 2017 to 2019?
22        MR. UNDERRINER:  Object to the form.
23   A    I call police, they cannot remove it.  I
24  call security, can't move them.  I call the actual
25  police, they cannot move it.

Page 307

1   BY MR. BOUCHARD:
2    Q    You didn't hire more security in 2017 to
3   2019 to try to help you move people off the
4   property?
5    A    I have a police, they cannot remove it.
6    Q    I don't understand what you mean.
7    A    I mean the police, the real police
8   officer with the authority, they cannot remove
9   them.  The security person, certainly they cannot
10  remove them.
11   Q    What's your basis for saying that,
12  Mr. Shareef?
13   A    Because I have tried, you know, many
14  times, you know, few of the people, they are living
15  there longer time.  I tried to, you know, seek help
16  from the police, from the court.  I still cannot do
17  it.
18   Q    When you prepared Plaintiff's Exhibit 6
19  for FBI Agent Strickland in 2017, did you
20  understand why she wanted you to prepare this
21  report?
22   A    I don't know.
23   Q    You don't recall?
24   A    I don't recall.
25   Q    Do you think you knew at the time or

14 (Pages 304 - 307)

30(b)(6) Tahir Shareef                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 308

1 you're not sure?
2    A   I don't know.  Sometimes they give me
3 name and I can find out if the person is there.
4 Sometimes they give me like give us something, you
5 know, prior to like a one year, two year.  I just
6 told them I cannot get it from my record because my
7 record goes so far.  So I don't know what their
8 specific demand was that time.
9    Q   And you're saying you don't know why they
10 were asking you to prepare this report?
11    A   Repeat the question.  Repeat the
12 question.
13    Q   Do you know why FBI Agent Strickland was
14 asking you to prepare that report?
15    A   No.
16    Q   If there were a series of murders at the
17 United Inn and Suites, is it fair to say that the
18 United Inn and Suites would discuss steps that the
19 hotel could take to try to address the violent
20 crime on the property?
21       MS. RICHENS:  Objection as to form.
22       MR. UNDERRINER:  Objection.
23    A   I don't know.
24 BY MR. BOUCHARD:
25    Q   You're the owner of the hotel,

Page 309

1 Mr. Shareef.  If there's two murders in a month at
2 the United Inn and Suites, would you as the owner
3 and general manager of the hotel want to evaluate
4 security steps in place at the hotel?
5       MS. RICHENS:  Objection as to form.
6    A   I have my -- the officers, they are
7 working for me, and I think that's the source I am
8 using.  And also, you know, call the, you know, 911
9 or, you know, DeKalb County Police.
10 BY MR. BOUCHARD:
11    Q   What I am trying to understand is what
12 would you need to see as the owner and general
13 manager of the hotel in order to decide I need to
14 enhance the security in effect at my property?
15       MR. UNDERRINER:  Object to the form.
16    A   I just seek help from my officers and the
17 local police.
18       (Plaintiff's Exhibit 7 marked)
19 BY MR. BOUCHARD:
20    Q   I'm showing you what's been marked as
21 Plaintiff's Exhibit 7.  This is an email that was
22 Bates stamped NBI 3099 from Tim Wade to the United
23 Inn and Suites' Gmail account.  Do you see that?
24    A   Yes.
25    Q   And it says that Investigator T. Wade is

Page 310

1 with the Criminal Investigations Division of the
2 Rockdale County Sheriff's Office.  Do you see that?
3    A   Say again, please.  I didn't pay
4 attention.
5    Q   You see that Investigator T. Wade, who is
6 the author of this email, works for the Rockdale
7 County Sheriff's Office in the Criminal
8 Investigations Division?
9    A   Right.
10    Q   This email was sent from Mr. Wade to
11 unitedinn4649@gmail.com, right?
12    A   Right.
13    Q   Is that the hotel's email account?
14    A   Right.
15    Q   Did the hotel receive this email?
16    A   Yes.
17    Q   Did you review this email at the time
18 that it was sent in October 2018?
19    A   Certainly I look at the email.
20    Q   As of October 2018 -- let me back up and
21 phrase it differently.  Throughout the period in
22 question, that is 2017 through 2019, Mr. Shareef,
23 was it your practice to regularly review and read
24 emails sent to unitedinn4649@gmail.com?
25    A   Yes.

Page 311

1    Q   That was your regular practice?
2    A   Yes.
3    Q   And as the owner and general manager you
4 wanted to be aware of the emails --
5    A   That's right.
6    Q   -- coming into the hotel?
7    A   Uh-huh.
8    Q   Is that correct?
9    A   Yes.
10    Q   Do you recall receiving this email as we
11 sit here today?
12    A   I'm looking at it.  I think I have seen
13 it.
14    Q   And you see the subject line is, quote,
15 Missing Juvenile Maybe at United Inn Hotel on
16 Memorial Drive, end quote?
17    A   Right.
18    Q   And the content of the email says:  I was
19 asked by the guardian of J.G. who stated that her
20 niece was at this hotel with some friends.  Thank
21 you for your help.
22       Do you see that?
23    A   Yes.
24    Q   What do you understand the word juvenile
25 to mean?

15 (Pages 308 - 311)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 17 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 312

1     A    Underage person.
2        (Plaintiff's Exhibit 8 marked)
3  BY MR. BOUCHARD:
4     Q    I'm showing you what's been marked as
5  Plaintiff's Exhibit 8.  This is another email from
6  Investigator Wade.  If you compare it to
7  Plaintiff's Exhibit 7, you'll see that it was sent
8  one second after Plaintiff's Exhibit 7.  Do you see
9  that?
10    A    Yes.
11    Q    And this email has a subject line that
12 says Missing Juvenile; is that right?
13    A    Right.
14    Q    And it has an attachment to it.  Do you
15 see that?  I'm going to give you the attachment in
16 a second.  But underneath the subject line it says
17 Attachments.
18    A    Yes.
19    Q    This is an email that the United Inn and
20 Suites received; is that correct?
21    A    Yes.
22    Q    Because it was sent, again, to the same
23 email address as Plaintiff's Exhibit 7?
24    A    Right.
25       (Plaintiff's Exhibit 9 marked)

Page 313

1  BY MR. BOUCHARD:
2     Q    I'm showing you Plaintiff's Exhibit 9
3  which is Bates stamped NBI 3107.  This was attached
4  to the email Plaintiff's Exhibit 8 that we were
5  just looking at, Mr. Shareef.  Did you open up that
6  email that we were just looking at and the
7  attachment to it when you received it in
8  October 2018?
9     A    I don't know.  But I may have.
10    Q    Do you recall seeing this notice which is
11 Plaintiff's Exhibit 9?
12    A    No, I don't recall.
13    Q    Is this the first time you're seeing
14 this?
15    A    Yes.
16    Q    You have not seen this prior to today?
17    A    No.
18    Q    Do you know what BOLO stands for?
19    A    BOLO stand for?
20    Q    B-O-L-O.
21    A    BOLO stand for.
22    Q    Do you know what that means, BOLO?
23    A    I don't recall.  But I may have sitting
24 in one of the Police, Sheriff, or maybe DeKalb
25 County Police meeting and we got some material

Page 314

1  about the -- some crimes.  Maybe that's coming from
2  there.  I don't recall.
3     Q    I can represent to you that it means be
4  on the lookout for.  Is that new information to you
5  or is that something you're aware of?
6     A    No, I certainly don't call this
7  abbreviation -- don't recall this abbreviation.
8     Q    Recall this?
9     A    Abbreviation.
10       MR. UNDERRINER:  Abbreviation.
11 BY MR. BOUCHARD:
12    Q    Abbreviation.  But you see underneath
13 BOLO it says Missing Person?
14    A    Right.
15    Q    And you understand what that means?
16    A    Uh-huh.
17    Q    Right?
18    A    Yes.
19    Q    And it says that Rockdale County is
20 looking for this missing person, correct?
21    A    Yes.
22    Q    As of October 9th, 2018, correct?
23    A    Yes.
24    Q    And the email that you received from Tim
25 Wade, which is Plaintiff's Exhibit 8, was dated

Page 315

1  October 29th, 2018, right?
2     A    Yes.
3     Q    So at this point according to my math she
4  had been missing for about 20 days?
5     A    Yes.
6     Q    And it provides a photo of her?
7     A    Uh-huh.
8     Q    Is that correct?
9     A    Uh-huh (affirmative).
10    Q    And remember, sir, we need audible yes or
11 nos.
12    A    Yes.  I'm sorry about that.
13    Q    And it provides her name?
14    A    Yes.
15    Q    J.G., do you see that?
16    A    Yes.
17    Q    Who is J.G. in this lawsuit against
18 United Inn and Suites?
19    A    Yes.
20    Q    Do you understand that?
21    A    Yes.
22    Q    And it also provides her age, race, hair
23 color, eye color, height, and weight.
24    A    Yes.
25    Q    Do you see that?

16 (Pages 312 - 315)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 18 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 316

1    A   Yes.
2    Q   It says a little bit further down on
3 Plaintiff's Exhibit 9:  Anyone with information
4 about this case is asked to contact, and it
5 provides office, cell numbers, and a 24-hour number
6 to contact.  Do you see that?
7    A   Yes.
8    Q   If I heard you correctly, Mr. Shareef,
9 you have not ever seen Plaintiff's Exhibit 9 before
10 today; is that correct?
11   A   That maybe 2017 we will seen it when we
12 open the email.  I'm going to give you example.  I
13 don't know if that works or not.  There are few
14 missing person when police officer came.  We put it
15 in our office bulletin board, we put it there and
16 it stay there.  But I don't remember all these
17 names.
18   Q   How many missing person reports have you
19 received regarding minors?
20   A   Right.  Minors, I don't know about the
21 minor report.  But the missing person, I mean even
22 right now in my, you know, front desk we have maybe
23 ten pictures missing persons.
24   Q   Are any of them minors?
25   A   It could have been.  I don't know.  I

Page 317

1 don't recall right now.
2    Q   Well, I don't know what other notices you
3 may have at your front desk right now.  But
4 Plaintiff's Exhibit 9 identifies J.G., J.G. as a
5 minor --
6    A   Right.
7    Q   -- is that correct?
8    A   Yes.
9    Q   And she looks like a minor in this photo,
10 does she not?
11   A   I don't know.
12       MS. RICHENS:  Objection as to form.
13 BY THE VIDEOGRAPHER:
14   Q   Well, I'm asking for your perception,
15 Mr. Shareef.
16   A   I don't know.  I cannot say anything
17 about this.
18   Q   You have no opinion whatsoever?
19   A   No.
20   Q   You are responsible for the security at
21 the property; is that true?
22   A   Uh-huh (affirmative).  Yes.
23   Q   As the general manager?
24   A   Right.
25   Q   And your position is that you are totally

Page 318

1 unable to discern whether somebody looks like a
2 minor or not?
3       MR. UNDERRINER:  Object to the form.
4    A   Looking at this picture, yes.
5 BY MR. BOUCHARD:
6    Q   Based on this photo you cannot tell --
7    A   I cannot.
8    Q   -- if she looks like a minor?
9    A   I cannot.
10   Q   But you know that it says her current age
11 is 16?
12   A   I can read.
13   Q   Did you ever contact Investigator Wade?
14   A   I might have been.  I don't know what I
15 respond via email or anything, you know.  What
16 record, you know, they ask me if I had the record.
17 I must have send it to them whatever question they
18 have.
19   Q   It is okay if the answer is no or I don't
20 know.  My question was very straightforward.
21   A   Right.
22   Q   Did you ever contact Investigator Wade?
23   A   Again, I don't know.  Maybe I have been.
24   Q   You may have, you may have not?
25   A   Right.

Page 319

1    Q   You do not know; is that true?
2    A   I do not know.
3    Q   Do you have any knowledge of whether
4 Mr. Islam contacted Investigator Wade?
5    A   I don't think so.  But this inspector may
6 come back and, you know, talk to him.  I don't
7 know.
8    Q   Do you have a recollection of
9 Investigator Wade ever coming to the United Inn and
10 Suites?
11   A   No.
12   Q   You do not recall?
13   A   No.
14   Q   Mr. Shareef, do you agree with me that
15 there being a missing youth who is suspected of
16 being at the United Inn and Suites is a priority
17 matter?
18       MR. UNDERRINER:  Object to form.
19       MS. RICHENS:  Same objection.
20   A   I don't know how to answer that.
21 BY MR. BOUCHARD:
22   Q   As the owner and general manager, would
23 it concern you if a police officer called you and
24 said we have a credible lead that there's a missing
25 minor at your hotel?

17 (Pages 316 - 319)

30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 320

1    MS. RICHENS: Objection as to form.
2    A   I mean they always come and they ask this
3  question. And like I said, I give them the record,
4  I open the door. If they says look I think, you
5  know, that such and such room we need to check. So
6  I always help them. But that's my concern, if
7  there is any, I help them. So I don't know what --
8  how to answer you. Concern me, of course concern
9  me and I help them solve the issue.
10 BY MR. BOUCHARD:
11   Q   Well, that's an answer.
12   A   Okay.
13   Q   Yes, it concerns you if there's --
14   A   Okay.
15   Q   -- a missing minor at the hotel?
16   A   Okay.
17   Q   Is that correct?
18   A   Yes.
19   Q   Would you want to it concern the staff at
20 the hotel too?
21   A   Yes.
22   Q   Would you train your staff to care about
23 things like that?
24   A   Yeah. They have -- they have known, you
25 know, if they see some suspicious thing, they tell

Page 321

1  me. I talk to other -- you know, they can call the
2  police, you know, or they call 911 or they tell me,
3  I call my police officer. Most the time call the
4  local police.
5    MS. RICHENS: David, may we take a quick
6  break?
7    MR. BOUCHARD: Sure.
8    THE VIDEOGRAPHER: Off the record at
9  2:29 p.m.
10   (Recess 2:29-2:41 p.m.)
11   THE VIDEOGRAPHER: Back on the record at
12 2:41 p.m.
13   (Plaintiff's Exhibit 10 marked)
14 BY MR. BOUCHARD:
15   Q   Mr. Shareef, I'm handing you what's been
16 marked as Plaintiff's Exhibit 10 which is Bates
17 stamped NBI 3097 to 3098. Do you see that,
18 Mr. Shareef?
19   A   Yes.
20   Q   And you see it is another email from
21 Investigator Tim Wade on October 29th, 2018?
22   A   Yes.
23   Q   And it is also to
24 unitedinn4649@gmail.com?
25   A   Right.

Page 322

1    Q   Did the hotel receive this email as well?
2    A   Yes.
3    Q   Did you review this email?
4    A   Yes.
5    Q   And you see it says Subject Missing
6  Person; is that right?
7    A   Right.
8    Q   And the body of the email says: Ashar
9  was advised by her guardian that she was staying at
10 United Inn located at 4649 Memorial Drive. Thank
11 you for your help.
12       Do you see that?
13   A   Right.
14   Q   And as you can see, there's an attachment
15 to Plaintiff's Exhibit 10 which is identical to the
16 BOLO notice that we already looked at.
17   A   Right.
18   Q   Do you recall that?
19   A   Right.
20   Q   Mr. Shareef, we have talked about three
21 emails from Investigator Wade on October 29th, 2018
22 and two BOLO notices. What, if anything, did the
23 United Inn do in response to these emails and these
24 BOLO notices?
25   A   The response would be if I see this girl,

Page 323

1  we notify whoever is, you know, concerning about
2  this email, this time this Mr. T. Wade. So that's
3  what it is.
4    Q   I can represent to you, Mr. Shareef, that
5  I did not see a response to Investigator Wade in
6  your emails. Do you believe that you did respond
7  to Investigator Wade?
8    A   We may have communicated via phone with
9  Wade.
10   Q   Do you recall doing so?
11   A   No.
12   Q   Do you know if anybody else on behalf of
13 United Inn communicated with Investigator Wade?
14   A   I see this email name Ashar, so might
15 have talked to Ashar and Ashar talk to him.
16   Q   Did you ever communicate with Ashar about
17 his communication with Investigator Wade?
18   A   Maybe that time. But I don't know.
19   Q   You don't recall as you --
20   A   No.
21   Q   -- sit here today?
22   A   No.
23   Q   Do you recall whether you held a staff
24 meeting to talk about these missing juvenile
25 notices?

18 (Pages 320 - 323)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 20 of 83
30(b)(6) Tahir Shareef                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 324

1    A    No.
2    Q    You did not hold one or you do not
3    recall?
4    A    I do not recall.
5    Q    Did you post a photo of J.G. at the
6    hotel?
7    A    I may have.  But I don't recall.
8    Q    Where would you have posted it?
9    A    Post it in the office where everybody
10   comes in every day.
11   Q    Where is that?
12   A    It is in the office.
13   Q    Are you talking about in the lobby?
14   A    No, not lobby.  In the office back, I can
15   say back of the office.
16   Q    Who goes in there every day?
17   A    All the employees go there.
18   Q    Would you have made an announcement to
19   all the employees that you have just posted this
20   new photo of a missing juvenile reported to be at
21   the hotel?
22   A    I don't recall.
23   Q    Did you send this photo of J.G. to
24   Sergeant Weber?
25   A    I may have, you know, talked with him the

Page 325

1    same night, you know, look at that, you know, photo
2    or something.  We may have talked.
3    Q    You do not recall?
4    A    I don't recall.
5    Q    What about Sergeant McClelland?
6    A    I don't recall.
7    Q    If you had sent it to either of those
8    gentlemen, you would have sent it to them by text
9    message; is that correct?
10   A    I sent them a text message or maybe I
11   called them and said look, when you come in, you
12   know, look at this picture, you know, see if you
13   see this, you know, person.
14   Q    Well, I can represent to you that I have
15   what I believe are your text messages from 2017 to
16   2019 with Weber and McClelland.  I have not seen a
17   text message with that photo.
18   A    Okay.
19   Q    Is there some other way you might have
20   sent her photo to Weber or McClelland or is there
21   no other way other than by text message?
22   A    I mean they come there every day, so we
23   just tell them look at this picture, you know, when
24   you come in.  Because maybe we didn't see such and
25   such person, you know, so we tell them look, you

Page 326

1    are there, so you look around and see if the person
2    you see.  Maybe they are around and sometime
3    they're not there, you know.
4    Q    Are you testifying to something that
5    might have happened or that you recall happening?
6    A    No.  No.  I am testifying that when any
7    picture --
8    Q    Well, I'm not talking about any picture.
9    I'm specifically asking do you recall sharing this
10   photo of J.G. with Weber and McClelland?
11   A    I may have tell them that look at that
12   board there, we put the picture there.  Other than
13   that I don't recall.
14   Q    You may have told them?
15   A    Yeah.
16   Q    But you may have not told them; is that
17   what you're saying?
18   A    I don't recall.
19   Q    You do not recall --
20   A    Yeah.
21   Q    -- if you told them?
22   A    Yeah.
23   Q    Correct?
24   A    I don't recall what I tell them is what I
25   am saying.

Page 327

1    Q    Is it possible you did not tell them
2    about this photo?
3    A    I don't know.
4    Q    I am taking it the answer is no because
5    we have beaten this drum about the security at the
6    hotel.  But I need to ask just to be sure.  Did the
7    hotel hire any additional security after receiving
8    this photo of J.G.?
9    A    No.
10   Q    Did the hotel ask Weber or McClelland to
11   work more than four hours per day after receiving
12   this photo of J.G.?
13   A    Hotel asked them to when they are, you
14   know, in the DeKalb County when they are in this
15   area, they come and, you know, visit more often
16   there daytime when they working on their regular
17   job, so they come visit, you know.
18   Q    Did the hotel ask them to work more than
19   four hours a day after receiving this photo of
20   J.G.?
21   A    No.
22   Q    Did you ask the DeKalb Police Department
23   to help the hotel implement prevention efforts
24   after receiving this photo of J.G.?
25   A    I don't recall.

19 (Pages 324 - 327)

30(b)(6) Tahir Shareef                                                           May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 328

1    Q    Did you review the list of guests staying
2 at the hotel after you received this photo of J.G.?
3    A    I reviewed the guest list, yes.
4    Q    For what purpose?
5    A    Because I maybe I see the email that they
6 need some record.  I don't know if that's the same
7 email or different email.
8    Q    I'm not talking about the email from the
9 FBI agent.  Is that the email you're thinking
10 about?
11   A    Yes.
12   Q    I'm talking about the email from
13 Investigator Wade where he's notifying you that
14 he's received information that a minor who is a
15 missing person is at the United Inn and Suites.
16   A    I don't recall, you know, what happened
17 after that.
18   Q    You don't recall if you reviewed the
19 guest list at the hotel after that?
20   A    I don't recall it.
21   Q    At any point in time, Mr. Shareef, do you
22 recall talking to J.G.?
23   A    I don't think so.
24   Q    Are you saying you do not recall or you
25 don't think you recall or what are you saying?

Page 329

1    A    I don't recall.  I mean there are -- I
2 spoke to six people today and those six they are a
3 family with one child, so I don't know if I see
4 them tomorrow some other place, I don't know if I
5 can recognize their face or not.
6         (Plaintiff's Exhibit 11 marked)
7 BY MR. BOUCHARD:
8    Q    Mr. Shareef, I'm showing you Plaintiff's
9 Exhibit 11 which is Bates stamped NBI 2659 through
10 2661.  And it is an email chain between a Mr. Ali
11 with Quantum Bank and you; is that correct?
12   A    Yes.
13       MS. RICHENS:  Take a moment and review
14 it, please.
15 BY MR. BOUCHARD:
16   Q    And you see it is an email chain --
17       MS. RICHENS:  Let me have him look at it
18 so he can familiarize himself with the document.
19 Thank you.
20 BY MR. BOUCHARD:
21   Q    It is just that one page, Mr. Shareef.
22   A    Okay.
23   Q    Two of the three pages are legal
24 disclaimers, so you can thank lawyers for that.
25       Have you had a chance to review --

Page 330

1    A    Yes.
2    Q    -- Plaintiff's Exhibit 11?
3    A    Yes.
4    Q    Who is Mr. Ali?
5    A    He worked for the Quantum Bank.
6    Q    What was his job with Quantum as you
7 understood it?
8    A    He is -- I believe he's representing -- I
9 took a loan from Quantum and I think he's
10 representing my account.
11   Q    You personally took a loan from Quantum?
12   A    No.  This is the business loan.
13   Q    Why was he contacting you?  At least why
14 did you understand he was contacting you in
15 May 2017?
16   A    I have to look on the other email what
17 was the reason.  Because I contact him, you know,
18 like on a regular basis.  I don't know what was the
19 concern.
20   Q    In May 2017 he says:  Hi, Tahir.  Brad
21 and Amy would like to stop by the hotel next week
22 to discuss the problem you are experiencing with
23 the County.  Do you have time to meet with us?
24 Please let me know the date and time that's good
25 for you.

Page 331

1         Do you see that?
2    A    Yeah.
3    Q    Do you recall a problem you were
4 experiencing with the County in May 2017?
5    A    I might have those ordinance ticket from
6 them, and that could be the problem.  I don't know
7 what the other problem is.
8    Q    I'll show you some documents.  I think
9 your suspicions are correct that that is the
10 problem that he's referencing.  But you can decide
11 for yourself when I show you the documents.
12   A    Okay.
13   Q    Who are Brad and Amy?
14   A    They are his colleagues.
15   Q    They work for Quantum Bank?
16   A    Yes.
17   Q    How many times have Mr. Ali, Brad, Amy,
18 any other representatives from Quantum Bank been to
19 the United Inn and Suites?
20   A    Maybe once or twice a year.  Maybe some
21 years they don't.
22   Q    What's your understanding of why they
23 come?
24   A    Because basically that's their property
25 and they are coming there to see if the property

30(b)(6) Tahir Shareef                                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 332

1 looks okay to them.
2    Q    What was your understanding of why Brad
3 and Amy wanted to stop by to discuss the problem
4 you were experiencing with the County?
5         MS. RICHENS: Objection as to form.
6    A    I don't know. I'm just guessing that
7 could be the, you know, the ordinance ticket I got
8 from the DeKalb County Code Enforcement.
9 BY MR. BOUCHARD:
10    Q    I mean I'm just reading this email that
11 you received. I didn't receive it, right?
12    A    Yeah.
13    Q    And it looks like you set up a meeting
14 here?
15    A    Uh-huh (affirmative).
16    Q    You agree with me?
17    A    Yes.
18    Q    Did you meet with them?
19    A    I must have.
20    Q    In May 2017?
21    A    I must have.
22    Q    Do you recall the meeting?
23    A    I really don't.
24    Q    Do you recall who attended?
25    A    No.

Page 333

1    Q    Do you have any notes from the meeting?
2    A    No.
3    Q    Do you know where the meeting occurred,
4 Mr. Shareef?
5    A    I don't know. Could be in the McDonald.
6 Could be at the office. I don't know.
7         (Plaintiff's Exhibit 12 marked)
8 BY MR. BOUCHARD:
9    Q    I'm showing you Plaintiff's Exhibit 12
10 which is NBI 928 to 929. Mr. Shareef, this is a
11 two-page document that is Northbrook Industries,
12 Inc.'s Balance Sheet as of December 31, 2018 on
13 page 1 and Income Statement on page 2. Do you see
14 that?
15    A    Yes.
16    Q    I wanted to just ask you in the middle of
17 the first page, that is page 928 of Exhibit 12, it
18 says Liabilities and Capital. Do you see that?
19 Right in the middle of the first page it says --
20    A    Yeah.
21    Q    -- Liabilities and --
22    A    Yes.
23    Q    -- Capital?
24    A    Yes.
25    Q    And do you see to the left of that it

Page 334

1 says Current Liabilities?
2    A    Yes.
3    Q    And then underneath that it says Loan
4 From Shareholder $1,037,401?
5    A    Uh-huh (affirmative).
6    Q    Do you see that?
7    A    Yes.
8    Q    Who is the shareholder who loaned money
9 that's being referenced there?
10    A    I need to talk to my CPA. I need to talk
11 to my CPA about this. This is accounting done by
12 the CPA.
13    Q    Who were the shareholders of Northbrook
14 Industries?
15    A    Basically myself and Dr. Sab.
16    Q    Dr. Sabharwal?
17    A    Yeah, Sabharwal.
18    Q    The two of you?
19    A    Yeah.
20    Q    Anybody else?
21    A    No.
22    Q    Did one of the two of you make a loan to
23 United Inn and Suites?
24    A    Yeah. We both made the loan.
25    Q    So is that what that's referring to?

