# Exhibit 24

Ashar Islam                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

                                            Page 119

1            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
2                       ATLANTA DIVISION
3        A.G.,
                   Plaintiff,
4                                       Civil Action No.
              vs.
5                                       1:20-cv-05231-JPB
         NORTHBROOK INDUSTRIES, INC.,
6        d/b/a UNITED INN AND SUITES,       Volume II
                   Defendant.
7

8        G.W.,
                   Plaintiff,
                                        Civil Action No.
9            vs.
                                        1:20-cv-05232-JPB
10       NORTHBROOK INDUSTRIES, INC.,
         d/b/a UNITED INN AND SUITES,
11                 Defendant.
12       J.G.,
                   Plaintiff,
13                                      Civil Action No.
              vs.
14                                      1:20-cv-05233-SEG
         NORTHBROOK INDUSTRIES, INC.,
15       d/b/a UNITED INN AND SUITES,
                   Defendant.
16

17

18        CONTINUED VIDEOTAPED DEPOSITION OF ASHAR ISLAM
19               May 2, 2023 - 5:10 p.m.
20              1105 West Peachtree Street, NE
21                      Suite 1000
22

23                    Atlanta, Georgia
24

25                J. David Brown, B-1401

Case 1:20-cv-05233-SEG    Document 86-29    Filed 10/12/23    Page 3 of 28
Ashar Islam                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 120

INDEX OF EXHIBITS

EXHIBIT    DESCRIPTION                    PAGE

Exhibit 3   11/14/2017 email from Chief Sumlin
        to unitedinn4649 attaching Brown
        Protective Services Proposal for
        Security Services *              128

Exhibit 5   8/15, 8/16, and 8/17/2017 email chain
        between Mr. Shareef and Agent
        Strickler *              151

Exhibit 10  10/29/2018 email from Inv. Wade to
        unitedinn4649 attaching Ex. 9 *    133

Exhibit 28  text messages between Mr. Islam and
        Sergeant Weber *              144

Exhibit 29  human trafficking articles *      147

        * denotes previously marked

INDEX TO EXAMINATIONS

                            PAGE
By Mr. Bouchard                    124

Page 121

APPEARANCES OF COUNSEL:

On behalf of the Plaintiffs:
    DAVID H. BOUCHARD, ESQ.
    Finch McCranie LLP
    229 Peachtree Street, NE
    Suite 2500
    Atlanta, Georgia 30303
    404.658.9070

On behalf of Defendant in the J.G. case:

    DANA RICHENS, ESQ.
    Smith, Gambrell & Russell, LLP
    1105 West Peachtree Street, NE
    Suite 1000
    Atlanta, Georgia 30309
    404.815.3500

On behalf of Defendant in the A.G. and G.W. cases:
    ERIC UNDERRINER, ESQ.
    Hall Booth Smith, P.C.
    2710 Old Milton Parkway
    Suite 200
    Alpharetta, Georgia 30009
    470.386.6900

Also Present:

    BRANDON BRANTLEY, Videographer

Page 122

P R O C E E D I N G S

THE VIDEOGRAPHER: This will be the video deposition of Ashar Islam being taken in the matter of A.G. versus Northbrook Industries, Inc. d/b/a United Inn and Suites. Today's date is May 2nd, 2023. The time on the record is 5:09 p.m. My name is Brandon Brantley. I'm the videographer.

Counsel, please introduce yourselves for the record after which the court reporter will swear in the witness.

MR. BOUCHARD: Good afternoon. David Bouchard on behalf of Plaintiff A.G., G.W., and J.G.

MS. RICHENS: Dana Richens with Smith Gambrell and Russell representing Northbrook Industries, Inc. in the J.G. matter.

MR. UNDERRINER: Eric Underriner with Hall Booth Smith representing Northbrook Industries in the A.G. and G.W. matters.

ASHAR ISLAM having been first duly sworn, was examined and testified as follows:

MR. BOUCHARD: This deposition is being taken on behalf of Plaintiff A.G. in Case No.

Page 123

1:20-cv-05231. This deposition is also being cross-noticed in Case No. 1:20-cv-05232 which is G.W.'s lawsuit and in Case No. 1:20-cv-05233 which is J.G.'s lawsuit.

Counsel for the Defendants in all three cases are present after receiving reasonable notice of the deposition. All objections other than to the form of a question or to an issue of privilege are preserved. Is that agreeable?

MS. RICHENS: Yes, it is.

MR. UNDERRINER: Yes.

MR. BOUCHARD: And this deposition is taken pursuant to properly served deposition notices and cross-notices and is taken for all purposes permitted under the Federal Rules of Civil Procedure and the Georgia Civil Practice Act including, but not limited to, preservation of testimony and cross-examination. Is that agreed?

MS. RICHENS: Yes.

MR. UNDERRINER: Yes.

MR. BOUCHARD: Mr. Court Reporter, the same rule I would ask be applied to this transcript as was applied to Mr. Shareef's and to the 30(b)(6) for United Inn which is that all references to the Plaintiffs by name should be modified in the

2 (Pages 120 - 123)

Ashar Islam                                                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 124

1 transcript to only reference their initials.
2                    EXAMINATION
3 BY MR. BOUCHARD:
4    Q    Mr. Islam, nice to see you again, sir.
5    A    Yes, sir.
6    Q    I will refer, sir, to the United Inn and
7 Suites, the United Inn, the hotel at various points
8 through the deposition today.
9    A    Okay.
10   Q    Please understand, sir, unless I tell you
11 otherwise, I'm referring to the United Inn and
12 Suites at 4649 Memorial Drive.
13   A    Okay.
14   Q    Does that make sense?
15   A    Yes.
16   Q    I do not think the deposition will take
17 very long today, Mr. Islam.  I'm going to do my
18 best to be as efficient as possible.
19   A    Okay.
20   Q    I apologize for keeping you waiting since
21 3:00.
22   A    That's okay.
23   Q    Sometimes my estimates are off.  But we
24 got a lot more done with Mr. Shareef, and so there
25 will be less for you.

Page 125

1    A    Okay.
2    Q    I'm sure you remember the ground rules
3 for depositions.  There's a court reporter and a
4 videographer.  They are recording our conversation.
5    A    Uh-huh (affirmative).
6    Q    Everything you say and that I say and
7 that any of the lawyers say will be captured in a
8 record.  Do you understand that?
9    A    Yes, sir.
10   Q    Please try to wait until I am done with a
11 question before giving your answer.
12   A    Okay.
13   Q    And I promise I will try to wait to ask a
14 new question until you're done with your answer.
15 Okay?
16   A    Okay.
17   Q    If I ask a question which doesn't make
18 sense, which is certainly very likely to happen,
19 please let me know and I'll try to rephrase it.
20   A    Okay.
21   Q    If you don't understand a question for
22 any reason, just let me know.
23   A    Okay.
24   Q    If you answer a question, I'm going to
25 take that to mean that you understood it.

Page 126

1    A    Okay.
2    Q    Is there any reason you're not in a
3 deposition to provide good, complete, and accurate
4 testimony today?
5    A    I'm good.
6    Q    You're prepared to provide --
7    A    Yes.
8    Q    -- testimony?
9         And you understand, Mr. Islam, that
10 you're testifying in your individual capacity,
11 right?
12   A    Yes, sir.
13   Q    Based on your personal knowledge and
14 experiences at the hotel?
15   A    Yes.
16   Q    In your time from 2017 to 2019 at the
17 hotel, your title was manager --
18   A    Yes.
19   Q    -- is that correct?
20   A    Uh-huh (affirmative).
21   Q    Did you have any responsibilities during
22 that time period, Mr. Islam, for hiring security at
23 the hotel?
24   A    No.
25   Q    Did you have any responsibilities for

Page 127

1 firing security at the hotel?
2    A    No.
3    Q    Did you have any responsibilities for
4 seeking proposals from other security services
5 providers that might provide services at the hotel?
6    A    Yes.  If somebody come and give us some
7 kind of like a brochure or something, yeah, just
8 pass it on, yeah.
9    Q    During that time period, that is 2017 to
10 2019, do you recall considering any other security
11 services providers other than Weber or McClelland?
12   A    Not to my knowledge, yeah.
13   Q    In other words, during that time period,
14 the security at the hotel was from 10:00 p.m. to
15 2:00 a.m. by Sergeant Weber --
16   A    Weber --
17   Q    -- or McClelland?
18   A    Yes.
19   Q    Is that correct?
20   A    Yes.
21        MS. RICHENS:  I'll object to the form of
22 the question, please.
23 BY MR. BOUCHARD:
24   Q    And would Sergeant Weber and McClelland
25 work together or was it one would be there and the

3 (Pages 124 - 127)

Ashar Islam                                                           May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 128

1 other would not be there?
2    A    One at a time.
3    Q    One at a time. And they would cover the
4 entire seven-day week between the two of them?
5    A    Yes.
6    Q    Did you ever want to hire a different
7 security services company for the hotel other than
8 Sergeant Weber or McClelland?
9    A    No.
10    Q    I am showing you Plaintiff's Exhibit 3
11 which this is the first exhibit in your deposition,
12 Mr. Islam. But for the sake of efficiency and
13 simplicity, we're keeping the same numbers of
14 exhibits from Mr. Shareef's deposition. So this
15 was the third exhibit in Mr. Shareef's deposition,
16 so I'm going to call it Plaintiff's Exhibit 3.
17    A    Uh-huh (affirmative).
18    Q    And it is Bates stamped NBI 3765 through
19 NBI 3774. And it is an email from Chief Sumlin to
20 unitedinn4649@Gmail. Do you see that?
21    A    Yes, I do.
22    Q    Have you seen this email before,
23 Mr. Islam?
24    A    I don't remember.
25    Q    You do not remember?

