**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **J.G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES, INC., D/B/A UNITED INN AND SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF J.G.'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS AND MEMORANDUM IN SUPPORT**

In this reply, Plaintiff J.G. addresses several issues raised in Defendant's brief:

First, Defendant's response, in effect, concedes that sanctions are mandatory under Rule 26(g)(3) and warranted under Rule 37(c)(1). Indeed, Defendant admits that it failed to conduct a reasonable inquiry before responding to Defendant's discovery requests in violation of Rule 26(g)(1). (Doc.88 at 1, 8). Further, Defendant proffers no justification—substantial or otherwise—for its failure to run basic searches *until after the March 31, 2023 discovery deadline* of its ESI and hard-copy files for Plaintiff's name, communications about commercial sex at the hotel, sex trafficking materials, and its staffing records, among other key documents. And Defendant does not contest that Rule 26(g)(3) mandates sanctions for failure to comply with Rule 26(g)(1). (*Id.* at 8). Given the foregoing, sanctions are mandatory under Rule 26(g)(3) and warranted under Rule 37(c)(1).

Second, Defendant attempts to minimize its discovery negligence by cabining it to Defendant's "initial production" and saying it "remedied" the negligence "as soon as" it "was identified during the initial depositions of Northbrook's representatives." (Doc.88 at 1, 12). Not so. Even after Plaintiff identified during February 2023 depositions that Defendant had not collected any ESI or hard-copy documents from several relevant files (e.g., sex trafficking file, staff files, etc.) in response to Plaintiff's September 2022 requests, it still took Defendant 60 days (after

discovery closed) to remedy the problem.[1] Notably, Plaintiff sent supplemental requests on February 24, 2023, (Doc.86-6), and Defendant did ***not*** produce the responsive documents on the required deadline of March 27, 2023, or before the March 31st fact discovery deadline, (Doc.51). Instead, on March 27th, Defendant served discovery responses saying that it "will produce" certain documents. (Doc.86-9; Doc.86-10). Defendant violated Rule 26(g)(1) and (e) by failing to make a reasonable inquiry initially, failing to timely supplement later, and then (claiming) to have corrected deficiencies after discovery closed on March 31st. Fed. R. Civ. P. 26(g)(1) (duty to make reasonable inquiry before serving discovery responses); 26(e) (continuing duty to supplement discovery responses).[2] In sum, Defendant was negligent *both* in its initial discovery responses *and* in its failure to supplement its responses until after the March 31st discovery deadline.[3] *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839 at 960 (N.D.Ill. 2021)

[1] Some of the documents due in November 2022 were not produced until June 30, 2023. For example, Defendant produced a list of staff names on June 30, 2023. (Doc.86 at 9, n.6 (explaining conflicting staff lists received from Defendant); (Doc.86-32 (chart summarizing conflicting staff information from Defendant).)

[2] Defendant glosses over this failure to timely supplement, and claims it is "not readily apparent" how the supplementation rule applies. (Doc.88 at 13).

[3] Defendant says that its production in this case essentially duplicates the productions in the related cases pending before Judge Boulee. Plaintiff J.G. is not involved in the Judge Boulee cases, only this case. Defendant violated its duty in this case to make a reasonable inquiry before responding to discovery and in timely supplementing discovery.

("[S]upplements made after the close of fact discovery are by definition 'untimely.'").

