IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No. 1:20-cv-05233-SEG |
| | ) | |
| NORTHBROOK INDUSTRIES, INC., | ) | |
| d/b/a UNITED INN AND SUITES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DARRELL B. CHANEYFIELD**

This Memorandum of Law is submitted by Defendant Northbrook Industries, Inc., d/b/a United Inn & Suites ("Northbrook"), in support of its motion to exclude from the trial of this case the testimony of Plaintiff's purported expert Darrell B. Chaneyfield.

This is a hotel sex-trafficking case. The plaintiff, proceeding under the initials "J.G." to protect her identity ("Plaintiff"), alleges that as a minor she was trafficked for sex at the United Inn and Suites ("United Inn"), an independent hotel owned and operated by Northbrook, in late 2018 and early 2019.

Plaintiff has disclosed that she intends to call Darrell B. Chaneyfield as an expert witness at trial. Mr. Chaneyfield is presently the director of global threat management for InterContinental Hotels Group ("IHG").

In his expert report, tendered pursuant to Fed. R. Civ. P. 26(a)(2)(B), Mr. Chaneyfield sets forth four opinions that he proposes to offer at trial. The opinions reside at the intersection of sex trafficking and hotel security and cover a wide range of specific topics – everything from the availability of anti-trafficking materials and training in the relevant time period (2017 to 2019), to hospitality industry standards for combatting sex trafficking, to whether the underlying criminal conduct by Plaintiff's traffickers could have been avoided.

As demonstrated herein, Mr. Chaneyfield should be precluded from testifying at trial. First, he lacks the qualifications – knowledge, skill, experience, training and education – required by Federal Rule of Evidence 702 for an individual to render opinions and otherwise testify as an expert. While Mr. Chaneyfield served in law enforcement for several years, and has worked at IHG for the past 21 years, none of his experience is relevant to the topics on which he seeks to offer opinions.

Secondly, Mr. Chaneyfield's proposed testimony is unreliable. It is not based on sufficient facts or data, or the product of reliable principles and methods. Mr. Chaneyfield purports to opine on what hotel "industry standards" for sex-

trafficking identification and prevention were during the relevant time period. In actuality, Mr. Chaneyfield does not describe – and does not know, even as to his own employer, IHG – what any participant in the hospitality industry was actually doing vis à vis sex trafficking identification and prevention at the time. Instead, he misuses the term "industry standard" to describe his Utopian view of what all hotels could be doing in the abstract to combat sex trafficking. Mr. Chaneyfield's opinions are thus unreliable and confusing, and should be excluded from the trial of this case. Several of his opinions are irrelevant as well, as they fail to show the requisite link between the opinion and any fact at issue in the case.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The admissibility inquiry under Rule 702 thus requires district courts to consider three basic factors: (1) qualifications, (2) reliability and (3) relevance. Moore v. Intuitive Surgical, Inc., 995 F.3d 839, 850-51 (11th Cir. 2021). The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 n.10 (1993).

The role of the Court in this regard is to provide a gatekeeping function, "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). "The district court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." Id. (internal quotation marks omitted).

A trial court may also strike even relevant expert testimony "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. See also

U.S. v. Than Quoc Hoang, 891 F. Supp. 2d 1355, 1363 (M.D. Ga. 2012) ("A trial court may strike opinion testimony both when it is not helpful under Rule 702 and also under Rule 403 when it may cause undue prejudice."). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." Frazier, 387 F.3d at 1263.

## B. Mr. Chaneyfield lacks the requisite qualifications to testify as an expert at trial.

Mr. Chaneyfield's education, training and experience fail to qualify him as an expert to testify at trial on security in the hospitality industry as relates to sex trafficking identification and prevention.

Mr. Chaneyfield's relevant education, training and experience – or more accurately, the lack thereof – can be summarized as follows:

**Work history**

After obtaining a degree in criminology in 1985, Mr. Chaneyfield was a patrolman for the Smyrna, Georgia police department for two years. (Deposition of Darrell B. Chaneyfield ("Chaneyfield Depo."), Exhibit 1 hereto, p. 164.) As a police officer, he received no training on sex trafficking, does not recall whether he ever responded to any police calls for service regarding human trafficking, and never investigated any incidents of human trafficking. (Id., pp. 165-67.)

