## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | : | |
| | : | |
| | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. 1:20-cv-05233-SEG |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | |
| | : | |
| Defendant. | : | |

### PLAINTIFF J.G.'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW, J.G. ("Plaintiff"), by and through the undersigned counsel, and hereby respectfully moves that the Court deny Defendant's Motion for Summary Judgement. In support, Plaintiff encloses a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

For years, law enforcement, hotel guests, and the Internet have known what United Inn now tries to deny—that commercial sex activity was commonplace at the United Inn.  The hotel's reputation as a hotspot for commercial sex culminated in the tragic and foreseeable: J.G. was sex trafficked as a 16-year-old at United Inn for approximately 35 straight days in October to November 2018, and for approximately 3 straight days in January 2019.  Over those periods, J.G. had sex for money with approximately 12 men per day in United Inn rooms and in cars parked in the hotel parking lot, while violent, armed traffickers collected the money and paid a portion of it to the United Inn for continuing room rentals.

On October 29, 2018, the Rockdale County Sherriff's Office sent multiple "Be On the Lookout" flyers to United Inn advising the hotel that J.G. was a "missing" 16-year-old suspected of being at United Inn since October 9, 2018. United Inn does not know what it did with the notices.  J.G. had been trafficked at United Inn for weeks when the hotel received the flyers and J.G. remained there for weeks afterwards.  The record shows that under the control of her violent, armed traffickers, J.G. posted publicly available ads for sex at the hotel, loitered in common areas in provocative clothing to attract sex buyers, and had sex with dozens and dozens of men in rooms and cars at United Inn.  The record also shows that during J.G.'s time at United Inn, the staff repeatedly talked to J.G. and observed her age,

1

attire, appearance, and conduct; observed the volume of visitors to her traffickers' rooms; repeatedly sold J.G., a 16-year-old, condoms and other goods; and entered the rooms in which she was trafficked with other minors and women, rooms that contained drugs and drug paraphernalia, guns, condoms, and extra linens.   J.G.'s traffickers "didn't bother to hide" the evidence of crimes in their rooms, because they were "cool with everybody who worked up there" and United Inn "didn't care."

In its motion for summary judgment, United Inn misconstrues the law and ignores the record to argue that minor sex trafficking was not "foreseeable," and that it would have been "impossible" for United Inn staff to identify red flags suggesting that J.G. was being sex trafficked at the hotel.  Because of the substantial evidence that sex trafficking was foreseeable at United Inn, and that United Inn knowingly profited from renting rooms to J.G.'s traffickers that it knew or should have known were used to traffic J.G., summary judgment is improper.

## STATEMENT OF FACTS

### I.    J.G.'s Sex Trafficking at United Inn.

As a 16-year-old, J.G. was sex trafficked at United Inn for roughly 35 days from approximately October 7 or 8, 2018 – November 14, 2018, and again for approximately 3 days in early January 2019.  Ex. 1, J.G. Dep. at 14:17, 20:2-9, 30:1-6, 33:20-25, 35:16-23, 40:9-14.  During the roughly 6-week period, J.G. had sex for

money with approximately 12 men per day in United Inn rooms and in cars in the United Inn parking lot, meaning more than 400 men purchased J.G. for sex at United Inn in 2018 – 2019. *Id.* at 55:25-56:1, 56:15-16, 79:19-20. J.G. gave the money she was paid for sex to her traffickers. *Id.* at 59:13-60:6; Ex. 2, N.S. Affidavit at ¶ 13.

United Inn's staff regularly talked with J.G. and observed J.G.'s behavior, attire, and appearance at the United Inn during the multi-week period she was trafficked at the hotel. J.G. frequently loitered in hotel common areas scantily clad to attract sex buyers. Ex. 1, J.G. Dep. at 83:20-21, 113:6-10. Indeed, one of J.G.'s traffickers for approximately four weeks at United Inn, "Cash," required her to "stroll" every day around the hotel's common areas looking for customers. *Id.* at 60:25-61:7, 84:18-85:4, 86:7-13. Most of J.G.'s dates at United Inn—out of the hundreds she had during her approximately 6-week stay at the hotel—came from men hanging around the hotel common areas and on Memorial Drive. *Id.* at 62:14-18. United Inn had 36 surveillance cameras at the hotel, which included cameras angled at the parking lots and Memorial Drive, where J.G. loitered and "strolled," and where at times she was sold for sex. Ex. 18, United Inn 30(b)(6) Depo., Feb. 22, 2023 at 158:13-15, 214:4-10. J.G. frequently went to the hotel store to exchange linens, and/or to buy the necessary condoms, among other items. Ex. 1, J.G. Dep. at 82:9-18.

