IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action File |
| v. ) | No. 1:20-cv-05233-SEG |
| ) | |
| NORTHBROOK INDUSTRIES, INC., ) | |
| d/b/a UNITED INN AND SUITES, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE AND PRECLUDE SELECT OPINIONS AND TESTIMONY FROM <u>DEFENDANT'S EXPERT KARIM VELLANI</u>**

This Memorandum of Law is submitted by Defendant Northbrook Industries, Inc. ("Northbrook") in response and opposition to the motion of Plaintiff J.G. ("Plaintiff") to exclude from the trial of this case certain "select" opinions and testimony that Plaintiff anticipates will be offered by Northbrook's expert Karim Vellani.

Notably, Plaintiff does not seek to prevent Mr. Vellani from testifying altogether in this hotel sex-trafficking case. This is not surprising, since Plaintiff has asserted a premises liability claim in this case and Mr. Vellani is a foremost authority on security-related matters affecting hotels and motels and other

governmental, commercial and residential properties. Instead, Plaintiff seeks to prevent Mr. Vellani from testifying on four specific topics: 1) rebuttal of the testimony of Plaintiff's proffered security expert Darrell Chaneyfield; 2) comparison of sex-trafficking identification in the hotel setting to other settings, such as the healthcare setting; 3) sex-trafficking as a "clandestine" crime; and 4) the efficacy of sex-trafficking "indicators" as a means to reliably identify sex-trafficking activity.

For the reasons explained herein, Plaintiff's motion should be denied.

A.   **Rebuttal of Chaneyfield testimony**

During Mr. Vellani's deposition, Plaintiff's counsel asked Mr. Vellani whether he had read the deposition of Plaintiff's purported security expert Darrell Chaneyfield and what opinions he held with respect to that testimony. (Vellani Depo., p. 226, 230.)[1] In response, Mr. Vellani identified several areas in which he disagreed with Mr. Vellani. Plaintiff now seeks to exclude such opinions from the trial of this case. Northbrook submits that Mr. Vellani should be permitted to offer these opinions at trial.

---

[1] Mr. Vellani's deposition transcript can be found at Dkt. #109-1.

First, Plaintiff opened the door to such testimony when counsel asked Mr. Vellani his opinions on Mr. Chaneyfield's testimony. Simply because Plaintiff did not like the response does not mean that Mr. Vellani should now be silenced.

Second, as Plaintiff solicited and has received Mr. Vellani's testimony on the subject, the testimony should be allowed at trial. Plaintiff cannot claim unfair surprise because Plaintiff now knows exactly what Mr. Vellani's testimony will be and can prepare for trial accordingly.

Third, while Plaintiff complains that Northbrook did not disclose Mr. Vellani as a rebuttal expert within 30 days after Mr. Chaneyfield's disclosure as Plaintiff's expert, the material that Plaintiff's counsel invited Mr. Vellani to rebut was Mr. Chaneyfield's deposition testimony, which was given *after* the deadline for rebuttal witnesses. Mr. Vellani should not be required to anticipate a rebuttal to testimony that has not yet been given.

Finally, if the goal of a trial is the pursuit of the truth, then Mr. Vellani's rebuttal opinions should be permitted. Mr. Chaneyfield's problematic opinions should not be allowed to stand unchallenged.[2] The jury should be permitted to hear competing testimony and decide for themselves what weight to give to each.

---

[2] Of course, the other option is to exclude Mr. Chaneyfield's testimony altogether, which is what Northbrook seeks in a separate pending motion to exclude Mr. Chaneyfield. [Dkt. #100.]

3

B.    **Comparison of hospitality and healthcare settings**

In his report, Mr. Vellani discusses the difficulties inherent in identifying sex-trafficking victims at hotels and motels. (Vellani Report, pp. 9-13.)[3] In the course of this discussion, Mr. Vellani distinguishes the hospitality industry from, for example, the healthcare environment, noting that "[h]ealthcare workers have an opportunity to interact with potential victims in ways that are not possible for workers in other industries." (Id., pp. 9-10.)

Plaintiff seeks to exclude this line of testimony on the basis that the present case does not involve a healthcare setting. However, that is precisely the point of Mr. Vellani's proposed testimony. He would explain to the jury why it is so difficult for management and staff at a hotel to identify a sex-trafficking victim. Unlike, for instance, the interaction between a nurse and patient at a hospital or physician's office, the nature of the interaction between a hotel employee and a hotel "guest" is not one that would lend itself to eliciting information from which the employee could conclude that the "guest" was, in fact, a trafficking victim. Understanding the contrast between such settings would thus aid the jury in appreciating the difficulties inherent in identifying hotel sex-trafficking victims.

