**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **J.G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES, INC., D/B/A UNITED INN AND SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE DARELL B. CHANEYFIELD</u>**

Even though J.G.'s security expert, Darrell Chaneyfield, has conducted thousands of security risk assessments for Intercontinental Hotel Group, one of the largest hotel groups in the world, using the same peer-reviewed methodology applied by Defendant's security expert in this case, Defendant moves to exclude Mr. Chaneyfield under *Daubert* on the basis that he is not qualified to testify about his security risk assessment of United Inn in this minor sex trafficking case. Defendant's challenge is limited to Mr. Chaneyfield's qualifications (the first inquiry under *Daubert*); it does not challenge the methodology applied by Mr. Chaneyfield to form his opinions or argue that his testimony would not assist the trier of fact in understanding the evidence or determining a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (distilling expert admissibility inquiry into three factors).

This Court should reject Defendant's motion to exclude Mr. Chaneyfield because he is qualified to testify about his security risk assessment of the United Inn, which required him to evaluate the adequacy of the hotel's security measures considering its crime and other risk factors. Mr. Chaneyfield is qualified based on his two-decade career in hospitality security, during which he has conducted thousands of hotel risk assessments, and his 15-year career as a GBI Special Agent, during which he investigated hundreds of commercial sex crimes and received training on commercial sex crimes. Considering his qualifications to perform a security risk assessment of the United Inn in this minor sex trafficking case, and that the Defendant has not challenged Mr. Chaneyfield under the remaining criteria in *Daubert* and Rule 702, *see Frazier*, 387 F.3d at 1260, Defendant's motion should be rejected. Indeed, the only remaining challenges Defendant raises—*e.g.*, whether other hotels require the security measures Mr. Chaneyfield opines United Inn should have implemented—go to the weight of his testimony, not its admissibility.

## **<u>RELEVANT LEGAL AUTHORITY</u>**

If testimony is relevant, then the standard for the admissibility of expert witness testimony is measured by Fed. R. Evid. 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

*See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). The Eleventh Circuit has distilled the expert admissibility inquiry into a three-factor test. The district court must determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems. Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).) Each of these three analytical prongs must be connected to the "task at hand," *i.e.*, the matter to which the expert seeks to testify. *Daubert*, 509 U.S. at 597.

**ARGUMENT**

This Court should reject Defendant's motion to exclude Mr. Chaneyfield because he is qualified under Fed. R. Evid. 702 and the three-factor test set forth by the Eleventh Circuit in *Frazier* following *Daubert*.

*First*, Mr. Chaneyfield "is qualified to testify competently regarding the matters he intends to address." *Frazier*, 387 F.3d at 1260. Here, he intends to testify about his security risk assessment of United Inn, a matter he is qualified to testify competently about based on his decades of experience in law enforcement and in hospitality security, as a result of which he has personally conducted thousands of threat and risk assessments of hotels.

*Second*, Mr. Chaneyfield's methodology, the International Association of Professional Security Consultants ("IAPSC") Forensic Methodology, is "sufficiently reliable as determined by the sort of inquiry mandated in Daubert." *Frazier*, 387 F.3d at 1260. Indeed, Defendant does not challenge the reliability of the IAPSC forensic methodology and Defendant's own expert purports to rely on the same methodology to reach his opinions, (Ex. 4, Vellani Dep. at 149:23; Ex. 3, Vellani Rep. at 18). *See, e.g.*, *Childress v. Kentucky Oaks Mall Co.*, No. 5:06CV-54-R, 2007 WL 2772299, at *7 (W.D. Ky. Sept. 20, 2007) ("The Court finds that the IAPSC Forensic Methodology is reliable[.]")

*Third*, Mr. Chaneyfield's testimony regarding his security risk assessment of the United Inn will "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Frazier*, 387 F.3d at 1260. Defendant does not argue otherwise. Courts routinely find that security risk assessments are relevant and helpful to the trier of fact in premises liability cases.

## I. First *Frazier* Element: Mr. Chaneyfield is Qualified to Testify Regarding the "Task at Hand"—His Security Risk Assessment of the United Inn.

