IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No. 1:20-cv-05233-SEG |
| | ) | |
| NORTHBROOK INDUSTRIES, INC., | ) | |
| d/b/a UNITED INN AND SUITES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF**
**PLAINTIFF'S EXPERT DARRELL B. CHANEYFIELD**

Defendant Northbrook Industries, Inc., d/b/a United Inn & Suites ("Northbrook"), submits this Reply in further support of its motion to exclude from the trial of this case the testimony of Plaintiff's purported expert Darrell B. Chaneyfield.

**A. Mr. Chaneyfield lacks the requisite qualifications to testify as an expert in this matter.**

Mr. Chaneyfield lacks the qualifications to testify at trial on security in the hospitality industry as relates to sex trafficking and prevention.

Hoping to mask Mr. Chaneyfield's lack of relevant qualifications, Plaintiff describes Mr. Chaneyfield's "task at hand" as a security risk assessment. In fact, Plaintiff uses the generic term "security risk assessment" as a mantra, invoking the term more than three dozen times in her brief, arguing repeatedly that Mr. Chaneyfield has performed "thousands" of "security risk assessments." See, e.g., Plaintiff's Response, p. 6 ("Indeed, he has performed thousands of security risk assessments for IHG as its Director of Global Threat Management. (Ex. 2. Chaneyfield Dep. at 341:12-16.))."

In actuality, Mr. Chaneyfield's deposition testimony is unclear as to how many security risk assessments he has performed. The testimony to which Plaintiff cites in her brief appears to be a reference to the number of IHG hotels "in the pipeline," not the number of risk assessments. See Chaneyfield Depo. Vol. II, [Dkt. #101-2], p. 341. Elsewhere, Mr. Chaneyfield states, regarding risk assessments, that he's "done about four, maybe." [Id., p. 340.] He then testified that he personally does not perform risk assessments at all, but that "it's done by [a] third party who actually does the risk assessment. And they use data points and they send that information to me in the form of actionable intelligence." [Id., p. 342.]

Moreover, even if Mr. Chaneyfield truly were routinely performing security risk assessments, that does not in and of itself qualify him to testify on subject

matter relevant to this case. That is because not all security risk assessments are created equal. There is no indication that Mr. Chaneyfield has ever previously performed a risk assessment relating to sex trafficking. Instead, for example, Mr. Chaneyfield testified as to a risk assessment he performed as to the air intake at a hotel property. See Chaneyfield Depo., Vol. I [Dkt. #101-1], p. 186. There is nothing about that assignment that would in any way qualify him to assess the adequacy of a hotel's efforts to identify and prevent sex trafficking, as he conceded:

> Q: . . . Did any of that have anything to do with human trafficking?
>
> A: No, sir.
>
> Q: Sex trafficking?
>
> A: No, sir.
>
> Q: Prostitution?
>
> A: No, sir.

[Id.]

Plaintiff's response brief similarly mischaracterizes Mr. Chaneyfield's professional qualifications. While Plaintiff's brief touts Mr. Chaneyfield's "15-year career as a GBI Special Agent, during which he investigated hundreds of commercial sex crimes and received training on commercial sex crimes,"

[Plaintiff's Response, p. 2], Mr. Chaneyfield's own deposition testimony tells a different story:

> Q: As part of your employment for the GBI, did you investigate crimes?
>
> A: Yes, sir.
>
> Q: Did you investigate sex trafficking crimes?
>
> A: Victims of, when they were killed, I did work those. But not actually the sex – the actual sex trafficking part of it. I did – most of those were assaults and robberies. And I was focused on the assault piece, not the sex trafficking piece. . . .
>
> . . .
>
> Q: Were you trained specifically in how to identify sex trafficking while you were employed at the GBI?
>
> A: No, sir.
>
> Q: All right. And as part of the sex crimes, what type of training did you receive on sex trafficking?
>
> A: It's been so long sir, I don't know.

[Chaneyfield Depo., Vol. I, pp. 170-73.]

Likewise, while Plaintiff's brief states that Mr. Chaneyfield has written "guidance notes" for IHG hotels on "commercial sexual exploitation in hotels," [Plaintiff's Response, p. 8], Mr. Chaneyfield's own testimony debunks this characterization:

Q: . . . Between 2007 and 2012 when you provided guidance to the GMs, did you ever provide guidance on sex trafficking?

A: I don't know.

Q: Did you ever provide guidance on human trafficking?

