**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **NORTHFIELD INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE** |
| v. | ) | **NO. _____** |
| | ) | |
| **NORTH BROOK INDUSTRIES, INC. d/b/a UNITED INN AND SUITES; and J.G.,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Northfield Insurance Company ("Northfield") files this Complaint seeking declaratory relief against J.G. and North Brook Industries, Inc. DBA United Inn and Suites.

## PARTIES

### 1.

Northfield is organized under the laws of Iowa with its principal place of business in Connecticut. For purposes of federal court jurisdiction, therefore, Northfield is a citizen of both Iowa and Connecticut. Northfield brings this action to determine its coverage obligations for a lawsuit brought by Defendant J.G. against Defendant North Brook Industries, Inc. d/b/a United Inn and Suites.

2.

North Brook Industries, Inc. d/b/a United Inn and Suites ("Northbrook") is organized under the laws of New York with its principal place of business in Georgia. For purposes of federal court jurisdiction, therefore, Northbrook is a citizen of both New York and Georgia. Northbrook may be served through its registered agent, Ashar M. Islam, at 2737 Sheraton Drive, Macon, Georgia, 31204.

3.

J.G. is an individual citizen of Georgia who is properly joined as a defendant in this action so she will be bound by the coverage rulings of this Court.

**JURISDICTION AND VENUE**

4.

There is complete diversity of citizenship between Northfield and Defendants and the amount in controversy exceeds $75,000.

5.

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 2201.

6.

There is an actual controversy regarding coverage obligations to support declaratory relief under 28 U.S.C. § 2201.

7.

Venue is proper in the Atlanta Division of the Northern District of Georgia where the insurance policy was issued and where the underlying liability events allegedly occurred. 28 U.S.C. § 1391; N.D. Ga. L.R. 3.1(B)(3).

## FACTS

8.

This declaratory judgment action arises from the lawsuit styled *J.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites* that is pending in the United States District Court for the Northern District of Georgia, Case number 1:20-cv-05233-SEG ("the Underlying Lawsuit"). A true copy of the complaint in the Underlying Lawsuit is attached as Exhibit A.

9.

In the Underlying Lawsuit, J.G. alleges that she was the victim of sex trafficking by Northbrook who owned, operated, maintained, controlled, and managed the United Inn & Suites located at 4649 Memorial Drive, Decatur, Georgia, 30032 ("United Inn").

10.

J.G. alleges she was trafficked by traffickers who "operated openly and brazenly," carried weapons, and sold drugs out of the rooms at the United Inn.

11.

J.G. alleges that she suffered visible injuries, "physical, emotional, and psychological harm" and "personal injuries" from the sex trafficking.

12.

J.G. alleges that Northbrook knew or should have known that she was being trafficked and failed to uphold its duty of care regarding the safety of the hotel and hotel guests and regarding preventing and responding to evidence of sex trafficking.

13.

J.G. asserts a claim for violation of the Trafficking Victims Protection Reauthorization Act (TVPRA) pursuant to 18 U.S.C. § 1595, alleging that Northbrook knowingly benefitted from participation in a venture that Northbrook knew or should have known violated the TVPRA.

14.

J.G. also asserts a claim for negligence, alleging that Northbrook breached its duty of care to invitees to keep the premises safe from sex trafficking and failed to implement policies and procedures to prevent, identify, and deter sex trafficking.

## NORTHFIELD'S INSURANCE POLICY PROVISIONS

15.

Northfield issued insurance policy number WS348486 to "Northbrook

Industries DBA United Inn Tahir Shareef" for the period July 13, 2018 to July 13, 2019.  A true copy of the Policy is attached as Exhibit B.

**The CGL Form**

16.

Coverage A of the Commercial General Liability Coverage Form ("CGL Form") in the Policy grants coverage in pertinent part for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" to which the insurance applies. Among other things, the "bodily injury" must be "caused by an 'occurrence'" and must occur during the policy period.

17.

"Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

18.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

19.

Coverage B of the CGL Form grants coverage in pertinent part for "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'." Among other things, the "personal and advertising injury" must

be "caused by an offense arising out of [Northbrook's] business" and the offense must be committed during the policy period.

20.

Pursuant to the "Combination Endorsement Personal and Advertising Injury Liability" endorsement, "personal and advertising injury" is defined by "offenses committed by or on behalf of the insured" that include "[f]alse arrest, detention or imprisonment, provided that the claim is made or the 'suit' is brought by a person who claims to have been falsely arrested, detained or imprisoned." The definition also "[i]ncludes 'bodily injury' caused by one or more of the offenses."

21.

An endorsement entitled "Exclusion – Abuse or Molestation" modifies the CGL Form to exclude coverage for claims "arising out of any act of 'abuse or molestation' committed by any person, including any act or omission in connection with the prevention or suppression of such 'abuse or molestation'."

22.

"Abuse or molestation" is defined within the Abuse or Molestation Endorsement means "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected."

6

**The Assault or Battery Endorsement**

23.

An endorsement entitled "Limited Assault or Battery Liability Coverage" modifies the CGL Form by excluding coverage for claims "arising out of any act of 'assault' or 'battery' committed by any person, including any act or omission in connection with the prevention or suppression of such 'assault' or 'battery'." The endorsement then grants coverage entitled "Coverage – Assault or Battery Liability" ("Assault or Battery Endorsement") that is subject to a $25,000 limit for "Each Assault or Battery Offense" and a $50,000 "Aggregate Assault or Battery" limit.

24.

The sublimit for Assault or Battery Liability applies in pertinent part to "sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," and "personal and advertising injury" that is "caused by an 'assault or battery offense' arising out of [Northbrook's] business but only if the 'assault or battery offense' was committed … during the policy period."

25.

An "assault or battery offense" is defined within the Assault or Battery Endorsement as "a single act of 'assault' or 'battery', or multiple, continuous, sporadic or related acts of 'assault' or 'battery', committed by any person or by two

7

or more persons acting together."

26.

"Assault" is defined within the Assault or Battery Endorsement as "any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury."

27.

"Battery" is defined within the Assault or Battery Endorsement as "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected."

28.

The Assault or Battery Endorsement contains an exclusion for claims of injury "committed at the direction of the insured of that the insured knowingly allowed to happen."

29.

The Assault or Battery Endorsement contains an exclusion for claims "arising out of 'abuse or molestation'" defined as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended

or expected."

## CLAIMS FOR RELIEF

## COUNT ONE: DECLARATION THAT THE J.G. CLAIMS DO NOT CONSTITUTE PERSONAL AND ADVERTISING INJURY UNDER COVERAGE B IN THE CGL FORM

30.

Northfield incorporates the factual allegations in the preceding paragraphs.

31.

J.G. claims that Northfield is liable under the TVPRA and under state law negligence for allowing sex trafficking to occur on its premises and benefiting from a percentage of revenue paid by the traffickers to rent the rooms when it knew or should have known that the property was being used for that purpose.

32.

J.G. was not falsely arrested, detained, or imprisoned by or on behalf of Northbrook for her claims to fall within an "offense" within Coverage B's definition of "personal and advertising injury."

33.

WHEREFORE, Northfield is entitled to a declaration that J.G.'s claims do not constitute "personal and advertising injury" under Coverage B.

## COUNT TWO: DECLARATION THAT THE ABUSE OR MOLESTATION EXCLUSIONS APPLY TO J.G.'s CLAIMS UNDER COVERAGES A AND B IN THE CGL FORM

34.

Northfield incorporates the factual allegations in the preceding paragraphs.

35.

J.G.'s claims arise out of "abuse or molestation" as that term is defined in the Abuse or Molestation Endorsement.

36.

J.G.'s claims arise out of acts or omissions in connection with the prevention or suppression of "abuse or molestation" as that term is defined in the Abuse or Molestation Endorsement.

37.

WHEREFORE, Northfield is entitled to a declaration that any claims for "bodily injury" under Coverage A or for "personal and advertising injury" under Coverage B would be excluded from coverage.

## COUNT THREE: DECLARATION THAT EXCLUSIONS IN THE ASSAULT OR BATTERY ENDORSEMENT APPLY TO J.G.'s CLAIMS

38.

Northfield incorporates the factual allegations in the preceding paragraphs.

39.

J.G.'s claims arise "out of any act of 'assault' or 'battery' committed by any person, including any act or omission in connection with the prevention or suppression of such 'assault' or 'battery'." As such, they are excluded from coverage under Coverages A and B under the terms of the "Limited Assault or Battery Liability Coverage" endorsement on the Policy.

40.

J.G. alleges that her injuries were "committed at the direction of [Northbrook] or that [Northbrook] knowingly allowed to happen." As such, they are excluded from coverage under the Assault or Battery Liability Endorsement.

41.

J.G.'s claims arose "out of 'abuse or molestation'" defined as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." As such, they are excluded from coverage under the Assault or Battery Liability Endorsement.

## PRAYERS FOR RELIEF

42.

Based on all the terms and conditions of the Policy (whether expressly

mentioned or identified in this Complaint or not), as well as under relevant legal principles and public policy considerations, Northfield seeks a declaration that it does not owe coverage to Northbrook for the claims asserted by J.G. in the Underlying Lawsuit.

Northfield demands a jury on all issues so triable.

**FREEMAN MATHIS & GARY, LLP**

/s/ Philip W. Savrin
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
Rachael Slimmon
Georgia Bar No. 831661
rslimmon@fmglaw.com

Attorneys for Plaintiff
Northfield Insurance Company

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(833) 330-3699 (telephone)
(770) 937-9960 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. _____ |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | JURY TRIAL DEMANDED, |
| | : | PURSUANT TO FED.R.CIV.P. 38 |
| Defendant. | : | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff in the above-styled action and hereby files her Complaint as follows:

1.

This case involves the sex trafficking of a child. Plaintiff J.G. was trafficked for sex as a minor at the United Inn & Suites hotel located at 4649 Memorial Drive, Decatur, Georgia 30032 (the "United Inn"). Plaintiff is identified only by her initials given the nature of the case and that she was a minor at the times pertinent to the events alleged herein.[1]

2.

Sex trafficking and other sex crimes are common occurrences at the United Inn. Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("Northbrook") chose to ignore, allow, condone, facilitate, support, and permit such activity at the United Inn. Northbrook is liable to Plaintiff for its actions and failures to act. The basis for Northbrook's liability is straightforward:

  a) The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by

---

[1] A Motion for Protective Order regarding Plaintiff's identity is being filed contemporaneously herewith.

2

receiving anything of value from participation in a venture which that person **_knew or should have known_** has engaged in an act in violation of" the TVPRA. Northbrook knowingly benefited from participation in a venture which it knew or should have known engaged in an act in violation of the TVPRA because it (i) rented the rooms at the United Inn in which Plaintiff was sex trafficked, (ii) collected fees for rental of those rooms, and (iii) did so notwithstanding that it knew or should have known that Plaintiff was a victim of sex trafficking. As such, Northbrook is liable to Plaintiff for her damages under the TVPRA.

b) United Inn negligently breached duties imposed by law, assumed by contract and behavior, and voluntarily undertaken. United Inn knew or should have known of the foreseeable risk of sex trafficking and other sex crimes at the United Inn and failed to act as similarly situated businesses would in like circumstances. As such, United Inn is liable to Plaintiff for her damages under Georgia common law.

## PARTIES, JURISDICTION, AND VENUE

3.

Plaintiff J.G. is a citizen of the United States of America and a resident of the State of Georgia. She consents to the jurisdiction of this Court. Though Plaintiff J.G. was a minor when she was trafficked, she is now an adult.

4.

Northbrook's principal office address is 4649 Memorial Drive, Decatur, Georgia 30032. Northbrook's registered agent for service of process is Ashar M. Islam, 2737 Sheraton Drive, Macon, Georgia 31204, where Northbrook can be served.[2]

5.

Jurisdiction and venue are proper as to Northbrook and Northbrook was properly served with process in this action.

6.

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, because Plaintiff asserts claims arising under 18 U.S.C. § 1595(a),

---

[2] Whenever reference is made in this Complaint to any action, inaction, or conduct of Northbrook, the allegation is that Northbrook engaged in the action, inaction, or conduct at issue by or through one or more of its officers, directors, agents, employees, or representatives who was engaged in the management, direction, control, or transaction of the ordinary business and affairs of Northbrook.

and pursuant to 28 U.S.C. § 1367, because Plaintiff's state law claims form part of the same case or controversy as her federal law claims.

7.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

**INTRODUCTION**

8.

Plaintiff J.G. was trafficked for sex as a minor at the United Inn in violation of 18 U.S.C. § 1591.

9.

At all times relevant hereto, Northbrook owned, operated, maintained, controlled, and managed the United Inn.

10.

At all times relevant hereto, Northbrook directed, operated, supervised, monitored, managed, and/or employed all employees, agents, representatives, managers, directors, and other staff at the United Inn, giving Northbrook specific and direct knowledge of crimes and sex trafficking at the hotel during the relevant period.

11.

Northbrook knew or should have known that Plaintiff was sex trafficked at the United Inn. Sex trafficking is a well-documented and pervasive problem in hotels and motels. During the period at issue, Northbrook knew or should have known common signs of sex trafficking as well as policies to prevent, identify, and deter sex trafficking at the United Inn, and furthermore, to ensure Northbrook was not profiting from sex trafficking, as required by federal law. But Northbrook chose to profit from the sex trafficking ventures in which it participated, including the trafficking of Plaintiff, rather than to take reasonable and known steps to prevent, identify, and deter sex trafficking at the United Inn. In doing so, the Defendant participated in, facilitated, condoned, or ignored the sex trafficking of Plaintiff.

12.

Under Georgia law, Northbrook had a duty to exercise ordinary care to keep United Inn's premises in a reasonably safe condition and not to expose business invitees—including the Plaintiff—to unreasonable risk or to lead them into dangerous conditions. Northbrook also had a duty to inspect the premises and take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. Likewise, Northbrook had other duties described further herein, including the duty to train hotel personnel, supervise hotel

personnel, monitor the property, secure the property, remediate the property in light of known hazards, among other duties, to keep the property in a reasonably safe condition for invitees.

13.

By encouraging others to enter United Inn's premises and to pay monies for the use of the premises, Northbrook made an implied representation that it had exercised reasonable care to make those premises safe for those coming upon the property, including the Plaintiff.

14.

Northbrook breached its duty to the Plaintiff by negligently and/or willfully turning a blind eye to the open and obvious sexual exploitation of Plaintiff (and other minors) at the United Inn in exchange for commercial gain and in total disregard of the rights of the Plaintiff, as well as others who were similarly exploited at the United Inn.

15.

Northbrook acted negligently, willfully, wantonly, and callously by not having policies or procedures in place at the United Inn to combat the well-known danger of sex trafficking in the hospitality industry, by failing to train its managers, employees, and agents at the United Inn on the pervasiveness of sex trafficking in

the hospitality industry and to be on the lookout for well-known signs of sex trafficking, by failing to take any measures at the United Inn to prevent sex trafficking at the hotel, by allowing rooms at the United Inn to be rented to traffickers and pimps on a repeated and ongoing basis for open and obvious sexual exploitation of Plaintiff and other minors for days and weeks, and by failing to otherwise protect and/or warn invitees about dangerous and hazardous conditions at the United Inn about which Northbrook had actual and/or constructive knowledge. Through such actions and omissions, among others, the Defendant allowed, condoned, and facilitated sex trafficking that victimized the Plaintiff in this case.

**A.    Plaintiff's Minor Sex Trafficking at the United Inn**

16.

During the entire period Plaintiff was sex trafficked at the United Inn, she was a minor.

17.

Plaintiff was sex trafficked as a minor at the United Inn from 2018 to 2019, during which time she was an invitee of the United Inn.

18.

Minor sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act

8

who is under the age of 18. 18 U.S.C. § 1591(a)(1), *et seq*. Minor sex trafficking also includes knowingly benefitting financially from participation in a venture, knowing or in reckless disregard, that the venture has committed one of the acts listed in paragraph 18 U.S.C. § 1591(a)(1). *See* 18 U.S.C. § 1591(a)(2).

19.

Minor sex trafficking does *not* require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. § 1591(a)(1), *et seq*.

20.

Plaintiff was sex trafficked at the United Inn by multiple traffickers over 2018 and 2019. Plaintiff's sex traffickers carried weapons and operated openly and brazenly on the hotel's premises, common areas, and approaches.

21.

At least some of Plaintiff's traffickers sold drugs out of the room/s in which Plaintiff was sex trafficked at the United Inn. On many days, more than 10 buyers visited the room/s in which Plaintiff was sex trafficked at the United Inn—some were there to buy drugs and others there to buy sex with Plaintiff.

22.

During at least part of the time Plaintiff was sex trafficked at the United Inn, Plaintiff's traffickers also sex trafficked other women (and minors) out of the same

9

room/s in which Plaintiff was sex trafficked. On some days, more than eight adult male visitors came to the room/s in which Plaintiff was trafficked to purchase sex.

23.

While she was trafficked for sex at the United Inn, Plaintiff exhibited numerous well-known and visible signs of a minor sex trafficking victim, including her age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, and soliciting male patrons.

Northbrook knew or should have known of these many signs, which Plaintiff displayed during her stay at the United Inn while she was in common areas and approaches to the property.

24.

During the period Plaintiff was sex trafficked at the United Inn, other women and minors were also sex trafficked at the United Inn. Plaintiff believes some were trafficked by Plaintiff's traffickers and others by other traffickers. Many such victims displayed the signs described in the foregoing paragraph.

25.

While Plaintiff was sex trafficked at the United Inn as a minor, dozens of adult men visited the room/s in which she was trafficked to purchase sex. The adult men

arrived in view of the hotel's lobby, which had a large window facing the parking lot. Northbrook knew or should have known that the large number of adult male visitors to the room was indicative of commercial sex activity, including minor sex trafficking. Northbrook negligently failed to respond to the evidence it knew or should have known indicated minor sex trafficking, including, for example, by failing to control or monitor the frequent male visitors.

