# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **J.G.,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | **CIVIL ACTION FILE** |
| **vs.** | **:** | |
| | **:** | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES,** | **:** | |
| **INC., D/B/A UNITED INN AND** | **:** | |
| **SUITES,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## PLAINTIFF J.G.'S CONSOLIDATED MOTIONS IN LIMINE

# **TABLE OF CONTENTS**

I.   PLAINTIFF'S MOTION IN *IN LIMINE* TO EXCLUDE ARGUMENT THAT THE JURY SHOULD APPORTION DAMAGES UNDER 18 U.S.C. § 1595(a). ................................................................ 2

II.  PLAINTIFF'S MOTION IN *IN LIMINE* TO EXCLUDE INADMISSIBLE TESTIMONY FROM OFFICER WEBER AND OFFICER MCCLELLAND. ................................................................ 5

BACKGROUND ................................................................ 6

ARGUMENT ................................................................ 9

A.  Defendant Should be Precluded from Eliciting Expert Opinions from Weber and McClelland because it Has Not Complied with Rules 26(a)(2)(A) through (a)(2)(D). ................................................ 10

B.  In addition, Weber's and McClelland's Expert Opinions Should Be Excluded because they Violate Rule 702 ................................ 15

C.  Weber's and McClelland's Affidavits Improperly Speculate as to the Conduct of Defendant's Owner, Manager, and Employees, and, in doing so, Improperly Bolster Them. ................................................ 17

CONCLUSION ................................................................ 19

III. PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE OF HER SEXUAL HISTORY AS A MINOR. ................... 19

A.  The Court Should Limit Evidence Regarding Plaintiff's Sexual History to Evidence of Her Sexual Exploitation as a Minor at United Inn & Suites. ................................................................ 20

B.  Evidence of Plaintiff's Sexual History as a Minor at Other Places is not Probative of Her Damages. ................................................ 22

CONCLUSION ................................................................ 22

IV.  PLAINTIFF's MOTION *IN LIMINE* TO EXCLUDE CRIMINAL RECORD EVIDENCE ................................................................ 23

V.   PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE SETTLEMENT EVIDENCE ................................................................ 25

VI.  PLAINTIFF J.G.'S NOTICE OF INTENT TO FILE MOTION FOR CURATIVE INSTRUCTION IF PARTIES ARE UNABLE TO AGREE ON APPROPRIATE STIPULATION OR INSTRUCTION ................... 28

At trial, Plaintiff will prove that for nearly six weeks in 2018 and 2019 she was sex trafficked at the age of 16 at United Inn & Suites by violent gangs selling drugs and women in multiple rooms at the hotel. Plaintiff will prove that she was kept, drugged, beaten, and threatened at the hotel, that her exploitation was apparent, and that hotel staff helped her traffickers. She will also prove that she was sexually exploited hundreds of times in rooms and in the parking lot—even after the hotel got a tip that Plaintiff was a missing child believed to be there.

On December 28, 2020, Plaintiff filed a lawsuit against Northbrook Industries Inc., d/b/a United Inn and Suites ("United Inn") alleging that the hotel violated the TVPRA's civil beneficiary provision (18 U.S.C. § 1595(a)) and Georgia negligence law. (Doc. 1). The Court granted summary judgment as to Plaintiff's negligence claim. The jury trial scheduled for April 14, 2025 in this matter will concern Plaintiff's beneficiary TVPRA claim only. The sole binding, precedential circuit opinion on § 1595(a) beneficiary claims held that a defendant is liable if four elements are met: (1) the defendant knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) the undertaking or enterprise violated the TVPRA as to Plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or

enterprise violated the TVPRA as to Plaintiff. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

### I.    PLAINTIFF'S MOTION IN *IN LIMINE* TO EXCLUDE ARGUMENT THAT THE JURY SHOULD APPORTION DAMAGES UNDER 18 U.S.C. § 1595(a).

Plaintiff moves to exclude all argument—and any related evidence— at trial regarding apportionment of damages under 18 U.S.C. § 1595(a).  On October 11, 2023, Defendant filed a Notice of Intention to Seek Apportionment of Fault against Non-Parties Pursuant to O.C.G.A. §51-12-33.  (Doc. 85).  In its Notice, Defendant said it "will ask the jury to consider whether the following persons or entities [including Plaintiff's traffickers, their associates, and sex buyers] are wholly or partially at fault for the allegations and incidents that form the basis of Plaintiff J.G.'s Complaint and claimed damages." *Id.*   After Defendant filed its Notice, the Court granted summary judgment as to Plaintiff's negligence claim under Georgia law. (Doc. 138).   Thus, trial in this matter will only concern Plaintiff's TVPRA beneficiary claim; it will not concern any Georgia state law claims.

In the proposed Pre-Trial Order, the parties agreed to submit trial briefs at least 14 days before trial begins.  (Doc. 141).  By March 31, 2025—14 days before trial—Plaintiff will submit a trial brief explaining that liability for damages under § 1595(a) is joint and several.  Because the issue pertains primarily to a matter of law, not a matter of evidence, it is appropriate for the forthcoming trial brief.