Page 335

1    A    Yeah, that could be. I'm not a hundred
2 percent certain. Has to be.
3    Q    When did you make the loan?
4    A    Maybe few years back or maybe in the
5 beginning. I don't know.
6    Q    And when you said you made a loan, what
7 do you mean by that?
8    A    Because we're doing some upgrading in the
9 property.
10    Q    But whose money was it that was loaned?
11    A    That could be mine, could be
12 Dr. Sabharwal.
13    Q    I am surprised you wouldn't know if you
14 had loaned your money to the business. Because
15 wouldn't you be expecting the business to pay you
16 back?
17    A    Yes.
18    Q    Is the business paying you back?
19    A    Business is paying me back.
20    Q    For your loan?
21    A    Yes.
22    Q    Is the business paying Mr. Sabharwal back
23 for his loan?
24    A    I have to check with my CPA how they
25 write those papers.

21 (Pages 332 - 335)

30(b)(6) Tahir Shareef                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 336

1    Q   Who writes the checks to pay back the
2  loan? Do you not write those yourself?
3    A   Yeah, I do write it.
4    Q   Do you write Dr. Sabharwal checks to pay
5  back his loan?
6    A   I do write it.
7    Q   When did you make the loan to Northbrook
8  Industries, Inc. approximately?
9    A   I don't know what was the dates.
10   Q   Well, was it -- this is from 2018, so it
11 must have been before that?
12   A   Yeah. Yeah.
13   Q   Approximately how long before that?
14   A   I don't recall this thing.
15   Q   Several years before?
16   A   Could be.
17   Q   Is the loan that we're talking about
18 related to the Quantum Bank loan that Mr. Ali was
19 emailing you about or are those two separate
20 things?
21   A   I believe they're two separate things I
22 guess.
23   Q   Is there any documentation relating to
24 the loan that you personally made to Northbrook
25 Industries, Inc.?

Page 337

1    A   I don't know. I'm going to check with
2  the CPA.
3    Q   Well, did you sign a document with the
4  business or did you just loan money to the
5  business?
6    A   I don't know. I'll have to check with
7  the CPA.
8    Q   Do you know about Dr. Sabharwal whether
9  he signed a loan document or whether he just loaned
10 money to the business?
11   A   I have to check with the CPA.
12   Q   It says on the second page of Plaintiff's
13 Exhibit 12 on the Income Statement towards the very
14 bottom in the section on Expenses, towards the very
15 bottom of the section on Expenses it says Loan Cost
16 Amortization. Do you see that?
17   A   Yes.
18   Q   Do you know what loan that pertains to?
19   A   No. I have to check with the CPA.
20   Q   Other than the loan from Quantum Bank and
21 the loan that you and Dr. Sabharwal made, are you
22 aware of any other loans to Northbrook Industries,
23 Inc.?
24   A   I could have been. But I don't know.
25 You know, when we running this business, you know,

Page 338

1  I took money from the friends. So I don't know,
2  you know, what is this total numbers for.
3    Q   Well, of that $1,037,401 loan from
4  shareholder, how much of that do you think was your
5  money, Mr. Shareef, and how much do you think was
6  Dr. Sabharwal's?
7    A   I don't know.
8    Q   Approximately, sir?
9    A   I don't know.
10   Q   You cannot approximate?
11   A   No, I can't.
12   Q   I mean is it 50/50, you contributed
13 500,000 and he contributed approximately 500,000,
14 or was it different than that?
15   A   I don't know.
16   Q   Who would know that?
17   A   I'm going to check directly with the CPA,
18 so maybe he have something.
19   Q   What's your CPA's name?
20   A   His name is Habib, Mr. Habib.
21   Q   Can you spell that, please.
22   A   Habib Ismail, H-A-B-I-B, I-S-M-A-I-L.
23   Q   And he works in Atlanta?
24   A   Yeah.
25   Q   What's the name of his company?

Page 339

1    A   Name of the company. Alischild,
2  A-L-I-C-H-I-L-D. Alischild.
3    Q   The money that you contributed towards
4  that 1,037,000 loan, was that your personal money
5  or money from somebody else?
6    A   I may have collected from the friends,
7  you know, to use the money.
8    Q   Did you promise to repay those friends --
9    A   Yes.
10   Q   -- back?
11   A   Yes.
12   Q   In writing or is that an oral promise?
13   A   Just oral promises.
14   Q   Do you believe there's documents from the
15 business promising to pay you back or is it just
16 kind of an oral understanding?
17   A   Just an understanding.
18   Q   When we met in February, you said that in
19 2014 Mr. Sabharwal's stake in Northbrook
20 Industries, Inc. changed from 50 percent to
21 19 percent. Do you remember that?
22   A   Right.
23   Q   And I think you said that was in
24 connection with the Quantum Bank loan. Do you
25 recall?

22 (Pages 336 - 339)

30(b)(6) Tahir Shareef                                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 340

1    A    Connection with the Quantum loan?
2    Q    I thought you had told me in February
3  that in 2014 you went to Quantum Bank.
4    A    Right.
5    Q    And the shares and stakes between you and
6  Dr. Sabharwal were adjusted?
7    A    Yes.  Yes.
8    Q    Is that related to the email from Mr. Ali
9  at Quantum Bank, would he have been involved in
10  that process in 2014?
11    A    No.  That would have been a different
12  person that work at Ali's office I guess.
13    Q    But you had one loan with Quantum Bank;
14  is that right?
15    A    Yeah.
16        (Plaintiff's Exhibit 13 marked)
17  BY MR. BOUCHARD:
18    Q    Showing you Plaintiff's Exhibit 13 which
19  is from the Magistrate Court of DeKalb County, and
20  it is Bates stamped NBI 2794 to 2803.  Do you see
21  that, sir?
22    A    Yes.
23    Q    And the Date of Notice in the top
24  right-hand corner of Plaintiff's Exhibit 13 is
25  May 12th, 2017.

Page 341

1    A    Right.
2    Q    Do you see that?
3    A    Uh-huh (affirmative).  Yes.
4    Q    And there's a lengthy single spaced list
5  that goes on for four pages.  Do you see that?
6    A    Right.
7    Q    Do you understand these to be what the
8  DeKalb County Court Code Enforcement Division
9  considered to be violations?
10    A    Yes.
11    Q    And then on page 2798, if you look at the
12  bottom right-hand corner 2798, you see that it
13  says:  You are hereby notified that an arraignment/
14  trial/hearing will be held on the above citations
15  in the Magistrate Court of DeKalb County on
16  June 6th, 2017.
17    A    Right.
18    Q    Do you see that?
19        Do you think this might be related to the
20  email that you got on May 11th, 2017 from Mr. Ali?
21    A    Could have been, yes.
22    Q    The notice goes on and there's another
23  lengthy list of violations.  I don't know if this
24  is the same list or a different list.  Do you know?
25    A    No, I don't know.

Page 342

1    Q    But you did receive this document, you
2  remember it?
3    A    Yes.
4        (Plaintiff's Exhibit 14 marked)
5  BY MR. BOUCHARD:
6    Q    Showing you Plaintiff's Exhibit 14.  This
7  is another notice from the Magistrate Court of
8  DeKalb County, and it is Bates stamped NBI 2701
9  through NBI 2708.  Do you see that?
10    A    Right.
11    Q    This notice is dated September 14th,
12  2017, correct?
13    A    Yes.
14    Q    And once again, there's a lengthy
15  single-spaced list of what I believe to be
16  violations according to the DeKalb County Code
17  Enforcement Division.  Is that your understanding?
18    A    Right.
19    Q    And I am not sure why there are some
20  blank pages in the middle, but I'll represent to
21  you that this is how it was produced to us.
22    A    Okay.
23    Q    Do you see on NBI 2707, which is the
24  second to last page, it says:  You are hereby
25  notified that an arraignment/trial/hearing will be

Page 343

1  held on the above citations in Magistrate Court of
2  DeKalb County on October 17th, 2017?
3    A    Right.
4    Q    Do you recall receiving this notice?
5    A    Yes.
6    Q    Mr. Shareef, was this notice to your
7  understanding in Plaintiff's Exhibit 14 related to
8  the notice in Plaintiff's Exhibit 13?
9    A    Yes.
10    Q    They're related?
11    A    Right.
12    Q    In other words, they concern the same
13  violations?
14    A    Right.
15    Q    After receiving these notices,
16  Mr. Shareef, did you hire a lawyer?
17    A    Yes.
18    Q    I don't want to, just like I didn't want
19  to know what you talked to Ms. Richens or Mr. Brown
20  or Mr. Story about, all I want to know is after you
21  hired the lawyer, did you make a decision as to
22  whether or not you were going to pay the fines that
23  the DeKalb County Code Enforcement Division
24  assessed?
25    A    Repeat the question.

23 (Pages 340 - 343)

30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 344

1    Q   Yeah.  After you hired a lawyer, did you
2  decide whether or not to pay the fines that the
3  DeKalb County Code Enforcement Division had
4  assessed on the United Inn and Suites?
5    A   Right.
6    Q   And your decision was to pay the fines;
7  is that correct?
8    A   Yes.
9        (Plaintiff's Exhibit 15 marked)
10 BY MR. BOUCHARD:
11   Q   Showing you Plaintiff's Exhibit 15, which
12 is Bates stamped NBI 2431 to 2432.  Mr. Shareef,
13 Plaintiff's Exhibit 15 is on page 1 a Deferred
14 Sentencing Order and on page 2 a cashier's check.
15 Do you see that?
16   A   Yes.
17   Q   The Deferred Sentencing Order says in the
18 first paragraph -- well, actually let me back up.
19 The Deferred Sentencing Order says at the top In
20 the Magistrate Court of DeKalb County, State of
21 Georgia, State of Georgia versus Northbrook
22 Industries, Inc. d/b/a United Suites; is that
23 right?
24   A   That's right.
25   Q   Is that your hotel?

Page 345

1    A   Yes.
2    Q   And it says in the first paragraph of
3  this Deferred Sentencing Order:  The Defendant
4  having come before the Court today on the
5  above-referenced charges, has entered a plea of
6  guilty slash nolo and the Court has accepted the
7  Defendant's plea.  A final sentencing hearing in
8  this matter will be held at 2:00 p.m. on July 16th,
9  2018 in the Magistrate Court of DeKalb County
10 located at, and it provides the address.  As such,
11 the Defendant is hereby ordered to appear at said
12 sentencing hearing.
13       Do you see that?
14   A   Yes.
15   Q   The next paragraph says:  The Court is
16 currently considering sentencing the Defendant to
17 pay a fine and state-imposed fees totaling $60,345.
18 If the Defendant pled guilty or nolo and it elects
19 to pay the fine and fees under consideration as a
20 sentence to the Clerk of the Magistrate Court of
21 DeKalb County on or before the sentencing hearing,
22 the Court will impose the fine and fees as detailed
23 as the sentence in this case.
24       Do you see that?
25   A   Yes.

Page 346

1    Q   And as you said, you decided to pay the
2  fine --
3    A   Right.
4    Q   -- is that right?
5        And that is reflected on page 2 of
6  Plaintiff's Exhibit 15; is that correct?
7    A   Right.
8    Q   The cashier's check for $60,345?
9    A   Right.
10   Q   And your understanding was that that was
11 the fine for violations of the DeKalb County code?
12   A   Right.
13       (Plaintiff's Exhibit 16 marked)
14 BY MR. BOUCHARD:
15   Q   Showing you Plaintiff's Exhibit 16 which
16 I only printed one copy of.  Even I don't have a
17 copy of it because it is so voluminous.  But it is
18 Bates stamped NBI 971 to NBI 1228.
19       MS. RICHENS:  What's happening, is there
20 just the original?
21       MR. BOUCHARD:  Yeah.  I just said on the
22 record that I have only printed one because it is
23 258 pages.
24       MS. RICHENS:  Okay.
25

Page 347

1  BY MR. BOUCHARD:
2    Q   Mr. Shareef, I can represent to you that
3  on the first page of Plaintiff's Exhibit 16, you
4  should see reference to the word Receipt.  And what
5  I understand Plaintiff's Exhibit 16 --
6        MS. RICHENS:  May we take a quick look?
7        MR. BOUCHARD:  Yeah.
8  BY MR. BOUCHARD:
9    Q   Do you see on the first page of
10 Plaintiff's Exhibit 16 there's a reference to
11 Receipt?
12   A   Yes.
13   Q   And I understand Plaintiff's Exhibit 16
14 outlines the violations at the United Inn and
15 Suites of the DeKalb County code defined for each
16 of those violations and then on the very last page
17 tells you the total fine owed.
18   A   Right.
19   Q   So if you flip to page 258 of Plaintiff's
20 Exhibit 16, the very last page, you should see the
21 total amount of the fine is $60,345.
22   A   Yes.
23   Q   And you see the amount paid is $60,345?
24   A   Right.
25   Q   Which is what we just saw in the

24 (Pages 344 - 347)

30(b)(6) Tahir Shareef                                        May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 348

1 cashier's check, right?
2    A    Right.
3    Q    So that Plaintiff's Exhibit 16 is a full
4 listing of each violation and the fine per
5 violation, right?
6    A    Right.
7    Q    And then the total cost of all of those
8 fines was $60,345?
9    A    Right.
10   Q    So after you paid that cashier's check,
11 you got that receipt showing that you had paid the
12 fine?
13   A    Right.
14        (Plaintiff's Exhibit 17 marked)
15 BY MR. BOUCHARD:
16   Q    Showing you Plaintiff's Exhibit 17. I do
17 have copies of it for everybody. This one is much
18 shorter. And this is Bates stamped NBI 1233 to
19 1235, and it is an email chain between you,
20 Mr. Shareef, and a Hope Hathorn with DeKalb County.
21   A    Right.
22   Q    Are you familiar with this email chain?
23   A    Yes.
24   Q    I want to direct your attention to the
25 second page of the email chain which is an email

Page 349

1 from you to a Manfus Housworth and a Thomas Kemp.
2 Do you see that?
3    A    Yes.
4    Q    And these are individuals who appear to
5 have DeKalb County email addresses; is that fair?
6    A    Right.
7    Q    Did you understand they worked for DeKalb
8 County?
9    A    Right.
10   Q    And you say: Dear Housworth, please help
11 me in this matter. I went to the Office of DeKalb
12 Planning & Sustainability to renew my license. I
13 was told in May 2018 Officer D. Chandler had a note
14 on my account that do not renew the license.
15        Do you see that?
16   A    Right.
17   Q    Was your understanding that unless and
18 until you paid the fine that you were not eligible
19 to renew your license at the United Inn and Suites?
20   A    Yes, I understand.
21   Q    In other words, the hotel could not
22 continue to do business with a business license
23 unless it paid the fines --
24   A    Yes.
25   Q    -- from DeKalb County?

Page 350

1    A    Yes.
2    Q    Was the hotel going to have to shut down
3 if it didn't pay the fines?
4    A    Right.
5    Q    Was that your understanding?
6    A    Yes.
7    Q    Mr. Shareef, who is Rashid Iqbal?
8    A    What is the name?
9    Q    Who is Rashid Iqbal?
10   A    Rashid Iqbal, he came work for a little
11 bit for me.
12   Q    Where did he work?
13   A    At the cleaning and groundsman.
14        MS. RICHENS: I'm sorry, what did you
15 say?
16        THE WITNESS: Cleaning, the groundsman.
17 BY MR. BOUCHARD:
18   Q    Where though? Because you have had
19 multiple hotels. Which hotel did he work at?
20   A    At the United Suites.
21   Q    In Decatur?
22   A    Yeah.
23        (Plaintiff's Exhibit 18 marked)
24 BY MR. BOUCHARD:
25   Q    I'm showing you Plaintiff's 18 which is

Page 351

1 Bates stamped NBI 2626. Mr. Shareef, this is a
2 1099 from 2016 to Rashid Iqbal. Do you see that?
3    A    Yes.
4    Q    And it is showing that the payer's name
5 is North Brook Industries, Inc., 4649 Memorial
6 Drive, correct?
7    A    Right.
8    Q    And it is showing the recipient's name
9 and address as Rashid Iqbal, 2737 Sheraton Drive,
10 Macon, Georgia --
11   A    Right.
12   Q    -- right?
13   A    Right.
14   Q    Which is the address of the United Inn
15 and Suites in Macon, Georgia --
16   A    Right.
17   Q    -- right?
18   A    At that time, yes.
19   Q    Was Mr. Iqbal working at the United Inn
20 and Suites in Macon for some period of time?
21   A    He may have. He work, you know, both
22 property on and off, so he may have work there too.
23   Q    And was he living at that property for
24 some period of time?
25   A    Which property?

25 (Pages 348 - 351)

30(b)(6) Tahir Shareef                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 352

1  Q  At 2737 Sheraton Drive in Macon, Georgia.
2  A  Yes.
3  Q  So that was his address?
4  A  That was his address.
5  Q  And I assume when he was living at the
6  Macon United Inn and Suites, he was working at the
7  Macon United Inn and Suites?
8  A  Right.
9      (Plaintiff's Exhibit 19 marked)
10 BY MR. BOUCHARD:
11 Q  I'm showing you Plaintiff's Exhibit 19
12 which is NBI 2291. And this is an email,
13 Mr. Shareef, from you to a couple of different
14 Gmail addresses. And the subject of the email
15 concerns a 1099 for Rashid Iqbal. Do you see that?
16 A  Yes.
17 Q  And it asks for somebody to make a 1099
18 for $7,000 from Northbrook Industry, Inc. for
19 Rashid Iqbal.
20 A  Right.
21 Q  Do you see that?
22 A  Right.
23 Q  And he's still listed as being at 2737
24 Sheraton Drive?
25 A  Yes.

Page 353

1  Q  And that's the United Inn and Suites in
2  Macon?
3  A  Right.
4  Q  Who is this email to?
5  A  This is the CPA.
6  Q  Is that hnis --
7  A  Yes.
8  Q  -- mail?
9  A  Yes.
10 Q  And who is saad4649?
11 A  This is the gentleman that worked for me
12 at the 2737, you know, United Inn and Suites in
13 Macon.
14 Q  Who is that? What was his name?
15 A  Saad, Saad Iqbal.
16 Q  Related to Rashid or unrelated?
17 A  Yeah, related.
18 Q  What was the relation?
19 A  He's -- Saad is the son of Rashid Iqbal.
20 Q  Mr. Shareef, who is Brenda McMillan?
21 A  I don't know.
22 Q  You do not know?
23 A  No.
24     (Plaintiff's Exhibit 20 marked)
25

Page 354

1 BY MR. BOUCHARD:
2  Q  I'm showing you Plaintiff's Exhibit 20
3 which is Bates stamped NBI 2464 and 2465. This is
4 a --
5  A  Oh, okay.
6  Q  -- 2017 1099 --
7  A  Yeah.
8  Q  -- to Ms. McMillan. Who is that, sir?
9  A  That's like one of the housekeeper.
10 Q  One of the housekeepers at 2737 Sheraton?
11 A  No. She work over there on and off also
12 on the other property for maybe, you know, this
13 year she work here.
14 Q  And I'm focused on 2017.
15 A  Yeah.
16 Q  She would have been at both or she would
17 have been there?
18 A  No, she must have been here at the
19 Decatur, 4649.
20 Q  So why is her address 2737 Sheraton, was
21 she living at the hotel?
22 A  She living, yeah, I provide them the
23 housing.
24 Q  When she was living at the hotel in
25 Macon, I assume that's where she was working?

Page 355

1  A  Yeah. Yeah.
2      (Plaintiff's Exhibit 21 marked)
3 BY MR. BOUCHARD:
4  Q  This is Plaintiff's Exhibit 21,
5 Mr. Shareef, Bates stamped NBI 2416. And this is a
6 2018 1099, so a 1099 for the next year --
7  A  Yeah.
8  Q  -- for Ms. McMillan.
9  A  Right.
10 Q  Do you see that?
11 A  Yeah.
12 Q  And her address is listed again as 2737
13 Sheraton Drive, correct?
14 A  Right.
15 Q  And the payer is identified as Northbrook
16 Industries, Inc., correct?
17 A  Right.
18 Q  Was she working at this time for the
19 United Inn in Macon?
20 A  No. She must have been working here.
21 Q  Well, why is her address -- she was
22 living at the Macon --
23 A  Yeah.
24 Q  -- United Inn?
25 A  Her family live over there.

26 (Pages 352 - 355)

30(b)(6) Tahir Shareef                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 356

1    Q    And so when she was living there, I
2  assume she was working at the hotel where --
3    A    Yeah.
4    Q    -- she was living?
5    A    I mean specifically she works in Macon
6  property.  And when I need her here, I provide a
7  room to her here and she just live here.  But she
8  can go back and forth, you know, on the weekend to
9  her apartment there.  But I provide apartment here
10 also when we need it.
11   Q    She would be working at both properties?
12   A    I don't know.  Maybe but looks like she
13 work more here, you know.
14   Q    Why are you saying that?  Why are you
15 saying it looks like she worked more here?
16   A    Because I remember because all these, the
17 DeKalb County cleanup and tickets problem, I bring
18 few more people, you know, to work here at 4649
19 Memorial Drive.  And Rashid Iqbal and Brenda, they
20 are, you know, those people.
21   Q    You brought them from Macon?
22   A    From Macon, yes.
23   Q    When I talked with you in February,
24 Mr. Shareef, you had said that you thought there
25 was a written partnership agreement between you and

Page 357

1  Mr. Sabharwal.  I have not seen that in the
2  documents produced.  Do you know why that would be?
3    A    I have -- what I find, the only thing I
4  find is our State-provided document.  The other one
5  I could not find.  But there's an agreement, you
6  know, I see one page agreement somewhere.  He's
7  19 percent and I'm 81 percent.
8    Q    You believe there's a document that sets
9  forth that you are an 81 percent owner and he's a
10 19 percent owner?
11   A    Yeah.  I remember, yeah, when we take the
12 loan from Quantum and he was not part of the loan,
13 so this was the share changes at that time.
14   Q    But you cannot find that document?
15   A    I don't have it.  Yes, I cannot find it.
16   Q    When you say he was not part of the loan
17 from Quantum, what do you mean?
18   A    The loan on the Quantum Bank with the
19 United Inn and Suite, 4649 Memorial Drive, I'm the
20 sole loan on, something like that.
21   Q    When you say --
22   A    The loan is --
23   Q    -- he's not on it --
24   A    -- in my name.
25   Q    -- what do you mean?

Page 358

1    A    How to explain it.  If something happened
2  to the loan, I am responsible.
3    Q    He did not sign the documentation?
4    A    With the Quantum, yes.
5    Q    You did but he did not?
6    A    That's right.
7    Q    Do you understand it to be that you are
8  personally responsible if something happened with
9  the loan?
10   A    Do I understand that?  Yes.
11       (Plaintiff's Exhibit 22 marked)
12 BY MR. BOUCHARD:
13   Q    I'm showing you Plaintiff's Exhibit 22
14 which is 1099s for Mr. Sabharwal from 2017 and
15 2018.  Do you see that?
16   A    Yes.
17       MR. UNDERRINER:  Are these two separate
18 exhibits?
19       MR. BOUCHARD:  No.  They're going to be
20 joint just for the sake of efficiency.
21 BY MR. BOUCHARD:
22   Q    So these are Plaintiff's Exhibit 22,
23 NBI 2473 and NBI 942.  And Mr. Shareef, correct me
24 if I'm wrong, but were these 1099s reflecting
25 compensation that Mr. Sabharwal received as a

Page 359

1  19 percent owner?
2    A    Yes.
3    Q    Is that what the 42,000 --
4    A    Right.
5    Q    -- reflects?
6    A    Right.
7    Q    It is the same amount both years.  Is
8  that a guaranteed amount?
9    A    I think so.
10   Q    Do you know what Gold Coast Properties
11 is?
12   A    That's the same person.
13   Q    What is that?
14   A    Mr. Sabharwal.
15   Q    Is that a real estate company that he
16 owns or something?
17   A    I don't know.  He has something like
18 that.  I recall the name.
19   Q    Are you involved with it?
20   A    Gold Coast Property?
21   Q    Correct.
22   A    No.
23       (Plaintiff's Exhibit 23 marked)
24 BY MR. BOUCHARD:
25   Q    This is Plaintiff's Exhibit 23, NBI 2461.

27 (Pages 356 - 359)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 29 of 83
30(b)(6) Tahir Shareef                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 360

1 And it is an email from Habib Ismail to I believe
2 you, Mr. Shareef. And it says Gold Coast zero
3 amount and Sabharwal, Rashid and Brenda 1099. Do
4 you see that?
5    A   Okay. Yes.
6    Q   Do you know what that's referring to?
7    A   I don't know. Maybe I'm reminding him to
8 send the 1099s. I don't know.
9    Q   What did you say?
10   A   Maybe I was reminding him to send the
11 1099 or something like that.
12       (Plaintiff's Exhibit 24 marked)
13 BY MR. BOUCHARD:
14   Q   Showing you Plaintiff's Exhibit 24 which
15 is NBI 2403. And this is a what appears to me to
16 be some sort of pay chart from August 13th, 2018 to
17 August 26th, 2018. Do you see that?
18   A   Yes.
19   Q   Who are the people listed in the
20 left-hand column?
21   A   These are the people work in the
22 housekeeping and front desk.
23   Q   Where?
24   A   At the 4649 Memorial Drive.
25   Q   Do any of them during that time also work

Page 361

1 at 2737?
2    A   No.
3    Q   None of them did?
4    A   No. No.
5    Q   I did not recognize all of these names
6 and don't believe that all of these folks are
7 listed in discovery materials that we have gotten
8 in this case. Can you help me out with who some of
9 these people are. For example, Tony with two
10 asterisks next to his name, it says he worked 80
11 hours.
12   A   Yes. One of the housekeeper. I think I
13 send the list. I list these names. I think I
14 listed these names in one of the report and they
15 send it to you.
16   Q   Is he a housekeeper at the United Inn?
17   A   Oh, the -- who?
18   Q   Tony.
19       MS. RICHENS: Tony.
20   A   Yeah, housekeeping.
21 BY MR. BOUCHARD:
22   Q   What's his last name?
23   A   Tony's name? Singh. Singh. S-I-N-G-H.
24   Q   What about Jesse?
25   A   Jessie Graham, G-R-A-M. G-R-A-H-A-M.