Page 129

1    A    No.
2    Q    Do you remember seeing this proposal from
3 Brown Security Services?
4    A    I am not exactly sure about this security
5 company. But I do see some security company
6 proposals, yes.
7    Q    Is this a proposal that you had seen back
8 in 2017 when it was emailed to the hotel or ...
9    A    I don't recall.
10    Q    Do you recall ever talking with anybody
11 from this security services company, Brown Security
12 Services?
13    A    I'm not exactly sure about this one. But
14 I do, yeah, some security people come and introduce
15 their company, yes.
16    Q    Do you remember the names of any of those
17 companies, Mr. Islam?
18    A    No.
19    Q    And that would have happened sometime
20 between 2017 and 2019 do you believe?
21    A    Maybe, yeah. I'm not sure.
22    Q    And these are people just coming by and
23 dropping business cards?
24    A    Yes.
25    Q    Did you ever interview any of these

Page 130

1 people?
2    A    Yeah, I asked them, yes, what they do.
3 And they say they are private security services,
4 service company. And sometime I ask them okay,
5 what kind of like services they do. They say we
6 patrol and check if anything suspicious and they
7 can call DeKalb County and they come and solve the
8 problem. I say okay. So that's what we are doing
9 over here. So the only thing is we're not able to
10 go 24/7 outside, but we can watch the camera, and
11 whenever we see we call 911 or whatever that
12 related person is, yes.
13    Q    Why did you not move forward with any of
14 these security vendors that were dropping off their
15 cards?
16    A    I'm not sure. Because the thing is the
17 officer make the decision right away, the officers.
18 Because I don't have any experience to work with
19 those security company strictly, so that's why I
20 don't know their credibility. So myself I rely on
21 the officers that the local police, they can come
22 right away and solve the issue if we have any
23 problems.
24    Q    If I'm understanding you correctly,
25 you're saying you were comfortable calling 911 if

Page 131

1 you saw an issue as opposed to having a private
2 security company?
3    A    Yes. I can say I'm confident they can
4 come and solve the issue.
5    Q    Did you ever recommend at any point in
6 time that the hotel hire security for the other 20
7 hours per day?
8    A    I just not recommend but sometime yes.
9 But now the days, not at that time. But now the
10 days whenever we have too much like homeless people
11 around, now we really are considering to have some
12 people who can do those security things, yeah.
13    Q    So during that time period 2017 to 2019,
14 you did not recommend having private security at
15 the hotel --
16    A    No.
17    Q    -- 24 hours a day?
18    A    No.
19    Q    Was it ever your opinion during that time
20 period that there should be more security at the
21 hotel?
22    A    No. Because most of the time we solve
23 that problem with the DeKalb County. So I think
24 99 percent, so whenever we call they showed up and
25 they solve the issue.

4 (Pages 128 - 131)

Ashar Islam                                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 132

1    Q    So if I understand correctly, Plaintiff's
2 Exhibit 3 is not a proposal that you remember
3 reviewing in 2017, it appears like it is new to
4 you?
5    A    Maybe I saw that but I don't remember the
6 exact that company.  I saw a couple of proposals.
7 Some handout, some on email, yes, I do.  But I'm
8 not familiar -- I not remember this security
9 company name, yeah.
10   Q    And you are aware that there were
11 security companies that provided 24/7 --
12   A    Yes.
13   Q    -- security?
14   A    Yes.
15   Q    You saw proposals from some of those
16 companies?
17   A    Yeah.
18   Q    Why did you not select any of those?
19   A    Because we already have the DeKalb
20 County.  And as I said, that whenever we have -- we
21 are open 24/7 and we just have eyes and ears.  Some
22 of our housekeepers, some of our maintenance
23 people, some of our -- even the tenants whenever
24 they let us know, we can call and point out those
25 rooms, those issues, those problems.  Because we

Page 133

1 never close, so somebody was there at the office to
2 take care of our -- I can say convey that to the
3 DeKalb County.
4    Q    Convey that to --
5    A    Just in case if we have any issue, so
6 right away can call.
7    Q    So you're saying tenants, guests at the
8 hotel can help; is that what you're saying?
9    A    Of course, sometimes, yes, they mention
10 us.  They mention us, so we tell officers also.
11   Q    I'm handing you what was Plaintiff's
12 Exhibit 10 to Mr. Shareef's deposition.  This will
13 be Plaintiff's Exhibit 10 to your deposition as
14 well, Mr. Islam.  And it is Bates stamped NBI 3097
15 to 3098.  You see that, Mr. Islam?
16   A    Yes, I see that.
17   Q    Do you see it?
18   A    Yes.
19   Q    So that's Plaintiff's Exhibit 10.  And
20 that email is from an Investigator Tim Wade.
21   A    Uh-huh (affirmative).
22   Q    Do you see that with Rockdale County
23 Sheriff's Office?
24   A    Yes, I see.
25   Q    And it is addressed to you, is it not?

Page 134

1    A    Yes, it is.
2    Q    It says:  Ashar was advised by her
3 guardian that she was staying at United Inn located
4 at 4649 Memorial Drive.  Thank you for your help.
5        Do you see that, sir?
6    A    Yes, I do see.
7    Q    And the subject line is Missing Person,
8 right?
9    A    Uh-huh (affirmative).
10   Q    Is that correct?
11   A    The subject line is?
12   Q    The subject line says Missing Person.  Do
13 you see that?
14   A    Yes.  Sometime, yeah, parents when they
15 come, they ask -- they show us picture and they
16 show us names.  And if we have somebody with this
17 name registered, we just let them know, yes.
18   Q    Right.  I'm just asking, you see this --
19   A    I'm not exactly sure about this --
20   Q    The subject line on that --
21   A    Yeah.
22   Q    -- email --
23   A    Yeah.
24   Q    -- it reads Missing Person?
25   A    Yeah, Missing Person, yes, sir.

Page 135

1    Q    Right.  So you received that email,
2 Mr. Islam?
3    A    Yes.  According to that, yes.
4    Q    I realize as we sit here today it seems
5 like you may not remember receiving it, but are you
6 disputing that you received it?
7    A    No, I received that.  But I am not
8 remember that because it '18.  I do receive couple
9 of those emails, yes.
10   Q    As we sit here today, do you remember
11 receiving this email?
12   A    No, I don't remember.
13   Q    There's an attachment to that email,
14 correct?
15   A    Yes, sir.
16   Q    And you're holding that --
17   A    Yeah.
18   Q    -- it is part of Plaintiff's Exhibit 10.
19   A    Yeah.
20   Q    That came with the email, right --
21   A    Yes.
22   Q    -- from Investigator Wade.  You agree
23 with that?
24   A    Yes, sir.
25   Q    And the attachment is a notice of missing

5 (Pages 132 - 135)

Ashar Islam                                                      May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 136

1 person. You see that?
2    A   Uh-huh (affirmative).
3    Q   You agree?
4    A   Yes, sir.
5    Q   And the attachment has a photo on it,
6 correct?
7    A   Yes.
8    Q   And it indicates the age, race, gender,
9 height, weight of that missing person, correct?
10   A   Yes.
11   Q   And the name of --
12   A   Yes.
13   Q   -- the missing person too?
14   A   Yes.
15   Q   And you see it says J.G., age 16, 5-7?
16   A   Yeah.
17   Q   Weight, black, so on and so forth?
18   A   Uh-huh (affirmative).
19   Q   Do you remember seeing this notice?
20   A   I don't recall that. But I do see -- do
21 got those messages by email, but I'm not exactly
22 remember that specific one.
23   Q   You do not remember receiving this
24 notice?
25   A   I don't remember, yeah.

Page 137

1    Q   Again, you're not disputing that you did
2 receive it?
3    A   No, I'm not disputing it.
4    Q   You're just saying I don't --
5    A   I don't --
6    Q   -- remember receiving it?
7    A   -- remember.
8    Q   Then I assume -- but tell me if I'm
9 wrong -- I assume that you do not remember what you
10 did after receiving this; is that correct?
11   A   Maybe when I received that I just check
12 those that tenant list and -- yes. But I don't
13 remember what respond I did at that time, yeah.
14   Q   You do not remember what you did in
15 response --
16   A   Yeah.
17   Q   -- to that notice, correct?
18   A   Yeah.
19   Q   Do you remember communicating with
20 Investigator Wade?
21   A   No, I don't remember.
22   Q   Do you remember him visiting the hotel?
23   A   Not exactly that one. But there is like
24 a couple of investigator and officers come and talk
25 to me, and I tell them whatever need to be

Page 138

1 addressed, yes. But I am not exactly -- I not
2 remember that specific one, yeah.
3    Q   It seems as if he somehow knows you
4 because he refers to you personally, he says Ashar?
5    A   Yeah, maybe he come often and talk to me,
6 yes, yes.
7    Q   But you do not recall --
8    A   I don't recall, yes, sir.
9    Q   Do you remember anybody else at the
10 hotel, whether it was Mr. Shareef or somebody else,
11 talking with an Investigator Wade about J.G.?
12   A   I'm not sure.
13   Q   Mr. Islam, I take it the answer is no,
14 but did you hold a staff meeting and talk about
15 this notice that you had received?
16   A   Not exactly the staff meeting. Actually
17 whenever somebody come after my shift, I discuss
18 with them, okay, there's some things -- there's
19 somebody left that and this is behind the counter.
20 If you see anybody like that or if you see anybody
21 under this name, so there's a number underneath,
22 you can call them or let me know if you see any
23 kind of information regarding that person, yes.
24   Q   So when you finish your shift, you would
25 provide a notice like that to whoever was taking

Page 139

1 over at the front desk?
2    A   Yeah. If we have like hard copies, yes.
3 Usually we just put in the back of our office so
4 the customer don't see directly, but our office
5 staff can see those persons so they can let us
6 know, maybe the housekeepers or maintenance or
7 whoever. That's the only people who able to see
8 that picture, not the customers.
9    Q   But if I'm understanding correctly, you
10 wouldn't have a staff meeting where you call
11 everybody in and you say okay, I want everybody to
12 be aware that we just received an email from this
13 investigator in Rockdale County about a missing
14 16-year-old girl suspected to be at our hotel, here
15 is her photo, I want everybody to be looking for
16 this girl. If you see her, please immediately
17 alert me.
18   A   Yeah, basically --
19   Q   Did any meeting like that happen?
20       MR. UNDERRINER: Object to form.
21   A   No, not like meeting, meeting. But we
22 put that -- whenever we put those flyer on that
23 wall, it means does everybody have to -- they
24 already know what to do if that's what we discuss,
25 not specifically for that person, but whenever we