Third, Defendant claims that "it has already been sanctioned by the Court," because the Court granted Plaintiff from April 1, 2023 - May 31, 2023 to conduct additional discovery. (Doc.88 at 9).[4] Because Defendant produced the documents due in November 2022 on April 20th, Plaintiff had from April 20th – May 31st to conduct all necessary discovery into the 3,500 critical pages Defendant produced from its emails, text messages, sex trafficking training materials, staffing records, and more. If Defendant had produced the late documents when they were due, then Plaintiff would have had roughly five months in the six-month discovery period to conduct discovery about them—from November 2022 – March 31, 2023. Instead, Plaintiff had roughly six weeks. Thus, Defendant's "already been sanctioned" refrain—when Defendant had five months with Plaintiff's timely documents—is nonsensical. Further, under the Rules, parties have the *right to conduct discovery*. Permitting Plaintiff an opportunity to conduct discovery into Defendant's late production was not a sanction against Defendant, it was a remedy to level the discovery playing field for Plaintiff. *See, e.g., Preferred Care Partners holding*

[4] The discovery extension was for "fact discovery necessitated by Defendant's production of documents after March 31, 2023." (Doc. 61).

*Corp. v. Humana, Inc.*, 2009 WL 982460 at *8-9 (S.D. FL April 9, 2006) (distinguishing remedy from sanction and awarding both).

Fourth, in addition to arguing that Defendant has "already been sanctioned," Defendant contends that Plaintiff "crafted" and "proposed" the sanction through the March 31st consent motion, and now improperly asks the Court to sanction Defendant "twice." (Doc.88 at 2). When Plaintiff filed her consent motion to extend discovery, (Doc.60), she did ***not*** say to this Court or to Defendant's counsel that she was seeking more discovery time in lieu of sanctions, (Doc.86-12). At that time, Plaintiff was not contemplating sanctions; she had no idea how many documents Defendant would produce in April or the significance of the forthcoming documents. For example, as late as April 14th—two weeks after the consent motion was filed—Plaintiff's undersigned counsel asked Defendant's counsel: "Are you able to give me some ballpark of the volume to be produced?" (Doc.86-16). After Plaintiff's undersigned counsel reviewed the April 20th production, and saw the volume and importance of the documents, Plaintiff's counsel began to understand the scale of Defendant's discovery negligence and how it prejudiced Plaintiff. At that point, Plaintiff's counsel understood that this is not a case where there were a few late-disclosed documents of questionable relevance that were inadvertently overlooked. On a May 9th call (19 days after receiving the April 20th production),

Plaintiff's counsel told Defendant's counsel that Plaintiff was going to initiate the discovery dispute process with the court to raise sanctions.

Fifth, Defendant repeatedly contends Plaintiff has suffered "no prejudice," (Doc.88 at 2, 11, 13, 16), yet does not address *any* of the ways Plaintiff has been prejudiced as detailed in Plaintiff's brief, (Doc.86 at 15-16, 21-23). Indeed, Defendant does not respond to Plaintiff's explanation that she has been prejudiced because she is unable to trust Defendant's discovery representations, she wasted time and resources, suffered investigative harm, and will suffer evidentiary harm. (*Id.*). While Plaintiff has been prejudiced, Defendant concedes that Rule 26(g)(3) does not require prejudice to impose sanctions. (Doc.88 at 10).

Instead of addressing the prejudice Plaintiff identifies in her brief, Defendant argues that Plaintiff's motion for sanctions is an improper attempt to leverage settlement. (Doc.88 at 14). In the Joint Preliminary Report and Discovery Plan, "lead counsel" for Plaintiff and Defendant reported that there is a "[a] possibility of settlement after discovery." (Doc.19 at 16). In discovery, the Parties have participated in settlement discussions—Plaintiff has sent multiple demands to settle the case *and Defendant has made multiple offers to settle the case to Plaintiff*. Plaintiff's undersigned counsel has never called Defendant's counsel to "ask[] whether the case is going to settle." (Doc.88 at 6). Instead, after receiving

Defendant's late production on April 20th, Plaintiff served an updated settlement demand on May 4th—which was one link in a chain of settlement discussions between the parties to date. Indeed, Defendant responded to the May 4th demand with a settlement offer on June 5th. The May 4th demand highlighted some of the critical documents Defendant produced on April 20th, including emails showing Defendant knew Plaintiff was at the hotel for weeks as a "missing" 16-year-old, and documents that conflicted with Defendant's prior discovery representations.[5] After sending the May 4th demand, Plaintiff's undersigned counsel exercised a professional courtesy: he called Defendant's counsel on May 9th to discuss the May 4th demand, as well as other matters in the case, including discovery going forward, and Plaintiff's plans to seek sanctions from the Court. In a May 19th email following up on that call, Plaintiff's counsel said, in part:

> While I'm not sure if we'll be able to work out JG's case, I hope we can continue to have an open dialogue about our clients' positions going

---

[5] Defendant says its owner and manager testified accurately that they did not know Plaintiff was at the hotel. (Doc.88 at 11, n.3). But Defendant's owner was a 30(b)(6) witness for Defendant, and Defendant has admitted that Defendant received the law enforcement emails identifying Plaintiff as a missing 16-year-old at the hotel.

Defendant does not address the other inconsistencies between Defendant's initial discovery responses and its discovery responses after the discovery deadline, including those about hotel staff, whether the hotel had training materials on sex trafficking, and whether the hotel had written communications with law enforcement. (Doc.86 at 10-12).

> forward… Of course, JG must continue to prosecute her claims while the parties may explore possible resolution. (Doc.86 at 18).

The parties can walk and chew gum—*i.e.*, the parties can (and should, as appropriate) discuss the possibility of settlement, which is in the interests of judicial efficiency and economy, while zealously advocating for their clients and preparing for trial.

Sixth, Defendant suggests Plaintiff promised not to seek court intervention if Defendant produced all responsive documents by April 21st and has now broken its promise by seeking sanctions.[6] After Defendant blew the March 28th deadline to produce documents first requested in September 2022 and then again in February 2023, Plaintiff's counsel advised Defendant's counsel that Plaintiff would seek court intervention (*i.e.*, via a motion to compel) if Defendant did not promptly produce the requested documents. Plaintiff agreed not to pursue such relief if Defendant produced the documents by April 21st. When Plaintiff received the April 20th production and saw the large volume of key documents produced late because of discovery negligence, Plaintiff's counsel raised his intention to seek sanctions. A

[6] Notably, Defendant did not produce all responsive documents by April 21st. For example, Defendant produced a list of staff names on June 30, 2023. (Doc.86 at 9, n.6 (explaining conflicting lists of staff received from Defendant); (Doc.86-32 (chart summarizing conflicting staff information from Defendant).)

motion for sanctions is, of course, separate from a motion to compel, and serves a different purpose. Plaintiff never promised not to seek sanctions.

Seventh, Defendant challenges Plaintiff's attorneys' fees because most of the fees arise from the costs of litigating the sanctions issues. Defendant cites no precedent for the principle that the costs of litigating sanctions should not be part of a reasonable attorneys' fees calculation. Caselaw shows otherwise. *See, e.g., In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F. supp2d at 1353, 1358-59 (N.D. Ga. Feb. 3, 2012) (imposing sanctions, which included attorneys' fees "related to [the sanctions] motion [and] the extended discovery period"); *see also City of Mountain Park, Georgia v. Lakeside at Ansley, LLC*, 2008 WL 11334069 (N.D. Ga. March 19, 2008) (awarding attorney's fees and costs incurred in bringing motion for sanctions); *Preferred Care Partners holding Corp.*, 2009 WL 982460 at *8-9 (same).[7] If Defendant's argument were valid, then aggrieved parties would rarely litigate sanctionable conduct because it would be too costly, and sanctionable conduct would increase. Briefing the sanctions issues only became necessary

---

[7] Defendant relies on *FactorTrust, Inc. v. Evanston Ins. Co.*, but that case is distinguishable. (Doc.88 at 9). Civil Action No. 1:16-CV-02711-LMM, 2018 WL 11350386, at *4 (N.D. Ga. Apr. 9, 2018). There, the Plaintiff asked the Court to enter a default judgment (which the court called "the most severe sanction"), had not complied with the Court's discovery dispute process, and did not raise Defendant's discovery noncompliance until after discovery closed. None of those circumstances apply here.

because Defendant was unwilling to agree to any of Plaintiff's requested sanctions despite conceding its noncompliance with the discovery rules.