Mr. Chaneyfield then served as an Assistant Special Agent in Charge for the Georgia Bureau of Investigation for 15 years, where he was the head of a drug task force. (Id., p. 170.) While with the GBI, he was not trained in how to identify sex trafficking, and did not work the sex-trafficking aspect of any cases. (Id., pp. 171-73.)

In April of 2002, Mr. Chaneyfield went to work for IHG. IHG's hotel brands include Intercontinental, Kimpton, Crowne Plaza and Holiday Inn, and range from luxury to budget hotels. (Id., p. 413 and Exhibit 2 hereto.)

At IHG, Mr. Chaneyfield initially was responsible for building security at the IHG headquarters (not a hotel) in Atlanta. (Chaneyfield Depo., p. 176.) He had no responsibilities regarding sex trafficking. (Id., p. 177.) Mr. Chaneyfield's next role was as manager of investigative services, where he assisted the legal department with fraud analytics and, again, had no involvement with anything having to do with sex trafficking. (Id., p. 177.)

Between 2007 and 2012, Mr. Chaneyfield served as IHG's director of security for the Americas region. (Id. at 178.) In that role, he wrote "guidance notes" – two- to four-page publications – on a variety of topics, which were used to provide strategic guidance to hotels. (Id., pp. 179-80.) The topics included such things as "Selection and Management of Contract Security," "Hotel Search Planning," "Civil Unrest" and "Safe Deposit Boxes." (Exhibit 3 hereto, pp. 5-6.)

The guidance notes are internal to IHG and have not been produced in this case. None of the publications contained any information about sex trafficking; in fact, Mr. Chaneyfield has never written anything at all on sex trafficking. (Chaneyfield Depo., pp. 160-61.)

As director of security, Mr. Chaneyfield did not do anything to raise awareness of hotel sex trafficking. (Id., p. 206.) He did not have authority to promulgate policy over hotels. (Id., pp. 185, 205.)

Mr. Chaneyfield currently serves as IHG's "Director of Global Threat Management." (Id., p. 208.)

**Hotel experience**

Mr. Chaneyfield's various positions at IHG have not been "hotel facing"; in other words, he does not deal with specific hotel properties. (Id., p. 408.) He has never worked at a hotel, including as a security guard or as an off-duty police officer. (Id., pp. 204, 238.) He has never hired a security company or an off-duty police officer to patrol a specific hotel. (Id., p. 238.)

Mr. Chaneyfield has never been personally accountable for guest safety and security at a specific hotel. (Id., pp. 238-39.) He has never been tasked with developing a security plan for a specific hotel property or improving security performance at a hotel property with a high crime level. (Id., p. 237.)

During his deposition, Mr. Chaneyfield was unable to state whether he visited at least one hotel property a year while he was director of security. (Id., p. 187.) His only recollection of visiting specific hotel properties was in a 2009 threat assessment project at InterContinental-branded hotels, where he did such things as assess air intake at the properties. (Id., p. 186.)

**Sex trafficking**

At no time in his entire career with IHG has Mr. Chaneyfield been involved in any manner in addressing sex trafficking, be it security, training or otherwise. (Id., p. 209.) He has never taken any IHG training on identifying and preventing sex trafficking. (Id., p. 220.)

Mr. Chaneyfield does not know whether, while he was director of security, there was any training provided to IHG employees on identifying sex trafficking. (Id., p. 192.) He has never taken any IHG training on sex trafficking. (Id., p. 192.) He does not know whether IHG trains its hotel general managers and staff on sex trafficking. (Id., p. 193.)

During his deposition, Mr. Chaneyfield was asked about allegations of sex trafficking at various IHG properties that have been the subject of litigation. He does not know anything about them. (Id., pp. 222, 225.)