J.G.'s traffickers at United Inn, who went by "Cash" and "King," used rooms at the United Inn to sell drugs and to sell J.G. and other girls for sex.  Ex. 1, J.G. Dep. at 74:21-75:14, 93:22.  The volume of visitors to the rooms in which J.G. was trafficked at United Inn was high—not only were an average of 12 customers coming to buy sex with J.G. per day, but there were additional customers coming to buy sex with other girls (some of whom were minors) in the room with J.G., and still more customers coming to buy drugs. *Id.* at 102:24-103:9; Ex. 2, N.S. Affidavit.

When United Inn's housekeeping staff cleaned the rooms in which J.G. was trafficked, J.G.'s traffickers did not make efforts to hide or conceal their criminal activities; her traffickers were "cool with everybody who worked up there," "when housekeeping came, nothing changed," "they didn't bother to hide nothing… they didn't care."  Ex. 1, J.G. Dep. at 93:3-94:13.  Drugs, guns, condoms, and cash, among other paraphernalia, were plainly visible in the rooms. *Id.* at 93:3-94:13.  The rooms with such visible evidence were rented to adult men who carried weapons around the property and who had rented multiple rooms with multiple scantily clad girls and young women staying in them.  *Id.* at 36:7-13, 38:8-19, 48:18-25, 52:16-22, 58:10-12; Ex. 2, N.S. Affidavit.

On October 29, 2018, United Inn received multiple "Be on the Lookout" notices from the Rockdale County Sherriff's Office advising United Inn that J.G.

was a "missing" 16-year-old believed to be at United Inn and that she had been missing since October 9, 2018. Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 312:4-24, 313:2-316:7, 321:15-323:3; Ex. 4 (NBI 003097); Ex. 5 (NBI 003106); Ex. 6 (NBI 003099). The "Be on the Lookout" notice contained J.G.'s picture, age, race, height, and weight, among other information. Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 315:22-24. United Inn is not sure what it did in response to the notices. Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 322:20-326:3. United Inn's practice was to post notices of missing persons on an office wall with more than 20 notices, though it is not sure it followed that practice with J.G.'s notices. Ex. 7, Ashar Islam Dep., May 2, 2023 at 140:3-141:3. It did not: hold an all-staff meeting where it showed staff the notices with J.G.'s picture and asked staff to be on alert, Ex. 7, Ashar Dep., May 2, 2023 at 139:9-141:3, hire additional security after receiving the notices, Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 327:4-9, or ask its security to work more than 4 hours per day after receiving the notices. Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 327:18-21.

United Inn's staff regularly observed J.G.'s traffickers and engaged in business with them. Ex. 1, J.G. Dep. at 31:2-5, 60:25-62:8, 104:15-105:1, 107:15-108:3, 117:25-119:8; Ex. 2, N.S. Affidavit at ⊩ 9. J.G.'s traffickers rented and paid for rooms at the United Inn, Ex. 1, J.G. Dep. at 31:1-21, 32:1-9, 46:1-4. They had

5

multiple rooms rented at the United Inn, *id.*, J.G. Dep. at 58:5 – 59:5, 61:24-62:6, and stayed at the United Inn for extended periods, *id.*, J.G. Dep. at 31:2-5, 60:25-62:8; Ex. 2, N.S. Affidavit.  Cash, one of J.G.'s traffickers for approximately four weeks, went to the front desk with J.G. to move rooms multiple times during that four-week period.  Ex. 1, J.G. Dep. at 31:5-21, 32:6-9, 62:1-6.  J.G. went to the front desk with her traffickers, Cash and King, multiple times, as they purchased goods, like condoms, and/or rented new rooms.  *Id.* at 95:20-96:17.  N.S., one of the minors trafficked with J.G. in January 2019, saw one of J.G.'s traffickers at the hotel, King, and believed that he lived there. Ex. 2, N.S. Affidavit at ₽ 9.

J.G's traffickers talked regularly with United Inn employees and staff,  Ex. 1, J.G. Dep. at 31:9-21, 32:1-9, 46:1-4, 61:24-62:6, 107:15-108:3, and staff accommodated special requests from J.G.'s traffickers, like allowing them to check into their rooms early.  *Id.* at 107:15-108:3.  United Inn staff suggested that one of J.G.'s traffickers, Cash, switch rooms because of the amount of traffic to his room. *Id.* at 102:24-105:25.  One United Inn staff person bought drugs from Cash in the room in which J.G. was trafficked. *Id.* at 94:14-20, 99:10-100:15.