In support of her argument, Plaintiff relies on an excerpt from a pre-trial hearing in the Red Roof case, in which Judge Ray noted that proposed testimony

---

[3] Mr. Vellani's expert report can be found at Dkt. #109-2.

on the potential for misidentification of a trafficking victim at an airport was irrelevant in a hotel sex-trafficking case. (Plaintiff's Motion, p. 11.) However, unlike the Defendants in <u>Red Roof</u>, Northbrook is not attempting to analogize a hotel and a healthcare setting. Quite the opposite. Northbrook is using the example of the healthcare setting – familiar to most jurors – to demonstrate how the nature of the interaction between a patient and a nurse might lend itself to identification of a sex-trafficking victim, while the nature of the interaction between a hotel front-desk attendant and a hotel "guest" does not. The example supports Mr. Vellani's opinion that "hotels are not well-situated to identify victims of sex trafficking." (Vellani Report p. 13.)

### C. Clandestine nature of sex trafficking

Mr. Vellani makes the following assertion in his report:

> Sex trafficking is a transient and clandestine crime. Unlike robbery, which often occurs in the open and with victims willing to report the crime, the clandestine nature of the exploitation phase of sex trafficking makes it difficult to detect and prevent.

(Vellani Report, p. 8.)

Plaintiff asks the Court to exclude from trial Mr. Vellani's characterization of sex trafficking as a "clandestine" crime.

Plaintiff criticizes Mr. Vellani's characterization of sex trafficking as "clandestine" as "not methodologically sound." (Plaintiff's Motion, p. 13.)

5

However, that sex trafficking is "clandestine" is a premise that has been generally accepted, without more, by the courts. See, e.g., U.S. v. Atkins, Case No. 4:18-CR-00454-LPR, 2020 WL 5235779, at *3 (E.D. Ark. Sept. 2, 2020) (allowing FBI special agent to testify as an expert on sex trafficking; "[p]rostitution and sex trafficking are clandestine by nature, so I do not think it can be assumed that jurors would be familiar with or easily understand the sex trafficking industry.") (some internal punctuation omitted); Doe v. Natraj Enters., Inc., No. 2:21-cv-1565-DCN, 2021 WL3190386 at *3 (D.S.C. July 28, 2021) (allowing background allegations to remain in complaint in hotel sex-trafficking case as "they seek to illuminate a clandestine topic, such as an illegal industry intentionally obscured by its orchestrators."). Thus, Mr. Vellani's proposed testimony that sex trafficking is clandestine is not subject to scrutiny as evincing a methodology, but rather is a fact of which courts effectively have taken judicial notice, and should be permitted to come in at trial because it will aid the jury in learning about the relevant topic of how sex trafficking is conducted.[4] Indeed, the notion of sex trafficking as a

---

[4] Plaintiff derisively states that Mr. Vellani's only "methodology" was to provide a dictionary definition of "clandestine." (Plaintiff's Motion, p. 13.) In fact, the definition ("kept secret or done secretively, especially because illicit") is helpful in that it crystallizes what courts mean when they routinely describe sex trafficking as "clandestine."

"clandestine" crime is supported by Plaintiff's own testimony that she was trafficked in hotel rooms and in parked cars at the hotel.[5]

Plaintiff's complaint that Mr. Vellani lacks the requisite experience and background to describe sex trafficking as "clandestine" is also without merit. First, as stated above, the testimony presents a fact of which courts effectively have taken judicial notice – a fact that is fairly obvious, but one as to which the ramifications for the claims in this case might not be fully understood or appreciated by members of a jury without the aid of explanatory testimony. Second, Mr. Vellani does have practical experience in mitigating sex trafficking at hotels. Mr. Vellani's report describes his engagement by the City of Houston, Texas to, among other things, "identify[] threats and vulnerabilities at specific hotels, and develop[] methods for mitigating the risk of sex trafficking and vice crimes." (Vellani Report, p. 3.). He testified about this engagement at length in his deposition. (Vellani Depo., pp. 43-50.) Thus, even if there is a requirement

---

[5] Plaintiff argues that *some* aspects of her trafficking would have occurred out in the open, such as when she allegedly solicited sex in the common areas of United Inn. (Plaintiff's Motion, p. 12 n.5.) Plaintiff's counsel is certainly free to cross-examine Mr. Vellani in this regard. See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003)("A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury. Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (some internal punctuation and citations excluded).

7

that Mr. Vellani be qualified as an expert to state that sex trafficking is clandestine, he possesses the requisite qualifications to do so.