Despite Mr. Chaneyfield's decades of experience in law enforcement and hospitality security, and the thousands of hotel security risk assessments Mr. Chaneyfield has conducted for IHG, one of the world's largest hotel groups, as the Director of Global Threat Management, Defendant contends that Mr. Chaneyfield is not qualified to testify about his security risk assessment of United Inn. (Doc. 100-1 at 5.) According to Defendant, Mr. Chaneyfield is not qualified because his opinions concern sex trafficking identification and prevention, and Mr. Chaneyfield is not an expert in sex trafficking. (Doc. 100-1 at 5.)[1] As such, Defendant says his opinions are unreliable. (Doc. 100-1.)

[1] As noted below, Mr. Chaneyfield was a GBI Special Agent for 15 years, during which time he investigated hundreds of commercial sex crimes. As a GBI Special Agent, he participated in training on commercial sex crimes. With IHG, he has written guidance documents on commercial sexual exploitation in the hospitality industry. While Mr. Chaneyfield's "task at hand" in this case is a security risk assessment of the United Inn, he also has significant expertise on commercial sex

Defendant misses the point by defining Mr. Chaneyfield's "task at hand" too narrowly. *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 855 (11th Cir. 2021) (explaining tendency of opponents of expert testimony to define "task at hand" too narrowly). Mr. Chaneyfield's "task at hand" was to perform a security risk assessment to determine whether United Inn exercised "reasonable care to address and to mitigate foreseeable safety and security risks to staff, guests and, and customers." (Ex. 3, Chaneyfield Rep. at 21.) Mr. Chaneyfield has the "expertise" necessary to conduct a security risk assessment of United Inn based on his training, education, experience, or skill. *Moore*, 995 F.3d at 855; *see also* Fed. R. Evid. 702. Indeed, he has performed thousands of security risk assessments for IHG as its Director of Global Threat Management. (Ex. 2, Chaneyfield Dep. at 341:12-16).

As part of conducting his security risk assessment of United Inn in this minor sex trafficking case, Mr. Chaneyfield of course had to consider the crime of minor sex trafficking. When conducting risk assessments, Mr. Chaneyfield relies upon the IAPSC Forensic Methodology, which asks security professionals to identify security risks and appropriate security countermeasures to mitigate those risks. (Ex. 2, Chaneyfield Dep. at 340:14-16, 341:12-16; Ex. 6, IAPSC Forensic Methodology; Exhibit 3, Chaneyfield Rep. at 2.). Naturally, crime is one type of security risk to

---

crimes, including sex trafficking, based on his professional experience and training as a GBI Special Agent and in hotel security.

be considered as part of a risk assessment. (Ex. 6, IAPSC Forensic Methodology; Ex. 2, Chaneyfield Dep. at 343:24-344:2). And so, Mr. Chaneyfield considers crime risks, among other risks, as part of his security risk assessments. (Ex. 2, Chaneyfield Dep. at 343:12-344:9). Because sex trafficking is a type of crime, Mr. Chaneyfield considers the risk of criminal sex trafficking, among other crime risks, as part of the security risk assessments he routinely conducts.

J.G. addresses in further detail below why Mr. Chaneyfield is qualified to conduct a security risk assessment of United Inn, and how Defendant improperly narrows Mr. Chaneyfield's "task at hand" in an effort to exclude his testimony.

**a. Mr. Chaneyfield Is Qualified to Conduct Security Risk Assessments of Hotels.**

Mr. Chaneyfield is qualified to conduct security risk assessments of hotels based on his education, training, membership in selective, gold-standard organizations for security professionals, thirty-five years of professional work experience in law enforcement and hospitality security, and performance of thousands of security risk assessments for IHG.

In 1985, Mr. Chaneyfield obtained a Bachelor of Science degree in Criminology from South Carolina State University. (Ex. 3, Chaneyfield Rep. at 3.) After obtaining his degree, he spent two years working as a patrol officer in Smyrna, Georgia. (Ex. 3, Chaneyfield Rep. at 3.) He then served fifteen years as an Assistant Special Agent for the Georgia Bureau of Investigation, where he "investigated sex

crimes, including prostitution and sex trafficking." (Ex. 3, Chaneyfield Rep. at 3.) Over 15 years as a GBI Special Agent, he was involved in more than one hundred investigations relating to violent crimes, including commercial sex crimes. (Ex. 1, Chaneyfield Dep. at 80:4-23.) Mr. Chaneyfield also received training on prostitution and sex trafficking while working for GBI. (Ex. 3, Chaneyfield Rep. at 3; Ex. 1, Chaneyfield Dep. at 173:1-5, 174:12-16.)