A: I don't know.

. . .

Q: All right. But just to be clear – and I know you answered this. Nothing about sex trafficking, correct?

A: No, sir.

[Id., pp. 188-89.][1]

In sum, Mr. Chaneyfield's opinions should be excluded because he lacks the qualifications to offer competent expert testimony in this matter. Mr. Chaneyfield has never performed a security risk assessment as to the threat to or vulnerability of a hotel as relates to sex trafficking.[2] Nor has he had any training on the subject

[1] Mr. Chaneyfield has not produced any of his so-called "guidance notes," as they apparently are proprietary to IHG, and Mr. Chaneyfield has not informed IHG that he is serving as an expert in this matter while purportedly working full-time for IHG.

[2] In contrast, Northbrook's security expert, Karim Vellani, was hired by the City of Houston, Texas to assistant the mayor's office by, inter alia, identifying sex trafficking threats and vulnerabilities at specific hotels and developing methods for mitigating the risk of sex trafficking and vice crimes. See Karim Vellani Expert Report [Dkt. # 109-2], p. 3.

matter, or relevant experience, that would otherwise qualify him to make such an assessment. He lacks the relevant qualifications needed to testify.[3]

### B. Mr. Chaneyfield's opinions are not the product of any reliable methodology.

Mr. Chaneyfield's opinions should be excluded because they are not the product of a reliable methodology as required by Rule 702 of the Federal Rules of Evidence.

Mr. Chaneyfield purports to have used the Forensic Methodology of the International Association of Professional Security Consultants ("IAPSC") in reaching certain of his conclusions. The Forensic Methodology calls for a "risk assessment":

> A risk assessment is the general process of identifying relevant risks, given the facts of the case. It is a qualitative, quantitative, or hybrid assessment that seeks to determine the likelihood that criminals could successfully exploit a vulnerability or comprise a security countermeasure.
>
> There are two main components to a risk assessment: a threat assessment and a vulnerability assessment. The threat assessment is an evaluation of the various sources for crime threats. The vulnerability assessment includes an evaluation of the physical aspects

[3] Moreover, Mr. Chaneyfield fails to explain how conducting security risk assessments, or any other of his life training, education or experience, supposedly qualifies him to testify about what sex trafficking materials were available to the hospitality industry during the relevant time period, as he purports to do in his Opinions 1 and 2.

> of the facility and an analysis of the overall security program as it relates to the specific facts of the case.

See IAPSC Forensic Methodology [Dkt. #118-6], p. 3.

Northbrook agrees that the IAPSC Forensic Methodology itself represents a tested and reliable methodology. The problem, however, is that Mr. Chaneyfield didn't really use the IAPSC Forensic Methodology in reaching his conclusions. He merely pays lip service to the Forensic Methodology, stating in conclusory fashion that his opinions were based on the Forensic Methodology, see, e.g., Chaneyfield Report, [Dkt. #100-4], p. 23, and then parroting in a footnote the components of a risk assessment using the Forensic Methodology. Compare id. at n.11 with Forensic Methodology excerpt above.

Mr. Chaneyfield never explains how he used the Forensic Methodology to reach his conclusions. By way of example, Mr. Chaneyfield does not purport to have used the Forensic Methodology, or any methodology at all, for his Opinion 1. See Chaneyfield Depo., Vol. II, p. 300. Similarly, when asked the basis for his Opinion 4, Mr. Chaneyfield's testimony was not that he had performed a risk assessment, but that *Northbrook* should have performed a risk assessment. Id., p. 402.

As for his Opinions 2 and 3, neither Mr. Chaneyfield's report, nor his deposition, contains his risk assessment or an explanation of how he used the Forensic Methodology to reach his opinions.

Mr. Chaneyfield's report and conclusions thus stand in stark contrast to those of Karim Vellani, Northbrook's security expert, whose expert report is his application of the Forensic Methodology to the instant case.[4]

**C. Mr. Chaneyfield has hopelessly conflated "industry standard" with "duty of care" in a manner that would confuse the jury.**

The gravamen of Mr. Chaneyfield's Opinions 2, 3 and 4 is that Northbrook fell below "industry standards" in one or more areas. See, e.g., Opinion 2, Chaneyfield Report [Dkt. #100-4] p. 12 ("The United Inn fell far below the **industry standard** by failing to provide formal anti-trafficking training materials . . . .") Opinion 3, p. 13 ("United Inn failed to follow hotel safety and security **industry standards** during the relevant period pertaining to guest security and safety. The United Inn also failed to follow **industry standards** on assessing risk of commercial sexual activities and responding accordingly."); Opinion 4, p. 20 ("[W]ith adequate training and security measures in effect at the United Inn consistent with **industry standards** during the relevant time, it is more likely than not that the subject incidents described in the Complaint[] could have been prevented or avoided.") (emphasis added).