26.

Plaintiff's room/s at the United Inn contained condoms, drugs, weapons, and a large number of towels, sheets, and tissues.

27.

On more than one occasion at the United Inn, Northbrook employees, agents, and/or representatives entered the room/s in which Plaintiff was sex trafficked at the United Inn. For example, housekeeping at the United Inn cleaned the room/s in which Plaintiff was trafficked. Northbrook knew or should have known that the contents of Plaintiff's room/s at the United Inn were indicative of commercial sex activity, including minor sex trafficking.

28.

On other occasions at the United Inn, Plaintiff—a minor staying at the hotel for extended periods in the company of various adult men—asked Northbrook

11

employees, agents, and/or representatives (*e.g.*, housekeeping and/or front desk staff at the United Inn) for extra sheets, towels, and tissues.

29.

When Plaintiff interacted with United Inn staff, she often wore little clothing and stood in rooms replete with evidence of sex trafficking that had been reserved by sex traffickers and drug dealers. Northbrook's employees, agents, and/or representatives, including its housekeeping staff, knew or should have known Plaintiff was a minor victim of sex trafficking at the hotel through its opportunities to observe Plaintiff and the rooms in which she was repeatedly victimized.

30.

Plaintiff was required to turn over money to her traffickers at the United Inn.

31.

Northbrook had ample opportunity to observe the age and appearance of Plaintiff at the United Inn. Plaintiff stayed at the United Inn for up to weeks at time. Throughout her stays at the United Inn, Plaintiff walked around the hotel premises, common areas, and approaches, even during periods when school was in session for children of Plaintiff's age. Plaintiff often wore little clothing when she walked around the premises, common areas, and approaches and talked to different adult men. Further, as described, Plaintiff talked to Northbrook employees, agents, and/or

12

representatives during her stays at the United Inn.

32.

Northbrook knew or should have known that the United Inn was utilized for sex trafficking and other crimes. When Plaintiff was sex trafficked at the United Inn, she witnessed other minors and young women being trafficked for sex at the hotel. As a result, a large number of buyers frequented the hotel each day to pay for commercial sex.

33.

Northbrook sells condoms behind the front counter of the hotel. On information and belief, Northbrook employees, agents, and/or representatives sold condoms to sex traffickers, purchasers of commercial sex, and victims of trafficking.

34.

Plaintiff's traffickers and their associates interacted with Northbrook employees, agents, and/or representatives who accommodated the traffickers' requests and thereby facilitated and assisted Plaintiff's minor sex trafficking.

35.

On information and belief, Plaintiff's traffickers (or their associates) rented rooms in which Plaintiff was sex trafficked as a minor.

36.

Northbrook collected revenue from rental of the rooms in which Plaintiff was trafficked for sex.

37.

On information and belief, Plaintiff's traffickers (and their associates) had previously rented rooms and trafficked women for sex at the United Inn. As such, Plaintiff's traffickers were familiar to Northbrook employees, agents, and/or representatives at the time they trafficked Plaintiff for sex at the United Inn. Further, on information and belief, Northbrook reviewed hotel performance data, room occupancy data, and profitability data in connection with managing and/or operating the United Inn.

38.

On information and belief, at least one of Northbrook's employees, agents, and/or representatives who worked at the front desk at the United Inn bought drugs from at least one of Plaintiff's traffickers.

39.

On information and belief, Northbrook's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn by, among other things, acting as lookouts for Plaintiff's

14

traffickers and informing the traffickers of police activity at the hotel as well as warning Plaintiff's traffickers about guest complaints and high visitor traffic drawing unwanted attention.

40.

On information and belief, at least one of Plaintiff's traffickers paid Northbrook's employees, agents, and/or representatives to act as lookouts and notify the trafficker of police activity at the hotel, among other things.

41.

On information and belief, Northbrook turned a blind eye to safety and security issues at the United Inn & Suites when revenue was satisfactory, even when Defendant knew or should have known part of the profits were derived from sex trafficking ventures victimizing Plaintiff and other women and minors.

42.

At all relevant times, Northbrook received revenue from room rentals at the United Inn, including the rooms in which Plaintiff was trafficked.

43.

As described in the foregoing paragraphs, Northbrook knew or should have known that Plaintiff was a minor victim of sex trafficking who was being sex trafficked at the United Inn, over which Northbrook exercised control. Northbrook

negligently failed to respond to the evidence described in the foregoing paragraphs showing Northbrook knew or should have known Plaintiff was a minor victim of sex trafficking.

### B. Sex Trafficking and Other Crimes were Frequent and Foreseeable at the United Inn

44.

Plaintiffs' traffickers chose to traffic Plaintiff at the United Inn because of the hotel's sordid reputation as a hub of sex trafficking and other sex crimes.

45.

Northbrook knew or should have known that the United Inn and its approaches were rife with crime, including minor sex trafficking, before, during, and after Plaintiff's sex trafficking. Northbrook nonetheless permitted Plaintiff to be sex trafficked at the United Inn.

46.

Northbrook knew or should have known of sex trafficking and other sex crimes at the hotel prior to Plaintiff's minor sex trafficking at the United Inn. Specifically, and based on publicly available information and police reports, Northbrook knew or should have known of the following crimes, among others, occurring on United Inn's premises and approaches prior to Plaintiff's sex trafficking:

16

a. In September 2011, a man smothered and then strangled a woman to death at the United Inn before having sex with her dead body over the course of two days at the hotel.[3]

b. On August 7, 2012, a woman was arrested at the United Inn on a prostitution warrant.

c. On May 30, 2012, a woman staying in room 320 at the United Inn reported that she was being harassed by written messages left on her door and phone calls requesting sexual acts in exchange for money at the hotel.

d. On July 16, 2014, a woman was arrested for prostitution in room 326 of the United Inn.

e. On July 23, 2014, a woman reported being raped by a man in room 239 of the United Inn when a man forcibly had sex with her and did not pay her afterwards.

f. On August 12, 2015, a woman was arrested for prostitution at the United Inn after meeting two undercover police officers in the parking lot and walking to room 101 of the hotel. The woman did not have a

_____

[3] *Norman v. State*, Case No. S-15-A-1525, (Ga. S. Ct. Jan. 19, 2016).

key to the room and left the officers waiting at the room while she went back to the front desk to get a key to the room for the encounter.

g.  On August 26, 2015, two armed men attempted to sexually assault a woman, who they also robbed, in room 120 of the United Inn.

h.  On December 24, 2016, a woman staying in room number 40 at the United Inn reported she was sexually assaulted by a man staying in room 116.

i.  On June 3, 2017, a man was arrested after beating a woman in room 345 of the United Inn over monies owed for sexual favors.

j.  On June 20, 2017, police responded to a fight between a prostitute and her pimp in room 101 at the United Inn. The pimp left this prostitute's room after the fight to go stay in another woman's room at the hotel.

k.  On July 20, 2017, the Metro Atlanta Child Exploitation Task Force conducted an operation "in reference [to] child and adult prostitution" at the United Inn. Police arrested a woman for prostitution in room 132 of the United Inn, wherein a toddler was also in the room.

l.  In April 2018, a man was beaten to death standing in front of room 320 at the United Inn.

47.

Northbrook did not act to address or combat this gruesome history prior to Plaintiff's trafficking. Indeed, Northbrook continued to allow, condone, and permit sex trafficking and other sex crimes at the hotel *after* Plaintiff was trafficked for sex at the United Inn. Specifically, and based on publicly available information and police reports, Northbrook knew or should have known of the following sex crimes, arrests, and incidents, among others, occurring on United Inn's premises and approaches after Plaintiff was sex trafficked at the United Inn with another minor:

a. On March 24, 2019, a man at the United Inn reported that a prostitute at the hotel had stolen his car.

b. On April 8, 2019, a woman reported that she was raped in room 126 of the United Inn after witnessing a man get shot at the hotel.

c. On October 22, 2019, two women and one man were arrested in room 118 of the United Inn for prostitution, pimping, and keeping a place of prostitution at the United Inn.

d. On November 27, 2019 a woman reported that a man attempted to rape her in room 117 of the United Inn.

e. On January 8, 2020, a woman was arrested for prostitution in room 141 of the United Inn. This woman's sister was also staying at the United

Inn, in room 139.  Both rooms were registered to one man, who was trafficking several women.  The woman made several calls to this man from jail and discussed staying quiet, moving other victims to a different hotel, and recruiting other women while the woman was in jail. The man was then issued warrants for pimping and keeping a place of prostitution at the United Inn.

f.  On January 10, 2020, a man was arrested at the United Inn on a keeping a place of prostitution warrant.

g.  On February 10, 2020, a man reported he was sexually assaulted multiple times at the United Inn.[4]

48.

As further evidence that Northbrook allowed, condoned, and permitted sex trafficking and other crimes at the hotel before and after Plaintiff was trafficked for sex at the United Inn, online reviews for the hotel indicate such activity was commonplace before and after Plaintiff was trafficked.  Specifically, Northbrook knew or should have known of the following sex crimes, arrests, and incidents,

_____

[4] The list of graphic conduct set forth in paragraphs 46 and 47 is merely illustrative of the rampant sex crimes occurring at the United Inn about which Northbrook knew or should have known.  The full record is publicly available in voluminous police reports, among other places.

20

among others, occurring on United Inn's premises and approaches before and after Plaintiff was sex trafficked at the United Inn:

- "[T]hey cook drugs here… Been coming around here for 9 months to visit family who stay there and this is horrific." (Google.com, 2018)
- "[L]ots of hustlers stand out front of the hotel during the night; not to mention a hot spot for prostitution." (Google.com, 2018)
- "Full of … drugs." (Google.com, 2019)
- "[L]oitering all around the building." (Google, 2019)

49.

On information and belief, Defendant reviewed online reviews, among other information, in connection with managing and/or operating the United Inn.

50.

In 2018, the Dekalb County Commission cited the United Inn for 447 violations of county fire, health, and building codes—more violations than any other hotel or motel in Dekalb County in 2018. Northbrook paid $60,345 to Dekalb County in 2018 because of those violations.[5]

---

[5] https://www.ajc.com/news/local-govt--politics/dekalb-news-extended-stay-hotel-inspections-lead-397-citations/V3NEXD3pPIdLloPfzOSzMP/#:~:text=Twelve%20extended%20stay%2

51.

By failing to take reasonable, appropriate, sufficient, and necessary actions in response to widespread sex crimes at the United Inn generally, and in response to Plaintiff's sex trafficking at the United Inn specifically, Northbrook's employees, agents, and/or representatives ignored, allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the United Inn.

52.

As a direct and proximate result of Northbrook's acts and omissions, and Plaintiff being trafficked for sex as a minor at the United Inn, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages. Such injuries and damages were reasonably foreseeable to Northbrook.

**C.** **Northbrook's Knowledge of Sex Trafficking**

53.

Northbrook knew or should have known of the existence of minor sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, the United Nations' adoption of the Palermo Protocol, to prevent,

---

0hotels%20in,fire%2C%20health%20and%20building%20codes (last visited Nov. 20, 2020).

suppress, and punish trafficking in persons, and the passage of O.C.G.A. § 16-5-46 in 2007.

54.

Northbrook knew or should have known that hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

55.

Northbrook knew or should have known the following: The National Human Trafficking Hotline has reported that ninety-two percent of the calls it received involving hotels and motels reported sex trafficking, and another two percent reported a combination of sex and labor trafficking.[6] A 2012 study found that 63 percent of trafficking incidents occurred in hotels.[7] And the Polaris Project found

---

[6] *Human Trafficking and the Hotel Industry*, Polaris Project, https://polarisproject.org/sites/default/files/human-trafficking-hotel-industry-recommendations.pdf (last visited Nov. 15, 2020).

[7] Jon Conte, *et al.*, *Inhospitable to Human Trafficking Program Evaluation*, at 2, Businesses Ending Slavery and Trafficking, (July 2014),

23

that "75% of [trafficking] survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation . . . . Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."

56.

Northbrook knew or should have known that attorneys for the hotel industry estimated and reported to hotel industry representatives that eight out of ten human trafficking arrests occur in or around hotels,[8] and that the industry had been warned, among other things, to "Make sure hotel not complicit," "Manager not looking the other way," and "No pay off for silence or lack of curiosity."[9]

57.

Northbrook knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-

---

https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf at 5 (last visited Nov. 15, 2020).

[8] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry*, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983.

[9] Rich Keating, Human Trafficking: What Is it and How It Impacts the Hospitality Industry, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 at 6 (last visited Nov. 15, 2020).

Protection Code of Conduct (the "Code") in the United States in 2004.[10]

58.

Northbrook knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to combat sex trafficking, identifies six reasonable and logical steps hotels and motels can take to prevent child sex trafficking:

  a. establish corporate policy and procedures against sexual exploitation of children;

  b. train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

  c. include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

  d. provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

---

[10] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited Nov. 15, 2020).

  e. support, collaborate and engage stakeholders in the prevention of

    sexual exploitation of children; and

  f. report annually on the company's implementation of Code-

    related activities.

59.

Northbrook knew or should have known that ECPAT is only one of several high-profile organizations that have for years given hotels and motels the tools to address the scourge of sex trafficking at hotels.

60.

Northbrook knew or should have known that the American Hotel and Lodging Association states on its website that a "30-minute online training program, developed by ECPAT-USA in collaboration with the hotel industry, is now available for free. This offering discusses intersections between human trafficking and the hotel industry and offers free tools and resources to go along with the training to help companies combat trafficking."[11]

61.

Northbrook knew or should have known that the American Hotel and Lodging

---

[11] https://www.ahla.com/issues/human-trafficking (last visited Nov. 15, 2020) (emphasis added).

Association website links to a free ECPAT training on sex trafficking.[12]

62.

Northbrook knew or should have known that the free ECPAT training available through the American Hotel and Lodging Association website states: "*The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity… From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property… With proper training, a front desk agent or a housekeeper can notice that something is not right and respond.*"[13] Defendant knew or should have known they had access to ECPAT's free training materials.

63.

Northbrook knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and stop human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

---

[12] *Id.*

[13] https://www.ecpatusa.org/hotel-training (last visited Nov. 15, 2020) (emphasis added).

a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. persons who lack freedom of movement or are constantly monitored;

c. persons who have no control over or possession of money or ID;

d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g. extended stay with few or no personal possessions in the room;

h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i. the same person reserves multiple rooms;

j. a room is rented hourly, less than a day, or for an atypical extended stay;

k. attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n.  waiting at a table or bar and picked up by a male (trafficker or customer)

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

64.

Northbrook knew or should have known that since 2001, sex trafficking has been front-page news in Atlanta, when the Atlanta Journal-Constitution published Jane Hansen's groundbreaking series, *Selling Atlanta's Children*.

65.

Northbrook knew or should have known that, in 2011, then-Attorney General (AG) Sam Olens initiated a well-publicized, multi-year campaign to combat sex trafficking in Georgia.  AG Olens worked with the Georgia General Assembly to strengthen Georgia's human trafficking law by enhancing the penalties under the state's criminal statute.

66.

Northbrook knew or should have known that, in 2013, AG Olens announced

a statewide campaign, "Georgia's Not Buying It," to combat child sex trafficking. As part of the campaign, AG Olens' office "collaborated with partners to conduct trainings and increase awareness," which included "multiple trainings for the hotel industry."[14]

67.

Northbrook knew or should have known that, on September 15, 2013, the Georgia legislature passed O.C.G.A. § 16-5-47 requiring hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted." The contents of the notice are prescribed by statute but must "provide information giving individuals a method to contact the National Human Trafficking Hotline and the Statewide Georgia Hotline for Domestic Minor Trafficking." Failure to comply with O.C.G.A. § 16-5-47 is a misdemeanor.

68.

Northbrook knew or should have known that, in 2016, AG Olens announced

---

[14] https://law.georgia.gov/press-releases/2013-03-18/attorney-general-olens-law-enforcement-announce-campaign-fight-sex (last visited Nov. 15, 2020).

a statewide campaign to combat child sex trafficking entitled, "Unmasked." The campaign featured a public-service announcement, which played on various TV and radio stations.[15]

69.

Northbrook knew or should have known that Atlanta was a national hub of sex trafficking and that the crime was prevalent in the city, including at the United Inn. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.[16] Over the last two decades, sex trafficking has generated billions of dollars in illicit profits in metro Atlanta alone. Northbrook has received and retained some of those

---

[15] https://law.georgia.gov/press-releases/2016-04-26/attorney-general-sam-olens-announces-statewide-campaign-combat-child-sex (last visited Nov. 15, 2020).

[16] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited Oct. 21, 2020); *see also* Meredith Dank, et.al, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited Oct. 21, 2020).

illicit profits through renting hotel rooms used for the trafficking of Plaintiff and other minors.

70.

Northbrook knew or should have known that in 2018 the National Human Trafficking Hotline ranked Georgia fourth among states in human trafficking.[17]

71.

Northbrook knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, and particularly child sex trafficking,"[18] and as "the number one city for child sex trafficking."[19]

72.

Northbrook knew or should have known that sex trafficking is particularly pervasive in DeKalb County, where the United Inn is located. Northbrook knew or should have known that in the year before Plaintiff was trafficked as a minor in

---

[17] Anna Varela, *Human Trafficking Ensnares More Than Half of Metro Atlanta's Homeless Youth, Georgia State Study Shows*, Georgia State University, (Oct. 21, 2019) https://news.gsu.edu/2019/10/21/homeless-youth-trafficking/.

[18] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited Nov. 5, 2020)

[19] *Id.*

DeKalb County, the County police had the tragic but commendable distinction of rescuing more sex trafficking victims than any other unit in Georgia.[20]

## COUNT I
## STATUTORY LIABILITY
## 18 U.S.C. § 1595

73.