Nonetheless, Plaintiff notes here that Defendant's intention to seek apportionment of damages should be rejected for several reasons. *First*, Plaintiff's lone state law claim was dismissed, and so trial will only concern Plaintiff's federal law claim under § 1595(a). As such, Georgia's apportionment statute, O.C.G.A. §51-12-33, is inapplicable.

*Second*, the TVPRA's statutory text and structure show that Congress intended liability under § 1595(a) to be joint and several. Two other judges in this district agree. *See, e.g.*, *W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P, and T.H. v. Red Roof Inns, Inc., Red Roof Franchising, LLC, and RRI West Management, LLC*, 2024 WL 2892322 at *1 (N.D. Ga. June 10, 2024) (Calvert, J.); *see also K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (Thrash, J.).

*Third*, liability under § 1595(a) is joint and several under the common law of tort damages. *See, e.g., Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989) (the "federal rule of damages" is joint-and-several liability); *see also Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003) ("The conclusion that the FELA [Federal Employers' Liability Act] does not mandate apportionment is also in harmony with ***this Court's repeated statements that joint and several liability is the traditional rule***.") (emphasis added).

*Fourth*, federal courts regularly apply the default common law rule of joint-

and-several liability to federal causes of action that are silent on whether liability is joint-and-several—like the TVPRA. *See, e.g.*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986) (common law rule of joint-and-several liability applies to 42 U.S.C. § 1983); *Whyte v. Alston Mgmt., Inc.,* No. 10-cv-81041, 2012 WL 11789773, at *1 (S.D. Fla. Apr. 11, 2012) (collecting cases) (common law rule of joint-and-several liability applies to Fair Housing Act); *Fed. Trade Comm'n v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017) (common law rule of joint-and-several liability applies to Federal Trade Commission Act and Telemarketing and Consumer Fraud and Abuse Prevention Act).

*Fifth*, courts across the country have repeatedly turned to the general common law of torts to address other questions on which the TVPRA is silent to arrive at the source of the substantive rule of decision: (1) punitive damages, and (2) availability of vicarious liability. Courts across the country have found time-after-time that punitive damages are available under the TVPRA based on the common law of tort damages. *See, e.g.*, *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011) (relying on "common law principles" of torts to hold that "punitive damages are available under 18 U.S.C. § 1595."); *see also Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013) ("We thus agree with the only other circuit to address the matter and hold punitive damages to be available under § 1595."). Similarly, courts have relied on federal common law of agency to answer whether the TVPRA permits

4

vicarious liability. *See, e.g.*, *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Indeed, '[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.'" (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021))); *T.E. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3185, 2023 WL 5531441, * 7 (S.D. Ohio Aug. 28, 2023) ("The TVPRA . . . does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue must apply common law to fill in the gaps.").

*Sixth*, the evidence will show that joint-and-several liability exists under multiple fact patterns applicable here. *See, e.g.*, FTC, 877 F.3d 1239 (common enterprise), 1240 (aiding and abetting); *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (vicarious liability). Also, joint-and-several liability applies to cases with a single, indivisible injury—which fits here, too. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614–15 (2009) (quoting Restatement (Second) of Torts § 433A cmt. I (1963)).

As stated, Plaintiff will submit a trial brief by March 31, 2025, that explains in full why liability under § 1595(a) is joint and several, and why Defendant should not be allowed to seek apportionment of damages.

## II.  PLAINTIFF'S MOTION IN *IN LIMINE* TO EXCLUDE INADMISSIBLE TESTIMONY FROM OFFICER WEBER AND OFFICER MCCLELLAND.

Plaintiff moves the Court to preclude Officer Weber and Officer McClelland—DeKalb County Police Department officers paid by Defendant to provide off-duty security services at United Inn & Suites from 10 p.m. – 2 a.m. on alternate nights—from offering certain improper testimony highlighted in their attached affidavits. (*See* Exs. 2 & 3).

*First*, the affidavits include expert opinions about the adequacy of security at United Inn, but Defendant never identified Weber and McClelland as expert witnesses under Rule 26(a)(2)(A), did not disclose their affidavits by the June 16, 2023 expert disclosure deadline in violation of Rule 26(a)(2)(D), and has not provided the information required under Rule 26(a)(2)(B) or (a)(2)(C) for expert witnesses. These numerous violations of Rule 26(a), standing alone, warrant exclusion of Weber's and McClelland's expert opinions under Rules 16(f)(1)(C), 26(g), or, alternatively, 37(c)(1). *Second*, Weber's and McClelland's affidavits violate Federal Rule of Evidence 702 because, among other things, they do not set forth a methodology for their opinions about the adequacy of Defendant's security, let alone a reliable one. *Third*, Weber's and McClelland's references to what hotel employees "will do" lack foundation, are impermissible speculation, and amount to improper bolstering and character evidence.

## BACKGROUND

6

The Court's Second Modified Scheduling Order states that, "[b]y June 16, 2023, the Parties shall identify their experts and disclose their respective experts' reports." (Doc. 61).[1]  On June 16, 2023, both parties identified and disclosed a forensic security consultant; Plaintiff disclosed Darrell Chaneyfield, and Defendant disclosed Karim Vellani.  (Docs. 77; Ex. 6).  Mr. Chaneyfield and Mr. Vellani provided expert reports under Rule 26(a)(2)(B) outlining their opinions about the adequacy of Defendant's security.[2]  (*See* Docs. 109-2, 100-4). Defendant repeatedly told the Court that it had one expert in this case—Mr. Vellani. (Docs. 80 at ¶2, 83 at ¶2, 92 at ¶3).