Page 362

1    Q   Is Jessie related to Corita?
2    A   Yes.
3    Q   Are they husband and wife?
4    A   Yes.
5    Q   What does Jessie do?
6    A   He sometime do maintenance.
7    Q   What does Corita do?
8    A   Front desk.
9    Q   What about Beatris?
10   A   Beatris is housekeeping.
11   Q   What's her last name?
12   A   I don't know.
13   Q   What about Jorge, what's his last name?
14   A   I don't know.
15   Q   Mireya?
16   A   Jorge. Which one is Jorge?
17       MR. UNDERRINER: It may be George.
18   A   Oh, George. I'm sorry, George. Jorge.
19 BY MR. BOUCHARD:
20   Q   That's okay.
21   A   George Nunus, N-U-N-U-S.
22   Q   What's his job?
23   A   He work at the front desk.
24   Q   What about Mireya?
25   A   That's the housekeeping.

Page 363

1    Q   And what's her last name?
2    A   Maria Betris, B-E-T-R-I-S.
3    Q   Sam, who's that?
4    A   He could be a groundsman.
5    Q   Do you know last name?
6    A   No.
7    Q   What about Reyna?
8    A   Reyna Ray, R-A-Y, Ray, Reyna Ray,
9 housekeeping.
10   Q   And Bilal?
11   A   Front desk.
12   Q   Last name?
13   A   A-H-M-A-D.
14   Q   Ahmad?
15   A   Ahmad, yes.
16   Q   There's also a name towards the top
17 Jenoris. Who is that?
18   A   That's the maintenance guy.
19   Q   What's his full name, do you know?
20   A   I don't know. No, I don't know.
21       (Plaintiff's Exhibit 25 marked)
22 BY MR. BOUCHARD:
23   Q   I'm showing you Plaintiff's 25 which is
24 NBI 2456. Do you see this email, Mr. Shareef?
25   A   Yes.

28 (Pages 360 - 363)

Page 364

1    Q   This concerns a claim it looks like
2  pertinent to a matter in which a guest of the
3  United Inn was arrested for murder.  Do you see
4  that?
5    A   Yes.
6    Q   Did you have an understanding whether or
7  not that murder occurred at the United Inn?
8    A   I don't know.
9    Q   Do you recall there being a murder at the
10 United Inn in 2018?
11   A   I don't know.
12   Q   How many murders have there been at the
13 motel since you have been affiliated with the
14 hotel?
15   A   One.
16   Q   And you cannot recall if that was in
17 2018?
18   A   No, I don't.  Matter of fact, I went to
19 most of the hearing with the FBI.  But I just don't
20 know.
21      (Plaintiff's Exhibit 26 marked)
22 BY MR. BOUCHARD:
23   Q   This is Plaintiff's Exhibit 26 which is
24 NBI 2459.  And this is an email from you to looks
25 like your insurance broker --

Page 365

1    A   Yes.
2    Q   -- is that right?
3    A   Yeah.
4    Q   And you're reporting two incidents at the
5  property; is that right?
6    A   Yeah, I send this to my insurance agent.
7    Q   And it concerns two incidents at the
8  property you say; is that right?
9    A   Yes.
10   Q   It says that one of the incidents
11 pertains to a murder at the property; is that
12 right?
13   A   Yes.
14   Q   Is that the murder that you were
15 referring to?
16   A   Yes.
17   Q   And --
18   A   I don't know.  I don't think so, no.
19 This is another one.  Yeah.
20   Q   This is a different one?
21   A   That one the person find dead in the
22 room.
23   Q   Find what?
24   A   The one I was talking about, that person
25 was dead in the room.  Later on we find out the

Page 366

1  girlfriend -- no, the boyfriend kill her, something
2  like that.
3    Q   And then the second incident reported
4  here is on May 5th, guest died in room 325.  Do you
5  see that?
6    A   Yes.
7    Q   Do you know the circumstances of that
8  death, what happened?
9    A   I guess that was -- 325.  I guess that
10 was -- I remember send -- the housekeeper reported
11 to me that, you know, there's a smell.  And when we
12 send the police there, find the dead people.
13 Because that was the checkout date.  I remember,
14 yes, vaguely.  That was the checkout date, so we
15 find out he was died maybe two days prior to that
16 date, something like that.
17   Q   Do you know if it was a drug overdose?  A
18 result of violence?  Something else?
19   A   I don't know.
20   Q   How often does housekeeping come into the
21 rooms?
22   A   For the weekly room, people pay weekly,
23 they go once a week.  And if somebody is paying
24 daily, we go every day.
25   Q   Would that have been true 2017 to 2019?

Page 367

1    A   Yeah.
2    Q   Would that have been true --
3    A   Yes.
4    Q   -- for the years --
5    A   Yes.
6    Q   -- 2017 to 2019?
7    A   Yes.
8      MS. RICHENS:  Can we take a break, David?
9      MR. BOUCHARD:  Sure.
10     THE VIDEOGRAPHER:  Off the record at
11 3:45 p.m.
12     (Recess 3:45-3:58 p.m.)
13     THE VIDEOGRAPHER:  Back on the record at
14 3:58 p.m.
15     (Plaintiff's Exhibit 27 marked)
16 BY MR. BOUCHARD:
17   Q   Mr. Shareef, I'm handing you Plaintiff's
18 Exhibit 27 which is Bates stamped NBI 4060 through
19 4081.  And I understand these to be text messages
20 between you and Mr. Weber, Sergeant Weber; is that
21 correct?
22   A   Yes.
23   Q   Would you like to have a chance to review
24 them?
25   A   Yes.

30(b)(6) Tahir Shareef                                              May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 368

1    Q    Have you had a chance to review them?
2    A    I see them.
3    Q    Is this the total set of your text
4  messages with Mr. Weber?
5    A    Yes.
6    Q    So all of your communications by text
7  message with Mr. Weber from 2017 to 2019 are
8  reflected here?
9    A    Yes.
10    Q    All right.  If you look at page NBI 4061,
11  which is the second page, if you sent
12  Sergeant Weber a photo, that's what it would look
13  like, right?
14    A    Yeah.
15    Q    If you flip the page to 4062.  And you
16  asked on May 4th, 2017 for information about the
17  shooting in 142.  Do you see that on 5/4/2017?
18    A    Yes.
19    Q    And the first thing I wanted to ask you
20  was the date there is May 4th, 2017.  Do you see
21  that?
22    A    Yes.
23    Q    The date above that is January 29th,
24  2017.
25        Do you see that?

Page 369

1    A    Yes.
2    Q    So does that mean that you didn't
3  exchange any texts for the entire month of
4  February, March, April with Sergeant Weber?
5    A    I guess you're right.
6    Q    So about 90 days plus you did not send or
7  receive any text messages from Sergeant Weber; is
8  that right?
9    A    Right.
10    Q    And I think you had told me that
11  Sergeant Weber would not prepare reports
12  documenting what he had done on his shift; is that
13  right?
14    A    Right.
15    Q    He would not submit any written
16  documentation to you?
17    A    No.
18    Q    Or to the hotel?
19    A    No.
20    Q    And so unless there's a text message,
21  there's nothing in writing from him to you or the
22  hotel about his shift; is that right?
23    A    Right.
24    Q    Do you recall a shooting in room 142 in
25  May 2017?

Page 370

1    A    After looking at the messages, yes.
2    Q    What was the circumstances of that
3  shooting?
4    A    I don't know.  But I believe I heard,
5  because I'm almost above this room, and I heard,
6  you know, few gunfire.  And we call and also the
7  911.  And then I send him a message because I
8  didn't see him there.  Because I know he's coming
9  with the next, you know, hour, two hour, so I asked
10  him to check it.  And he came and -- I think he
11  came to the property.  And then he called the
12  police officer and I think he talked with them.
13    Q    And concluded that it was prostitution
14  related?
15    A    I am not hundred percent.
16    Q    Well, look at page NBI 4063, please,
17  where it says at the top:  So far all I know is
18  that it was prostitution related.
19        Do you see that?
20    A    Yeah.
21    Q    Do you agree it appears that he concluded
22  the shooting was related to prostitution in room
23  142?
24    A    Looking at the messages, yes, he
25  concluded that way.

Page 371

1    Q    Do you have any further understanding of
2  what caused that shooting in room 142?
3    A    No.  When he take over, then at the end
4  he just, you know, if we meet, he give me the
5  report what's going on or he send a message, you
6  know, this is what happened.
7    Q    It looks like your next text message with
8  him is a month later on June 4th; is that right?
9    A    June 4th, yeah.
10    Q    So it looks like about 30 days pass
11  before you have any further written
12  correspondence --
13    A    Right.
14    Q    -- with him?
15    A    Right.
16    Q    So you don't send him any messages about
17  what steps are you taking to try to prevent
18  commercial sex activity on the property; is that
19  right?
20    A    No, I don't send him that.  We talk about
21  it because we meet quite often, you know.  And
22  that's the year when I need to stay there and fix
23  those violations, so I was there, you know, more
24  and I see him or other officer.
25    Q    Were you not there as much in 2016?

30 (Pages 368 - 371)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 32 of 83
30(b)(6) Tahir Shareef                         May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 372

1    A    Maybe not.  I don't know.
2    Q    You do not know?
3    A    I do not know.
4    Q    Well, what do you mean when you're saying
5  you had to be there more in 2017?
6    A    Because the working on those violations,
7  so I have a bunch of people, you know, working
8  there and I have to be with them fixing the
9  violations from the city code enforcement.
10   Q    Did you increase the amount of time you
11  were spending at the hotel based on the code
12  violations?
13   A    Definitely I did.
14   Q    And you spent less time in Jacksonville
15  or in Macon?
16   A    Both.
17   Q    You were spending more time on Memorial
18  Drive --
19   A    Those days.
20   Q    -- because of the code violations?
21   A    Yes.
22   Q    Who would be in charge at United Inn when
23  you were not there, was it Mr. Islam?
24   A    Yes.
25   Q    And anybody else or solely Mr. Islam?

Page 373

1    A    Mr. Islam.
2    Q    And he does not live at the property,
3  right?
4    A    No.
5    Q    So when he's not -- when he goes home at
6  the end of his shift, that means he's not at the
7  property?
8    A    He's not at the property.
9    Q    And that was true 2017 through 2019, that
10  is he didn't --
11   A    Yes.
12   Q    -- live at the property during those
13  years?
14   A    Right.
15   Q    And then there's a text from you on
16  October 19th, 2017, which is on page NBI 4064, at
17  12:40 in the morning.  And you say, quote, lots of
18  traffic.  And you said a minute before that check
19  room 129.
20        Do you see that?
21   A    Yes.
22   Q    And Weber says they had loud music.  He
23  made them turn it off.  And they were drunk, right?
24   A    Yes.
25   Q    Did you ever get resolution of why there

Page 374

1  was a lot of traffic to the room?
2    A    I don't recall.  But it could be
3  anything, you know.
4    Q    Could be anything at 12:40 --
5    A    Meaning they, you know, they said we are
6  having a birthday or something like that, you know.
7    Q    And then on NBI 4065 Weber sends you some
8  driver's licenses via text to add to the criminal
9  trespass paperwork; is that right?
10   A    Yes.
11   Q    If you look through these text messages,
12  Mr. Shareef, you didn't send the BOLO notice that
13  we talked about showing a photo of 16-year-old J.G.
14  to Sergeant Weber, did you?
15   A    No.
16   Q    Then if you look at page NBI 4066, it
17  says he was actually here.  If you look at
18  April 7th, 2018, there's a message from Weber.  And
19  it says he was actually here to buy sexual
20  relations from the lady in room 127.  She came
21  outside and spoke with me.
22        Do you see that?
23   A    Yes.
24   Q    Do you recall that incident?
25   A    Not on top of my head.

Page 375

1    Q    About a month after that on May 12th,
2  2018 on NBI 4067, on May 12th, 2016, you text
3  Sergeant Weber and say someone overdosed in 325.
4        Do you see that?
5    A    Yes.
6    Q    Do you understand that to be a drug
7  overdose or what did you understand that to be?
8    A    It must be.
9    Q    When you say they are removing lots of
10  rooms, what do you mean by that?
11   A    I recall there are a lot of -- you know,
12  when we call the, you know, police and if I'm
13  recalling, they had some specific smell.  And they
14  said before we go there, you know, they need to
15  empty the rooms like two room right, two room left
16  or maybe three rooms right, three rooms left, so
17  something like that.
18   Q    They were clearing out other rooms
19  because of the smell?
20   A    Smell or a lot of police officers, there
21  must be some reason.
22        (Plaintiff's Exhibit 28 marked)
23  BY MR. BOUCHARD:
24   Q    Showing you Plaintiff's Exhibit 28.  And
25  these are text messages between Mr. Islam and

31 (Pages 372 - 375)

30(b)(6) Tahir Shareef                                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 376

1 Mr. Weber, at least I believe they are. Did you
2 have any involvement with Mr. Islam's texts with
3 Mr. Weber?
4    A   No.
5    Q   I didn't see any text messages in your
6 production between you and Sergeant McClelland.
7 Why would that be?
8    A   I don't know.
9    Q   Did you text with him?
10   A   I text him, yes. I don't know.
11   Q   You texted with Sergeant McClelland for
12 the years 2017 through 2019?
13   A   I don't know. But I must have.
14   Q   Do you think your texts with McClelland
15 are similar to your texts with Weber, same type of
16 texts?
17   A   Yeah. But I know I text Weber more than
18 McClelland.
19   Q   Why?
20   A   Because I feel like McClelland has more
21 authority and he is there, I see him, he's driving
22 around, you know, he's more visible when he's
23 there. So that could be the reason, you know. For
24 some reason I text Weber more because when I don't
25 see him, I text him.

Page 377

1    Q   When McClelland is working, you see him
2 more than you see Weber when Weber is working?
3    A   Yeah, I feel like it.
4    Q   How do you see McClelland more? Does he
5 walk around the property more or he stands
6 somewhere more or ...
7    A   Yeah, his habit is he park like a very
8 visible area and turn his lights on. This is his
9 habit. And Weber is a walking guy. Maybe he's
10 like behind the building or upstairs, downstairs.
11 He's a walking guy.
12   Q   Are you saying that when McClelland is
13 working, he spends more time in the car and Weber
14 spends --
15   A   Yeah.
16   Q   -- more time on foot?
17   A   Yeah. He park like one corner, turn the
18 lights on. Park in front, turn the lights on.
19   Q   Weber spends less time in the car than
20 McClelland?
21   A   Yeah. Weber is walking guy, yes.
22   Q   How old is Weber approximately?
23   A   Must be early forties.
24   Q   How old is McClelland?
25   A   Late forties, maybe early fifties.

Page 378

1    Q   Have you ever asked McClelland to walk
2 around the property more?
3    A   Yeah.
4    Q   Is there a reason why McClelland walks
5 around less than Weber?
6    A   I don't know. But I just ask him --
7 maybe I mention him that hey, Weber is a younger
8 person and he like to walk around. But matter of
9 fact, at the same time I told him I like you to --
10 well, I kind of I feel more, you know, comfortable
11 when I see the lights on and he's there, you know.
12 Maybe I was joking to him or, you know. But I did
13 have this conversation, you know, that Weber is
14 walking more than you.
15   Q   Where does McClelland park when you say
16 it is a visible area?
17   A   I have --
18   Q   Sorry, just to be clear, focusing on 2017
19 to 2019. I assume --
20   A   Yeah, his habit --
21   Q   -- you understand that?
22   A   -- is the same. Yeah, I think his habit,
23 yeah. He park kind of at the end of the property
24 where he can be seen more and he can -- he's
25 usually parked sometime at the front or the back of

Page 379

1 the property. He find one empty parking spot and,
2 you know, park there and have his lights on.
3    Q   I'm not sure I understood. Does he park
4 in sort of the same spot every time or does it
5 change?
6    A   I mean if the spot is available if nobody
7 is parking, park there.
8    Q   So let's say there's nobody there,
9 where's he going to park? What's his typical spot?
10 Is it in the front? Is it in the back? Is it on
11 the side?
12   A   On the back side.
13   Q   On the back side?
14   A   On the back side, yes.
15   Q   Is it close to a particular side of the
16 hotel in the back?
17   A   It is not close. But I feel like if it
18 is close, then the other people cannot see him, so
19 he's parking there but further so people from the
20 third floor can see him. You know --
21   Q   He's parking --
22   A   -- I think that could be the reason.
23   Q   -- further back in the parking lot --
24   A   Further back, yes.
25   Q   -- so people can see him?

32 (Pages 376 - 379)

Page 380

1    A    Yes.
2    Q    In the back parking lot --
3    A    Back parking lot --
4    Q    -- generally?
5    A    -- yes.
6    Q    What about Weber, is he generally in the
7    back or the front?
8    A    He is -- I see him, he is -- he park
9    always at the front.
10   Q    He always parks in the front?
11   A    Almost always, yes.
12   Q    Do you know why they do it differently?
13   A    I don't know.
14   Q    It is not something you have asked for?
15   A    No.
16   Q    They do that on their own?
17   A    Yeah.
18   Q    Mr. Shareef, when we talked in February I
19   had asked you about background checks of employees
20   at the United Inn and Suites.  I have not seen any
21   documents in your production showing background
22   checks on employees or workers or laborers or
23   independent contractors at the hotel.  I assume
24   that means there is no such documentation of
25   background checks?

Page 381

1    A    Well, I don't know.  I couldn't find
2    anything.
3         (Plaintiff's Exhibit 29 marked)
4    BY MR. BOUCHARD:
5    Q    Mr. Shareef, I'm showing you Plaintiff's
6    Exhibit 29, and this is Bates stamped NBI 625 to
7    NBI 631.
8         Do you see that?
9    A    Yes.
10   Q    This appears to be a compilation of
11   documents and articles, but it was produced to us,
12   the Plaintiffs, by Northbrook Industries, Inc.  So
13   can you tell me what this is, what these series of
14   documents are about human trafficking.
15   A    Yeah.  These are like I think -- I'm not
16   sure which -- what date but this is almost
17   happening on the -- when we got these violations
18   and we have few meetings with the DeKalb County
19   Police and the county Tourism Department.  And they
20   have some of the material given to us and then some
21   of the links, website they give it to us to read
22   the material and share with the staff.  So this is
23   what I -- this is kind of my notes I can say.
24   Q    Help me understand that.  Did you bring a
25   computer and you typed these notes yourself or did

Page 382

1    you handwrite them and somebody typed this for you?
2    A    No.  No.  They gave us the -- I believe
3    they gave us some links, you know, click on these
4    links and go to certain website.  And some of them
5    I think they give them to us there and I retype it.
6    Because there are -- on those notes I see there's
7    lot of things repeated, so I type my basically own
8    notes plus some of the notes coming from the
9    websites.
10   Q    And you're saying that you think you
11   attended meetings related to the DeKalb County Code
12   Enforcement?
13   A    There was a meeting, you know,
14   collaboration with the Code Enforcement and the
15   Tourism, DeKalb County Tourism Department.
16   Q    Was this relating to the DeKalb County
17   Hotel, Motel Ordinance in 2017?
18   A    Yes.
19   Q    DeKalb County hosted meetings for DeKalb
20   hotel owners and operators to attend --
21   A    Right.
22   Q    -- to talk about the ordinance?
23   A    Yes.
24   Q    And at those meetings, is it more than
25   one meeting or just one meeting?

Page 383

1    A    I attend maybe two meetings.
2    Q    At those meetings at least one of the
3    topics was the ordinance for the hotels --
4    A    Right.  Right.
5    Q    -- in DeKalb County --
6    A    Uh-huh (affirmative).
7    Q    -- that the DeKalb County commission was
8    talking about passing?
9    A    Right.
10   Q    And another topic was human trafficking?
11   A    Yes.
12   Q    Were there other topics at these
13   meetings?
14   A    Other topics are how to go into their --
15   in their website, register yourself, you can get
16   more customers so they can expose you with the
17   other events in the DeKalb County so you can find
18   groups coming from the other cities to have their
19   family gathering or whatever their visit, visitors
20   who are contacting them.  So it is basically
21   helpful to find more customers, so these are the
22   topics there.
23   Q    The DeKalb County Tourism Department was
24   trying to help hotels develop business?
25   A    More business, yes.

33 (Pages 380 - 383)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 35 of 83
30(b)(6) Tahir Shareef                              May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 384

1    Q    Generate ideas on how to develop
2  business?
3    A    That's right.  That's right.
4    Q    So looking at NBI 625 and 626 of
5  Plaintiff's Exhibit 29, are these things that you
6  would have typed, Mr. Shareef, or things that you
7  would have written after your research?
8    A    Yes, I can say that.
9    Q    So you put this together?
10   A    I put this together.
11   Q    It is not as if somebody at the meeting
12 with DeKalb County said here you go, Mr. Shareef,
13 this is our handout at the meeting today?
14   A    No.  I mean I basically got the
15 information from there.
16   Q    Right.
17   A    You know, if I don't find because those
18 handouts have the websites, so when you go to the
19 website, it is easier for me because I'm not a very
20 good writer, so it is good for me to just to
21 collect a paragraph and bring it for my file.
22   Q    So you could copy-paste?
23   A    Yeah, that's the right word.
24   Q    And so did you take information you got
25 at some of these meetings and go back to the hotel

Page 385

1  and do research --
2    A    Yes.
3    Q    -- at the hotel?
4    A    Yes.
5    Q    Where would you have kept this?  Do you
6  have a computer at the hotel that you would have
7  saved this on or a hard copy file?
8    A    This is the computer at the hotel, we use
9  it for the front desk.
10   Q    So that's the computer --
11   A    Yeah.
12   Q    -- it would have been saved on?
13   A    Yes.  Yes.
14   Q    And the ordinance in DeKalb County, which
15 we'll take a look at in a minute, but I can
16 represent to you it was passed in 2017.  Does that
17 sound right to you?
18   A    Yes.
19   Q    Is that when the meetings occurred that
20 you're referencing in 2017?
21   A    Yes.
22   Q    If you look at halfway down NBI 625,
23 there's a bullet point that says Guide, quote, how
24 to talk to kids about sex trafficking, end quote.
25        Do you see that?

Page 386

1    A    Yes.
2    Q    And it said:  This guide by End Sex
3  Trafficking includes information on spotting the
4  signs that kids are being trafficked, safety
5  measures for adults and children to take, and basic
6  information about sex trafficking.
7        Do you see that?
8    A    Yes.
9    Q    And if you flip the page, Mr. Shareef,
10 there's on page NBI 626 there's high school aged
11 lesson plans listed, college level lesson plans
12 listed.
13        Do you see that?
14   A    Yes.
15   Q    And you put this together, I did not, so
16 tell me if I'm wrong.  But what I understand this
17 to be is a list of educational materials about
18 human trafficking --
19   A    Right.
20   Q    -- is that correct?
21   A    Yes.
22   Q    And for example it says at the top of
23 page 2:  Reporting options if you suspect a youth
24 is affected by human trafficking or being
25 exploited.

Page 387

1        Do you see that?
2    A    Yes.
3    Q    If you flip to page NBI 627, which is
4  about halfway through Plaintiff's 29, it says the
5  role of business.
6        Do you see that?
7    A    Yes.
8    Q    And in the second sentence it says:  More
9  importantly they, and it is referring to
10 businesses, can take action to root out human
11 trafficking in their own supply chains.
12        Do you see that?
13   A    Yes.
14   Q    Did you prepare this document or where
15 did this document come from, Mr. Shareef?
16   A    This is, again, this is the -- like on
17 page 26, if you go to -- I'm just giving you an
18 example -- it goes to where it says kids are not
19 for sale, the price of human trafficking lesson
20 plan by the American Federation of Teachers.  So
21 when you click there, you find some things which
22 you can use for your business.  So this is maybe I
23 get it from there.
24   Q    So you think this is not something that
25 you wrote, you think this is something you got from

34 (Pages 384 - 387)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 36 of 83
30(b)(6) Tahir Shareef                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 388

1 another website --
2    A   That's right.
3    Q   -- on 627?
4    A   That's right.  That's right.
5    Q   And is 627, this document that we're
6 looking at on NBI 627, is this something that was
7 saved on the computer at the front desk at the
8 United Inn?
9    A   It must be.
10   Q   Or what I am trying to figure out is is
11 it something that you would have printed off and
12 kept in a hard copy file in your filing cabinet in
13 the office?
14   A   No.  Bunch of copy of these, I have these
15 copies, maybe four or five of them, you know.  And
16 I did have a conversation, you know, with the Weber
17 that hey, this is the one I got and I kind of
18 gathered some information, you know, anything which
19 don't look appropriate or maybe repeat of something
20 so we take it out.  So but basically this is maybe
21 I have couple of copies over there.
22   Q   Where would you keep the copies, in your
23 filing cabinet?
24   A   No.  It is one of the file at the front
25 desk.  I don't know.  But one of the file it says,

Page 389

1 you know, human trafficking.
2    Q   One of the files says --
3    A   Yeah.
4    Q   -- human trafficking?
5    A   Yeah.
6    Q   When did you create that file?
7    A   You know, when we are there for the
8 meetings.  I think that could be the timing.  I
9 don't know.
10   Q   The meetings that you referenced
11 previously --
12   A   Yeah.  Yeah.
13   Q   -- with DeKalb County?
14   A   Yeah.  And maybe we go to the website
15 later and then, you know, get some information.
16   Q   Is this document, it has got -- I don't
17 know if these are stand-alone documents or all one
18 document.  I have combined them as Plaintiff's
19 Exhibit 29.  Are these documents and pages that you
20 would have been kind of adding to over the years?
21   A   I don't know.  But maybe I add a
22 paragraph or something.  I don't know.
23   Q   I didn't know if it was something that
24 you created years ago and haven't touched since or
25 whether it is something you go back to and add

Page 390

1 information to?
2    A   I don't recall, you know, when I change
3 what last time.
4    Q   On NBI 628 it says -- it looks to be an
5 article as best I can tell, but maybe you can tell
6 me what's on NBI 628.  It goes on to NBI 629.
7    A   So what is the question?
8    Q   Is this an article or is this something
9 that you wrote?
10   A   It must be article.
11   Q   Do you know where it came from?
12   A   No.
13   Q   Do you know when you found it?
14   A   No.
15   Q   And let me just ask the same question.
16 Do you know when you pulled these notes together?
17 You said that you thought it was related to the
18 DeKalb County meetings.  But do you know when?
19   A   I guess on and off.  I mean 2017 and then
20 maybe I add, like I said, you know, paragraph here
21 and there from those websites.
22   Q   So on NBI 628 in that article, the first
23 bolded sentence says:  Hotels and motels are one of
24 the locations where sex trafficking is known to
25 occur at higher rates.