6 (Pages 136 - 139)

Ashar Islam                                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 140

1 got any kind of notice like that, so we put on that
2 wall so everybody knows what is -- why this is
3 there.
4     Q    Describe the wall to me.  What's hanging
5 on the wall?
6     A    Well, basically this is behind the
7 office.  So there's like where we punch our
8 timecards, so that's the wall where we have --
9 where we put all those kind of like notices or
10 anything need to be addressed to anybody -- to
11 everybody, we just put that over there so whenever
12 anybody come, any person punch a time card will see
13 those notices.  And if they have any question, they
14 talk to me or whoever is on the shift.
15    Q    How many items would you say are hanging
16 on the wall?
17    A    Mostly those missing persons paperwork
18 and sometime we have some like wanted pictures from
19 the DeKalb County or the other counties also and
20 anything what we want to tell those -- our
21 employees or like our co-workers so we can make a
22 copy of the IDs and put it there just in case
23 somebody see that person, that person damage
24 anything or that person is not allowed on this
25 property like a DNR list thing, yes.

Page 141

1     Q    So are there two or three pictures on the
2 wall or is it a wall with --
3     A    Wall with --
4     Q    -- many pictures?
5     A    Wall with I can say more than two, three,
6 four pictures.
7     Q    More than ten?
8     A    Yes.  If you talking about the driving
9 license, driving licenses, yes, more than ten,
10 yeah.
11    Q    More than 20?
12    A    Maybe 20, yeah.
13    Q    So 20 photos on the wall?
14    A    Yes, sir.  Yes, sir.  I'm talking about
15 the driving license.
16    Q    Well, I'm talking about the wall that
17 you're saying --
18    A    Yes.
19    Q    -- this photo would have been put on.
20    A    Yeah, this photo --
21    Q    There would have been about 20 or more
22 photos on that wall?
23    A    Yes.  Yes.
24    Q    And are you sure that this notice was put
25 on that wall or are you saying maybe it was because

Page 142

1 I think that's what we would have done but I'm not
2 sure?
3     A    Yeah, I'm not sure.
4     Q    You don't have a specific memory of
5 putting it on the wall?
6     A    Exactly this one, yeah.  But we put those
7 over there, yeah.
8     Q    I would have been surprised if you had a
9 specific memory of putting it on the wall.
10    A    Yeah.
11    Q    It sounds, if I'm hearing your testimony,
12 that you have gotten missing persons reports
13 before?
14    A    Yes, sir.
15    Q    Is it common in your experience for those
16 reports to concern minors or is that uncommon?
17        MR. UNDERRINER:  Object to form.
18    A    What your exact question is?
19 BY MR. BOUCHARD:
20    Q    Do the missing persons reports that you
21 have seen since you have worked at United Inn and
22 Suites typically concern minors?
23    A    Minors?
24    Q    People under the age of 18.
25    A    Sometime I suppose so, yeah.

Page 143

1     Q    Is it 50/50?  Is it more common that
2 they're adults?
3        MR. UNDERRINER:  Object to the form.
4     A    I am not exactly sure 50/50.  But there
5 are sometime the elderly person also and the kids
6 also, yes.
7 BY MR. BOUCHARD:
8     Q    They can come in all ages?
9     A    Yes.
10    Q    I didn't know --
11    A    Missing -- missing person, yes.
12    Q    I didn't know if one was more common than
13 another.  I would think for example, Mr. Shareef,
14 that a missing child might be less common than a
15 missing adult because adults have cars and means of
16 getting away and other things that kids often
17 don't.
18    A    Mostly --
19        MR. UNDERRINER:  Object to the form,
20 there's no question pending.
21    A    Mostly I can say youngsters I can say.
22 BY MR. BOUCHARD:
23    Q    Most of the missing persons reports that
24 you have seen generally concern younger people?
25    A    Younger people, yeah.

7 (Pages 140 - 143)

Ashar Islam                                                          May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 144

1    Q   Showing you Plaintiff's Exhibit 28 which
2  is Bates stamped NBI 4105 to 4110.  And Mr. Islam,
3  these are text messages I believe them to be
4  between you and Sergeant Weber.  Have you had a
5  chance to review that, sir?
6    A   That's the only message, right?
7    Q   Well, that's really I'm not even going to
8  ask you about the substance --
9    A   Yeah.
10    Q   -- of any of the messages.  My question
11  really is is that all of the messages between you
12  and Sergeant Weber from 2017 to 2019?
13    A   I'm not sure.  May be some more.  I'm not
14  exactly sure.
15    Q   Well, it looks like -- I don't have the
16  document in front of me -- but it look like three
17  or four or five text messages between you and
18  Sergeant Weber from the year 2017 to 2019; is that
19  correct?
20    A   Uh-huh (affirmative).
21    Q   Does that seem accurate to you?  Does
22  that surprise you?
23    A   No.  Maybe usually I actually call him
24  and I leave actually message or maybe I think he's
25  sleeping or maybe he get up from the job and then I

Page 145

1  message him.  Otherwise I just call him and tell
2  him whatever the problem is or if he can guide me
3  or I can call 911 and then I can talk to Weber
4  that's what happened yesterday and I call and I can
5  check whatever the situation is now, yeah.
6    Q   So would it be common for you to send
7  text messages to Sergeant McClelland?
8        MR. UNDERRINER:  Object to the form.
9    A   No.  I usually most of the time if I
10  text, I text Mr. Weber.  Rarely send messages to
11  Mr. McClelland.  I just call.
12  BY MR. BOUCHARD:
13    Q   Did you text officer McClelland?
14    A   Maybe one or two times.  I'm not exactly
15  sure.
16    Q   Generally speaking you would call them?
17    A   Call them.
18    Q   You would not text them?
19    A   Yeah.  Most of the time, yeah.
20    Q   And they would not submit written reports
21  to you of what had happened during their four-hour
22  shifts, correct?
23    A   No.  They like submit like a physical
24  report, no.
25    Q   And if they're clocking out so to speak

Page 146

1  at 2:00 a.m., you typically didn't work the
2  overnight shift --
3    A   Yeah, they let --
4    Q   -- if I understood you?
5    A   Yeah, they let the night --
6    Q   Hold on.  Sorry.  Let me --
7    A   I'm sorry.
8    Q   If I understood your testimony in
9  February, you typically didn't work the overnight
10  shift; is that correct?
11    A   I did some work nighttime also but not
12  every night.
13    Q   Was it typical for you to work the
14  10:00 p.m. to 6:00 a.m. shift from 2017 to 2019?
15    A   Yeah, in the morning, yes.
16    Q   It was typical to work 10:00 p.m. to
17  6:00 a.m.?
18    A   Yes, in the morning, morning time I work.
19  But whenever somebody don't showed up, I working
20  night also.
21    Q   And they would call you during their
22  shift or after their shift --
23    A   Yes.
24    Q   -- to report?
25    A   To report?

Page 147

1    Q   To report what they had seen at the
2  property.
3    A   Yeah.  Whenever I go back to that -- to
4  the office, so whoever working nighttime, so they
5  tell us or they tell me, yeah, what happened last
6  night and what I did.
7    Q   And I meant to ask you a few more
8  questions about the missing person report for J.G.,
9  Mr. Islam.  You said you weren't sure if you posted
10  the photo of J.G. on the wall that you were
11  describing.  Do you recall taking any steps at all
12  in response to receiving that notice?
13    A   I don't recall the specific that one.
14    Q   But there's no email that I have seen
15  where you respond to Investigator Wade.  You don't
16  recall responding to him, do you?
17        MR. UNDERRINER:  Object to form.
18    A   I'm not sure.
19  BY MR. BOUCHARD:
20    Q   If there were an email, I assume it would
21  have been produced; is that correct?
22    A   Maybe.  But I'm not sure about responding
23  to him.
24    Q   Take a look at Plaintiff's Exhibit 29
25  which is NBI 625 to 631.  Have you seen this

8 (Pages 144 - 147)

Ashar Islam                                    May 2, 2023

A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

Page 148

1 document before, Mr. Islam?
2     A    Yes, I think I read that before.  I'm not
3 exactly sure about this whole thing.  But some of
4 them I saw before, those paperwork.  Just they kind
5 of understanding what the human trafficking is and
6 what we have to do, yeah.
7     Q    Do you know where you saw it?
8     A    In the office, yeah.
9     Q    Where?
10     A    My office.
11     Q    Where in your office though?
12     A    In the back office, yeah.
13     Q    Can you describe that for me, sir, where
14 in the back office?  In a filing cabinet?  On your
15 desk?  On a computer?
16     A    A table also, in the back office on the
17 table.  Yeah.
18     Q    On a table in the back office?
19     A    Back office, uh-huh (affirmative).
20     Q    What was the purpose of the table?
21     A    It was a table so we know what is those
22 type of like awareness about anything.  Like
23 sometime our system, how we operate the system and
24 what is the new like training material, something
25 like that.

Page 149

1     Q    Can you describe the table for me,
2 Mr. Islam.  Is it a table with a stack of paper on
3 it?
4     A    Yeah, it --
5     Q    Is it a table with one document on it
6 that says about human trafficking?  What is the
7 table?
8     A    No, that's like a regular table where we
9 put all the mails and stuff and so me and the other
10 co-worker can see and read that if you have any
11 kind of like information like that.  Yeah.
12     Q    How many documents are on the table?
13     A    Some mails.
14     Q    Some bills?
15     A    Mails.  Mail, daily mail.  Daily mail in
16 one shelf and we have like table like shelf on top
17 of that.
18     Q    So it is just sort of like a cubby system
19 or shelf system?
20     A    Yeah.
21     Q    And it would be on one of the shelves, is
22 that what you're saying?
23     A    Yeah, on the shelf and maybe we have that
24 in a cabinet also, the file cabinet where we put
25 all those like training material.