Plaintiff's undersigned counsel understood the Court to say in the May 26th discovery dispute hearing that the Court takes sanctions seriously and expects a party requesting sanctions to submit a detailed and well-supported brief. That is what Plaintiff's undersigned counsel endeavored to prepare and submit.[8]

Eighth, Defendant implies that Plaintiff improperly delayed filing the motion for sanctions for "four months." (Doc.88 at 7). That is incorrect. In fact, Plaintiff served discovery requests on Defendant and subpoenas to third parties up to and including May 31, 2023 (Doc.73, 74), and did not receive responses from Defendant until June 26th (Doc.78) and June 30th (Doc.79) and from some third parties until July. Several of the requests and responses overlapped with issues raised in the motion for sanctions. It took Plaintiff's counsel time to review the June and July responses, and then to confer with Defendant's counsel about issues and questions

---

[8] Defendant calls the fees "unreasonable," but does not say why. Is 35 hours of attorney time on a 25-page brief with 28 exhibits unreasonable? Is 5.5 hours to prepare the discovery dispute statement, prepare for the May 26th telephonic conference, and participate in the same conference unreasonable? Additionally, Defendant implies that Plaintiff would request the same fees in AG's and GW's matters. That is not true; the related discovery dispute in those cases will be mediated by Magistrate Walker. If that mediation is unsuccessful, then Plaintiff's counsel will prepare a motion for sanctions that draws in large part on Plaintiff JG's motion and will not duplicate the attorneys' fees incurred in this case on that motion.

pertaining to Defendant's responses. For example, on July 26th, Plaintiff's counsel wrote:

> My understanding of United Inn's discovery responses served on June 26th and June 30th was that United Inn would be producing additional documents. For example, United Inn responded on June 26th to Plaintiff's Second Supplemental RFPs by saying it "will produce" numerous categories of documents. I cannot tell whether United Inn has produced all documents responsive to the requests that United Inn responded to on June 26th and June 30th. Please let me know if there are any more documents coming relating to the responses United Inn served on June 26th and June 30th. Thanks.

(Exhibit 1).

That email prompted a series of back-and-forth communications through September 6, 2023, largely because of a trial Defendant's counsel had during that period in San Francisco. (*Id.*). In short, it was not until September 6, 2023 that Plaintiff's counsel received information from Defendant's counsel about certain documents requested in May 2023 that relate to the instant sanctions briefing. For example, on May 12th, Plaintiff requested missing minor notices, as the Court will recall from the recent discovery dispute conference about the same. In July, Plaintiff's counsel emailed Defendant's counsel about certain materials Defendant produced in June that appeared to show notices that had not been produced. (*Id.*) Plaintiff's counsel asked why the notices had not been produced and circled one of the notices that had not been produced as an example. (*Id.*) The unproduced notice related to issues in Plaintiff's sanctions briefing because it appeared to be relevant

and responsive to numerous discovery requests made in September 2022, February 2023, and May 2023, including communications with law enforcement, missing minor notices, and information relating to minor sex trafficking. In sum, Plaintiff did not delay filing her motion for sanctions for four months for an improper purpose. Instead, she waited until Defendant had purported to provide complete discovery responses. Plaintiff could not accurately assess the scale and magnitude of Defendant's negligence and the prejudice she suffered as a result in her motion for sanctions before then.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for sanctions and impose the sanctions requested by Plaintiff.

This 9th day of November, 2023.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing **Plaintiff J.G.'s Reply in Support of Motion for Sanctions and Memorandum in Support** has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing ***Plaintiff J.G.'s Reply in Support of Motion for Sanctions and Memorandum in Support*** into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 9th day of November, 2023.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000

Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*