Mr. Chaneyfield's only professional involvement relating to sex trafficking during his 21-year tenure at IHG appears to be that when he was director of

security, a general manager of an IHG hotel property once called to say there may have been sex trafficking at the property. Mr. Chaneyfield instructed the manager to call the Department of Homeland Security. That was the end of Mr. Chaneyfield's involvement in the incident, which turned out not to be sex trafficking after all. (Id., p. 190-96.)

**Expert work**

Although currently still employed full-time by IHG, Mr. Chaneyfield started a side business four and a half years ago to provide expert witness services. (Id., pp. 45, 48.) He has never been qualified by a court as an expert on hotel security or premises security practices. (Id., pp. 46-47.) Mr. Chaneyfield has not served as an expert witness for IHG (Id., pp. 78-79), nor has he disclosed his side business to IHG. (Id., p. 91.)

***

A court should exclude an expert witness's testimony if the witness is not qualified to testify in a particular field or on a given subject. Berkley Ins. Co. v. Suffolk Constr. Co., Case No. 19-23059-CIV-WILLIAMS/TORRES, 2023 7010001, at *4 (S.D. Fla. Oct. 23, 2023); see also Montgomery v. Noga, 168 F.3d 1282, 1303 (11th Cir. 1999) (upholding exclusion of expert's testimony where area of actual expertise was "totally distinguishable" from area on which he proposed to testify).

To summarize his credentials, Mr. Chaneyfield has worked in law enforcement, and more recently has worked in the hospitality industry in a generalized administrative role pertaining to security. He has no involvement with individual hotel properties, either operationally or in establishing policy. (This lack of experience is especially alarming in view of the opinions Mr. Chaneyfield hopes to give at trial as to what a specific hotel property – in this case, United Inn – should have done to identify and prevent sex trafficking.)

Mr. Chaneyfield has had no responsibility for training, investigation, policymaking or implementation as relates to sex trafficking identification and prevention in the hotel industry. The issues on which he proposes to testify are entirely outside his professional wheelhouse. He fails to meet the qualifications standard of Rule 702.

### C. Mr. Chaneyfield's opinions should be excluded as unreliable, irrelevant and confusing.

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial. Frazier, 387 F.3d at 1262. "The trial judge in *all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." Id. (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment)).

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it." Fed. R. Evid. 702 advisory committee's note to 2000 amendment (internal quotation marks omitted).

In order to be helpful to the jury, the expert's testimony must also be relevant. See Daubert, 509 U.S. at 591 (requirement that testimony "assist the trier of fact to understand the evidence or to determine a fact in issue . . . goes primarily to relevance."). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1347 (11th Cir. 2003).

The relevance consideration requires "an 'appropriate fit' between the proffered opinion and the facts of the case." Coral Way, L.L.C. v. Jones, No. 05-21934-CIV, 2006 WL 5249734, at *2 (S.D. Fla. Oct. 17, 2006) (citing McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004)).

In the pages that follow, Northbrook reviews the four opinions that Mr. Chaneyfield proposes to give at trial, and explains in each instance why the opinion fails to meet the requirements of admissibility under Rule 702 and/or Rule 403.

**Opinion 1**

Mr. Chaneyfield's first opinion is that **"[w]idely available and free anti-trafficking materials and trainings educate hotel owners and staff about the observable signs and indicators of sex trafficking and empower them to respond appropriately to potential trafficking situations."**

This opinion should be excluded as both unreliable and irrelevant.