J.G.'s traffickers trafficked other girls and women with J.G. at the United Inn. *Id.* at 36:7-13, 38:8-19, 48:18-25, 52:16-22, 58:10-12; Ex. 2, N.S. Affidavit.  During the periods she was trafficked at United Inn, J.G. stayed in rooms at the United Inn

with other minors and other women who were trafficked at the hotel.  Ex. 1, J.G. Dep. at 36:7-13, 38:8-19, 48:18-25, 52:16-22, 58:10-12; Ex. 2, N.S. Affidavit.  Her traffickers were physically violent to women in J.G.'s presence, Ex. 1, J.G. Dep. at 76:12-77:11, 109:5-9, and carried guns, *id.*, at 76:12-16.  J.G.'s traffickers controlled and monitored her movements at the United Inn.  *Id.* at 62:19–63:13, 82:19-83:8, 84:7-84:14, 86:7-15.

In January 2019, when Plaintiff was trafficked in a room at United Inn with three other minor females, the United Inn manager came to the room to request money for the room.  The money the girls paid for the room came from their being sold for sex at the United Inn.  Ex. 2, N.S. Affidavit at ¶¶ 11 – 12.

## II.    Commercial Sex Activity at United Inn *Prior to* J.G.'s Sex Trafficking.[1]

The United Inn's history of violent crime and sex crimes is too long to fully recount within the page limits.  The complaint's allegations have been exceeded and proven by at least five different eyewitnesses to commercial sex (four of whom are minor victims of sex trafficking at United Inn), 12 police reports detailing

---

[1] J.G. does not concede or agree that only commercial sex crimes are relevant to establishing foreseeability and/or what United Inn knew or should have known about the risk of minor sex trafficking.  But the volume of commercial sex activity at the property was so significant that it is not necessary in this brief to highlight other crimes (e.g., murders, aggravated assaults, etc.) that are relevant too.

investigations and/or arrests just for sex-related crimes at the hotel prior to J.G.'s trafficking, and multiple online reviews reporting sex crimes and safety issues.

By 2015, the Dekalb County Police Department had identified the United Inn as a "problem hotel[] … in Dekalb County for drug[s] and prostitution … it was like a radar hotel that we knew about." Ex. 15, Detective King Dep. at 18:25-19:10. The Dekalb County Police Department viewed commercial sex as "common" and a "problem" at United Inn. *Id.* at 18:25-19:10, 52:18-53:4. During the relevant period, there were a "number of women" "working at the [United Inn]" "doing commercial sex activities" who were working for several men at United Inn. *Id.* at 20:24-21:7, 27:24-28:23. The most popular website for commercial sex ads—Backpage—had a publicly-available tool to filter search results to a certain area. *Id.* at 66:9-67:10. When law enforcement used that tool, "9 out of 10" ads on Memorial Drive were from United Inn. *Id.* at 33:22-34:10, 47:11-15. Some of the ads for sex at United Inn involved minors. *Id.* at 54:9-55:6. The Dekalb County Police Department led numerous operations at United Inn for commercial sex prior to J.G.'s trafficking, including a 2017 operation with FBI regarding minor trafficking. *Id.* at 33:14-21.

From 2012 – 2016, the Dekalb County Police Department came to the United Inn at least seven times for commercial sex crimes specifically. Ex. 16 at PLAINTIFF-024272 - 24304. In 2017, the year before J.G. was trafficked at United

8

Inn, commercial sex was rampant at the hotel.  In May 2017, the United Inn manager texted with a security guard at the hotel about a prostitution-related shooting at the hotel. Ex. 3, United Inn 30(b)(6) May 2, 2023, 370:21-25.  On June 2, 2017, a man was arrested after beating a woman at the United Inn over monies owed for sexual favors. Ex. 16 at PLAINTIFF-024305(UI&S)-24319(UI&S).   On June 20, 2017, police responded to a fight between a prostitute and her pimp at the United Inn.  The pimp left the prostitute's room after the fight to go stay in another woman's room at the hotel (likely another prostitute). *Id.* at PLAINTIFF-024320(UI&S)-24323(UI&S).  From June 23 – 26, 2017, two 17-year-old girls were sex trafficked together in the same room at United Inn—A.G. and G.W.[2]  Ex. 8, A.G. Dep. at 14:23-24; Ex. 9, G.W. Dep. at 14:12-13.  On July 2 – July 4, and July 20 – July 21, G.W. was trafficked at United Inn again.  Ex. 9, G.W. Dep. at 158:22-159:8.  On July 20, 2017, the Metro Atlanta Child Exploitation Task Force conducted an operation "in reference [to] child and adult prostitution" at the United Inn.  Ex. 16 at PLAINTIFF-024324(UI&S)-24325(UI&S).