Finally, in addition to her claim under the federal sex-trafficking statute (TVPRA), Plaintiff has asserted a state law claim for premises liability. By doing so, Plaintiff has made relevant Mr. Vellani's analysis from a security perspective. Put another way, Plaintiff should not be permitted to allege her trafficking as a premises liability claim but then attempt to thwart an analysis of sex trafficking from a premises security perspective. Mr. Vellani's testimony as to the "clandestine" nature of sex trafficking will aid the jury in understanding the difficulties inherent in insulating hotel premises from a crime that its perpetrators intentionally keep hidden from view.

D.   **Efficacy of sex-trafficking "indicators"**

Plaintiff seeks to exclude Mr. Vellani's testimony on the efficacy of sex trafficking "indicators."[6] Mr. Vellani is generally dismissive of such indicators,

---

[6] Examples of what Plaintiff has referred to as "red flags" or "indicators" of sex trafficking are found at paragraph 63 of Plaintiff's Complaint, and include such things as "persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior"; "persons who dress inappropriately for their age or have lower quality clothing compared to others in their party"; and "requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room." See Complaint [Dkt. #1.]

noting that there has been no empirical testing of them. In other words, there has been no scientific study supporting the notion that the indicators actually do accurately identify sex-trafficking activity.[7]

Plaintiff seeks to exclude Mr. Vellani's testimony that there has been no empirical testing of the indicators. Tellingly, though, Plaintiff does not refute the premise of Mr. Vellani's testimony. In other words, Plaintiff herself does not point to any empirical testing of the indicators.

Rather, Plaintiff argues that whether the indicators have been empirically tested is "irrelevant" to the issues in the case. (Plaintiff's Motion, p. 14.) This assertion is remarkable, given that Plaintiff spent pages and pages of her Complaint touting the indicators, and concluding that because Northbrook failed to train its employees on such indicators it should be held liable. See, e.g., Complaint, pp. 27-29, 38-40. Plaintiff cannot rely on the indicators to prove her case but then prevent Northbrook from challenging the legitimacy of the indicators in the first place.

Plaintiff also suggests in her motion that Mr. Vellani stated that he "would refer his own clients to the same indicators if asked," which Plaintiff suggests renders Mr. Vellani's testimony "confusing" and thus subject to exclusion. (Plaintiff's Motion, p. 14-15.) But Plaintiff has not fully and fairly recounted Mr.

---

[7] The only such "indicator" to which Mr. Vellani subscribes is the renting of a hotel room by the hour, which Mr. Vellani agrees is a practice that should be prohibited as a matter of "practical sense." (Vellani Depo., p. 125.) United Inn does not rent rooms by the hour.

Vellani's testimony. When asked what he would tell a hotel client who asked for materials to train their staff on the risk of sex trafficking, Mr. Vellani described the potential for future technology that would allow a hotel to count the number of times that a hotel door is opened from the inside as a way to identify trafficking occurring in a hotel room. (Vellani Depo., pp. 135-37.) He then concluded,

> But, you know, beyond that what would I advise them? Probably not a whole lot. I mean, if they still said we still want something, then, yes, sure. I would refer back to everything else that's out there in the industry. But I'm going to say – I'm going to give them – I'm going to temper their expectations on what those things can do. That's part of my job is to educate my client. As a consultant, my job is to educate my client on what works and what doesn't, and what's promising.

(Vellani Depo., pp. 137-38.)

Thus, Mr. Vellani indicated that if pressed, he would educate a client on the literature as to so-called "indicators" of sex trafficking, but temper their expectations on the efficacy of such indicators. This is not "confusing"; it is entirely consistent with Mr. Vellani's stated concerns about the lack of empirical testing of the indicators. Moreover, Plaintiff's counsel is free to cross-examine Mr. Vellani on this issue at trial.

For the foregoing reasons, Northbrook respectfully requests that Plaintiff's motion be denied.

## **L.R. 7(D) CERTIFICATION**

The undersigned counsel hereby certifies that this Memorandum has been prepared in Times New Roman (14 point), which are font and point selections approved by the Court in L.R. 5.1(C).

Respectfully submitted,

 */s/ Dana M. Richens*
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia  30309
Telephone:  (404) 815-3659
Facsimile:  (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.
d/b/a United Inn and Suites

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date served all parties with the within and foregoing **MEMORANDUM OF LAW IN RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE AND PRECLUDE SELECT OPINIONS AND TESTIMONY FROM DEFENDANT'S EXPERT KARIM VELLANI** via the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 19th day of January, 2024.

                                                            /s/ Dana M. Richens