In 2002, Mr. Chaneyfield left the GBI to work for IHG, one of the world's largest hotel chains. (Ex. 3, Chaneyfield Rep. at 3.) Mr. Chaneyfield has served in various roles with IHG, including as the Director of Security for the Americas Region and as the Director of Global Threat Management, his current role. As Director of Security for the Americas Region, Mr. Chaneyfield wrote guidance notes for hotels on a variety of topics, including commercial sexual exploitation in hotels. (Ex. 1, Chaneyfield Dep. at 189:3-9.) In his current position as Director of Global Threat Management, Mr. Chaneyfield is responsible for (1) the strategic development of comprehensive security and threat management functions for over 6,000 hotels globally, (2) the development and execution of intelligence led threat-based management strategy, and (3) the development and execution of a process for continuous risk and threat assessments to identify current and emerging threats to employee and guest safety. (Ex. 3, Chaneyfield Rep. at 4.) In his current role, Mr. Chaneyfield has performed thousands of security risk assessments for IHG hotels.

(Ex. 2, Chaneyfield Dep. at 341:14-16.) In doing so, he follows the IAPSC forensic methodology. (Ex. 2, Chaneyfield Dep. at 340:14-16.)

Mr. Chaneyfield is also qualified to perform security risk assessments based on his membership in premier security organizations, including the IAPSC and the American Society of Industrial Security ("ASIS"). (Ex. 3, Mr. Chaneyfield Rep. at 5.) According to Defendant's security expert, membership in these organizations is the "gold standard in the security industry." (Ex. 5, Vellani Dep. at 18:25, 207:15-23.) Defendant's security expert says that IAPSC not only "maintains the highest standards for security consultants in the industry," it also verifies that its members are qualified "security consultants." (Ex. 5, Vellani Dep. at 207:15-23, 208:4-5.)

In sum, Mr. Chaneyfield's education, training, work experience, and professional associations establish that he is preeminently qualified to perform hotel security risk assessments.

**b. Mr. Chaneyfield is Qualified to Testify Competently regarding His Security Risk Assessment of the United Inn.**

Because Mr. Chaneyfield is qualified to conduct security risk assessments of hotels, he is qualified for the task at hand—his performance of a security risk assessment of United Inn. Mr. Chaneyfield's opinions in this case are based upon his security risk assessment of the United Inn. (Ex. 1, Chaneyfield Dep. at 15:11-14; Ex. 2, Chaneyfield Dep. at 402:2-10.)

In forming his opinions, he relied upon the IAPSC Forensic Methodology, like he always does. (Ex. 2, Chaneyfield Dep. at 340:14-16.) Because Mr. Chaneyfield is qualified to conduct security risk assessments of hotels and he conducted such an assessment of United Inn here using the gold-standard methodology, he is qualified to testify competently regarding his security risk assessment of the United Inn.

Defendant's attack on Mr. Chaneyfield is based on a distortion of the "task at hand." Defendant suggests that Mr. Chaneyfield is really acting as a purported expert in the identification and prevention of sex trafficking, but that he lacks qualifications to do so and, thus, his opinions are unreliable. (Doc. 100-1 at 5-10.) Setting to the side Mr. Chaneyfield's considerable professional experience with commercial sex crimes, *see* FN 1, Defendant misses a critical point: security risk assessments consider security risks, which include crime risks, which include sex trafficking crimes. (Ex. 2, Chaneyfield Dep. at 343:15-344:2; Ex. 6, IAPSC Forensic Methodology). Defendant ignores Mr. Chaneyfield's thousands of security risk assessments for IHG and analyzes whether Mr. Chaneyfield is an expert in sex trafficking crimes under a microscope. By doing so, Defendant misses the forest for the trees. Mr. Chaneyfield is an expert in security risk assessments of hotels, which, by definition, include consideration of sex trafficking crimes, among other crime risks. The task at hand is a security risk assessment of United Inn, and Mr.