---

[4] Northbrook's expert Mr. Vellani is the past president of the IAPSC. He currently serves on the IAPSC Forensic Committee and chairs the IAPSC's Evidence-Based Security Practices Committee. [Karim Vellani Expert Report, p. 4.]

But in its initial memorandum [Dkt #100-1], Northbrook detailed at length Mr. Chaneyfield's lack of knowledge of anything that has actually occurred in the hotel industry as relates to sex trafficking identification and prevention, including involving his own long-time employer, IHG. For instance, Mr. Chaneyfield does not know whether any hotels, including IHG, accept the so-called "indicators" as a reliable method of identifying sex trafficking. [Northbrook Memo., p. 13.] He does not know whether IHG or other hotels had disseminated anti-trafficking training materials to its employees as of 2017. [Id., p. 14.] He cannot name any hotel group or individual hotel owner/operator who has a written policy requiring written communications with security officers, nor does he even know whether IHG has such a standard. [Id., p. 17.] He cannot name any hotel group that was monitoring commercial sex websites in 2017, and does not know whether IHG was doing so. [Id., p. 18.] He is not aware of any other hotel groups with a requirement of monitoring online reviews during the relevant time period. [Id.] He does not know whether the AHLA, an industry trade association, recommends employee background checks. [Id., p. 19.] He does not know of any hotel brands or companies, including IHG, with policies on handling BOLOs. [Id.] And yet, with respect to each of these topics, Mr. Chaneyfield wildly concludes that Northbrook failed to meet "industry standards."

In her response brief, Plaintiff argues that when Mr. Chaneyfield referred to something as "industry standard," what he really meant was that it met the requisite duty of care. In this way, Mr. Chaneyfield has hopelessly conflated the term "industry standard" with "duty of care," which are two very different things.

What is "industry standard" in the hospitality industry refers to what is typical practice among service providers. In contrast, the duty of care of a hotelier is "to exercise ordinary care in keeping the premises and approaches safe." See O.C.G.A. § 51-3-1; see also Complaint for Damages, ¶ 86 (alleging that Northbrook "owed a duty to invitees to the United Inn, including Plaintiff, to exercise ordinary care in keeping the premises and approaches of United Inn safe from criminal activity, especially minor sex trafficking."). The two are not synonymous. In fact, Plaintiff's own comparison of a "Bed and Breakfast in rural Vermont" with "a hotel on Memorial Drive in Dekalb County, Georgia," [Plaintiff's Response, p. 14 n.3], provides a useful illustration of the difference. It could be, for example, that it is "industry standard" for lodging businesses to implement a particular security feature – that is, it is typical for lodging businesses to do so. It could also be that the proprietor of the remote Vermont Bed and Breakfast does not believe he needs to use that feature. So, the proprietor's conduct is not "industry standard," but the question of whether under the specific

conditions and circumstances of a particular case the proprietor failed to discharge his duty of care to his guests, is a different inquiry entirely.

In short, Mr. Chaneyfield has committed to, and Plaintiff has now doubled down on, a misuse of basic legal terminology in premises liability cases. His testimony in this regard will hopelessly confuse the jury. His testimony should thus be excluded. See Fed. R. Evid. Rule 403 (noting that a trial court may strike even relevant expert testimony "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

## CONCLUSION

For the foregoing reasons, Northbrook respectfully requests that Mr. Chaneyfield's testimony be excluded from the trial of this case.

## L.R. 7.1(D) CERTIFICATION

The undersigned counsel hereby certifies that this Reply has been prepared in Times New Roman (14 point), which are font and point selections approved by the Court in L.R. 5.1(C).

Respectfully submitted,

*/s/ Dana M. Richens*

Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia 30309
Telephone: (404) 815-3659
Facsimile: (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.
d/b/a United Inn and Suites

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this date served all parties with the within and foregoing **REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT DARRELL B. CHANEYFIELD** via the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 16th day of February, 2024.

*/s/ Dana M. Richens*