Plaintiff incorporates Paragraphs 1 through 72 as if fully restated herein verbatim.

74.

In violation of the TVPRA, 18 U.S.C. § 1595(a), Northbrook knowingly benefitted from participation in a venture that Northbrook knew or should have known engaged in acts in violation of the TVPRA.

75.

Northbrook knowingly benefitted from Plaintiff's sex trafficking by receiving a percentage of the revenue generated by the operation of the United Inn, including a percentage of the revenue generated from the rate charged and paid for the rooms in which Plaintiff was trafficked.

---

[20] Joshua Sharpe, *Report: DeKalb Cops Rescue the Most Sex Trafficking Victims in Georgia*, Atlanta Journal-Constitution, May 18, 2017 https://www.ajc.com/news/local/report-dekalb-cops-rescue-the-most-sex-trafficking-victims-georgia/Lg6rXccQPCcqTITunbEW0M/.

76.

Northbrook participated in a sex trafficking venture by providing to Plaintiff's traffickers the necessary venue for Plaintiff's minor sex trafficking. In the course of this venture, multiple men paid to have sex with Plaintiff J.G. at the United Inn. For a fee, Northbrook provided the crime scene, a room at the United Inn, where Plaintiff was sold for sex.

77.

The venture in which Northbrook participated was in or affecting interstate commerce.

78.

Northbrook knew or should have known the venture engaged in acts in violation of the TVPRA because Northbrook, its employees, agents, and representatives, had the opportunity to observe Plaintiff, a minor, at the hotel, with and without her trafficker, and with other minor sex trafficking victims. Further, Northbrook, its employees, agents, and representatives, had the opportunity to observe the signs of minor sex trafficking exhibited by Plaintiff, her traffickers, the other victims, the room/s in which she was trafficked, and the frequent traffic of adult male buyers to the minor J.G.'s room/s.

79.

Northbrook knew or should have known the venture engaged in acts in violation of the TVPRA because Northbrook, its employees, agents, and representatives, knew or should have known of other minor sex trafficking and sex crimes at the hotel before, during, and after Plaintiff was trafficked for sex at the United Inn.

80.

Northbrook is directly and vicariously liable under § 1595(a) for the actions of its employees, agents, and representatives.

81.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Northbrook's participation in this sex trafficking venture.

82.

Northbrook is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

83.

Northbrook is jointly and severally liable for damages arising from the

indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## COUNT II
## NEGLIGENCE ALLEGATIONS

84.

Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

85.

At all relevant times, Northbrook controlled the operation and management of the United Inn.

86.

At all relevant times, Northbrook owed a duty to invitees to the United Inn, including Plaintiff, to exercise ordinary care in keeping the premises and approaches of United Inn safe from criminal activity, especially minor sex trafficking. Northbrook also voluntarily undertook actions that created additional duties to provide adequate safety and security at the United Inn.

87.

Northbrook breached its duty to Plaintiff and failed to act as similarly situated businesses would in like circumstances by failing to exercise even ordinary care to keep the premises and approaches of United Inn safe and by negligently permitting

criminal activity, especially minor sex trafficking, to exist and flourish at the United Inn.

88.

Northbrook knew or should have known the steps to take to prevent the United Inn from being used as a venue for Plaintiffs' minor sex trafficking. As stated in paragraph 62: "The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity… From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property… With proper training, a front desk agent or a housekeeper can notice that something is not right and respond."[21]

89.

Northbrook knew or should have known ECPAT's Code, yet negligently failed to implement appropriate steps to prevent child sex trafficking at the United Inn, such as:

a)   establishing corporate policies and procedures against sexual exploitation of children;

---

[21] https://www.ecpatusa.org/hotel-training (last visited Nov. 15, 2020) (emphasis added).

b) training employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c) including a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d) providing information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e) supporting, collaborating, and engaging stakeholders in the prevention of sexual exploitation of children; and

f) reporting annually on the company's implementation of Code-related activities.

90.

Northbrook knew or should have known the Department of Homeland Security ("DHS") guidelines on prevention of sex trafficking. Yet Northbrook negligently failed to implement appropriate steps, such as training its employees, managers, and agents, on those guidelines and on warning signs that indicate the presence of sex trafficking on the hotel premises, including:

a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b) persons who lack freedom of movement or are constantly monitored;

c)    persons who have no control over or possession of money or ID;

d)    persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e)    requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f)    the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g)    extended stay with few or no personal possessions in the room;

h)    excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i)    the same person reserves multiple rooms;

j)    a room is rented hourly, less than a day, or for an atypical extended stay;

k)    attempts to sell items to or beg from patrons or staff;

l)    cars in the parking lot regularly parked backward, so the license plates are not visible;

m)    loitering and solicitation of male patrons;

n)    waiting at a table or bar and picked up by a male (trafficker or customer);

o)      persons asking staff or patrons for food or money; and

p)      persons taking cash or receipts left on tables.

91.

ECPAT's Code and DHS' guidelines were only two of the many authorities Northbrook could and should have relied upon to address and combat sex trafficking at the United Inn.  For example, the American Hotel and Lodging Association links to a "free" ECPAT training that is only "30-minute[s]" and easily available "online."[22]   Northbrook knew or should have known it had access to such free training materials for its employees, managers, and agents.

92.

Despite what Northbrook knew or should have known about the illegal activity at the United Inn, including multiple reports and arrests related to sex trafficking and other sex crimes at the United Inn prior to Plaintiff's minor sex trafficking, Northbrook negligently failed to implement reasonable, appropriate, and adequate measures to protect its invitees, including Plaintiff, from becoming a victim of sex trafficking at the United Inn.   To the contrary, Northbrook continued its

---

[22] https://www.ahla.com/issues/human-trafficking (last visited Nov. 15, 2020) (emphasis added).

40

venture to profit from the operation of the United Inn and the minor sex trafficking and other sex crimes incorporated into the United Inn's operations.

93.

Northbrook negligently failed to implement policies and procedures to prevent, identify, and deter sex trafficking at the United Inn and to ensure it was not profiting from sex trafficking, as required by state and federal law.

94.

Prior to and including the time when Plaintiff was trafficked at the United Inn, Northbrook negligently maintained, inspected, secured, patrolled, managed, and operated the United Inn. Northbrook had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol, manage, and operate the premises, but negligently failed to exercise ordinary care, thereby creating an unreasonable risk of injury to invitees, including Plaintiff.

95.

Northbrook had actual and constructive knowledge of criminal activity, including sex trafficking and other sex crimes, at and around the United Inn prior to Plaintiff's minor sex trafficking.

96.

Northbrook had actual and constructive knowledge of the dangerous and hazardous conditions existing at the United Inn due to the knowledge of its employees, managers, and agents and due to the prior criminal activity and dangers associated with the property and surrounding high crime area.

97.

Plaintiff's minor sex trafficking was foreseeable to Northbrook because it knew or should have known about the actual events with Plaintiff at the United Inn, as well as the history of sex trafficking and other sex crimes at the United Inn and other hotels in the area and the history of criminal activity at and around the United Inn and in the surrounding high-crime area.

98.

Northbrook breached the duty it owed to Plaintiff by failing to exercise ordinary care to keep its premises safe and negligently permitting criminal activity, especially minor sex trafficking, to exist and remain at the United Inn.

99.

Northbrook knew of, or in the exercise of ordinary care, should have known of the dangerous and hazardous conditions existing on the premises, and the failure to maintain, inspect, secure, patrol, and manage the premises, and that these

conditions were likely to, and did, result in sex trafficking and other sex crimes at the United Inn and again to Plaintiff.

100.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to protect invitees, including Plaintiff, from the risks of minor sex trafficking and other violent crimes.

101.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to warn Plaintiff and other invitees of the dangers at and around the United Inn.

102.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to maintain adequate security devices and personnel to ensure proper use of the property, thereby causing an unreasonable risk of injury to invitees, including Plaintiff.

103.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook negligently failed to maintain policies, procedures, or systems for investigating, reporting, and warning of minor sex

trafficking and other crimes, and negligently maintained the United Inn.

104.

Despite its actual and constructive knowledge of criminal activity, including minor sex trafficking, Northbrook failed to take appropriate action to remedy or reduce the danger to its invitees and allowed the dangerous environment at the United Inn to worsen and continue to exist unabated, thereby creating a nuisance.

105.

Because Northbrook had knowledge of, or in the exercise of reasonable care should have had knowledge of the dangerous environment at and around the subject premises, Northbrook is liable for the negligent supervision, hiring, training, and retention of its managers, agents, and employees and the entrustment of said property to its managers, agents, and employees. Said negligence proximately caused the damages and injuries to Plaintiff.

106.

Northbrook negligently represented to invitees that the United Inn was properly maintained and that the property was safe.

107.

Northbrook was negligent and said negligence proximately caused Plaintiff's injuries in the following ways, to-wit:

44

a) Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

b) Negligently failing to keep the premises in a state of good repair;

c) Negligently violating O.C.G.A. § 41-1-1 by creating and maintaining a nuisance;

d) Negligently failing to provide appropriate and effective security personnel during Plaintiffs' minor sex trafficking at the hotel;

e) Negligently failing to properly inspect and maintain the premises;

f) Negligently failing to properly train and supervise its employees regarding sex trafficking and other sex crimes at the hotel;

g) Negligently failing to properly retain, hire, train, and supervise said employees;

h) Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

i) Negligently failing to respond to online reviews and publicly available information;

j) Negligently failing to prevent loitering and trespassing;

k) Negligently failing to remove loiterers and trespassers;

l) Negligently failing to inspect, patrol, or appropriately monitor the

property;

m) Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

n) Negligently failing to remediate a long history of crime at the United Inn and the area nearby;

o) Negligently failing to warn invitees of known hazards at the property; and

p) Negligently representing to invitees that the property was safe.

108.

Each of the foregoing acts and omissions constitute an independent act of negligence on the part of Northbrook and one or more or all above stated acts were the proximate causes of the injuries sustained by Plaintiff.

109.

Northbrook is liable for Plaintiff's injuries sustained, pain and suffering, the expenses of treatment, and all other elements of damages allowed under the laws of the State of Georgia, including all special, compensatory, incidental, consequential, economic, and punitive damages.

110.

Northbrook is liable for the minor sex trafficking of Plaintiff.

111.

Northbrook's negligence discussed in this count was a cause in fact and a proximate cause of Plaintiff's substantial physical, emotional, and psychological harm and other damages.

## **DAMAGES**

112.

Plaintiff incorporates Paragraphs 1 through 111 as if fully set forth herein.

113.

As a proximate and foreseeable result of Northbrook's negligence and violation of the TVPRA, Plaintiff sustained personal injuries, mental and emotional pain and suffering, mental anguish, and other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia law against Northbrook for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under

Georgia and federal law, including, but not limited to:

a)    Personal injuries;

b)    Past, present, and future conscious pain and suffering;

c)    Loss of enjoyment of life;

d)    Medical expenses;

e)    Mental anguish and emotional distress;

f)    Loss of past, present, and future wages;

g)    Incidental expenses;

h)    All special, compensatory, economic, punitive, and other damages permissible under Georgia law; and

i)    Consequential damages to be proven at trial.

## 114.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Northbrook and its employees, agents, and representatives were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

## 115.

Northbrook's actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to

recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia and federal statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to them and against Northbrook for the following:

a) Process issue as provided by law;

b) Plaintiff be awarded actual damages in amounts to be shown at trial from Northbrook;

c) Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages from Northbrook in accordance with the enlightened conscience of an impartial jury;

d) Plaintiff be awarded a trial by jury; and

e) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 28th day of December, 2020.

/s/ David H. Bouchard
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

Attorneys for Plaintiff

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing **Complaint** has been prepared with a font

and point selection approved by the Court in LR 5.1., NDGA. Specifically, the

above-mentioned pleading was prepared using Times New Roman font of 14-point

size.


Respectfully submitted,

*/s/ David H. Bouchard*
Richard W. Hendrix
rhendrix@finchmccranie.com
Georgia Bar No. 346750
W. Carl Lietz, III
carl@finchmccranie.com
Georgia Bar No. 452080
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
225 Peachtree Street NE
1700 South Tower
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile



Attorneys for Plaintiff



**Northfield Insurance Company**

385 Washington Street, St. Paul, MN 55102
1-800-237-9334    Claims: 1-800-328-5972

# COMMERCIAL INSURANCE POLICY

### Your Policy Number:  WS348486

This policy consists of this policy cover, the Declarations and the forms, schedules and endorsements listed.  READ YOUR POLICY CAREFULLY.

In return for the payment of the premium, the insuring company agrees with the Named Insured to provide the insurance afforded by this policy.  That insurance will be provided by the company indicated as insuring company in the Declarations.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative for us.

Secretary                                                President

S1-IL (9/05)

**NOTICES**

| IMPORTANT: THIS POLICY IS NOT SUBJECT TO FLAT CANCELLATION. |
| --- |

THIS POLICY IS SUBJECT TO AUDIT. EXPOSURES GREATER THAN THOSE ESTIMATED ON THIS
POLICY WILL RESULT IN ADDITIONAL PREMIUM WHICH WILL BE DUE AND PAYABLE UPON RECEIPT
OF BILLING.

**IMPORTANT NOTICE REGARDING COMPENSATION DISCLOSURE**

For information about how Northfield compensates its agents, brokers and program managers, please visit this website:

http://www.northlandins.com/Producer_Compensation_Disclosure.asp

If you prefer, you can call the following toll-free number: 1-866-904-8348.  Or you can write to us at Northfield Insurance Company, c/o Law Department, 385 Washington St., St. Paul, MN 55102.

N-3384 (7/08)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc. 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

Copyright, ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2007

FREQUENTLY ASKED QUESTIONS
ABOUT YOUR SURPLUS LINES POLICY

Your broker has placed the insurance you requested in the "surplus lines market" with one or more surplus lines insurers. By definition, such surplus lines insurers are not licensed in the state, but this does not mean that the transaction is not regulated. The surplus lines market is an insurance marketplace that is established for the purpose of insuring unique or hard to place risks. Some of the rules that apply to surplus lines insurance policies and surplus lines insurance companies differ from those that govern coverage obtained from insurance companies licensed in your state. In order for you to better understand the surplus lines market and the rights you have in a surplus lines transaction, the following material is provided.

Please read this brochure carefully, and should you have any questions after reading the material, do not hesitate to ask your broker. If you wish further information, please contact the Regulatory Services Division, Room 604, West Tower, 2 Martin Luther King Drive, Atlanta, Georgia 30334 or (404) 656-2074 or toll free at (800) 656-2298 (request Regulatory Services Division).

WHAT IS A SURPLUS LINES POLICY?

A surplus lines policy is a policy with an insurer that is not licensed (or "admitted") in this state, but is nonetheless eligible to provide insurance on property or liability insurance protection to citizens of this state through specially licensed agents or brokers known as surplus lines brokers.

WHY AM I GETTING COVERAGE FROM A SURPLUS LINES INSURER?

Your agent or broker may have been unable to obtain the coverage you requested from insurance companies licensed in your state, but was able to obtain coverage from an eligible surplus lines insurance company. The reason for your agent or broker's action is that the risk or property for which you sought coverage may be unique or have certain risk characteristics that caused licensed insurers to decline to write the policy. In circumstances where licensed insurers will not write the risk, your broker is authorized by state law or regulation to obtain the coverage from a "surplus lines" insurer.

SINCE THE SURPLUS LINES INSURER IS UNLICENSED, IS THE TRANSACTION UNREGULATED?

Surplus lines transactions are regulated by state laws that require that surplus lines policies be procured only by specially licensed brokers. These are called surplus lines brokers and they are authorized to transact business with certain unlicensed insurers that meet financial and other eligibility standards set by the state. These insurers are known as surplus lines insurers. Your agent may have worked with a licensed surplus lines broker in securing your policy. Alternatively, your agent may hold a surplus lines broker's license.

IS MY SURPLUS LINES POLICY COVERED BY THE STATE GUARANTY OR INSOLVENCY FUND?

No. There is no guaranty fund coverage for surplus lines policies. The guaranty fund, which provides payments in the event that your insurance company becomes insolvent, only covers policies of licensed insurers.

HOW IS THE RATE OR PRICE OF A SURPLUS LINES POLICY DETERMINED?

The rate or premium charged for a surplus lines policy is determined by the surplus lines insurer. As unlicensed insurers, surplus lines insurers do not file their rates or premiums with the state for review or approval.

DOES THE GEORGIA DEPARTMENT OF INSURANCE REVIEW OR APPROVE THE TERMS AND CONDITIONS OF THIS POLICY?

Pursuant to O.C.G.A. §33-5-21.1, policies of surplus lines insurers are not reviewed or approved by the Georgia Department of Insurance.

CAN MY POLICY BE RENEWED OR EXTENDED?

Your surplus lines policy may or may not be renewed or extended when the policy expires. An extension of the policy coverage will be dependent upon the continued unavailability of the coverage from insurers licensed in this state and the willingness of the surplus lines insurer to continue to accept the risk. Since a surplus lines policy is generally not subject to the same notice requirements as a policy issued by a licensed insurer, notice of a premium increase for a new policy term or the company's intent not to extend the policy at the same terms and conditions might not be provided until close to the date the policy expires. Therefore, you should keep in contact with your agent or broker, particularly as the expiration of the policy term nears, to ascertain the status of the policy and to assure continuity of coverage.

Case 1:23-cv-03033-SEC Document 14721 Filed 08/24/24 Page 75 of 223

**Northfield Insurance Company**
**St. Paul, MN 55102**

**COMMON POLICY DECLARATIONS**

Policy No: WS348486

Agency No: 228000          Producer No:          Previous Policy No: NEW

**POLICY PERIOD:**    **From** 07/13/2018  **To** 07/13/2019    **Term:** 1 Year
at 12:01 A.M. at your mailing address shown below.