The Court's June 16th expert disclosure deadline for the parties to identify all experts came and went without Defendant identifying Weber and McClelland. On June 26, 2023—ten days after the expert disclosure deadline—Defendant produced Weber's and McClelland's affidavits.[3]  (Exs. 2, 3).  The nearly-identical affidavits include several expert opinions.  For example:

- Paragraph 5: "While Tahir Shareef [the owner of the United Inn & Suites] made the decision as to the specific hours for off-duty service, ***I believe***

---

[1] The Court issued three additional discovery orders extending expert discovery, but none modified the deadline to identify experts and disclose expert reports. (Docs. 81, 84, 94). Defendant repeatedly said it had one expert witness.

[2] Plaintiff challenged Mr. Vellani's report on certain grounds, (Doc. 109), but not for failure to set forth a reliable methodology. Comparison of Chaneyfield's and Vellani's reports (Docs. 109-2, 100-4) with the affidavits at issue (Exs. 2, 3) shows the failure of the affidavits to articulate a reliable methodology.

[3] As detailed below, Defendant's discovery abuses throughout the case led to the Court sanctioning Defendant.  (Doc. 138).

*that this four-hour time block is an appropriate window for an off-duty officer to be on-site*, as it is nighttime and the time when there is most likely to be foot traffic on and around the property.  The hotel has never cut our hours in an effort to save money.  *I also believe that having one off-duty officer on the property at a time is appropriate and sufficient*, given the size of the property and the activity on the property."

- Paragraph 10: "United Inn has a network of security cameras to monitor the property.  *There are no areas on the hotel property that would provide concealment for commercial sex or other criminal activity outside, including in a car in the hotel parking lot*.  Hotel employees at the front desk monitor the security cameras."

- Paragraph 12: "As with any hotel, there are occasional incidents involving theft, property damage, burglary or drugs.  *In the case of United Inn, such activity is attributable to United Inn being in an area with homelessness and high foot traffic, off a main street, with easy in-and-out access to a main highway* (I-285)."

- Paragraph 15: "I am always on the lookout for criminal activity at United Inn, including sex trafficking.  In all the time I have provided off-duty services at United Inn, *I have not ever observed any activity that caused me concern that there might be sex trafficking going on there*."

- Paragraph 16: "Because I spend so much time at the property, *I have had the opportunity to evaluate the general security profile of the property*.  I have not provided Mr. Shareef [the owner] or Mr. Islam [the manager] with any recommendations for enhancements or upgrades for security at United Inn, *nor are there any changes that I would recommend given the existing security posture at the property*."

Opinions about "the general security profile of the property" and the need for "any changes… [to] the existing security posture at the property" are expert opinions under Rule 702.[4]  But Defendant has never identified Weber or

---

[4] Rule 701 is limited to opinions "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope

McClelland as witnesses that it "may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Instead, it identified them as potential fact witnesses in its initial disclosures, who are subject to Rule 701. In addition, Defendant has never produced any additional information about the officers, including, for example, the categories of information required in Rule 26(a)(2)(B) or (C). Upon information and belief, McClelland and Weber did not prepare their affidavits for free and were compensated by Defendant for doing so.

In their affidavits, Weber and McClelland also opine as what Defendant's owner, manager, and staff "will" do. For example:

> Paragraph 7: "The front-desk staff *will* call my cell phone if they need help or want something suspicious to be checked out."

> Paragraph 10: "Hotel employees at the front desk monitor the security cameras, and those employees *will* contact the off-duty officer, or vice-versa, if there is an unusual amount of activity in/around a particular room."

> Paragraph 14: "In my experience, the management at United Inn has always cooperated with police officers and any other law enforcement agencies that show up at the property. When the police want someone removed from the property, the hotel *will not* continue to rent a room to that person and *will not* allow them to remain on the property."

## ARGUMENT

---

of Rule 702." The opinions here go well beyond what a percipient witness can testify to, because they purport to be based upon Weber's and McClelland's "knowledge, skill, experience, training, or education," which are subject to Rule 702.

**A.    Defendant Should be Precluded from Eliciting Expert Opinions from Weber and McClelland because it Has Not Complied with Rules 26(a)(2)(A) through (a)(2)(D).**

Defendant should be precluded from eliciting expert opinions from Weber and McClelland because Defendant never identified Weber and McClelland as experts, their affidavits do not satisfy Rules 26(a)(2)(A) through (a)(2)(D), and Defendant has not provided the additional information required under Rule 26(a)(2)(B) or (a)(2)(C) about Weber and McClelland.

"[A] party *must* disclose to the other parties the identity of any witness it may use at trial to present" expert witness testimony "under Fed. R. Evid. 702, 703 or 705." Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). There are two types of experts under Rule 26(a)(2), and the two types have different disclosure requirements. First, experts who are "retained or specially employed to provide expert testimony in the case" "*must*" provide an expert report setting forth certain information. Rule 26(a)(2)(B)(i) – (vii) (emphasis added). Second, experts who are not "retained or specially employed" "*must*" disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C) (emphasis added). Regardless of whether the expert falls under Rule 26(a)(2)(B) or Rule 26(a)(2)(C), the party intending to use the expert "***must make these disclosures***

10

*at the times and in the sequence that the court orders*." Rule 26(a)(2)(D) (emphasis added).