Page 391

1        Do you see that?
2    A   Yes.
3    Q   Do you agree with that?
4    A   I agree.
5    Q   And it says in the bottom paragraph on
6 the same page:  The number one action that tourism
7 and travel businesses can't take is creating,
8 formally adopting, and enforcing organization wide
9 anti-trafficking policies.  These policies could
10 use the code of conduct for the protection of
11 children from sexual exploitation and travel and
12 tourism and the United Nations' guiding principles
13 on business and human rights as guidelines.  These
14 policies should include awareness training for
15 employees, establish safe mechanisms and protocols
16 for reporting human trafficking, and public
17 transparency and disclosures about the steps being
18 taken to ensure that there is no human trafficking
19 in business models.
20        Do you see that?
21   A   Yeah.
22   Q   Do you agree with that, Mr. Shareef?
23   A   Yes.
24   Q   And then the last portion of Plaintiff's
25 Exhibit 29 is what looks to be some sort of notice

35 (Pages 388 - 391)

30(b)(6) Tahir Shareef                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 392

1 about a human trafficking awareness campaign by the
2 Attorney General Division of Criminal Justice,
3 Human Trafficking Task Force.
4      Do you see that?
5   A   The last page you said?
6   Q   The last two pages.
7   A   Last two pages.  Yes.
8   Q   And it says underneath that:  This course
9 is approximately eight hours.  It provides basic
10 information about how to identify human trafficking
11 and/or related activity and is available for free.
12 Click here to access through YouTube.
13      Do you see that?
14   A   Yes.
15   Q   Did you ever take that eight-hour
16 training, Mr. Shareef?
17   A   Not eight-hour training.  But I sit on
18 the watch -- the YouTube and it has exactly the
19 same, you know, information which is here on these
20 pages.
21   Q   I assume your staff did not have to watch
22 the eight-hour training?
23   A   No, I did not -- they did not, no.
24   Q   I assume your staff did not receive
25 copies of these materials; is that correct?

Page 393

1   A   I don't know.  Not everyone but I don't
2 know.
3   Q   Well, last time in February when we
4 talked, my understanding of your testimony --
5 correct me if I'm wrong -- was that you did not
6 distribute written materials to your staff.
7   A   Yeah, I mean it is there.  But I did not
8 have, you know, like a training class like this
9 kind of environment.
10   Q   You did not have a training class?
11   A   I mean not a training, training class but
12 we talk about the bullet point.
13   Q   It says in the middle section on NBI 630
14 about halfway down the paragraph it says:  What
15 actions can I take at my business to help stop
16 human trafficking.
17      Do you see that?
18   A   Yes.
19   Q   It says:  You play a significant role in
20 helping to stop this terrible crime by, and the
21 first thing listed is knowing the signs of human
22 trafficking.
23      Do you see that?
24   A   Uh-huh (affirmative).
25   Q   Do you agree with that?

Page 394

1   A   Yes.
2   Q   And it lists a number of different
3 things.  One of the items is providing employee
4 training to help them understand and identify signs
5 of human trafficking, distributing and posting the
6 fact sheets in this kit to your employees.
7      Do you see that?
8   A   Yes.
9   Q   You did not do that, correct?
10   A   Not on a training session, yes.
11   Q   And you did not distribute the fact
12 sheets in the kit to your employees, right?
13   A   No, I did not distribute it.  But it is
14 available, you know.
15   Q   And it says on page NBI 631 in the middle
16 of the page, this is the last page of
17 Plaintiff's 29, looking in the middle of the page
18 it says:  Housekeeping, maintenance, and room
19 service staff typically have.
20      Do you see where I'm reading from?
21   A   Yes.  Yes.
22   Q   The most access to guest rooms where
23 signs of human trafficking may be apparent.  By
24 being conscious of human trafficking indicators,
25 you can help identify possible human trafficking

Page 395

1 activities and victims.
2      Do you see that?
3   A   Right.
4   Q   Do you agree with that statement?
5   A   Yes.
6      (Plaintiff's Exhibit 30 marked)
7 BY MR. BOUCHARD:
8   Q   Mr. Shareef, this is Plaintiff's
9 Exhibit 30, and it is NBI 624.  I think this is the
10 list of laborers at the United Inn that you may
11 have been referring to before.  Is this the list
12 that you prepared of workers at the United Inn?
13   A   Yes.
14   Q   And is this a list that you prepared at
15 counsel's request or a list that you already had in
16 the files at United Inn?
17   A   No, I have these people.
18   Q   But this document itself with this list,
19 did you type it up?  I don't need to know what your
20 lawyers talked to you about.  But did you prepare
21 this for this case?
22   A   I prepare for this, yes.
23   Q   There are a few names.  So I looked
24 through the discovery for W-2s and 1099s and that
25 sort of things.  Is it possible that some people on

36 (Pages 392 - 395)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 38 of 83
30(b)(6) Tahir Shareef                              May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 396

1 this list didn't get W-2s or 1099s?
2    A   Right.
3    Q   And do you know why that would be?
4    A   They just get cash.
5    Q   They just would get in some instances
6 would just get cash?
7    A   Right.
8        MR. BOUCHARD:  Let's go off the record,
9 please.
10       THE VIDEOGRAPHER:  Off the record at
11 4:40 p.m.
12       (Recess 4:40-4:50 p.m.)
13       THE VIDEOGRAPHER:  Back on the record at
14 4:50 p.m.
15 BY MR. BOUCHARD:
16   Q   Mr. Shareef, one question I wanted to ask
17 that may simplify the questioning for Mr. Islam.
18 You oversee security for the property at United Inn
19 and Suites?
20   A   Yes.
21   Q   Is that your responsibility or his
22 responsibility or a --
23   A   I can say --
24   Q   -- shared responsibility?
25   A   I can say 85 percent, 90 percent my

Page 397

1 responsibility.
2    Q   Was that true from 2017 to 2019?
3    A   Yes.
4    Q   I want to show you what I think is
5 Plaintiff's Exhibit 30.
6    A   30.  I have 30.
7    Q   You have 30.  31.
8        (Plaintiff's Exhibit 31 marked)
9 BY MR. BOUCHARD:
10   Q   This is Plaintiff's Exhibit 31, and it is
11 Bates stamped NBI 2682 to 83.  And this is an email
12 chain between you and Kathy Laity at Discover
13 DeKalb.  Do you see that?
14   A   Yes.
15   Q   And it looks like it relates to the
16 DeKalb County Hotel Motel Extended Stay Ordinance.
17 Is that right?
18   A   Yes.
19   Q   The date of Ms. Laity's email is
20 December 1st, 2017.  And she writes:  The DeKalb
21 County Hotel Motel Extended Stay Ordinance has now
22 been signed and approved.  We'll have a meeting on
23 Wednesday, January 10th in our office to go over
24 specifics.
25       Do you see that?

Page 398

1    A   Yes.
2    Q   And it says the meeting is for owners and
3 general managers, right?
4    A   Correct.
5    Q   Is this consistent with your
6 understanding, Mr. Shareef, of when the DeKalb
7 County ordinance passed, December 2017 or
8 thereabouts?
9    A   I think that was a different ordinance.
10 This ordinance passed, they make it mandatory have
11 no smoking in the DeKalb County hotels.  That could
12 be that one.
13       (Plaintiff's Exhibit 32 marked)
14 BY MR. BOUCHARD:
15   Q   This is Plaintiff's Exhibit 32 which is
16 an attachment to Plaintiff's Exhibit 31, and it
17 appears to be the ordinance itself.  If you look
18 back at Plaintiff's 31, your email, Plaintiff's
19 Exhibit 31, you'll see that it says
20 unitedinn4649@gmail --
21   A   Right.
22   Q   -- forwards the attachment to Tahir
23 Shareef and this is that attachment,
24 Plaintiff's 32.  Is this familiar to you,
25 Mr. Shareef?

Page 399

1    A   Yes.
2    Q   And when you said that you attended
3 meetings with DeKalb County that in part discussed
4 human trafficking and also the DeKalb County
5 ordinance that had been passed, is this the
6 ordinance that you were talking about?
7    A   I thought that is the earlier, but that's
8 the time, yes.
9    Q   You believe that's --
10   A   Yeah.  Yeah.  I thought we attended early
11 part of 2017.  Because when they pass this 180-day
12 ordinance, we have a meeting at that time before
13 the passing of the ordinance.  So it could be --
14 the year is the same but I believe that's the early
15 part of 2017 when before they pass the ordinance we
16 had a meeting.
17   Q   Perhaps about a draft of the ordinance?
18   A   I think so.  I think so.
19       (Plaintiff's Exhibit 33 marked)
20 BY MR. BOUCHARD:
21   Q   And then I'm showing you Plaintiff's 33
22 which is an email -- it includes an email from
23 Mr. Islam and actually is sent to you on
24 January 30th, 2018 saying that we will be there
25 tomorrow.  It looks like he's talking about a

37 (Pages 396 - 399)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 39 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 400

1  meeting with Discover DeKalb about the new code
2  ordinances; is that correct?
3      A   Yes.
4      Q   Did you attend that meeting?
5      A   I believe so.
6      Q   Is that one of the meetings you're
7  thinking of you believe?
8      A   Yeah.
9      Q   Where they might have discussed the
10 ordinance?
11     A   No.  This is after they passed the
12 ordinance.  I think this time ordinance has passed.
13     Q   That's correct.  And if you look down at
14 Ms. Laity's email, it says:  This meeting is to
15 update everyone on current code enforcement and
16 fire regulations along with learning about the
17 DeKalb County Hotel and Extended Stay Ordinance --
18     A   Yeah, I think --
19     Q   -- requirements --
20     A   -- this time, yeah.
21     Q   -- which become effective in March?
22     A   Yes.  Yes.
23     Q   So is this one of the meetings that you
24 were thinking of you believe?
25     A   Yes.

Page 401

1      Q   Where they apparently discussed --
2      A   They have this --
3      Q   -- human trafficking?
4      A   Yeah.
5          MR. BOUCHARD:  Thank you, Mr. Shareef.
6          THE WITNESS:  You're welcome.
7          MR. BOUCHARD:  That concludes my
8  questioning.
9          THE WITNESS:  You're welcome.
10         THE VIDEOGRAPHER:  We're off the record
11 at 4:58 p.m.
12         (Deposition concluded at 5:00 p.m.)
13         (Signature reserved)
14
15
16
17
18
19
20
21
22
23
24
25

Page 402

1      The following reporter and firm disclosures
2  were presented by me at this proceeding for review
   by counsel:
3      REPORTER DISCLOSURES
4      The following representations and disclosures
   are made in compliance with Georgia Law, more
5  specifically:
       Article 10 (B) of the Rules and Regulations of
6  the Board of Court Reporting (disclosure forms)
       OCGA Section 9-11-28 (c) (disqualification of
7  reporter for financial interest)
       OCGA Sections 15-14-37 (a) and (b)
8  (prohibitions against contracts except on a
   case-by-case basis).
9
   - I am a certified court reporter in the State of
10 Georgia.
   - I am a subcontractor for Veritext Legal
11 Solutions.
   - I have been assigned to make a complete and
12 accurate record of these proceedings.
   - I have no relationship of interest in the matter
13 on which I am about to report which would
   disqualify me from making a verbatim record or
14 maintaining my obligation of impartiality in
   compliance with the Code of Professional Ethics.
15 - I have no direct contract with any party in this
   action, and my compensation is determined solely by
16 the terms of my subcontractor agreement.
17     FIRM DISCLOSURES
18 - Veritext Legal Solutions was contacted to provide
   reporting services by the noticing or taking
19 attorney in this matter.
   - There is no agreement in place that is prohibited
20 by OCGA 15-14-37 (a) and (b).  Any case-specific
   discounts are automatically applied to all parties,
21 at such time as any party receives a discount.
   - Transcripts:  The transcript of this proceeding
22 as produced will be a true, correct, and complete
   record of the colloquies, questions, and answers as
23 submitted by the certified court reporter.
   - Exhibits:  No changes will be made to the
24 exhibits as submitted by the reporter, attorneys,
   or witnesses.
25

Page 403

1  - Password-Protected Access:  Transcripts and
     exhibits relating to this proceeding will be
2    uploaded to a password-protected repository, to
     which all ordering parties will have access.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

38 (Pages 400 - 403)

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 40 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 404

1           CERTIFICATE
2  STATE OF GEORGIA:
   COUNTY OF FULTON:
3
4       I hereby certify that the foregoing transcript
   was taken down to the best of my ability, as stated
5  in the caption, and the colloquies, questions and
   answers were reduced to typewriting under my
6  direction; that the transcript is a true and
   correct record of the evidence given upon said
7  proceeding.
        I further certify that I am not a relative or
8  employee or attorney of any party, nor am I
   financially interested in the outcome of this
9  action.
        I have no relationship of interest in this
10 matter which would disqualify me from maintaining
   my obligation of impartiality in compliance with
11 the Code of Professional Ethics.
        I have no direct contract with any party in
12 this action and my compensation is based solely on
   the terms of my subcontractor agreement.
13      Nothing in the arrangements made for this
   proceeding impacts my absolute commitment to serve
14 all parties as an impartial officer of the court.
15
        This the 10th day of May 2023.
16
17
18
        _T. David Brown_____
        T. DAVID BROWN, CCR B-1401
19
20
21
22
23
24
25

Page 405

1       DEPOSITION ERRATA SHEET
2  To: Dana Richens, Esq., drichens@sgrlaw.com
3  Re: Signature of Deponent: Tahir Shareef
4  Date Errata due back at our offices: 30 Days
5
6  Greetings:
7
8  This deposition has been requested for read and
   sign by the deponent. It is the deponent's
9  responsibility to review the transcript, noting any
   changes or corrections on the attached PDF Errata.
10 The deponent may fill out the Errata electronically
   or print and fill out manually.
11
12
   Once the Errata is signed by the deponent and
13 notarized, please email it to the offices of
   Veritext (below).
14
15
   When the signed Errata is returned to us, we will
16 seal and forward to the taking attorney to file
   with the original transcript. We will also send
17 copies of the Errata to all ordering parties.
18
19 If the signed Errata is not returned within the
   time above, the original transcript may be filed
20 with the court without the signature of the
   deponent.
21
22
   Please send completed Errata to:
23 Veritext Production Facility
   20 Mansell Court, Suite 300
24 Roswell, GA 30076
   (770) 343-9696
25 cs-southeast@veritext.com

Page 406

1  ERRATA for ASSIGNMENT: ATL 5897010
2  I, the undersigned, do hereby certify that I have
   read the transcript of my testimony, and that:
3
   ____ There are no changes noted.
4
   ____ The following changes are noted:
5
6  Pursuant to Rule 30(7)(e) of the Federal Rules of
   Civil Procedure and/or OCGA 9-11-30(e), any changes
7  in form or substance which you desire to make to
   your testimony shall be entered upon the deposition
8  with a statement of the reasons given for making
   them. To assist you in making any such
9  corrections, please use the form below. If
   additional pages are necessary, please furnish same
10 and attach.
11
12 Page ___ Line ___ Change _____
13 _____
14 Reason for change:
15 Page ___ Line ___ Change _____
16 _____
17 Reason for change:
18 Page ___ Line ___ Change _____
19 _____
20 Reason for change:
21 Page ___ Line ___ Change _____
22 _____
23 Reason for change:
24
25

Page 407

1  Page ___ Line ___ Change _____
2  _____
3  Reason for change:
4  Page ___ Line ___ Change _____
5  _____
6  Reason for change:
7  Page ___ Line ___ Change _____
8  _____
9  Reason for change:
10 Page ___ Line ___ Change _____
11 _____
12 Reason for change:
13 Page ___ Line ___ Change _____
14 _____
15 Reason for change:
16 Page ___ Line ___ Change _____
17 _____
18 Reason for change:
19
20          Deponent's Signature
21 Sworn to and subscribed before me this ___ day of
22 _____, _____.
23
   _____
24 Notary Public
25 My Commission Expires:_____

39 (Pages 404 - 407)

## &

**&**   259:8 349:12

## 0

**002886**   267:11
**03765**   284:23
**03766**   284:24
**03774**   284:24
**05231**   255:5
   261:11
**05232**   255:9
   261:14
**05233**   255:14
   261:15

## 1

**1**   256:4 265:23
   266:2 268:11
   295:9 304:16
   333:13 344:13
**1,037,000**   339:4
**1,037,401**   334:4
   338:3
**10**   256:19
   321:13,16
   322:15 402:5
**10/29/2018**
   256:15,16,19
**10/9/2018**
   256:18
**100**   270:23
**1000**   255:23
   259:9
**1099**   257:7,11
   351:2 352:15
   352:17 354:6

355:6,6 360:3
   360:11
**1099s**   257:9,12
   358:14,24
   360:8 395:24
   396:1
**10:00**   275:17
   277:11 280:20
   291:21
**10th**   397:23
   404:15
**11**   256:20
   329:6,9 330:2
**11/14/2017**
   256:8
**11/7/2017**
   258:1
**1105**   255:22
   259:8
**11th**   341:20
**12**   256:22
   333:7,9,17
   337:13
**12/31/2018**
   256:22
**1228**   346:18
**1233**   348:18
**1235**   348:19
**127**   374:20
**129**   373:19
**12:40**   373:17
   374:4
**12th**   340:25
   375:1,2

**13**   256:23
   340:16,18,24
   343:8
**13th**   360:16
**14**   257:1 342:4
   342:6 343:7
**1401**   255:25
   404:18
**14080**   404:18
**142**   368:17
   369:24 370:23
   371:2
**14th**   285:9
   342:11
**15**   257:2 344:9
   344:11,13
   346:6
**15-14-37**   402:7
   402:20
**16**   257:4
   318:11 346:13
   346:15 347:3,5
   347:10,13,20
   348:3 374:13
**16th**   345:8
**17**   257:5
   348:14,16
**17th**   343:2
**18**   257:7
   266:16 350:23
   350:25
**180**   306:8
   399:11
**19**   257:8 281:9
   339:21 352:9

352:11 357:7
   357:10 359:1
**19th**   373:16
**1:14**   260:9
**1:15**   255:21
**1:20**   255:5,9,14
   261:11,14,15
**1:26**   271:14
**1:28**   271:17
**1st**   397:20

## 2

**2**   255:21 256:6
   266:25 267:3
   267:10 269:17
   271:19 273:13
   277:17 283:1,5
   283:12,23
   284:5,6,9
   285:12 333:13
   344:14 346:5
   386:23
**20**   257:9
   275:25 281:5
   315:4 353:24
   354:2 405:23
**200**   259:13
**2014**   339:19
   340:3,10
**2016**   257:7
   351:2 371:25
   375:2
**2017**   257:9,12
   267:16,18
   268:12,12
   273:13,14

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 42 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

[2017 - 30]                                                    Page 2

| | | | |
|---|---|---|---|
| 275:5,15 | 313:8 314:22 | **2432**  344:12 | 353:12 354:10 |
| 276:15 277:10 | 315:1 321:21 | **2456**  363:24 | 354:20 355:12 |
| 281:9 282:12 | 322:21 333:12 | **2459**  364:24 | 361:1 |
| 283:20 285:9 | 336:10 345:9 | **2461**  359:25 | **2794**  340:20 |
| 287:24 288:1 | 349:13 355:6 | **2464**  354:3 | **2798**  341:11,12 |
| 289:22,23 | 358:15 360:16 | **2465**  354:3 | **28**  257:20 |
| 292:17,20 | 360:17 364:10 | **2473**  358:23 | 375:22,24 |
| 293:23 294:3 | 364:17 374:18 | **25**  257:16 | **2803**  340:20 |
| 294:11 295:22 | 375:2 399:24 | 363:21,23 | **284**  256:9 |
| 295:25 296:5 | **2019**  275:15 | **2500**  259:4 | **28th**  267:16,18 |
| 296:16,24 | 276:15 277:10 | **2554**  296:21 | **29**  257:22 |
| 297:6 303:8,24 | 294:11 306:21 | **2566**  295:8 | 381:3,6 384:5 |
| 304:6 305:8 | 307:3 310:22 | **2568**  304:6,15 | 387:4 389:19 |
| 306:21 307:2 | 325:16 366:25 | **2572**  304:7 | 391:25 394:17 |
| 307:19 310:22 | 367:6 368:7 | **258**  346:23 | **295**  256:11 |
| 316:11 325:15 | 373:9 376:12 | 347:19 | **296**  256:13 |
| 330:15,20 | 378:19 397:2 | **26**  257:17 | **29th**  315:1 |
| 331:4 332:20 | **2023**  255:21 | 364:21,23 | 321:21 322:21 |
| 340:25 341:16 | 260:8 264:17 | 387:17 | 368:23 |
| 341:20 342:12 | 305:2,8 404:15 | **262**  258:7 | **2:00**  275:17 |
| 343:2 354:6,14 | **21**  257:11 | **2626**  351:1 | 277:11 280:20 |
| 358:14 366:25 | 355:2,4 | **265**  256:5 | 291:21 345:8 |
| 367:6 368:7,16 | **22**  257:12 | **2659**  329:9 | **2:29**  321:9 |
| 368:20,24 | 358:11,13,22 | **2661**  329:10 | **2:29-2:41** |
| 369:25 372:5 | **229**  259:4 | **267**  256:7 | 321:10 |
| 373:9,16 | **2291**  352:12 | **2682**  397:11 | **2:41**  321:12 |
| 376:12 378:18 | **23**  257:13 | **26th**  360:17 | **2nd**  260:8 |
| 382:17 385:16 | 359:23,25 | **27**  257:19 | **2s**  395:24 396:1 |
| 385:20 390:19 | **24**  257:15 | 367:15,18 | **3** |
| 397:2,20 398:7 | 292:4,9 316:5 | **2701**  342:8 | |
| 399:11,15 | 360:12,14 | **2707**  342:23 | **3**  256:8 284:20 |
| **2017-2019** | **2403**  360:15 | **2708**  342:9 | 284:23 285:1 |
| 257:23 | **2416**  355:5 | **2710**  259:13 | 292:3 294:21 |
| **2018**  257:11,12 | **2431**  344:12 | **2737**  351:9 | **30**  255:16 |
| 310:18,20 | | 352:1,23 | 256:4 257:23 |
| | | | 260:5 264:23 |

| | | | |
|---|---|---|---|
| 265:8 266:10 | **342** 257:1 | **404.658.9070** | **5/14/2018** |
| 279:20 371:10 | **343-9696** | 259:5 | 257:17 |
| 395:6,9 397:5 | 405:24 | **404.815.3500** | **5/16/2018** |
| 397:6,6,7 | **344** 257:3 | 259:10 | 257:16 |
| 405:4 406:6 | **346** 257:4 | **4060** 367:18 | **5/4/2017** |
| **300** 405:23 | **348** 257:6 | **4061** 368:10 | 368:17 |
| **30009** 259:14 | **350** 257:7 | **4062** 368:15 | **50** 339:20 |
| **30076** 405:24 | **352** 257:8 | **4063** 370:16 | **50/50** 338:12 |
| **30303** 259:5 | **354** 257:10 | **4064** 373:16 | **500,000** 338:13 |
| **30309** 259:9 | **355** 257:11 | **4065** 374:7 | 338:13 |
| **304** 256:14 | **358** 257:12 | **4066** 374:16 | **5897010** 406:1 |
| **309** 256:15 | **359** 257:14 | **4067** 375:2 | **5:00** 401:12 |
| **3097** 321:17 | **360** 257:15 | **4081** 367:19 | **5th** 366:4 |
| **3098** 321:17 | **363** 257:16 | **42,000** 359:3 | |
| **3099** 309:22 | **364** 257:18 | **4649** 262:21 | **6** |
| **30th** 399:24 | **367** 257:19 | 267:22 322:10 | **6** 255:16 256:4 |
| **31** 257:24 | **375** 257:21 | 351:5 354:19 | 256:14 260:5 |
| 268:12 273:13 | **381** 257:22 | 356:18 357:19 | 264:23 265:8 |
| 333:12 397:7,8 | **395** 257:23 | 360:24 | 266:10 279:20 |
| 397:10 398:16 | **397** 257:25 | **470.386.6900** | 304:2,4,16 |
| 398:18,19 | **398** 258:1 | 259:14 | 305:23 307:18 |
| **3107** 313:3 | **399** 258:3 | **4:40** 396:11 | **60,345** 345:17 |
| **312** 256:17 | **3:45** 367:11 | **4:40-4:50** | 346:8 347:21 |
| **313** 256:18 | **3:45-3:58** | 396:12 | 347:23 348:8 |
| **32** 258:1 | 367:12 | **4:50** 396:14 | **624** 395:9 |
| 398:13,15,24 | **3:58** 367:14 | **4:58** 401:11 | **625** 381:6 |
| **321** 256:19 | **4** | **4th** 368:16,20 | 384:4 385:22 |
| **325** 366:4,9 | | 371:8,9 | **626** 384:4 |
| 375:3 | **4** 256:10 295:4 | **5** | 386:10 |
| **329** 256:21 | 295:7,8,9,12,16 | | **627** 387:3 |
| **33** 258:2 | **4/16/2018** | **5** 256:12 | 388:3,5,6 |
| 399:19,21 | 257:13 | 296:18,20,22 | **628** 390:4,6,22 |
| **333** 256:22 | **4/28/2017** | 302:23 304:17 | **629** 390:6 |
| **340** 256:24 | 256:6 | **5/11** 256:20 | **630** 393:13 |
| | **4/4/2017** 257:8 | **5/12/2017** | **631** 381:7 |
| | | 256:20,23 | 394:15 |