Page 150

1     Q    You have not personally distributed this
2 to the staff; is that correct?
3     A    To the staff, not the whole staff, no.
4     Q    Did you play -- go ahead, sir.
5     A    Not just distributing that hard copies,
6 but we just discuss with the other co-workers like
7 this kind of things are going on so just keep an
8 eye on that.  If you see somebody like those
9 things, whatever, is I read on that training
10 material, yeah.  Training material, whatever the
11 newsletter thing sometimes, yeah.
12     Q    I don't know what you're talking about.
13 What is the newsletter thing?
14     A    Newsletter sometimes like on the news, we
15 have some like a new -- like that kind of like
16 crimes are going on in that area, so we have to
17 aware of that.  Or sometime the DeKalb County like
18 motels, they discuss with each other that this
19 group is like they are robbing people and they are
20 doing something bad, so we tell the other
21 co-workers to keep an eye on them, don't let
22 anybody do this and these are some of the IDs are
23 there, so don't check them in.
24     Q    Did you play any role in preparing this
25 document, Mr. Islam?

Page 151

1     A    No.
2     Q    Do you know where these materials came
3 from?
4     A    Maybe some training company or maybe
5 Mr. Shareef.
6     Q    I'm not asking you to speculate.  I'm
7 just asking if you know.  Do you know where they
8 came from?
9     A    No, not exactly.
10     Q    Showing you Plaintiff's Exhibit 5 which
11 is Bates stamped NBI 2554 to 2555.  It is an email
12 chain with FBI Agent K.J. Strickland.  It looks
13 like it is primarily between Mr. Shareef and Agent
14 Strickland.  But I believe it is to the United Inn
15 Gmail account and I'm not sure who may review that
16 account.  Do you and Mr. Shareef both have access
17 to the United Inn Gmail account?
18     A    Yes.
19     Q    Is it your routine practice 2017 through
20 2019 to review emails in that account?
21     A    Yes.  Yes, I do.  But sometimes I miss
22 those, yeah.
23     Q    Understood.  But was it your typical
24 practice to review emails in that account during
25 those years?

9 (Pages 148 - 151)

Ashar Islam                                                          May 2, 2023

A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

|  | Page 152 |  | Page 154 |
|---|---|---|---|
| 1 | A  Yes, sometime, yeah. | 1 | - Password-Protected Access:  Transcripts and exhibits relating to this proceeding will be |
| 2 | Q  Do you recall talking to, communicating | 2 | uploaded to a password-protected repository, to which all ordering parties will have access. |
| 3 | with, or meeting FBI Agent Strickland? | 3 | |
| 4 | A  I don't remember. | 4 | |
| 5 | Q  You said you do not remember? | 5 | |
| 6 | A  I don't remember. | 6 | |
| 7 | MR. BOUCHARD:  We can go off the record. | 7 | |
| 8 | THE VIDEOGRAPHER:  Off the record at | 8 | |
| 9 | 5:49 p.m. | 9 | |
| 10 | (Recess 5:49-5:57 p.m.) | 10 | |
| 11 | THE VIDEOGRAPHER:  Back on the record at | 11 | |
| 12 | 5:57 p.m. | 12 | |
| 13 | MR. BOUCHARD:  Mr. Islam, thank you. | 13 | |
| 14 | That concludes my questioning. | 14 | |
| 15 | THE WITNESS:  Thank you, sir. | 15 | |
| 16 | THE VIDEOGRAPHER:  Off the record at | 16 | |
| 17 | 5:57 p.m. | 17 | |
| 18 | (Deposition concluded at 6:00 p.m.) | 18 | |
| 19 | (Signature reserved) | 19 | |
| 20 | | 20 | |
| 21 | | 21 | |
| 22 | | 22 | |
| 23 | | 23 | |
| 24 | | 24 | |
| 25 | | 25 | |

|  | Page 153 |  | Page 155 |
|---|---|---|---|
| 1 | The following reporter and firm disclosures were presented by me at this proceeding for review | 1 | CERTIFICATE |
| 2 | by counsel: | 2 | STATE OF GEORGIA: COUNTY OF FULTON: |
| 3 | REPORTER DISCLOSURES | 3 | |
| 4 | The following representations and disclosures are made in compliance with Georgia Law, more | 4 | I hereby certify that the foregoing transcript was taken down to the best of my ability, as stated |
| 5 | Article 10 (B) of the Rules and Regulations of | 5 | in the caption, and the colloquies, questions and answers were reduced to typewriting under my |
| 6 | the Board of Court Reporting (disclosure forms) OCGA Section 9-11-28 (c) (disqualification of | 6 | direction; that the transcript is a true and correct record of the evidence given upon said |
| 7 | reporter for financial interest) OCGA Sections 15-14-37 (a) and (b) | 7 | proceeding. |
| 8 | (prohibitions against contracts except on a case-by-case basis). | 8 | I further certify that I am not a relative or employee or attorney of any party, nor am I |
| 9 | - I am a certified court reporter in the State of | 9 | financially interested in the outcome of this action. |
| 10 | Georgia. - I am a subcontractor for Veritext Legal | 10 | I have no relationship of interest in this matter which would disqualify me from maintaining |
| 11 | Solutions. - I have been assigned to make a complete and | 11 | my obligation of impartiality in compliance with the Code of Professional Ethics. |
| 12 | accurate record of these proceedings. - I have no relationship of interest in the matter | 12 | I have no direct contract with any party in this action and my compensation is based solely on |
| 13 | on which I am about to report which would disqualify me from making a verbatim record or | 13 | the terms of my subcontractor agreement. Nothing in the arrangements made for this |
| 14 | maintaining my obligation of impartiality in compliance with the Code of Professional Ethics. | 14 | proceeding impacts my absolute commitment to serve all parties as an impartial officer of the court. |
| 15 | - I have no direct contract with any party in this action, and my compensation is determined solely by | 15 | |
| 16 | the terms of my subcontractor agreement. FIRM DISCLOSURES | 16 | This the 12th day of May 2023. |
| 17 | - Veritext Legal Solutions was contacted to provide | 17 | |
| 18 | reporting services by the noticing or taking attorney in this matter. | 18 | |
| 19 | - There is no agreement in place that is prohibited | 19 | J. David Brown, CCR-B-1401 |
| 20 | by OCGA 15-14-37 (a) and (b).  Any case-specific discounts are automatically applied to all parties, | 20 | |
| 21 | at such time as any party receives a discount. - Transcripts:  The transcript of this proceeding | 21 | |
| 22 | as produced will be a true, correct, and complete record of the colloquies, questions, and answers as | 22 | |
| 23 | submitted by the certified court reporter. - Exhibits:  No changes will be made to the | 23 | |
| 24 | exhibits as submitted by the reporter, attorneys, or witnesses. | 24 | |
| 25 | | 25 | |

10 (Pages 152 - 155)

Ashar Islam                                                    May 2, 2023
**A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites**

Page 156

```
 1        DEPOSITION ERRATA SHEET
 2   To:  Dana Richens, Esq., drichens@sgrlaw.com
 3   Re:  Signature of Deponent:  Ashar Islam
 4   Date Errata due back at our offices: 30 Days
 5
 6   Greetings:
 7
 8   This deposition has been requested for read and
     sign by the deponent.  It is the deponent's
 9   responsibility to review the transcript, noting any
     changes or corrections on the attached PDF Errata.
10   The deponent may fill out the Errata electronically
     or print and fill out manually.
11
12
     Once the Errata is signed by the deponent and
13   notarized, please email it to the offices of
     Veritext (below).
14
15
     When the signed Errata is returned to us, we will
16   seal and forward to the taking attorney to file
     with the original transcript.  We will also send
17   copies of the Errata to all ordering parties.
18
19   If the signed Errata is not returned within the
     time above, the original transcript may be filed
20   with the court without the signature of the
     deponent.
21
22
     Please send completed Errata to:
23   Veritext Production Facility
     20 Mansell Court, Suite 300
24   Roswell, GA 30076
     (770) 343-9696
25   cs-southeast@veritext.com
```

Page 157

```
 1   ERRATA for ASSIGNMENT:  ATL 5897010
 2   I, the undersigned, do hereby certify that I have
     read the transcript of my testimony, and that:
 3
     ____ There are no changes noted.
 4
     ____ The following changes are noted:
 5
 6   Pursuant to Rule 30(7)(e) of the Federal Rules of
     Civil Procedure and/or OCGA 9-11-30(e), any changes
 7   in form or substance which you desire to make to
     your testimony shall be entered upon the deposition
 8   with a statement of the reasons given for making
     them.  To assist you in making any such
 9   corrections, please use the form below.  If
     additional pages are necessary, please furnish same
10   and attach.
11
12   Page ___ Line ___ Change _____
13   _____
14   Reason for change:
15   Page ___ Line ___ Change _____
16   _____
17   Reason for change:
18   Page ___ Line ___ Change _____
19   _____
20   Reason for change:
21   Page ___ Line ___ Change _____
22   _____
23   Reason for change:
24
25
```

Page 158

```
 1   Page ___ Line ___ Change _____
 2   _____
 3   Reason for change:
 4   Page ___ Line ___ Change _____
 5   _____
 6   Reason for change:
 7   Page ___ Line ___ Change _____
 8   _____
 9   Reason for change:
10   Page ___ Line ___ Change _____
11   _____
12   Reason for change:
13   Page ___ Line ___ Change _____
14   _____
15   Reason for change:
16   Page ___ Line ___ Change _____
17   _____
18   Reason for change:
19
20            Deponent's Signature
21   Sworn to and subscribed before me this ___ day of
22   _____, _____.
23
     _____
24   Notary Public
25   My Commission Expires:_____
```