As to reliability, the opinion implies, without confirming, that anti-trafficking materials and trainings were "widely available" and "free" prior to the time that Plaintiff allegedly was trafficked at United Inn in 2018 and 2019. However, at deposition, the only training that Mr. Chaneyfield could state definitively was available this early in time was training from the Department of Homeland Security. (Chaneyfield Depo., p. 301.)[1] He was unable to testify when the AHLA, a hospitality industry trade association, began to offer training materials, and whether other trade associations (GHLA, Asian American Hotel Association), anti-trafficking organizations (ECPAT-USA) and law enforcement agencies (GBI) referenced in his report were offering such training materials as early as 2017. (Id., pp. 306-11.) Mr. Chaneyfield also was unable to testify as to whether such training was truly "free" to all comers, or was only "free" to

[1] Whether such training was ever broadly accepted is an unanswered question; Mr. Chaneyfield was unable to testify at deposition as to when and whether his own employer, IHG – one of the largest hotel groups in the world – ever utilized such materials. (Id., p. 303.)

members of the specific organizations who offered it. (Id., pp. 262-63.) Mr. Chaneyfield's opinion is thus unreliable; he has made broad sweeping statements without facts to support them.

The opinion is also irrelevant. Mr. Chaneyfield was unable at deposition to identify any peer-reviewed articles, empirical testing or reliability testing of the validity of the so-called "indicators" of sex trafficking, or even real-world examples of the efficacy of sex trafficking training – that is, that it "made a difference" in reducing sex trafficking. (Id., pp. 257, 265, 313-21). While he acknowledges that industry trade associations tout the "indicators," he is not aware whether trade associations have tested them for efficacy either. (Id., pp. 258-59.) Nor does he know whether any hotels accept the "indicators" as a reliable method of identifying sex trafficking – including his own employer, (Id., p. 258), one of the largest hotel companies in the world. In other words, even if Mr. Chaneyfield's opinion were factually supported, the requisite "fit" is lacking because there is no support, empirical or otherwise, for his implication that enhanced anti-sex-trafficking training would have eliminated the threat of commercial sex activity at United Inn.

**Opinion 2**

In his second opinion, Mr. Chaneyfield states, **"The United Inn fell far**

**below the industry standard by failing to provide formal anti-trafficking training materials and training to its hotel staff members from 2017 - 2019."**

In referring to "industry standard," Mr. Chaneyfield appears to be comparing United Inn to what other participants in the hospitality industry were doing in 2017 to 2019 with respect to anti-trafficking training. He concludes that United Inn "fell far below" such standard.

This conclusion is unreliable because, as his deposition testimony reveals, Mr. Chaneyfield does not actually know what *any* hotel chains were offering or mandating as anti-trafficking training during the relevant time period. Mr. Chaneyfield was asked at deposition what percentage of staff at Marriott, Hilton, Choice, Hyatt, Wyndham and independent hotels were being trained on sex trafficking between 2017 and 2019, and he had no answer. (Id., pp. 333-34.) Importantly, Mr. Chaneyfield does not even know whether IHG, his own employer, had disseminated anti-trafficking training materials to its employees as of 2017. (Id., pp. 324-25.) Mr. Chaneyfield should not be permitted to testify as to the "industry standard," and whether Northbrook met such standard, when he literally is unable to testify as to what any single participant in the industry, even his own employer, was doing for anti-sex-trafficking training during the relevant time period.

**Opinion 3**

For his third opinion, Mr. Chaneyfield states, **"United Inn failed to follow hotel safety and industry standards during the relevant period pertaining to guest security and safety. The United Inn also failed to follow industry standards on assessing risk of commercial sexual activities and responding accordingly."** Mr. Chaneyfield then goes on to identify eight reasons for this conclusion, each of which is addressed separately below.

**"First reason."** For his "first reason," Mr. Chaneyfield states that United Inn had "pervasive crime year-after-year." However, in reaching such a conclusion, Mr. Chaneyfield did not distinguish between "stranger" crimes (e.g., robbery, property damage) and "non-stranger" crimes (e.g., domestic violence, sex trafficking). (Id., pp. 364-65.) This failure makes the opinion both unreliable and irrelevant, as there is no association shown between a purported proliferation of "stranger" crimes and the incidence of sex trafficking.