---

[2] A.G. and G.W. have each filed lawsuits against United Inn pending before Judge Boulee. Their sex traffickers pled guilty to minor sex trafficking at United Inn in violation of 18 U.S.C. 1591.  *United States v. Obie,* Case No. 1:18-cr-00424-MLB-JKL (N.D.Ga., Nov. 6, 2020), ECF No. 160; *United States v. Anderson,* Case No. 1:18-cr-00424-MLB-JKL (N.D.Ga., April 1, 2021), ECF No. 177

## III.   <u>United Inn's Operations and Security</u>.[3]

United Inn has 172 rooms.  Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 158:16-159:9, 211:9-15.  From 9pm – 10pm, and 2am – 6am, United Inn had one person working at the hotel.  *Id.* at 49:17-50:7.  United Inn only had one security guard at the property from 10pm – 2am and did not have security outside of those hours.  Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 275:14-276:1, 277:9-15. The Dekalb County Police Department recommended that United Inn hire additional security, but United Inn did not do so. Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 113:23-114:3; 154:5-13, 155:19-22.

The Dekalb County Police Department notified the United Inn about commercial sex crimes at the hotel.  Ex. 13, United Inn's Response to RFA No. 45. The United Inn manager claimed to be aware of 5-6 instances of prostitution at the hotel.  Ex. 14, Ashar Islam Dep., Feb. 22, 2023 at 57:12-59:7.  In May 2017, the United Inn owner texted with a security guard at the hotel about a prostitution-related shooting at the hotel. United Inn 30(b)(6) May 2, 2023, 370:21-25.  The United Inn owner talked with the Dekalb County Police Department about how to reduce

---

[3] J.G. does not concede or agree that only commercial sex crimes are relevant to establishing foreseeability and/or what United Inn knew or should have known about the risk of minor sex trafficking.  But the volume of commercial sex activity at the property was so significant that it is not necessary in this brief to highlight other crimes (e.g., murders, aggravated assaults, etc.) that are relevant too.

prostitution on the property.  United Inn 30(b)(6) Dep., Feb. 22, 2023 at 110:16-111:24, 121:2-9.  United Inn believes that signs of sex trafficking and prostitution are the same and include traffic in and out of a hotel room. United Inn 30(b)(6) Dep., Feb. 22, 2023 at 53:25-55:7; Ashar Islam Dep., Feb. 22, 2023 at 58:9-14, 185:18-25.  United Inn has called the Dekalb County Police Department "many times" about rooms with "too much traffic going on."  United Inn 30(b)(6) Dep., Feb. 22, 2023 at 110:24, 121:2-21, 185:18-25.[4]  United Inn did not post anti-trafficking notices at its property, a misdemeanor under O.C.G.A. § 16-5-47.  *See* Ex. 21, Dft's Resp. to Pl's 2nd RPDs at 5.

The United Inn did not conduct background checks on its staff, Ex. 3, United Inn 30(b)(6) Dep., May 2, 2023 at 380:18-381:2, did not review online reviews about the hotel outside of Google reviews, Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 134:17-135:7, and did not monitor popular commercial sex websites, like Backpage, for advertisements relating to commercial sex at the United Inn, *id.* at 123:8-25.  In 2018, the United Inn pled guilty to 447 violations of the Dekalb County Code and paid a $60,345 fine, Ex. 20, NBI 002431-002432; Ex. 3, United Inn

---

[4] According to United Inn's manager, "inappropriate clothes" also can be a sign of commercial sex activity.  Ex. 14, Ashar Islam Dep., Feb. 22, 2023 at 58:4-6.

30(b)(6) May 2, 2023 at 344:11–346:12, because the United Inn "regularly violated" Dekalb County codes, Ex. 18, United Inn 30(b)(6) Feb. 22, 2023 at 73:10-16.

## LEGAL STANDARD

Summary judgment is only appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the Eleventh Circuit held that to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant: (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. *Id.* at 726. (Doc. 44 at 6-7).

## ARGUMENT

### I.   United Inn is Not Entitled to Summary Judgment on J.G.'s TVPRA Claim Because of Disputed Issues of Material Fact.

United Inn does not raise arguments about the first or third elements of J.G.'s TVPRA claim, and as such, has conceded those elements. It only argues that it did not take part in a common undertaking involving risk and potential profit (element two) and that it did not have at least constructive knowledge that the common undertaking violated the TVPRA as to J.G. (element four).

#### a. *Doe #1* is dispositive of United Inn's TVPRA Arguments.

Before addressing United Inn's arguments as to the second and fourth elements of J.G.'s TVPRA claims, J.G. explains why United Inn's TVPRA arguments fail under the Eleventh Circuit's precedential ruling in *Doe #1*.