Chaneyfield is qualified to testify competently regarding his assessment of the United Inn in this minor sex trafficking case.

## II. Second *Frazier* Element: Mr. Chaneyfield's Opinions Are Based on His Reliable Application of a Reliable Methodology—the IAPSC's Forensic Methodology.

Defendant does not challenge the second *Frazier* element—*i.e.*, whether Mr. Chaneyfield reliably applied a reliable methodology—and therefore concedes that he did.

Even though Defendant does not challenge Mr. Chaneyfield's reliance on the IAPSC methodology, a few points must be made that are relevant to other challenges Defendant raises addressed below. Both parties' security experts formed their opinions by performing a security risk assessment of United Inn based on the IAPSC's Forensic Methodology. (Ex. 4, Vellani Rep. at 36; Ex. 3, Chaneyfield Rep. at 23). The methodology is peer-reviewed and consensus-based. (Ex. 6, IAPSC Forensic Methodology at 2.) It relies upon an evidence-based review process and requires the expert to perform a "Risk Assessment." (Ex. 6, IAPSC Forensic Methodology at 3.) "A risk assessment is the general process of identifying relevant risks, given the facts of the case." (Ex. 6, IAPSC Forensic Methodology at 3.) The methodology requires the expert to utilize their judgment and discretion when determining what materials to review, but recommends consideration of certain types of material. (Ex. 6, IAPSC Forensic Methodology at 4.) As Defendant's expert

agreed: the methodology is not a quantitative, mathematical formula, but instead a qualitative assessment prepared by a security professional based on their discretion, experience, and expertise. (Ex. 5, Vellani Dep. at 213:1-10.) Well-qualified security experts applying the methodology can reach different opinions based on their different education, training, and experience in the security field. (Ex. 5, Vellani Dep. at 213:1-10.)

When properly conducted, the methodology permits the expert to "reach conclusions on the issues of risk analysis, preventability, and the adequacy of the security program at the subject property." (Ex. 6, IAPSC Forensic Methodology at 6.) As such, the analysis is focused on whether the property's security measures were reasonable considering "foreseeable safety and security risks to staff, guests, and customers." (Ex. 3, Chaneyfield Rep. at 21.)

Despite not challenging whether Mr. Chaneyfield reliably applied the methodology in conducting his security assessment of United Inn, Defendant makes broad sweeping assertions that Mr. Chaneyfield's opinions should be excluded as "unreliable." (Doc. 100-1 at 12-23.) Defendant's contention that Mr. Chaneyfield's opinions are "unreliable" fall short because Defendant does not challenge the methodology by which Mr. Chaneyfield reached his conclusions—which is the same methodology that its own expert applied. Further, the so-called reliability challenges that Defendant makes are, in fact, challenges to the weight of Mr. Chaneyfield's

opinions. As explained in section IV below, Defendant's reliability challenges are proper fodder for cross examination at trial, not a ground for exclusion.

## III. Third *Frazier* Element: Mr. Chaneyfield's Opinions Based on His Security Risk Assessment of the United Inn Will Assist the Trier of Fact Through Application of Specialized Expertise to Understand the Evidence or Determine a Fact in Issue.

Defendant does not challenge the third *Frazier* element—*i.e.*, whether Mr. Chaneyfield's expert opinions will assist the trier of fact to understand the evidence or determine a fact in issue—and therefore concedes it. Indeed, Defendant hired its own security expert presumably because security risk assessments may be relevant and helpful to the trier of fact in premises liability cases.

## IV. Defendant's Remaining Attacks on Mr. Chaneyfield Go to the Weight of His Opinions, Not Their Admissibility, Reliability, or Relevancy.

Defendant challenges a series of Mr. Chaneyfield's opinions for their "reliability."[2] Defendant's arguments about Mr. Chaneyfield's individual opinions do not justify outright exclusion of Mr. Chaneyfield's expert testimony because the

---

[2] J.G. puts "reliability" in quotes because Defendant has not raised a proper *Daubert* challenge to the reliability of the IAPSC methodology that Mr. Chaneyfield applied or to his application of the methodology. Indeed, Defendant's motion does not address either of those issues, presumably because Defendant's expert purported to follow the same methodology. Instead, Defendant characterizes certain of Mr. Chaneyfield's conclusions as "unreliable" outside of the *Daubert* framework. Defendant's challenges to the reliability of Mr. Chaneyfield's opinions go to weight, not admissibility.

challenges go to the weight of his opinions, not their admissibility, reliability, or relevancy.