**Named Insured:**

Northbrook Industries DBA United Inn Tahir Shareef

**Mailing Address:** 4649 Memorial Dr

Decatur                                    GA  30032

**BUSINESS DESCRIPTION:** MOTEL

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**COVERAGE PART DESCRIPTION**                                          **PREMIUM**

Commercial General Liability Coverage Part ............................. $ ____

Commercial Property Coverage Part ....................................... $ ____

**PREMIUM TOTAL**      $ ____

Policy Fee      $ ____

Inspection Fee      $ ____

Surplus Lines Tax      $ ____

**POLICY TOTAL**      $ ____

Minimum earned premium of 25% of the policy premium applies in the event of cancellation.
Policy Fee is fully earned at inception and non-refundable in the event of flat cancellation.
Inspection Fee is fully earned at inception and non-refundable in the event of flat cancellation.

THIS CONTRACT IS REGISTERED AND
DELIVERED AS A SURPLUS LINE COVERAGE
UNDER THE SURPLUS LINE INSURANCE
LAW, O.C.G.A. CHAPTER 33-5.

**FORMS AND ENDORSEMENTS**

The schedule of coverage declarations, forms and endorsements shown on S1D-ILS make up your policy as of the effective date shown above.

Agency Name/Address:          770-952-0080
Hull & Company
2525 Piedmont Rd NE, Bdg 5, Ste 700
Atlanta, GA 30305                          ,

Countersigned: _____07/18/2018 KI_____ By _____

                    Date                                         Authorized Representative

S1D-IL (9/05)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# SCHEDULE OF FORMS AND ENDORSEMENTS

**Effective Date:** 07/13/2018                           **Policy No:** WS348486

**Named Insured:**
Northbrook Industries DBA United Inn Tahir Shareef

**The following schedule of coverage declarations, forms and endorsements make up your policy as of the effective date shown above.**

## COMMON POLICY DECLARATIONS - S1D-IL (9/05)
The following forms and endorsements apply to coverage parts as stated on the form or endorsement:

| | |
|---|---|
| S1-IL (9/05) | Commercial Insurance Policy |
| N-3384 (7/08) | Important Notice - Producer Compensation |
| IL 00 17 (11/98) | Common Policy Conditions |
| IL 00 21 (09/08) | Nuclear Energy Liability Exclusion Endorsement |
| SLQAGA (2/14) | Georgia FAQ - SL Policy Notice |
| S1D-IL (9/05) | Common Policy Declarations |
| S1D-ILS (9/05) | Schedule of Forms and Endorsements |
| S1030-IL (7/08) | Service of Suit |
| S2612-IL (6/17) | Amendment - Non-Renewal |
| IL T4 14 (01/15) | Cap on Losses From Certified Acts of Terrorism |
| S2765-IL (1/14) | Amendment - Minimum Earned Premium |
| S2965-IL (3/15) | Amendment of Common Policy Conditions Prohibited Coverage – Unlicensed Insurance and Trade or Economic Sanctions |
| S2976-IL (8/15) | Exclusion Of Loss Due To Virus Or Bacteria |
| IL 09 35 (07/02) | Exclusion of Certain Computer-Related Losses |

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS - S2584D-CG (9/05)
The following forms and endorsements apply to the Commercial General Liability Coverage Part only:

| | |
|---|---|
| S2584D-CG (9/07) | Commercial GL Coverage Part Declarations |
| CG 00 01 (12/07) | General Liability Coverage Form |
| S19-CG (3/17) | Amendment - Contractual Liability |
| S21-CG (6/16) | Deductible Liability Insurance |
| S40-CG (2/16) | Exclusion - Abuse or Molestation |
| S42-CG (2/16) | Total Pollution Exclusion with Exceptions for Building Heating, Cooling, Dehumidifying and Personal Hot Water Heating Equipment and Hostile Fire |
| S46-CG (2/16) | Exclusion - Independent Contractors |
| S94-CG (11/17) | Exclusion - Injury to Employees, Workers Or Contracted Persons |
| S267-CG (6/14) | Combination Endorsement Bodily Injury and Property Damage Liability |
| S524-CG (5/15) | Exclusion - Tobacco or Nicotine |
| S2114-CG (4/14) | Exclusion - Exterior Insulation and Finish Systems |
| S2608-CG (11/16) | Exclusion - Real Estate Development Activities |

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| IL T3 68 (01/15) | Federal Terrorism Risk Insurance Act Disclosure |
| S2623-CG (6/14) | Combination Endorsement Personal and Advertising Injury Liability |
| S2816-CG (2/16) | Limited Assault or Battery Liability Coverage |
| S2840-CG (1/13) | Exclusion - Aircraft, Auto or Watercraft Exception for Canoes or Rowboats |
| S2953-CG (7/13) | Exclusion - Habitability of Premises |
| S2905-CG (2/12) | Exclusion - Prior Bodily Injury Or Property Damage |
| S2972-CG (5/15) | Exclusion - Inhalation Devices |
| S2996-CG (5/16) | Exclusion - Cross Liability - Broad Form |
| CG 21 32 (05/09) | Communicable Disease Exclusion |
| CG 21 36 (03/05) | Exclusion - New Entities |
| CG 24 26 (07/04) | Amendment of Insured Contract Definition |
| S43-CG (1/14) | Exclusion - Punitive or Exemplary Damages |
| S56-CG (10/04) | Amendment - Deposit Premium and Minimum Premium |
| S311-CG (3/11) | Exclusion - Professional Services |
| S354-CG (2/14) | Exclusion - Liquor - Absolute |

**COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS - S9D-CP (9/05)**
The following forms and endorsements apply to the Commercial Property Coverage Part only:

| | |
|---|---|
| S9D-CP (9/05) | Commercial Property Coverage Part Declarations |
| CP 00 10 (10/12) | Building and Personal Property Coverage Form |
| CP 00 30 (10/12) | Business Income (and Extra Expense) Coverage Form |
| CP 00 90 (07/88) | Commercial Property Conditions |
| CP 10 30 (09/17) | Causes of Loss - Special Form |
| S69-CP (11/16) | Endorsement - Vacancy Restriction and Fungus Exclusion Changes |
| CP T3 81 (01/15) | Federal Terrorism Risk Insurance Act Disclosure |
| S2955-CP (11/13) | Amendatory Provisions - Duties in the Event of Loss or Damage |
| S3013-CP (10/16) | Limitations on Coverage for Roof Surfacing |
| S2971-CP (9/17) | Protective Safeguards |
| CP 02 99 (06/07) | Cancellation Changes |
| CP 12 70 (09/96) | Joint or Disputed Loss Agreement |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

This policy is subject to the following:

In the event of our failure to pay any amount claimed to be due hereunder, we, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practices of such court.

The service of process in such suit may be made upon our President or his nominee, at 385 Washington Street, St. Paul, MN 55102 and that in any suit instituted against one of them upon this contract, we will abide by the final decision of such court or of any Appellate court in the event of an appeal.

The above named are authorized and directed to accept service of process on our behalf in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that they will enter a general appearance upon our behalf in the event that a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his/her successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

*Special rule for California.*  For the State of California we authorize CSC - Lawyers Incorporating Services, 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA 95833 to be served and to mail us the papers.

*Special rule for Rhode Island.*  For the State of Rhode Island we authorize Corporate Service Company, 222 Jefferson Boulevard, Suite 200, Warwick, RI 02888 to be served and to mail us the papers.

S1030-IL (7/08)

.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - NON-RENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Paragraph **9., When We Do Not Renew**, of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, **SECTION IV - LIQUOR LIABILITY CONDITIONS** and **SECTION IV - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS** is deleted.

© 2017 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
**COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE**
COMMERCIAL GENERAL LIABILITY COVERAGE PART
**COMMERCIAL INLAND MARINE COVERAGE PART**
COMMERCIAL PROPERTY COVERAGE PART
CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
CYBERFIRST LIABILITY COVERAGE
DELUXE PROPERTY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT
    COVERAGE PART
**ENVIRONMENTAL HAZARD POLICY**
EQUIPMENT BREAKDOWN COVERAGE PART
**EXCESS (FOLLOWING FORM) LIABILITY INSURANCE**
LAW ENFORCEMENT LIABILITY COVERAGE PART
LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
**MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND**
    INFORMATION SECURITY LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
    **TRANSPORTATION**
TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
Any other Coverage Part or Coverage Form included in this policy that is subject to the federal Terrorism Risk
    Insurance Act of 2002 as amended

The following is added to this policy. This provision can limit coverage for any loss arising out of a "certified act of terrorism" if such loss is otherwise covered by this policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of "certified acts of terrorism" in another endorsement to this policy.

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our insurer deductible under "TRIA", we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of "TRIA", to be an act of terrorism pursuant to "TRIA". The criteria contained in "TRIA" for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to "TRIA"; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002 as amended.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT - MINIMUM EARNED PREMIUM

**\*This endorsement is EFFECTIVE**  07/13/2018        **\*and is part of Policy Number:**  WS348486

**\*issued to:** Northbrook Industries DBA United Inn Tahir Shareef

**\*Entry optional if shown in the Common Policy Declarations.** If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The following is added to the Common Policy Conditions:

**Minimum Earned Premium**

If this insurance is cancelled at your request, we will retain a minimum earned premium in addition to all fully earned premiums and, if applicable, 100% of all fees. After reduction for all fully earned premiums and applicable fees, we will calculate the minimum earned premium by one of the following three methods, whichever is shown by entry below:

**(1)**  ___25__ % of the remaining premium for this insurance.

**(2)** $ _____ .

**(3)** _____ % of the remaining premium for this insurance or $ _____ , whichever is greater.

We will consider cancellation of this insurance for nonpayment of premium to be a request by the first Named Insured for cancellation of this insurance.

The provisions of this amendment apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the minimum earned premium.

        © 2014 The Travelers Indemnity Company. All rights reserved.

Case 1:20-cv-03590-JEB   Document 447-21   Filed 08/24/24   Page 87 of 223

.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMMON POLICY CONDITIONS - PROHIBITED COVERAGE - UNLICENSED INSURANCE AND TRADE OR ECONOMIC SANCTIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGES INCLUDED IN THIS POLICY

The following is added to the Common Policy Conditions:

**Prohibited Coverage - Unlicensed Insurance**

1. With respect to loss sustained by any insured, or loss to any property, located in a country or jurisdiction in which we are not licensed to provide this insurance, this insurance does not apply to the extent that insuring such loss would violate the laws or regulations of such country or jurisdiction.

2. We do not assume responsibility for:

   **a.** The payment of any fine, fee, penalty or other charge that may be imposed on any person or organization in any country or jurisdiction because we are not licensed to provide insurance in such country or jurisdiction; or

   **b.** The furnishing of certificates or other evidence of insurance in any country or jurisdiction in which we are not licensed to provide insurance.

**Prohibited Coverage - Trade Or Economic Sanctions**

We will provide coverage for any loss, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose us or any of our affiliated or parent companies to:

1. Any trade or economic sanction under any law or regulation of the United States of America; or

2. Any other applicable trade or economic sanction, prohibition or restriction.

 © 2015 The Travelers Indemnity Company. All rights reserved.

Case 1:20-cv-03590-JEB   Document 471   Filed 08/12/24   Page 89 of 223

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense, rental value or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

© 2015 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

S2976-IL (8/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others;

      **(1)** Computer hardware, including micro-processors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical break-down, under the Causes of Loss - Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss - Basic Form or the Causes Of Loss - Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

 Copyright, ISO Properties, Inc., 2001

**Northfield Insurance Company**
**St. Paul, MN 55102**

**COMMERCIAL GENERAL LIABILITY**
**COVERAGE PART DECLARATIONS**

**Effective Date:** 07/13/2018 12:01 A.M. at your mailing address          **Policy No:** WS348486

**Named Insured:**
Northbrook Industries DBA United Inn Tahir Shareef

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit | $ 1,000,000 | |
| Damage To Premises Rented To You Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| General Aggregate Limit | $ 2,000,000 | |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 | |

## BUSINESS INFORMATION

Form of Business: ☐ Individual   ☐ Joint Venture   ☐ Partnership   ☐ Limited Liability Company   ☐ Trust
☒ Organization, including a Corporation (but not including a partnership, joint venture, trust or limited liability company.)

Loc. #   Address of All Premises (Including Zip Code) That You Own, Rent or Occupy

| 002 | 4649 Memorial Dr | Decatur | GA | 30032 |
|---|---|---|---|---|

## PREMIUM

| Loc. # | Classification | Code No. | Premium Base | Rate Pr/CO | Rate All Other | Advance Premium Pr/CO | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 002 | Hotels and Motels - without pools or beaches - four stories or more. - Products-completed operations are subject to General Aggregate Limit. | 45193 | s+ | Included | $ ▮ | Included | $ ▮ |
| | Limited Coverage - Assault or Battery | | | | | $ | $ ▮ |
| | | | | | Subline Premiums | $ .00 | $ ▮ |
| | | | | | Total Advance Premium | $ ▮ | |

## FORMS AND ENDORSEMENTS

The schedule of coverage declarations, forms and endorsements shown on S1D-ILS make up your policy as of the effective date shown above.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

CASE 2:23-cv-03356-EK-DOC Document 1472-1 Filed 01/24/02024 Page 62 of 560 223

When used as a premium base:

**"Area"** (premium basis symbol a) means:

The total number of square feet of floor space at the insured premises, computed as follows:

1. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:
   a. Courts and mezzanine types of floor openings.
   b. Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.
2. For tenants, determine the area they occupy in the same manner as for the entire buildings.
3. The rates apply per 1,000 square feet of area.

**"Total Cost"** (premium basis symbol c) means:

The total cost of all work let or sublet in connection with each specific project including:

1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work, however, do not include the cost of finished equipment installed but not furnished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and
2. All fees, bonuses or commissions made, paid or due.
3. The rates apply per 1,000 of total cost.

**"Admissions"** (premium basis symbol m) means:

The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

The rates apply per 1,000 admissions.

**"Payroll"** (premium basis symbol p) means:

1. Commissions;
2. Bonuses;
3. Extra pay for overtime work, except as provided in Paragraph 17;
4. Pay for holidays, vacations or periods of sickness;
5. Payment by an employer of amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;
6. Payment to employees on any basis other than time worked, such as piecework, profit sharing or incentive plans;
7. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations to the insured;
8. The rental value of an apartment or a house provided for an employee based on comparable accommodations;
9. The value of lodging, other than an apartment or house, received by employees as part of their pay, to the extent shown on the insureds records;
10. The value of meals received by employees as part of their pay to the extent shown in the insured's records;
11. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;
12. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll cannot be obtained, use 1/3 of the total amount paid out by the insured for the hire of the equipment;
13. The payroll of executive officers of a corporation and individual insureds and co-partners. For the purposes of payroll determination, managers of limited liability companies shall be considered executive officers and members of limited liability companies shall be considered co-partners.
    The executive officers of a corporation are those persons holding any of the officer positions created by the named insured's charter, constitution or by-laws or any other similar governing document.
    The payroll of all executive officers of a corporation and individual insureds or co-partners engaged principally in clerical operations or as salespersons, and officers and co-partners who are inactive for the entire policy period, shall not be included for premium purposes.
    For part-time or seasonal businesses the payroll amounts may be reduced by 2 percent for each full calendar week in excess of twelve during which the risk performs no operations.
14. The payroll of leased workers furnished to the named insured by a labor leasing firm. Premium on such payroll shall be based on the classifications and rates which would have applied if the leased workers had been the direct employees of the named insured. If payroll is unavailable, use 100% of the total cost of the contract for leased workers as the payroll of leased workers. The premium shall be charged on that amount as payroll.
    If irregularities of a specific employee leasing contract discloses that a definite amount of the contract price represents payroll, such amount shall be considered payroll for premium computation purposes.
15. Fees paid to employment agencies for temporary personnel provided to the insured.
16. Payroll does not include:
    a. Tips and other gratuities received by employees;
    b. Payments by an employer to group insurance or group pension plans for employees other than payments covered by Paragraph 5. above.

The value of special rewards for individual invention or discovery;

d. Dismissal or severance payments except for time worked or accrued vacation;

e. The payroll of clerical office employees. Clerical office employees are those employees who work in an area which is physically separated by walls, floors or partitions from all other work areas of the insured and whose duties are strictly limited to keeping the insured's books or records or conducting correspondence, including any other employees engaged in clerical work in the same area;

f. The payroll of salesmen, collectors or messengers who work principally away from the insured's premises.
   Salesmen, collectors or messengers are those employees engaged principally in any such duties away from the premises of the employer;
   Exception: This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.

g. The payroll of drivers and their helpers if their principal duties are to work on or in connection with automobiles.

h. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with an aircraft in either capacity.

i. The payroll of draftsmen if their duties are limited to office work only and who are engaged strictly as draftsmen in such a manner that they are not exposed to the operative hazards of the business. The payroll of these draftsmen shall be assigned to the classification "Draftsmen" - Code 91805.

## 17. Overtime

a. Definition
   Overtime means those hours worked for which there is an increase in the rate of pay:
   (1) For work in any day or in any week in excess of the number of hours normally worked; or
   (2) For hours worked in excess of 8 hours in any day or 40 hours in any week; or
   (3) For work on Saturdays, Sundays or holidays.
   In the case of guaranteed wage agreements, overtime means only those hours worked in excess of the number specified in such agreement.

b. Exclusion Of Overtime Payroll
   The extra pay for overtime shall be excluded from the payroll on which premium is computed as indicated in (1) or (2), provided the insured's books and records are maintained to show overtime pay separately by employee and in summary by classification.
   (1) If the records show separately the extra pay earned for overtime, the entire extra pay shall be excluded.
   (2) If the records show the total pay earned for overtime (regular pay plus overtime pay) in one combined amount, 1/3 of this total pay shall be excluded. If double time is paid for overtime and the total pay for such overtime is recorded separately, 1/2 of the total pay for double time shall be excluded.
   Exclusion of overtime pay does not apply to payroll assigned to the "Stevedoring" classifications.
   The rates apply per $1,000 of payroll.