Violation of the expert disclosure requirements in Rule 26(a) justifies sanctions. Under Rule 26(g)(3), the Court "must impose an appropriate sanction" where a certification on a disclosure or discovery response violates Rule 26 "without substantial justification." Further, under Rule 16(f)(1)(C), the Court may sanction a party that "fails to obey a scheduling or other pretrial order" by violating an expert disclosure deadline. And under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is *not allowed to use that information or witness* to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." (emphasis added). *See United States upon relation of Tennessee Valley Auth. v. Easement & Right-of-way Over 4.42 Acres of Land, More or Less, in Whitfield Cnty., Georgia*, 782 F. App'x 945, 949 (11th Cir. 2019) (affirming district court's exclusion of expert because Congress has provided for "a self-executing sanction for failure to make a disclosure required by Rule 26(a)").

Here, the Court ordered the parties to identify all expert witnesses and to disclose their experts' reports by June 16, 2023. (Doc. 61). In addition, Plaintiff requested that Defendant identify its experts in discovery requests served in September 2022. (Ex. 1, at No. 3). But Defendant has never disclosed Weber

11

and McClelland as experts at any time, and only disclosed their affidavits after June 16, 2023.  Regardless of whether Weber and McClelland qualify as experts under Rule 26(a)(2)(B) or Rule 26(a)(2)(C), Defendant was nonetheless required to disclose them as experts by June 16th.  Fed. R. Civ. P. 26(a)(2)(A) ("[A] party **must** disclose to the other parties the identity of any witness it may use at trial to present" expert witness testimony "under Fed. R. Evid. 702, 703 or 705.").

The Court should exercise its authority under Rule 26(g)(3) and sanction Defendant for violating its duties under Rule 26(a) by precluding Weber and McClelland from offering the expert opinions in their affidavits (and any similar expert testimony).  *See Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 825 (11th Cir. 2009) (affirming striking of expert, because of untimely Rule 26 disclosure). Or the Court should achieve the same result through exercising its authority under 16(f)(1)(C). *United States upon relation of Tennessee Valley Auth*, 782 F. App'x at 948 (11th Cir. 2019) (district court did not abuse discretion when it excluded expert testimony pursuant to Fed. R. Civ. P. 16(f)(1)(C), 37(c)(1) and 26(a)(2)). Alternatively, the Court should preclude expert testimony from Weber and McClelland under Rule 37(c)(1), which provides that a party that violates Rule 26(a)—as Defendant did here by not disclosing Weber and McClelland as experts—is "not allowed" to use such witnesses "to supply evidence … at trial, unless the failure was substantially justified or is harmless."

In this case, Defendant's failure to disclose Weber and McClelland as experts (at any time) was neither "substantially justified" nor "harmless." Regarding substantial justification, as the Court knows, Defendant repeatedly violated discovery rules, which culminated in the Court sanctioning Defendant. (Doc. 138). Defendant's admitted discovery misconduct significantly delayed discovery in this case. There is no reason, let alone a substantial justification, for Defendant's violation of the Court's June 16th deadline. In sum, Defendant has repeatedly violated the rules of discovery "without substantial justification" (Doc. 138 at 44), and Defendant's failures to disclose Weber and McClelland as experts are no different.

Further, Defendant's untimely disclosure of the affidavits was not harmless because the affidavits do not comply with Rule 26(a)(2)(B) or (a)(2)(C). The Court should find that Weber and McClelland are expert witnesses under Rule 26(a)(2)(B) because, upon information and belief, they were "retained or specially employed" by Defendant "to provide expert testimony in the case." As such, Defendant was required under Rule 26(a)(2)(B) to produce expert reports with the information designated in 26(a)(2)(B)(i)–(vii). But Defendant provided affidavits, not reports, from Weber and McClelland that do not include the required information, namely: "(i) a complete statement of all opinions the witness[es] will express and the basis and reasons for them; (ii) the facts or data

13

considered by the witness[es] in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness['] qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness['] testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Therefore, Defendant's late disclosure of Weber and McClelland's respective affidavits is harmful because the affidavits do not comply with Rule 26(a)(2)(B) and deprive Plaintiff of critical information.

Even if the Court concludes that Weber and McClelland are expert witnesses under Rule 26(a)(2)(C), not Rule 26(a)(2)(B), then Defendant's late disclosure of their affidavits is still harmful because the affidavits also violate Rule 26(a)(2)(C). Indeed, the late-disclosed affidavits do not include the material required under Rule 26(a)(2)(C), namely, "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." The affidavits proffer nearly identical "expert" opinions, but Defendant has never indicated its intention to use Weber and McClelland as expert witnesses; as such, Defendant has not identified the "subject matter on which" Weber and McClelland are "expected to present evidence" under Rules 702, 703, or 705. Further, the affidavits do not provide

14

"a summary of the facts and opinions to which [Weber and McClelland] [are] expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii).  Rule 26(a)(2)(C) is not optional.  *See, e.g.*, *Davis v. Green*, 2015 WL 3505665 *4 (N.D. GA June 3, 2013) (excluding experts because the signed personal injury narrative did not contain the equivalent of a "summary of the facts and opinions to which the witness is expected to testify" in violation of Rule 26(a)(2)(C)).