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 44 of 83
30(b)(6) Tahir Shareef                                     May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

[67 - agent]                                                    Page 4

**67** 295:8
**6th** 341:16

**7**

**7** 256:15
309:18,21
312:7,8,23
406:6
**7,000** 352:18
**770** 405:24
**7th** 374:18

**8**

**8** 256:16 312:2
312:5 313:4
314:25
**8/11/2017**
256:10
**8/15** 256:12
**8/16** 256:12
**8/17/2017**
256:12
**8/31/2018**
257:15
**80** 361:10
**81** 357:7,9
**83** 397:11
**85** 396:25

**9**

**9** 256:18,19
312:25 313:2
313:11 316:3,9
317:4
**9-11-28** 402:6
**9-11-30** 406:6

**9/14/2017**
257:1
**90** 369:6
396:25
**911** 279:11
309:8 321:2
370:7
**928** 333:10,17
**929** 333:10
**942** 358:23
**971** 346:18
**9th** 314:22

**a**

**a.g.** 255:3
259:11 260:6
260:15,21
261:11 268:19
269:9 270:18
304:18
**a.m.** 275:17
277:11 280:20
291:21
**abbreviation**
314:7,7,9,10,12
**ability** 404:4
**able** 277:18
278:19,24
305:9,17,18
**above** 341:14
343:1 345:5
368:23 370:5
405:19
**absolute**
404:13

**accepted** 345:6
**access** 392:12
394:22 403:1,2
**account** 272:9
285:6 309:23
310:13 330:10
349:14
**accounting**
334:11
**accurate** 264:8
264:11 402:12
**act** 262:2
**action** 255:4,8
255:13 278:3
282:25 387:10
391:6 402:15
404:9,12
**actions** 393:15
**activities**
274:21 275:11
395:1
**activity** 281:19
371:18 392:11
**actual** 306:24
**actually** 287:11
344:18 374:17
374:19 399:23
**add** 291:1,18
374:8 389:21
389:25 390:20
**adding** 389:20
**additional**
294:5 327:7
406:9

**address** 308:19
312:23 345:10
351:9,14 352:3
352:4 354:20
355:12,21
**addresses**
349:5 352:14
**adequate**
274:17
**adjusted** 340:6
**adopting** 391:8
**adults** 386:5
**advised** 322:9
**affected** 386:24
**affiliated**
364:13
**affirmative**
267:23 268:21
269:18 276:16
276:24 278:5
282:15 283:18
294:10 298:7
315:9 317:22
332:15 334:5
341:3 383:6
393:24
**afternoon**
260:14 261:4,7
**age** 315:22
318:10
**aged** 386:10
**agent** 256:12
296:23 297:2
303:17 307:19
308:13 328:9

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 45 of 83
30(b)(6) Tahir Shareef                                      May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[agent - assigned]**                                      Page 5

365:6

**agents**  303:18
303:24

**ago**  275:3
286:4 389:24

**agree**  272:15
272:20 277:9
277:13,13,14
292:2 319:14
332:16 370:21
391:3,4,22
393:25 395:4

**agreeable**
261:20 262:5

**agreement**
356:25 357:5,6
402:16,19
404:12

**ahmad**  363:14
363:15

**ali**  256:21
329:10 330:4
331:17 336:18
340:8 341:20

**ali's**  340:12

**alischild**  339:1
339:2

**alongside**  268:4

**alpharetta**
259:14

**american**
387:20

**amortization**
337:16

**amount**  347:21
347:23 359:7,8
360:3 372:10

**amy**  330:21
331:13,17
332:3

**anderson**
304:17

**announcement**
324:18

**answer**  263:18
263:21 264:2
272:3 277:20
278:21 280:17
284:14,15
293:21 294:8
299:24 300:1,8
301:10 318:19
319:20 320:8
320:11 327:4

**answered**
299:25

**answers**  265:2
291:4 300:11
402:22 404:5

**anti**  391:9

**anybody**
270:25 294:23
298:14 299:2,4
302:9 323:12
334:20 372:25

**apartment**
356:9,9

**apparent**
394:23

**apparently**
401:1

**appear**  345:11
349:4

**appearance**
256:10,24
257:1 295:13

**appearances**
259:1

**appears**  360:15
370:21 381:10
398:17

**applied**  402:20

**appropriate**
274:10 283:3
388:19

**approved**
397:22

**approximate**
338:10

**approximately**
336:8,13 338:8
338:13 377:22
392:9

**april**  267:16,18
369:4 374:18

**area**  327:15
377:8 378:16

**areas**  274:17

**arraignment**
341:13 342:25

**arrangements**
404:13

**arrested**  364:3

**article**  390:5,8
390:10,22
402:5

**articles**  257:22
381:11

**ashar**  290:2
322:8 323:14
323:15,15,16

**asked**  276:19
280:14 282:12
289:23 298:5
299:18 300:20
301:3,4,14,18
302:4,6 303:3
303:14,19
311:19 316:4
327:13 368:16
370:9 378:1
380:14,19

**asking**  263:18
276:12 283:4
287:8,12,14,25
288:1,25
290:12 291:5
295:24 296:5
302:22 308:10
308:14 317:14
326:9

**asks**  352:17

**assessed**  343:24
344:4

**assessment**
282:1,5

**assigned**
402:11

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 46 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[assignment - believe]**                                    Page 6

assignment
406:1
assist  406:8
assume  352:5
354:25 356:2
378:19 380:23
392:21,24
asterisks
361:10
atl  406:1
atlanta  255:2
255:24 259:5,9
261:9 338:23
attach  406:10
attached  257:3
285:17 313:3
405:9
attaching  256:8
256:19
attachment
285:2 312:14
312:15 313:7
322:14 398:16
398:22,23
attachments
312:17
attend  382:20
383:1 400:4
attended
332:24 382:11
399:2,10
attention  310:4
348:24
attorney  392:2
402:19 404:8

405:16
attorneys
402:24
audible  315:10
august  296:24
297:6 360:16
360:17
author  310:6
authority
302:11 307:8
376:21
automatically
402:20
available
291:19,20,24
292:4 305:11
379:6 392:11
394:14
avoid  278:14
aware  272:25
304:19 311:4
314:5 337:22
awareness
391:14 392:1

**b**

b  255:6,10,15
255:16,25
256:4,5 260:5
260:7 264:23
265:8 266:10
279:20 313:20
338:22,22
344:22 363:2
402:5,7,20
404:18

back  266:13
271:16 273:7
275:13 310:20
319:6 321:11
324:14,15
335:4,16,18,19
335:22 336:1,5
339:10,15
344:18 356:8
367:13 378:25
379:10,12,13
379:14,16,23
379:24 380:2,3
380:7 384:25
389:25 396:13
398:18 405:4
background
380:19,21,25
balance  256:22
333:12
bank  329:11
330:5 331:15
331:18 336:18
337:20 339:24
340:3,9,13
357:18
based  282:25
284:6,11 318:6
372:11 404:12
basic  300:12
386:5 392:9
basically
331:24 334:15
382:7 383:20
384:14 388:20

basis  282:10
307:11 330:18
402:8
bates  267:10,12
284:23 295:8
296:21 304:6
309:22 313:3
321:16 329:9
340:20 342:8
344:12 346:18
348:18 351:1
354:3 355:5
367:18 381:6
397:11
beaten  327:5
beatris  362:9
362:10
beginning
335:5
behalf  259:2,6
259:11 260:15
260:17,20
261:10 265:3
270:18 287:21
323:12
believe  279:13
289:23 292:15
303:13 323:6
325:15 330:8
336:21 339:14
342:15 357:8
360:1 361:6
370:4 376:1
382:2 399:9,14
400:5,7,24

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 47 of 83
30(b)(6) Tahir Shareef                                              May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[best - calling]**                                                Page 7

**best** 284:17
293:12 390:5
404:4
**betris** 363:2
**bilal** 363:10
**binding** 265:12
266:22
**birthday** 374:6
**bit** 316:2
350:11
**blank** 342:20
**board** 316:15
326:12 402:6
**body** 322:8
**bold** 257:16
**bolded** 390:23
**bolo** 256:18
313:18,19,21
313:22 314:13
322:16,22,24
374:12
**booth** 259:12
260:20
**bottom** 267:12
268:25 337:14
337:15 341:12
391:5
**bouchard**
258:7 259:3
260:14,15
261:4,6,8,23
262:8,17
265:24 267:1
269:5,7 271:7
271:11,18

277:8 278:7
281:3 283:15
284:13,21
287:10 288:22
292:12 295:5
296:19 300:9
301:1 302:2
304:3 306:18
307:1 308:24
309:10,19
312:3 313:1
314:11 318:5
319:21 320:10
321:7,14 329:7
329:15,20
332:9 333:8
340:17 342:5
344:10 346:14
346:21 347:1,7
347:8 348:15
350:17,24
352:10 354:1
355:3 358:12
358:19,21
359:24 360:13
361:21 362:19
363:22 364:22
367:9,16
375:23 381:4
395:7 396:8,15
397:9 398:14
399:20 401:5,7
**boyfriend**
366:1

**brad** 330:20
331:13,17
332:2
**brandon**
259:16 260:9
**brantley**
259:16 260:9
**break** 321:6
367:8
**brenda** 353:20
356:19 360:3
**bring** 356:17
381:24 384:21
**broken** 291:1
**broker** 364:25
**brook** 256:22
351:5
**brought** 356:21
**brown** 255:25
256:8 292:3,24
293:13,23
294:22 343:19
404:18
**building**
377:10
**bulldog** 257:18
**bullet** 385:23
393:12
**bulletin** 316:15
**bunch** 289:14
289:18 372:7
388:14
**bushes** 274:16
275:9

**business**
269:13 271:21
272:9 273:3
293:16 295:10
305:12 330:12
335:14,15,18
335:19,22
337:4,5,10,25
339:15 349:22
349:22 383:24
383:25 384:2
387:5,22
391:13,19
393:15
**businesses**
387:10 391:7
**buy** 374:19

**c**

**c** 260:1 339:2
402:6
**cabinet** 269:22
269:23 388:12
388:23
**call** 273:21
274:7 278:23
279:11,11
306:23,24,24
309:8 314:6
321:1,2,3,3
370:6 375:12
**called** 274:2
319:23 325:11
370:11
**calling** 274:5

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 48 of 83
30(b)(6) Tahir Shareef                                        May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[calls - collaboration]**                                        Page 8

calls   289:21
    306:9
camera   291:1
campaign
    392:1
capacity
    264:22,23
    280:20 282:21
    305:6
capital   333:18
    333:23
caption   266:11
    404:5
captioned
    262:15 295:17
car   377:13,19
card   293:15,16
care   320:22
case   259:6
    261:11,13,14
    264:14 272:24
    281:8 286:1
    287:16 288:8
    288:12 300:24
    302:24 316:4
    345:23 361:8
    395:21 402:8,8
    402:20
cases   259:11
    261:17 262:11
    262:15 268:19
    288:8 300:13
cash   396:4,6
cashier's
    344:14 346:8

348:1,10
caused   371:2
ccr   404:18
cell   316:5
ceo's   268:6
certain   264:9
    265:7 335:2
    382:4
certainly   307:9
    310:19 314:6
certificate
    404:1
certification
    295:10
certified   402:9
    402:23
certify   404:4,7
    406:2
chain   256:12
    256:20 257:5
    257:24 258:2
    296:22,24
    329:10,16
    348:19,22,25
    397:12
chains   387:11
chance   329:25
    367:23 368:1
chandler
    349:13
change   291:1
    379:5 390:2
    406:12,14,15
    406:17,18,20
    406:21,23

407:1,3,4,6,7,9
    407:10,12,13
    407:15,16,18
changed
    262:14 339:20
changes   357:13
    402:23 405:9
    406:3,4,6
charge   372:22
charges   345:5
chart   360:16
check   257:3
    291:10 299:15
    320:5 335:24
    337:1,6,11,19
    338:17 344:14
    346:8 348:1,10
    370:10 373:18
checkout
    366:13,14
checks   336:1,4
    380:19,22,25
chief   256:8
    285:5 289:6
child   329:3
children   386:5
    391:11
circumstances
    366:7 370:2
citations
    341:14 343:1
cities   383:18
city   372:9
civil   255:4,8,13
    262:1,2 406:6

claim   364:1
claims   300:12
clarify   263:25
class   393:8,10
    393:11
cleaning
    350:13,16
cleanup   356:17
clear   299:10
    378:18
clearer   267:4
clearing   375:18
clerk   345:20
click   382:3
    387:21 392:12
client   271:9
clients   268:9
close   268:7
    274:14,17,19
    274:22 379:15
    379:17,18
coast   359:10,20
    360:2
code   332:8
    341:8 342:16
    343:23 344:3
    346:11 347:15
    372:9,11,20
    382:11,14
    391:10 400:1
    400:15 402:14
    404:11
collaboration
    382:14

**[colleagues - contractors]**                                    Page 9

colleagues
  331:14
collect  384:21
collected
  270:25 339:6
collecting
  270:11
college  386:11
colloquies
  402:22 404:5
color  315:23,23
column  305:19
  360:20
combined
  389:18
come  271:24
  276:6 279:7
  282:13 284:1
  288:18 299:14
  302:15 303:10
  304:12 319:6
  320:2 325:11
  325:22,24
  327:15,17
  331:23 345:4
  366:20 387:15
comes  302:9,10
  324:10
comfortable
  378:10
coming  303:4,8
  311:6 314:1
  319:9 331:25
  370:8 382:8
  383:18

commercial
  281:19 371:18
commission
  383:7 407:25
commitment
  404:13
common
  274:17
communicate
  323:16
communicated
  323:8,13
communicating
  281:11
communication
  288:20 323:17
communicati...
  368:6
companies
  291:9
company  294:5
  294:16 338:25
  339:1 359:15
compare  312:6
compensation
  358:25 402:15
  404:12
compilation
  381:10
complete  264:8
  264:11 301:10
  402:11,22
completed
  405:22

compliance
  402:4,14
  404:10
comply  306:6
computer
  305:7,12
  381:25 385:6,8
  385:10 388:7
concern  319:23
  320:6,8,8,19
  330:19 343:12
concerning
  287:5 323:1
concerns
  262:10 268:8
  273:24 320:13
  352:15 364:1
  365:7
concluded
  370:13,21,25
  401:12
concludes
  401:7
conclusion
  306:10
conduct  391:10
confidentiality
  262:10
confused
  263:23 271:24
  272:14
connection
  286:24 339:24
  340:1

conscious
  394:24
consecutive
  306:8
consideration
  345:19
considered
  341:9
considering
  345:16
consistent
  398:5
contact  293:17
  316:4,6 318:13
  318:22 330:17
contacted
  319:4 402:18
contacting
  291:9 330:13
  330:14 383:20
contains
  272:24
content  311:18
continue
  265:17 283:10
  349:22
continued
  255:16 267:7
continuing
  264:20
contract
  402:15 404:11
contractors
  380:23

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 50 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[contracts - customers]**                                    Page 10

| | | | |
|---|---|---|---|
| **contracts**  402:8 | 320:17 325:9 | 310:2,7 313:25 | 345:22 402:6,9 |
| **contributed** | 326:23 329:11 | 314:19 327:14 | 402:23 404:14 |
| 338:12,13 | 331:9 342:12 | 330:23 331:4 | 405:20,23 |
| 339:3 | 344:7 346:6 | 332:4,8 340:19 | **cpa**  334:10,11 |
| **conversation** | 351:6 355:13 | 341:8,15 342:8 | 334:12 335:24 |
| 288:14,16 | 355:16 358:23 | 342:16 343:2 | 337:2,7,11,19 |
| 293:20 298:19 | 359:21 367:21 | 343:23 344:3 | 338:17 353:5 |
| 298:25 378:13 | 386:20 392:25 | 344:20 345:9 | **cpa's**  338:19 |
| 388:16 | 393:5 394:9 | 345:21 346:11 | **create**  389:6 |
| **copies**  348:17 | 398:4 400:2,13 | 347:15 348:20 | **created**  389:24 |
| 388:15,21,22 | 402:22 404:6 | 349:5,8,25 | **creating**  391:7 |
| 392:25 405:17 | **corrections** | 356:17 381:18 | **credible**  319:24 |
| **cops**  279:11 | 405:9 406:9 | 381:19 382:11 | **crime**  273:17 |
| **copy**  272:11 | **correctly**  316:8 | 382:15,16,19 | 273:25 276:23 |
| 273:3 346:16 | **corresponden...** | 383:5,7,17,23 | 277:25 278:3 |
| 346:17 384:22 | 270:4 371:12 | 384:12 385:14 | 278:14 281:23 |
| 385:7 388:12 | **cost**  290:11 | 389:13 390:18 | 282:6 308:20 |
| 388:14 | 337:15 348:7 | 397:16,21 | 393:20 |
| **corita**  362:1,7 | **counsel**  259:1 | 398:7,11 399:3 | **crimes**  268:10 |
| **corner**  267:12 | 260:11 261:16 | 399:4 400:17 | 268:12 273:11 |
| 340:24 341:12 | 265:9 402:2 | 404:2 | 273:14 274:4 |
| 377:17 | **counsel's** | **couple**  261:12 | 278:2 314:1 |
| **corporate** | 395:15 | 352:13 388:21 | **criminal**  310:1 |
| 265:1,3 | **county**  256:24 | **course**  264:13 | 310:7 374:8 |
| **corporation** | 257:1,4,6 | 320:8 392:8 | 392:2 |
| 265:13 287:21 | 258:1 267:17 | **court**  255:1 | **cross**  261:12,25 |
| **correct**  264:15 | 268:4,5,6 | 256:23,24 | 262:4 |
| 267:24 271:7 | 270:5 273:21 | 257:1,1,4 | **cs**  405:25 |
| 273:5,9 275:21 | 274:3 275:6 | 260:12 262:9 | **current**  318:10 |
| 276:5 282:14 | 276:3 277:17 | 263:12,14 | 334:1 400:15 |
| 294:6,18 | 278:18 279:15 | 295:11 306:16 | **currently** |
| 301:21 311:8 | 280:5,8,24 | 307:16 340:19 | 345:16 |
| 312:20 314:20 | 281:15,21,25 | 341:8,15 342:7 | **customers** |
| 314:22 315:8 | 282:4 285:13 | 343:1 344:20 | 383:16,21 |
| 316:10 317:7 | 306:7 309:9 | 345:4,6,9,15,20 | |

**[cv - deposition]**                                                    Page 11

| | | | |
|---|---|---|---|
| cv  255:5,9,14 261:11,14,15 | 327:19 366:24 399:11 404:15 407:21 | deferred  257:2 344:13,17,19 345:3 | 398:6,11 399:3 399:4 400:1,17 |
| **d** | days  274:19 | defined  347:15 | demand  308:8 |
| d  255:6,10,15 256:5 260:1,7 339:2 344:22 349:13 363:13 | 305:24 306:8 315:4 366:15 369:6 371:10 372:19 405:4 | definitely 372:13 | department 267:18 268:4 |
| daily  366:24 | daytime  327:16 | dekalb  256:23 257:1,4,6 | 273:21 275:7 276:3 277:18 278:19 279:6 |
| dana  259:7 260:17 405:2 | dead  365:21,25 366:12 | 258:1 267:17 268:4,5,6 | 279:16 280:8 280:14,14,24 |
| data  305:11,15 | dear  349:10 | 270:5 273:21 274:3 275:6 | 281:16,22 282:1,5 284:18 |
| date  260:8 285:12 330:24 340:23 366:13 366:14,16 368:20,23 381:16 397:19 405:4 | death  366:8 | 276:3 277:17 278:18 279:15 | 285:14 327:22 381:19 382:15 383:23 |
| | decatur  350:21 354:19 | 280:5,8,23 281:15,21,25 | department's 280:5 |
| | december 333:12 397:20 398:7 | 282:4 285:13 306:7 309:9 313:24 327:14 | deponent  405:3 405:8,10,12,20 |
| dated  267:18 285:9 314:25 342:11 | decide  294:3 309:13 331:10 344:2 | 327:22 332:8 340:19 341:8 341:15 342:8 | deponent's 405:8 407:20 |
| dates  336:9 | decided  293:23 346:1 | 342:16 343:2 343:23 344:3 | deposed  264:14 286:13 |
| david  255:25 259:3 260:14 261:5 271:3 321:5 367:8 404:18 | decision  343:21 344:6 | 345:21 346:11 347:15 348:20 | deposition 255:16,19 256:4 260:4 |
| | defendant 255:6,11,15 256:4 259:6,11 266:7 345:3,11 345:16,18 | 356:17 381:18 382:11,15,16 382:19,19 383:5,7,17,23 | 263:7 264:20 265:8,17,19 266:7 267:6,8 |
| day  257:15 275:24,25 280:22 281:5 282:22 283:17 283:24 284:2 291:25 292:5 324:10,16 325:22 327:11 | defendant's 345:7 | 384:12 385:14 389:13 390:18 397:13,16,20 | 275:14 285:23 286:24 288:12 288:17 401:12 405:1,8 406:7 |
| | defendants 261:16 | | |

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 52 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[depositions - drug]**                                    Page 12

depositions
  261:18
description
  256:3
designated
  268:10
desire  406:7
desk  298:18
  316:22 317:3
  360:22 362:8
  362:23 363:11
  385:9 388:7,25
detailed  345:22
determined
  402:15
develop  383:24
  384:1
died  366:4,15
different
  278:10 328:7
  338:14 340:11
  341:24 352:13
  365:20 394:2
  398:9
differently
  310:21 380:12
difficulty
  306:19
direct  348:24
  402:15 404:11
directed  267:21
direction  404:6
directly  338:17
discern  318:1

disclaimers
  329:24
disclosure
  402:6
disclosures
  391:17 402:1,3
  402:4,17
discount
  402:21
discounts
  402:20
discover
  397:12 400:1
discovery
  270:12 361:7
  395:24
discuss  308:18
  330:22 332:3
discussed
  275:14 288:15
  288:24 399:3
  400:9 401:1
discussion
  289:4
disputing  273:7
disqualificati...
  402:6
disqualify
  402:13 404:10
dissatisfied
  291:15
dissatisfy
  291:17
distribute
  393:6 394:11

  394:13
distributing
  394:5
district  255:1,1
  295:11,11,17
division  255:2
  310:1,8 341:8
  342:17 343:23
  344:3 392:2
doable  291:3
document
  256:11 266:13
  266:15 269:12
  269:17,19
  270:7,21 271:5
  271:20,25
  272:4,8,12,24
  273:8 287:4,22
  289:5 295:13
  295:19 296:2
  297:3 304:15
  329:18 333:11
  337:3,9 342:1
  357:4,8,14
  387:14,15
  388:5 389:16
  389:18 395:18
documentation
  336:23 358:3
  369:16 380:24
documenting
  369:12
documents
  265:18,20
  270:11,16,17

  271:1,22
  285:22,25
  286:2,6,8,10,12
  286:17,20,23
  287:15 288:5,7
  288:15,25
  304:5,11 331:8
  331:11 339:14
  357:2 380:21
  381:11,14
  389:17,19
doing  280:25
  283:10 323:10
  335:8
door  320:4
downstairs
  377:10
dr  334:15,16
  335:12 336:4
  337:8,21 338:6
  340:6
draft  399:17
drichens  405:2
drive  262:21
  267:22 311:16
  322:10 351:6,9
  352:1,24
  355:13 356:19
  357:19 360:24
  372:18
driver's  374:8
driving  376:21
drug  366:17
  375:6

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 53 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

[drum - example]                                          Page 13

**drum**  327:5
**drunk**  373:23
**due**  405:4
**duly**  261:2
**duty**  274:18
  280:19 282:21

**e**

**e**  260:1,1 363:2
  406:6,6
**earlier**  292:19
  399:7
**early**  377:23,25
  399:10,14
**easier**  384:19
**educational**
  386:17
**effect**  262:11
  279:24 282:6
  309:14
**effective**
  400:21
**efficiency**
  358:20
**efforts**  277:19
  278:20,25
  279:4,16 280:9
  327:23
**eight**  392:9,15
  392:17,22
**either**  292:21
  325:7
**electronically**
  405:10
**elects**  345:18

**eligible**  349:18
**email**  256:8,12
  256:15,16,19
  256:20 257:5,8
  257:13,16,17
  257:24 258:2
  272:7,9,23
  273:10 285:2,2
  285:5,6,16
  286:3,19 287:2
  287:3,6,7
  289:15,18,21
  292:21 296:22
  296:24 297:1
  309:21 310:6
  310:10,13,15
  310:17,19
  311:10,18
  312:5,11,19,23
  313:4,6 314:24
  316:12 318:15
  321:20 322:1,3
  322:8 323:2,14
  328:5,7,7,8,9
  328:12 329:10
  329:16 330:16
  332:10 340:8
  341:20 348:19
  348:22,25,25
  349:5 352:12
  352:14 353:4
  360:1 363:24
  364:24 397:11
  397:19 398:18
  399:22,22