11 (Pages 156 - 158)

Ashar Islam                                             May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[& - 99]**                                                Page 1

| & | | | |
|---|---|---|---|

**&**

**&**   121:8

**0**

**05231**   119:5
123:1
**05232**   119:9
123:2
**05233**   119:14
123:3

**1**

**10**   120:8
133:12,13,19
135:18 153:5
**10/29/2018**
120:8
**1000**   119:21
121:9
**10:00**   127:14
146:14,16
**11/14/2017**
120:4
**1105**   119:20
121:8
**124**   120:16
**128**   120:5
**12th**   155:15
**133**   120:9
**1401**   119:25
155:18
**14080**   155:18
**144**   120:10
**147**   120:11
**15-14-37**   153:7
153:20

**151**   120:7
**16**   136:15
139:14
**18**   135:8
142:24
**1:20**   119:5,9,14
123:1,2,3

**2**

**2**   119:19
**20**   131:6
141:11,12,13
141:21 156:23
**200**   121:13
**2017**   126:16
127:9 129:8,20
131:13 132:3
144:12,18
146:14 151:19
**2019**   126:16
127:10 129:20
131:13 144:12
144:18 146:14
151:20
**2023**   119:19
122:7 155:15
**229**   121:4
**24**   131:17
**24/7**   130:10
132:11,21
**2500**   121:4
**2554**   151:11
**2555**   151:11
**2710**   121:13
**28**   120:10
144:1

**29**   120:11
147:24
**2:00**   127:15
146:1
**2nd**   122:6

**3**

**3**   120:4 128:10
128:16 132:2
**30**   123:23
156:4 157:6
**300**   156:23
**30009**   121:14
**30076**   156:24
**30303**   121:5
**30309**   121:9
**3097**   133:14
**3098**   133:15
**343-9696**
156:24
**3765**   128:18
**3774**   128:19
**3:00**   124:21

**4**

**404.658.9070**
121:5
**404.815.3500**
121:10
**4105**   144:2
**4110**   144:2
**4649**   124:12
134:4
**470.386.6900**
121:14

**5**

**5**   120:6 151:10
**5-7**   136:15
**50/50**   143:1,4
**5897010**   157:1
**5:09**   122:7
**5:10**   119:19
**5:49**   152:9
**5:49-5:57**
152:10
**5:57**   152:12,17

**6**

**6**   123:23
**625**   147:25
**631**   147:25
**6:00**   146:14,17
152:18

**7**

**7**   157:6
**770**   156:24

**8**

**8/15**   120:6
**8/16**   120:6
**8/17/2017**
120:6

**9**

**9**   120:9
**9-11-28**   153:6
**9-11-30**   157:6
**911**   130:11,25
145:3
**99**   131:24

Ashar Islam                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

[a.g. - believe]                                                    Page 2

| a | | | |
|---|---|---|---|
| **a.g.** 119:3 121:11 122:5 122:13,20,25 | 128:17 133:21 134:9 136:2,18 144:20 148:19 | **apologize** 124:20 | **attorney** 153:19 155:8 156:16 |
| **a.m.** 127:15 146:1,14,17 | **afternoon** 122:12 | **appearances** 121:1 | **attorneys** 153:24 |
| **ability** 155:4 | **age** 136:8,15 142:24 | **appears** 132:3 | **automatically** 153:20 |
| **able** 130:9 139:7 | **agent** 120:7 151:12,13 152:3 | **applied** 123:22 123:23 153:20 | **aware** 132:10 139:12 150:17 |
| **above** 156:19 | **ages** 143:8 | **area** 150:16 | **awareness** 148:22 |
| **absolute** 155:13 | **agree** 135:22 136:3 | **arrangements** 155:13 | |
| **access** 151:16 154:1,2 | **agreeable** 123:9 | **article** 153:5 | b |
| **account** 151:15 151:16,17,20 151:24 | **agreed** 123:18 | **articles** 120:11 | **b** 119:6,10,15 119:25 122:5 123:23 153:5,7 153:20 155:18 |
| **accurate** 126:3 144:21 153:12 | **agreement** 153:16,19 155:12 | **ashar** 119:18 122:4,21 134:2 138:4 156:3 | **back** 129:7 139:3 147:3 148:12,14,16 148:18,19 152:11 156:4 |
| **act** 123:16 | **ahead** 150:4 | **asked** 130:2 | **bad** 150:20 |
| **action** 119:4,8 119:13 153:15 155:9,12 | **alert** 139:17 | **asking** 134:18 151:6,7 | **based** 126:13 155:12 |
| **actually** 138:16 144:23,24 | **allowed** 140:24 | **assigned** 153:11 | **basically** 139:18 140:6 |
| **additional** 157:9 | **alpharetta** 121:14 | **assignment** 157:1 | **basis** 153:8 |
| **addressed** 133:25 138:1 140:10 | **answer** 125:11 125:14,24 138:13 | **assist** 157:8 | **bates** 128:18 133:14 144:2 151:11 |
| **adult** 143:15 | **answers** 153:22 155:5 | **assume** 137:8,9 147:20 | **behalf** 121:2,6 121:11 122:13 122:25 |
| **adults** 143:2,15 | **anybody** 129:10 138:9 138:20,20 140:10,12 150:22 | **atl** 157:1 | **believe** 129:20 144:3 151:14 |
| **advised** 134:2 | | **atlanta** 119:2 119:23 121:5,9 | |
| **affirmative** 125:5 126:20 | | **attach** 157:10 | |
| | | **attached** 156:9 | |
| | | **attaching** 120:4 120:9 | |
| | | **attachment** 135:13,25 136:5 | |

Ashar Islam                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[best - contacted]**                                          Page 3

**best**   124:18
   155:4
**bills**   149:14
**black**   136:17
**board**   153:6
**booth**   121:12
   122:19
**bouchard**
   120:16 121:3
   122:12,13,24
   123:12,21
   124:3 127:23
   142:19 143:7
   143:22 145:12
   147:19 152:7
   152:13
**brandon**
   121:16 122:8
**brantley**
   121:16 122:8
**brochure**   127:7
**brown**   119:25
   120:4 129:3,11
   155:18
**business**
   129:23

**c**

**c**   122:1 153:6
**cabinet**   148:14
   149:24,24
**call**   128:16
   130:7,11
   131:24 132:24
   133:6 138:22
   139:10 144:23

   145:1,3,4,11,16
   145:17 146:21
**calling**   130:25
**camera**   130:10
**capacity**
   126:10
**caption**   155:5
**captured**   125:7
**card**   140:12
**cards**   129:23
   130:15
**care**   133:2
**cars**   143:15
**case**   121:6
   122:25 123:2,3
   133:5 140:22
   153:8,8,20
**cases**   121:11
   123:6
**ccr**   155:18
**certainly**
   125:18
**certificate**
   155:1
**certified**   153:9
   153:23
**certify**   155:4,7
   157:2
**chain**   120:6
   151:12
**chance**   144:5
**change**   157:12
   157:14,15,17
   157:18,20,21
   157:23 158:1,3

   158:4,6,7,9,10
   158:12,13,15
   158:16,18
**changes**   153:23
   156:9 157:3,4
   157:6
**check**   130:6
   137:11 145:5
   150:23
**chief**   120:4
   128:19
**child**   143:14
**civil**   119:4,8,13
   123:15,16
   157:6
**clocking**
   145:25
**close**   133:1
**code**   153:14
   155:11
**colloquies**
   153:22 155:5
**come**   127:6
   129:14 130:7
   130:21 131:4
   134:15 137:24
   138:5,17
   140:12 143:8
**comfortable**
   130:25
**coming**   129:22
**commission**
   158:25
**commitment**
   155:13

**common**
   142:15 143:1
   143:12,14
   145:6
**communicating**
   137:19 152:2
**companies**
   129:17 132:11
   132:16
**company**   128:7
   129:5,5,11,15
   130:4,19 131:2
   132:6,9 151:4
**compensation**
   153:15 155:12
**complete**   126:3
   153:11,22
**completed**
   156:22
**compliance**
   153:4,14
   155:10
**computer**
   148:15
**concern**   142:16
   142:22 143:24
**concluded**
   152:18
**concludes**
   152:14
**confident**   131:3
**considering**
   127:10 131:11
**contacted**
   153:18

Ashar Islam                                                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[continued - dnr]**                                                      Page 4

**continued**
119:18
**contract**
153:15 155:11
**contracts** 153:8
**conversation**
125:4
**convey** 133:2,4
**copies** 139:2
150:5 156:17
**copy** 140:22
**correct** 126:19
127:19 134:10
135:14 136:6,9
137:10,17
144:19 145:22
146:10 147:21
150:2 153:22
155:6
**corrections**
156:9 157:9
**correctly**
130:24 132:1
139:9
**counsel** 121:1
122:9 123:5
153:2
**counter** 138:19
**counties** 140:19
**county** 130:7
131:23 132:20
133:3,22
139:13 140:19
150:17 155:2

**couple** 132:6
135:8 137:24
**course** 133:9
**court** 119:1
122:10 123:21
125:3 153:6,9
153:23 155:14
156:20,23
**cover** 128:3
**credibility**
130:20
**crimes** 150:16
**cross** 123:2,14
123:18
**cs** 156:25
**cubby** 149:18
**customer** 139:4
**customers**
139:8
**cv** 119:5,9,14
123:1,2,3

**d**

**d** 119:6,10,15
122:1,5
**daily** 149:15,15
**damage** 140:23
**dana** 121:7
122:15 156:2
**date** 122:6
156:4
**david** 119:25
121:3 122:12
155:18
**day** 128:4
131:7,17