**"Second reason."** For his "second reason," Mr. Chaneyfield concludes that United Inn's hiring of one "security guard"[2] to be on-site at United Inn each evening from 10 p.m. to 2 a.m. is inadequate under hotel industry standards. However, despite his repeated testimony that "security is location and time specific," e.g., id., p. 200, Mr. Chaneyfield concedes that he never conducted a

[2] The "security guard" to whom Mr. Chaneyfield refers is actually a pair of off-duty, uniformed DeKalb County police officers who rotate shifts at United Inn.

formal site visit of United Inn. (Id., p. 356.) Mr. Chaneyfield does not explain how he knows, without ever inspecting the property, why having one law enforcement officer on the premises, is insufficient; nor does he explain how many officers *would* be sufficient. (Id., p. 369.) He offers no empirical data on what would be sufficient security detail for a property like United Inn, noting instead that "it's trial and error." (Id., p. 370.) This opinion is not helpful, for it suggests, obviously incorrectly, that each time a security breach of some kind occurred on the premises, the existing security must have been inadequate and another officer should be added to the detail. That is not an empirically sound or realistic approach by anyone's standards.

Mr. Chaneyfield states that after 2 a.m., United Inn should have had a security detail, since that is "a time of heightened commercial sex activity." (Exhibit 3 hereto, pp. 15-16.) But Mr. Chaneyfield offers no support for this conclusion, conceding that he was not specifically aware of any service calls alleging sex trafficking, or any commercial sex activity, on the property between 2 a.m. and 6 a.m. (Chaneyfield Depo., pp. 372-73.) He also concedes that no one ever told United Inn that its security after 2 a.m. was inadequate. (Id., pp. 373-74.) In short, Mr. Chaneyfield concludes that United Inn's after-hours security was inadequate, without explaining how he knows that, how he validates that, and what would have been an empirically sound recommendation as to an appropriate level

of security detail at various hours.

**"Third reason."** For his "third reason," Mr. Chaneyfield contends that the lack of documented communication, other than text messages, between the hotel and the "security guard" (again, these are off-duty, uniformed DeKalb County police officers) was "below industry standards." (Exhibit 3 hereto, pp. 16-17.) But Mr. Chaneyfield is unable to identify anywhere in the industry where there is a written policy requiring or recommending written communications between a hotel and its security officers. (Chaneyfield Depo., p. 375.) He cannot name any hotel group, or individual hotel owner/operator, who has such a written policy requiring written communications with security officers, (Id., p. 379), nor does he even know whether his own employer, IHG, has such a standard. (Id., p. 378.)

**"Fourth reason."** For his fourth reason, Mr. Chaneyfield states that United Inn was "reactive," rather than "proactive," to crime. (Exhibit 3 hereto, pp. 17-18.) But none of his examples hold water. For example, Mr. Chaneyfield states that United Inn should have had better record-keeping or kept daily security logs. But Mr. Chaneyfield can offer no testing or studies that show that better record-keeping or maintaining daily security logs prevents sex trafficking. (Chaneyfield Depo., pp. 381, 383.) Mr. Chaneyfield states that United Inn should have had "better lighting," but he testified that, in addition to not performing a site inspection, he didn't know what type of lighting existed at United Inn, either presently or

between 2017 and 2019. (Id., p. 382.) And when Mr. Chaneyfield was pressed at deposition on his apparent conclusion that United Inn needed to pay better attention to shrubbery to eliminate the potential for hiding places for criminal activity, he pushed back, stating, "I didn't say that these were the things that was relevant to your hotel." (Id., pp. 382-83.)

**"Fifth reason."** For his fifth reason, Mr. Chaneyfield chastises Northbrook for failure to monitor websites, such as Backpage, used to advertise for commercial sex activity. (Exhibit 3 hereto, p. 18.) However, at deposition, Mr. Chaneyfield was unable to point to any source for his opinion that such activity was an "industry security standard" as early as 2017. (Chaneyfield Depo., pp. 384-85.) Indeed, Mr. Chaneyfield could not name any hotel groups that were monitoring commercial sex websites in 2017. (Id., p. 385.) He does not even know whether his own employer, IHG, had such a policy requiring individual hotel general managers and staff to monitor such sites. (Id., pp. 389-90.)