First, United Inn ignores that the allegations in *Doe #1* were insufficient *as to franchisors* but would have been sufficient *as to hotel owners-operators*. The *Doe #1* plaintiffs "were sex trafficking victims who sued the franchisors of the hotels at which they were trafficked." (Doc. 44 at 9). The plaintiffs in *Doe #1* alleged that the franchisors participated in a venture because "the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking" and the franchisors "received reviews mentioning sex work occurring at the hotels." (Doc. 44 at 9). The

13

Eleventh Circuit held such allegations were insufficient to establish the franchisors' participation in a venture.  (Doc. 44 at 9).  But Judge Jordan "emphasize[d]" in his concurrence that "***similar claims*** [to those raised against the franchisors] ***against those who own, operate, or manage the hotels in question*** (e.g., franchisees) ***would withstand a Rule 12(b)(6) motion to dismiss***."  *Doe #1*, 21 F.4th at 729 (emphasis added).

Judge Jordan's concurrence fits like a glove here.  J.G. sued the hotel owner-operator, United Inn, not a franchisor.[5]  United Inn has conceded that J.G.'s allegations are "substantially similar" to those in *Doe #1*.  (Doc. 37-1 at 8).  And J.G. has developed significant record evidence demonstrating that United Inn knew or should have known that J.G.'s traffickers were trafficking J.G. and other minors and women at United Inn for weeks and months, and, nevertheless, United Inn continued to rent rooms for profit to J.G.'s traffickers.  In sum, United Inn misconstrues *Doe #1* and ignores that the Eleventh Circuit would have found "similar claims" to J.G.'s sufficient against a hotel owner-operator, like United Inn.

Second, United Inn suggests that J.G. must "prove that a defendant took part with other participants in a 'common undertaking of sex trafficking.'"  (Doc.104 at

---

[5] As this Court has observed: "[u]nlike in [*Doe #1*] (which involved defendant hotel franchisors), Plaintiff brings her TVPRA beneficiary claim against the operator of the hotel in which she was allegedly trafficked."  (Doc. 44 at 12).

4).  But *Doe #1* asks whether a hotel owner-operator "t[ook] part in a common undertaking or enterprise involving risk and potential profit," **not** a "common undertaking of sex trafficking."  *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).[6]  *Doe #1* holds that a beneficiary TVPRA claim does **not** require proof that "the defendant 'knowingly facilitated a violation' under the TVPRA" (Doc. 44 at 8) because it would "make the [18 U.S.C. §1595(a)] 'should have known' language superfluous," 21 F.4th at 724.  Here, J.G. has alleged and developed record evidence that United Inn knowingly profited from rental of rooms that it knew **or should have known** were used to traffic J.G.  Proper review of *Doe #1* establishes that the evidence supporting J.G.'s allegations is sufficient to state a beneficiary claim against United Inn under §1595(a) and summary judgment is improper.

### b. Substantial Evidence Shows that United Inn "Participated in a Venture"—*i.e.*, That it Took Part in a Common Undertaking or Enterprise Involving Risk and Potential Profit.

Not only does United Inn mischaracterize *Doe #1*, but it also incorrectly analyzes the second and fourth elements of a beneficiary claim as outlined in *Doe*

---

[6] *Doe #1* uses the phrase, "common undertaking of sex trafficking," twice in the opinion because "every time the [*Doe #1*] complaints refer to ventures, they refer to 'sex trafficking ventures.'" *Doe #1*, 21 F.4th at 727.  The J.G. complaint is different.  For example, at the outset of J.G.'s complaint, she alleges that United Inn participated in the venture of running the hotel, renting rooms, and "collect[ing] fees for rental of those rooms" "notwithstanding that it knew or should have known that Plaintiff was a victim of sex trafficking" in those rooms. (Doc.1 at 3).

*#1.*  As to the second element, United Inn claims that "Plaintiff has produced no evidence that United Inn participated in the common undertaking of sex trafficking," and therefore summary judgment is appropriate.  This argument fails.