Most of Defendant's contentions focus on the term "industry standard" in several of Mr. Chaneyfield's opinions. Defendant argues that Mr. Chaneyfield's opinions that refer to "industry standard" are not reliable if he does not know whether other hotels in the industry require the same security measures he opines United Inn should have implemented given its risk profile.

But Defendant's arguments about the term "industry standard" reflect misunderstanding of Mr. Chaneyfield's use of the term and conflict with the definition that both parties' expertise agree to: the "industry standard" for hotels is to "exercise reasonable care to address and to mitigate foreseeable safety and security risks to staff, guests, and customers." (Ex. 3, Chaneyfield Rep. at 21; Ex. 4, Vellani Rep. at 36.) This definition is not only the consensus definition between the parties' respective security experts, but it also makes sense in the context of a premises liability case; every property presents unique security concerns and needs.[3]

[3] The security needs of a Bed and Breakfast in rural Vermont are not comparable to the security needs of a hotel on Memorial Drive in Dekalb County, Georgia. This is why Mr. Chaneyfield testified repeatedly that security risk assessments are based upon "location and time specific" circumstances and conditions. (Ex. 2, Chaneyfield Report at 375:1-9). Likewise, the IAPSC Forensic Methodology says, "[t]he security expert will determine the level of adequacy of security at the location of the incident on the date and at the time the incident occurred." (Ex. 6, IAPSC Forensic Methodology at 6).

Defendant ignores that different hotels require different security measures because context matters. Regardless, Defendant's point about "industry standard" in Mr. Chaneyfield's opinions is for cross examination, and pertains to the weight of his opinions, not their admissibility.

Further, Defendant's arguments about the reliability of Mr. Chaneyfield's individual opinions are based on a flawed premise—that the IAPSC methodology required Mr. Chaneyfield to consider certain factors that Defendant has cherry-picked, even though the methodology explicitly does not. As discussed, the methodology permits qualified security professionals, like Mr. Chaneyfield, to use their discretion and judgment based on their education, training, and experience in the security field.[4] That is what he did.

**a. Mr. Chaneyfield's First Opinion—that Anti-Trafficking Materials and Trainings Were Widely Available to Hotel Operators—Is Reliable and Relevant.**

Defendant first contends that Mr. Chaneyfield's opinion that anti-trafficking materials were free and widely available in the period prior to Plaintiff's trafficking at United Inn is unreliable and irrelevant. (Doc. 100-1 at 12.) In support, Defendant highlights that the only training materials Mr. Chaneyfield knew of from that period

[4] To the extent that this argument could be construed as a contention that Mr. Chaneyfield relied upon insufficient facts or data in applying the IAPSC's Methodology, that argument must be rejected because it would be based upon a fundamental misrepresentation of what the IAPSC Methodology requires as well as what the term "industry standard" means in the context of this case.

were those published by the United States Department of Homeland Security. (Doc. 100-1 at 12.)

Defendant's motion to exclude Mr. Chaneyfield's first opinion must be denied for two reasons. First, Defendant does not challenge Mr. Chaneyfield's application of the IAPSC's Forensic Methodology, and, therefore, Defendant has not properly challenged the reliability of Mr. Chaneyfield's first opinion under *Daubert*. (Doc. 100-1 at 12.) Second, Defendant ignores that the Department of Homeland Security is one of this Country's premier law enforcement agencies. Defendant's own security expert acknowledged that he would refer his clients to Homeland Security's sex trafficking materials if the clients were intent on addressing the risk of sex trafficking at their hotels. (Ex. 5, Vellani Depo. at 137:19-23.) Whether other hospitality trade groups had free, publicly accessible anti-trafficking materials available during the period in question does not impact the reliability of Mr. Chaneyfield's opinion about the availability of free anti-trafficking training materials. It goes to the weight of the opinion. *See In re Abilify (Aripiprazole) Products Liability Litigation*, 299 F. Supp. 3d 1291, 1317 (N.D. Fl March 15, 2018) (alleged inadequacies impacted the weight of the testimony, but not reliability or admissibility under *Daubert*.)