**"Gross Sales"** (premium basis symbol s) means:

a. The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
   (1) All goods or products, sold or distributed;
   (2) Operations performed during the policy period;
   (3) Rentals; and
   (4) Dues and fees.

b. Inclusions
   The following items shall not be deducted from gross sales:
   (1) Foreign exchange discounts;
   (2) Freight allowance to customers;
   (3) Total sales of consigned goods and warehouse receipts;
   (4) Trade or cash discounts;
   (5) Bad debts; and
   (6) Repossession of items sold on installments (amount actually collected).

c. Exclusions
   The following items shall be deducted from gross sales:
   (1) Sales or excise taxes which are collected and submitted to a governmental division;
   (2) Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
   (3) Finance charges for any items sold on installments;
   (4) Freight charges on sales if freight is charged as a separate item on customer's invoice;
   (5) Royalty income from patent rights or copyrights which are not product sales; and
   (6) Rental receipts from products liability coverage only.

d. The rates apply per $1,000 of gross sales.

**"Units"** (premium basis symbol u) means:

A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone. The rates apply per each unit

Premium basis symbol t means: Refer to classification description.

Case Case 1:20-cv-35233SEGAT DDocument 14721 Filed 081240824 Page 96 of 223

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Copyright, ISO Properties, Inc., 2006

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Copyright, ISO Properties, Inc., 2006

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for;

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

Copyright, ISO Properties, Inc., 2006

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate rate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Copyright, ISO Properties, Inc., 2006

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of the oral or written publication of material whose first publication took place before the beginning of the policy period.

Copyright, ISO Properties, Inc., 2006

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of any insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Copyright, ISO Properties, Inc., 2006

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazards**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

 Copyright, ISO Properties, Inc., 2006

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Copyright, ISO Properties, Inc., 2006

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage B.

 Copyright, ISO Properties, Inc., 2006

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Copyright, ISO Properties, Inc., 2006

#### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

##### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

##### b. Excess Insurance

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage A - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

##### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

#### 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date of the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

#### 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon repre-sentations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

 Copyright, ISO Properties, Inc., 2006

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purposes of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Copyright, ISO Properties, Inc., 2006

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of con-struction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

 Copyright, ISO Properties, Inc., 2006

f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

Copyright, ISO Properties, Inc., 2006

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, factors or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

Copyright, ISO Properties, Inc., 2006

Case 1:20-cv-03590-JEB Document 147-1 Filed 09/08/23 Page 111 of 223

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT - CONTRACTUAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following is added to Exclusion **b.**, **Contractual Liability**, in Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   Paragraph **(2)** does not apply to any damages arising out of the:

   **a.** Sole negligence of the indemnitee; or

   **b.** Ownership, operation, chartering, renting, maintenance, use, or entrustment to others of any aircraft, other than any "unmanned aircraft" insured under this Coverage Part.

2. The following is added to the **DEFINITIONS** Section:

   "Unmanned aircraft" means an aircraft that is not designed, manufactured, or modified after it is manufactured, to be controlled directly by a person from within or on the aircraft.

 © 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

\*This endorsement is **EFFECTIVE** 07/13/2018     \*and is part of Policy Number: WS348486

\*issued to: Northbrook Industries DBA United Inn Tahir Shareef

\*Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE OF DEDUCTIBLES**

| Coverage | Amount of Deductible | |
|---|---|---|
| Bodily Injury Liability | $ | Each Claim |
| | $ | Each Occurrence |
| Property Damage Liability | $ | Each Claim |
| | $ | Each Occurrence |
| Bodily Injury Liability and Property Damage Liability Combined | $ | Each Claim |
| | $ 2,500 | Each Occurrence |
| Personal and Advertising Injury Liability | $ | Each Claim |

**PROVISIONS**

The following Section is added:

**DEDUCTIBLE LIABILITY INSURANCE**

1. Our obligation under the Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount shown in the Schedule Of Deductibles as applicable to such coverages.

2. The applicable limit of insurance will be reduced by the amount of any damages within the deductible amount. Any aggregate limit will not be reduced by the application of the deductible amount.

3. The deductible amount will also apply towards handling, investigation, adjustment, and legal expenses, even when no payment is made to the claimant, when a compromise settlement is reached, or when the claim is denied.

4. The deductible amount shown in the Schedule Of Deductibles applies as follows:

   a. Each Claim. If the deductible amount is shown as Each Claim, the deductible amount applies as follows:

      (1) Under Bodily Injury Liability coverage, to all damages because of "bodily injury" sustained by any one person as a result of any one "occurrence".

      (2) Under Property Damage Liability, to all damages because of "property damage" sustained by any one person or organization as a result of any one "occurrence".

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(3)** Under Bodily Injury Liability and Property Damage Liability combined, to all damages because of "bodily injury" and "property damage" sustained by any one person or organization as a result of any one "occurrence".

**(4)** Under Personal and Advertising Injury Liability, to all damages because of "personal and advertising injury" sustained by any one person or organization.

**b.** Each Occurrence.  If the deductible amount is shown as Each Occurrence, the deductible amount applies as follows:

**(1)** Under Bodily Injury Liability, to the sum of all damages because of "bodily injury" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**(2)** Under Property Damage Liability, to the sum of all damages because of "property damage" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**(3)** Under Bodily Injury Liability and Property Damage Liability combined, to the sum of all damages because of all "bodily injury" and "property damage" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**5.** The terms of this insurance, including those with respect to:

**a.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**b.** Your duties in the event of an "occurrence", claim or "suit";

apply irrespective of the application of the deductible amount.

**6.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you will promptly reimburse us for the part of the deductible amount paid by us.

© 2016 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ABUSE OR MOLESTATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **2.**, Exclusions, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Abuse Or Molestation**

"Bodily injury" or "property damage" arising out of any act of "abuse or molestation" committed by any person, including any act or omission in connection with the prevention or suppression of such "abuse or molestation".

**2.** The following exclusion is added to Paragraph **2.**, Exclusions, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Abuse Or Molestation**

"Personal and advertising injury" arising out of any act of "abuse or molestation" committed by any person, including any act or omission in connection with the prevention or suppression of such "abuse or molestation".

**3.** The following is added to the **DEFINITIONS** Section:

"Abuse or molestation" means any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.

 © 2016 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH EXCEPTIONS FOR BUILDING HEATING, COOLING, DEHUMIDIFYING AND PERSONAL HOT WATER HEATING EQUIPMENT AND HOSTILE FIRE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following replaces Exclusion **f., Pollution**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

   **f. Pollution**

   **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

   This paragraph does not apply to:

   **(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or produced by or originating from equipment that is used to heat water for personal use by the building's occupants or their guests; or

   **(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

   **(i)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

   **(ii)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are or were at any time performing operations to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

   **(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or "suit" by or on behalf of a government authority or others because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

2. The following replaces the last paragraph of Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

   Exclusions **c.** through **e.** and **g.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III - LIMITS OF INSURANCE**.

© 2016 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - INDEPENDENT CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Independent Contractors**

"Bodily injury" or "property damage" arising out of the operations of any independent contractor performed for or on behalf of any insured.

**2.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Independent Contractors**

"Personal and advertising injury" arising out of the operations of any independent contractor performed for or on behalf of any insured.

© 2016 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

S46-CG (2/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - INJURY TO EMPLOYEES, WORKERS OR CONTRACTED PERSONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Bodily Injury To Employees, Workers Or Contracted Persons**

This insurance does not apply to "bodily injury" to:

**(1)** Any person who is an "employee", "leased worker", "temporary worker" or "volunteer worker" of you or any insured arising out of and in the course of:

   **(a)** Employment by you or any insured; or

   **(b)** Performing duties related to the conduct of your business or any insured's business;

**(2)** Any person who contracted with you or with any insured for the performance of services, whether the services are to be performed by or for you, or by or for any insured, arising out of and in the course of performing duties related to the conduct of your business or any insured's business;

**(3)** Any person who is employed by, is leased to, or contracted with any other person or any organization that:

   **(a)** Contracted with you or with any insured for the performance of services, whether the services are to be performed by or for that other person or organization; or

   **(b)** Contracted with others on your behalf for the performance of services, whether the services are to be performed by or for that other person or organization;

   arising out of and in the course of employment by, or in the course of performing duties for, that other person or organization and while performing the contracted services; or

**(4)** The spouse, child, parent, brother or sister of any of those persons as a consequence of the "bodily injury" described in Paragraphs **(1)**, **(2)** or **(3)** above.

For the purposes of this exclusion, contracted includes entering into an oral or written contract.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

**2.** The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Injury To Employees, Workers Or Contracted Persons**

This insurance does not apply to "personal and advertising injury" to:

**(1)** Any person who is an "employee", "leased worker", "temporary worker" or "volunteer worker" of you or any insured arising out of and in the course of:

   **(a)** Employment by you or any insured; or

 © 2017 The Travelers Indemnity Company. All rights reserved.

**(b)** Performing duties related to the conduct of your business or any insured's business;

**(2)** Any person who contracted with you or with any insured for the performance of services, whether the services are to be performed by or for you, or by or for any insured, arising out of and in the course of performing duties related to the conduct of your business or any insured's business;

**(3)** Any person who is employed by, is leased to, or contracted with any other person or any organization that:

**(a)** Contracted with you or with any insured for the performance of services, whether the services are to be performed by or for that other person or organization; or

**(b)** Contracted with others on your behalf for the performance of services, whether the services are to be performed by or for that other person or organization;

arising out of and in the course of employment by, or in the course of performing duties for, that other person or organization and while performing the contracted services; or

**(4)** The spouse, child, parent, brother or sister of any of those persons as a consequence of the "personal and advertising injury" described in Paragraphs **(1)**, **(2)** or **(3)** above.

For the purposes of this exclusion, contracted includes entering into an oral or written contract.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © 2017 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMBINATION ENDORSEMENT
# BODILY INJURY AND PROPERTY DAMAGE LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**A. AMENDMENT OF EXCLUSIONS**

    **1. EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY**

    The following replaces Exclusion **p., Electronic Data**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

    **p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

    "Bodily injury" and "property damage" arising out of:

    **(1)** Any access to or disclosure of any person's or organization's confidential or personal information; or

    **(2)** The loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate data, including information, facts or programs in any electronic or other format.

    **2. EXCLUSION - UNSOLICITED COMMUNICATION**

    The following replaces Exclusion **q., Distribution Of Material In Violation Of Statutes**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

    **q. Unsolicited Communication**

    "Bodily injury" or "property damage" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

    **3. EXCLUSION - AIRCRAFT PRODUCTS AND GROUNDING**

    The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

    **Aircraft Products and Grounding**

    "Bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any "aircraft product" or the "grounding" of any aircraft.

    **4. EXCLUSION - ASBESTOS OR SILICA**

    The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

    **Asbestos or Silica**

    "Bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of:

**(1)** Asbestos, asbestos fibers or products containing asbestos, provided that the "bodily injury" or "property damage" is caused, or contributed to, by the hazardous properties of asbestos; or

**(2)** Silica or products or substances containing silica.

## 5. EXCLUSION - DISCRIMINATION

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Discrimination**

"Bodily injury" arising out of discrimination, whether intentional or unintentional, based upon a person's sex, sexual orientation, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

## 6. EXCLUSION - EMPLOYMENT-RELATED PRACTICES

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Employment-Related Practices**

"Bodily injury" to:

**(1)** A person, other than an "independent contractor", arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment or "temporary worker" status; or

    **(c)** Other practice, policy, act or omission related to that person's employment or "temporary worker" status, such as coercion, demotion, evaluation, reassignment, discipline, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or imprisonment, regardless of whether such practice, policy, act or omission occurs, is applied or is committed before, during or after the time of that person's employment or "temporary worker" status; or

**(2)** The spouse, child, parent, brother, sister, domestic partner or member of the household of that person as a consequence of "bodily injury" described in Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be held liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

## 7. EXCLUSION - FUNGI OR BACTERIA

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I -  COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Fungi or Bacteria**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the "bodily injury" or "property damage".

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**8. EXCLUSION - LEAD**

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Lead**

**(1)** "Bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance.

**(2)** Any loss, cost or expense arising out of any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

**9. EXCLUSION - VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS**

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Violation of Consumer Financial Protection Laws**

"Bodily injury" or "property damage" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any such violation.

**B. AMENDMENT OF LIMITS OF INSURANCE - NONCUMULATION OF LIMITS**

The following replaces Paragraph **5.** of **SECTION III - LIMITS OF INSURANCE:**

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all:

**a.** Damages under Coverage **A** because of all "bodily injury" and "property damage"; and

**b.** Medical expenses under Coverage **C** because of all "bodily injury";

arising out of any one "occurrence".

Noncumulation of Each Occurrence Limit - If any one "occurrence" causes:

**a.** "Bodily injury" or "property damage" to which this insurance applies; and

**b.** "Bodily injury" or "property damage" to which commercial general liability coverage included in one or more prior or future policies issued to you by us, or any of our affiliated insurance companies, applies;

this policy's Each Occurrence Limit applicable to that "occurrence" also will be reduced by the amount of each payment made because of the "bodily injury" or "property damage" described in Paragraph **b.** above by us or any of our affiliated insurance companies under, and within the applicable limit of insurance of, each such other policy.

**C. AMENDMENT OF CONDITIONS - OTHER INSURANCE**

**1.** The following replaces the part of the first paragraph of Paragraph **4., Other Insurance**, of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** that precedes Paragraph **a.:**

If valid and collectible other insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(I)** Another insurance company;

**(II)** Us or any of our affiliated insurance companies, except when the Noncumulation of Each Occurrence Limit provision of Paragraph **5.** of Section **III** - Limits Of Insurance applies or when the Noncumulation of Personal and Advertising Injury Limit provision of Paragraph **4.** of Section **III** - Limits of Insurance applies if that provision is part of this policy;

**(III)** Any risk retention group;

**(Iv)** Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reason, in which case the insured will be deemed to be the provider of other insurance; or

**(v)** Any similar risk transfer or risk management method.

Other insurance does not include umbrella insurance, or excess insurance, that you bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage Part.

2. The following replaces Paragraph **4.b.**, **Excess Insurance**, of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(3)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(4)** If the loss arises out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability; or

**(5)** That is available to the insured when the insured has been added as an additional insured by attachment of an endorsement under any other insurance or is any other insured that is not a named insured under such insurance.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any provider of other insurance has a duty to defend the insured against that "suit". If no provider of other insurance defends, we will undertake to do so, but we will be entitled to the insured's rights against all those providers of other insurance.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all such other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision.

© 2014 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## D. AMENDMENT OF DEFINITIONS

### 1. COVERAGE TERRITORY

The following replaces the definition of "coverage territory" in the **DEFINITIONS** Section:

"Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place; or

**(2)** The "personal and advertising injury" is caused by an offense committed;

in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses committed through the Internet or other electronic means of communication;

provided that the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above, or in a settlement we agree to.

### 2. LEASED WORKER

The following replaces the definition of "leased worker" in the **DEFINITIONS** Section:

"Leased worker" means a person hired from a labor leasing firm under an agreement between the hirer and that firm to perform duties related to the conduct of the hirer's business.  However, "leased worker" does not include a "temporary worker".

### 3. LOADING OR UNLOADING

The following replaces the definition of "loading or unloading" in the **DEFINITIONS** Section:

"Loading or unloading" means the handling of any person or property:

**a.** After it is moved from the place where the person or property is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While in or on an aircraft, watercraft or "auto"; or

**c.** While being moved from an aircraft, watercraft or "auto" to the place where the person or property is finally delivered.

However, "loading or unloading" does not include the movement of any person or property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## 4. PROPERTY DAMAGE

The following replaces the definition of "property damage" in the **DEFINITIONS** Section:

"Property damage" means:

**a.** Physical damage to tangible property of others, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical damage that caused it; or

**b.** Loss of use of tangible property of others that is not physically damaged. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, data including information, facts or programs in any electronic or other format, is not tangible property.

## 5. TEMPORARY WORKER

The following replaces the definition of "temporary worker" in the **DEFINITIONS** Section:

"Temporary worker" means a person who is hired to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

## 6. AIRCRAFT PRODUCT

The following is added to the **DEFINITIONS** Section:

"Aircraft product" means:

**a.** Aircraft, including missile or spacecraft, and any ground support or control equipment used with any aircraft, missile or spacecraft;

**b.** Any of "your products" manufactured for, used in connection with, or incorporated into aircraft, aircraft parts, aircraft equipment or aircraft accessories, including ground handling tools and equipment;

**c.** Any of "your products" used for the purpose of guidance, navigation or direction of aircraft, whether an aircraft is in flight or on the ground; or

**d.** Training aids, navigation charts, navigation aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft or products.

## 7. CONSUMER FINANCIAL IDENTITY INFORMATION

The following is added to the **DEFINITIONS** Section:

"Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

**a.** Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.

**b.** Information bearing on a person's credit worthiness, credit standing or credit capacity.

**c.** Social security number.

**d.** Drivers license number.

**e.** Birth date.

© 2014 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
S267-CG (6/14)                                                                                          Page 6 of 7

**8. CONSUMER FINANCIAL PROTECTION LAW**

The following is added to the **DEFINITIONS** Section:

"Consumer financial protection law" means:

**a.** The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

**b.** California's Song-Beverly Credit Card Act and any of its amendments; or

**c.** Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

**9. FUNGI**

The following is added to the **DEFINITIONS** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**10. GROUNDING**

The following is added to the **DEFINITIONS** Section:

"Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the actual, alleged or suspected existence of any defect, fault or condition in such aircraft or any part thereof:

**a.** Sold, handled or distributed by the insured; or

**b.** Manufactured, assembled or processed by any other person or organization

**(1)** According to specifications, plans, suggestions, orders, or drawings of the insured; or

**(2)** With tools, machinery or other equipment furnished to such persons or organizations by the insured.

Whether such aircraft so withdrawn or restricted are owned or operated by the same or different persons or organizations.