Therefore, sanctions are warranted under Rules 26(g)(3), 16(f)(1)(C), and 37(c)(1), and the Court should enter an order precluding Defendant from soliciting the highlighted expert opinions from Weber and McClelland.

## B.    In addition, Weber's and McClelland's Expert Opinions Should Be Excluded because they Violate Rule 702.[5]

Weber's and McClelland's expert opinions about the adequacy of security at United Inn are also not admissible because they violate Federal Rule of Evidence 702.  Under Rule 702, "[a] witness who is qualified as an expert" "may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that … **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  If an expert's opinions do not comply with Rule 702, then the opinions are not admissible.

---

[5] As noted, Defendant has never identified Weber and McClelland as experts.  If the Court prefers *Daubert* briefing on these issues, Plaintiff is happy to provide it.

*United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (courts need to "conduct an exacting analysis" of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702).

Weber's and McClelland's affidavits do not set forth "reliable principles and methods" and do not reliably apply any such "principles and methods to the facts of the case."   Fed. R. Evid. 702.  What is left, then, are Weber's and McClelland's inadmissible *ipse dixits*.  *See Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 544 (1993) (finding propositions that were "self-evident," "obviously justified," and "ma[de] sense" were unhelpful *ipse dixits*). The expert report from Defendant's retained forensic security consultant, Karim Vellani, illuminates the Rule 702 problem with Weber's and McClelland's affidavits.   (Ex. 4, Vellani Report).  In his report, Vellani noted that he applied the forensic methodology published by the International Association of Professional Security Consultants, which allowed him to "determine the level of adequacy of security at the location of the incident on the date and at the time the incident occurred," form opinions about the "adequacy of the security program at the subject property," and identify vulnerabilities and potential threats to the property after a "physical survey of the scene of the incident."  (Ex. 4, at 74; Ex. 5, Vellani Dep. at 209:17-210:14).   By contrast, Weber's and McClelland's barebones affidavits do not set forth any "reliable principles and

16

methods," or attempt to explain how those "principles and methods" were reliably applied.

Therefore, Weber's and McClelland's expert opinions are not admissible under Rule 702.

**C.**   **Weber's and McClelland's Affidavits Improperly Speculate as to the Conduct of Defendant's Owner, Manager, and Employees, and, in doing so, Improperly Bolster Them.**

Finally, Weber's and McClelland's references in their affidavits to what hotel employees "will do" lack foundation, are impermissible speculation by lay witnesses about hypothetical scenarios, and amount to improper bolstering and character evidence.  For example, Weber's and McClelland's statements that "front desk staff" "will call my cell phone if they need help or want something suspicious to be checked out," (Exs. 2 & 3, ¶ 7), are, in effect, a way to tell jurors that Defendant's employees are good people who act honestly and do the right thing all the time.  So are statements like, "[h]otel employees at the front desk monitor the security cameras, and those employees will contact the off-duty officer, or vice-versa, if there is an unusual amount of activity in/around a particular room." (*Id.*, ¶ 10).  And: "[i]n my experience, the management at United Inn has always cooperated with police officers and any other law enforcement agencies that show up at the property. When the police want

someone removed from the property, the hotel will not continue to rent a room to that person and will not allow them to remain on the property."  (*Id.*, ⁋ 10).

Weber's and McClelland's statements about what Defendant's staff "will do" are phrased in sweeping generalities.  There are multiple problems with such assertions.  To start, Defendant produced changing and inconsistent staff lists in discovery (because Defendant paid some of its staff in cash and has no records of it), and, consequently, did not provide the information required by Rule 26(a)(1) about its staff. (Doc. 86 at 9, n.6).  Which hotel staff are Weber and McClelland referring to?  How can Weber and McClelland say what hotel staff would do in any given circumstance when the hotel cannot identify all its staff?  Weber and McClelland cannot talk about what unidentified staff people would do when Weber and McClelland weren't working at the hotel 20 hours per day.  What those staff people would do is something that those staff people could answer—if Defendant had only identified them as required by Rule 26(a)(1).  Weber's and McClelland's sweeping (and universally favorable) opinions about what unnamed staff at a hotel that pays Weber and McClelland "will do" lack foundation, are impermissible speculation about hypothetical scenarios by a lay witness, and improper bolstering.  *See, e.g., United States v. Price*, 722 F.2d 88, 90 (5th Cir.1983) (admission of Revenue Agent's testimony that he relied on statements of two people in his investigation because he "believed them"

18

constituted reversible error), cert. denied, 473 U.S. 904, 105 S.Ct. 3526, 87 L.Ed.2d 651 (1985); *see also United States v. Azure*, 801 F.2d 336, 341 (8th Cir. 1986) ("We conclude that the trial court abused its discretion in allowing Dr. ten Bensel to give his opinion as to the believability of Wendy's story.").