  400:14 405:13
**emailing**
  336:19
**emails**  286:9
  289:19 310:24
  311:4 322:21
  322:23 323:6
**employee**  394:3
  404:8
**employees**
  257:18,23
  324:17,19
  380:19,22
  391:15 394:6
  394:12
**empty**  375:15
  379:1
**enforcement**
  332:8 341:8
  342:17 343:23
  344:3 372:9
  382:12,14
  400:15
**enforcing**
  391:8
**enhance**  309:14
**ensure**  274:10
  391:18
**entered**  345:5
  406:7
**entire**  369:3
**entity**  265:3
**entrances**
  274:14

**enumerated**
  265:7
**environment**
  393:9
**eric**  259:12
  260:19
**errata**  405:1,4
  405:9,10,12,15
  405:17,19,22
  406:1
**esq**  259:3,7,12
  405:2
**establish**
  391:15
**estate**  359:15
**ethics**  402:14
  404:11
**evaluate**  309:3
**event**  299:13
**events**  383:17
**everybody**
  324:9 348:17
**evict**  306:14
**evidence**  404:6
**ex**  256:19
**exactly**  392:18
**examination**
  262:4,16
**examinations**
  258:5
**examined**
  261:2
**example**
  279:24 302:14
  304:16 316:12

[example - file]                                              Page 14

361:9 386:22
387:18
**except** 298:10
402:8
**exchange** 297:1
369:3
**excuse** 271:3
**exhibit** 256:3,4
256:6,8,10,12
256:14,15,16
256:18,19,20
256:22,23
257:1,2,4,5,7,8
257:9,11,12,13
257:15,16,17
257:19,20,22
257:23,24
258:1,2 265:23
266:2,15,25
267:3,5,7,10
269:17 271:19
273:13 277:17
283:1,5,12,23
284:5,6,9,20,23
285:1,12 292:3
295:4,7,8,9,12
295:16 296:18
296:20,22
302:23 304:2,4
304:16 305:23
307:18 309:18
309:21 312:2,5
312:7,8,23,25
313:2,4,11
314:25 316:3,9

317:4 321:13
321:16 322:15
329:6,9 330:2
333:7,9,17
337:13 340:16
340:18,24
342:4,6 343:7
343:8 344:9,11
344:13 346:6
346:13,15
347:3,5,10,13
347:20 348:3
348:14,16
350:23 352:9
352:11 353:24
354:2 355:2,4
358:11,13,22
359:23,25
360:12,14
363:21 364:21
364:23 367:15
367:18 375:22
375:24 381:3,6
384:5 389:19
391:25 395:6,9
397:5,8,10
398:13,15,16
398:19 399:19
**exhibits** 256:1
358:18 402:23
402:24 403:1
**existing** 268:8
**expecting**
335:15

**expedite**
271:10
**expenses**
337:14,15
**experiencing**
330:22 331:4
332:4
**expires** 407:25
**explain** 268:24
358:1
**exploitation**
391:11
**exploited**
386:25
**expose** 383:16
**extended** 258:1
306:3 397:16
397:21 400:17
**eye** 315:23

**f**

**face** 302:21
329:5
**facility** 405:23
**fact** 286:17
364:18 378:9
394:6,11
**fair** 264:4
308:17 349:5
**familiar** 273:15
285:16,19
348:22 398:24
**familiarize**
329:18
**family** 329:3
355:25 383:19

**far** 308:7
370:17
**fbi** 296:9,23
297:5,11,13,18
298:1,6 299:11
300:3,16 302:7
302:10,22
303:4,7,9,13,14
303:17,24
304:6,10,22
307:19 308:13
328:9 364:19
**february**
264:17 275:14
276:2,13
286:13 339:18
340:2 356:23
369:4 380:18
393:3
**federal** 262:1
295:22,25
406:6
**federation**
387:20
**feel** 376:20
377:3 378:10
379:17
**fees** 345:17,19
345:22
**fifties** 377:25
**figure** 388:10
**file** 273:3
384:21 385:7
388:12,24,25
389:6 405:16

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 55 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

[filed - georgia]                                                    Page 15

filed   405:19
files   270:1,2,4
   271:21 389:2
   395:16
filing   269:22,23
   388:12,23
fill   405:10,10
final   345:7
financial   402:7
financially
   404:8
finch   259:3
find   272:4,4
   290:10 308:3
   357:3,4,5,14,15
   365:21,23,25
   366:12,15
   379:1 381:1
   383:17,21
   384:17 387:21
fine   303:5
   345:17,19,22
   346:2,11
   347:17,21
   348:4,12
   349:18
fines   343:22
   344:2,6 348:8
   349:23 350:3
finish   263:18
   263:20
fire   400:16
firm   402:1,17
first   261:2
   268:3,11 286:7

313:13 333:17
333:19 344:18
345:2 347:3,9
368:19 390:22
393:21
five   297:23
   388:15
fix   371:22
fixing   372:8
flip   347:19
   368:15 386:9
   387:3
floor   379:20
focused   354:14
focusing   303:1
   378:18
folks   361:6
following
   268:12 402:1,4
   406:4
follows   261:3
foot   377:16
force   268:5
   392:3
foregoing
   404:4
form   261:19
   277:5 278:6
   281:1 283:13
   284:12 292:11
   300:7,19
   301:24 306:22
   308:21 309:5
   309:15 317:12
   318:3 319:18

320:1 332:5
406:7,9
formally   391:8
forms   402:6
forth   356:8
   357:9
forties   377:23
   377:25
forward   405:16
forwards
   398:22
found   272:9
   390:13
four   275:24
   282:21 283:17
   327:11,19
   341:5 388:15
free   392:11
friends   311:20
   338:1 339:6,8
front   296:8
   298:18 316:22
   317:3 360:22
   362:8,23
   363:11 377:18
   378:25 379:10
   380:7,9,10
   385:9 388:7,24
full   262:12
   301:10 348:3
   363:19
fulton   404:2
furnish   406:9
further   288:20
   316:2 371:1,11

379:19,23,24
404:7
future   278:4,15

g

g   260:1 361:23
   361:25,25
g.w.   255:7
   259:11 260:16
   260:21 268:20
   269:10 270:19
   304:18
g.w.'s   261:14
ga   405:24
gambrell   259:8
gathered
   270:16 388:18
gathering
   383:19
general   276:21
   309:3,12 311:3
   317:23 319:22
   392:2 398:3
generally   380:4
   380:6
generate   384:1
gentleman
   353:11
gentlemen
   325:8
george   362:17
   362:18,18,21
georgia   255:1
   255:24 259:5,9
   259:14 261:9
   262:2 295:11

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 56 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[georgia - heard]**                                                    Page 16

295:17 344:21
344:21 351:10
351:15 352:1
402:4,10 404:2
**getting** 286:24
302:8
**girl** 322:25
**girlfriend**
366:1
**give** 278:23
287:20 290:19
297:10 299:16
301:10 302:14
302:18 308:2,4
308:4 312:15
316:12 320:3
371:4 381:21
382:5
**given** 381:20
404:6 406:8
**giving** 288:20
387:17
**gmail** 257:8,8
285:6 309:23
352:14 398:20
**gmail.com**
310:11,24
321:24
**go** 271:11
276:21 300:22
324:17 356:8
366:23,24
375:14 382:4
383:14 384:12
384:18,25

387:17 389:14
389:25 396:8
397:23
**goes** 305:4
308:7 324:16
341:5,22 373:5
387:18 390:6
**going** 261:9
262:19 264:3
284:10 288:17
300:6 301:22
302:14 303:22
312:15 316:12
337:1 338:17
343:22 350:2
358:19 371:5
379:9
**gold** 359:10,20
360:2
**good** 260:14
261:4,7 264:8
264:10 330:24
384:20,20
**gotten** 361:7
**graham** 361:25
**grand** 295:18
295:22,25
303:2
**greetings** 405:6
**ground** 263:7
**groundsman**
350:13,16
363:4
**groups** 383:18

**guaranteed**
359:8
**guardian**
311:19 322:9
**guess** 281:10
305:16 336:22
340:12 366:9,9
369:5 390:19
**guessing**
305:13 332:6
**guest** 299:16
328:3,19 364:2
366:4 394:22
**guests** 305:22
328:1
**guide** 385:23
386:2
**guidelines**
391:13
**guiding** 391:12
**guilty** 304:18
345:6,18
**gunfire** 370:6
**guy** 363:18
377:9,11,21

**h**

**h** 259:3 338:22
339:2 361:23
361:25 363:13
**habib** 338:20
338:20,22
360:1
**habit** 377:7,9
378:20,22

**hair** 315:22
**halfway** 385:22
387:4 393:14
**hall** 259:12
260:20
**hand** 267:12
272:17 340:24
341:12 360:20
**handed** 266:4
267:9 284:25
**handing** 295:6
321:15 367:17
**handout**
384:13
**handouts**
384:18
**handwrite**
382:1
**happened**
287:24 289:22
326:5 328:16
358:1,8 366:8
371:6
**happening**
278:4,14 326:5
346:19 381:17
**hard** 272:11
273:3 385:7
388:12
**hathorn** 348:20
**head** 374:25
**hear** 284:14
**heard** 316:8
370:4,5

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 57 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**hearing** 341:14
342:25 345:7
345:12,21
364:19
**height** 315:23
**held** 323:23
341:14 343:1
345:8
**help** 280:16
281:16 283:3
300:22 306:14
307:3,15
309:16 311:21
320:6,7,9
322:11 327:23
349:10 361:8
381:24 383:24
393:15 394:4
394:25
**helpful** 383:21
**helping** 393:20
**hey** 378:7
388:17
**hi** 330:20
**high** 277:1
386:10
**higher** 390:25
**hire** 293:18,23
294:4,23 295:1
306:20 307:2
327:7 343:16
**hired** 294:15
343:21 344:1
**hiring** 277:3

**hnis** 353:6
**hnismail** 257:8
**hold** 324:2
**holding** 296:1
**home** 280:24
373:5
**hope** 348:20
**hosted** 382:19
**hotel** 258:1
262:19,24
263:2,3 268:1
268:5 269:24
276:4,21
277:20 278:21
279:17,24
280:4,4,10
281:4 283:5,10
284:8 290:24
292:9 294:13
296:5 297:5,11
297:14,19
298:1,6 302:5
303:18 305:22
305:24 306:4
308:19,25
309:3,4,13
310:15 311:6
311:15,20
319:25 320:15
320:20 322:1
324:6,21 327:6
327:7,10,13,18
327:23 328:2
328:19 330:21
344:25 349:21

350:2,19
354:21,24
356:2 364:14
369:18,22
372:11 379:16
380:23 382:17
382:20 384:25
385:3,6,8
397:16,21
400:17
**hotel's** 285:6
310:13
**hotels** 268:8
350:19 383:3
383:24 390:23
398:11
**hour** 291:18
292:9 298:22
316:5 370:9,9
392:15,17,22
**hours** 275:16
275:19,24,25
281:5 282:21
283:17,24
284:2 290:17
290:23 291:24
292:5 298:21
327:11,19
361:11 392:9
**housekeeper**
354:9 361:12
361:16 366:10
**housekeepers**
354:10

**housekeeping**
360:22 361:20
362:10,25
363:9 366:20
394:18
**housing** 354:23
**housworth**
349:1,10
**huh** 267:23
268:21 269:1
269:18 276:16
276:24 278:5
282:15 283:18
294:10 298:7
311:7 314:16
315:7,9 317:22
332:15 334:5
341:3 383:6
393:24
**human** 257:22
381:14 383:10
386:18,24
387:10,19
389:1,4 391:13
391:16,18
392:1,3,10
393:16,21
394:5,23,24,25
399:4 401:3
**hundred** 270:9
335:1 370:15
**husband** 362:3

**i**

**idea**  297:24
298:2,20
**ideas**  384:1
**identical**
322:15
**identified**
355:15
**identifies**  317:4
**identify**  392:10
394:4,25
**ii**  255:6
**imagine**  296:12
**impacts**  404:13
**impartial**
404:14
**impartiality**
402:14 404:10
**implement**
274:12 277:19
278:20,25
279:4,16 280:9
283:6 284:4,10
327:23
**implemented**
268:6
**important**
263:17,19
275:7,8
**importantly**
387:9
**impose**  345:22
**imposed**
345:17

**inc.'s**  333:12
**incident**  274:4
366:3 374:24
**incidents**  365:4
365:7,10
**include**  274:12
391:14
**includes**  268:9
386:3 399:22
**including**  262:3
**income**  256:22
333:13 337:13
**increase**  372:10
**independent**
380:23
**index**  256:1
258:5
**indicators**
281:22 394:24
**individual**
255:17 264:22
**individually**
260:4
**individuals**
349:4
**industries**
255:5,10,14,17
256:4,22 260:5
260:7,18,20
264:24 265:4
265:13 266:8
266:23 279:20
333:11 334:14
336:8,25
337:22 339:20

344:22 351:5
355:16 381:12
**industry**
352:18
**information**
284:16 302:11
302:19 303:12
314:4 316:3
328:14 368:16
384:15,24
386:3,6 388:18
389:15 390:1
392:10,19
**initials**  262:14
**inn**  255:6,10,15
256:5 257:23
260:7 262:20
262:23 269:13
270:10,18,25
271:21 272:5
275:15,23
280:7 282:21
282:25 286:3
289:25 295:21
295:24 296:10
299:11 300:5
300:18 306:3,6
308:17,18
309:2,23
311:15 312:19
315:18 319:9
319:16 322:10
322:23 323:13
328:15 331:19
334:23 344:4

347:14 349:19
351:14,19
352:6,7 353:1
353:12 355:19
355:24 357:19
361:16 364:3,7
364:10 372:22
380:20 388:8
395:10,12,16
396:18
**inquire**  273:22
**inspector**  319:5
**instances**  396:5
**insurance**
257:18 364:25
365:6
**interactions**
303:24
**interest**  402:7
402:12 404:9
**interested**
290:22,25
404:8
**introduce**
260:11
**inv**  256:15,16
256:19
**investigating**
299:20 300:1,4
300:17
**investigations**
310:1,8
**investigator**
309:25 310:5
312:6 318:13

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 59 of 83
30(b)(6) Tahir Shareef                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[investigator - know]**                                        Page 19

318:22 319:4,9
321:21 322:21
323:5,7,13,17
328:13
**involved**   340:9
359:19
**involvement**
376:2
**involving**
273:25
**iqbal**   257:7,10
350:7,9,10
351:2,9,19
352:15,19
353:15,19
356:19
**islam**   257:20
258:3 319:4
372:23,25
373:1 375:25
396:17 399:23
**islam's**   376:2
**ismail**   257:14
338:22 360:1
**issue**   261:19
295:2,3 320:9
**items**   394:3

**j**

**j**   255:25 296:23
404:18
**j.g.**   255:12
256:18 259:6
260:15,18
268:19 269:9
270:18 311:19

315:15,17
317:4,4 324:5
324:23 326:10
327:8,12,20,24
328:2,22
374:13
**j.g.'s**   261:15
**jacksonville**
372:14
**january**   268:11
273:13 368:23
397:23 399:24
**jenoris**   363:17
**jesse**   361:24
**jessie**   361:25
362:1,5
**job**   271:1
327:17 330:6
362:22
**joint**   358:20
**joking**   378:12
**jorge**   362:13,16
362:16,18
**jpb**   255:5,9
**july**   345:8
**june**   341:16
371:8,9
**jury**   295:18,22
295:25 303:2
**justice**   392:2
**juvenile**   273:15
273:25 311:15
311:24 312:12
323:24 324:20

**k**

**kathy**   397:12
**keep**   388:22
**kelly**   296:23
**kemp**   349:1
**kept**   269:19,21
385:5 388:12
**kids**   385:24
386:4 387:18
**kikia**   304:17
**kill**   366:1
**kind**   289:15
339:16 378:10
378:23 381:23
388:17 389:20
393:9
**kit**   394:6,12
**knew**   307:25
**knock**   275:12
**knocked**   276:8
**know**   269:21
270:2,7,8,23
271:4,23,23,25
272:1,6,13,22
273:2,17 274:2
274:2,3,4,8
275:3,4 276:7
276:9,20 277:7
279:1,2,8,9,10
279:10,18
280:13,15
282:10,12
283:7,8,9
284:15,16,19
285:21 286:3,4

286:4,10 287:1
287:22,23,24
288:9,13,17,23
288:24 289:6
289:11,13,14
289:21 290:15
290:19,20
291:1,2,11,11
291:18 292:10
292:14,18
293:2,6,7,10,11
293:16,16,19
293:20 294:2,7
294:20 295:3
296:6,7,15,17
297:10,20,22
297:24 298:16
298:23 299:3,4
299:6,7,9,17
300:1,8,8,23
301:11,12,13
301:13 302:6,9
302:15,19,20
303:11,11
304:1 306:11
307:13,14,15
307:22 308:2,5
308:7,9,13,23
309:8,8,9
313:9,18,22
316:13,20,22
316:25 317:2
317:11,16
318:10,14,15
318:16,20,23

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 60 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[know - list]**                                                        Page 20

319:1,2,6,7,20
320:5,7,25
321:1,2 323:1
323:12,18
324:25 325:1,1
325:12,12,13
325:23,25
326:3 327:3,14
327:15,17
328:6,16 329:3
329:4 330:17
330:18,24
331:6 332:6,7
333:3,5,6
335:5,13 336:9
337:1,6,8,18,24
337:25,25
338:1,2,7,9,15
338:16 339:7
341:23,24,25
343:19,20
351:21 353:12
353:21,22
354:12 356:8
356:12,13,18
356:20 357:2,6
359:10,17
360:6,7,8
362:12,14
363:5,19,20,20
364:8,11,20
365:18 366:7
366:11,17,19
370:4,6,8,9,17
371:4,6,21,23

372:1,2,3,7
374:3,5,6
375:11,12,14
376:8,10,13,17
376:22,23
378:6,10,11,12
378:13 379:2
379:20 380:12
380:13 381:1
382:3,13
384:17 388:15
388:16,18,25
389:1,7,9,15,17
389:21,22,23
390:2,11,13,16
390:18,20
392:19 393:1,2
393:8 394:14
395:19 396:3
**knowing**
393:21
**knowledge**
319:3
**known**  320:24
390:24

**l**

**l**  313:20 338:22
339:2,2
**laborers**
380:22 395:10
**lady**  374:20
**laity**  257:25
258:3 397:12
**laity's**  397:19
400:14

**landscaping**
274:15
**late**  377:25
**lately**  286:5
**law**  402:4
**lawsuit**  261:14
261:15 315:17
**lawyer**  261:8
286:21 288:13
343:16,21
344:1
**lawyers**  268:19
269:9 270:17
270:22 287:15
288:11,24
329:24 395:20
**lead**  319:24
**learn**  300:3
**learned**  300:16
**learning**
400:16
**left**  272:17
293:15,15
333:25 360:20
375:15,16
**legal**  306:9
329:23 402:10
402:18
**length**  305:20
**lengthy**  341:4
341:23 342:14
**lesson**  386:11
386:11 387:19
**letter**  256:6
267:16 268:16

268:18 275:1,6
282:13,22
283:1,19,22
285:12
**level**  386:11
**liabilities**
333:18,21
334:1
**license**  349:12
349:14,19,22
**licenses**  374:8
**lighting**  274:13
275:10
**lights**  377:8,18
377:18 378:11
379:2
**limited**  262:3
274:12
**line**  311:14
312:11,16
406:12,15,18
406:21 407:1,4
407:7,10,13,16
**lined**  272:17
**links**  381:21
382:3,4
**list**  257:4,23
266:16 273:11
328:1,3,19
341:4,23,24,24
342:15 361:13
361:13 386:17
395:10,11,14
395:15,18
396:1

**[listed - managers]**                                    Page 21

listed  273:14
   352:23 355:12
   360:19 361:7
   361:14 386:11
   386:12 393:21
listing  348:4
lists  304:16
   394:2
literally  305:23
little  271:24
   316:2 350:10
live  355:25
   356:7 373:2,12
living  307:14
   351:23 352:5
   354:21,22,24
   355:22 356:1,4
llp  259:3,8
loan  330:9,11
   330:12 334:3
   334:22,24
   335:3,6,20,23
   336:2,5,7,17,18
   336:24 337:4,9
   337:15,18,20
   337:21 338:3
   339:4,24 340:1
   340:13 357:12
   357:12,16,18
   357:20,22
   358:2,9
loaned  334:8
   335:10,14
   337:9

loans  337:22
lobby  324:13
   324:14
local  309:17
   321:4
located  322:10
   345:10
locations
   268:10 390:24
loitering
   274:21 275:11
long  275:3
   286:3 298:19
   298:21,21
   336:13
longer  305:11
   307:15
look  302:13,16
   310:19 320:4
   325:1,11,12,23
   325:25 326:1
   326:11 329:17
   330:16 341:11
   347:6 368:10
   368:12 370:16
   374:11,16,17
   385:15,22
   388:19 398:17
   400:13
looked  322:16
   395:23
looking  285:13
   297:3 304:11
   311:12 313:5,6
   314:20 318:4

370:1,24 384:4
388:6 394:17
lookout  314:4
looks  272:15,20
   292:2 317:9
   318:1,8 332:1
   332:13 356:12
   356:15 364:1
   364:24 371:7
   371:10 390:4
   391:25 397:15
   399:25
los  305:20
lot  275:10
   374:1 375:11
   375:20 379:23
   380:2,3 382:7
lots  274:13
   373:17 375:9
loud  373:22

**m**

m  338:22
   361:25,25
   363:13
macon  351:10
   351:15,20
   352:1,6,7
   353:2,13
   354:25 355:19
   355:22 356:5
   356:21,22
   372:15
made  324:18
   334:24 335:6
   336:24 337:21

373:23 402:4
402:23 404:13
magistrate
   256:23 257:1
   340:19 341:15
   342:7 343:1
   344:20 345:9
   345:20
mail  353:8
main  280:15
maintained
   269:12 271:20
maintaining
   402:14 404:10
maintenance
   362:6 363:18
   394:18
major  256:6
   267:17 282:18
make  334:22
   335:3 336:7
   343:21 352:17
   398:10 402:11
   406:7
makes  263:17
   263:19
making  402:13
   406:8,8
manager
   276:21 309:3
   309:13 311:3
   317:23 319:22
managers
   398:3

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 62 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[mandatory - messages]**                                    Page 22

**mandatory**
  398:10
**manfus**  349:1
**mansell**  405:23
**manually**
  405:10
**march**  268:12
  273:13 369:4
  400:21
**maria**  363:2
**marked**  265:23
  266:1,25 267:2
  284:20 285:1
  295:4,7 296:18
  304:2 309:18
  309:20 312:2,4
  312:25 321:13
  321:16 329:6
  333:7 340:16
  342:4 344:9
  346:13 348:14
  350:23 352:9
  353:24 355:2
  358:11 359:23
  360:12 363:21
  364:21 367:15
  375:22 381:3
  395:6 397:8
  398:13 399:19
**markings**
  272:17
**material**
  313:25 381:20
  381:22

**materials**  361:7
  386:17 392:25
  393:6
**math**  315:3
**matter**  260:6
  260:18 319:17
  345:8 349:11
  364:2,18 378:8
  402:12,19
  404:10
**matters**  260:21
  261:13 269:10
  270:19 271:10
**mcclelland**
  279:12 280:12
  281:9 282:14
  282:20 283:17
  283:24 290:14
  291:7,16
  294:12 325:5
  325:16,20
  326:10 327:10
  376:6,11,14,18
  376:20 377:1,4
  377:12,20,24
  378:1,4,15
**mccranie**  259:3
**mcdonald**
  333:5
**mcmillan**  257:9
  257:11 353:20
  354:8 355:8
**mean**  264:3
  276:6,8 277:24
  278:1,2,8,18

281:4 290:18
291:6,10
293:11 302:6
304:11,25
307:6,7 311:25
316:21 320:2
325:22 329:1
332:10 335:7
338:12 356:5
357:17,25
369:2 372:4
375:10 379:6
384:14 390:19
393:7,11
**meaning**  279:1
  290:19 374:5
**means**  265:2
  269:2 313:22
  314:3,15 373:6
  380:24
**measure**  283:6
  283:7
**measures**
  274:10,11
  277:19 278:20
  278:25 279:4
  279:17,24
  280:10 282:5
  284:5,11 386:5
**mechanisms**
  391:15
**meet**  282:9
  330:23 332:18
  371:4,21