155:15 158:21
**days** 131:9,10
156:4
**decision** 130:17
**defendant**
119:6,11,15
121:6,11
**defendants**
123:5
**dekalb** 130:7
131:23 132:19
133:3 140:19
150:17
**denotes** 120:12
**deponent** 156:3
156:8,10,12,20
**deponent's**
156:8 158:20
**deposition**
119:18 122:4
122:24 123:1,7
123:12,13
124:8,16 126:3
128:11,14,15
133:12,13
152:18 156:1,8
157:7
**depositions**
125:3
**describe** 140:4
148:13 149:1
**describing**
147:11
**description**
120:3

**desire** 157:7
**desk** 139:1
148:15
**determined**
153:15
**different** 128:6
**direct** 153:15
155:11
**direction** 155:6
**directly** 139:4
**disclosure**
153:6
**disclosures**
153:1,3,4,17
**discount**
153:21
**discounts**
153:20
**discuss** 138:17
139:24 150:6
150:18
**disputing** 135:6
137:1,3
**disqualificati...**
153:6
**disqualify**
153:13 155:10
**distributed**
150:1
**distributing**
150:5
**district** 119:1,1
**division** 119:2
**dnr** 140:25

Case 1:20-cv-05233-SEG    Document 86-29    Filed 10/12/23    Page 17 of 28
Ashar Islam                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[document - front]**                                                **Page 5**

document
  144:16 148:1
  149:5 150:25
documents
  149:12
doing   130:8
  150:20
drichens   156:2
drive   124:12
  134:4
driving   141:8,9
  141:15
dropping
  129:23 130:14
due   156:4
duly   122:22

**e**

e   122:1,1 157:6
  157:6
ears   132:21
efficiency
  128:12
efficient   124:18
elderly   143:5
electronically
  156:10
email   120:4,6,8
  128:19,22
  132:7 133:20
  134:22 135:1
  135:11,13,20
  136:21 139:12
  147:14,20
  151:11 156:13

emailed   129:8
emails   135:9
  151:20,24
employee   155:8
employees
  140:21
entered   157:7
entire   128:4
eric   121:12
  122:18
errata   156:1,4
  156:9,10,12,15
  156:17,19,22
  157:1
esq   121:3,7,12
  156:2
estimates
  124:23
ethics   153:14
  155:11
everybody
  139:11,11,15
  139:23 140:2
  140:11
evidence   155:6
ex   120:9
exact   132:6
  142:18
exactly   129:4
  129:13 134:19
  136:21 137:23
  138:1,16 142:6
  143:4 144:14
  145:14 148:3
  151:9

examination
  123:18 124:2
examinations
  120:14
examined
  122:22
example
  143:13
except   153:8
exhibit   120:3,4
  120:6,8,10,11
  128:10,11,15
  128:16 132:2
  133:12,13,19
  135:18 144:1
  147:24 151:10
exhibits   120:1
  128:14 153:23
  153:24 154:1
experience
  130:18 142:15
experiences
  126:14
expires   158:25
eye   150:8,21
eyes   132:21

**f**

facility   156:23
familiar   132:8
fbi   151:12
  152:3
february   146:9
federal   123:15
  157:6

file   149:24
  156:16
filed   156:19
filing   148:14
fill   156:10,10
financial   153:7
financially
  155:8
finch   121:3
finish   138:24
firing   127:1
firm   153:1,17
first   122:22
  128:11
five   144:17
flyer   139:22
following   153:1
  153:4 157:4
follows   122:23
foregoing
  155:4
form   123:8
  127:21 139:20
  142:17 143:3
  143:19 145:8
  147:17 157:7,9
forms   153:6
forth   136:17
forward   130:13
  156:16
four   141:6
  144:17 145:21
front   139:1
  144:16

Ashar Islam                                                                May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[fulton - islam]**                                                        Page 6

**fulton**  155:2
**furnish**  157:9
**further**  155:7

**g**

**g**  122:1
**g.w.**  119:7
   121:11 122:13
   122:20
**g.w.'s**  123:3
**ga**  156:24
**gambrell**  121:8
   122:16
**gender**  136:8
**generally**
   143:24 145:16
**georgia**  119:1
   119:23 121:5,9
   121:14 123:16
   153:4,10 155:2
**getting**  143:16
**girl**  139:14,16
**give**  127:6
**given**  155:6
   157:8
**giving**  125:11
**gmail**  128:20
   151:15,17
**go**  130:10
   147:3 150:4
   152:7
**going**  124:17
   125:24 128:16
   144:7 150:7,16
**good**  122:12
   126:3,5

**gotten**  142:12
**greetings**  156:6
**ground**  125:2
**group**  150:19
**guardian**  134:3
**guests**  133:7
**guide**  145:2

**h**

**h**  121:3
**hall**  121:12
   122:19
**handing**  133:11
**handout**  132:7
**hanging**  140:4
   140:15
**happen**  125:18
   139:19
**happened**
   129:19 145:4
   145:21 147:5
**hard**  139:2
   150:5
**hearing**  142:11
**height**  136:9
**help**  133:8
   134:4
**hire**  128:6
   131:6
**hiring**  126:22
**hold**  138:14
   146:6
**holding**  135:16
**homeless**
   131:10

**hotel**  124:7
   126:14,17,23
   127:1,5,14
   128:7 129:8
   131:6,15,21
   133:8 137:22
   138:10 139:14
**hour**  145:21
**hours**  131:7,17
**housekeepers**
   132:22 139:6
**huh**  125:5
   126:20 128:17
   133:21 134:9
   136:2,18
   144:20 148:19
**human**  120:11
   148:5 149:6

**i**

**ids**  140:22
   150:22
**ii**  119:6
**immediately**
   139:16
**impacts**  155:13
**impartial**
   155:14
**impartiality**
   153:14 155:10
**including**
   123:17
**index**  120:1,14
**indicates**  136:8
**individual**
   126:10

**industries**
   119:5,10,14
   122:5,17,19
**information**
   138:23 149:11
**initials**  124:1
**inn**  119:6,10,15
   122:6 123:24
   124:6,7,11
   134:3 142:21
   151:14,17
**interest**  153:7
   153:12 155:9
**interested**
   155:8
**interview**
   129:25
**introduce**
   122:9 129:14
**inv**  120:8
**investigator**
   133:20 135:22
   137:20,24
   138:11 139:13
   147:15
**islam**  119:18
   120:10 122:4
   122:21 124:4
   124:17 126:9
   126:22 128:12
   128:23 129:17
   133:14,15
   135:2 138:13
   144:2 147:9
   148:1 149:2

Ashar Islam                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[islam - modified]**                                        Page 7

150:25 152:13
156:3
**issue** 123:8
130:22 131:1,4
131:25 133:5
**issues** 132:25
**items** 140:15

**j**

**j** 119:25 155:18
**j.g.** 119:12
121:6 122:14
122:17 136:15
138:11 147:8
147:10
**j.g.'s** 123:4
**job** 144:25
**jpb** 119:5,9

**k**

**k.j.** 151:12
**keep** 150:7,21
**keeping** 124:20
128:13
**kids** 143:5,16
**kind** 127:7
130:5 138:23
140:1,9 148:4
149:11 150:7
150:15
**know** 125:19
125:22 130:20
132:24 134:17
138:22 139:6
139:24 143:10
143:12 148:7

148:21 150:12
151:2,7,7
**knowledge**
126:13 127:12
**knows** 138:3
140:2

**l**

**law** 153:4
**lawsuit** 123:3,4
**lawyers** 125:7
**leave** 144:24
**left** 138:19
**legal** 153:10,18
**license** 141:9
141:15
**licenses** 141:9
**likely** 125:18
**limited** 123:17
**line** 134:7,11
134:12,20
157:12,15,18
157:21 158:1,4
158:7,10,13,16
**list** 137:12
140:25
**llp** 121:3,8
**local** 130:21
**located** 134:3
**long** 124:17
**look** 144:16
147:24
**looking** 139:15
**looks** 144:15
151:12

**lot** 124:24

**m**

**made** 153:4,23
155:13
**mail** 149:15,15
149:15
**mails** 149:9,13
149:15
**maintaining**
153:14 155:10
**maintenance**
132:22 139:6
**make** 124:14
125:17 130:17
140:21 153:11
157:7
**making** 153:13
157:8,8
**manager**
126:17
**mansell** 156:23
**manually**
156:10
**marked** 120:12
**material**
148:24 149:25
150:10,10
**materials** 151:2
**matter** 122:4
122:17 153:12
153:19 155:10
**matters** 122:20
**mcclelland**
127:11,17,24
128:8 145:7,11

145:13
**mccranie** 121:3
**mean** 125:25
**means** 139:23
143:15
**meant** 147:7
**meeting** 138:14
138:16 139:10
139:19,21,21
152:3
**memorial**
124:12 134:4
**memory** 142:4
142:9
**mention** 133:9
133:10
**message** 144:6
144:24 145:1
**messages**
120:10 136:21
144:3,10,11,17
145:7,10
**milton** 121:13
**minors** 142:16
142:22,23
**missing** 134:7
134:12,24,25
135:25 136:9
136:13 139:13
140:17 142:12
142:20 143:11
143:11,14,15
143:23 147:8
**modified**
123:25