**"Sixth reason."** For his sixth reason, Mr. Chaneyfield states that United Inn failed to conform to the "industry security standard" of monitoring online reviews during the relevant time period. (Exhibit 3 hereto, p. 18.) However, Mr. Chaneyfield conceded at deposition that IHG does not have a policy requiring individual hotel properties to monitor their online reviews, (Chaneyfield Depo., p. 390), nor is he aware of any other hotel groups with such a requirement, (Id.),

thereby completely undermining his bald assertion that such activity is "industry standard."

**"Seventh reason."** For his seventh reason, Mr. Chaneyfield similarly states that background checks are industry standard. (Exhibit 3 hereto, pp. 18-19.) However, Mr. Chaneyfield provides no evidence of this assertion, and admitted at deposition that, for example, he does not know what the AHLA recommends, if anything, about employee background checks. (Chaneyfield Depo., pp. 391-92.) Moreover, Mr. Chaneyfield has not identified anything to suggest that if United Inn had routinely conducted background checks it would have discovered something relating to sex trafficking. This makes Mr Chaneyfield's opinion in this regard irrelevant as well as unreliable.

**"Eighth reason."** For his eighth reason, Mr. Chaneyfield opines that United Inn should have done more with Plaintiff's "BOLO" flyer than simply putting it up on the wall in the hotel office, and that the failure to do so was "a breach of industry standards." (Exhibit 3 hereto, pp. 19-20.) However, at deposition, Mr. Chaneyfield conceded that he did not know of any hotel brands or companies with a policy on handling BOLOs, (Chaneyfield Depo., p. 407), and similarly does not know if any of the brands associated with his employer, IHG, even have such a policy. (Id.)

**Opinion 4**

For his fourth opinion, Mr. Chaneyfield states, **"In my opinion, with adequate training and security measures in effect at the United Inn consistent with industry standards during the relevant time, it is more likely than not that the subject incidents described in the Complaint[] could have been prevented or avoided."**

This opinion should be excluded at trial. As demonstrated above, Mr. Chaneyfield has no idea what industry standards for combatting sex trafficking were between 2017 and 2019. He doesn't even know what policies and procedures, if any, his own employer, IHG, had implemented at the time. He testified that he does not know of empirical evidence, or any real-world examples, where anti-sex-trafficking training made any difference in reducing or eliminating commercial sex activity. Thus, Mr. Chaneyfield can hardly leap to the conclusion that "it is more likely than not" that the implementation of such "industry standard" policies and procedures would have prevented sex trafficking at United Inn. This opinion is rank speculation that is especially inflammatory coming from a supposed expert – an opinion that will confuse, not help, the jury.

## CONCLUSION

Mr. Chaneyfield's lack of training and experience related to the topics on which he intends to testify is palpable and concerning. His consistent inability to state whether his own employer, IHG, has implemented any of the policies and procedures that he characterizes as "industry standard" is troubling. IHG is one of the largest hotel groups in the world, with more than 6,000 hotels across an array of industry segments, from luxury to economy. That Mr. Chaneyfield would not even know what IHG is doing in relevant areas a) raises serious doubt as to his qualifications to testify as to what is, or is not, industry standard; and b) highlights the lack of his own professional involvement in the very security topics on which he claims to be an authority.

For the reasons stated herein, Northbrook respectfully requests that Mr. Chaneyfield be precluded from testifying at the trial of this case.

## L.R. 7(D) CERTIFICATION

The undersigned counsel hereby certifies that this Memorandum has been prepared in Times New Roman (14 point), which are font and point selections approved by the Court in L.R. 5.1(C).

Respectfully submitted,

*/s/ Dana M. Richens*

Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia 30309
Telephone: (404) 815-3659
Facsimile: (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.
d/b/a United Inn and Suites

# CERTIFICATE OF SERVICE

I hereby certify that I have on this date served all parties with the within and foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DARRELL B. CHANEYFIELD** via the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 21st day of December, 2023.

*/s/ Dana M. Richens*