*First*, United Inn argues J.G. has "produced no evidence that United Inn participated in the common undertaking of sex trafficking." (Doc. 104 at 7).  That is not the legal standard.  *Second*, even if United Inn had stated the correct legal standard for participation in a venture (it did not), United Inn's argument that J.G. "produced no evidence" of the hotel's participation in an "undertaking" "involving risk" of J.G. being sex trafficked and earning "potential profit" from the sex trafficking of J.G. is specious.  Contrary to United Inn's claim, there is substantial evidence of United Inn's awareness of *both* the overarching risk of rooms at its hotel being used for sex trafficking *and* the specific risk of profiting from room rentals to J.G.'s traffickers for the sex trafficking of J.G.  *See* Statement of Facts.[7]  *Third*, United Inn ignores this Court's prior statement that a plaintiff can establish participation in a venture under 1595(a) through evidence of a "direct association"

---

[7] United Inn admits it profited from renting hotel rooms to J.G.'s traffickers at United Inn, (Doc. 104 at 5), but claims that is insufficient to establishing participation in a venture.  The evidence shows that United Inn did far more.

or a "continuous business relationship" between Northbrook and her traffickers. (Doc. 44 at 12). J.G. has developed extensive record evidence of both.

As to direct association: J.G. testified that a United Inn employee bought drugs from one of Plaintiff's traffickers in the room where J.G. was being sold for sex, Ex. 1, J.G. Dep. at 94:14-20, 99:10-100:15, warned the trafficker about too much traffic into his room, *id.*, at 104:15-105:25, and accommodated his requests for early check-ins, *id.*, at 107:15-108:3. Such "allegations directly link specific conduct of United Inn employees to the advancement of the sex trafficking operation and, as such, are sufficient to satisfy the second element of the TVPRA beneficiary claim." (Doc. 44 at 13).

Whether such conduct "would have fallen outside the scope of that individual's employment" is a fact issue for a jury trial. *See Johnson St. Props., LLC v. Clure*, 805 S.E.2d 60, 66 (Ga. 2017) ("questions of the existence and extent of an agent's authority are generally for the triers of fact"). Here, there is evidence that, for example, United Inn did not conduct background checks of its employees; United Inn had an extensive history of commercial sex on the property before J.G.'s trafficking; law enforcement recommended United Inn enhance its security and United Inn did not; United Inn did not post legally required anti-trafficking notices, which is a criminal misdemeanor; and United Inn staff regularly entered rooms with

extensive paraphernalia from drug and sex trafficking.  Taken together, these types of facts create a jury question whether the staff member's conduct was authorized.[8]

As to "continuous business relationship," the evidence shows that J.G. was trafficked at the hotel for approximately 40 days across October – November 2018 and January 2019, and that during that period, J.G.'s traffickers rented rooms that United Inn knew or should have known were used to traffic J.G.  Further, J.G. has established that her traffickers operated at the United Inn on an ongoing basis: they had multiple rooms reserved at United Inn at one time; they appeared to live at the United Inn; they talked with staff regularly about moving rooms or adding rooms to the reservation; they trafficked other women and girls at the property; their rooms had condoms, drugs, guns, and a large number of linens which housekeeping staff saw; they monitored J.G. on the property and frequently walked with her as she loitered in common areas; they accompanied J.G. to the front desk to buy goods or switch rooms; and the rooms they rented had a high volume of visitors, including commercial sex buyers and drug buyers.  *See* Statement of Facts.  Such allegations are "sufficient to plausibly allege" that United Inn "participated in a venture with Plaintiff's traffickers by renting rooms to people it knew or should have known were

---

[8] J.G. has sued United Inn for violation of 1595(a) (Count I) *and* for common law negligence (Count II).  J.G.'s negligence claim includes negligent hiring, supervision, and retention.  United Inn says nothing about those claims.

engaging in sex trafficking." Doc. 44 at 14. J.G. has presented evidence proving such allegations, so summary judgment is improper on the second element.

### c. J.G. Has Developed Record Evidence that United Inn Knew or Should Have Known that J.G. was Trafficked at the United Inn.

United Inn's argument on what it "knew or should have known" about J.G.'s sex trafficking amounts to a closing argument for trial and should be summarily rejected at the summary judgment stage because it ignores the evidence.

United Inn has conceded that high traffic into and out of a room is a sign of commercial sex activity and that it had 36 surveillance cameras covering its property to monitor activity. Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 53:25-55:7, 158:13-15, 214:4-10. And the United Inn manager has said that "inappropriate clothes" are another sign of commercial sex activity. Ex. 14, Ashar Islam Dep., Feb. 22, 2023 at 58:4-6. United Inn's acknowledgement of these signs of commercial sex, and of its ability to monitor its premises via cameras, creates a fact question about whether it knew or should have known that J.G., a child, loitered in common areas scantily clad so that hundreds of men could pay her for sex.