**b. Mr. Chaneyfield's Second Opinion—that United Inn Fell Below the Industry Standard By Failing To Provide Formal Anti-Trafficking Training Materials And Training For Hotel Staff—Is Reliable.**

Defendant next contends that Mr. Chaneyfield's second opinion must be excluded as unreliable. (Doc. 100-1 at 14.) Once again, Defendant does not contend that Mr. Chaneyfield's application of the IAPSC's Forensic Methodology was unreliable under *Daubert*, and, therefore, does not raise a proper *Daubert* challenge. (Doc. 100-1 at 14.) Instead, Defendant contends that Mr. Chaneyfield's opinion is unreliable because he was unable to identify what all hotels were doing between 2017 and 2019 with respect to anti-trafficking training. (Doc. 100-1 at 14.)

Defendant's argument is again based on a fundamental misunderstanding of the term "industry standard" as used in Mr. Chaneyfield's report. (Doc. 100-1 at 14.) The IAPSC's methodology provides the relevant framework to assess whether a hotel's security measures aligned with the experts' definition of "industry standard." It says that the decision to review certain materials "is at the judgment/discretion of the expert." (Ex. 6, IAPSC Methodology at 4.) Defendant's expert agrees that the IAPSC Forensic Methodology is not a mathematical formula, but instead requires use of discretion, experience, and expertise. (Ex. 5, Vellani Dep. at 213:1-10.)

Accordingly, Mr. Chaneyfield was free to use his "judgment/discretion" under the applicable methodology used by both experts—which Defendant does not challenge anyway—to determine which materials were necessary to review to form his opinion about whether United Inn "exercise[d] reasonable care to address and to mitigate foreseeable safety and security risks to staff, guests, and customers."

Nothing in the IAPSC methodology required him to collect data on what all participants in the hospitality industry were doing between 2017 and 2019 as Defendant suggests. Defendant is of course free to cross examine him about his use of his "judgment/discretion" under the methodology in forming his opinions.

**c. Mr. Chaneyfield's Third Opinion—that United Inn Failed to Follow Hotel Safety and Industry Standards Pertaining to Guest Security and Safety—Is Reliable And Relevant And Defendant's Challenges Go To The Weight Of The Opinion.**

Defendant moves to exclude Mr. Chaneyfield's third opinion—that United Inn failed to follow hotel safety and industry standards during the relevant period pertaining to guest security and safety, and that United Inn also failed to follow industry standards on assessing risk of commercial sexual activities and responding accordingly—on the basis that it is both unreliable and irrelevant. (Doc. 100-1 at 15.) In making this challenge, Defendant also challenges the eight supporting reasons that Mr. Chaneyfield provided for the opinion. (Doc. 100-1 at 15.)

Defendant's motion to exclude Mr. Chaneyfield's third opinion must be denied, because it once again relies upon an incorrect definition of industry standard. Furthermore, Defendant again does not challenge Mr. Chaneyfield's application of the IAPSC's Forensic Methodology, and thus Defendant does not raise a proper *Daubert* reliability challenge. Finally, Defendant's challenges should be rejected because they necessarily go to the weight of the opinion, not its admissibility or reliability.

**i. First Supporting Reason for Third Opinion: United Inn Had Pervasive Crime Year After Year.**

Defendant contends that Mr. Chaneyfield's first supporting reason for his third opinion is unreliable and irrelevant, and therefore must excluded, because Mr. Chaneyfield did not distinguish between stranger crimes and non-stranger crimes when assessing whether United Inn's security measures were reasonable. (Doc. 100-1 at 15.) According to Defendant, this is fatal because there is no proven association shown between a purported proliferation of stranger crimes and the incidence of sex trafficking. (Doc. 100-1 at 15.)