**11. INDEPENDENT CONTRACTOR**

The following is added to the **DEFINITIONS** Section:

"Independent contractor" means any person who is not the insured's "employee", "temporary worker" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

**12. UNSOLICITED COMMUNICATION**

The following is added to the **DEFINITIONS** Section:

"Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

© 2014 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - TOBACCO OR NICOTINE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **Tobacco Or Nicotine**

   "Bodily injury" or "property damage" arising out of the:

   **(1)** Sale, manufacture, handling, distribution, marketing or advertising of; or

   **(2)** Actual, alleged or threatened absorption, consumption, ingestion, inhalation or use of, or exposure to any "tobacco or tobacco product" or "nicotine or nicotine product".

   This exclusion applies to all such "bodily injury" or "property damage", regardless of whether such "bodily injury" or "property damage" is included in the "products-completed operations hazard".

2. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

   **Tobacco Or Nicotine**

   "Personal injury" or "advertising injury" arising out of the:

   **(1)** Sale, manufacture, handling, distribution, marketing or advertising of; or

   **(2)** Actual, alleged or threatened absorption, consumption, ingestion, inhalation or use of, or exposure to any "tobacco or tobacco product" or "nicotine or nicotine product".

3. The following is added to the **DEFINITIONS** Section:

   "Nicotine or nicotine product":

   **a.** Means:

       **(1)** Natural or synthetic nicotine, in any form; or

       **(2)** Any good or product that contains natural or synthetic nicotine.

   **b.** Includes:

       **(1)** Any material, substance, ingredient or element on, in or part of natural or synthetic nicotine;

       **(2)** Any smoke, vapor, soot, fume or other substance that results from natural or synthetic nicotine, or from any good or product that contains natural or synthetic nicotine;

       **(3)** Any filter, paper, tip, wrapper or other part of any good or product containing natural or synthetic nicotine;

 © 2015 The Travelers Indemnity Company.  All rights reserved.

(4) Any device used for the absorption, consumption, ingestion, inhalation or delivery of natural or synthetic nicotine, or any container, material, part, equipment or accessory furnished in connection with such device;

(5) Any warranty or representation made at any time with respect to the fitness, quality, durability, performance or use of natural or synthetic nicotine, or with respect to any good or product that contains natural or synthetic nicotine; or

(6) The providing of or failure to provide warnings or instructions with respect to natural or synthetic nicotine, or with respect to any good or product that contains natural or synthetic nicotine.

"Tobacco or tobacco product":

a. Means:

(1) Any type of tobacco, in any form; or

(2) Any good or product that contains tobacco.

b. Includes:

(1) Any material, substance, ingredient or element on, in or part of tobacco;

(2) Any smoke, vapor, soot, fume or other substance that results from tobacco, or from any good or product that contains tobacco;

(3) Any filter, paper, tip, wrapper or other part of any good or product containing tobacco;

(4) Any device used for the absorption, consumption, ingestion, inhalation or delivery of tobacco, or any container, material, part, equipment or accessory furnished in connection with such device;

(5) Any warranty or representation made at any time with respect to the fitness, quality, durability, performance or use of tobacco, or with respect to any good or product that contains tobacco; or

(6) The providing of or failure to provide warnings or instructions with respect to tobacco, or with respect to any good or product that contains tobacco.

 © 2015 The Travelers Indemnity Company. All rights reserved.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Exterior Insulation And Finish System**

"Bodily injury" or "property damage" arising out of "your product" or "your work" that is, that is on, that is in or that is part of:

**(1)** Any "exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS), or any substantially similar system, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**(2)** Any component, fixture, or any other feature of, or on, the exterior of any building or other structure if an "exterior insulation and finish system", or any substantially similar system, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system, is on, in or part of, such building or structure.

**2.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Exterior Insulation And Finish System**

"Personal and advertising injury" arising out of "your product" or "your work" that is, that is on, that is in or that is part of:

**(1)** Any "exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS), or any substantially similar system, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**(2)** Any component, fixture, or any other feature of, or on, the exterior of any building or other structure if an "exterior insulation and finish system", or any substantially similar system, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system, is on, in or part of, such building or structure.

**3.** The following is added to the **DEFINITIONS** section:

"Exterior insulation and finish system" means, an exterior cladding or finish system, used on any part of any structure, and consisting of:

**a.** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

**b.** The adhesive or mechanical fasteners used to attach the insulation board to the substrate;

**c.** A reinforced base coat; and

**d.** A finish coat providing surface texture and color.

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - REAL ESTATE DEVELOPMENT ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Real Estate Development Activities**

"Bodily injury" or "property damage" arising out of any "real estate development activities" by or on behalf of any insured.

This exclusion does not apply to the repair, maintenance, renovation, alteration or addition to an existing building owned by the Named Insured.

**2.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Real Estate Development Activities**

"Personal And Advertising Injury" arising out of any "real estate development activities" by or on behalf of any insured.

This exclusion does not apply to the repair, maintenance, renovation, alteration or addition to an existing building owned by the Named Insured.

**3.** The following is added to the **DEFINITIONS** Section:

"Real Estate Development Activities" means the demolition, design, site preparation, construction, marketing or sales of residential, commercial or industrial buildings.

 © 2016 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement applies to the insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE**
COMMERCIAL GENERAL LIABILITY COVERAGE PART
CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
CYBERFIRST LIABILITY COVERAGE
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY$^+$ WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT
   COVERAGE PART
**ENVIRONMENTAL HAZARD POLICY**
**EXCESS (FOLLOWING FORM) LIABILITY INSURANCE**
LAW ENFORCEMENT LIABILITY COVERAGE PART
LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
**MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND**
   INFORMATION SECURITY LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
   TRANSPORTATION
TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
Any other Commercial Liability coverage included in this policy that is subject to the federal Terrorism
   Risk Insurance Act of 2002 as amended

**PROVISIONS**

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA") establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is established by TRIA and is a percentage of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA). Through 2020, that percentage is established by TRIA as follows:

85% with respect to such Insured Losses occurring in calendar year 2015.

84% with respect to such Insured Losses occurring in calendar year 2016.

83% with respect to such Insured Losses occurring in calendar year 2017.

82% with respect to such Insured Losses occurring in calendar year 2018.

81% with respect to such Insured Losses occurring in calendar year 2019.

80% with respect to such Insured Losses occurring in calendar year 2020.

© 2015 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is included in the premium for such coverage. The charge for such Insured Losses that has been included for each such coverage is indicated below, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA.

- **<u>1%</u> of each applicable Commercial Liability Coverage premium.**

© 2015 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL T3 68 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMBINATION ENDORSEMENT

# PERSONAL AND ADVERTISING INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**A. AMENDMENT OF EXCLUSIONS**

    **1. EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION**

        The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

        **Access Or Disclosure Of Confidential Or Personal Information**

        "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

    **2. EXCLUSION - KNOWING VIOLATION OF RIGHTS OF ANOTHER**

        The following replaces Exclusion **a.**, **Knowing Violation Of Rights Of Another**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

        **a. Knowing Violation Of Rights Of Another**

        "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict that "personal and advertising injury".

        This exclusion does not apply to "personal and advertising injury" caused by malicious prosecution.

    **3. EXCLUSION - MATERIAL PUBLISHED WITH KNOWLEDGE OF FALSITY**

        The following replaces Exclusion **b.**, **Material Published With Knowledge Of Falsity**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

        **b. Material Published With Knowledge Of Falsity**

        "Personal and advertising injury" arising out of oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity.

    **4. EXCLUSION - MATERIAL PUBLISHED OR USED PRIOR TO POLICY PERIOD**

        The following replaces Exclusion **c.**, **Material Published Prior To Policy Period**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

        **c. Material Published Or Used Prior To Policy Period**

        "Personal and advertising injury" arising out of:

        **(1)** Oral or written publication, including publication by electronic means, of material whose first publication took place prior to the policy period; or

        **(2)** Infringement of copyright, "title" or "slogan" in your "advertisement" whose first infringement in your "advertisement" was committed prior to the policy period.

**5. EXCLUSION - BREACH OF CONTRACT**

The following replaces Exclusion **f., Breach Of Contract**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract.

**6. EXCLUSION - INTELLECTUAL PROPERTY**

The following replaces Exclusion **i., Infringement Of Copyright, Patent, Trademark Or Trade Secret**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**i. Intellectual Property**

"Personal and advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal  and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:

**(1)** Copyright;

**(2)** Patent;

**(3)** Trade dress;

**(4)** Trade name;

**(5)** Trademark;

**(6)** Trade secret; or

**(7)** Other intellectual property rights or laws.

This exclusion does not apply to:

**(1)** "Personal and advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or

**(2)** Any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

**7. EXCLUSION - INSUREDS IN MEDIA AND INTERNET TYPE BUSINESSES**

The following replaces Exclusion **j.**, Insureds In Media And Internet Type Businesses, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" arising out of an offense committed by an insured whose business is:

**(1)** Advertising, "broadcasting" or publishing;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

This exclusion does not apply to Paragraphs **a.(1)**, **(2)** and **(3)** of the definition of "personal and advertising injury".

For the purposes of this exclusion:

**(1)** Creating and producing correspondence written in the conduct of your business, bulletins, financial or annual reports, or newsletters about your goods, products or services will not be considered the business of publishing; and

**(2)** The placing of frames, borders or links, or advertising, for you or others anywhere on the Internet will not, by itself, be considered the business of advertising, "broadcasting" or publishing.

## 8. EXCLUSION - POLLUTION-RELATED

The following replaces Paragraph **(2)** of Exclusion **n.**, **Pollution-Related**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**(2)** Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## 9. EXCLUSION - WAR

The following replaces Exclusion **o.**, **War**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**o. War**

"Personal and advertising injury" arising out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## 10. EXCLUSION - ASBESTOS OR SILICA

The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Asbestos or Silica**

"Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of:

**(1)** Asbestos, asbestos fibers or products containing asbestos, provided that the "personal and advertising injury" is caused, or contributed to, by the hazardous properties of asbestos; or

**(2)** Silica or products or substances containing silica.

## 11. EXCLUSION - DISCRIMINATION

The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Discrimination**

"Personal and advertising injury" arising out of discrimination, whether intentional or unintentional, based upon a person's sex, sexual orientation, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

© 2014 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

## 12. EXCLUSION - EMPLOYMENT-RELATED PRACTICES

The following exclusion is added to Paragraph **2.**, Exclusions, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Employment-Related Practices**

"Personal and advertising injury" to:

**(1)** A person, other than an "independent contractor", arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment or "temporary worker" status; or

    **(c)** Other practice, policy, act or omission related to that person's employment or "temporary worker" status, such as coercion, demotion, evaluation, reassignment, discipline, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or imprisonment, regardless of whether such practice, policy, act or omission occurs, is applied or is committed before, during or after the time of that person's employment or "temporary worker" status; or

**(2)** The spouse, child, parent, brother, sister, domestic partner or member of the household of that person as a consequence of "personal and advertising injury" described in Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be held liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

## 13. EXCLUSION - FUNGI OR BACTERIA

The following exclusion is added to Paragraph **2.**, Exclusions, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Fungi or Bacteria**

**(1)** "Personal and advertising injury" arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the "personal and advertising injury".

**(2)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

## 14. EXCLUSION - LEAD

The following exclusion is added to Paragraph **2.**, Exclusions, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Lead**

**(1)** "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance.

**(2)** Any loss, cost or expense arising out of any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

**15. EXCLUSION - UNSOLICITED COMMUNICATION**

The following exclusion is added to Paragraph **2.**, Exclusions, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Unsolicited Communication**

"Personal and advertising injury" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

**16. EXCLUSION - VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS**

The following exclusion is added to Paragraph **2.**, Exclusions, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Violation of Consumer Financial Protection Laws**

"Personal and advertising injury" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such violation.

**B. AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION - EXCEPTION FOR "PERSONAL AND ADVERTISING INJURY" ASSUMED IN AN "INSURED CONTRACT"**

**1.** The following is added to Exclusion **e., Contractual Liability**, in Paragraph **2.** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

This exclusion also does not apply to liability for damages because of "personal and advertising injury" assumed by you in a contract or agreement that is an "insured contract", provided that the "personal and advertising injury" is caused by an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "personal and advertising injury", provided that:

**(1)** Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

**(2)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages because of "personal and advertising injury" to which this insurance applies are alleged.

**2.** The following replaces Paragraph **2.d.** of **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** of **SECTION I - COVERAGES**:

**d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between your interests and the interests of the indemnitee;

**3.** The following replaces the third sentence of Paragraph **2.** of **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**:

Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability, or the provisions of Paragraph **2.e.** of Section I - Coverage **B** - Personal and Advertising Injury Liability, such payments will not be deemed to be damages because of "bodily injury" or "property damage", or damages because of "personal and advertising injury", and will not reduce the limits of insurance.

© 2014 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

S2623-CG (6/14)                                                                                           Page 5 of 8

4. The following replaces the first paragraph of Paragraph **f.** of the definition of "insured contract" in the **DEFINITIONS** Section:

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

## C. AMENDMENT OF LIMITS OF INSURANCE - NONCUMULATION OF LIMITS

The following is added to Paragraph **4.** of **SECTION III - LIMITS OF INSURANCE**:

Noncumulation of Personal and Advertising Injury Limit - If any one person or organization sustains:

**a.** "Personal and advertising injury" to which this insurance applies; and

**b.** "Personal and advertising injury" to which commercial general liability coverage included in one or more prior or future policies issued to you by us, or any of our affiliated insurance companies, applies;

this policy's Personal and Advertising Injury Limit applicable to that person or organization also will be reduced by the amount of each payment made because of the "personal and advertising injury" described in Paragraph **b.** above by us or any of our affiliated insurance companies under, and within the applicable limit of insurance of, each other such policy.

## D. AMENDMENT OF DEFINITIONS

### 1. PERSONAL AND ADVERTISING INJURY

The following replaces the definition of "personal and advertising injury" in the **DEFINITIONS** Section:

"Personal and advertising injury":

**a.** Means injury caused by one or more of the following offenses committed by or on behalf of the insured:

    **(1)** False arrest, detention or imprisonment, provided that the claim is made or the "suit" is brought by a person who claims to have been falsely arrested, detained or imprisoned;

    **(2)** Malicious prosecution, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been maliciously prosecuted;

    **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

    **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

    **(5)** Oral or written publication, including publication by electronic means, of material that:

        **(a)** Appropriates a person's name, voice, photograph or likeness; or

        **(b)** Unreasonably places a person in a false light; or

    **(6)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.

## 2. BROADCASTING

The following is added to the **DEFINITIONS** Section:

"Broadcasting" means transmitting any audio or visual material for any purpose:

**a.** By radio or television; or

**b.** In, by or with any other electronic means of communication, such as the Internet, if that material is part of:

**(1)** Radio or television programming being transmitted;

**(2)** Other entertainment, educational, instructional, music or news programming being transmitted; or

**(3)** Advertising transmitted with any of such programming.

## 3. CONSUMER FINANCIAL IDENTITY INFORMATION

The following is added to the **DEFINITIONS** Section:

"Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

**a.** Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.

**b.** Information bearing on a person's credit worthiness, credit standing or credit capacity.

**c.** Social security number.

**d.** Drivers license number.

**e.** Birth date.

## 4. CONSUMER FINANCIAL PROTECTION LAW

The following is added to the **DEFINITIONS** Section:

"Consumer financial protection law" means:

**a.** The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

**b.** California's Song-Beverly Credit Card Act and any of its amendments; or

**c.** Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

**5. SLOGAN**

The following is added to the **DEFINITIONS** Section:

"Slogan":

**a.** Means a phrase that others use for the purpose of attracting attention in their advertising.

**b.** Does not include a phrase used as, or in, the name of:

**(1)** Any person or organization, other than you; or

**(2)** Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

**6. TITLE**

The following is added to the **DEFINITIONS** Section:

"Title" means a name of a literary or artistic work.

**7. UNSOLICITED COMMUNICATION**

The following is added to the **DEFINITIONS** Section:

"Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

© 2014 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, with its permission.
S2623-CG (6/14)                                                                                     Page 8 of 8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED ASSAULT OR BATTERY LIABILITY COVERAGE

\*This endorsement is **EFFECTIVE** 07/13/2018          \*and is part of Policy Number: WS348486

\*issued to:Northbrook Industries DBA United Inn Tahir Shareef

\*Entry optional if shown in the Common Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE OF ASSAULT OR BATTERY LIMITS

| | | |
|---|---|---|
| Assault Or Battery Aggregate Limit | $ | 50,000 |
| Each Assault Or Battery Offense Limit | $ | 25,000 |

**PROVISIONS**

1. The following replaces Paragraph **1.a.(2)**, and the last sentence of Paragraph **1.a.**, of **SECTION I - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and of **SECTION I - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, but only with respect to the coverage granted by this endorsement:

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A**, Coverage **B**, Coverage - **Assault Or Battery Liability**, Coverage - **Abuse Or Molestation Liability** (if applicable), or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

2. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

   **Assault Or Battery**

   "Bodily injury" or "property damage" arising out of any act of "assault" or "battery" committed by any person, including any act or omission in connection with the prevention or suppression of such "assault" or "battery".

3. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

   **Assault Or Battery**

   "Personal and advertising injury" arising out of any act of "assault" or "battery" committed by any person, including any act or omission in connection with the prevention or suppression of such "assault" or "battery".