Further, the same statements about what all of Defendant's unidentified employees "will do" in all circumstances amounts to improper character evidence. Weber and McClelland suggest in their affidavits that because they allegedly saw certain unnamed staff members act a certain way on one occasion (e.g., call about suspicious activity on the property, monitor cameras, or cooperate with police), all staff at the hotel did the same all the time. That is not sound logically and it also violates Rule 404.

## CONCLUSION

For these reasons, the Court should preclude Defendant from introducing Weber's and McClelland's highlighted statements in their affidavits.

## III.    PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE OF HER SEXUAL HISTORY AS A MINOR.

Under Rule 412, Plaintiff moves the Court to limit the trial evidence regarding Plaintiff's sexual history to evidence of her sexual exploitation as a minor victim of sex trafficking at United Inn & Suites. Evidence of Plaintiff's victimization as a minor at other hotels—and the general exploration of Plaintiff's sexual history as a minor—is not admissible under Rule 412.

19

Whatever limited probative value such evidence may have in a case about the sex trafficking of a 16-year-old at Defendant's hotel (none) is substantially outweighed by the danger of harm to Plaintiff. Fed. R. Evid. 412(b)(2).

In addition, such evidence is not relevant to the merits of Plaintiff's case, and, therefore, its admission would violate Rule 401. Plaintiff's burden at trial to prevail on her beneficiary claim under § 1595(a) is to establish the four elements outlined in *Doe #1,* 21 F.4th at 726. What other hotels knew, or should have known, and whether Plaintiff performed commercial sex acts at other hotels, is not relevant to the merits of Plaintiff's case against Defendant.[6]

## A.    The Court Should Limit Evidence Regarding Plaintiff's Sexual History to Evidence of Her Sexual Exploitation as a Minor at United Inn & Suites.

In cases alleging "sexual misconduct," Federal Rule of Evidence 412(a) prohibits the introduction of (1) "evidence offered to prove that a victim engaged in other sexual behavior," or (2) to prove a "victim's sexual predisposition." That rule applies here. Indeed, courts in this district have applied it in similar cases arising under § 1595(a). *See, e.g., W.K.*, 2024 WL 5114059 at *3.[7]

---

[6] Plaintiff does not dispute that she was trafficked at Stone Mountain Inn & Suites. Plaintiff is willing to work with Defendant's counsel to develop an appropriate stipulation regarding the same without further delving into Plaintiff's sexual history as a minor in violation of Rule 412

[7] Notably, unlike the *W.K.* case, which involved 11 adult trafficking victims, some of whom voluntarily engaged in prostitution at different points as adults, this case

The Court should apply Rule 412(a) in this § 1595(a) case and not allow introduction of evidence (1) of Plaintiff's "other sexual behavior" as a child, or (2) of Plaintiff's "sexual predisposition." The probative value of evidence regarding Plaintiff's "other sexual behavior"—as a child—or her "sexual predisposition"—as a child—is non-existent. This case concerns whether Defendant violated the elements of § 1595(a). Plaintiff's "other sexual behavior" and "sexual predisposition" is not probative of those elements.

While there are "narrow exceptions" in Rule 412(b) to the prohibition in Rule 412(a), none applies here. *United States v. Sarras*, 575 F.3d 1191, 1212 (11th Cir. 2009). That is, even if evidence of Plaintiff's sexual history elsewhere were somehow relevant to her § 1595(a) claim (it is not), such evidence should still not be admissible under Rule 412(b), because the probative value would not "substantially outweigh the danger of harm to any victim and of unfair prejudice to any party." FRE 412(b)(2).

The "harm to any victim" consideration applies powerfully here for at least two reasons. *First*, evidence of Plaintiff's sexual history as a minor at places other than the United Inn will add unnecessary trauma and pain to these proceedings for Plaintiff. *See, e.g.*, *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d

---

concerns a single 16-year-old victim of sex trafficking. 18 U.S.C. § 1591 sets forth a higher standard for proving adult sex trafficking than minor sex trafficking.

1367, 1375 n.13 (11th Cir. 2000) (noting that the prejudice of admission of sexual history of a minor victim "substantially outweighed any probative value this evidence could possibly have had").

*Second*, evidence of Plaintiff's sexual history creates risks for Plaintiff. As the evidence will show, Plaintiff was trafficked by armed gang members, drugged, threatened and physically assaulted, and tortured. Not all of the people who trafficked Plaintiff have been arrested. If Plaintiff is forced to testify in open court regarding the details of "other sexual behavior," there is a risk that Plaintiff will be subject to retribution.[8] Thus, any probative value of other commercial sex acts performed by Plaintiff at other locations is substantially outweighed by the potential harm.

## B. Evidence of Plaintiff's Sexual History as a Minor at Other Places is not Probative of Her Damages.

While Defendants may contend that evidence of Plaintiff's sexual exploitation at other hotels is probative of Plaintiff's damages, it is not. *See Sarras*, 575 at 1213 ("[A]s the district court aptly recognized, victims of sexual abuse can be traumatized whether or not they have had other sexual relations.").

### CONCLUSION

---

[8] The other 18 U.S.C. § 1595(a) beneficiary claim that went to trial in this district, *W.K. v. Red Roof*, received significant media attention. If this case does too, it will increase the risk to Plaintiff, because some of her traffickers remain at large and may be able to find her. (Ex. 7, J.G. Dep. at 66:22-25).