**meeting**  313:25
  323:24 332:13
  332:22 333:1,3
  382:13,25,25
  384:11,13
  397:22 398:2
  399:12,16
  400:1,4,14
**meetings**
  381:18 382:11
  382:19,24
  383:1,2,13
  384:25 385:19
  389:8,10
  390:18 399:3
  400:6,23
**memorable**
  296:12 299:13
**memorial**
  262:21 267:22
  311:16 322:10
  351:5 356:19
  357:19 360:24
  372:17
**mention**  378:7
**mentioned**
  262:8
**message**  325:9
  325:10,17,21
  368:7 369:20
  370:7 371:5,7
  374:18
**messages**
  257:19,20
  281:8,13

| | | **n** | |
|---|---|---|---|
| 325:15 367:19 | **misstates** | | 363:24 364:24 |
| 368:4 369:7 | 301:25 | **n**   260:1 361:23 | 367:18 368:10 |
| 370:1,24 | **models**  391:19 | 362:21,21 | 370:16 373:16 |
| 371:16 374:11 | **moment**  271:9 | **name**  260:9 | 374:7,16 375:2 |
| 375:25 376:5 | 329:13 | 261:5 293:13 | 381:6,7 384:4 |
| **messrs**  256:21 | **money**  334:8 | 299:16 308:3 | 385:22 386:10 |
| **met**  263:6 | 335:10,14 | 315:13 323:14 | 387:3 388:6 |
| 288:11 339:18 | 337:4,10 338:1 | 338:19,20,25 | 390:4,6,6,22 |
| **middle**  333:16 | 338:5 339:3,4 | 339:1 350:8 | 393:13 394:15 |
| 333:19 342:20 | 339:5,7 | 351:4,8 353:14 | 395:9 397:11 |
| 393:13 394:15 | **month**  305:4 | 357:24 359:18 | **ne**  255:22 |
| 394:17 | 309:1 369:3 | 361:10,22,23 | 259:4,8 |
| **milton**  259:13 | 371:8 375:1 | 362:11,13 | **necessary** |
| **mind**  271:8 | **months**  285:11 | 363:1,5,12,16 | 406:9 |
| **mine**  335:11 | 305:5 | 363:19 | **need**  279:1,9 |
| **minor**  300:4,17 | **morning** | **names**  262:12 | 288:23 302:15 |
| 316:21 317:5,9 | 373:17 | 262:13 316:17 | 309:12,13 |
| 318:2,8 319:25 | **motel**  258:1 | 361:5,13,14 | 315:10 320:5 |
| 320:15 328:14 | 268:5 364:13 | 395:23 | 327:6 328:6 |
| **minors**  316:19 | 382:17 397:16 | **nations**  391:12 | 334:10,10 |
| 316:20,24 | 397:21 | **nbi**  267:11 | 356:6,10 |
| **minute**  298:22 | **motels**  390:23 | 268:25 284:23 | 371:22 375:14 |
| 373:18 385:15 | **move**  306:15,24 | 284:24,24 | 395:19 |
| **minutes**  298:21 | 306:25 307:3 | 295:8 296:21 | **needed**  265:17 |
| **mireya**  362:15 | **multiple** | 304:6,7,15 | **never**  277:10 |
| 362:24 | 350:19 | 309:22 313:3 | 294:15 |
| **missing**  311:15 | **murder**  364:3,7 | 321:17 329:9 | **new**  265:18,20 |
| 312:12 314:13 | 364:9 365:11 | 333:10 340:20 | 267:6 283:6,7 |
| 314:20 315:4 | 365:14 | 342:8,9,23 | 284:4,10 314:4 |
| 316:14,18,21 | **murders** | 344:12 346:18 | 324:20 400:1 |
| 316:23 319:15 | 308:16 309:1 | 346:18 348:18 | **niece**  311:20 |
| 319:24 320:15 | 364:12 | 351:1 352:12 | **night**  279:7 |
| 322:5 323:24 | **music**  373:22 | 354:3 355:5 | 325:1 |
| 324:20 328:15 | | 358:23,23 | **nightly**  282:9 |
| | | 359:25 360:15 | |

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 64 of 83
30(b)(6) Tahir Shareef                                     May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[nolo - open]**                                                    Page 24

**nolo** 345:6,18
**non** 290:16
**north** 256:22
351:5
**northbrook**
255:5,10,14,17
256:4 260:5,6
260:18,20
264:24 265:4
265:13 266:7
266:23 279:20
333:11 334:13
336:7,24
337:22 339:19
344:21 352:18
355:15 381:12
**northern** 255:1
295:11,17
**nos** 315:11
**notarized**
405:13
**notary** 407:24
**note** 349:13
**noted** 406:3,4
**notes** 333:1
381:23,25
382:6,8,8
390:16
**notice** 256:4,5
256:24 257:1
261:18 265:8
266:6 273:20
313:10 322:16
340:23 341:22
342:7,11 343:4

343:6,8 374:12
391:25
**noticed** 261:12
305:19
**notices** 261:24
261:25 317:2
322:22,24
323:25 343:15
**noticing** 402:18
**notified** 341:13
342:25
**notify** 323:1
**notifying** 268:7
328:13
**noting** 405:9
**november**
285:9 293:23
294:3
**number** 261:11
261:13,15
268:25 278:23
304:17 316:5
391:6 394:2
**numbering**
267:5,7
**numbers** 316:5
338:2
**nunus** 362:21

**o**

**o** 260:1 313:20
313:20
**oath** 301:6
**object** 278:6
281:1 283:13
284:12 292:11

300:6 301:22
306:22 309:15
318:3 319:18
**objection** 277:5
300:19 306:9
308:21,22
309:5 317:12
319:19 320:1
332:5
**objections**
261:18
**obligated**
301:10
**obligation**
402:14 404:10
**obviously**
263:10
**occur** 296:14
390:25
**occurred** 333:3
364:7 385:19
**ocga** 402:6,7,20
406:6
**october** 310:18
310:20 313:8
314:22 315:1
321:21 322:21
343:2 373:16
**offer** 280:6
**office** 268:7
310:2,7 316:5
316:15 324:9
324:12,14,15
333:6 340:12
349:11 388:13

397:23
**officer** 279:5
282:8 290:16
302:9 303:9
307:8 316:14
319:23 321:3
349:13 370:12
371:24 404:14
**officers** 284:17
309:6,16
375:20
**offices** 405:4,13
**oh** 267:13
354:5 361:17
362:18
**okay** 267:13
269:4,6 282:19
286:14 287:13
302:15,25
303:9 318:19
320:12,14,16
325:18 329:22
331:12 332:1
342:22 346:24
354:5 360:5
362:20
**old** 259:13
374:13 377:22
377:24
**once** 263:11
297:21 331:20
342:14 366:23
405:12
**open** 268:5,11
274:13,15,18

274:21 300:22
313:5 316:12
320:4
**operators**
382:20
**opinion** 317:18
**opportunity**
266:18 279:22
300:11
**options** 386:23
**oral** 339:12,13
339:16
**order** 257:2
309:13 344:14
344:17,19
345:3
**ordered** 345:11
**ordering** 403:2
405:17
**orders** 262:11
**ordinance**
258:1 306:7
331:5 332:7
382:17,22
383:3 385:14
397:16,21
398:7,9,10,17
399:5,6,12,13
399:15,17
400:10,12,12
400:17
**ordinances**
400:2
**organization**
391:8

**original** 346:20
405:16,19
**outcome** 404:8
**outlines** 347:14
**outside** 277:11
374:21
**overdose**
366:17 375:7
**overdosed**
375:3
**overgrown**
275:9
**oversee** 396:18
**owed** 347:17
**own** 380:16
382:7 387:11
**owner** 276:20
284:8 308:25
309:2,12 311:3
319:22 357:9
357:10 359:1
**owners** 382:20
398:2
**owns** 359:16

**p**

**p** 260:1
**p.c.** 259:12
**p.m.** 255:21
260:9 271:14
271:17 275:17
277:11 280:20
291:21 321:9
321:10,12
345:8 367:11
367:12,14

396:11,12,14
401:11,12
**padrick** 256:6
267:17 282:18
**page** 256:3
258:6 272:18
295:9,12,16,18
304:16 329:21
333:11,13,13
333:17,17,19
337:12 341:11
342:24 344:13
344:14 346:5
347:3,9,16,19
347:20 348:25
357:6 368:10
368:11,15
370:16 373:16
374:16 386:9
386:10,23
387:3,17 391:6
392:5 394:15
394:16,16,17
406:12,15,18
406:21 407:1,4
407:7,10,13,16
**pages** 266:14
329:23 341:5
342:20 346:23
389:19 392:6,7
392:20 406:9
**paid** 347:23
348:10,11
349:18,23

**paper** 296:6,8
**papers** 335:25
**paperwork**
374:9
**paragraph**
268:3 274:9
277:16 344:18
345:2,15
384:21 389:22
390:20 391:5
393:14
**paren** 268:5,7
268:11 274:13
274:14,15,17
274:18,20,21
274:23
**park** 377:7,17
377:18 378:15
378:23 379:2,3
379:7,9 380:8
**parked** 378:25
**parking** 274:13
275:10 379:1,7
379:19,21,23
380:2,3
**parks** 380:10
**parkway**
259:13
**part** 289:2
357:12,16
399:3,11,15
**particular**
379:15
**parties** 402:20
403:2 404:14

Case 1:20-cv-05233-SEG   Document 86-25   Filed 10/12/23   Page 66 of 83
30(b)(6) Tahir Shareef                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[parties - plaintiff's]**                                    Page 26

405:17
**partnership**
  356:25
**party**  402:15
  402:21 404:8
  404:11
**pass**  284:16
  371:10 399:11
  399:15
**passed**  385:16
  398:7,10 399:5
  400:11,12
**passing**  383:8
  399:13
**password**
  403:1,2
**paste**  384:22
**paths**  274:17
**patrons**  274:11
**pause**  271:15
**pay**  257:15
  310:3 335:15
  336:1,4 339:15
  343:22 344:2,6
  345:17,19
  346:1 350:3
  360:16 366:22
**payer**  355:15
**payer's**  351:4
**paying**  335:18
  335:19,22
  366:23
**pdf**  405:9
**peachtree**
  255:22 259:4,8

**people**  284:19
  289:15,18
  290:16 306:12
  306:16,20
  307:3,14 329:2
  356:18,20
  360:19,21
  361:9 366:12
  366:22 372:7
  379:18,19,25
  395:17,25
**percent**  270:9
  270:23 335:2
  339:20,21
  357:7,7,9,10
  359:1 370:15
  396:25,25
**perception**
  317:14
**perimeter**
  274:14
**period**  273:13
  279:25 305:2
  310:21 351:20
  351:24
**permitted**
  262:1 274:22
**person**  293:7
  302:16 307:9
  308:3 312:1
  314:13,20
  316:14,18,21
  322:6 325:13
  325:25 326:1
  328:15 340:12

359:12 365:21
  365:24 378:8
**personal**  339:4
**personally**
  330:11 336:24
  358:8
**persons**  316:23
**pertains**  337:18
  365:11
**pertinent**
  302:24 364:2
**phone**  278:23
  288:13,15
  289:21 292:21
  323:8
**photo**  315:6
  317:9 318:6
  324:5,20,23
  325:1,17,20
  326:10 327:2,8
  327:12,19,24
  328:2 368:12
  374:13
**photocopied**
  272:16,21
**phrase**  310:21
**pick**  267:5
**picture**  302:17
  318:4 325:12
  325:23 326:7,8
  326:12
**pictures**  316:23
**place**  309:4
  329:4 402:19

**plaintiff**  255:3
  255:8,12
  260:15 261:10
**plaintiff's**
  265:23 266:1
  266:25 267:3
  267:10 269:17
  271:19 273:12
  277:16 283:1,5
  283:12,23
  284:5,6,9,20,22
  285:1,12 292:3
  294:21 295:4,7
  295:7,9,12,16
  296:18,20,22
  302:23 304:2,4
  304:16 305:23
  307:18 309:18
  309:21 312:2,5
  312:7,8,23,25
  313:2,4,11
  314:25 316:3,9
  317:4 321:13
  321:16 322:15
  329:6,8 330:2
  333:7,9 337:12
  340:16,18,24
  342:4,6 343:7
  343:8 344:9,11
  344:13 346:6
  346:13,15
  347:3,5,10,13
  347:19 348:3
  348:14,16
  350:23,25

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 67 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[plaintiff's - problem]**                                    Page 27

352:9,11
353:24 354:2
355:2,4 358:11
358:13,22
359:23,25
360:12,14
363:21,23
364:21,23
367:15,17
375:22,24
381:3,5 384:5
387:4 389:18
391:24 394:17
395:6,8 397:5
397:8,10
398:13,15,16
398:18,18,24
399:19,21
**plaintiffs**  259:2
262:12 300:12
381:12
**plan**  387:20
**planning**
349:12
**plans**  386:11
386:11
**play**  393:19
**plea**  345:5,7
**please**  260:11
263:24 274:9
310:3 329:14
330:24 338:21
349:10 370:16
396:9 405:13
405:22 406:9,9

**pled**  304:18
345:18
**plus**  369:6
382:8
**point**  263:23
276:20 280:7
315:3 328:21
385:23 393:12
**police**  267:17
268:4 273:21
274:19 275:7
276:3,13,22
277:1,17
278:18 279:15
280:5,8,13,24
281:15,21,25
282:4,8 285:13
290:16 302:6,7
302:9 303:9
306:23,25
307:5,7,7,16
309:9,17
313:24,25
316:14 319:23
321:2,3,4
327:22 366:12
370:12 375:12
375:20 381:19
**policies**  391:9,9
391:14
**portion**  391:24
**position**  264:10
317:25
**possession**
273:8

**possible**  274:7
327:1 394:25
395:25
**post**  324:5,9
**posted**  324:8
324:19
**posting**  394:5
**potential**
274:11
**practice**  262:2
275:5 310:23
311:1
**premises**
269:13
**prepare**  285:22
289:24 305:2,8
305:14 307:20
308:10,14
369:11 387:14
395:20,22
**prepared**  280:2
287:20 307:18
395:12,14
**preparing**
304:9,21,24
**present**  259:15
261:17 274:19
299:2
**presented**
402:1
**preservation**
262:3
**preserved**
261:20

**prevent**  276:22
277:25 278:2
371:17
**prevention**
277:19,24
278:10,13,20
278:25 279:4
279:17 280:9
327:23
**previously**
264:14 301:3
389:11
**price**  387:19
**pricing**  291:11
**principles**
391:12
**print**  304:25
405:10
**printed**  346:16
346:22 388:11
**prior**  266:19
267:6 282:22
283:19 288:11
288:12 300:13
301:25 305:15
308:5 313:16
366:15
**priority**  319:16
**private**  274:18
294:4,13,15
**privilege**
261:20
**probable**  268:8
**problem**
275:10 279:11

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 68 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[problem - quantum]**                                    Page 28

330:22 331:3,6
331:7,10 332:3
356:17
**procedure**
262:2 406:6
**proceeding**
402:1,21 403:1
404:7,13
**proceedings**
271:15 295:18
402:12
**process**  340:10
**produce**  256:5
296:5 297:6
302:12
**produced**
265:18,20
268:19 269:9
271:5 272:23
281:7,13 286:1
286:7,12,17
287:15 288:2
342:21 357:2
381:11 402:22
**production**
271:6 376:6
380:21 405:23
**professional**
402:14 404:11
**program**  268:6
**prohibited**
402:19
**prohibiting**
306:7

**prohibitions**
402:8
**promise**  339:8
339:12
**promises**
339:13
**promising**
339:15
**proper**  274:20
**properly**
261:24 272:18
**properties**
356:11 359:10
**property**  274:1
274:15 275:16
277:11 279:22
280:23 282:2,7
294:6 299:5,7
306:13,20
307:4 308:20
309:14 317:21
331:24,25
335:9 351:22
351:23,25
354:12 356:6
359:20 365:5,8
365:11 370:11
371:18 373:2,7
373:8,12 377:5
378:2,23 379:1
396:18
**proposal**  256:9
285:17 289:11
289:15,18
290:20 291:2

293:22 294:21
**proposals**
289:20,24
290:12,23
291:6 292:7,16
292:21 294:21
**prospective**
268:9
**prostitution**
370:13,18,22
**protected**
403:1,2
**protection**
391:10
**protective**
256:9 262:10
292:4,24
293:14,24
294:22
**protocols**
391:15
**provide**  263:21
264:7,10 265:3
265:12 270:21
294:5 303:10
354:22 356:6,9
402:18
**provided**  269:2
269:8 270:17
286:20 292:8
303:13 304:5
357:4
**provider**
292:25

**providers**
289:24 290:13
292:8,22
**provides**  315:6
315:13,22
316:5 345:10
392:9
**providing**
394:3
**public**  391:16
407:24
**pulled**  390:16
**purpose**  328:4
**purposes**
261:25
**pursuant**
261:24 406:6
**put**  275:13
282:6 316:14
316:15 326:12
384:9,10
386:15

**q**

**qualified**
284:19
**quantum**
329:11 330:5,6
330:9,11
331:15,18
336:18 337:20
339:24 340:1,3
340:9,13
357:12,17,18
358:4

**[quarter - recollection]**    Page 29

**quarter**  268:11

**question**
261:19 263:19
263:20 264:2,4
275:24 277:6
278:22 279:8
282:11 283:14
286:9 291:4
298:3 300:7
301:9,25 302:8
308:11,12
310:22 318:17
318:20 320:3
343:25 390:7
390:15 396:16

**questioning**
396:17 401:8

**questions**
263:24 277:20
278:21 300:12
301:12 402:22
404:5

**quick**  321:5
347:6

**quite**  371:21

**quote**  277:17
311:14,16
373:17 385:23
385:24

**r**

**r**  260:1 361:25
361:25 363:2,8

**race**  315:22

**rashid**  257:7,10
350:7,9,10

351:2,9 352:15
352:19 353:16
353:19 356:19
360:3

**rates**  390:25

**ray**  363:8,8,8

**reached**  292:20
292:25

**reaching**  291:5

**read**  275:8
277:21 278:18
286:4,8 310:23
318:12 381:21
405:8 406:2

**reading**  275:1
284:11 332:10
394:20

**ready**  286:24

**real**  307:7
359:15

**really**  288:25
299:14 332:23

**reason**  264:6,9
272:13 286:11
293:19 306:12
330:17 375:21
376:23,24
378:4 379:22
406:14,17,20
406:23 407:3,6
407:9,12,15,18

**reasonable**
261:17

**reasons**  265:16
406:8

**recall**  268:17
276:17 292:13
293:20 294:1
297:1,4 298:6
298:8,9,10,14
303:20 304:9
304:13,21,24
307:23,24
311:10 313:10
313:12,23
314:2,7,8
317:1 319:12
322:18 323:10
323:19,23
324:3,4,7,22
325:3,4,6
326:5,9,13,18
326:19,24
327:25 328:16
328:18,20,22
328:24,25
329:1 331:3
332:22,24
336:14 339:25
343:4 359:18
364:9,16
369:24 374:2
374:24 375:11
390:2

**recalled**  301:2

**recalling**
375:13

**receipt**  256:11
283:19 295:13
347:4,11

348:11

**receive**  292:7
295:21,25
310:15 322:1
332:11 342:1
369:7 392:24

**received**
268:16 273:20
275:2,6 283:12
283:22 287:6
292:15 293:22
297:4 312:20
313:7 314:24
316:19 328:2
328:14 332:11
358:25

**receives**  402:21

**receiving**
261:17 283:5
284:5 287:9
296:4 311:10
327:7,11,19,24
343:4,15

**recess**  321:10
367:12 396:12

**recipient's**
351:8

**recognize**
266:6 302:21
329:5 361:5

**recollection**
299:10 300:16
300:24 303:4,6
303:7 319:8

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 70 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[recommend - represent]**                                    Page 30

recommend
  276:6
recommended
  276:3 277:3
record   260:9
  260:12 262:9
  262:14 265:25
  267:4 271:12
  271:13,16
  295:10 300:21
  302:16,18,20
  304:12 308:6,7
  318:16,16
  320:3 321:8,11
  328:6 346:22
  367:10,13
  396:8,10,13
  401:10 402:12
  402:13,22
  404:6
records   296:5
  297:6
reduce   282:6
reduced   404:5
refer   262:23
  263:2
reference   347:4
  347:10
referenced
  302:23 334:9
  345:5 389:10
references
  262:13
referencing
  331:10 385:20

referring
  262:12,24
  263:3 273:17
  279:13 334:25
  360:6 365:15
  387:9 395:11
reflect   265:25
reflected
  281:12 346:5
  368:8
reflecting
  358:24
reflects   359:5
regarding
  316:19
regardless
  294:22
register   383:15
regular   311:1
  327:16 330:18
regularly
  310:23
regulations
  400:16 402:5
related   270:4
  336:18 340:8
  341:19 343:7
  343:10 353:16
  353:17 362:1
  370:14,18,22
  382:11 390:17
  392:11
relates   283:11
  397:15

relating   336:23
  382:16 403:1
relation   353:18
relations
  374:20
relationship
  402:12 404:9
relative   404:7
relevant   279:25
  300:12
remember
  261:5 263:8,10
  264:13 274:5
  275:1 277:4
  287:8,23,25
  293:12 296:4
  297:13,16,25
  298:4 299:18
  301:18 303:23
  315:10 316:16
  339:21 342:2
  356:16 357:11
  366:10,13
remembered
  301:14
reminding
  360:7,10
remove   306:17
  306:23 307:5,8
  307:10
removing
  306:20 375:9
renew   349:12
  349:14,19

reopen   265:17
reopened   267:7
reopening
  264:20
repay   339:8
repeat   283:14
  308:11,11
  343:25 388:19
repeated   382:7
report   299:17
  304:9,21 305:1
  305:8,14
  307:21 308:10
  308:14 316:21
  361:14 371:5
  402:13
reported   268:9
  268:13 273:12
  273:25 324:20
  366:3,10
reporter
  260:12 262:9
  263:12,14
  402:1,3,7,9,23
  402:24
reporting
  365:4 386:23
  391:16 402:6
  402:18
reports   270:6,8
  316:18 369:11
repository
  403:2
represent
  268:18 304:14

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 71 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[represent - right]**                                    Page 31

314:3 323:4
325:14 342:20
347:2 385:16
**representations**
402:4
**representative**
264:23 265:2
279:20 280:13
**representatives**
331:18
**representing**
330:8,10
**request**  270:12
280:5 395:15
**requested**
292:20 405:8
**requesting**
289:18,19
297:5
**requirements**
400:19
**research**  384:7
385:1
**reserved**
401:13
**resolution**
373:25
**respective**
300:13
**respond**  318:15
323:6
**response**  283:4
322:23,25
323:5

**responsibility**
396:21,22,24
397:1 405:9
**responsible**
270:10,14
290:5 317:20
358:2,8
**responsive**
270:11
**rest**  280:22
**result**  366:18
**returned**
405:15,19
**retype**  382:5
**review**  266:19
285:22 288:6
288:25 310:17
310:23 322:3
328:1 329:13
329:25 367:23
368:1 402:1
405:9
**reviewed**
285:25 286:23
287:14 288:2,3
288:4,7 328:3
328:18
**reyna**  363:7,8,8
**richens**  259:7
260:17,17
261:21 262:6
268:24 269:2,5
271:3,8 277:5
287:6,8 288:19
300:6,19

301:22,24
306:9 308:21
309:5 317:12
319:19 320:1
321:5 329:13
329:17 332:5
343:19 346:19
346:24 347:6
350:14 361:19
367:8 405:2
**right**  262:21
265:4,9 267:12
267:22 268:1,2
272:19 275:20
275:22 276:1
279:13 280:18
280:25 282:16
282:18,23
283:20 285:9
285:14 288:1
291:8,10
292:22 293:8,9
294:19,23,24
296:1,12
300:14 301:16
303:16 306:5
306:15 310:9
310:11,12,14
311:5,17
312:12,13,24
314:14,17
315:1 316:20
316:22 317:1,3
317:6,24
318:21,25

321:25 322:6,7
322:13,17,19
332:11 333:19
339:22 340:4
340:14,24
341:1,6,12,17
342:10,18
343:3,11,14
344:5,23,24
346:3,4,7,9,12
347:18,24
348:1,2,5,6,9
348:13,21
349:6,9,16
350:4 351:7,11
351:12,13,16
351:17 352:8
352:20,22
353:3 355:9,14
355:17 358:6
359:4,6 365:2
365:5,8,12
368:10,13
369:5,8,9,13,14
369:22,23
371:8,13,15,19
373:3,14,23
374:9 375:15
375:16 382:21
383:4,4,9
384:3,3,16,23
385:17 386:19
388:2,4,4
394:12 395:3
396:2,7 397:17

30(b)(6) Tahir Shareef                                        May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[right - see]**                                                    Page 32

398:3,21
**rights**  391:13
**rockdale**  310:2
  310:6 314:19
**role**  387:5
  393:19
**room**  299:15
  300:22,23
  301:4,19 302:4
  302:7 303:18
  320:5 356:7
  365:22,25
  366:4,22
  369:24 370:5
  370:22 371:2
  373:19 374:1
  374:20 375:15
  375:15 394:18
**rooms**  366:21
  375:10,15,16
  375:16,18
  394:22
**root**  387:10
**roswell**  405:24
**rotating**  274:19
**row**  304:17
**rule**  406:6
**rules**  262:1
  263:7 402:5
  406:6
**runaway**
  273:14,25
**running**  337:25
**russell**  259:8

**s**

**s**  260:1 304:17
  338:22 361:23
  362:21 363:2
**saad**  353:15,15
  353:19
**saad4649**  257:8
  353:10
**sab**  334:15
**sabharwal**
  257:12 334:16
  334:17 335:12
  335:22 336:4
  337:8,21 340:6
  357:1 358:14
  358:25 359:14
  360:3
**sabharwal's**
  338:6 339:19
**safe**  391:15
**safety**  274:10
  274:11 386:4
**sake**  358:20
**sale**  387:19
**sales**  256:14
**sam**  363:3
**sat**  305:7
**saved**  385:7,12
  388:7
**saw**  347:25
**saying**  270:24
  273:2 288:4
  289:19 303:15
  307:11 308:9
  326:17,25

328:24,25
356:14,15
372:4 377:12
382:10 399:24
**says**  266:10
  268:3 273:14
  274:9 277:17
  309:25 311:18
  312:12,16
  314:13,19
  316:2 318:10
  320:4 322:5,8
  330:20 333:18
  333:19 334:1,3
  337:12,15
  341:13 342:24
  344:17,19
  345:2,15 360:2
  361:10 365:10
  370:17 373:22
  374:17,19
  385:23 386:22
  387:4,8,18
  388:25 389:2
  390:4,23 391:5
  392:8 393:13
  393:14,19
  394:15,18
  398:2,19
  400:14
**school**  386:10
**scroll**  305:23
**seal**  405:16
**second**  273:7
  295:12,16,18