Ashar Islam                                              May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[morning - people]**                                        Page 8

| | | | |
|---|---|---|---|
| **morning** | 122:5,16,19 | 147:4 148:8,10 | 146:14,16 |
| 146:15,18,18 | **northern** 119:1 | 148:11,12,14 | 152:9,10,12,17 |
| **motels** 150:18 | **notarized** | 148:16,18,19 | 152:18 |
| **move** 130:13 | 156:13 | **officer** 130:17 | **page** 120:3,15 |
| **n** | **notary** 158:24 | 145:13 155:14 | 157:12,15,18 |
| | **noted** 157:3,4 | **officers** 130:17 | 157:21 158:1,4 |
| **n** 122:1 | **notice** 123:7 | 130:21 133:10 | 158:7,10,13,16 |
| **name** 122:7 | 135:25 136:19 | 137:24 | **pages** 157:9 |
| 123:25 132:9 | 136:24 137:17 | **offices** 156:4,13 | **paper** 149:2 |
| 134:17 136:11 | 138:15,25 | **okay** 124:9,13 | **paperwork** |
| 138:21 | 140:1 141:24 | 124:19,22 | 140:17 148:4 |
| **names** 129:16 | 147:12 | 125:1,12,15,16 | **parents** 134:14 |
| 134:16 | **noticed** 123:2 | 125:20,23 | **parkway** |
| **nbi** 128:18,19 | **notices** 123:14 | 126:1 130:4,8 | 121:13 |
| 133:14 144:2 | 123:14 140:9 | 138:18 139:11 | **part** 135:18 |
| 147:25 151:11 | 140:13 | **old** 121:13 | **parties** 153:20 |
| **ne** 119:20 | **noticing** 153:18 | 139:14 | 154:2 155:14 |
| 121:4,8 | **noting** 156:9 | **once** 156:12 | 156:17 |
| **necessary** | **number** 138:21 | **open** 132:21 | **party** 153:15 |
| 157:9 | **numbers** | **operate** 148:23 | 153:21 155:8 |
| **need** 137:25 | 128:13 | **opinion** 131:19 | 155:11 |
| 140:10 | **o** | **opposed** 131:1 | **pass** 127:8 |
| **never** 133:1 | | **ordering** 154:2 | **password** |
| **new** 125:14 | **o** 122:1 | 156:17 | 154:1,2 |
| 132:3 148:24 | **object** 127:21 | **original** 156:16 | **patrol** 130:6 |
| 150:15 | 139:20 142:17 | 156:19 | **pdf** 156:9 |
| **news** 150:14 | 143:3,19 145:8 | **outcome** 155:8 | **peachtree** |
| **newsletter** | 147:17 | **outside** 130:10 | 119:20 121:4,8 |
| 150:11,13,14 | **objections** | **overnight** | **pending** 143:20 |
| **nice** 124:4 | 123:7 | 146:2,9 | **people** 129:14 |
| **night** 146:5,12 | **obligation** | **p** | 129:22 130:1 |
| 146:20 147:6 | 153:14 155:10 | | 131:10,12 |
| **nighttime** | **ocga** 153:6,7,20 | **p** 122:1 | 132:23 139:7 |
| 146:11 147:4 | 157:6 | **p.c.** 121:12 | 142:24 143:24 |
| **northbrook** | **office** 133:1,23 | **p.m.** 119:19 | 143:25 150:19 |
| 119:5,10,14 | 139:3,4 140:7 | 122:7 127:14 | |

Ashar Islam                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[percent - questioning]**                                    Page 9

| | | | |
|---|---|---|---|
| **percent** 131:24 | **plaintiff's** | **primarily** | **proposals** |
| **period** 126:22 | 128:10,16 | 151:13 | 127:4 129:6 |
| 127:9,13 | 132:1 133:11 | **print** 156:10 | 132:6,15 |
| 131:13,20 | 133:13,19 | **private** 130:3 | **protected** |
| **permitted** | 135:18 144:1 | 131:1,14 | 154:1,2 |
| 123:15 | 147:24 151:10 | **privilege** 123:9 | **protective** |
| **person** 130:12 | **plaintiffs** 121:2 | **problem** 130:8 | 120:5 |
| 134:7,12,24,25 | 123:25 | 131:23 145:2 | **provide** 126:3,6 |
| 136:1,9,13 | **play** 150:4,24 | **problems** | 127:5 138:25 |
| 138:23 139:25 | **please** 122:9 | 130:23 132:25 | 153:18 |
| 140:12,23,23 | 124:10 125:10 | **procedure** | **provided** |
| 140:24 143:5 | 125:19 127:22 | 123:16 157:6 | 132:11 |
| 143:11 147:8 | 139:16 156:13 | **proceeding** | **providers** |
| **personal** | 156:22 157:9,9 | 153:1,21 154:1 | 127:5,11 |
| 126:13 | **point** 131:5 | 155:7,13 | **public** 158:24 |
| **personally** | 132:24 | **proceedings** | **punch** 140:7,12 |
| 138:4 150:1 | **points** 124:7 | 153:12 | **purpose** 148:20 |
| **persons** 139:5 | **police** 130:21 | **produced** | **purposes** |
| 140:17 142:12 | **possible** 124:18 | 147:21 153:22 | 123:15 |
| 142:20 143:23 | **posted** 147:9 | **production** | **pursuant** |
| **photo** 136:5 | **practice** 123:16 | 156:23 | 123:13 157:6 |
| 139:15 141:19 | 151:19,24 | **professional** | **put** 139:3,22,22 |
| 141:20 147:10 | **prepared** 126:6 | 153:14 155:11 | 140:1,9,11,22 |
| **photos** 141:13 | **preparing** | **prohibited** | 141:19,24 |
| 141:22 | 150:24 | 153:19 | 142:6 149:9,24 |
| **physical** 145:23 | **present** 121:15 | **prohibitions** | **putting** 142:5,9 |
| **picture** 134:15 | 123:6 | 153:8 | **q** |
| 139:8 | **presented** | **promise** 125:13 | |
| **pictures** 140:18 | 153:1 | **properly** | **question** 123:8 |
| 141:1,4,6 | **preservation** | 123:13 | 125:11,14,17 |
| **place** 153:19 | 123:17 | **property** | 125:21,24 |
| **plaintiff** 119:3 | **preserved** | 140:25 147:2 | 127:22 140:13 |
| 119:8,12 | 123:9 | **proposal** 120:5 | 142:18 143:20 |
| 122:13,25 | **previously** | 129:2,7 132:2 | 144:10 |
| | 120:12 | | **questioning** |
| | | | 152:14 |

Ashar Islam                                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[questions - rules]**                                        Page 10

| | | | |
|---|---|---|---|
| **questions**  147:8 | 137:10 147:12 | 129:16 132:2,5 | **responding** |
| 153:22 155:5 | **recess**  152:10 | 132:8 135:5,8 | 147:16,22 |
| **r** | **recommend** | 135:10,12 | **response** |
| **r**  122:1 | 131:5,8,14 | 136:19,22,23 | 137:15 147:12 |
| **race**  136:8 | **record**  122:7 | 136:25 137:6,7 | **responsibilities** |
| **rarely**  145:10 | 122:10 125:8 | 137:9,13,14,19 | 126:21,25 |
| **read**  148:2 | 152:7,8,11,16 | 137:21,22 | 127:3 |
| 149:10 150:9 | 153:12,13,22 | 138:2,9 152:4 | **responsibility** |
| 156:8 157:2 | 155:6 | 152:5,6 | 156:9 |
| **reads**  134:24 | **recording** | **rephrase** | **returned** |
| **realize**  135:4 | 125:4 | 125:19 | 156:15,19 |
| **really**  131:11 | **reduced**  155:5 | **report**  145:24 | **review**  144:5 |
| 144:7,11 | **refer**  124:6 | 146:24,25 | 151:15,20,24 |
| **reason**  125:22 | **reference**  124:1 | 147:1,8 153:13 | 153:1 156:9 |
| 126:2 157:14 | **references** | **reporter** | **reviewing** |
| 157:17,20,23 | 123:24 | 122:10 123:21 | 132:3 |
| 158:3,6,9,12,15 | **referring** | 125:3 153:1,3 | **richens**  121:7 |
| 158:18 | 124:11 | 153:7,9,23,24 | 122:15,15 |
| **reasonable** | **refers**  138:4 | **reporting** | 123:10,19 |
| 123:6 | **regarding** | 153:6,18 | 127:21 156:2 |
| **reasons**  157:8 | 138:23 | **reports**  142:12 | **right**  126:11 |
| **recall**  127:10 | **registered** | 142:16,20 | 130:17,22 |
| 129:9,10 | 134:17 | 143:23 145:20 | 133:6 134:8,18 |
| 136:20 138:7,8 | **regular**  149:8 | **repository** | 135:1,20 144:6 |
| 147:11,13,16 | **regulations** | 154:2 | **robbing**  150:19 |
| 152:2 | 153:5 | **representations** | **rockdale** |
| **receive**  135:8 | **related**  130:12 | 153:4 | 133:22 139:13 |
| 137:2 | **relating**  154:1 | **representing** | **role**  150:24 |
| **received**  135:1 | **relationship** | 122:16,19 | **rooms**  132:25 |
| 135:6,7 137:11 | 153:12 155:9 | **requested** | **roswell**  156:24 |
| 138:15 139:12 | **relative**  155:7 | 156:8 | **routine**  151:19 |
| **receives**  153:21 | **rely**  130:20 | **reserved** | **rule**  123:22 |
| **receiving**  123:6 | **remember** | 152:19 | 157:6 |
| 135:5,11 | 125:2 128:24 | **respond**  137:13 | **rules**  123:15 |
| 136:23 137:6 | 128:25 129:2 | 147:15 | 125:2 153:5 |