Beyond United Inn's admissions, substantial evidence establishes a fact question as to whether United Inn "knew or should have known" that J.G. was sex trafficked at the United Inn. *See* Statement of Facts. The evidence shows that United Inn "knew" of J.G.'s trafficking when it accommodated her traffickers' early check-

in requests and then warned them to switch rooms due to high traffic.  Ex. 1, J.G. Dep. at 104:15-105:25, 107:15-108:3.  Also, this Court found certain "should have known" allegations sufficient at the 12(b)(6) stage, and the evidence now supports those allegations—*e.g.*, J.G.'s age, scant attire, and loitering on the property around armed men who had multiple rooms reserved at the hotel with multiple girls and women in the rooms; J.G.'s short meetings with dozens of men in cars and rooms at the hotel; J.G.'s interactions with staff in scant clothing to buy condoms and to pay for rooms with other girls in them; the drug and sex paraphernalia in the rooms in which J.G. was trafficked.  (Doc. 44 at 19).  In sum, United Inn's argument on "knew or should have known" should be rejected.

## II.    Defendant Is Not Entitled to Summary Judgment on J.G.'s Negligence Claim.

### a.  United Inn Owed J.G. a Duty of Ordinary Care Because She Was An Invitee of United Inn.

J.G. was an invitee at United Inn because she was a customer at United Inn, and because she was a guest of its invitees, King and Cash.

As this Court has observed, the test to determine whether a person is an invitee is, in relevant part, whether she "had present business relations with the owner or occupier which would render [her] presence of mutual benefit to both[.]." (Doc. 44 at 21.) *Freeman v. Eicholz*, 705 S.E.2d 919, 923 (Ga. App.

2011). J.G. was an invitee of United Inn because her presence was of "mutual benefit" to J.G. and United Inn. Indeed, J.G. frequented the store at United Inn to buy condoms, food, and other items. Ex. 1, J.G. Dep. at 82:9-18; Ex. 2, N.S. Affidavit ¶ 7. Also, in January 2019, J.G. and other minors paid the United Inn manager directly for the room in which they were being sex trafficked. Ex. 2, N.S. Affidavit at ¶¶ 11 – 12. While "[m]onetary consideration is not essential to invitee status," it is indicative of it. *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 743 (2011). J.G.'s payments to United Inn for goods and a room gave her invitee status. *Cham v. ECI Management Corporation*, 311 Ga. 170 (2021) (quoting *Anderson v. Cooper*, 214 Ga. 164, 169 (1958).) Further, J.G. was an invitee because she was a guest of invitees, her traffickers. As this Court has noted: "in most circumstances, an invitee's guest stands in the invitee's shoes and is herself an invitee." (Doc. 44 at 22.) That applies here.

United Inn mistakenly argues (again) that J.G. was not an invitee because she was not at United Inn "for any lawful purpose." (Doc. 104 at 11.) This Court previously rejected the same argument, because the question is not whether J.G. was engaged in unlawful activity, but rather whether United Inn "induced or led Plaintiff to come upon its property for a lawful purpose." (Doc. 44 at 24.) It did,

21

by providing lodging to J.G. and selling goods to her. Therefore, J.G. was an invitee.

### b. The Sex Trafficking Of Minors At United Inn and Suites Was Foreseeable.

Despite a long history of violent crimes and sex crimes at United Inn, United Inn claims the past crimes were not "substantially similar" to J.G.'s minor sex trafficking, and, therefore, J.G.'s minor sex trafficking was not "foreseeable." United Inn's argument is wrong factually and legally.

The issue of foreseeability "is generally reserved to the trier of fact" and should be here. *Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 719 (2023). In *Carmichael*,[9] the Court held that a premises liability plaintiff is not required to point to a past crime, substantially similar or not, to prove reasonable foreseeability. "While evidence of substantially similar prior crimes … may often be one of the probative considerations in answering" whether a crime could be "anticipate[d]," such evidence is "not a required consideration, and other circumstances may be relevant, too." *Id.*, at 732. In *Suresh and Durga, Inc. v. Doe*, the Georgia Court of Appeals reached the same obvious conclusion on very similar facts to this case. There, the defendant argued "that the prior crimes

---

[9] United Inn relies on *Sturbridge Partners, Ltd v. Walker*, 267 Ga. 785 (1997), which *Carmichael* overruled. 316 Ga. at 732.

committed [at the hotel ] … were not substantially similar enough to the unique crime of sex trafficking to render Doe's injuries foreseeable." 894 S.E.2d 602, 607 (Ga. Ct. App. 2023).  But the Court of Appeals found that all types of prior crime at the hotel were relevant to the defendant's knowledge, *id.* at 608, and based its findings on facts that apply here, including lengthy history of crime, testimony of its open and obvious nature, security cameras allowing employees to see the activity, and hotel employees' interactions with sex trafficking victims and traffickers.