But the IAPSC Forensic Methodology does not require Mr. Chaneyfield to distinguish between stranger and non-stranger crimes when forming his opinions. It says the expert "***may*** consider the relationship between offenders and victims (e.g. interpersonal, domestic, targeted, etc.)." (Ex. 6, IAPSC Forensic Methodology at 4). Even if the methodology did require such a distinction, Defendant's motion does not challenge Mr. Chaneyfield's application of the methodology. This challenge, like the others, goes to the weight that the opinion should be afforded by a jury and thus does not represent a proper basis for exclusion.

**ii. Second Supporting Reason for Third Opinion: United Inn's Hiring of One Security Guard Was Inadequate.**

Defendant next contends that Mr. Chaneyfield's second supporting reason for his third opinion is unreliable and irrelevant, and therefore must be excluded,

because Mr. Chaneyfield did not conduct a site visit and offered no empirical data on what a sufficient security detail for a property like United Inn would be. (Doc. 100-1 at 16.) This argument is once again based on misapplication of the IAPSC's methodology and the term "industry standard" in Mr. Chaneyfield's opinions. In the present case, after applying the IAPSC methodology, Mr. Chaneyfield concluded that United Inn's choice to hire one nighttime security guard, for four hours per day, was not reasonable considering United Inn's location and historical crime data. The IAPSC Methodology does not require the security expert to perform a site visit as part of a risk assessment. (Ex. 6, Forensic Methodology at 4). Regardless, Mr. Chaneyfield has viewed the property and is familiar with the layout.[5] (Ex. 2, Chaneyfield Dep. at 356:19-357:2.) Defendant's challenge here is fodder for cross examination at trial, but not a basis for exclusion.

**iii. Third Supporting Reason for Third Opinion: United Inn's Failure to Document Communications Between Security Staff and The Hotel's Operators Fell Below the Industry Standard.**

Defendant contends that Mr. Chaneyfield's third supporting reason for his third opinion is unreliable and irrelevant, and therefore must be excluded, because Mr. Chaneyfield allegedly could not identify other hotels with policies requiring

[5] "Not all cases will require site inspections, nor is it always possible to conduct site views … Further, the facts of some cases and potential liability issues are not related to the site/property layout, design, or other physical attributes. As such, a site inspection may be unnecessary." (Ex. 6, IAPSC Forensic Methodology at 5.)

written communications between a hotel and its security officers. (Doc. 100-1 at 17.) This argument is again based upon Defendant's misunderstanding of the term "industry standard" in Mr. Chaneyfield's opinions. Further, Mr. Chaneyfield's familiarity (or lack thereof) with other hotels' requirements on security documentation goes the weight of his opinion, not to its reliability or admissibility.

**iv. Fourth Supporting Reason for Third Opinion: United Inn Used a Reactive Approach to Crime But Should Have Used a Proactive Approach.**

Defendant next contends that Mr. Chaneyfield's fourth supporting reason for his third opinion is unreliable and irrelevant, and therefore must be excluded, because Mr. Chaneyfield allegedly can offer no empirical evidence that better record-keeping and/or maintenance of security logs could have prevented sex trafficking. (Doc. 100-1 at 17.) Defendant's argument fails, however, because the IAPSC methodology does not ask the expert to publish a peer-reviewed academic article, it asks for the expert to prepare a "qualitative analysis based on the experience, education, and training of the expert" that considers the framework set forth in the methodology. (Ex. 6, IAPSC Forensic Methodology at 6). Again, Defendant does not challenge Mr. Chaneyfield's use of the methodology, which Defendant's expert used too. Defendant's challenge goes to the weight, not the reliability or admissibility, of Mr. Chaneyfield's opinion.

**v. Fifth Supporting Reason for Third Opinion: United Inn's Failure to Monitor Vice Websites, Such As Backpage, Fell Below the Industry Standard.**

Defendant next contends that Mr. Chaneyfield's fifth supporting reason for his third opinion is unreliable and irrelevant, and therefore must be excluded, because Mr. Chaneyfield allegedly could point to no source for his opinion that monitoring websites with commercial sex ads was an "industry security standard" by 2017. (Doc. 100-1 at 18.) This argument again misrepresents the IAPSC's methodology and the "industry standard" in Mr. Chaneyfield's opinions. The question is whether United Inn's failure to monitor vice websites such as Backpage was reasonable considering the crime threat posed to the property. Defendant's challenge goes to weight, and is not a basis for exclusion.