4. The following is added to **SECTION I - COVERAGES**:

   **COVERAGE - ASSAULT OR BATTERY LIABILITY**

   **1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "assault or battery offense" and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A**, Coverage **B**, Coverage - **Assault Or Battery Liability**, Coverage - **Abuse Or Molestation Liability** (if applicable) or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" caused by an "assault or battery offense" arising out of your business but only if the "assault or battery offense" was committed in the "coverage territory" during the policy period. An "assault or battery offense" involving multiple, continuous, sporadic or related acts of "assault" or "battery" will be deemed to have been committed on the date the first of such acts is committed, regardless of when such acts are actually committed.

**2. Exclusions**

This insurance does not apply to:

**a. Directed Or Knowingly Allowed Acts**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of an "assault or battery offense" committed at the direction of the insured or that the insured knowingly allowed to happen.

**b. Failure To Report**

"Bodily injury" "property damage" or "personal and advertising injury" arising out of a failure by the insured having knowledge of an act of "assault" or "battery" to comply with any applicable federal, state or local law, ordinance or regulation which requires the reporting of such act.

**c. Known History**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the employment or the use as a "volunteer worker", of a person who had a history of committing "assault" or "battery" of which the insured had knowledge:

**(1)** Before or during that person's employment or use as a "volunteer worker"; and

**(2)** Before that person committed the "assault or battery offense".

**d. Abuse Or Molestation Or Sexual Harassment**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of "abuse or molestation" or "sexual harassment".

**e. Known Prior Acts**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any act in an "assault or battery offense" if any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "assault or battery offense" or claim was aware of such act prior to the effective date of this Coverage - **Assault Or Battery Liability**.

**f. Contractual Liability**

"Bodily injury", "property damage" or "personal and advertising injury" for which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**g. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

 © 2016 The Travelers Indemnity Company.  All rights reserved.

**h. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of employment by the insured; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i. Coverage A Or Coverage B Exclusions Added By Endorsement**

"Bodily injury", "property damage" or "personal and advertising injury" excluded by any exclusion added to Coverage **A** or Coverage **B** by endorsement to this policy, except an Assault Or Battery exclusion.

**5.** The following replaces the title **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** of **SECTION I - COVERAGES**:

**SUPPLEMENTARY PAYMENTS**

**6.** The following is added to **SECTION II - WHO IS AN INSURED**:

None of the following is an insured for "bodily injury", "property damage" or "personal and advertising injury" caused by an "assault or battery offense":

**a.** Any "assault or battery perpetrator".

**b.** Any person or organization that has been added to your policy as an additional insured, or any employee, leased worker, agent, representative or volunteer worker of such person or organization.

**c.** Any of your independent contractors, or any employee, leased worker, agent, representative or volunteer worker of such independent contractor.

**7.** The following is added to **SECTION III - LIMITS OF INSURANCE**:

**Assault Or Battery Liability Limits**

Subject to the General Aggregate Limit, the Assault Or Battery Aggregate Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay for the sum of all damages under Coverage - **Assault Or Battery Liability**.

Subject to the Assault Or Battery Aggregate Limit, the Each Assault Or Battery Offense Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay under Coverage - **Assault Or Battery Liability** for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "assault or battery offense".

**When Two Or More Coverage Limits Apply To The Same Physical Act Or Related Physical Acts**

When two or more of Coverage **A**, Coverage **B**, Coverage - **Abuse Or Molestation Liability** or Coverage - **Assault Or Battery Liability**, if any such coverages are part of your policy, apply to damages because of "bodily injury" or "personal and advertising injury" arising out of the same physical act or related physical acts, then the most we will pay for the sum of all such damages subject to the limits of insurance is the single highest available limit of insurance that applies under any one of those Coverages.

**8.** The following is added to Paragraph **2.** of **SECTION III - LIMITS OF INSURANCE** as a subparagraph identifying another coverage to which the General Aggregate Limit applies:

Damages under Coverage - **Assault Or Battery Liability**.

 © 2016 The Travelers Indemnity Company. All rights reserved.

**9.** The following is added to the **DEFINITIONS** Section:

"Abuse or molestation" means any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.

"Assault" means any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury.

"Assault or battery offense" means a single act of "assault" or "battery", or multiple, continuous, sporadic or related acts of "assault" or "battery", committed by any person or by two or more persons acting together.

All such acts of "assault" or "battery" will be deemed to be one "assault or battery offense", regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

"Assault or battery perpetrator" means any person who actually or allegedly commits any "assault" or "battery", and any other person acting together with such person.

"Battery" means any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.

"Sexual harassment" means intentional, reckless or offensive non-physical acts, or verbal comments, of a sexual nature.

© 2016 The Travelers Indemnity Company. All rights reserved.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - AIRCRAFT, AUTO OR WATERCRAFT
## EXCEPTION FOR CANOES OR ROWBOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following replaces Exclusion **g., Aircraft, Auto or Watercraft**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **g. Aircraft, Auto Or Watercraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured.  Use includes operation and "loading or unloading".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured.

   This exclusion does not apply to:

   **(1)** A watercraft while ashore on premises you own or rent;

   **(2)** A watercraft you do not own that is:

      **(a)** Less than 26 feet long; and

      **(b)** Not being used to carry any person or property for a charge;

   **(3)** Any canoe or rowboat owned or used by or rented to the insured;

   **(4)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided that the "auto" is not owned by or rented or loaned to you, any insured, any employee of the insured, any of your "volunteer workers" or any "volunteer workers" of the insured;

   **(5)** Liability assumed by you under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement;

   **(6)** "Bodily injury" or "property damage" arising out of:

      **(a)** The operation of any "supplementary machinery or equipment" that is attached to, or part of, a land vehicle that would qualify as "mobile equipment" under the definition of "mobile equipment" if such land vehicle were not:

         **(i)** Subject to a compulsory or financial responsibility law, or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

         **(ii)** Designated as a covered "auto" under your automobile liability insurance; or

      **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

© 2013 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(7)** An aircraft chartered with a pilot to any insured.  This exception does not apply if:

    **(a)** The aircraft is owned by any insured; or

    **(b)** Any insured is using the aircraft to carry any person or property for a charge.

**2.** The following is added to Paragraph **2.** of **SECTION II - WHO IS AN INSURED:**

Any person or organization legally responsible for the use of any canoe or rowboat you own, provided the actual use is with your permission.

**3.** The following is added to **DEFINITIONS:**

"Supplementary machinery or equipment" means machinery or equipment designed for work, other than the transportation of any person or property on a public road.  However, "supplementary machinery or equipment" does not include:

**a.** Any communication device, such as a radio or telephone; or

**b.** Any machinery or equipment that is designed to perform any function normal to the operation of the land vehicle during travel on public roads, such as a steering mechanism.

© 2013 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - HABITABILITY OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Habitability Of Premises**

"Bodily injury" or "property damage":

**(1)** Arising out of the:

    **(a)** Actual or alleged violation of any federal, state or local law, code, regulation, ordinance or rule relating to the habitability of any premises;

    **(b)** Breach of any lease, rental agreement, warranty or covenant to maintain a premises in a habitable condition; or

    **(c)** Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises, whether actual or constructive, due to failure to maintain a premises in a habitable condition;

**(2)** Alleged in any claim or "suit" that also alleges any violation, breach or wrongful eviction, entry or invasion as set forth in Paragraphs **(1) (a) - (c)** above.

**2.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Habitability Of Premises**

"Personal and advertising injury":

**(1)** Arising out of the:

    **(a)** Actual or alleged violation of any federal, state or local law, code, regulation, ordinance or rule relating to the habitability of any premises;

    **(b)** Breach of any lease, rental agreement, warranty or covenant to maintain a premises in a habitable condition; or

    **(c)** Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises, whether actual or constructive, due to failure to maintain a premises in a habitable condition;

**(2)** Alleged in any claim or "suit" that also alleges any violation, breach or wrongful eviction, entry or invasion as set forth in Paragraphs **(1) (a) - (c)** above.

 © 2013 The Travelers Indemnity Company. All rights reserved.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - PRIOR BODILY INJURY OR PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following replaces Paragraph **1.b.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **(2)** The "bodily injury" or "property damage" occurs during the policy period.

2. Paragraphs **1.c.** and **1.d.** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** are deleted.

3. The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **Prior Bodily Injury Or Property Damage**

   **(1)** "Bodily injury" or "property damage" that began, or is alleged to have begun, before "your coverage inception date with us";

   **(2)** "Bodily injury" or "property damage" that is a continuation, change or resumption of "bodily injury" or "property damage" that began, or is alleged to have begun, before "your coverage inception date with us"; or

   **(3)** "Bodily injury" or "property damage" arising out of an alleged defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" if any "bodily injury" or "property damage" arising out of the same or similar alleged defect, deficiency, inadequacy or dangerous condition began, or is alleged to have begun, before "your coverage inception date with us".

4. The following is added to **SECTION V - DEFINITIONS:**

   "Your coverage inception date with us" means the beginning date from which we, or any of our affiliated insurance companies, have continuously provided Commercial General Liability coverage to any Named Insured shown in the Declarations.  If there was no such coverage provided by such insurer immediately prior to this policy, "your coverage inception date with us" is the beginning date of the policy period of this policy.

 © 2012 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - INHALATION DEVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

   **Inhalation Devices**

   "Bodily injury" or "property damage" arising out of the sale, manufacture, handling, distribution, marketing, advertising or use of any "inhalation device".

2. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

   **Inhalation Devices**

   "Personal injury" or "advertising injury" arising out of the sale, manufacture, handling, distribution, marketing, advertising or use of any "inhalation device".

3. The following is added to the **DEFINITIONS** Section:

   "Inhalation device":

   **a.** Means:

   **(1)** Any device that is designed for or used for the absorption, consumption, ingestion or inhalation of any natural or synthetic substance; and

   **(2)** Containers, materials, parts, equipment or accessories furnished in connection with such device.

   **b.** Includes any electronic cigarette, cigar or pipe, personal vaporizer, hookah, water pipe or other similar substance delivery device.

 © 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - CROSS LIABILITY - BROAD FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **Cross Liability**

   "Bodily injury" or "property damage" sustained or alleged by:

   **(1)** Any business enterprise in which any insured owns an interest, is a partner, or which is a parent, affiliate, subsidiary or sister company of any insured;

   **(2)** Any business enterprise directly or indirectly controlled, operated or managed by a business enterprise described in **(1)**;

   **(3)** A present, former, future or prospective partner, officer, director, stockholder or employee of any insured;

   **(4)** Any named insured; or

   **(5)** The spouse, child, parent or sibling of any of the above as consequence of **(1)**, **(2)**, **(3)** or **(4)**.

2. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

   **Cross Liability**

   "Personal and advertising injury" sustained or alleged by:

   **(1)** Any business enterprise in which any insured owns an interest, is a partner, or which is a parent, affiliate, subsidiary or sister company of any insured;

   **(2)** Any business enterprise directly or indirectly controlled, operated or managed by a business enterprise described in **(1)**;

   **(3)** A present, former, future or prospective partner, officer, director, stockholder or employee of any insured;

   **(4)** Any named insured; or

   **(5)** The spouse, child, parent or sibling of any of the above as consequence of **(1)**, **(2)**, **(3)** or **(4)**.

 © 2016 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Communicable Disease**

  "Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

  **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

  **b.** Testing for a communicable disease;

  **c.** Failure to prevent the spread of the disease; or

  **d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Communicable Disease**

  "Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

  **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

  **b.** Testing for a communicable disease;

  **c.** Failure to prevent the spread of the disease; or

  **d.** Failure to report the disease to authorities.

Copyright, Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **3.** of **Section II - Who Is An Insured** does not apply.

Copyright, ISO Properties, Inc., 2004

POLICY NUMBER: WS348486

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Copyright, ISO Properties, Inc., 2004

**Northfield Insurance Company**
**St. Paul, MN 55102**

# COMMERCIAL PROPERTY
# COVERAGE PART DECLARATIONS

**Effective Date:** 07/13/2018 12:01 A.M. at your mailing address     **Policy No:** WS348486

**Named Insured:**
Northbrook Industries DBA United Inn Tahir Shareef

## DESCRIPTION OF PREMISES

| PREM. # | BLDG. # | Location (Including County, Zip Code), # of Stories, Construction, Occupancy, Protection Class |
|---|---|---|
| 002 | 001 | 4649 Memorial Dr, Decatur, GA, Dekalb, 30032, 4 Story, Frame, Motel with Kitchenettes, PC4 |

## COVERAGES PROVIDED     Insurance at the Described Premises applies only for Coverages for which a Limit of Insurance is shown below.

**\*\*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENTS**          FE - Fully Earned

| PREM. # | BLDG. # | Coverage | Limit of Insurance | Percent of Coinsurance** | Covered Causes of Loss | Rates | Premium |
|---|---|---|---|---|---|---|---|
| 002 | 001 | Building | $ 4,800,000 | 80% | Special Incl Theft | ■ $ | ■ |
| 002 | 001 | BPP- Contents | $ 350,000 | 80% | Special Incl Theft | ■ $ | |
| 002 | 001 | Business Income with Extra Expense | $ 360,000 | 80% | Special Incl Theft | ■ $ | |

## COVERAGE OPTIONS     Applicable only when entries are made in the Schedule below.     *APPLIES TO BUSINESS INCOME ONLY

| PREM. # | BLDG. # | Coverage | Agreed Value Expir. Date | Amount | Replacement Cost | *Mo. Limit of Indemnity | *Max. Period of Indemnity | *Extended Period of Indemnity | Inflation Guard % |
|---|---|---|---|---|---|---|---|---|---|
| 002 | 001 | Building | | | X | | | | |
| 002 | 001 | BPP- Contents | | | X | | | | |

| | | |
|---|---|---|
| **DEDUCTIBLE** | **$** | **10000** |
| **COVERAGE PART PREMIUM** | **$** | ■ |

## MORTGAGE HOLDERS

Mortgage Holders as scheduled on S2767-CP, if applicable.

## FORMS AND ENDORSEMENTS

The schedule of coverage declarations, forms and endorsements shown on S1D-ILS make up your policy as of the effective date shown above.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads: or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles of self-propelled machines, other than autos, you hold for sale;

    Copyright, Insurance Services Office, Inc., 2011    CP 00 10 10 12

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers.

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2), (3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

Copyright, Insurance Services Office, Inc., 2011

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $50,000 |
| Amount of Loss Payable: | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense: | $10,000 |
| Debris Removal Expense Payable: | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $80,000 |
| Amount of Loss Payable: | $79,500 |
| | ($80,000 - $500) |
| Debris Removal Expense: | $40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $10,500 |
| Additional Amount: | $25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

Copyright, Insurance Services Office, Inc., 2011

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

 Copyright, Insurance Services Office, Inc., 2011

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes of Loss - Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for any loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1)** Buildings

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

Copyright, Insurance Services Office, Inc., 2011

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist.  But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss - Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss - Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore, coverage of such costs is not additional insurance.

Copyright, Insurance Services Office, Inc., 2011

**d. Property Off-Premises**

(1) You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

    (a) Temporarily at a location you do not own, lease or operate;

    (b) In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

    (c) At any fair, trade show or exhibition.

(2) This Extension does not apply to property:

    (a) In or on a vehicle; or

    (b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

    (a) Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance - Building 1: | $ | 60,000 |
| Limit of Insurance - Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

```
$ 60,100
-    250
$ 59,850 Loss Payable - Building 1
```

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:
$59,850 + 80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable - Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable - Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

 Copyright, Insurance Services Office, Inc., 2011

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

Copyright, Insurance Services Office, Inc., 2011

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

5. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. **Vacancy**

a. **Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

 Copyright, Insurance Services Office, Inc., 2011

## 7. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.,** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | | $ 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 100,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

| Step **(1)**: | $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements) |
|---|---|
| Step **(2)**: | $100,000 ÷ $200,000 =.50 |
| Step **(3)**: | $40,000 x .50 = $20,000 |
| Step **(4)**: | $20,000 - $250 = $19,750 |

We will pay no more than $19,750. The remaining $20,250 is not covered.

Copyright, Insurance Services Office, Inc., 2011

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 200,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

   **b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When: | The value of property is: | | |
|---|---|---|---|
| | Building at Location 1: | $ | 75,000 |
| | Building at Location 2: | $ | 100,000 |
| | Personal Property at | | |
| | Location 2: | $ | 75,000 |
| | | $ | 250,000 |
| | The Coinsurance percentage for it is: | | 90% |
| | The Limit of Insurance for | | |
| | Buildings and Personal Property | | |
| | at Locations 1 and 2 is: | $ | 180,000 |
| | The Deductible is: | $ | 1,000 |
| | The amount of loss is: | | |
| | Building at Location 2: | $ | 30,000 |
| | Personal Property at | | |
| | Location 2: | $ | 20,000 |
| | | $ | 50,000 |

**Step (1):** $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 : $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

   **a.** The term mortgageholder includes trustee.

   **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

   **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

   **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this Coverage Part will then apply directly to the mortgageholder.

   **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

 Copyright, Insurance Services Office, Inc., 2011

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Agreed Value

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ | 100,000 |
|---|---|---|---|
| | The annual percentage increase is: | | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | | 146 |

| The amount of increase is: | | |
|---|---|---|
| $100,000 x .08 x 146÷ 365 = | $ | 3,200 |

### 3. Replacement Cost

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

Copyright, Insurance Services Office, Inc., 2011

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

e. We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

3. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Copyright, Insurance Services Office, Inc., 2011

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 Copyright, Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation - Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

Copyright, Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1)** Business Income Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation - Interruption Of Computer Operations.