For these reasons, the Court should limit evidence regarding Plaintiff's sexual history as a child to evidence of her sexual exploitation as a minor victim of sex trafficking at United Inn & Suites.

## IV.   PLAINTIFF's MOTION *IN LIMINE* TO EXCLUDE CRIMINAL RECORD EVIDENCE

Plaintiff moves the Court under Federal Rules of Evidence 401, 403, and 404 to issue a ruling precluding Defendant from introducing evidence regarding a wrongful accusation and detention of Plaintiff for underage sex-trafficking in 2019. During Plaintiff's deposition, Defendant's counsel asked Plaintiff whether she had been charged and detained in early 2019 for trafficking another minor at Stone Mountain Inn & Suites. (Ex. 7, at 119:11-120:2). As Plaintiff testified, the charges were dropped after the police realized that Plaintiff was an underage victim of sex-trafficking, too. (Ex. 7, at 119:11-121:25). The Court should preclude Defendant from presenting such evidence at trial.

To start, it's not relevant to the merits of this case under Rule 402. Evidence is only relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401(a) & (b). That Plaintiff was incorrectly accused of sex-trafficking, at a different hotel, is not relevant to this case. The issue is whether Plaintiff can prove the *Doe #1* elements by a preponderance of

23

the evidence.  Accordingly, discussion of a wrongful law enforcement accusation against Plaintiff, that was dropped, would violate Rule 401 and 402.

Even if the evidence were relevant (it isn't), its limited probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. The fact that Plaintiff was incorrectly accused of sex-trafficking a minor when she was also a minor sex trafficking victim would violate Rule 403.  Such evidence would serve only to confuse the jury and prejudice them against Plaintiff by insinuating that she was in fact a perpetrator of sex trafficking, as opposed to a victim. Accordingly, the Court should issue a ruling precluding Defendant from introducing evidence regarding the fact that Plaintiff was falsely accused and detained for underage sex-trafficking.

Finally, such evidence is also prohibited by Rule 404(b)(1), which provides that, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Defendant may contend that such evidence could come in under 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident," but Defendant cannot meet its burden under the test employed in this Circuit.

24

The Eleventh Circuit uses a three-part test to determine the admissibility of such evidence under 404(b).

> First, the evidence must be relevant to an issue other than the [person's] character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the [person] committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (quoting *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992)). Defendant cannot meet this test, because there is no evidence to find that Plaintiff committed an act of which she was wrongly accused. Accordingly, evidence that Plaintiff was improperly held on charges of underage trafficking herself should be barred.

Thus, evidence of Plaintiff's criminal record is not only irrelevant to the merits of this case, but it also runs a substantial risk of unfairly prejudicing the jury against Plaintiff and confusing the issues. Finally, the presentation of such evidence is prohibited under Fed. R. Evid. 404(b)(1).

## V.    PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE SETTLEMENT EVIDENCE

Under Federal Rules of Evidence 402, 403, and 408, the Court should preclude Defendant from introducing information regarding Plaintiff's settlement with Stone Mountain Inn & Suites following a separate lawsuit.

25

Allowing Defendant to introduce the same would violate the Federal Rules of Evidence for the following reasons.

*First*, Rule 408 prohibits admission of a settlement "to prove or disprove the validity or amount of a disputed claim." The purpose of Rule 408 is "to encourage settlements and compromises of disputed claims, that would be discouraged if such evidence were admissible." *King v. Cessna Aircraft Co.*, 2010 WL 1839266, *1 (S.D. Fla. May 6, 2010) (citing *McClandon v. Heathrow Land Co. Ltd. Partnership,* No. 6:08–cv–35–orl–28GJK, 2010 WL 336345, at *3 (M.D.Fla. Jan. 22, 2010)). Rule 408 "has been held applicable to situations involving settlements between one of the parties and a third party, where such settlements have arisen out the same transaction that is in dispute." 768 F.2d 1303, 1306 (11th Cir. 1985).

Plaintiff's settlement with Stone Mountain Inn & Suites in a separate lawsuit is inadmissible under Rule 408 "to prove or disprove the validity or amount of" Plaintiff's "disputed claim" against United Inn. The settlement with Stone Mountain Inn & Suites arises out of a transaction related to Plaintiff's trafficking at United Inn—the gang that trafficked Plaintiff at Stone Mountain Inn & Suites brought her to United Inn & Suites to traffic her there. If Defendant were to attempt to introduce information about the Stone Mountain Inn & Suites settlement at this trial, it would be for the purpose of suggesting that Plaintiff's

26

claim against United Inn is redundant (which goes to the validity of Plaintiff's claim against United Inn), or worth less (which goes to the "amount" of Plaintiff's claim against United Inn), both of which are impermissible reasons under Rule 408.

*Second*, Rule 402 requires exclusion of Plaintiff's settlement with Stone Mountain Inn & Suites, because Plaintiff's settlement with Stone Mountain Inn & Suites is not relevant to any claim or defense. That Plaintiff settled a claim against a different hotel is not probative of any aspect of her claims against United Inn, and certainly not the underlying merits of the claims. Indeed, "claims may be settled for any number of reasons, some of which may not relate to the merit of the claim." *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1275 (S.D. Fla. 2011).

*Third*, permitting Defendant to introduce evidence of Plaintiff's settlement with Stone Mountain Inn & Suites would also violate Rule 403 by confusing the issues and prejudicing the jury against Plaintiff. It would, in essence, "invite a 'mini-trial' on the similarities and differences in the facts regarding the 'same' claims against the other defendants." *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144-45 (N.D. Iowa 2003). As one district court has held, where the "probative value of the settlement agreements … is doubtful," and there is a "substantial likelihood that the introduction of evidence regarding

settlements … will be a waste of time and will lead to jury confusion," the court should exclude such evidence. *Imtiazuddin v. N. Ave. Auto, Inc.*, No. 04 C 286, 2004 WL 2418295, *3 (N.D. Ill. Oct. 27 2004).

For these reasons, information regarding Plaintiff's prior settlement with Stone Mountain Inn & Suites following a separate lawsuit should not be admitted at trial.

## VI.   PLAINTIFF J.G.'S NOTICE OF INTENT TO FILE MOTION FOR CURATIVE INSTRUCTION IF PARTIES ARE UNABLE TO AGREE ON APPROPRIATE STIPULATION OR INSTRUCTION.

Plaintiff notifies the Court that Plaintiff intends to work in good faith with opposing counsel to try to agree upon a stipulation and/or jury instruction to cure the prejudice to Plaintiff resulting from Defendant's failure in discovery to provide information about its employees required under Rules 26(a)(1) and (e). Further, Plaintiff notifies the Court that if the parties are unable to agree upon an appropriate stipulation and/or instruction, then Plaintiff reserves the right to move the Court for an appropriate instruction.

As further background, Plaintiff notes that on October 12, 2023, she filed a motion for sanctions based on Defendant's discovery misconduct. (Doc. 86). Plaintiff requested that the Court (1) impose monetary sanctions on Defendant; (2) preclude Defendant from making certain arguments and offering certain evidence at trial; and/or (3) issue "a jury instruction on how Defendant's

conflicting and partial staff records compromised Plaintiff's ability to investigate and cross examine Defendant's claims about staff crime reports, and staff trainings, among other topics." (Doc. 86 at 25).  On August 16, 2024, the Court issued an order imposing monetary sanctions based on Defendant's discovery misconduct.  (Doc 138).  The Court declined to preclude Defendant from making certain arguments and offering certain evidence at trial.  (*Id.* at 48-49). The Court did not address Plaintiff's request regarding an appropriate jury instruction.

In support of Plaintiff's request for a curative jury instruction, Plaintiff explained that Rule 26(a)(1) requires Defendant to produce the name and contact information of its staff members. (Doc. 86 at 9-10).  And that Rule 26(g) requires appropriate sanctions for Rule 26(a)(1) violations.  (*Id.*, at 20).  Plaintiff pointed out that Defendant did not provide the information required under Rule 26(a)(1) about its staff. (*Id.*, at 9-10).  Defendant's corporate representative testified that Defendant paid at least some of its staff in cash, and, as a result, did not have records of everyone who worked at the hotel during the relevant period.  (*Id.*)  Throughout discovery, Defendant produced changing employee lists, identified some employees only by first name, and did not provide any information beyond a first name for certain employees—all of which violates Rule 26(a)(1).   (*Id.*).

In her motion for sanctions, Plaintiff addressed that Defendant's failure to comply with Rule 26(a)(1) caused her substantial prejudice—it prejudiced her ability

to investigate the case, to identify potential witnesses, and to confront and examine the hotel owner and manager about *many* factual issues pertaining to the actions and knowledge of hotel staff.  In a case about minor sex trafficking arising under the 18 U.S.C. § 1595(a)—*which statute the Court has said requires evidence of "some connection between the hotel operator's and the trafficker's actions" and identifiable "actions the operator took to advance the object of the joint undertaking,"* (Doc. 138 at 19)—the prejudice to Plaintiff from Defendant's failure to provide Rule 26(a)(1) information on its employees should be apparent; former hotel staff, for example, are in a better position than a child victim of sex trafficking to know of "connection[s] between" the "hotel's operat[ions] and the trafficker's actions" and of "actions the operator took to advance the object of the joint undertaking."  In sum, Defendant's failure to identify its staff in compliance with Rule 26(a)(1) because it illegally paid some employees cash under the table without maintaining records is directly prejudicial to Plaintiff's ability to prove her case, and necessitates a cure.[9]

Undersigned counsel hopes to agree upon the substance and form of an appropriate curative stipulation and/or instruction with Defendant's counsel. But Plaintiff hereby notifies the Court that she preserves her right to file a pretrial motion for an appropriate instruction if the Parties cannot agree.

---

[9] Rule 26(g)(1) does not require proof of prejudice for sanctions.

This 26th day of February, 2025.

/s/ David H. Bouchard
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Gabriel E. Knisely
gabe@finchmccranie.com
Georgia Bar No. 367407
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

/s/ Patrick J. McDonough
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 26th day of February, 2025.

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Gabriel E. Knisely
gabe@finchmccranie.com
Georgia Bar No. 367407
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*/s/ Patrick J. McDonough*
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff*

33