312:8,16
337:12 342:24
348:25 366:3
368:11 387:8
**section**  337:14
  337:15 393:13
  402:6
**sections**  402:7
**security**  256:9
  274:10,18,18
  274:19 275:16
  275:24 276:4
  277:3,10,14
  279:21,23
  282:1 283:6,7
  283:11 284:1,4
  284:10 285:17
  289:12,24
  290:13,16,22
  290:23 291:6
  291:13,23
  292:8,9,22
  294:4,5,13,16
  295:1 306:21
  306:24 307:2,9
  309:4,14
  317:20 327:5,7
  396:18
**see**  266:3,10,15
  266:16 267:11
  267:11,18
  268:14 272:16
  274:24 275:9
  276:8 277:21
  285:2,6 287:23

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 73 of 83
30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[see - shareef]**                                                    Page 33

| | | | |
|---|---|---|---|
| 290:15 291:2 | 376:5,21,25 | 374:12 405:16 | **served**  261:24 |
| 295:14,19 | 377:1,2,4 | 405:22 | 265:8 270:12 |
| 296:6,24 304:7 | 378:11 379:18 | **sends**  374:7 | **service**  292:8 |
| 305:20 309:12 | 379:20,25 | **sent**  282:22 | 292:25 394:19 |
| 309:23 310:2,5 | 380:8 381:8 | 289:11,17 | **services**  256:9 |
| 311:14,22 | 382:6 385:25 | 310:10,18,24 | 256:9 285:17 |
| 312:7,8,15 | 386:7,13 387:1 | 312:7,22 325:7 | 289:12 290:10 |
| 314:12 315:15 | 387:6,12 391:1 | 325:8,10,20 | 290:21 291:12 |
| 315:25 316:6 | 391:20 392:4 | 368:11 399:23 | 291:24 292:4 |
| 320:25 321:17 | 392:13 393:17 | **sentence** | 292:24 293:14 |
| 321:20 322:5 | 393:23 394:7 | 278:17 345:20 | 293:24 294:22 |
| 322:12,14,25 | 394:20 395:2 | 345:23 387:8 | 402:18 |
| 323:5,14 | 397:13,25 | 390:23 | **session**  394:10 |
| 325:12,13,24 | 398:19 | **sentencing** | **set**  332:13 |
| 326:1,2 328:5 | **seeing**  313:10 | 257:2 344:14 | 368:3 |
| 329:3,16 331:1 | 313:13 | 344:17,19 | **sets**  357:8 |
| 331:25 333:13 | **seek**  280:16 | 345:3,7,12,16 | **seven**  285:11 |
| 333:18,25 | 307:15 309:16 | 345:21 | **several**  268:10 |
| 334:6 337:16 | **seems**  276:25 | **separate** | 336:15 |
| 340:20 341:2,5 | **seen**  269:15 | 336:19,21 | **sex**  281:16,19 |
| 341:12,18 | 285:18,20 | 358:17 | 300:4,17 |
| 342:9,23 | 287:1 311:12 | **september** | 304:18 371:18 |
| 344:15 345:13 | 313:16 316:9 | 342:11 | 385:24 386:2,6 |
| 345:24 347:4,9 | 316:11 325:16 | **sergeant** | 390:24 |
| 347:20,23 | 357:1 378:24 | 257:19,21 | **sexual**  374:19 |
| 349:2,15 351:2 | 380:20 | 280:11,12 | 391:11 |
| 352:15,21 | **seg**  255:14 | 324:24 325:5 | **sgrlaw.com** |
| 355:10 357:6 | **send**  289:13,14 | 367:20 368:12 | 405:2 |
| 358:15 360:4 | 289:19 318:17 | 369:4,7,11 | **share**  357:13 |
| 360:17 363:24 | 324:23 360:8 | 374:14 375:3 | 381:22 |
| 364:3 366:5 | 360:10 361:13 | 376:6,11 | **shared**  396:24 |
| 368:2,17,20,25 | 361:15 365:6 | **series**  308:16 | **shareef**  255:19 |
| 370:8,19 | 366:10,12 | 381:13 | 256:12,21 |
| 371:24 373:20 | 369:6 370:7 | **serve**  404:13 | 257:5,8,13,16 |
| 374:22 375:4 | 371:5,16,20 | | 257:17,19,24 |

258:2 260:4
261:1,5 262:18
264:7,13 265:6
266:1,3,14,18
267:9 268:16
268:25 269:20
271:19 275:2
276:19 279:23
284:25 286:8
286:25 289:7
293:8 295:6,9
296:9,21 298:1
298:5 300:10
302:3 304:7,15
307:12 309:1
310:22 313:5
316:8 317:15
319:14 321:15
321:18 322:20
323:4 328:21
329:8,21 333:4
333:10 338:5
343:6,16
344:12 347:2
348:20 350:7
351:1 352:13
353:20 355:5
356:24 358:23
360:2 363:24
367:17 374:12
380:18 381:5
384:6,12 386:9
387:15 391:22
392:16 395:8
396:16 398:6

398:23,25
401:5 405:3
**shareholder**
334:4,8 338:4
**shareholders**
334:13
**shares** 340:5
**sharing** 326:9
**sheet** 256:22
333:12 405:1
**sheets** 394:6,12
**sheraton** 351:9
352:1,24
354:10,20
355:13
**sheriff** 313:24
**sheriff's** 310:2
310:7
**shift** 369:12,22
373:6
**shooting**
368:17 369:24
370:3,22 371:2
**shopping**
291:13,23
292:17
**shorter** 348:18
**show** 301:4
302:17 331:8
331:11 397:4
**showing** 265:25
267:2 284:22
296:20 304:4
309:20 312:4
313:2 329:8

333:9 340:18
342:6 344:11
346:15 348:11
348:16 350:25
351:4,8 352:11
354:2 358:13
360:14 363:23
374:13 375:24
380:21 381:5
399:21
**shut** 350:2
**side** 272:17
379:11,12,13
379:14,15
**sign** 275:13
276:8 337:3
358:3 405:8
**signage** 274:20
274:22
**signature**
401:13 404:18
405:3,20
407:20
**signed** 337:9
397:22 405:12
405:15,19
**significant**
393:19
**signs** 275:11,12
276:12 386:4
393:21 394:4
394:23
**similar** 376:15
**simpler** 267:4

**simplify** 396:17
**simply** 267:5
**singh** 361:23
361:23
**single** 341:4
342:15
**sir** 267:14
268:14 284:14
301:7 315:10
338:8 340:21
354:8
**sit** 311:11
323:21 392:17
**sitting** 298:24
305:1 313:23
**six** 329:2,2
**slash** 274:16,20
345:6
**smell** 366:11
375:13,19,20
**smith** 259:8,12
260:20
**smoking**
398:11
**sole** 357:20
**solely** 372:25
402:15 404:12
**solutions**
402:11,18
**solve** 320:9
**somebody**
275:12 297:11
302:18 318:1
339:5 352:17
366:23 382:1

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 75 of 83
30(b)(6) Tahir Shareef                                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

384:11
**son**  353:19
**sorry**  315:12
  350:14 362:18
  378:18
**sort**  360:16
  379:4 391:25
  395:25
**sound**  385:17
**sounds**  303:5
**source**  280:15
  282:8 284:17
  309:7
**southeast**
  405:25
**spaced**  341:4
  342:15
**speak**  271:9
  299:8
**specific**  269:16
  271:25 300:23
  303:2,2 308:8
  375:13 402:20
**specifically**
  261:13 265:6
  266:14 276:7
  302:22 326:9
  356:5 402:5
**specifics**
  397:24
**spell**  338:21
**spending**
  372:11,17
**spends**  377:13
  377:14,19

**spent**  372:14
**spoke**  329:2
  374:21
**spoken**  289:9
**spot**  379:1,4,6
  379:9
**spotting**  386:3
**spreadsheet**
  257:15
**spreadsheets**
  256:14
**staff**  281:16,22
  320:19,22
  323:23 381:22
  392:21,24
  393:6 394:19
**stairways**
  274:16
**stairwells**
  274:14
**stake**  339:19
**stakes**  340:5
**stamp**  267:12
**stamped**
  267:10 284:23
  295:8 296:21
  304:6 309:22
  313:3 321:17
  329:9 340:20
  342:8 344:12
  346:18 348:18
  351:1 354:3
  355:5 367:18
  381:6 397:11

**stand**  313:19
  313:21 389:17
**standing**
  298:24 299:1
**stands**  305:19
  313:18 377:5
**start**  263:18
  283:24 284:2
**state**  257:4
  267:3 344:20
  344:21 345:17
  357:4 402:9
  404:2
**stated**  311:19
  404:4
**statement**
  256:22 333:13
  337:13 395:4
  406:8
**states**  255:1
  295:10
**stay**  258:1
  305:20 306:4
  316:16 371:22
  397:16,21
  400:17
**stayed**  305:24
**staying**  302:16
  322:9 328:1
**stays**  306:7
**steps**  308:18
  309:4 371:17
  391:17
**stop**  278:3
  288:19 330:21

332:3 393:15
  393:20
**story**  343:20
**straightforward**
  318:20
**street**  255:22
  259:4,8 272:4
**strickland**
  307:19 308:13
**strickler**
  256:13 296:23
  297:2
**strike**  280:6
**stuff**  291:11
**subcontractor**
  402:10,16
  404:12
**subject**  311:14
  312:11,16
  322:5 352:14
**submit**  369:15
**submitted**
  402:23,24
**subpoena**
  295:22,25
  296:4 297:5,8
  297:9 303:3
**subscribed**
  407:21
**substance**
  406:7
**sufficient**
  274:13
**suggest**  279:2

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 76 of 83
30(b)(6) Tahir Shareef                                      May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[suggested - testimony]**                                Page 36

| | | | |
|---|---|---|---|
| **suggested** 279:10 | **sure** 270:9 271:11 308:1 321:7 327:6 342:19 367:9 379:3 381:16 | 321:5 329:13 347:6 357:11 367:8 371:3 384:24 385:15 386:5 387:10 388:20 391:7 392:15 393:15 | 365:24 383:8 399:6,25 |
| **suite** 255:23 259:4,9,13 357:19 405:23 | | | **task** 268:5 392:3 |
| **suites** 255:6,10 255:15 256:5,7 257:23 260:7 262:21 267:21 268:13 269:14 270:11,18 271:21 272:5,7 273:12 280:8 289:25 295:21 295:24 296:10 299:11 300:5 300:18 306:3,6 308:17,18 309:2,23 312:20 315:18 319:10,16 328:15 331:19 334:23 344:4 344:22 347:15 349:19 350:20 351:15,20 352:6,7 353:1 353:12 380:20 396:19 | **surprised** 335:13 | | **tasked** 268:7 |
| | **surveillance** 274:20,22 | **taken** 260:6 261:23,25 303:17 391:18 404:4 | **teachers** 387:20 |
| | **suspect** 386:23 | | **tell** 262:24 263:3 271:25 276:9 279:8 297:25 302:13 318:6 320:25 321:2 325:23 325:25 326:11 326:24 327:1 381:13 386:16 390:5,5 |
| | **suspected** 319:15 | **talk** 279:2,6 298:12,17 319:6 321:1 323:15,24 334:10,10 371:20 382:22 385:24 393:12 | |
| | **suspicions** 331:9 | | |
| | **suspicious** 320:25 | | |
| | **sustainability** 349:12 | **talked** 263:6 276:13 280:11 285:21 288:10 288:21 298:13 299:4 322:20 323:15 324:25 325:2 343:19 356:23 370:12 374:13 380:18 393:4 395:20 | **telling** 301:17 |
| | **swear** 260:13 | | **tells** 347:17 |
| | **sworn** 261:2 407:21 | | **ten** 316:23 |
| | **system** 305:5 | | **terms** 402:16 404:12 |
| | **t** | | **terrible** 393:20 |
| | **t** 309:25 310:5 323:2 363:2 | | **testified** 261:3 292:19 |
| | **tahir** 255:19 260:4 261:1 330:20 398:22 405:3 | **talking** 262:20 269:16 276:11 286:6 287:4 295:23 296:2,7 298:14 324:13 326:8 328:8,12 328:22 336:17 | **testify** 280:2 |
| **sumlin** 256:8 285:5 289:6 | | | **testifying** 326:4 326:6 |
| **supplemental** 271:6 | **take** 264:3 274:9 278:3 280:4 282:25 290:20 301:18 302:4,7 306:11 306:16 308:19 | | **testimony** 262:4 264:8,11 265:11 266:22 287:20 293:10 300:15 302:1,3 393:4 406:2,7 |
| **supply** 387:11 | | | |

30(b)(6) Tahir Shareef                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[text - top]**                                                    Page 37

| | | | |
|---|---|---|---|
| **text** 257:19,20 | 305:4 307:25 | **tim** 309:22 | 262:20 263:11 |
| 281:7,13 325:8 | 309:7 311:12 | 314:24 321:21 | 263:24 264:3,8 |
| 325:10,15,17 | 319:5 320:4 | **time** 260:8 | 264:11,19 |
| 325:21 367:19 | 328:23,25 | 262:18 263:6 | 265:12,18 |
| 368:3,6 369:7 | 330:9 331:8 | 263:11 276:12 | 266:19 280:2 |
| 369:20 371:7 | 338:4,5 339:23 | 276:20 279:7 | 285:23 286:11 |
| 373:15 374:8 | 341:19 359:9 | 280:7 281:12 | 286:25 287:21 |
| 374:11 375:2 | 361:12,13 | 285:20 286:4,7 | 292:19 301:7 |
| 375:25 376:5,9 | 365:18 369:10 | 289:14,17 | 311:11 313:16 |
| 376:10,17,24 | 370:10,12 | 292:16 294:12 | 316:10 323:21 |
| 376:25 | 376:14 378:22 | 304:12 305:2 | 329:2 345:4 |
| **texted** 376:11 | 379:22 381:15 | 307:15,25 | 384:13 |
| **texts** 369:3 | 382:5,10 | 308:8 310:17 | **today's** 260:8 |
| 376:2,14,15,16 | 387:24,25 | 313:13 321:3 | 288:12,12 |
| **thank** 311:20 | 389:8 395:9 | 323:2,18 | **together** 384:9 |
| 322:10 329:19 | 397:4 398:9 | 328:21 330:23 | 384:10 386:15 |
| 329:24 401:5 | 399:18,18 | 330:24 351:18 | 390:16 |
| **thereabouts** | 400:12,18 | 351:20,24 | **told** 276:2 |
| 398:8 | **thinking** 328:9 | 355:18 357:13 | 283:2,16 |
| **thing** 302:7 | 400:7,24 | 360:25 372:10 | 303:25 308:6 |
| 320:25 336:14 | **third** 379:20 | 372:14,17 | 326:14,16,21 |
| 357:3 368:19 | **thomas** 349:1 | 377:13,16,19 | 340:2 349:13 |
| 393:21 | **thought** 340:2 | 378:9 379:4 | 369:10 378:9 |
| **things** 270:7 | 356:24 390:17 | 390:3 393:3 | **tomorrow** |
| 276:7,10 277:2 | 399:7,10 | 399:8,12 | 329:4 399:25 |
| 320:23 336:20 | **thousands** | 400:12,20 | **tony** 361:9,18 |
| 336:21 382:7 | 305:24 | 402:21 405:19 | 361:19 |
| 384:5,6 387:21 | **three** 261:16 | **times** 276:14 | **tony's** 361:23 |
| 394:3 395:25 | 276:14,25 | 277:15 297:18 | **took** 271:8 |
| **think** 264:7 | 322:20 329:23 | 297:23 307:14 | 330:9,11 338:1 |
| 271:9 283:3,8 | 375:16,16 | 331:17 | **top** 266:11 |
| 290:2 291:4 | **ticket** 331:5 | **timing** 295:2,3 | 295:19 340:23 |
| 292:24 293:1,4 | 332:7 | 301:11 389:8 | 344:19 363:16 |
| 293:5 294:8 | **tickets** 356:17 | **today** 261:10 | 370:17 374:25 |
| 297:10 301:25 | | 261:12 262:13 | 386:22 |

| | | | **u** |
|---|---|---|---|
| **topic**  279:21 383:10 | **train**  281:16,22 320:22 | **try**  276:22 278:14 307:3 308:19 371:17 | **u**  362:21,21 |
| **topics**  265:7,11 266:16,19,22 383:3,12,14,22 | **training**  391:14 392:16,17,22 393:8,10,11,11 394:4,10 | **trying**  290:10 303:6 306:11 309:11 383:24 388:10 | **uh**  267:23 268:21 269:1 269:18 276:16 276:24 278:5 282:15 283:18 294:10 298:7 311:7 314:16 315:7,9 317:22 332:15 334:5 341:3 383:6 393:24 |
| **total**  338:2 347:17,21 348:7 368:3 | **transcribing** 263:14 | **turn**  266:13 373:23 377:8 377:17,18 | |
| **totaling**  345:17 | **transcript** 402:21 404:4,6 405:9,16,19 406:2 | **twice**  331:20 | |
| **totally**  317:25 | | **two**  266:14 276:14,25 305:5 306:15 308:5 309:1 322:22 329:23 333:11 334:18 334:22 336:19 336:21 358:17 361:9 365:4,7 366:15 370:9 375:15,15 383:1 392:6,7 | **unable**  318:1 |
| **touched**  389:24 | | | **under**  262:1 301:6 345:19 404:5 |
| **tourism**  381:19 382:15,15 383:23 391:6 391:12 | **transcripts** 402:21 403:1 | | **underage**  312:1 |
| **towards**  337:13 337:14 339:3 363:16 | **transparency** 391:17 | | **underneath** 312:16 314:12 334:3 392:8 |
| **traffic**  373:18 374:1 | **travel**  391:7,11 | | **underriner** 259:12 260:19 260:19 261:22 262:7 278:6 281:1 283:13 284:12 292:11 306:22 308:22 309:15 314:10 318:3 319:18 358:17 362:17 |
| **trafficked** 386:4 | **treat**  267:6 | | |
| **trafficking** 257:22 281:17 300:4,17 304:18 381:14 383:10 385:24 386:3,6,18,24 387:11,19 389:1,4 390:24 391:9,16,18 392:1,3,10 393:16,22 394:5,23,24,25 399:4 401:3 | **trees**  274:15 | **type**  376:15 382:7 395:19 | |
| | **trespass**  374:9 | **typed**  381:25 382:1 384:6 | |
| | **trespassing** 270:6 | **typewriting** 404:5 | |
| | **trial**  279:23 300:13 341:14 342:25 | **typical**  379:9 | |
| | **tried**  305:8,14 307:13,15 | **typically** 394:19 | **undersigned** 406:2 |
| | **trimming** 274:15 | | **understand** 262:19,25 |
| | **true**  306:1 317:21 319:1 366:25 367:2 373:9 397:2 402:22 404:6 | | |

Case 1:20-cv-05233-SEG    Document 86-25    Filed 10/12/23    Page 79 of 83
30(b)(6) Tahir Shareef                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[understand - visitors]**                                    Page 39

263:4,15,21
264:19 265:1,6
265:14,16,21
266:21 268:22
269:8 272:3
277:23 278:8
278:17 279:19
279:23,25
286:15,18,21
294:25 299:19
301:6 303:7
307:6,20
309:11 311:24
314:15 315:20
330:14 341:7
347:5,13 349:7
349:20 358:7
358:10 367:19
375:6,7 378:21
381:24 386:16
394:4
**understanding**
278:9,11,12
331:22 332:2
339:16,17
342:17 343:7
346:10 349:17
350:5 364:6
371:1 393:4
398:6
**understood**
264:4 330:7
379:3
**uniform**   302:10

**united**   255:1,6
255:10,15
256:5,7 257:23
260:7 262:20
262:23 267:21
268:13 269:13
270:10,18,25
271:21 272:5,7
273:12 275:15
275:23 280:7
282:21,25
286:3 289:25
295:10,21,24
296:10 299:11
300:4,17 306:3
306:6 308:17
308:18 309:2
309:22 311:15
312:19 315:18
319:9,16
322:10,23
323:13 328:15
331:19 334:23
344:4,22
347:14 349:19
350:20 351:14
351:19 352:6,7
353:1,12
355:19,24
357:19 361:16
364:3,7,10
372:22 380:20
388:8 391:12
395:10,12,16
396:18

**unitedinn4649**
256:8,15,17,19
310:11,24
321:24 398:20
**unlawful**
274:21 275:11
**unrelated**
353:16
**update**   400:15
**upgrading**
335:8
**uploaded**   403:2
**upstairs**   377:10
**use**   256:14
339:7 385:8
387:22 391:10
406:9
**using**   309:8
**usually**   299:1
299:17 378:25

**v**

**vaguely**   366:14
**various**   268:8
**verbatim**
402:13
**veritext**   402:10
402:18 405:13
405:23
**veritext.com**
405:25
**versus**   260:6
344:21
**victims**   395:1
**video**   260:3
274:20,22

**videographer**
259:16 260:3
260:10 263:12
271:13,16
317:13 321:8
321:11 367:10
367:13 396:10
396:13 401:10
**videotaped**
255:16 256:4
266:7
**violation**   348:4
348:5
**violations**
257:4 341:9,23
342:16 343:13
346:11 347:14
347:16 371:23
372:6,9,12,20
381:17
**violence**   366:18
**violent**   308:19
**visible**   376:22
377:8 378:16
**visit**   297:18
298:2 301:15
302:23 303:2
327:15,17
383:19
**visited**   296:9
**visiting**   297:14
298:1,6,10
299:11
**visitors**   383:19

**[visits - worry]**                                              Page 40

**visits** 276:25
277:1
**volume** 255:6
277:1
**voluminous**
346:17
**vs** 255:4,9,13

**w**

**w** 395:24 396:1
**wade** 256:15,16
256:19 309:22
309:25 310:5
310:10 312:6
314:25 318:13
318:22 319:4,9
321:21 322:21
323:2,5,7,9,13
323:17 328:13
**wait** 263:20
**waiver** 256:10
295:13
**walk** 274:16
377:5 378:1,8
**walking** 377:9
377:11,21
378:14
**walks** 378:4
**want** 288:20,23
290:15 306:15
309:3 320:19
343:18,18,20
348:24 397:4
**wanted** 273:6
307:20 311:4
332:3 333:16

368:19 396:16
**watch** 392:18
392:21
**way** 291:2
325:19,21
370:25
**weber** 257:19
257:21 279:12
280:12 281:9
282:13,20
283:16,23
290:14 291:6
291:15 294:11
324:24 325:16
325:20 326:10
327:10 367:20
367:20 368:4,7
368:12 369:4,7
369:11 373:22
374:7,14,18
375:3 376:1,3
376:15,17,24
377:2,2,9,13,19
377:21,22
378:5,7,13
380:6 388:16
**website** 381:21
382:4 383:15
384:19 388:1
389:14
**websites** 382:9
384:18 390:21
**wednesday**
397:23

**week** 276:14,25
286:7,18,21
287:16 288:2,5
288:8 330:21
366:23
**weekend** 356:8
**weekly** 366:22
366:22
**weight** 315:23
**welcome** 401:6
401:9
**went** 262:9,18
340:3 349:11
364:18
**west** 255:22
259:8
**whatsoever**
264:6 317:18
**wide** 391:8
**wife** 362:3
**willing** 277:18
278:19,24
**windows**
274:16
**witness** 260:13
261:7 267:2
269:1,4,6
284:22 287:3,7
350:16 401:6,9
**witnesses**
402:24
**word** 277:23
311:24 347:4
384:23

**words** 275:23
343:12 349:21
**work** 277:18
278:19,24
279:3,7,16
280:9 281:4
327:11,18
331:15 340:12
350:10,12,19
351:21,22
354:11,13
356:13,18
360:21,25
362:23
**worked** 330:5
349:7 353:11
356:15 361:10
**workers** 380:22
395:12
**working**
280:19,22,23
282:20 283:17
283:24 284:2
284:18 290:16
309:7 327:16
351:19 352:6
354:25 355:18
355:20 356:2
356:11 372:6,7
377:1,2,13
**works** 310:6
316:13 338:23
356:5
**worry** 296:1

30(b)(6) Tahir Shareef
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites
May 2, 2023

**[wow - zero]**                                    Page 41

| | | |
|---|---|---|
| **wow** 284:10 | 355:1,1,7,11,23 | **youtube** 392:12 |
| **write** 335:25 | 356:3 357:11 | 392:18 |
| 336:2,3,4,6 | 357:11 361:20 | **z** |
| **writer** 384:20 | 365:3,6,19 | **zero** 300:15 |
| **writes** 336:1 | 367:1 368:14 | 360:2 |
| 397:20 | 370:20 371:9 | |
| **writing** 339:12 | 376:17 377:3,7 | |
| 369:21 | 377:15,17,21 | |
| **written** 356:25 | 378:3,20,22,23 | |
| 369:15 371:11 | 380:17 381:15 | |
| 384:7 393:6 | 384:23 385:11 | |
| **wrong** 358:24 | 389:3,5,12,12 | |
| 386:16 393:5 | 389:14 391:21 | |
| **wrote** 387:25 | 393:7 399:10 | |
| 390:9 | 399:10 400:8 | |
| **y** | 400:18,20 | |
| | 401:4 | |
| **y** 363:8 | **year** 268:11 | |
| **yeah** 269:15,25 | 308:5,5 331:20 | |
| 270:2 271:7 | 354:13 355:6 | |
| 272:10 278:22 | 371:22 374:13 | |
| 283:16 287:7 | 399:14 | |
| 290:8 291:14 | **years** 257:23 | |
| 293:11 298:11 | 275:15,24 | |
| 301:5,11 | 276:14 281:8 | |
| 305:25 320:24 | 301:13 305:15 | |
| 326:15,20,22 | 331:21 335:4 | |
| 331:2 332:12 | 336:15 359:7 | |
| 333:20 334:17 | 367:4 373:13 | |
| 334:19,24 | 376:12 389:20 | |
| 335:1 336:3,12 | 389:24 | |
| 336:12 338:24 | **younger** 378:7 | |
| 340:15 344:1 | **youth** 319:15 | |
| 346:21 347:7 | 386:23 | |
| 350:22 353:17 | | |
| 354:7,15,22 | | |

Veritext Legal Solutions
800.808.4958                                    770.343.9696

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.