Ashar Islam                                                     May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[rules - specific]**                                                Page 11

| | | | |
|---|---|---|---|
| 157:6 | 138:20,20,22 | **sgrlaw.com** | 134:5,25 |
| **russell** 121:8 | 139:4,5,7,16 | 156:2 | 135:15,24 |
| 122:16 | 140:12,23 | **shareef** 120:7 | 136:4 138:8 |
| | 149:10 150:8 | 124:24 138:10 | 141:14,14 |
| **s** | **seeing** 129:2 | 143:13 151:5 | 142:14 144:5 |
| **s** 122:1 | 136:19 | 151:13,16 | 148:13 150:4 |
| **sake** 128:12 | **seeking** 127:4 | **shareef's** | 152:15 |
| **saw** 131:1 | **seem** 144:21 | 123:23 128:14 | **sit** 135:4,10 |
| 132:5,6,15 | **seems** 135:4 | 128:15 133:12 | **situation** 145:5 |
| 148:4,7 | 138:3 | **sheet** 156:1 | **sleeping** 144:25 |
| **saying** 130:25 | **seen** 128:22 | **shelf** 149:16,16 | **smith** 121:8,12 |
| 133:7,8 137:4 | 129:7 142:21 | 149:19,23 | 122:15,19 |
| 141:17,25 | 143:24 147:1 | **shelves** 149:21 | **solely** 153:15 |
| 149:22 | 147:14,25 | **sheriff's** 133:23 | 155:12 |
| **says** 134:2,12 | **seg** 119:14 | **shift** 138:17,24 | **solutions** |
| 136:15 138:4 | **select** 132:18 | 140:14 146:2 | 153:11,18 |
| 149:6 | **send** 145:6,10 | 146:10,14,22 | **solve** 130:7,22 |
| **seal** 156:16 | 156:16,22 | 146:22 | 131:4,22,25 |
| **section** 153:6 | **sense** 124:14 | **shifts** 145:22 | **somebody** |
| **sections** 153:7 | 125:18 | **show** 134:15,16 | 127:6 133:1 |
| **security** 120:5 | **sergeant** | **showed** 131:24 | 134:16 138:10 |
| 126:22 127:1,4 | 120:10 127:15 | 146:19 | 138:17,19 |
| 127:10,14 | 127:24 128:8 | **showing** 128:10 | 140:23 146:19 |
| 128:7 129:3,4 | 144:4,12,18 | 144:1 151:10 | 150:8 |
| 129:5,11,11,14 | 145:7 | **sign** 156:8 | **sorry** 146:6,7 |
| 130:3,14,19 | **serve** 155:13 | **signature** | **sort** 149:18 |
| 131:2,6,12,14 | **served** 123:13 | 152:19 155:18 | **sounds** 142:11 |
| 131:20 132:8 | **service** 130:4 | 156:3,20 | **southeast** |
| 132:11,13 | **services** 120:5 | 158:20 | 156:25 |
| **see** 124:4 | 120:5 127:4,5 | **signed** 156:12 | **speak** 145:25 |
| 128:20 129:5 | 127:11 128:7 | 156:15,19 | **speaking** |
| 130:11 133:15 | 129:3,11,12 | **simplicity** | 145:16 |
| 133:16,17,22 | 130:3,5 153:18 | 128:13 | **specific** 136:22 |
| 133:24 134:5,6 | **seven** 128:4 | **sir** 124:4,5,6,10 | 138:2 142:4,9 |
| 134:13,18 | | 125:9 126:12 | 147:13 153:20 |
| 136:1,15,20 | | | |

Ashar Islam                                                     May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[specifically - times]**                                      Page 12

| | | | |
|---|---|---|---|
| **specifically** | **subscribed** | 149:19 | 142:11 146:8 |
| 139:25 153:5 | 158:21 | **t** | 157:2,7 |
| **speculate** 151:6 | **substance** | **table** 148:16,17 | **text** 120:10 |
| **stack** 149:2 | 144:8 157:7 | 148:18,20,21 | 144:3,17 145:7 |
| **staff** 138:14,16 | **suite** 119:21 | 149:1,2,5,7,8 | 145:10,10,13 |
| 139:5,10 150:2 | 121:4,9,13 | 149:12,16 | 145:18 |
| 150:3,3 | 156:23 | **take** 124:16 | **thank** 134:4 |
| **stamped** | **suites** 119:6,10 | 125:25 133:2 | 152:13,15 |
| 128:18 133:14 | 119:15 122:6 | 138:13 147:24 | **thing** 130:9,16 |
| 144:2 151:11 | 124:7,12 | **taken** 122:4,25 | 140:25 148:3 |
| **state** 153:9 | 142:22 | 123:13,14 | 150:11,13 |
| 155:2 | **sumlin** 120:4 | 155:4 | **things** 131:12 |
| **stated** 155:4 | 128:19 | **talk** 137:24 | 138:18 143:16 |
| **statement** | **suppose** 142:25 | 138:5,14 | 150:7,9 |
| 157:8 | **sure** 125:2 | 140:14 145:3 | **think** 124:16 |
| **states** 119:1 | 129:4,13,21 | **talking** 129:10 | 131:23 142:1 |
| **staying** 134:3 | 130:16 134:19 | 138:11 141:8 | 143:13 144:24 |
| **steps** 147:11 | 138:12 141:24 | 141:14,16 | 148:2 |
| **street** 119:20 | 142:2,3 143:4 | 150:12 152:2 | **third** 128:15 |
| 121:4,8 | 144:13,14 | **tell** 124:10 | **three** 123:5 |
| **strickland** | 145:15 147:9 | 133:10 137:8 | 141:1,5 144:16 |
| 151:12,14 | 147:18,22 | 137:25 140:20 | **tim** 133:20 |
| 152:3 | 148:3 151:15 | 145:1 147:5,5 | **time** 122:7 |
| **strickler** 120:7 | **surprise** 144:22 | 150:20 | 126:16,22 |
| **strictly** 130:19 | **surprised** | **ten** 141:7,9 | 127:9,13 128:2 |
| **stuff** 149:9 | 142:8 | **tenant** 137:12 | 128:3 131:6,9 |
| **subcontractor** | **suspected** | **tenants** 132:23 | 131:13,19,22 |
| 153:10,16 | 139:14 | 133:7 | 137:13 140:12 |
| 155:12 | **suspicious** | **terms** 153:16 | 145:9,19 |
| **subject** 134:7 | 130:6 | 155:12 | 146:18 153:21 |
| 134:11,12,20 | **swear** 122:11 | **testified** 122:23 | 156:19 |
| **submit** 145:20 | **sworn** 122:22 | **testifying** | **timecards** |
| 145:23 | 158:21 | 126:10 | 140:8 |
| **submitted** | **system** 148:23 | **testimony** | **times** 145:14 |
| 153:23,24 | 148:23 149:18 | 123:18 126:4,8 | |

Ashar Islam                                    May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

[title - worker]                                        Page 13

| title 126:17 | **u** | 124:6,7,11 | 147:15 |
|---|---|---|---|
| today 124:8,17 | uh 125:5 | 134:3 142:21 | wait 125:10,13 |
| 126:4 135:4,10 | 126:20 128:17 | 151:14,17 | waiting 124:20 |
| today's 122:6 | 133:21 134:9 | unitedinn4649 | wall 139:23 |
| together | 136:2,18 | 120:4,9 128:20 | 140:2,4,5,8,16 |
| 127:25 | 144:20 148:19 | uploaded 154:2 | 141:2,2,3,5,13 |
| top 149:16 | uncommon | use 157:9 | 141:16,22,25 |
| trafficking | 142:16 | usually 139:3 | 142:5,9 147:10 |
| 120:11 148:5 | under 123:15 | 144:23 145:9 | want 128:6 |
| 149:6 | 138:21 142:24 | **v** | 139:11,15 |
| training 148:24 | 155:5 | various 124:7 | 140:20 |
| 149:25 150:9 | underneath | vendors 130:14 | wanted 140:18 |
| 150:10 151:4 | 138:21 | verbatim | watch 130:10 |
| transcript | underriner | 153:13 | weber 120:10 |
| 123:22 124:1 | 121:12 122:18 | veritext 153:10 | 127:11,15,16 |
| 153:21 155:4,6 | 122:18 123:11 | 153:18 156:13 | 127:24 128:8 |
| 156:9,16,19 | 123:20 139:20 | 156:23 | 144:4,12,18 |
| 157:2 | 142:17 143:3 | veritext.com | 145:3,10 |
| transcripts | 143:19 145:8 | 156:25 | week 128:4 |
| 153:21 154:1 | 147:17 | versus 122:5 | weight 136:9 |
| true 153:22 | undersigned | video 122:3 | 136:17 |
| 155:6 | 157:2 | videographer | west 119:20 |
| try 125:10,13 | understand | 121:16 122:3,8 | 121:8 |
| 125:19 | 124:10 125:8 | 125:4 152:8,11 | witness 122:11 |
| two 128:4 | 125:21 126:9 | 152:16 | 152:15 |
| 141:1,5 145:14 | 132:1 | videotaped | witnesses |
| type 148:22 | understanding | 119:18 | 153:24 |
| typewriting | 130:24 139:9 | visiting 137:22 | words 127:13 |
| 155:5 | 148:5 | volume 119:6 | work 127:25 |
| typical 146:13 | understood | vs 119:4,9,13 | 130:18 146:1,9 |
| 146:16 151:23 | 125:25 146:4,8 | **w** | 146:11,13,16 |
| typically | 151:23 | wade 120:8 | 146:18 |
| 142:22 146:1,9 | united 119:1,6 | 133:20 135:22 | worked 142:21 |
|  | 119:10,15 | 137:20 138:11 | worker 149:10 |
|  | 122:6 123:24 |  |  |

Ashar Islam                                        May 2, 2023
A.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites

**[workers - youngsters]**                              Page 14

| | |
|---|---|
| **workers**  140:21 | **youngsters** |
| 150:6,21 | 143:21 |
| **working** | |
| 146:19 147:4 | |
| **written**  145:20 | |
| **wrong**  137:9 | |
| **y** | |
| **yeah**  127:7,8,12 | |
| 129:14,21 | |
| 130:2 131:12 | |
| 132:9,17 | |
| 134:14,21,23 | |
| 134:25 135:17 | |
| 135:19 136:16 | |
| 136:25 137:13 | |
| 137:16,18 | |
| 138:2,5 139:2 | |
| 139:18 141:10 | |
| 141:12,20 | |
| 142:3,6,7,10,25 | |
| 143:25 144:9 | |
| 145:5,19,19 | |
| 146:3,5,15 | |
| 147:3,5 148:6 | |
| 148:8,12,17 | |
| 149:4,11,20,23 | |
| 150:10,11 | |
| 151:22 152:1 | |
| **year**  139:14 | |
| 144:18 | |
| **years**  151:25 | |
| **yesterday** | |
| 145:4 | |
| **younger**  143:24 | |
| 143:25 | |

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.