Even if United Inn's foreseeability argument correctly stated the law (it does not), substantial evidence of prior sex crimes at United Inn and prior minor sex trafficking shows United Inn was aware of the risk before J.G.'s trafficking. Just in the 12 months prior to J.G.'s trafficking at United Inn, two minors were trafficked at United Inn *and* the FBI and Dekalb County Police Department conducted a separate operation into minor trafficking at United Inn.  Ex. 16 (Police Reports); Ex. 14, Ashar Islam Dep., Feb. 22, 2023 at 62:10-63:9.  As such, United Inn's foreseeability arguments are based on overruled law and an incomplete review of the evidence and should be rejected.[10]

---

[10] Reasonable foreseeability "asks simply whether the proprietor had sufficient reason to anticipate the criminal act."  *Carmichael*, 316 Ga. at 728. United Inn had sufficient reason to anticipate minor sex trafficking based on its

### c. The Record Evidence Establishes that United Inn Had Superior Knowledge of the Risk of Minor Sex Trafficking on its Premises.

United Inn's claim that it is entitled to summary judgment based on J.G.'s "superior knowledge" of the risk of sex trafficking at United Inn fails as a matter of fact and law.  The owner testified that he is "more knowledgeable about the property than anybody else." Ex. 18, United Inn 30(b)(6) Dep., Feb. 22, 2023 at 34:19-24.  By contrast, J.G. had never been to the property before October 2018. Ex. 1, J.G. Dep. at 20:2-9, 27:23-25.  J.G. did not chose to go to the United Inn, was sex trafficked at United Inn by people she had never met before arriving (but who were known to United Inn), and had no foreknowledge of United Inn or its crime. United Inn's argument that J.G had greater knowledge about the risk of minor sex trafficking is wrong.

Even if J.G. did have superior knowledge (she did not), the rule still does not fit here.  While it is true that a plaintiff is not entitled to recover if the "undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant," *Norman v. Jones Lang LaSalle Americas, Inc.*, 277 Ga. 621, 624 (2006), there are two applicable exceptions.

---

knowledge of a history of commercial sex on the property.  *See* Statement of Facts at page 10.  Commercial sex (or prostitution) involving a minor is criminal sex trafficking.  *See* 18 U.S.C. 1591.

First, where the potential hazard arises from a third party's acts, a plaintiff's knowledge of the hazard only bars recovery when "[e]xposure to the known risk [was] voluntary[y], the result of deliberate choice." *Travis v. Quiktrip Corporation*, 339 Ga. App. 551, 555 (2016). "The defense of assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice[.]" *Id*. J.G.'s trafficking at United Inn was not "voluntary," a "deliberate choice," free of "coercion," or made with "full knowledge." At 16, J.G. did not choose to go to the United Inn. Ex. 1, J.G. Dep. at 27:21-22, 29:12-17. She was abandoned there, and while loitering on the property met a man who went by "King," and he offered her a place to stay. *Id.* at 28:21-29:9, 45:23-48:25, 48:18-51:8. Later, he gave her drugs and became violent and trafficked her. *Id.* at 50:1-51:8, 52:6-22, 55:4-13, 73:9-20, 76:9-77:11. After a fight about money, he kicked her out of his room. *Id.* at 54:17-20, 60:1-6. While loitering at United Inn, J.G. met a man who went by "Cash," and he gave her a place to stay and drugs before becoming violent towards women in front of J.G. and trafficking her. *Id.* at 60:16-19, 61:2-10, 76:12-77:7, 61:19-62:24, 73:14-20, 74:18-22. This type of evidence creates a fact question as to whether J.G. made a voluntary choice free of coercion. If not, then the superior knowledge rule does not apply.

Second, the superior knowledge rule also does not apply because it requires proof that J.G. "failed to exercise ordinary care for her own safety." *Gateway Atlanta Apartments, Inc. v. Harris*, 290 Ga. App. 772, 775, 660 S.E.2d 750, 754 (2008); *see, e.g.*, *Currie v. Chevron U.S.A., Inc.*, 266 Fed. Appx. 857 (11th Cir. 2008) (affirming district court finding that questions of material fact existed as to whether the plaintiff exercised ordinary care when she did not attempt to flee threats from significant other under coercive circumstances). There is at least a fact question whether J.G. exercised ordinary care by not trying to escape from the armed and violent traffickers she met at United Inn who were "cool" with United Inn staff, who received help from United Inn staff, and who did not feel the need to hide their criminal activities from United Inn staff. Ex. 1, J.G. Dep. at 93:3-94:13, 104:15-105:25.

## CONCLUSION

For these reasons, United Inn's motion for summary judgment should be denied.

This 18th day of January, 2024.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com

26

Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 18th day of January, 2024.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone

(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*