**vi. Sixth Supporting Reason for Third Opinion: United Inn Failed to Conform to Industry Standards By Not Monitoring Online Reviews.**

Defendant next contends that Mr. Chaneyfield's sixth supporting reason for his third opinion is unreliable and irrelevant, and therefore must be excluded, because Mr. Chaneyfield's own employer may not have a policy requiring individual hotel properties to monitor online reviews and he is not aware of other hotel groups with such a requirement. (Doc. 100-1 at 18.) This argument again misrepresents the IAPSC methodology and the "industry standard" in the hotel security related context. The methodology does not require Mr. Chaneyfield to point to other hotels,

but rather to use his "experience, education, and training" to determine whether it was reasonable for United Inn not to monitor online reviews considering its crime history. As such, this argument does not constitute a proper basis for exclusion, but rather goes to the weight of the testimony.

**vii. Seventh Supporting Reason for Third Opinion: Employee Background Checks Are Necessary to Take Reasonable Measures To Protect Guests and Patrons.**

Defendant next contends that Mr. Chaneyfield's seventh supporting reason for his third opinion is unreliable and irrelevant, and therefore must be excluded, because Mr. Chaneyfield was unable to present evidence that employee background checks were "industry standard" and because Mr. Chaneyfield did not know whether the American Hotel & Loding Association recommended such checks. (Doc. 100-1 at 19.) This argument again misrepresents the IAPSC methodology and the term "industry standard" in Mr. Chaneyfield's opinions. The methodology asked Mr. Chaneyfield to consider the "reach conclusions on … the adequacy of the security program at the subject property." (Ex. 6, IAPSC Forensic Methodology at 6). In doing so, he considered United Inn's failure to conduct background checks, and used his "experience, education, and training" under the IAPSC methodology to form an opinion on the appropriateness of that choice. (Ex. 6, IAPSC Forensic Methodology at 6). As such, this argument does not constitute a proper basis for exclusion, but rather goes to the weight of the testimony.

**viii. Eighth Supporting Reason for Third Opinion: United Inn's Failure to Take Further Action With Be On The Lookout Notice about J.G. Was Not Reasonable.**

Defendant next contends that Mr. Chaneyfield's eighth supporting reason for his third opinion is unreliable and irrelevant, and therefore must be excluded, because Mr. Chaneyfield does not know what hotels' or companies' policies are on handling Be On the Lookout notices from law enforcement. (Doc. 100-1 at 19.) This argument once again misrepresents the IAPSC's methodology and the "industry standard" in Mr. Chaneyfield's opinions. In following the IAPSC methodology, Mr. Chaneyfield considered United Inn's handling of the BOLO notice about J.G. being a "missing" 16-year-old at the property for three weeks. As such, this argument does not constitute a proper basis for exclusion, but rather goes to the weight of the testimony.

**d. Mr. Chaneyfield's Fourth Opinion Is Not Only Relevant, But Also Reliable, And Defendant's Challenges Go to its Weight.**

Defendant's challenge to Mr. Chaneyfield's fourth opinion again misunderstands the definition of the term "industry standard" in the context of this case, which is taking reasonable measures to mitigate foreseeable risks. Furthermore, Defendant also does not challenge Mr. Chaneyfield's application of the IAPSC methodology, which provides the basis for his opinion. Finally, Defendant's challenges should also be rejected because they do not go to the reliability of the opinion, but rather the weight that the jury may give it.

**V. Mr. Chaneyfield's Opinions, Which Were Reached Using The IAPSC's Forensic Methodology, Are Relevant.**

Defendant contends throughout its brief that Mr. Chaneyfield's opinions are not "relevant." Not so. Mr. Chaneyfield's opinions are highly relevant to determining one of the key facts of this case: whether Defendant "exercise[d] reasonable care to address and to mitigate foreseeable safety and security risks to staff, guests, and customers." (Ex. 3, Chaneyfield Rep. at 21; Ex. 4, Vellani Rep. at 36.) Presumably, that is why Defendant has hired its own security expert.

**CONCLUSION**

For these reasons, Defendant's motion to exclude should be denied.

This 19th day of January, 2024.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*

Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 19th day of January, 2024.

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*