Copyright, Insurance Services Office, Inc., 2011

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation - Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

Copyright, Insurance Services Office, Inc., 2011

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 3. Loss Determination

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

### c. Resumption Of Operations

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

### 4. Loss Payment

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

## D. Additional Condition

### COINSURANCE

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Copyright, Insurance Services Office, Inc., 2011
CP 00 30 10 12

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

 (1) Prepaid freight - outgoing;

 (2) Returns and allowances;

 (3) Discounts;

 (4) Bad debts;

 (5) Collection expenses;

 (6) Cost of raw stock and factory supplies consumed (including transportation charges);

 (7) Cost of merchandise sold (including transportation charges);

 (8) Cost of other supplies consumed (including transportation charges);

 (9) Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

 (10) Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

 (11) All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

 (12) Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 150,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $400,000 x 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 / $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

 If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

 **1. Maximum Period Of Indemnity**

  **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

 Copyright, Insurance Services Office, Inc., 2011

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; Or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | | $ | 120,000 |
|---|---|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | | | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: ($120,000 x 1/4 = $ 30,000) | | $ | 30,000 |
| | If, in this example, the actual amount of loss is: | | | |
| | Days 1-30: | | $ | 40,000 |
| | Days 31-60: | | $ | 20,000 |
| | Days 61-90: | | $ | 30,000 |
| | | | $ | 90,000 |
| | We will pay: | | | |
| | Days 1-30: | | $ | 30,000 |
| | Days 31-60: | | $ | 20,000 |
| | Days 61-90: | | $ | 30,000 |
| | | | $ | 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ | 100,000 |
|---|---|---|---|
| | The Agreed Value is: | $ | 200,000 |
| | The amount of loss is: | $ | 80,000 |

**Step (1):** $100,000 / $200,000  = .50

**Step (2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

Copyright, Insurance Services Office, Inc., 2011

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

   Copyright, Insurance Services Office, Inc., 2011

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.** We cover loss or damage commencing:

    **a.** During the policy period shown in the Declarations; and

    **b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

## I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   **(a)** Airborne volcanic blast or airborne shock waves;

   **(b)** Ash, dust or particulate matter; or

   **(c)** Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

 Copyright, Insurance Services Office, Inc., 2016

#### c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

#### d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

#### e. Utility Services

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

#### f. War And Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

#### g. Water

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

Copyright, Insurance Services Office, Inc., 2016

CP 10 30 09 17

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. (1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

 Copyright, Insurance Services Office, Inc., 2016

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

(1) Applies whether or not an act occurs during your normal hours of operation;

(2) Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, including any of the following conditions of property or any part of the property:

(1) An abrupt falling down or caving in;

(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, k., does not apply:

(a) To the extent that coverage is provided under the Additional Coverage, Collapse; or

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

 Copyright, Insurance Services Office, Inc., 2016

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

  **(a)** Damage or destruction of "finished stock"; or

  **(b)** The time required to reproduce "finished stock".

  This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

  **(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

  **(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

  **(a)** Your cancelling the lease;

  **(b)** The suspension, lapse or cancellation of any license; or

  **(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

  **(a)** Paragraph **B.1.a.** Ordinance Or Law;

  **(b)** Paragraph **B.1.c.** Governmental Action;

  **(c)** Paragraph **B.1.d.** Nuclear Hazard;

  **(d)** Paragraph **B.1.e.** Utility Services; and

  **(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

  **(a) Contractual Liability**

  We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

  **(i)** Your assumption of liability was executed prior to the accident; and

  **(ii)** The building is Covered Property under this Coverage Form.

  **(b) Nuclear Hazard**

  We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

 Copyright, Insurance Services Office, Inc., 2016

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

(2) To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

## D. Additional Coverage - Collapse

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

     (1) A cause of loss listed in **2.a. or 2.b.**;

     (2) One or more of the "specified causes of loss";

     (3) Breakage of building glass;

     (4) Weight of people or personal property; or

     (5) Weight of rain that collects on a roof.

3. This **Additional Coverage - Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

    **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

Copyright, Insurance Services Office, Inc., 2016
CP 10 30 09 17

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

Copyright, Insurance Services Office, Inc., 2016

### 3. Glass

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.** does not increase the Limit of Insurance.

### G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 Copyright, Insurance Services Office, Inc., 2016 CP 10 30 09 17

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ENDORSEMENT - VACANCY RESTRICTION AND FUNGUS EXCLUSION CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The **Building and Personal Property Coverage Form** and **Condominium Commercial Unit-Owners Coverage Form** are revised as follows:

1. Paragraph **6.b. Vacancy Provisions** of the **Building and Personal Property Coverage Form** and Paragraph **7.b.** in the **Condominium Commercial Unit-Owners Coverage Form** of Section **E., Loss Conditions** is replaced by the following:

   We will not pay for loss of or damage to any building that:

   **a.** Has been vacant for more than sixty consecutive days before that loss or damage occurs; or

   **b.** Was vacant at policy inception.

   This provision does not apply if the Vacancy Permit applies.

2. The following is added to Section **E., Loss Conditions:**

   **Increase In Hazard**

   We will not pay for loss or damage occurring while the hazard is increased by any means within your control or knowledge, or is not usual to the occupancy.

**B.** The Causes Of Loss - Basic Form, **Causes Of Loss - Broad Form, and Causes Of Loss - Special Form** are revised as follows:

1. Exclusion **B.1.h., "Fungus", Wet Rot, Dry Rot, And Bacteria** is replaced by the following:

   **h.** **"Fungus", Wet Rot, Dry Rot, And Bacteria**

   Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot, or bacteria.

2. **Additional Coverage - Limited Coverage for "Fungus", Wet Rot, Dry Rot, And Bacteria** is deleted.

**C.** The following provision is added to the **COMMON POLICY CONDITIONS:**

   **Premiums - Fully Earned:**

   If loss or damage by a Covered Cause of Loss occurs to Covered Property and the Limit of Insurance for that Covered Property is paid, then the entire premium for such Covered Property is earned and no premium refund will be due in the event of cancellation.

 © 2016 The Travelers Indemnity Company.  All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK
# INSURANCE ACT DISCLOSURE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA") establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). "Act Of Terrorism" is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is established by TRIA and is a percentage of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA). Through 2020, that percentage is established by TRIA as follows:

85% with respect to such Insured Losses occurring in calendar year 2015.

84% with respect to such Insured Losses occurring in calendar year 2016.

83% with respect to such Insured Losses occurring in calendar year 2017.

82% with respect to such Insured Losses occurring in calendar year 2018.

81% with respect to such Insured Losses occurring in calendar year 2019.

80% with respect to such Insured Losses occurring in calendar year 2020.

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

The charge for such Insured Losses under this Coverage Part is included in the Coverage Part premium. The charge for such Insured Losses that has been included for this Coverage Part is indicated below, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA:

- 7% of your total Commercial Property Coverage Part premium if your primary location is in a Designated City (as listed below).

- 3% of your total Commercial Property Coverage Part premium if your primary location is not in a Designated City (as listed below).

| Designated Cities are: | | | |
|---|---|---|---|
| Albuquerque, NM | El Paso, TX | Miami, FL | San Diego, CA |
| Atlanta, GA | Fort Worth, TX | Milwaukee, WI | San Antonio, TX |
| Austin, TX | Fresno, CA | Minneapolis, MN | San Francisco, CA |
| Baltimore, MD | Honolulu, HI | Nashville-Davidson, TN | San Jose, CA |
| Boston, MA | Houston, TX | New Orleans, LA | Seattle, WA |
| Charlotte, NC | Indianapolis, IN | New York, NY | St. Louis, MO |
| Chicago, IL | Jacksonville, FL | Oakland, CA | Tucson, AZ |
| Cleveland, OH | Kansas City, MO | Oklahoma City, OK | Tulsa, OK |
| Colorado Springs, CO | Las Vegas, NV | Omaha, NE | Virginia Beach, VA |
| Columbus, OH | Long Beach, CA | Philadelphia, PA | Washington, DC |
| Dallas, TX | Los Angeles, CA | Phoenix, AZ | Wichita, KS |
| Denver, CO | Memphis, TN | Portland, OR | |
| Detroit, MI | Mesa, AZ | Sacramento, CA | |

© 2015 The Travelers Indemnity Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CP T3 81 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


# AMENDATORY PROVISIONS - DUTIES IN THE EVENT OF LOSS OR DAMAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
**CONDOMINIUM ASSOCIATION COVERAGE FORM**
EXTRA EXPENSE COVERAGE FORM


The following is added to the **Duties In The Event Of Loss Or Damage** Loss Condition paragraph **a. (2)**:

With respect to loss or damage caused by windstorm or hail, that notice must occur no later than 180 days after the date of loss.

 © 2013 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATIONS ON COVERAGE FOR ROOF SURFACING

**\*This endorsement is EFFECTIVE**     07/13/2018     \*and is part of Policy Number: WS348486

**\*issued to:** Northbrook Industries DBA United Inn Tahir Shareef

**\*Entry optional if shown in the Policy Declarations.** If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Indicate Applicability (Paragraph A. and/or Paragraph B.) |
|---|---|---|
| 002 | 001 | B. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following applies with respect to loss or damage by a **Covered Cause of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule as being subject to this Paragraph **A.**:

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

**B.** The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.**:

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means only that damage that alters the physical appearance of the roof surfacing but does not result in damage that allows the penetration of water through the roof surfacing or does not result in the failure of the roof surfacing to perform its intended function to keep out elements over an extended period of time.

**C.** For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

S3013-CP (10/16)

Case 1:20-cv-03590-ATD   Document 147-1   Filed 08/2/09/24   Page 2179 of 223

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

**\*This endorsement is EFFECTIVE** 07/13/2018     **\*and is part of Policy Number:** WS348486

**\*issued to:** Northbrook Industries DBA United Inn Tahir Shareef

**\*Entry optional if shown in the Policy Declarations.** If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**SCHEDULE**

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 001 | 001 | P-9 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Describe any "P-9":**

CENTRAL ALARM STATION
SMOKE DETECTORS

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

1. As a condition of this insurance, you are required to maintain the protective safeguards listed in the Schedule above in complete working order.

2. Actively engage any automatic fire alarm or other automatic system listed in the Schedule and maintain it in the "on" position at all times.

3. Notify us if you know of any suspension or impairment in any protective safeguard listed in the Schedule.

4. The protective safeguards to which this endorsement applies are identified by the following symbols:

    **"P-1" Automatic Sprinkler System,** including related supervisory services.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

   **(1)** Sprinklers and discharge nozzles;

   **(2)** Ducts, pipes, valves and fittings;

   **(3)** Tanks, their component parts and supports; and

   **(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

   **(1)** Non-automatic fire protective systems; and

   **(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm**, protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service**, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Fire extinguishing equipment.

**"P-9"**, the protective system described in the Schedule.

**3.** This endorsement will remain in force unless the first Named Insured shown in the Declarations mails or delivers to us, in advance, a written request to remove this endorsement from the policy.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss - Basic Form
Causes Of Loss - Broad Form
Causes Of Loss - Special Form

We will not pay for loss or damage caused by or resulting from fire, explosion or vandalism if, prior to the fire, explosion or vandalism, you failed to comply with any condition set forth in Paragraph **A.**, **Protective Safeguards**.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
S2971-CP (9/17)                                                                                                  Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANCELLATION CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

The following is added to the **Cancellation** Common Policy Condition:

If any one of the following conditions exists at any building that is Covered Property in this policy, we may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least five days before the effective date of cancellation.

**A.** The building has been vacant or unoccupied 60 or more consecutive days. This dos not apply to:

   **1.** Seasonal unoccupancy;

   **2.** Buildings in the course of construction, renovation or addition; or

   **3.** Buildings to which the Vacancy Permit endorsement applies.

   Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**B.** After damage by a covered cause of loss, permanent repairs to the building:

   **1.** Have not started; and

   **2.** Have not been contracted for,

   within 30 days of initial payment of loss.

**C.** The building has:

   **1.** An outstanding order to vacate;

   **2.** An outstanding demolition order;

   **3.** Been declared unsafe by governmental authority.

**D.** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**E.** Failure to:

   **1.** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

   **2.** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

Copyright, ISO Properties, Inc., 2007

COMMERCIAL PROPERTY
CP 12 70 09 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# JOINT OR DISPUTED LOSS AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** This endorsement is intended to facilitate payment of insurance proceeds when:

**1.** Both a boiler and machinery policy and this commercial property policy are in effect;

**2.** Damage occurs to Covered Property that is insured by the boiler and machinery policy and this commercial property policy; and

**3.** There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

**B.** This endorsement does not apply if:

**1.** Both the boiler and machinery insurer(s) and we do not admit to any liability; and

**2.** Neither the boiler and machinery insurer(s) nor we contend that coverage applies under the other insurer's policy.

**C.** The provisions of this endorsement apply only if all of the following requirements are met:

**1.** The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement.

**2.** The damage to the Covered Property was caused by a loss for which:

**a.** Both the boiler and machinery insurer(s) and we admit to some liability for payment under the respective policies; or

**b.** Either:

**(1)** The boiler and machinery insurer(s) does not admit to any liability for payment, while we contend that:

**(a)** All liability exists under the boiler and machinery policy; or

**(b)** Some liability exists under both the boiler and machinery policy and this commercial property policy;

**(2)** We do not admit to any liability for payment, while the boiler and machinery insurer(s) contends that:

**(a)** All liability exists under this commercial property policy; or

**(b)** Some liability exists under both the boiler and machinery policy and this commercial property policy; or

**(3)** Both the boiler and machinery insurer(s) and we:

**(a)** Do not admit to any liability for payment; and

**(b)** Contend that some or all liability exists under the other insurer's policy; and

**3.** The total amount of the loss is agreed to by you, the boiler and machinery insurer(s) and us.

**D.** If the requirements listed in Paragraph **C.** above are satisfied, we and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

**1.** We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

**2.** The boiler and machinery insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of loss that is in disagreement.

**3.** Payments by the insurers of the amounts that are in disagreement, as described in Paragraphs **1.** and **2.**, do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

**4.** The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Agreement(s) of the boiler and machinery policy.

Copyright, ISO Commercial Risk Services, Inc., 1996

**5.** The amount to be paid under this endorsement shall not exceed the amount we would have paid had no boiler and machinery policy been in effect at the time of loss. In no event will we pay more than the applicable Limit of Insurance shown in the Declarations.

**6.** Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

**E. Arbitration**

**1.** If the circumstances described in Paragraph **C.2.a.** exist and the boiler and machinery insurer(s) and we agree to submit our differences to arbitration, the boiler and machinery insurer(s) and we will determine the amount each will pay and will pay the insured within 90 days. Arbitration will then take place within 90 days after payment of the loss under the terms of this endorsement.

**2.** If any of the circumstances described in Paragraph **C.2.b.** exist, then the boiler and machinery insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

**3.** You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

**F. Final Settlement Between Insurers**

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay Liquidated Damages to the other insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated Damages are defined as interest from the date the insured invokes this Agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the Money Rates column of the Wall Street Journal during the period of the Liquidated Damages. Arbitration expenses are not a part of the excess contribution for which liquidated damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

Copyright, ISO Commercial Risk Services, Inc., 1996

These endorsements modify insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

# EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Punitive Or Exemplary Damages**

Any claim for punitive or exemplary damages, fines, penalties or multiplied damages.

S43-CG (1/14)
© 2014 The Travelers Indemnity Company. All rights reserved.

# AMENDMENT - DEPOSIT PREMIUM AND MINIMUM PREMIUM

Paragraph b. of Commercial General Liability Condition 5. Premium Audit is replaced by the following:

Premium shown in this Coverage Part as advance premium is both a deposit premium and a minimum premium for the full policy period. At the close of each audit period, we will compute the earned premium for that period. If the earned premium is more than the advance premium, notice of the amount by which it exceeds the advance premium will be sent to the first Named Insured. The due date for the audit and retrospective premiums is the date shown as the due date on the bill. If the earned premium is less than the advance premium, the advance premium will apply as the minimum premium, with no return premium payable to you.

S56-CG (10/04)

# EXCLUSION - PROFESSIONAL SERVICES

**PROVISIONS**

1. The following exclusion is added to Paragraph **2.**, **Exclusions,** of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE:**

    **Professional Services**

    "Bodily injury" or "property damage" arising out of the providing or failure to provide "professional services".

2. The following exclusion is added to Paragraph **2.**, **Exclusions,** of **SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY:**

    **Professional Services**

    "Personal and advertising injury" arising out of the providing or failure to provide "professional services".

3. The following is added to the **DEFINITIONS** Section:

    "Professional services" means only those services performed by an insured in the insured's professional capacity as a provider of the services identified under the Classification column in the Premium Section of the Declarations.

S311-CG (3/11)

© 2011 The Travelers Indemnity Company. All rights reserved.

**THESE ENDORSEMENTS CHANGE THE POLICY. PLEASE READ THEM CAREFULLY.**

These endorsements modify insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

# EXCLUSION - LIQUOR - ABSOLUTE

The following replaces Exclusion **c.**, Liquor Liability, in Paragraph **2.**, **Exclusions**, of **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

© 2014 The Travelers Indemnity Company.  All rights reserved.
S354-CG  (2/14)                   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

         © 2011 The Travelers Indemnity Company.  All rights reserved.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

NORTHFIELD INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff   Hartford County, CT
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorneys (Firm Name, Address, and Telephone Number)
Philip W. Savrin/Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600, Atlanta, GA 30339
770-818-0000

## DEFENDANTS

NORTH BROOK INDUSTRIES, INC. d/b/a UNITED INN AND SUITES; and J. G.

County of Residence of First Listed Defendant   DeKalb County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [x] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [x] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District (specify)
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§§ 1332 and 2201

Brief description of cause:
This is a declaratory judgment action to determine extent of insurance coverage obligations, if any, owed to Defendants.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE                                DOCKET NUMBER

DATE
08/14/2023

SIGNATURE OF ATTORNEY OF RECORD
s/ Philip W. Savrin

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE