Exhibit 4



June 14, 2023


Dana M. Richens, Partner
Smith, Gambrell & Russell, LLP
1105 W. Peachtree St. N.E., Suite 1000
Atlanta, GA, 30309

> Re:    *Civil Action File No. 1:20-cv-05233-SEG; J.G., Plaintiff vs. Northbrook Industries, Inc., d/b/a United Inn and Suites, Defendant; In the United States District Court for the Northern District of Georgia, Atlanta Division*

Dear Ms. Richens:

Please find attached my report in the above referenced matter. This report may be supplemented as additional discovery is made available and other case activity is completed.


Respectfully submitted,

Karim H. Vellani, CPP, CSC

**Table of Contents**

**QUALIFICATIONS** ................................................................. 3

**MATERIALS RECEIVED** ......................................................... 5

**DEFINITIONS** ....................................................................... 7

**SEX TRAFFICKING VICTIM IDENTIFICATION** ...................... 9

**SUBJECT PLACE CHARACTERIZATION** ............................. 14

**SUBJECT INCIDENT BACKGROUND** ................................... 16

**CRIME RISK** ....................................................................... 17
    Prevalence of Sex Trafficking.............................................. 17
    Recency and Proximity....................................................... 18
    Similarity and Frequency.................................................... 23
    Calls for Service vs. Crimes .............................................. 26
    Analysis of Crime at The United Inn and Suites ................. 27
    Inherent Threats ............................................................... 28
    Awareness ........................................................................ 28
    Code Violations ................................................................. 29

**SECURITY MEASURES** ....................................................... 30
    General ............................................................................. 30
    Training ............................................................................. 31
    Guest Management ............................................................ 32
    Physical Security .............................................................. 33
    Law Enforcement .............................................................. 34

**OPINIONS** .......................................................................... 36

**PUBLICATIONS** ................................................................. 37

**TESTIMONIAL HISTORY** .................................................... 45

**COMPENSATION** ............................................................... 51

**APPENDIX A: Curriculum Vitae of Karim Vellani** .............. 52

**APPENDIX B: Forensic Methodology** ................................ 67

**APPENDIX C: Crime Risk Analysis** ................................... 77

## QUALIFICATIONS

Karim H. Vellani is the President of Threat Analysis Group, LLC, an independent security consulting firm.  Karim is Board Certified in Security Management (CPP), a Board-Certified Security Consultant (CSC), and has over 28 years of security management, crime analysis, and forensic security consulting experience.  He has a bachelor's degree in Criminal Justice with a specialization in Law Enforcement and a master's degree in Criminal Justice Management.  He is the author of three books, Applied Crime Analysis, Strategic Security Management, Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime, and has contributed to a number of other security related books and journals.  Karim serves on various research teams conducting evidence-based research on violent crime prevention, workplace violence, sex trafficking, and use of force.

Karim's practical experience in mitigating sex trafficking at lodging facilities started in 2009 when he was retained by the City of Houston. During that initial project, Karim assisted Mayor Bill White's Office by reviewing the extant literature on sex trafficking, identifying threats and vulnerabilities at specific hotels, and developing methods for mitigating the risk of sex trafficking and vice crimes. Since then, Karim has researched and published[1][2] on sex trafficking mitigation and developed programs for identifying and responding to sex trafficking victims in various environments, notably in the healthcare environment.

As an independent security management consultant, Karim has been retained by Fortune 500 companies and government agencies.  He has extensive experience in risk management and security force protection and provides consultation on a regular basis at government, commercial, and residential facilities across the nation.  Karim has worked on projects ranging from data centers, hospitals and healthcare facilities, houses of worship, manufacturing facilities, financial institutions, retailer stores, shopping centers and malls, hotels and motels, office buildings, and residential housing (including Section 8).

For 11 years, Karim was responsible for managing the quality control/assurance function for United States Department of Homeland Security's (DHS) protection force at federal government buildings in 23 states including Mississippi, Alabama, West Virginia, California, Montana, North Dakota, South Dakota, Wyoming, Utah, Nevada, North Carolina, Tennessee, Arizona, Kentucky, Illinois, Washington, Idaho, Texas, Oklahoma, Florida, South Carolina, Rhode Island, and Massachusetts.

---

[1] Vellani, Karim H., & Kristof, Tina S. (2022). "Security's Critical Role in Combating Sex Trafficking." Journal of Healthcare Protection Management, Volume 76, Number 1, International Association for Healthcare Security & Safety.

[2] Vellani, Karim H., & Kristof, Tina S. (2021). Identifying and Responding to Sex Trafficking Victims in Healthcare Environments. CrimRxiv. https://doi.org/10.21428/cb6ab371.84ddfc71



Karim specializes in crime analysis and security risk assessment and mitigation. He developed a crime analysis methodology that utilizes the Federal Bureau of Investigation's (FBI) Uniform Crime Report coding system and a proprietary software application called CrimeAnalysisTM. The software allows end users to identify specific threats, select appropriate countermeasures, and reduce their risk. The methodology was originally published in Applied Crime Analysis and evolved in Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime. Since developing the crime analysis methodology, Karim has assessed crime threats at thousands of facilities. Karim has also developed a Security Risk Assessment Methodology for Healthcare Facilities and Hospitals. In 2009, the International Association of Healthcare Security and Safety (IAHSS) published its Security Risk Assessment Guideline, which was authored by Karim at the request of IAHSS. He was also a Technical Committee Member on the Risk Assessment Standard Development Committee for the American Society for Industrial Security - International (ASIS).

Karim also provides forensic security consulting services to insurance companies and the legal profession. In this work, Karim provides litigation support to attorney's and serves as an expert witness in security related lawsuits. As an Adjunct Professor at the University of Houston - Downtown, Karim taught graduate courses in Security Management and Risk Analysis for the College of Criminal Justice's Security Management Program. He has also trained Police and Security Officers in weapons and use of deadly force and profiling and assisted in the development of maritime security training curriculum compliant with ISPS Code and the United States Coast Guard under the Maritime Transportation Security Act. Karim instructs frequently for the International Association of Professional Security Consultants and ASIS-International.

Karim is a member of the International Association of Professional Security Consultants (IAPSC), ASIS-International, the American Society of Criminology (ASC), American Society of Evidence-Based Policing (ASEBP), the International Association of Crime Analysts (IACA), the International Association of Chiefs of Police (IACP), and the International Association for Healthcare Security & Safety (IAHSS). In the past, Karim served as President of the IAPSC, Director for the IAHSS Foundation and Chair of the Evidence-Based Research Committee. Currently, Karim serves on the IAPSC Forensic Committee and chairs the IAPSC's Evidence-Based Security Practices Committee.



**MATERIALS RECEIVED**

I reviewed the materials listed below:

1. JG Complaint

2. Various Discovery and Bates Stamped Documents

3. Deposition and Exhibits of JG

4. Deposition and Exhibits of Ashar Islam (2/22/23)

5. Deposition and Exhibits of Ashar Islam (5/2/23)

6. Deposition and Exhibits of Tahir Shareef (2/22/23)

7. Deposition and Exhibits of Tahir Shareef (5/2/23)

8. Deposition and Exhibits of Sgt. CD King

9. United Inn and Suites Rules of Conduct

10. United Inn and Suites Management Policies

11. Crime Grid and Crime Stats for Hotel

12. DKPD Police Reports

13. Incident Reports from Hotel

14. Site Photos

15. Videos and Video Clips

16. Affidavit of Detective Royal Weber

17. Affidavit of Sgt. Willie McClelland


In addition to reviewing the foregoing materials, and consistent with the *Forensic Methodology*, I analyzed the crime records produced in this matter and independently requested additional crime records from the DeKalb County Police Department (DCPD) for the United Inn and Suites.  The crime records I received from DCPD can be downloaded using the link below.
https://www.dropbox.com/s/8rdlqc62unfqky0/Stats.zip?dl=0



On January 17, 2023, I conducted a day and night inspection of the United Inn and Suites. On May 25, 2023, I interviewed Tahir Shareef to learn more about the security program in place at United Inn and Suites.



**DEFINITIONS**

The Trafficking Victims Protection Act of 2000 and its subsequent reauthorizations defines **Sex Trafficking** as the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age.[3]

In January 2013, the Federal Bureau of Investigation (FBI) Uniform Crime Reporting (UCR) Program began collecting offense and arrest data regarding human trafficking as required by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA). The TVPRA requires the FBI to collect human trafficking offense data and to make distinctions between prostitution, assisting or promoting prostitution, and purchasing prostitution.[4] The Federal Bureau of Investigation (FBI) defines **Human Trafficking - Commercial Sex Acts** as inducing a person by force, fraud, or coercion to participate in commercial sex acts, or in which the person induced to perform such act(s) has not attained 18 years of age.[5]

In contrast, the FBI defines the following prostitution-related offenses:[6]

- Prostitution Offenses - To unlawfully engage in or promote sexual activities for anything of value.

- Prostitution - To engage in commercial sex acts for anything of value.

- Assisting or Promoting Prostitution - To solicit customers or transport persons for prostitution purposes; to own, manage, or operate a dwelling or other establishment for the purpose of providing a place where prostitution is performed; or to otherwise assist or promote prostitution.

- Purchasing Prostitution - To purchase or trade anything of value for commercial sex acts.

Human trafficking, including sex trafficking, is a process crime (rather than a single offense) that consists of four distinct phases:

1. Deception, abduction, or recruitment

---

[3] https://www.justice.gov/humantrafficking

[4] https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/additional-data-collections/human-trafficking

[5] https://ucr.fbi.gov/nibrs/2018/resource-pages/nibrs_offense_definitions-2018.pdf

[6] https://ucr.fbi.gov/nibrs/2018/resource-pages/nibrs_offense_definitions-2018.pdf



2. Transportation
3. Exploitation
4. Victim disposal[7]



The exploitation phase occurs in different types of places and often occurs in multiple places. It can occur in hotels, residences, other places (e.g. massage parlors, truck stops, bars, strip clubs, etc.), or on the street (public places).



Sex trafficking is a transient[8] and clandestine[9] crime. Unlike robbery, which often occurs in the open and with victims willing to report the crime, the clandestine nature of the exploitation phase of sex trafficking makes it difficult to detect and prevent.

---

[7] Aronowitz, Alexis; Gerda Theuermann and Elena Tyurykanova (2010). Analysing the Business Model of Trafficking in Human Beings to Better Prevent the Crime. Office of the Special Representative and Coordinator for Combating Trafficking in Human Beings.

[8] Transient - lasting only for a short time; impermanent (Oxford Languages); passing especially quickly into and out of existence (Merriam-Webster)

[9] Clandestine - kept secret or done secretively, especially because illicit (Oxford Languages); marked by, held in, or conducted with secrecy (Merriam-Webster)



## SEX TRAFFICKING VICTIM IDENTIFICATION

Sex trafficking victims may not self-report, may not ask for help, and may not see themselves as victims.[10] Without self-reporting, sex trafficking victims are difficult to identify and are frequently misidentified.[11] [12] [13]

Several studies have shown that over 80% of human trafficking victims interact with the healthcare system in some capacity while trafficked.[14] [15] [16]  Sex trafficking victims may visit healthcare facilities for a multitude of emergent medical conditions including sexually transmitted infections and pregnancy-related issues.[17]  This provides healthcare workers an opportunity to play a role in identifying and responding to potential trafficking victims.[18] [19] [20]  Healthcare workers have an opportunity to interact with potential victims in ways that

---

[10] Toney-Butler, TJ, Mittel O. Human Trafficking. 2020 Nov 27. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; pg 1–57; 2020 Jan–. PMID: 28613660

[11] Vellani, Karim H., & Kristof, Tina S. (2022). "Security's Critical Role in Combating Sex Trafficking." Journal of Healthcare Protection Management, Volume 76, Number 1, International Association for Healthcare Security & Safety.

[12] Vellani, Karim H., & Kristof, Tina S. (2021). Identifying and Responding to Sex Trafficking Victims in Healthcare Environments. CrimRxiv. https://doi.org/10.21428/cb6ab371.84ddfc71

[13] Tortolero, G.A. (2020). Human Trafficking Victim Identification and Response Within the United States Healthcare System.  IAHSS-F RS-20-02. International Association for Healthcare Security and Safety – Foundation.  https://iahssf.org/research/human-trafficking-victim-identification-and-response-within-the-united-states-healthcare-system/

[14] Tortolero, G.A. Human Trafficking Victim Identification and Response Within the United States Healthcare System, Evidence Based Healthcare Security Research Series.  IAHSS-F RS-20-02. International Association for Healthcare Security and Safety - Foundation (2020).

[15] Toney-Butler, TJ and O. Mittel, Human Trafficking. 2020 Nov 27. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; pg 1–57; 2020 Jan–. PMID: 28613660

[16] American Hospital Association, *Human Trafficking*, https://www.aha.org/topics/human-trafficking (accessed 4/27/21).

[17] Baldwin, Susie, David Eisenman, Jennifer Sayles, Gery Ryan, and Kenneth Chuang, Kenneth, Identification of Human Trafficking Victims in Health Care Settings, Health and Human Rights,13. E36-49 (2011).

[18] Tortolero, G.A. Human Trafficking Victim Identification and Response Within the United States Healthcare System, Evidence Based Healthcare Security Research Series.  IAHSS-F RS-20-02. International Association for Healthcare Security and Safety - Foundation (2020).

[19] Clawson, Heather J., Nicole Dutch, and Amy Solomon, Human Trafficking Into and Within the United States: A Review of the Literature, United States Department of Health and Human Services, Office of the Assistant Secretary for Planning and Evaluation (2009). https://aspe.hhs.gov/system/files/pdf/75891/index.pdf

[20] Jouk, Natasha, Ivana Capin, Jordan Greenbaum, and Dana Kaplan, Recognizing Suspected Human Trafficking in the Pediatric Intensive Care Unit, Journal of Human Trafficking (2021), DOI: 10.1080/23322705.2020.1862614



are not possible for workers in other industries.  For example, healthcare workers can ask screening questions to identify sex trafficking victims, such as:

1. Have you been to see a nurse, doctor or other health provider in the last year?

2. Have you ever broken any bones or had any cuts that needed stitches?

3. Have you ever been knocked unconscious ("knocked out")?

4. Have you ever run away from home or been 'kicked out' of your home?

5. Have you used drugs or alcohol in the last 12 months?

6. If yes, do you remember how old you were when you first tried alcohol or drugs?

7. Have you ever had any problems with the police?

**8. Has a boyfriend or girlfriend in a dating or serious relationship ever physically hurt you or threatened to hurt you (hit, pushed, kicked, choked, burned or something else)?**

9. Have you ever had sex of any type?

10. If yes, when you had sex, what did it involve (vaginal, anal, oral)

11. Since the first time you had sex, how many partners have you had?

12. Which of the following best describes you?  (Heterosexual (straight), Homosexual (Gay or Lesbian), Bisexual, Transgender, Not sure

13. Have you ever had any sexually transmitted infections, like herpes, gonorrhea, chlamydia or trichomonas?

**14.  Have you ever traded sex for money, drugs, a place to stay, a cell phone, or something else?**

**15. Has a boyfriend, a girlfriend or anyone else ever asked you, or forced you to have sex with another person?**

**16. Has anyone ever asked or forced you to do some sexual act in public, like dance at a bar or a strip club? (If asked, did you have to actually do it?)**



**17. Has anyone ever asked you to pose in a sexy way for a photo or a video?**[21]

Likewise, healthcare workers may recognize physical indicators during their questioning of suspected victims. While these indicators are often exhibited by non-victim patients, coupled with the screening questions above and a physical examination, they may supplement the trafficking victim identification protocol. Indicators may include:

1. Inconsistent history or a history that appears coaxed. May be difficult to determine if a language barrier is present.

2. **Resistant to answer questions about the injury or incident.**

3. Avoids eye contact, is nervous, fearful of touch.

4. **No idea of address or general area where they live.**

5. **No control over their finances and lacks decision-making capacity.**

6. **Accompanied by a controlling companion or family member that refuses to let the patient speak for themselves or be alone for care or insists on being the translator.**

7. Exhibits bizarre, hostile behavior. Resistant to care and assistance. May have initially consented but changes mind after asked to undress for an exam.

8. No identification or a companion has it in their possession.

9. **Under age 18 and involved in a commercial sex act.**

10. **Tattoos or branding signs.**

11. **Multiple sex partners.**

12. Inappropriate attire for the environmental conditions of the area.

13. **Attempt to reason away bruises or ligature marks by claiming a bruising or rare blood disorder.**

14. **Silent, afraid to speak, cringes at the sound of a loud voice.**

---

[21] Tortolero, G.A. Human Trafficking Victim Identification and Response Within the United States Healthcare System, Evidence Based Healthcare Security Research Series. IAHSS-F RS-20-02. International Association for Healthcare Security and Safety - Foundation (2020).



15. **Uses trafficking "lingo" such as "the life" or other words common in the commercial sex industry.**

16. Has addiction issues such as opioids.

17. **Admits to a forced sexual encounter or being forced into sex acts.**

18. Has a cover story to avert suspicion, but details may vary or be inconsistent with a query.[22]

Healthcare facilities can also implement methods to encourage victims to give non-verbal signals. For example, signage in patient-only bathrooms can instruct victims to flip a sign over, affix a colored dot to a urine collection cup, leave a note, etc. Such signals alert healthcare workers that the patient should be screened alone and in a safe area. Healthcare workers can also develop triggers for screening when patients exhibit health symptoms common among trafficking victims, such as urinary tract infections, pelvic or abdominal pain, suicide attempts, or psychogenic nonepileptic seizures during the health assessment.[23]

I am unaware of any evidence-based research to support other "indicia of sex trafficking" such as those promulgated by the Department of Homeland Security (DHS) Blue Campaign or the Polaris Project, a non-profit that operates the National Human Trafficking Resource Center and Hotline. However, the Polaris Project suggests the following invasive questions to identify sex trafficking victims:

▪ Did anyone ever pressure you to engage in any sexual acts against your will?

▪ Did anyone ever take photos of you and if so, what did they use them for? Were these photos ever sent to other people or posted on an online forum (Craigslist, Backpage, Myspace)?

▪ Did anyone ever force you to engage in sexual acts with friends or business associates for favors/money?

▪ Did anyone ever force you to engage in commercial sex through online websites, escort services, street prostitution, informal arrangements, brothels, fake massage businesses or strip clubs?

---

[22] Toney-Butler, TJ and O. Mittel, Human Trafficking. 2020 Nov 27. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; pg 1–57; 2020 Jan–. PMID: 28613660

[23] Tortolero, G.A. Human Trafficking Victim Identification and Response Within the United States Healthcare System, Evidence Based Healthcare Security Research Series. IAHSS-F RS-20-02. International Association for Healthcare Security and Safety - Foundation (2020).



▪ Were you required to earn a certain amount of money/meet a nightly quota by engaging in commercial sex for someone? What happened if you did not meet this quota?

▪ [For women only] Did anyone force you to continue to engage in commercial sex when you were on your period? Were you ever asked or told to use anything that would prevent the flow of menstruation?

▪ How old were you when you were in this situation? Did you ever see any minors (under 18 years old) involved in commercial sex?

▪ Were you ever transported to different locations to engage in commercial sex? Where were you taken and who transported you?

▪ Who decided whether or not you used a condom during sex acts?[24]

Identifying and helping victims of human trafficking is difficult and can further endanger the victim.[25] Unlike healthcare environments, hotels like United Inn and Suites, are not well-situated to identify victims of sex trafficking.

---

[24] https://humantraffickinghotline.org/en/resources/comprehensive-human-trafficking-assessment-tool

[25] Davy, D. (2016). Anti–Human Trafficking Interventions: How Do We Know if They Are Working? American Journal of Evaluation, 37(4), 486–504. https://doi.org/10.1177/1098214016630615



**SUBJECT PLACE CHARACTERIZATION**

United Inn and Suites is an extended stay hotel located at 4649 Memorial Drive, Decatur, GA 30032 (https://goo.gl/maps/7ykHmyZoJ78pZBfB6). United Inn and Suites is a 3-story (front) and 4-story (back) building with 172 guest rooms, an apartment for the owner/manager, and a hotel office. On average, about 150 guest rooms are rented each night. 25-30% of guests are long-term guests (30 days or more). Guests access the registration area via the hotel lobby or a transaction window. United Inn and Suites has been operated by the same owner since 2006.[26] [27]



The owner of United Inn and Suites has been an intermittent member of the Asian American Hotel Owners Association (AAHOA) since 1998. United Inn and Suites have several staff members, all of whom speak some English. United Inn and Suites staff was

---

[26] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[27] Interview of Tahir Shareef, May 25, 2023



on duty 24x7 with more staffing during the daytime. On the day shift, United Inn and Suites had five housekeepers, one front desk person, and one groundskeeper on duty.  The night shift, from 2100 to 0600 hours, had a front desk person and a contracted Police Officer was on duty from 2200 to 0200 hours. As such, there was only one person working at United Inn and Suites for five hours each day (from 2100 to 2200 hours and from 0200 to 0600 hours).  The United Inn and Suites owner testified that the front desk person working at night walked the property as needed and monitored the video surveillance system from the hotel office. As mentioned above, there is a one-bedroom apartment on the property that was used by the Owner and Manager and occupied 15 to 25 days each month. When the owner was staying on-site, his wife was with him. In addition, another staff member lived at the property.[28] [29] [30]

---

[28] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[29] Interview of Tahir Shareef, May 25, 2023

[30] Depositions of Ashar Islam, 2/22/23 and 5/2/23



## SUBJECT INCIDENT BACKGROUND

In this matter, Plaintiff JG knew her trafficker sufficiently to meet with him in person. Kidnapping was not involved. JG met her trafficker (Shaq) on Instagram and thought they were in a relationship. JG was trafficked by two other men (Cash and King) and a female friend (Kevy) of Shaq at United Inn and Suites. By TVPRA definition, JG was a victim of sex trafficking as she was a minor at the time of her earliest known trafficking date. JG was trafficked at United Inn and Suites between October 7 or 8, 2018 and January 2019 (approximate dates) during two separate episodes. In addition to United Inn and Suites, JG was trafficked at other locations. JG met her "customers" on public streets and online (e.g. List Crawler). JG testified that she had sex with customers in the parking lot. JG testified that Cash sold drugs to a United Inn and Suites staff member that worked at the front desk. JG also testified that the front desk staff member told JG and Cash that they had too much traffic in their guest room. During the early part of her trafficking on November 14, 2018, JG was detained by DeKalb County Police Department Police Officers at United Inn and Suites. JG did not ask the Police Officers for assistance. JG told Police Officers that her name was Chimeko Grimes. Police Officers did not recognize JG as a trafficking victim and did not assist her. United Inn and Suites was not aware of any incidents involving JG contemporaneously. JG never reported the Incidents to United Inn and Suites.[31] [32] [33]

---

[31] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[32] Deposition and Exhibits of JG

[33] DeKalb County Police Department Incident Report, Case Number 18-174876



## CRIME RISK

As a security consultant and crime analyst, I have spent over 28 years developing specialized knowledge of crime analysis and its associated techniques. Using this specialized knowledge, I have assessed crime risks for private sector companies, industry associations, and government agencies. I have given presentations at industry conferences and written book chapters, articles, journal articles, and three books on the topic of crime analysis and security risk mitigation (see Appendix A: Curriculum Vitae of Karim Vellani).

### Prevalence of Sex Trafficking

Research indicates that the prevalence of human trafficking, and sex trafficking specifically, is difficult to quantify.

- "Little research has estimated the prevalence of minor sex trafficking in the United States. The existing studies examine different areas and populations and use different categories to estimate the problem. Future research is needed on this important topic, including methodologies to produce more representative estimates of this hard-to-reach population."[34]

- Estimating the prevalence of human trafficking in the United States is extremely difficult. The methods used to derive estimates of human trafficking are rarely described in the literature or government reports.[35]

- United States: The way US trafficking law is formulated means all commercial sex acts involving minors can effectively be seen as sex trafficking. There are obvious implications for the estimated scale of the problem. Reliable figures on the scale of commercial child sexual exploitation simply do not exist but a much-repeated estimate is that 326,000 children were 'at risk' in 2000. This figure is regularly misused as a proxy for the scale of internal child sex trafficking, despite having been characterised as 'a guestimate and not a scientific estimate.'[36]

---

[34] Franchino-Olsen, H., Chesworth, B. R., Boyle, C., Rizo, C. F., Martin, S. L., Jordan, B., … Stevens, L. (2020). The Prevalence of Sex Trafficking of Children and Adolescents in the United States: A Scoping Review. Trauma, Violence, & Abuse. https://doi.org/10.1177/1524838020933873

[35] Tortolero, G.A. (2020). Human Trafficking Victim Identification and Response Within the United States Healthcare System. Evidence Based Healthcare Security Research Series. IAHSS-F RS-20-02. International Association for Healthcare Security and Safety - Foundation.

[36] Cockbain, E. (2018). Offender and Victim Networks in Human Trafficking. Abingdon. Routledge.



- ▪ Statistics concerning human trafficking are necessarily unreliable because of the clandestine nature of the activity and the difficulties in defining it.[37]

- ▪ Statistical evidence cited to support claims that sex trafficking is an epidemic are unconvincing.[38]

- ▪ The DeKalb County Police Department did not report any human trafficking incidents to the FBI in 2017[39] or 2018.[40]

Consistent with my education, training, and experience, I applied a methodology first developed in 1929 by the Federal Bureau of Investigation (FBI) called the Uniform Crime Reporting (UCR) methodology to assess the crime risk at the United Inn and Suites. This methodology is commonly used by criminologists, security consultants, crime analysts, researchers, and organizations to assess crime risk, and it is referenced in the peer-reviewed, consensus-based *Forensic Methodology* published by the International Association of Professional Security Consultants (IAPSC).

Thoroughly understanding the crime risk of a place is necessary to determine if a security program is reasonable and responsive to the actual risks at the place. As such, I assessed the crime risk at the United Inn and Suites ("Subject Place") using four factors - **similarity, frequency, recency,** and **proximity**. These factors were considered with additional guidance from industry accepted practices and governmental sources.

**Recency and Proximity**
The *Forensic Methodology* addresses both time (**recency**) and distance (**proximity**) in assessing crime at a Place (the Subject Place at issue in this matter is the United Inn and Suites), specifically:

> When assessing actual threats, the following may be considered *as deemed relevant by the security expert*:
>
> a. Relevant crimes on the **subject property** for a **three to five-year period** prior to the date of the incident.

---

[37] Newman, Graeme R. (2006). The Exploitation of Trafficked Women, Problem-Oriented Guides for Police Problem-Solving Tools Series No. 38. Office of Community Oriented Policing Services. U.S. Department of Justice.

[38] Cockbain, Ella. (2018). Offender and Victim Networks in Human Trafficking. 10.4324/9781315628578.

[39] https://ucr.fbi.gov/crime-in-the-u.s/2017/crime-in-the-u.s.-2017/additional-data-collections/human-trafficking

[40] https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/additional-data-collections/human-trafficking



b. Relevant crimes in the **immediate vicinity** of the subject property for a **three to five-year period** prior to the date of the incident.[41]

As a matter of practice, I use three (3) calendar years prior to the subject incident and up to the date of the incident in the subject year of the incident. Variances may occur when additional time periods are available through discovery or when police departments cannot provide the full timeframe requested.

With regard to area crime (**proximity**), the *Forensic Methodology* further states:

a. *There is no single definition of what constitutes an "immediate vicinity" or "neighborhood" around a given property. Often what is available for evaluation from a law enforcement agency depends upon that agency's software programming and/or staff capabilities (e.g., the agency can only provide data for a set size of an area, such as a quarter mile radius).*

b. *The IAPSC recognizes that criminology studies and related research have generally found that crime in the area may or may not be relevant to the subject property.[42]*

Advancements in data collection by law enforcement agencies have created a wealth of data for researchers to analyze. Empirical studies of these data resulted in three "laws of criminology."

> **First**, young people—roughly from age 15 through 25—create most of the trouble. **Second**, males cause more trouble than females regardless of age. **Third**, crime is highly concentrated at a few places. This means that even within high-crime areas, like neighborhoods, only a tiny number of places experience crime. There are no known exceptions to this law, unlike the first two laws.[43]

In criminological research, there is no generally accepted definition of "neighborhood," "area," "immediate area," "immediate vicinity," or "close proximity" (collectively referred to as "Area"). The idea of a "high crime neighborhood" is misleading. To assume that a neighborhood or area is the right unit of analysis is to assume that the processes that create crime operate throughout the neighborhood or area. If this was true, the distribution of crime would be reasonably even across all places in the neighborhood or area. This is simply not true. Crime in an area, such as a neighborhood, is not evenly distributed. Some

---

[41] See Appendix B (bold added)

[42] See Appendix B

[43] Eck, John E., Shannon J. Linning , Tamara D. Herold (2023). Place Management and Crime: Ownership and Property Rights as a Source of Social Control. SpringerBriefs in Criminology.



*Places* within a neighborhood have a lot of crime.  Most *Places* have little or no crime. This is true in both "good" and "bad" neighborhoods.

Understanding crime at *Place* is important for preventing crime. Crime prevention is based on specific problems which must be solved based on the situational characteristics of specific properties. "Crime-free places are all alike; every crime-prone place is crime prone in its own way." The facts that (a) crime is highly concentrated at specific Places and (b) that crime is *situationally specific* is supported by a large body of research dating back to 1989 and is widely accepted. [44] [45] [46] [47] [48] [49] [50] [51]

A Place has five characteristics:

1. It is very small (i.e. one address, one land parcel, one building, etc.);

2. It has a known geographic location;

3. It is contained within defined property boundaries;

4. It serves one general function (e.g. the Place provides housing, sells groceries, serves food, provides healthcare, etc.); and

[44] Sherman, L., Gartin, P., & Buerger, M. (1989). Hot spots of predatory crime: Routine activities and the criminology of place. Criminology, 27(1), 27-56. https://doi.org/10.1111/j.1745-9125.1989.tb00862.x

[45] Eck, John E., Shannon J. Linning , Tamara D. Herold (2023). Place Management and Crime: Ownership and Property Rights as a Source of Social Control. SpringerBriefs in Criminology.

[46] Weisburd, David, Elizabeth Groff and Sue-Ming Yang. (2012), The Criminology of Place: Street Segments and Our Understanding of the Crime Problem. Oxford: Oxford University Press.

[47] Madensen, Tamara D. (2010).  ""Eck, John E.: Places and the Crime Triangle."  Encyclopedia of Criminological Theory, SAGE Publications, Inc., Thousand Oaks.

[48] Madensen, Tamara D.  and John E. Eck (2013).  "Crime Places and Place Management" in Cullen, F. T., & Wilcox, P. The Oxford Handbook of Criminological Theory. New York, NY: Oxford University Press.

[49] Gotham, K.F. & Kennedy, D.B. Secur J (2019). https://doi.org/10.1057/s41284-019-00218-1

[50] Drawve, Grant & Harris, Casey & Thomas, Shaun & Datta, Jyotishka & Cothren, Jackson. (2020). Current and New Frontiers: Exploring how Place Matters through Arkansas NIBRS Reporting Practices. Crime & Delinquency. 10.1177/0011128720974317.

[51] Weisburd, David, Elizabeth Groff and Sue-Ming Yang. (2012), The Criminology of Place: Street Segments and Our Understanding of the Crime Problem. Oxford: Oxford University Press.



5. It has an owner who has the authority to legally control the use of the Place, including the power to exercise a broad range of controls over the use of the Place.[52]

Those unfamiliar with evidence-based criminological research may use a one-mile radius (an area of 3.14 square miles) or a two-mile radius (an area of 12.57 square miles) around a Place and improperly assume that all crime in that Area is additive to the crime risk of the Place and without consideration of the population density of the Area. An arbitrarily selected radius can skew the crime analysis positively or negatively. The arbitrariness of radius selection impacts accuracy and is sometimes done to "garner attention based solely on the fact that they produce attractive maps that are user-friendly."[53] Other research identified key problems with the use of radii:

> *Few physical targets take the shape of a sphere and so most likely will differ from the morphology of radial buffer. The second issue is that buffer zones tend to be uniform, equidistant from the object they are buffering. Using a concentric buffer zone in this way assumes that diffusion takes place in equal distributions around an object. It does not seem likely, however, that crime would be diffused uniformly.*[54]

Thus, to use an arbitrary radius ignores criminological evidence and creates logistical challenges for calculating crime rates (often needed for the **frequency** element discussed below).

*Routine Activity Theory* is useful for explaining the basic components of crime. It posits that for a crime to occur, three necessary elements must converge in time: a motivated offender, a target/victim lacking guardianship, and a **Place**.[55] This is illustrated in the inner triangle of the Problem Analysis Triangle below.

---

[52] Eck, John E. (2018). "Regulation for High-Crime Places: Theory, Evidence, and Principles." The ANNALS of the American Academy of Political and Social Science. Volume 679, Issue 1. Sage Publications.

[53] Chainey, S., Tompson, L., & Uhlig, S. (2008). The utility of hotspot mapping for predicting spatial patterns of crime. Security Journal, 21, 4-28

[54] Murray, R., & Roncek, D. (2008). Measuring diffusion of assaults around bars through radius and agency techniques. Criminal Justice Review, 33(2), 199-220.

[55] Cohen, L. E., & Felson, M. (1979). Social Change and Crime Rate Trends: A Routine Activity Approach. American Sociological Review, 44(4), 588–608. https://doi.org/10.2307/2094589





While the inner triangle shows the necessary components that need to converge in time for a crime to occur, the outer triangle shows *Controllers*. Controllers can influence crime prevention. Controllers may have a direct impact on the crime, but more often have an indirect role in crime. There are three types of Controllers: Handlers, Guardians, and Place Managers. *Handlers* (e.g. parents, probation officers, society, etc.) influence *Offenders*. *Guardians* (e.g. oneself, bystanders, neighbors, etc.) protect *Victims*. Most guardianship is self-guardianship, that is, people taking action to protect themselves.[56] *Managers* (e.g. homeowner, property manager, etc.) control *Places*.

Analyzing crime in large areas is inconsistent with Routine Activity Theory and other aspects of *Crime Science*.[57] Studying crime at geographic units bigger than a Place may mask the variability of crime at subject Places and may misrepresent the risk.[58] Places are "only loosely coupled to their contexts: they have internal mechanisms that allow them

---

[56] Sampson, R., Eck, J. & Dunham, J. Super controllers and crime prevention: A routine activity explanation of crime prevention success and failure. Secur J 23, 37–51 (2010). https://doi.org/10.1057/sj.2009.17

[57] Cockbain, E., & Laycock, G. Crime Science. Oxford Research Encyclopedia of Criminology. Retrieved 5 Apr. 2023, from https://oxfordre.com/criminology/view/10.1093/acrefore/9780190264079.001.0001/acrefore-9780190264079-e-4

[58] Weisburd, David, Elizabeth Groff and Sue-Ming Yang. (2012), The Criminology of Place: Street Segments and Our Understanding of the Crime Problem. Oxford: Oxford University Press.



to operate mostly independent from their surroundings."[59]  Consequently, correlations drawn from Areas can be misleading in drawing conclusions about Places.[60]

Furthermore, criminology has shown that crime in an Area is not *additive* to the crime risk of a Place.  However, Area crime can be used for *comparative* purposes.  Specifically, a Place could be compared to other Places with similar characteristics in the Area.[61]  A retail store could be compared to other retail stores with similar characteristics (i.e. sells groceries) in the Area.  Likewise, an apartment complex could be compared to other Area apartment complexes with similar characteristics.   Characteristics of an apartment complex may include type (e.g. garden style, mid-rise, high rise, etc.), rental rate (e.g. market, subsidized), size (e.g. number of units), and management style.[62]   Comparing dissimilar Places, however, is inappropriate.[63] [64]

**Similarity and Frequency**
The United States Department of Justice, specifically the FBI and the Bureau of Justice Statistics ("BJS"), provide guidance regarding the assessment of crime **similarity** and **frequency**.  The FBI collects crime data for specific crimes and categorizes them using the Uniform Crime Report (UCR) methodology.[65]  The FBI's UCR methodology categorizes crimes as violent crimes, property crimes, and disorder crimes.[66] The newer UCR methodology recently transition from the Summary Reporting System (SRS) to the National Incident-Based Reporting System (NIBRS). The NIBRS now includes Human Trafficking, Commercial Sex Acts and Human Trafficking, Servitude. As discussed in the Definitions section above, the TVPRA requires the FBI to distinguish Human Trafficking - Commercial Sex Acts from prostitution, assisting or promoting prostitution, and

---

[59] Madensen, Tamara D.  and John E. Eck (2013).  "Crime Places and Place Management" in Cullen, F. T., & Wilcox, P. The Oxford Handbook of Criminological Theory. New York, NY: Oxford University Press.

[60] Weisburd, David, et al. (2016), Place Matters: Criminology for the Twenty-First Century. Cambridge: Cambridge University Press.

[61] Weisburd, David, et al. (2016), Place Matters: Criminology for the Twenty-First Century. Cambridge: Cambridge University Press.

[62] Bruinsma, G., Johnson, S., Eck, J., & Madensen, T. (2018-09-14). Place Management. In The Oxford Handbook of Environmental Criminology. : Oxford University Press.

[63] Eck, John & Guerette, Rob. (2012). "Own the Place, Own the Crime" Prevention. 10.1093/acprof:oso/9780199917938.003.0021.

[64] Vellani, Karim H. (2021).  Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime. Sugar Land, TX: Threat Analysis Group, LLC.

[65] https://ucr.fbi.gov/

[66] A recent enhancement to the UCR's underlying reporting system added a category called crimes against society and added additional crimes to the former categories (e.g. human trafficking). The new enhancements have not been fully operationalized across the country.



purchasing prostitution.[67]  Likewise, there is insufficient research to determine what other crimes (e.g. rape, kidnapping, etc.) are predictive of sex trafficking.

Criminologists, Ronald V. Clarke and John E. Eck, admonish that "problems need to be examined with great specificity because small details can make a difference between a set of circumstances that gives rise to harmful events, and a set of circumstances producing harmless events."[68] Regarding *similarity*, Drs. Eck and Clarke state:

> *Similarity. The recurring events must have something in common. They may be committed by the same person, happen to the same type of victim, occur in the same types of locations, take place in similar circumstances, involve the same type of weapon, or have one or more other factors in common. Without common features, you have an arbitrary collection of events, not a problem. Common crime classifications—such as used by the Uniform Crime Reports—are not helpful. Vehicle theft, for example, includes joyriding, thefts for chop shops, thefts for export to other countries, thefts for use in other crimes, and a host of other dissimilar events. So a cluster of vehicle thefts may not be a single problem. More information is needed. With common features, we have a pattern of events that could indicate a problem—for example, thefts of minivans in suburban neighborhoods to be used as gypsy cabs in the inner city.*[69]

The Forensic Methodology states, "The expert may consider the relationship between offenders and victims (e.g. interpersonal, domestic, targeted, etc.)."  When assessing the crime risk of a Place, it is important to distinguish crimes which pose a threat to the general users of the Place versus those that pose a risk to specific individuals.  The Department of Justice defines two types of crime categories based on the relationship of the offender and victim:

a. "Stranger" (also known as "Stranger-Initiated") is a classification of the victim's relationship to the offender for crimes involving direct contact between the two. Incidents are classified as involving strangers if the victim identifies the offender as a stranger, did not see or recognize the offender, or knew the offender only by sight. Crimes involving multiple offenders are classified as involving non-strangers if any of the offenders was a non-stranger. Since victims of theft without contact rarely see the offender, no distinction is made between strangers and non-strangers for the crime.

---

[67] https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/additional-data-collections/human-trafficking

[68] Clarke, R. V., & Eck, J. E. (2016). Crime analysis for problem solvers in 60 small steps. Office of Community Oriented Policing Services.

[69] Clarke, R. V., & Eck, J. E. (2016). Crime analysis for problem solvers in 60 small steps. Office of Community Oriented Policing Services.



b.  "Non-Stranger" (also known as "Interpersonal") is a classification of a crime victim's relationship to the offender. An offender who is either related to, well known to, or **casually acquainted with the victim is a non-stranger**. For crimes with more than one offender, if any of the offenders are non-strangers, then the group of offenders as a whole is classified as non-stranger. This category only applies to crimes which involve contact between the victim and the offender; the distinction is not made for crimes of theft since victims of this offense rarely see the offenders.

Non-Stranger crimes are more difficult to prevent than Stranger crimes and typical security measures are not often effective against Non-Stranger crimes.[70] Security programs are usually not designed to deter or prevent Non-Stranger crimes, though intervention once the crime is underway is possible. When assessing similarity of crimes, only prior Stranger violent crimes should be analyzed for purposes of identifying the general crime risk at a Place. As stated by criminologist Lawrence W. Sherman:

> *A standard distinction among violent crimes is the relationship between the victim and the offender. In a crime where the victim and the offender are acquainted, as in a wife-beating, its occurrence may be predictable from their relationship. It is not usually predictable as to place of occurrence, however, especially in public places. There is apparently no reasonable way for the operator of a business to foresee that previously acquainted persons will enter the premises and commit violent acts against each other.*[71]

There is no scientific basis for predicting stranger violent crimes based on prior non-stranger violence.[72]

The trafficking of JG would be classified as a non-stranger crime based on the discovery in this matter and as described in the Subject Incident Background section above.[73]

**Frequency** is usually measured via crime patterns, crime trends, and crime rates:

---

[70] Army, Christine, & Vellani, Karim H. (2021). Violent Crime Typology and Continuum. CrimRxiv. https://doi.org/10.21428/cb6ab371.71ec923d

[71] Sherman, Lawrence W. (1989). Violent Stranger Crime at a Large Hotel: A Case Study in Risk Assessment. Security Journal 1:40-46.

[72] Sherman, Lawrence W. (1989). Violent Stranger Crime at a Large Hotel: A Case Study in Risk Assessment. Security Journal 1:40-46.

[73] Deposition of JG



- Crime Pattern - two or more incidents related by a common causal factor, usually to do with the offender, location, or target.  Patterns are usually, but not always, short term phenomena.[74]

- Crime Trend - a specific type of pattern that has a general direction or tendency. In practice, a trend often has a time component (e.g.  crime by day or week, time of day, etc.) and is represented as an increase or a decrease in a given phenomenon over time.[75]

- Crime Rate - the ratio of crimes in an area to the population of that area.  Crime rates are typically expressed per 1,000 population per year.  A crime rate provides context to a crime volume.[76] "A rate of anything consists of two numbers: the numerator, or number of occurrences, and the denominator, or number of units in which the occurrences are possible. Thus, auto accident rates are sometimes described in terms of accidents per 100,000 vehicle miles traveled and plane crash deaths are divided by the number of passenger miles traveled."[77]

**Calls for Service vs. Crimes**

Depending on the police jurisdiction that serves a Place, different types of crime records may be available. Historically, the most common type of crime record used in a crime analysis was Calls for Service. In the present day, however, an increasing number of law enforcement agencies are able to provide Offense/Incident Data. Calls for Service information is typically maintained in Computer Aided Dispatch (CAD) systems by address (Place). Calls for Service generally fall into three categories:

1. Calls made to the 9-1-1 emergency system;
2. Calls made to non-emergency phone numbers (local police dispatch number); and
3. Officer-initiated calls.

Calls for Service consist of every report of crime, suspected crime, and activity called in to the police from a Place. Calls for Service may also include other incidents such as missing children, motor vehicle accidents, noise disturbances, and parking complaints.

It is important to note that the accuracy of Calls for Service vary by police jurisdiction. Changes to incident management and dispatch systems may also impact accuracy even

---

[74] International Association of Crime Analysts (2009).  Exploring Crime Analysis, Second Edition. Overland Park:  International Association of Crime Analysts.

[75] Police Executive Research Forum

[76] Vellani, Karim H. and Joel D. Nahoun (2001).  Applied Crime Analysis.  Woburn:  Butterworth-Heinemann.

[77] Sherman, Lawrence W. (1989). Violent Stranger Crime at a Large Hotel: A Case Study in Risk Assessment. Security Journal 1:40-46.



within the same jurisdiction. When assessing crime risk, Calls for Service should **not** be used alone and when better information (offense/incident data and offense/incident reports) is available, Calls for Service have little value. Offense/Incident Reports are necessary to validate the Calls for Service, specifically the crime type, crime location, and whether a crime actually occurred. Calls for Service alone, in many jurisdictions, are insufficient for these three elements.[78][79]

In this matter, there is evidence that the DeKalb County Police Department identified the United Inn and Suites as a property with a high crime rate in 2020, after the subject incident(s).[80] The methodology used to identify United Inn and Suites as a property with a high crime rate is not specified. Further, there is no evidence that the DeKalb County Police Department shared their analysis with the United Inn and Suites, increased their enforcement efforts, engaged the United Inn and Suites to assist, or offered recommendations to the United Inn and Suites.

**Analysis of Crime at The United Inn and Suites**
In accordance with the *Forensic Methodology*, and using the techniques described above, the DeKalb County Police Department (DCPD) Offense/Incident data and Offense/Incident Reports were used to assess the general crime threat at the United Inn and Suites and specifically the threat of sex trafficking at the United Inn and Suites.

JG was trafficked at United Inn and Suites between October 7 or 8, 2018 and January 2019 (approximate dates). As such, the operative time period for the crime analysis is January 1, 2014 to January 31, 2019.

Appendix C is the Crime Risk Analysis.  Specifically, this Appendix provides the details for all crimes which occurred at United Inn and Suites during the relevant time period. Notably, there were no prior instances of sex trafficking reported in the DeKalb County Police Department crime records. Other noteworthy crimes include:

- Several aggravated assaults, all of which were non-stranger and most of which occurred inside a guest room

- Three instances of prostitution, all of which occurred inside a guest room with arrests resulting from a sting operation conducted by law enforcement

---

[78] Vellani, Karim H. and Joel D. Nahoun (2001). Applied Crime Analysis. Woburn:  Butterworth-Heinemann

[79] Vellani, Karim H. (2021).  Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime. Sugar Land, TX: Threat Analysis Group, LLC.

[80] Depositions of Tahir Shareef, 2/22/23 and 5/2/23, Exhibit 7



- Four (4) rapes which occurred inside a guest room or in an unknown location

- A non-stranger murder which occurred outside

- Five robberies, one of which was a robbery of the hotel's cash register and four of which were robberies of people

**Inherent Threats**

The analysis I conducted included the assessment of inherent threats as required by the *Forensic Methodology*. Inherent threats consider "the crime risk at the subject property as determined by the expert based on the property's characteristics, the expert's research and/or experience in similar environments, information gathered through the discovery process, and/or a site inspection (if conducted)." To the extent that hotels provide guest rooms and privacy within the guest rooms, sex trafficking could be considered an inherent threat, though the dearth of prevalence data described above tempers the concern.

**Awareness**

There is no evidence in this matter that United Inn and Suites financially benefited, knowingly or otherwise, from sex trafficking on the property, or helped facilitate sex trafficking, or were traffickers themselves.[81] [82] [83] [84]

United Inn and Suites was not aware of pimps overseeing prostitutes at the property or any prostitution at United Inn and Suites from 2017 to 2019. The United Inn and Suites owner acknowledges that the property is in a "pretty high crime area." However, there is no evidence in this matter that a pattern of prostitution, kidnapping, or rape was observable to United Inn and Suites staff. There is evidence that DeKalb County Division of Family and Children Services (DFCS), United Way, Salvation Army, churches, and other charitable organizations housed people at the United Inn and Suites.[85] [86] [87]

Staff that enter guest rooms (e.g. housekeeping) are required to report suspicious items or activity in a guest room to the front desk. Management then checks the situation and, if circumstances warrant, will call the DeKalb County Police Department. Common issues

---

[81] de Vries I., Jose M.A., Farrell A. (2020) It's Your Business: The Role of the Private Sector in Human Trafficking. In: Winterdyk J., Jones J. (eds) The Palgrave International Handbook of Human Trafficking. Palgrave Macmillan, Cham

[82] Interview of Tahir Shareef, May 25, 2023

[83] Affidavit of Detective Royal Weber

[84] Affidavit of Sgt. Willie McClelland

[85] NBI003922-003923 and others

[86] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[87] Depositions of Ashar Islam, 2/22/23 and 5/2/23



reported by housekeeping include too many people in the guest room or a room that is unreasonably dirty. Staff do not refer to guests as prostitutes if they don't know that the person is a prostitute. Staff have assisted guests who were victims of domestic violence.[88] There is no evidence in this matter that United Inn and Suites staff were aware of and ignored JG's need for help.

## Code Violations

The Owner of United Inn and Suites testified that there is a relationship between code compliance and crime.[89] However, code violations are <u>not</u> predictive of crime. For example, in Los Angeles, New York, and Seattle, a 1% increase in code enforcement citations is associated with a 0.1% to 0.6% decrease in violent crime; the magnitude is less than 0.1% in Chicago, Philadelphia, and San Antonio but still statistically significant.[90]

---

[88] Interview of Tahir Shareef, May 25, 2023

[89] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[90] Marie Skubak Tillyer, Arthur Acolin & Rebecca J. Walter (2022) Place-Based Improvements for Public Safety: Private Investment, Public Code Enforcement, and Changes in Crime at Microplaces across Six U.S. Cities, Justice Quarterly, DOI: 10.1080/07418825.2022.2127843



**SECURITY MEASURES**

Despite the increasing attention to sex trafficking, evidence-based research regarding the indicia of sex trafficking and efficacy of security measures to deter and prevent sex trafficking is limited.[91] [92] [93] [94] [95]

> *There is little in the way of robust, empirically tested best practice about how to counter specific forms of trafficking in specific contexts. The absence of a robust evidence base to inform policy and practice runs a risk of wasting resources on interventions that are well-intentioned but ineffective or, worse yet, actively detrimental. There is a clear need then for more evaluations, perhaps especially of interventions anecdotally considered good practice.*[96]

**General**

The owner is not aware of any employees that had a criminal background during the relevant time frame (2017 – 2018). United Inn and Suites conducted informal security risk assessments of the property which resulted in specific physical security measures and operational security controls identified in this report.[97] [98] [99] [100]

United Inn and Suites has written Management Policies which address security related issues including guest registration, parking, guest belongings, hazardous items, property

---

[91] Cockbain, E. (2018). Offender and Victim Networks in Human Trafficking. Abingdon. Routledge.

[92] de Vries I., Jose M.A., Farrell A. (2020) It's Your Business: The Role of the Private Sector in Human Trafficking. In: Winterdyk J., Jones J. (eds) The Palgrave International Handbook of Human Trafficking. Palgrave Macmillan, Cham

[93] Gerassi, L. B., Nichols, A. J., Cox, A., Goldberg, K. K., & Tang, C. (2021). Examining Commonly Reported Sex Trafficking Indicators From Practitioners' Perspectives: Findings From a Pilot Study. Journal of Interpersonal Violence, 36(11–12), NP6281–NP6303. https://doi.org/10.1177/0886260518812813

[94] Davy, D. (2016). Anti–Human Trafficking Interventions: How Do We Know if They Are Working? American Journal of Evaluation, 37(4), 486–504. https://doi.org/10.1177/1098214016630615

[95] Aronowitz, Alexis; Gerda Theuermann and Elena Tyurykanova (2010). Analysing the Business Model of Trafficking in Human Beings to Better Prevent the Crime. Office of the Special Representative and Coordinator for Combating Trafficking in Human Beings.

[96] Cockbain, E. (2018). Offender and Victim Networks in Human Trafficking. Abingdon. Routledge.

[97] Interview of Tahir Shareef, May 25, 2023

[98] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[99] Affidavit of Detective Royal Weber

[100] Affidavit of Sgt. Willie McClelland



damage, loitering, key control, and guest room entry. Additionally, United Inn and Suites has Rules of Conduct applicable to guests. Among the guest rules are the following:

- *Please do not break the law just as you cannot break the law in your own home or in public places.*

- *Do not do drugs or commit any other criminal act in the hotel room.*

Guests were informed of the Rules of Conduct upon check-in and the Rules of Conduct are provided to guests as part of their guest folio.[101]

Human trafficking signs were not installed on the property at the time of the Subject Incident.[102] At the time of the Subject Incident, signs were required by law.[103] United Inn and Suites received "missing persons" flyers or were asked by law enforcement if they had seen a missing person once every 2-3 months. United Inn and Suites posted "missing persons" flyers in the office for all employees to view them.[104] [105] [106] It is likely that Officers Weber and McClelland were alerted to missing persons in the area directly by their employer, DeKalb County Police Department.

**Training**

The owner of United Inn and Suites participated in training hosted by DeKalb County Tourism Department in 2013 or 2014. Speakers at the training included the Police Chief and other Police Officers and sex trafficking and prostitution were among the topics. The United Inn and Suites owner was trained to call the police for suspicious activity (e.g. people going in and out of rooms).[107] Subsequently, the owner of United Inn and Suites attended approximately two meetings with DeKalb County in 2017 or early 2018 regarding the DeKalb County Hotel Motel Extended Stay Ordinance. Topics during the training session included human trafficking.[108] [109] However, DeKalb County's Ordinance for hotels, enacted November 7, 2017, does not specifically address human trafficking.[110]

---

[101] Interview of Tahir Shareef, May 25, 2023

[102] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[103] Official Code of Georgia Annotated (OGCA) §16-5-47

[104] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[105] Interview of Tahir Shareef, May 25, 2023

[106] Depositions of Ashar Islam, 2/22/23 and 5/2/23

[107] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[108] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[109] Interview of Tahir Shareef, May 25, 2023

[110] Code of DeKalb County, Georgia, November 7, 2017



During the time period in question, DeKalb County did not have an ordinance which required lodging facilities to provide employees with training related to human and/or sex trafficking.[111] However, United Inn and Suites made a 4-page packet of human trafficking information available to staff.[112] The owner created the information packet so United Inn and Suites could try to prevent human trafficking and to identify victims. Staff was encouraged to review the information packet which was available in printed format and on the hotel office computer. The owner also spoken with staff about suspicious activity since he purchased United in and Suites and spoke with them specifically about human trafficking in 2018.[113] [114] [115]

While the United Inn and Suites provided human trafficking information to staff, there is no peer-reviewed research or evidence-based support regarding the efficacy of training currently suggested by the Blue Campaign, Polaris Project, ECPAT International, the American Hotel and Lodging Association (AHLA), or any other human trafficking training.[116]

**Guest Management**

As discussed above, guests were informed of the Rules of Conduct upon check-in and the Rules of Conduct are provided to guests as part of their guest folio. United Inn and Suites provides guest room access to those on the guest registry. When asked for a room key by someone not on the registry, hotel staff would confirm with a person on the registry if they could provide access. This was accomplished by calling the person on registry and asking if they can provide the person seeking access with a key. If the person on the registry says yes, they confirm the registered persons identify using the last 4-digits of their driver's license which is on the guest registry, and they obtain the registered person's phone number from the registry.[117] [118] This method is called 2-factor authentication. 2-factor authentication is better than 1-factor authentication.

One of purported indicators of prostitution is frequent exchanges of sheets and/or towels. United Inn and Suites did not have a firm policy on the number of extra sheets and towels that a guest can exchange. However, they did what was reasonable, with the

---

[111] https://www.dekalbcountyga.gov/

[112] Depositions of Tahir Shareef, 2/22/23 and 5/2/23, Exhibit 29

[113] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[114] Interview of Tahir Shareef, May 25, 2023

[115] Depositions of Ashar Islam, 2/22/23 and 5/2/23

[116] Quincy C. Miller, Kristina Todorovic, Christina O. Perez, Amy L. Capparelli & Kamala London (2021) Laypeople's Knowledge and Misconceptions of Sex Trafficking Influenced by Training Formats, Journal of Human Trafficking, DOI: 10.1080/23322705.2020.1865767

[117] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[118] Interview of Tahir Shareef, May 25, 2023



understanding that guests with small children may need extra sets of sheets and towels. The most the owner has observed a guest exchange sheets or towels is once. Another possible indicator is hourly rentals. United Inn and Suites did not charge for anything less than a full night. United Inn and Suites did not rent rooms to anyone under the age of 18. Guests were required to provide government issued identification to rent a room. United Inn and Suites accepted cash (USD) and credit cards as payment. Daily housekeeping is provided to guests who pay daily (e.g. hotel guests). Weekly housekeeping provided to guests who pay weekly (e.g. extended stay guests). United Inn and Suites had a protocol to inspect rooms every seven days. Guests who refuse inspections are denied the ability to extend their stay.[119] [120] [121]

**Physical Security**

United Inn and Suites had "No Loitering" signs installed around the exterior of the property and in the breezeways. United Inn and Suites had several methods for guests to communicate with staff. Guests could speak with staff at the front desk. Guests could call the front desk using phones which were installed in each guest room. Guests could call the front desk using personal cell phones. Staff were available to guests 24 hours a day, seven days per week. There is no evidence in this matter that the Plaintiff requested help via the available communication devices. Gates were not installed to prevent vehicular access to the United Inn and Suites as the parking lot is directly adjacent to the public street. Vehicle gates, if installed, would cause traffic on Memorial Drive or reduce the number of parking spots available. The exterior areas of the property were equipped with light fixtures. Lighting cannot be retrospectively measured to determine the illumination level at the time the Subject Incident occurred. On the exterior of the property, there are no features which present concealment opportunities other than structural barriers (e.g. the building itself). United Inn and Suites had a video surveillance system consisting of 36 cameras which provided views of the parking lot, exterior hallways, and lobby. The cameras could be monitored from the hotel office. Recording were motion-activated and storage capacity allowed for 15-20 days of historical video images.[122] [123] [124] [125] [126] [127]

---

[119] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[120] Interview of Tahir Shareef, May 25, 2023

[121] Depositions of Ashar Islam, 2/22/23 and 5/2/23

[122] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[123] Interview of Tahir Shareef, May 25, 2023

[124] Site Inspection, January 17, 2023

[125] Affidavit of Detective Royal Weber

[126] Affidavit of Sgt. Willie McClelland

[127] Depositions of Ashar Islam, 2/22/23 and 5/2/23



**Law Enforcement**

Based on guidance provided by the DeKalb County Police Department, United Inn and Suites called the Police Department when they needed assistance. The owner spoke with the DeKalb County Police Department 5-6 times regarding prostitution, but sex trafficking was never discussed. United Inn and Suites did not call the DeKalb County Police Department specifically for prostitution as they were unable to determine what activities were occurring inside guest rooms. However, they called the DeKalb County Police Department because there were too many people in a room and allowed the responding Police Officers to determine if there was criminal activity. On at least one occasion, this resulted in the arrest of a person for prostitution. One time, upon calling the DeKalb County Police Department to remove a homeless person, from the property, the responding Police Officer suggested that United Inn and Suites hire a Security Officer because the DeKalb County Police Department is too busy to deal with homeless issues. This suggestion was specifically to address the homeless issue. The Owner did not solicit any proposals from security contractors as a result of this suggestion but did receive an unsolicited proposal from a security contractor. It is unknown if this occurred before or after the Subject Incident.[128] [129] [130]

United Inn and Suites also cooperated with and assisted law enforcement agencies when asked. At times, federal and local law enforcement requested information (e.g. guest registry, videos, etc.) and access to guest rooms without requiring a warrant. The evidence in this matter indicates that United Inn and Suites assisted and cooperated. Exhibits 5 and 10 to the 5/2/23 Deposition of Tahir Shareef are indicative of their cooperation.[131] [132] [133]

Starting in 2007, the Owner of United Inn and Suites contracted with two DeKalb County Police Officers (Officer Weber and Officer McClelland) to work at the property. One of them was on duty at a time each night between approximately 2200 and 0200 hours. The Police Officer schedule was based on times of reduced hotel staffing at night and observations of the United Inn and Suites owner as to when people are hanging out, making noise, and listening to music. The Police Officer hours would change based on foot traffic in and around the hotel. The off-duty Police Officers were armed, wore their DeKalb County Police Department uniform, and sometimes the off-duty Police Officers were on-site with their marked DeKalb County Police Department patrol vehicle. Officers patrolled on foot and in vehicles. United Inn and Suites staff communicated with the off-

---

[128] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[129] Interview of Tahir Shareef, May 25, 2023

[130] Depositions of Ashar Islam, 2/22/23 and 5/2/23

[131] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[132] Interview of Tahir Shareef, May 25, 2023

[133] Depositions of Ashar Islam, 2/22/23 and 5/2/23



*J.G. vs. Northbrook Industries, Inc.*

duty Police Officers via text message, phone calls, and in person. Police Officers Weber and McClelland alerted United Inn and Suites when specific guest rooms had high traffic. When this occurred, United Inn and Suites staff would ask the guest to leave or be trespassed. The owner provided authority to Officers Weber and McClelland to trespass people from the property. United Inn and Suites also placed trespassed individuals on their internal Do Not Rent list, including those that were engaged in prostitution. Officers Weber and McClelland never observed any activity that indicated sex trafficking at United Inn and Suites.[134] [135] [136] [137] [138] [139]

"Even with a very high relative risk of crime, it is possible for security measures to be adequate and reasonable."[140]

---

[134] Depositions of Tahir Shareef, 2/22/23 and 5/2/23

[135] Interview of Tahir Shareef, May 25, 2023

[136] Affidavit of Detective Royal Weber

[137] Affidavit of Sgt. Willie McClelland

[138] Affidavit of Detective Royal Weber

[139] Affidavit of Sgt. Willie McClelland

[140] Sherman, Lawrence W. (1989). Violent Stranger Crime at a Large Hotel: A Case Study in Risk Assessment. Security Journal 1:40-46.



**OPINIONS**

My opinions relate to the risk of crime developed from evidence-based research and experience consulting with and for properties across the country. As a security consultant and crime analyst, I have spent over 28 years developing specialized knowledge regarding security and crime prevention. During that time, I have reviewed security guidelines, standards, best practices, and criminological research which informs my opinions and assists in my evaluation of crime risk at places similar to United Inn and Suites.

Using this specialized knowledge, I have written three books and numerous articles on crime analysis, security, and crime prevention and presented on these topics at industry conferences. I have also developed, in collaboration with other experts, security and crime prevention standards, guidelines, and best practices for three major security industry associations. I have chaired committees for security industry associations which developed evidence-based research regarding the efficacy of security measures in prevention violent, property, and disorder crime.  Please see my Curriculum Vitae (Appendix A) for specific details.

In arriving at my opinions in this case, I adhered to the consensus-based, published, and peer-reviewed *Forensic Methodology* (Appendix B) promulgated by the International Association of Professional Security Consultants (IAPSC).

For all the reasons set forth throughout this report, my opinions with respect to this matter are as follows:

1.  The security measures in place at the United Inn and Suites were adequate in light of the crime risk.  The United Inn and Suites had a reasonable security program, consisting of a multi-pronged approach to mitigating risk.  Defendants met the applicable standard of care relating to security.



**PUBLICATIONS**

Army, Christine, & Vellani, Karim H. (2023). Risky Behaviors and Violent Victimization (EBSP-23-01). Evidence-Based Security Practices, International Association of Professional Security Consultants.

Vellani, Karim H., & Kristof, Tina S. (2022). "Security's Critical Role In Combating Sex Trafficking." Journal of Healthcare Protection Management, Volume 76, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2021). Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime. Sugar Land, TX: Threat Analysis Group, LLC.

Vellani, Karim H. (2021). "Mitigating Security Risks with Evidence-Based Research." Hospital Association of Southern California, November 3, 2021.

Army, Christine, & Vellani, Karim H. (2021). Violent Crime Typology and Continuum. CrimRxiv. https://doi.org/10.21428/cb6ab371.71ec923d

Vellani, Karim H., & Kristof, Tina S. (2021). Identifying and Responding to Sex Trafficking Victims in Healthcare Environments. CrimRxiv. https://doi.org/10.21428/cb6ab371.84ddfc71

Vellani, Karim H. and Tina S. Kristof (2021). "Results of the 2020 Healthcare Crime Survey." Journal of Healthcare Protection Management, Volume 36, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H.; Bryan Warren; Jeff Young (2020). "The Impact of COVID-19 on Healthcare Facilities." International Association of Healthcare Security and Safety, October 28, 2020.

Pompeii, Lisa, Elisa Benavides, Oana Pop, Yuliana Rojas, Robert Emery, George Delcos, Christine Markham, Abiodun Oluyomi, Karim Vellani, Ned Levine (2020). Workplace Violence in Outpatient Physician Clinics: A Systematic Review. International Journal of Environmental Research and Public Health, 17, 6587.

Vellani, Karim H. (2020). "Impressing Your Boss: Using the IAHSS Foundation's Crime Survey and Other Foundation Research to Improve Your Program." International Association of Healthcare Security and Safety, Virtual Conference, September 1, 2020.

Vellani, Karim H. (2020). "2020 Healthcare Crime Survey." International Healthcare Security and Safety Foundation.



Vellani, Karim H. (2019).  Strategic Security Management:  A Risk Assessment Guide for Decision Makers, Second Edition.  Boca Raton, FL: Taylor & Francis CRC Press.

Vellani, Karim H. (2019).  "Evidence, Anecdotes, and Actions:  A Summary of the 2019 Healthcare Crime Survey and other IAHSS Foundation Research." Journal of Healthcare Protection Management, Volume 35, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2019).  "2019 Healthcare Crime Survey."  International Association of Healthcare Security and Safety, Orlando, FL, May 21, 2019.

Vellani, Karim H. (2019).  "How Many Security Officers Do You Need? An Evidence-based Approach to Determining the Industry Average Number of Hospital Security Officers."  International Association of Healthcare Security and Safety, Orlando, FL, May 20, 2019.

Vellani, Karim H., Michael S. D'Angelo and Ken Wheatley (2019).  "Vetting Clients:  From First Call Through Final Report." 35th Annual Conference, Miami, FL, International Association of Professional Security Consultants, May 5, 2019.

Vellani, Karim H. (2019).  "2019 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H., Robert J. Emery, Sadie H. Conway, and Lisa A. Pompeii (2019).  "A Refined Model for Estimating the Industry-Average Number of Security Staff for Hospitals." Journal of Healthcare Protection Management, Volume 35, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2018).  "Threat Assessment in the Private Sector: Application of the IAPSC Forensic Methodology Threat Assessment Section Outside of Litigation." 34th Annual Conference, San Diego, California, International Association of Professional Security Consultants, April 30, 2018.

Vellani, Karim H. (2017).  "Violence Against Healthcare Workers:  Persistent Trends and Appropriate Responses."  Journal of Healthcare Protection Management, Volume 32, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2017).  "2017 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H. (2016).  "The Battle against Violence in U.S. Hospitals."  Journal of Healthcare Protection Management, Volume 32, Number 2, International Association for Healthcare Security & Safety.



Vellani, Karim H. (2016).  "2016 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H. (2015).  "Arming Security Officers" (Panelist).  International Association of Healthcare Security and Safety, Houston, Texas, November 13, 2015.

Vellani, Karim H. (2015).  "Statistics as a Security Management Tool" in Charles A. Sennewald's Effective Security Management, 6th Edition.  Woburn:  Elsevier.

Vellani, Karim H. (2015).  "Workplace Violence." Greater Houston Industrial Hygiene Council, Houston, TX, June 18, 2015.

Vellani, Karim H. (2015).  "Security Risk Assessments." Greater Houston Industrial Hygiene Council, Houston, TX, June 18, 2015.

Vellani, Karim H. (2015).  "2015 Healthcare Crime Survey."  International Association of Healthcare Security and Safety, St. Louis, MO, May 5, 2015.

Vellani, Karim H. (2015).  "2015 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H., Robert J. Emery, and Jennifer M. Reingle Gonzalez (2015).  "A Data-Driven Model for Estimating Industry Average Numbers of Hospital Security Staff." Journal of Healthcare Protection Management, Volume 31, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2015).  Foreword to Michael S. D'Angelo's From Police to Security Professional: A Guide to a Successful Career Transition.  Boca Raton:  CRC Press.

Vellani, Karim H. (2014).  "Reducing Violence in Healthcare Facilities."  International Association of Healthcare Security and Safety, Houston, Texas, July 19, 2014.

Vellani, Karim H. (2014).  "2014 Healthcare Crime Survey."  International Association of Healthcare Security and Safety, San Diego, CA, May 20, 2014.

Vellani, Karim H. (2014).  "2014 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H. (2014).  "Reducing Violence in Healthcare Facilities."  Journal of Healthcare Protection Management, Volume 30, Number 1, International Association for Healthcare Security & Safety.



Vellani, Karim H. (2013).  "The Business Plan and Successful Security Partnering" Successful Security Consulting Seminar, International Association of Professional Security Consultants and ASIS - International.  Chicago, IL, September 23, 2013.

Vellani, Karim H. (2012).  "The Need for Effective Consulting Websites" in Charles A. Sennewald's Security Consulting, 4th Edition.  Woburn:  Elsevier.

Vellani, Karim H. (2012).  "Security Staffing:  Madness to Methods to Outcomes." International Association of Healthcare Security and Safety, Houston, Texas, October 12, 2012.

Vellani, Karim H., Norman Bates, and Steve Kaufer (2012).  "Security 2012 – The Latest Trends in Crime Analysis, Security Technology and Management Practices for Inadequate Security Litigators."  National Crime Victim Bar Association, New Orleans, LA, September 21, 2012.

Vellani, Karim H., Robert J. Emery, and Nathan Parker (2012).  "Staffing Benchmarks: How Many Security Officers are Enough?"   Journal of Healthcare Protection Management, Volume 28, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2011).  "Using Crime Analysis to Solve Problems in 15 Small Steps." Journal of Healthcare Protection Management, Volume 27, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2011).  "Crime Analysis:  A Framework for Optimizing Security." International Association of Healthcare Security and Safety, Toronto, Ontario, May 24, 2011.

Vellani, Karim H. (2011).  "Statistics as a Security Management Tool" in Charles A. Sennewald's Effective Security Management, 5th Edition.  Woburn:  Butterworth-Heinemann.

Vellani, Karim H. with Brian Gouin (2010).   "Security Risk Assessments in the Environment of Care."  American Society of Healthcare Risk Management, Tampa, FL, October 15, 2010.

Vellani, Karim H. (2010).  "The Business Plan and Successful Security Partnering" Successful Security Consulting Seminar, International Association of Professional Security Consultants and ASIS - International.  Dallas, TX, October 11, 2010.

Vellani, Karim H. (2010).  "Security Risk Assessments."  Texas Regional Conference, The Woodlands, Texas, International Association of Professional Security Consultants, September 15, 2010.



Vellani, Karim H. (2010) "Crime Analysis for Problem Solving Security Professionals in 25 Small Steps."   Karim H. Vellani.   [Center for Problem Oriented Policing www.popcenter.org].

Vellani, Karim H. (2010).  "Crime Analysis:  Assessing Threats to Optimize Security."  Threat Analysis Group, LLC.  Available via Amazon.com.

Vellani, Karim H. (2010).  "Crime Analysis:  Optimizing Security in Healthcare Facilities."  International Association of Healthcare Security and Safety, Houston, Texas, May 21, 2010.

Vellani, Karim H. (2010).  "Crime Analysis:  A Framework for Optimizing Security and Assessing Foreseeability."  26th Annual Conference, Savannah, Georgia, International Association of Professional Security Consultants, April 26, 2010.

Vellani, Karim H. (2009).  "Security Risk Assessments."  Security 101 for Health and Safety Professionals, Southwest Center for Occupational & Environmental Health, School of Public Health, University of Texas, October 29, 2009.

Vellani, Karim H. (2009).  "The Business Plan and Successful Security Partnering" Successful Security Consulting Seminar, International Association of Professional Security Consultants and ASIS - International.  Anaheim, CA, September 20, 2009; Dallas, TX, October 11, 2010; Orlando, FL, September 18, 2011.

Vellani, Karim H. (2009).  "Security Risk Assessments."  Healthcare Security:  Basic Industry Guidelines, January 2009, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2008).  "Data Driven Security."  Security Solutions Series, Threat Analysis Group, LLC.

Vellani, Karim H. (2008).  "Risk Assessments in the Environment of Care."  Wisconsin Healthcare Engineering Association, October 29, 2008.

Vellani, Karim H. (2008).  "The Uniform Crime Reporting System" in Charles A. Sennewald and John H. Christman's Retail Crime, Security, and Loss Prevention:  An Encyclopedic Reference.  Woburn:  Butterworth-Heinemann.

Vellani, Karim H. (2008).  "Threat Assessment in the Retail Environment" in Charles A. Sennewald and John H. Christman's Retail Crime, Security, and Loss Prevention:  An Encyclopedic Reference.  Woburn:  Butterworth-Heinemann.



Vellani, Karim H. (2007). "Security Risk Assessments." Security 101 for Health and Safety Professionals, Southwest Center for Occupational & Environmental Health, School of Public Health, University of Texas, November 14, 2007.

Vellani, Karim H. and Robert E. Owles (2007). "Vulnerability and Risk Assessments in the Environment of Care." Journal of Healthcare Protection Management, Volume 24, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2007). Foreword to Brian Gouin's Physical Security Consulting. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2007). "The Gentle Art of Threat Assessment." Journal of Healthcare Protection Management, Volume 23, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2006). "Crime Analysis" in John J. Fay's Encyclopedia of Security Management: Techniques and Technology, 2nd Edition. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2006). "Security Risk Assessments in the Environment of Care." International Association of Healthcare Security and Safety, Houston, Texas, May 21, 2010.

Vellani, Karim H. (2006). Strategic Security Management: A Risk Assessment Guide for Decision Makers. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2006). "Strategic Security Management: Risk Assessments in the Environment of Care." Journal of Healthcare Protection Management, Volume 22, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2005). "Certified Security Consultant." Successful Security Consulting Seminar, International Association of Professional Security Consultants. Orlando, FL, September 10, 2005.

Vellani, Karim H. (2005). "Crime and Foreseeability Analysis." The Sentry. American Society for Industrial Security - International: Houston Chapter. June, 2005.

Vellani, Karim H. (2004). "Crime and Foreseeability Analysis." The Independent Security Consultant. International Association of Professional Security Consultants. Fall, 2004.

Vellani, Karim H. and Charles A. Sennewald (2004). Consultants as a Protection Resource, Protection of Assets Manual. Alexandria: ASIS International.



Vellani, Karim H. (2004). "The Business Plan." Successful Security Consulting Seminar, International Association of Professional Security Consultants. Dallas, TX, September 25, 2004; Carefree, AZ, May 7, 2006; San Diego, CA, September 24, 2006.

Vellani, Karim H. (2004). "Writing Effective Proposals" International Association of Professional Security Consultants. Newport Beach, CA, April 27, 2004.

Vellani, Karim H. (2004). "Boosting Performance and Morale." Security Business Practices Reference, Volume 6, ASIS Council on Business Practices, ASIS International.

Vellani, Karim H. (2004). "Achieving Return on Investment from Crime Analysis." Security Business Practices Reference, Volume 6, ASIS Council on Business Practices, ASIS International.

Vellani, Karim H. (2003). "Security Solutions for Strip Shopping Centers." Security Solutions Series, Threat Analysis Group, LLC, 2003.

Vellani, Karim H. (2003). "Security Solutions for Grocery Stores." Security Solutions Series, Threat Analysis Group, LLC, 2003.

Vellani, Karim H. and Mark Batterson (2003). "Security Solutions for Banks." Security Solutions Series, Threat Analysis Group, LLC, 2003.

Vellani, Karim H. (2003). "Statistics as a Security Management Tool" in Charles A. Sennewald's Effective Security Management, 4th Edition. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2002). "Crime Analysis: The First Step in Creating an Effective Crime Prevention Program." Security Business Practices Reference, Volume 5, ASIS Council on Business Practices, ASIS International.

Vellani, Karim H. (2002). "Crime Analysis in the Medical Environment." Workplace Safety Seminar, School of Public Health, University of Texas Health Science Center, December 2, 2002.

Vellani, Karim H. (2002). "Risk Analysis" University of Houston - Downtown. CJ 5360: Security and Crisis Management: Theories and Practices, April 8, 2002.

Vellani, Karim H. (2002). "Crime Analysis Literature: What We Have and Where We Are Going." Forecaster, International Association of Crime Analysts, Spring 2002.

Vellani, Karim H. (2001). "Rape Zones: Are Some Neighborhoods More Prone To Sexual Assault?" KHOU 11, Houston, Texas. Aired November 25, 2001.



Vellani, Karim H. (2001). "Crime Analysis: The First Step in Creating an Effective Crime Prevention Program." 47th Annual Seminar & Exhibit, San Antonio, Texas, American Society for Industrial Security, October 1, 2001.

Vellani, Karim H. (2001). "Don't Let Your Guard Down." Security Management, American Society for Industrial Security, October 2001. Edited extensively by Security Management editors.

Vellani, Karim H. (March 29, 2000). "Convenience Store Security." Presented to Pakistan Association of Greater Houston (PAGH).

Vellani, Karim H. and Joel D. Nahoun (2001). Applied Crime Analysis. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2000). "Security + Service = Satisfaction: The Perks of Private Security." Journal of Property Management, Institute of Real Estate Management, May/June 2000.

Vellani, Karim H. (1999). "Crime Stoppers." Journal of Property Management, Institute of Real Estate Management, September/October 1999.

Vellani, Karim H. (1998). "Management Ideas for Preventing Crime: An Analysis of Liability, Site-Specific Crime Prevention, Crime Prevention Through Environmental Design, and Violence Escalation." Sam Houston State University, Huntsville, Texas.



**TESTIMONIAL HISTORY**

I testified by deposition or in trial in the following matters during the past four years:

Cause No. 17CY-CV04288; Janet Wilson, Plaintiffs vs. Stephon A. Sanders, Esteban Montes, F.I.N.S.S. Associates, L.P. d/b/a Vivion Oak Apartments, N.F.I. Apartment Management LLC, Defendants; In the Circuit Court of Clay County, Missouri at Liberty
July 20, 2019

Civil Action File No. 18C04723-1; Michael Smith as Successor Conservator of Desmond Riddle, Jacorion Riddle, Bianca Jordan, Ebonie Riddle and Ashley Riddle, the Surviving Minor Children of Stephanie Riddle, Deceased, Plaintiffs vs. Parks Hotel & Resorts, Inc. f/k/a Hilton Worldwide, Inc. d/b/a Hilton Atlanta Airport and John Does 1-10, Defendants; In the State Court of Gwinnett County, State of Georgia
September 19, 2019

Civil Action No. 16A59864; Kendra Mallard, Plaintiff vs. Metropolitan Atlanta Rapid Transit Authority, DeAngelo Jawaun Bryant, and Khary Scipio, Defendants; In the State Court of DeKalb County, State of Georgia
October 4, 2019

No. B-196,973; Christian Cane, Plaintiff vs. Amy Investments d/b/a Triangle Market, Defendants; In the District Court of Jefferson County, Texas, 60th Judicial District
October 31, 2019

Civil Action File No. 2018CV01532; Dreyson Stadterman, Plaintiff vs. Southwood Realty Company; Walden by Triangle Real Estate, LLC; and Keita Bennett, Defendants; In the State Court of Clayton County, State of Georgia
November 26, 2019

Civil Action No. 2018CV01674; Jessica Spears, Plaintiff vs. First Communities Management, Inc., Averly Holdings, LLC, and John Does Nos. 1-5, Defendants; In the State Court of Clayton County, State of Georgia
February 13, 2020

Cause No. 2018-CI22280; Aimee Murphy, Individually and as Legal Heir of the Estate of Jonathan Murphy, Deceased, Plaintiff vs. Jason Matthew Prieto, Jose Luis Rojas and Ryan Brockett, Defendants; In the District Court of Bexar County, Texas, 166th Judicial District
February 28, 2020

Cause No. 471-00022-2019; Marie Johnson and Joshua Johnson v. American Multi-Cinema, Inc., Stonebriar Mall, LLC. d/b/a Stonebriar Centre, Brookfield Property REIT



Inc. f/k/a GGP Real Estate, and Universal Protection Services, LLC d/b/a Allied Universal; In the District Court 471st Judicial District Collin County, Texas
April 27, 2020

Civil Action No. 17A66840; Jose Ricardo Marquez and Lazaro Fuentes, Plaintiffs vs. FV Apts LLC, CF Real Estate Services LLC, CF Real Estate Services Manager LLC, CF Property Management LLC, Trantor Property Management, LLC, Trantor Management, Inc., Trantor Realty, LLC, Trantor Realty, Inc., Forest Vale Apartments, and John Does 1-5, Defendants; In the State Court of DeKalb County, State of Georgia
June 9, 2020

No. 2017 L 11405; Karin Carlson and Grant Maddox, Plaintiffs vs. Going Places, LLC; Dearborn Street Building Associates, LLC; PBBS, INC.; PMD Realty, LLC; PMD Builds, LLC, and Astor Street Partners, LLC, Defendants; In the Circuit Court of Cook County, Illinois, County Department - Law Division
December 10, 2020

Civil Action File No. 18EV002664; Rogelio Monroy Mayorga, Plaintiff vs. The Fulton-DeKalb Hospital Authority, Grady Memorial Hospital Corporation, and John Does Nos. 1-5, Defendants; In the State Court of Fulton County, State of Georgia
January 12, 2021

Civil Suite No. 263,393; Ali Kazan and Ebony Medlin, Individually and on Behalf of their Daughter, Lia Kazan, deceased, Plaintiffs vs. Red Lion Hotels Corporation, Red Lion Hotels Franchising, Inc., Vantage Hospitality Group, Inc., Om Ganesh, LLC, Ketan Patel, and Vitthal, LLC, Defendants; In the 9th Judicial District Court, Parish of Rapides, State of Louisiana
June 22, 2021

Civil Action File No. 20A82018; Latwenita Gay, on behalf of the Estate of Antoine Neville, and on behalf of Ariana Stephens, Antonio Neville, Jr., Giovanni Neville, Elijah Jews, Ayden Jews, and Demi Y'lani Perry, the minor children of Antonio Neville, Plaintiffs vs. Shaw Hospitality, LLC d/b/a/ Gulf America Inn a/k/a Gulf American Inns, Quintavus Williams, a/k/a Quintavius Williams, a/k/a Quintavus Fred Williams, a/k/a Quintavius Fred Williams, a/k/a Fred Williams, a/k/a Mario Teasley, Brandisha Williams, and John Does 1-10, Defendants; In the State Court of DeKalb County, State of Georgia
July 28, 2021

Case No. 1:20-Cv-03129-Ca; Mildred Collins-Williams as Administrator of the Estate of Tijuana Frazier and as Guardian and Next Friend of Quanisha Holt, a Minor, and Pebbles McClain as Guardian and Next Friend of Julian Frazier and Isaiah Frazier, Plaintiffs vs. Contour Eastwyck, LLC, Defendant; In the United States District Court for the Northern District of Georgia, Atlanta Division
August 5, 2021



CAFN: 18CV01884JFL003; Sherry K. Watrous and Jay Watrous v. River Root Partners, LLC, and River Root Partners II, LLC, and River Root Investors, LLC, The Kroger Co., R.H. Ledbetter Properties, Inc., RHLP, LLC, dlb/a R.H. Ledbetter Properties, LLC, Frontline Defense Protection Services, LLC, and John/Jane Does 1-3 Floyd County Superior Court, State of Georgia
August 25, 2021

Civil Action No. 20EV002147; Tynesha Bostick, as next friend and surviving parent of Malik Werts, deceased, and John Doe, as the administrator of the estate of Malik Werts, deceased, Plaintiffs vs. MSC Fields Peachtree Retreat, LL, MSC Investment and Management, LLC, MSC Properties, LLC and John Does # 1-3, Defendants; In the State Court of Fulton County, State of Georgia
September 21, 2021

Cause No. 2019C123891; Ildefonsa Hernandez, Individually and as Next Friend of Sergio Hernandez, Jasmine Hernandez, Danielle Hernandez, Minors, Plaintiff vs. Monica Ray Silva, and Jocob Engelbrecht, and Judith Deramus, and Express Care Ambulance Services, Defendants; In the District Court of the 131st Judicial District, Bexar County, Texas
September 23, 2021

Civil Action No. 20-A-301; Smith, Dawn C. Smith and Brad S., Smith, Plaintiffs vs. Six Flags Over Georgia, LLC, Six Flags Over Georgia, LTD (L.P.), Six Flags Over Georgia II, LP, Six Flags Over Georgia, Inc., Six Flags Fund, LTD, LP, SFOG II, Inc., SFG-I, LLC, SFG-II, LLC, and John Does Nos. 1-5, Defendants; In the State Court of Cobb County, State of Georgia
January 6, 2022

Andrea Chamblee, Personally and as the Personal Representative of the Estate Of John P. McNamara, et al / Beth Rittenour, et al v. The Baltimore Sun Company, LLC, et al / Bestgate Corporate Center, LLC, et al., No's. C-02-CV-21-000820 & C-02-CV-21-000823
January 14, 2022

Civil Action File No. SU20CV0185; Lashanda Callaway, Plaintiff and Justyn Aikens, Plaintiff vs. Clarke Gardens Apartments; Ashton Clarke, LP; Ambling Management Co. LLC; and John Doe Defendants A through H, Defendants; In the Superior Court of Clarke County, State of Georgia
March 29, 2022

Cause No. CC-19-03831-D; Jessica Hill as Next Friend of HVH, SMH, JRH, and KPH, Minor Children, Priscilla Escobedo-Hill, Individually, and as Next Friend of KMH, a Minor and Romeo Hill, Individually, Plaintiffs vs. RCI Hospitality Holdings, Inc., d/b/a XTC Dallas



Cabaret, Front-Line Protective Services, Eric Hansen, And Daterrious Haggard, Defendants; In the County Court at Law No. 4 of Dallas County, Texas
March 31, 2022

No. 2017 L 11405; Karin Carlson and Grant Maddox, Plaintiffs vs. Going Places, LLC; Dearborn Street Building Associates, LLC; PBBS, INC.; PMD Realty, LLC; PMD Builds, LLC, and Astor Street Partners, LLC, Defendants; In the Circuit Court of Cook County, Illinois, County Department - Law Division
April 6, 2022 (Trial Testimony)

Civil Action File No. 2020RCCV00531; Aubrey Adams-Knowlden, Plaintiff vs. August Mall, LLC; Amy Dalton; Andy Frain Services, Inc. and John Does 1-20, Defendant(s); In the Superior Court of Richmond County, State of Georgia
June 9, 2022

Case No. 2021-007809-CA-01; Ronald Walker, as Personal Representative of the Estate of Devan Walker, deceased, Plaintiff vs. Pink Pressure, Inc. and Marlin Road Partners, LLC, Defendants; In the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, Circuit Court Civil Division
June 29, 2022

Cause No. 2019-43473; Christopher Esquivel and Maria Maya, Individually and as Representatives of the Estate of Ramon Esquivel (Deceased), Plaintiffs vs. KVA Investments, LLC d/b/a Bristol Court Apartments, and Falcon Security, Inc., Defendants; In the 269th District Court, Judicial District Court, Harris County, Texas
July 15, 2022

Case No. 2021-00-3836-CA-01; Barbara Smith, as Personal Representative of the Estate of Gregory Smith, Jr., Plaintiff vs. Providence 72 LLC, the Lopez Companies, Inc., & John Doe, Defendants; In the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Civil Division
August 29, 2022

Cause No. 2019-04407; Juan Ramos Cantu vs. Village Real Property, Inc.; In the District Court of Harris County, Texas; 80th Judicial District
September 30, 2022

Civil Action No. STCV19-01893; Tonya Sills, Plaintiff vs. New Millennium Smiles, LLC d/b/a Savannah Smiles Dueling Pianos, Defendant; In the State Court of Chatham County, State of Georgia
November 14, 2022

Case No. 21-018455; Shanika Williams, Plaintiff vs. Venice Partners, LTD., a Florida Corporation, Southport Financial Services, Inc., a Foreign Corporation, and Cambridge



Management of Washington, Inc. a Foreign Corporation, Defendants; In the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida
November 16, 2022

Caroline Bradley, Plaintiff vs. Golden Pantry Food Stores, Inc., Eric Mitchell, and John Does 1 and 2, Defendants; In the State Court of Clarke County, State of Georgia
December 1, 2022

Case No. A-20-812202-C, Dept. No. IV; Glenn Bension, Administrator of the Estate of Jamie Arnold, Deceased; and Shirley Arnold, and Heir to the Estate of Jamie Arnold, Deceased, Plaintiffs vs. Alhambra Place Partnership, LP, Advanced Management Group Nevada, LLC, Reliance Security, Inc., Defendants; In the District Court, Clark County, Nevada
December 5, 2022

Cause No. 2021-23853; Ricci Simmons, Jr., Plaintiff vs. Crysnick Entertainment, LLC d/b/a Bar 2200, Boniuk Interests, Ltd., Mila Properties, Inc., Crystal D. Henderson, and G4S Secure Solutions (USA), Inc., Defendants; In the District Court, Harris County, Texas, 281st Judicial District
December 14, 2022

Cause No. 2021-37331; Reta L. Hutchins, Individually and as Estate Representative for Decedent, Marquise Hutchins, and Traivion Moore, Plaintiffs vs. 7-Eleven Inc., ANR Corporation, Defendants; In the District Court, Harris County, Texas, 11th Judicial District
March 2, 2023

Civil Action File No. 2022V-0023SFW; Tamekia Arnold, as Legal Guardian and Next Friend of Kentavious Gordon; and Tamekia Arnold, as the Administrator of the Estate of Louis Tramaine Gordon, Deceased, Plaintiffs vs. Falguni Patel, Defendant; In the Superior Court of Bleckley County, State of Georgia
March 24, 2023

Cause No. D-1-GN-20-000667; Roel Zamora, Plaintiff vs. TP Franchise Austin, LLC; TP Franchise Venture I, LP; TP Franchise Venture I, LLC; TP Texas Beverages, LLC; Twin Restaurant Management, LLC; Front Burner Restaurants GP, LLC; and Front Burner Restaurants, LP, Defendants; In the District Court, 419th Judicial District, Travis County, Texas
April 14, 2023

No. 2022CV363118; Graham vs.  VCP Hammond, LLC; In the State Court of Fulton County, Georgia
April 20, 2023



Civil Action File No. 2021RCCV00575; Traci Boykin and Halma Boykin as surviving children of David Boykin, for themselves and Chrissy Ann Boykin, as administrator of the Estate of David Boykin, deceased, Plaintiffs vs. Brookside Properties, Inc. (Tennessee), d/b/a Peach Orchard Plaza, a foreign profit corporation, G4S Secure Solutions (USA) Inc., a foreign profit corporation, and Biotest Pharmaceuticals Corporation, a foreign profit corporation, Defendants; In the Superior Court of Richmond County, State of Georgia May 11, 2023

Carolyn Enzor, as Next friend of Kai Enzor and Karter Enzor and Julianne Glisson, Administrator of The Estate of Ka'la Enzor v. The Kroger Co.; In the United States District Court, Southern District of Georgia, Savannah Division, Civil Action No. CV422-083 June 14, 2023



**COMPENSATION**

My time is billed at $500 per hour.

--- End of Report ---

**This report may be supplemented as additional discovery is made available and other case activity is completed.**



## APPENDIX A:  Curriculum Vitae of Karim Vellani

**Professional Experience Summary**

Karim H. Vellani is the President of Threat Analysis Group, LLC, an independent security consulting firm.  Karim is Board Certified in Security Management (CPP), a Board-Certified Security Consultant (CSC), and has over 28 years of security management, crime analysis, and forensic security consulting experience.  He has a bachelor's degree in Criminal Justice with a specialization in Law Enforcement and a master's degree in Criminal Justice Management.  He is the author of three books, Applied Crime Analysis, Strategic Security Management, Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime, and has contributed to a number of other security related books and journals.  Karim serves on various research teams conducting evidence-based research on violent crime prevention, workplace violence, sex trafficking, and use of force.

As an independent security management consultant, Karim has been retained by Fortune 500 companies and government agencies.  He has extensive experience in risk management and security force protection and provides consultation on a regular basis at government, commercial, and residential facilities across the nation.  Karim has worked on projects ranging from data centers, hospitals and healthcare facilities, houses of worship, manufacturing facilities, financial institutions, retailer stores, shopping centers and malls, hotels and motels, office buildings, and residential housing (including Section 8).

For 11 years, Karim was responsible for managing the quality control/assurance function for United States Department of Homeland Security's (DHS) protection force at federal government buildings in 23 states including Mississippi, Alabama, West Virginia, California, Montana, North Dakota, South Dakota, Wyoming, Utah, Nevada, North Carolina, Tennessee, Arizona, Kentucky, Illinois, Washington, Idaho, Texas, Oklahoma, Florida, South Carolina, Rhode Island, and Massachusetts.

Karim specializes in crime analysis and security risk assessment and mitigation.  He developed a crime analysis methodology that utilizes the Federal Bureau of Investigation's (FBI) Uniform Crime Report coding system and a proprietary software application called CrimeAnalysis[TM].  The software allows end users to identify specific threats, select appropriate countermeasures, and reduce their risk.  The methodology was originally published in Applied Crime Analysis and evolved in Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime. Since developing the crime analysis methodology, Karim has assessed crime threats at thousands of facilities.  Karim has also developed a Security Risk Assessment Methodology for Healthcare Facilities and Hospitals.  In 2009, the International Association of Healthcare Security and Safety (IAHSS) published its *Security Risk Assessment* Guideline, which was authored by Karim at the request of IAHSS.  He was also a Technical Committee Member on the Risk Assessment Standard Development Committee for the American Society for Industrial Security - International (ASIS).



Karim also provides forensic security consulting services to insurance companies and the legal profession. In this work, Karim provides litigation support to attorney's and serves as an expert witness in security related lawsuits. As an Adjunct Professor at the University of Houston - Downtown, Karim taught graduate courses in Security Management and Risk Analysis for the College of Criminal Justice's Security Management Program. He has also trained Police and Security Officers in weapons and use of deadly force and profiling and assisted in the development of maritime security training curriculum compliant with ISPS Code and the United States Coast Guard under the Maritime Transportation Security Act. Karim instructs frequently for the International Association of Professional Security Consultants and ASIS-International.

Karim is a member of the International Association of Professional Security Consultants (IAPSC), ASIS-International, the American Society of Criminology (ASC), American Society of Evidence-Based Policing (ASEBP), the International Association of Crime Analysts (IACA), the International Association of Chiefs of Police (IACP), and the International Association for Healthcare Security & Safety (IAHSS). In the past, Karim served as President of the IAPSC, Director for the IAHSS Foundation and Chair of the Evidence-Based Research Committee. Currently, Karim serves on the IAPSC Forensic Committee and chairs the IAPSC's Evidence-Based Security Practices Committee.

**Current Employment**
*Threat Analysis Group, LLC*
President & Independent Security Consultant

- Provide project management services for security deployment, training, engineering and design, and assessments

- Provide security management consulting services including risk assessment methodology development and execution, threat assessments and crime analysis, vulnerability assessments and security surveys

- Provide forensic security consulting

- Develop and maintain CrimeAnalysis[TM] services and software to determine threat level at client facilities

**Past Employment**
*University of Houston – Downtown*
Adjunct Professor



- Taught graduate courses in Security Management and Risk Analysis for the Security Management Master's Program at the University's College of Criminal Justice.

*Texas One Security*
Operations Manager

- Managed over one hundred security officers and approximately 1400 guard hours at seventeen (17) client sites

- Responsibilities included hiring and training, deployment and scheduling, and conducting performance evaluations for the company's security force

- Ensured that the officer's and the company complied with Texas Private Security Bureau rules and regulations.

*Operational Support Services, Inc.*
Law Enforcement Advisor/Security Consultant

- Provided security consulting services to police departments, private security companies, insurance companies, federal and state government agencies, and the legal profession

- Responsibilities included analyzing client's risk by conducting threat and vulnerability assessments

*North Harris College*
Instructor

- Trained Police and Security Officers in firearms use

- Trained Security Officers on laws, including deadly force and profiling

*Roehling Corporate International Investigations, Inc.*
Private Investigator

- Provided investigative services to the legal profession, insurance companies, and private corporations

- Served on search team for Oklahoma escaped convict Randolph Franklin Dial

**Certifications & Licenses**
Board Certified Security Consultant (CSC)



International Association of Professional Security Consultants (IAPSC)

Board Certified in Security Management (CPP)
American Society for Industrial Security - International (ASIS)

Board Certified Protection Officer (CPO)
International Foundation for Protection Officers

Board Certified Police Firearms Instructor
National Rifle Association of America

**Education & Training**
Bachelor of Science, Criminal Justice (Specialization in Law Enforcement), Sam Houston State University, August 1994

Master of Science, Criminal Justice Management, Sam Houston State University, August 1998

Instructors Course, Texas Commission on Law Enforcement Standards and Education

Certified Protection Officer Course, International Foundation for Protection Officers

Certified Protection Professional Course, American Society for Industrial Security – International

Concealed Handgun Instructor Course, Texas Department of Public Safety

Gang Crimes, Montgomery County Sheriff's Department

Level One Training, Texas Private Security Bureau

Personal Protection and Home Safety Instructor Course, National Rifle Association of America

Pistol, Rifle and Shotgun Instructor Course, National Rifle Association of America

Police Firearms Instructor Course, National Rifle Association of America

Identifying and Managing Risky Facilities, International Association of Professional Security Consultants

An Analyst's Role in a Homicide Investigation, International Association of Crime Analysts



Identifying Crime and Crash Patterns, Analyst Mastermind Series, International Association of Directors of Law Enforcement

Criminal Profiling in Crime Analysis, International Association of Crime Analysts

**Professional Affiliations**
American Society of Criminology (ASC)

American Society of Evidence-Based Policing (ASEBP)

American Society for Industrial Security - International (ASIS)

International Association of Chiefs of Police (IACP)

International Association of Crime Analysts (IACA)

International Association for Healthcare Security & Safety (IAHSS)

International Association of Professional Security Consultants (IAPSC)

**Accomplishments**

Chair, Evidence-Based Security Practices Committee, 2022 - Present
International Association of Professional Security Consultants (IAPSC)

Member, Forensic Security Committee, 2004 – Present
International Association of Professional Security Consultants (IAPSC)

Chair, Evidence Based Research Committee, 2015 - 2020
International Association of Healthcare Security and Safety Foundation

Member, Board of Directors, 2013 – 2020
International Healthcare Security and Safety Foundation

Member, Use of Force Best Practice Committee, 2019 – 2020
International Association of Professional Security Consultants (IAPSC)

Technical Committee Member, Enterprise Security Risk Management (ESRM) Guideline, 2019 - 2020
American Society for Industrial Security - International (ASIS)



Technical Committee Member, Private Security Officer Selection and Training Guideline, 2017 - 2018
American Society for Industrial Security - International (ASIS)

Member, Security Metrics/Data Task Force, 2016-2019
International Association of Healthcare Security and Safety

Technical Committee Member, Private Security Officer (ANSI Standard), 2015 - 2017
American Society for Industrial Security - International (ASIS)

Member, Board of Directors, 2011 - 2015
International Association of Professional Security Consultants (IAPSC)

Technical Committee Member, Risk Assessment (ANSI Standard), 2013 - 2016
American Society for Industrial Security - International (ASIS)

Chairman, Council on Advocacy, 2011 - 2012
International Association for Healthcare Security & Safety (IAHSS)

Advisory Member, Security Lighting for People, Property, and Critical Infrastructure Guideline (G-1-16), 2011 – 2017
Illuminating Engineering Society of North America (IESNA)

Technical Committee Member, Private Security Company (ANSI Standard), 2012 - 2013
Maturity Model for the Phased Implementation of a Quality Assurance Management System for Private Security Service Providers (PSC.3) Standard
American Society for Industrial Security - International (ASIS)

Technical Committee Member, Private Security Company (ANSI Standard), 2011 - 2012
Conformity Assessment and Auditing Management System for Quality of Private Security Company Operations (PSC.2) Standard
American Society for Industrial Security - International (ASIS)

Technical Committee Member, Private Security Company (ANSI Standard), 2011 – 2012
Management System for Quality of Private Security Company Operations (PSC.1)
American Society for Industrial Security - International (ASIS)

Technical Committee Member, Physical Asset Protection (ANSI Standard), 2011 - 2012
American Society for Industrial Security - International (ASIS)

Immediate Past President, 2009 - 2011



International Association of Professional Security Consultants (IAPSC)

President, 2008 - 2009
International Association of Professional Security Consultants (IAPSC)

Vice President, 2007 - 2008
International Association of Professional Security Consultants (IAPSC)

Secretary, 2006 - 2007
International Association of Professional Security Consultants (IAPSC)

Member, Board of Directors, 2004 - 2006
International Association of Professional Security Consultants (IAPSC)

Chairman, Professional Certification Committee, 2004 - 2006
International Association of Professional Security Consultants (IAPSC)

Member, Private Security Services Council, 2005 – 2006
American Society for Industrial Security - International (ASIS)

Chairman, Certifications Committee, 2004 - 2006
American Society for Industrial Security - International (ASIS) - Houston Chapter

Chairman, By-Laws Committee, 2004
International Association of Professional Security Consultants (IAPSC)

Chairman, Certified Protection Professional Committee, 2002 - 2003
American Society for Industrial Security - International (ASIS) - Houston Chapter

Committee Member, Publications Committee, 2001 - 2002
International Association of Crime Analysts (IACA)

**Publications & Presentations**

Vellani, Karim H. (2023).  "Using Evidence-Based Research to Understand and Prevent Crime."
Evidence-Based Security Practices Committee, International Association of Professional Security
Consultants, January 24, 2023.

Army, Christine, & Vellani, Karim H. (2023). Risky Behaviors and Violent Victimization (EBSP-23-
01). Evidence-Based Security Practices, International Association of Professional Security
Consultants.



Vellani, Karim H. (2022).  "Using Evidence-Based Research to Understand and Prevent Crime." 37th Annual Conference, International Association of Professional Security Consultants, Denver, CO, June 14, 2022.

Vellani, Karim H. (2022).  "Assessing Crime Risk."  Fundamentals in Forensic Security Consulting, International Association of Professional Security Consultants, Denver, CO, June 13, 2022.

Vellani, Karim H., & Kristof, Tina S. (2022). "Security's Critical Role in Combating Sex Trafficking." Journal of Healthcare Protection Management, Volume 76, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2021).  Unraveled: An Evidence-Based Approach to Understanding and Preventing Crime. Sugar Land, TX: Threat Analysis Group, LLC.

Vellani, Karim H. (2021).  "Mitigating Security Risks with Evidence-Based Research."  Hospital Association of Southern California, November 3, 2021.

Army, Christine, & Vellani, Karim H. (2021). Violent Crime Typology and Continuum. CrimRxiv. https://doi.org/10.21428/cb6ab371.71ec923d

Vellani, Karim H., & Kristof, Tina S. (2021). Identifying and Responding to Sex Trafficking Victims in Healthcare Environments. CrimRxiv. https://doi.org/10.21428/cb6ab371.84ddfc71

Vellani, Karim H. and Tina S. Kristof (2021).  "Results of the 2020 Healthcare Crime Survey." Journal of Healthcare Protection Management, Volume 36, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H.; Bryan Warren; Jeff Young (2020).  "The Impact of COVID-19 on Healthcare Facilities."  International Association of Healthcare Security and Safety, October 28, 2020.

Pompeii, Lisa, Elisa Benavides, Oana Pop, Yuliana Rojas, Robert Emery, George Delclos, Christine Markham, Abiodun Oluyomi, Karim Vellani, Ned Levine (2020). Workplace Violence in Outpatient Physician Clinics: A Systematic Review. International Journal of Environmental Research and Public Health, 17, 6587.

Vellani, Karim H. (2020).  "Impressing Your Boss: Using the IAHSS Foundation's Crime Survey and Other Foundation Research to Improve Your Program."  International Association of Healthcare Security and Safety, Virtual Conference, September 1, 2020.



Vellani, Karim H. (2020).  "2020 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H. (2019).  Strategic Security Management:  A Risk Assessment Guide for Decision Makers, Second Edition.  Boca Raton, FL: Taylor & Francis CRC Press.

Vellani, Karim H. (2019).  "Evidence, Anecdotes, and Actions:  A Summary of the 2019 Healthcare Crime Survey and other IAHSS Foundation Research."  Journal of Healthcare Protection Management, Volume 35, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2019).   "2019 Healthcare Crime Survey."   International Association of Healthcare Security and Safety, Orlando, FL, May 21, 2019.

Vellani, Karim H. (2019).   "How Many Security Officers Do You Need? An Evidence-based Approach to Determining the Industry Average Number of Hospital Security Officers."  International Association of Healthcare Security and Safety, Orlando, FL, May 20, 2019.

Vellani, Karim H., Michael S. D'Angelo and Ken Wheatley (2019).  "Vetting Clients:  From First Call Through Final Report."  35th Annual Conference, Miami, FL, International Association of Professional Security Consultants, May 5, 2019.

Vellani, Karim H. (2019).  "2019 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H., Robert J. Emery, Sadie H. Conway, and Lisa A. Pompeii (2019).  "A Refined Model for Estimating the Industry-Average Number of Security Staff for Hospitals." Journal of Healthcare Protection Management, Volume 35, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2018).   "Threat Assessment in the Private Sector: Application of the IAPSC Forensic Methodology Threat Assessment Section Outside of Litigation." 34th Annual Conference, San Diego, California, International Association of Professional Security Consultants, April 30, 2018.

Vellani, Karim H. (2017).   "Violence Against Healthcare Workers:  Persistent Trends and Appropriate Responses."  Journal of Healthcare Protection Management, Volume 32, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2017). "2017 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.



Vellani, Karim H. (2016).  "The Battle against Violence in U.S. Hospitals."  Journal of Healthcare Protection Management, Volume 32, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2016).  "2016 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H. (2015).  "Arming Security Officers" (Panelist).  International Association of Healthcare Security and Safety, Houston, Texas, November 13, 2015.

Vellani, Karim H. (2015).  "Statistics as a Security Management Tool" in Charles A. Sennewald's Effective Security Management, 6th Edition.  Woburn:  Elsevier.

Vellani, Karim H. (2015).  "Workplace Violence." Greater Houston Industrial Hygiene Council, Houston, TX, June 18, 2015.

Vellani, Karim H. (2015).  "Security Risk Assessments."  Greater Houston Industrial Hygiene Council, Houston, TX, June 18, 2015.

Vellani, Karim H. (2015).  "2015 Healthcare Crime Survey."  International Association of Healthcare Security and Safety, St. Louis, MO, May 5, 2015.

Vellani, Karim H. (2015). "2015 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.

Vellani, Karim H., Robert J. Emery, and Jennifer M. Reingle Gonzalez (2015).  "A Data-Driven Model for Estimating Industry Average Numbers of Hospital Security Staff." Journal of Healthcare Protection Management, Volume 31, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2015).  Foreword to Michael S. D'Angelo's From Police to Security Professional:  A Guide to a Successful Career Transition.  Boca Raton:  CRC Press.

Vellani, Karim H. (2014).  "Reducing Violence in Healthcare Facilities."  International Association of Healthcare Security and Safety, Houston, Texas, July 19, 2014.

Vellani, Karim H. (2014).  "2014 Healthcare Crime Survey."  International Association of Healthcare Security and Safety, San Diego, CA, May 20, 2014.

Vellani, Karim H. (2014). "2014 Healthcare Crime Survey."  International Healthcare Security and Safety Foundation.



Vellani, Karim H. (2014). "Reducing Violence in Healthcare Facilities." Journal of Healthcare Protection Management, Volume 30, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2013). "The Business Plan and Successful Security Partnering" Successful Security Consulting Seminar, International Association of Professional Security Consultants and ASIS - International. Chicago, IL, September 23, 2013.

Vellani, Karim H. (2012). "The Need for Effective Consulting Websites" in Charles A. Sennewald's Security Consulting, 4th Edition. Woburn: Elsevier.

Vellani, Karim H. (2012). "Security Staffing: Madness to Methods to Outcomes." International Association of Healthcare Security and Safety, Houston, Texas, October 12, 2012.

Vellani, Karim H., Norman Bates, and Steve Kaufer (2012). "Security 2012 – The Latest Trends in Crime Analysis, Security Technology and Management Practices for Inadequate Security Litigators." National Crime Victim Bar Association, New Orleans, LA, September 21, 2012.

Vellani, Karim H., Robert J. Emery, and Nathan Parker (2012). "Staffing Benchmarks: How Many Security Officers are Enough?" Journal of Healthcare Protection Management, Volume 28, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2011). "Using Crime Analysis to Solve Problems in 15 Small Steps." Journal of Healthcare Protection Management, Volume 27, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2011). "Crime Analysis: A Framework for Optimizing Security." International Association of Healthcare Security and Safety, Toronto, Ontario, May 24, 2011.

Vellani, Karim H. (2011). "Statistics as a Security Management Tool" in Charles A. Sennewald's Effective Security Management, 5th Edition. Woburn: Butterworth-Heinemann.

Vellani, Karim H. with Brian Gouin (2010). "Security Risk Assessments in the Environment of Care." American Society of Healthcare Risk Management, Tampa, FL, October 15, 2010.

Vellani, Karim H. (2010). "The Business Plan and Successful Security Partnering" Successful Security Consulting Seminar, International Association of Professional Security Consultants and ASIS - International. Dallas, TX, October 11, 2010.



Vellani, Karim H. (2010). "Security Risk Assessments." Texas Regional Conference, The Woodlands, Texas, International Association of Professional Security Consultants, September 15, 2010.

Vellani, Karim H. (2010) "Crime Analysis for Problem Solving Security Professionals in 25 Small Steps." Karim H. Vellani. [Center for Problem Oriented Policing www.popcenter.org].

Vellani, Karim H. (2010). "Crime Analysis: Assessing Threats to Optimize Security." Threat Analysis Group, LLC. Available via Amazon.com.

Vellani, Karim H. (2010). "Crime Analysis: Optimizing Security in Healthcare Facilities." International Association of Healthcare Security and Safety, Houston, Texas, May 21, 2010.

Vellani, Karim H. (2010). "Crime Analysis: A Framework for Optimizing Security and Assessing Foreseeability." 26th Annual Conference, Savannah, Georgia, International Association of Professional Security Consultants, April 26, 2010.

Vellani, Karim H. (2009). "Security Risk Assessments." Security 101 for Health and Safety Professionals, Southwest Center for Occupational & Environmental Health, School of Public Health, University of Texas, October 29, 2009.

Vellani, Karim H. (2009). "The Business Plan and Successful Security Partnering" Successful Security Consulting Seminar, International Association of Professional Security Consultants and ASIS - International. Anaheim, CA, September 20, 2009; Dallas, TX, October 11, 2010; Orlando, FL, September 18, 2011.

Vellani, Karim H. (2009). "Security Risk Assessments." Healthcare Security: Basic Industry Guidelines, January 2009, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2008). "Data Driven Security." Security Solutions Series, Threat Analysis Group, LLC.

Vellani, Karim H. (2008). "Risk Assessments in the Environment of Care." Wisconsin Healthcare Engineering Association, October 29, 2008.

Vellani, Karim H. (2008). "The Uniform Crime Reporting System" in Charles A. Sennewald and John H. Christman's Retail Crime, Security, and Loss Prevention: An Encyclopedic Reference. Woburn: Butterworth-Heinemann.



Vellani, Karim H. (2008). "Threat Assessment in the Retail Environment" in Charles A. Sennewald and John H. Christman's Retail Crime, Security, and Loss Prevention: An Encyclopedic Reference. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2007). "Security Risk Assessments." Security 101 for Health and Safety Professionals, Southwest Center for Occupational & Environmental Health, School of Public Health, University of Texas, November 14, 2007.

Vellani, Karim H. and Robert E. Owles (2007). "Vulnerability and Risk Assessments in the Environment of Care." Journal of Healthcare Protection Management, Volume 24, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2007). Foreword to Brian Gouin's Physical Security Consulting. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2007). "The Gentle Art of Threat Assessment." Journal of Healthcare Protection Management, Volume 23, Number 1, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2006). "Crime Analysis" in John J. Fay's Encyclopedia of Security Management: Techniques and Technology, 2nd Edition. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2006). "Security Risk Assessments in the Environment of Care." International Association of Healthcare Security and Safety, Houston, Texas, May 21, 2010.

Vellani, Karim H. (2006). Strategic Security Management: A Risk Assessment Guide for Decision Makers. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2006). "Strategic Security Management: Risk Assessments in the Environment of Care." Journal of Healthcare Protection Management, Volume 22, Number 2, International Association for Healthcare Security & Safety.

Vellani, Karim H. (2005). "Certified Security Consultant." Successful Security Consulting Seminar, International Association of Professional Security Consultants. Orlando, FL, September 10, 2005.

Vellani, Karim H. (2005). "Crime and Foreseeability Analysis." The Sentry. American Society for Industrial Security - International: Houston Chapter. June, 2005.

Vellani, Karim H. (2004). "Crime and Foreseeability Analysis." The Independent Security Consultant. International Association of Professional Security Consultants. Fall, 2004.



Vellani, Karim H. and Charles A. Sennewald (2004).  Consultants as a Protection Resource, Protection of Assets Manual.  Alexandria: ASIS International.

Vellani, Karim H. (2004).  "The Business Plan." Successful Security Consulting Seminar, International Association of Professional Security Consultants.  Dallas, TX, September 25, 2004; Carefree, AZ, May 7, 2006; San Diego, CA, September 24, 2006.

Vellani, Karim H. (2004).  "Writing Effective Proposals" International Association of Professional Security Consultants.  Newport Beach, CA, April 27, 2004.

Vellani, Karim H. (2004).  "Boosting Performance and Morale."  Security Business Practices Reference, Volume 6, ASIS Council on Business Practices, ASIS International.

Vellani, Karim H. (2004).  "Achieving Return on Investment from Crime Analysis."  Security Business Practices Reference, Volume 6, ASIS Council on Business Practices, ASIS International.

Vellani, Karim H. (2003).  "Security Solutions for Strip Shopping Centers."  Security Solutions Series, Threat Analysis Group, LLC, 2003.

Vellani, Karim H. (2003).  "Security Solutions for Grocery Stores."  Security Solutions Series, Threat Analysis Group, LLC, 2003.

Vellani, Karim H. and Mark Batterson (2003).  "Security Solutions for Banks."  Security Solutions Series, Threat Analysis Group, LLC, 2003.

Vellani, Karim H. (2003).  "Statistics as a Security Management Tool" in Charles A. Sennewald's Effective Security Management, 4th Edition.  Woburn:  Butterworth-Heinemann.

Vellani, Karim H. (2002).  "Crime Analysis: The First Step in Creating an Effective Crime Prevention Program."  Security Business Practices Reference, Volume 5, ASIS Council on Business Practices, ASIS International.

Vellani, Karim H. (2002).  "Crime Analysis in the Medical Environment."  Workplace Safety Seminar, School of Public Health, University of Texas Health Science Center, December 2, 2002.

Vellani, Karim H. (2002).  "Risk Analysis" University of Houston - Downtown.  CJ 5360: Security and Crisis Management: Theories and Practices, April 8, 2002.

Vellani, Karim H. (2002).  "Crime Analysis Literature: What We Have and Where We Are Going."  Forecaster, International Association of Crime Analysts, Spring 2002.



Vellani, Karim H. (2001). "Rape Zones: Are Some Neighborhoods More Prone To Sexual Assault?" KHOU 11, Houston, Texas. Aired November 25, 2001.

Vellani, Karim H. (2001). "Crime Analysis: The First Step in Creating an Effective Crime Prevention Program." 47th Annual Seminar & Exhibit, San Antonio, Texas, American Society for Industrial Security, October 1, 2001.

Vellani, Karim H. (2001). "Don't Let Your Guard Down." Security Management, American Society for Industrial Security, October 2001. Edited extensively by Security Management editors.

Vellani, Karim H. (March 29, 2000). "Convenience Store Security." Presented to Pakistan Association of Greater Houston (PAGH).

Vellani, Karim H. and Joel D. Nahoun (2001). Applied Crime Analysis. Woburn: Butterworth-Heinemann.

Vellani, Karim H. (2000). "Security + Service = Satisfaction: The Perks of Private Security." Journal of Property Management, Institute of Real Estate Management, May/June 2000.

Vellani, Karim H. (1999). "Crime Stoppers." Journal of Property Management, Institute of Real Estate Management, September/October 1999.

Vellani, Karim H. (1998). "Management Ideas for Preventing Crime: An Analysis of Liability, Site-Specific Crime Prevention, Crime Prevention Through Environmental Design, and Violence Escalation." Sam Houston State University, Huntsville, Texas.



**APPENDIX B: Forensic Methodology**





Best Practices

# FORENSIC METHODOLOGY

Updated 1/29/2021

# Table of Contents

Position Statement...............................................2

Evidence Review—The Process.......................3

Risk Assessment....................................................3

Threat Assessment...............................................4

Vulnerability Assessment/Security Survey ... 4

Analysis and Opinions ........................................6

Bibliography/References....................................6

Forensic Security Committee Members........7

Cases Citing Methodology ................................8

Document Revision History...............................8

The International Association of Professional Security Consultants has issued this consensus-based and peer-reviewed Best Practice for the guidance of and voluntary use by businesses and individuals who deal or may deal with the issues addressed in the context of third-party premises security litigation, and other security-related cases where the methodology would be helpful.

## POSITION STATEMENT

The International Association of Professional Security Consultants does hereby recognize that its members will be called upon to perform as "Forensic Consultants" and serve as Expert Witnesses in a court of law or other legal proceeding. The purpose of these guidelines is to meet the need for a standardized methodology used in the evaluation of premises security cases.

It is recognized that the task of the Forensic Consultant is one of education. Forensic Consultants will provide their opinion(s) to the client, to opposing counsel during deposition, in response to written interrogatories, in reports, and to the judge and jury at trial or any other lawfully convened hearing. This is done with the goal of making others aware of the security issues and contributing to a just and proper conclusion on the litigation.

The responsibility of the Forensic Consultant lies within our system of justice and the ethics of the security profession. The opinions so offered are made as an objective expert witness/consultant, without any financial or other interest in the outcome of the litigation.

Forensic Consultants will, at all times, be forthright, honest, and precise in evolving the ultimate conclusion(s) and opinion(s). The opinion(s) will be the result of a review of all available, applicable documentation and discovery material presented by all parties to the litigation. Site inspections and analytical procedures generally followed by the Forensic Consultant are described in these guidelines.

The following methodology is to be used in atypical premises security case, including crimes committed by employees; workplace violence; negligent hiring, supervision and retention; negligent training; use of force; invasion of privacy; wrongful arrest and/or imprisonment; wrongful prosecution; and other security-related cases.

The Forensic Consultant is expected to exercise diligence in requesting and/or obtaining information that the Consultant reasonably believes is relevant to the facts and circumstances of the case.

*It is reasonable to expect variations of the steps, with some steps deleted and others added as the facts and circumstances of the case being analyzed warrant.*

# EVIDENCE REVIEW—
# THE PROCESS

In the context of this Guideline, the Forensic Consultant will review and analyze various information, whether produced during the discovery process of the litigation or otherwise obtained through research, common knowledge, investigation, and/or the consultant/expert's experience which allows the Consultant to identify factors leading to an understanding of the crime risks present at the time of the criminal event.

Types of evidence generally available to the Forensic Consultant may include, if relevant, to the following:

1. Complaint/Petition and Pleadings

2. Police Report of the subject incident

3. Site and Immediate Vicinity Crime History, including police and security incident reports

4. Interrogatories and Responses

5. Requests for Production of Documents and Responses, discovery motions

6. Requests for Admissions and Responses

7. Affidavits, Witness Statements, and Interviews

8. Depositions with exhibits

9. Expert Witness Reports and depositions

10. Applicable Medical Records Relating to the Facts of the Incident

11. Photographs, Video and Audio Recordings, etc.

12. Other Related Evidence (e.g., prosecutors file, if available, criminal trial transcript, employee HR files, etc.)

13. Site Plans

14. Applicable standards, codes, and regulations

15. Publications related to the standard of care

16. Lighting plans/diagrams

17. Relevant policies and procedures

18. Security staffing, plans, manuals, post orders and schedules

19. Security services contracts in effect on date of loss

20. Agreements with other security service providers (e.g., off-duty police officers)

21. Background search results of employees/workers

# RISK ASSESSMENT

A risk assessment is the general process of identifying relevant risks, given the facts of the case. It is a qualitative, quantitative, or hybrid assessment that seeks to determine the likelihood that criminals could successfully exploit a vulnerability or compromise a security countermeasure.

There are two main components to a risk assessment: a threat assessment and a vulnerability assessment. The threat assessment is an evaluation of the various sources for crime threats. The vulnerability assessment includes an evaluation of the physical aspects of the facility and an analysis of the overall security program as it relates to the specific facts of the case.

The security survey, along with documented evidence, is the means by which security measures utilized and/or available at the facility at the time of the incident that is the subject of the litigation are identified and analyzed.

3

A risk assessment provides the foundation for effectively determining the adequacy of countermeasures employed.

# THREAT ASSESSMENT

A threat assessment is an evaluation of events that can adversely affect operations and/or specific assets. Historical information is a primary source for threat assessments, including past criminal and terrorist events. A threat assessment considers actual and inherent threats.

1.  Actual Threats - The crime history at the subject property based on data reflecting actual crime data.[1] Actual threats are a quantitative element of a threat assessment. When assessing actual threats, the following may be considered *as deemed relevant by the security expert:*

    a.  Relevant crimes on the subject property for a three to five-year period prior to the date of the incident.

    b.  Relevant crimes in the immediate vicinity of the subject property for a three to five-year period prior to the date of the incident. [Note: There is no single definition of what constitutes an "immediate vicinity" or "neighborhood" around a given property. Often what is available for evaluation from a law enforcement agency depends upon that agency's software programming and/or staff capabilities (e.g., the agency can only provide data for a set size of an area, such as a quarter mile radius).][2]

    c.  The expert may consider the relationship between offenders and victims (e.g. interpersonal, domestic, targeted, etc.).

2.  *Inherent Threats* –The crime risk at the subject property as determined by the expert based on the property's characteristics, the expert's research and/or experience in similar environments, information gathered through the discovery process, and/or a site inspection (if conducted).

# VULNERABILITY ASSESSMENT/ SECURITY SURVEY

The vulnerability assessment is an analysis of security weaknesses and opportunities for criminal activity. A security survey is a method for collecting information used in the vulnerability assessment.

A security survey may include a physical survey of the scene of the incident and areas/functions that are applicable to the incident to achieve an understanding of information that has potential application to the matter in litigation.

The following areas of review are not meant to be all inclusive, nor all exclusive. The decision to review the material is at the judgment/discretion of the expert.

1.  Incident Review

    a.  Police incident and investigation report(s)

    b.  Security incident report(s)

    c.  Medical records (emergency room and/or autopsy as it relates to information about the occurrence of the incident)

    d.  Other sources of information about how the incident occurred (e.g., witness statements testimony, etc.)

---

[1] Depending on the police jurisdiction that serves the subject property, different types of crime records may be available. The most common type of crime record used in a crime risk analysis is Calls for Service or dispatch logs. It is important to note that Calls for Service or dispatch log accuracy varies by jurisdiction. Further, changes to incident management and dispatch systems may also impact accuracy even within the same jurisdiction. When assessing relevant crimes, Calls for Service and dispatch logs should not be used alone. Offense/Incident Reports are necessary to validate the Calls for Service or dispatch logs, specifically the crime type, crime location, and whether a crime actually occurred. Calls for service or dispatch logs alone, in many jurisdictions, are insufficient for these three elements.

[2] The IAPSC recognizes that criminology studies and related research have generally found that crime in the area may not be relevant to the subject property.

2. Site Inspection - Inspect site where the incident occurred and the surrounding area, if relevant. *(Note: Not all cases will require site inspections, nor is it always possible to conduct site views—e.g., if the site has been altered substantially or no longer exists.) Further, the facts of some cases and potential liability issues are not related to the site/property layout, design, or other physical attributes. As such, a site inspection may be unnecessary.*

  a. Determine layout of the premises

  b. Evaluate relevant factors (lighting, lines of sight, places of concealment, remoteness, accessibility, security measures, conditions, etc.)

  c. Review relevant documentation (lease, contract, diagram, map, etc.)

  d. Assess the characteristics of the surrounding area and what impact, if any, those characteristics may have had on the subject property

3. Security Personnel

  a. Review security officer(s) (including off-duty law enforcement officers) actions, staffing levels, post orders, duty hours, equipment provided, tours, evaluations, training, hiring procedures and supervision

  b. Review law enforcement presence and actions (e.g., on-duty, police details, etc.)

  c. Review roles and actions of non-security related persons who may have participated in the security program and/or incident

  d. Assess the qualifications and performance of owner/management personnel overseeing the security program

4. Security Management Program

  a. Review management and security related policies, procedures, and practices

  b. Review any risk assessments performed prior to the date of the incident

  c. Review daily activity reports, job descriptions, incident reports and internal correspondence

  d. Review security services contract

  e. Review training manuals and materials

  f. Review depositions regarding employees' understanding of their duties, and all customs and undocumented practices

  g. Evaluate the qualifications, training, and experience of security management and supervisory personnel

5. Security Equipment

  a. Review building design and site plans

  b. Inspect all security devices related to the incident

  c. Inspect structural security features related to the incident

  d. Determine the position, function and maintenance status of the relevant security equipment and features in place at the time of the incident

  e. Determine levels of illumination, if relevant

## ANALYSIS AND OPINIONS

The security expert will determine the level of adequacy of security at the location of the incident on the date and at the time the incident occurred. This will be based on the information obtained in the previous steps, and the application of a qualitative analysis based on the experience, education, and training of the expert.

Based upon the analysis, the expert will reach conclusions on the issues of risk analysis, preventability, and the adequacy of the security program at the subject property. At this point the expert has formed opinions and is prepared to provide a written report, be deposed, and/or testify at trial. Those opinions will state the detailed basis for the findings, including evidence, standards, best practices, and guidelines, where applicable.

## BIBLIOGRAPHY/REFERENCES

The process of evaluating the risk of crime at a specific location or geographical area is widely recognized and has been adopted nationwide by private industry, public law enforcement, municipalities, and other governmental agencies. The following published sources reference the process used to perform a crime risk analysis. *This is not all-inclusive, but a representative sampling of available references.*

This bibliography is not to be construed in any way as an endorsement by the International Association of Professional Security Consultants of the publications or the respective authors.

ASIS International (2003). *General Security Risk Assessment Guideline*. Alexandria, VA.

Bates, Norman D. (1997). "Foreseeability of Crime and Adequacy of Security," *Accident Prevention Manual for Business & Industry*, Security Management, National Safety Council.

Bates, Norman D. and Danielle A. Frank (2010). "Premises Security Experts and Admissibility Considerations Under Daubert and Kumho: A Revised Standard," Suffolk Journal of Trial and Appellate Advocacy, June 2010.

Broder, James F. and Tucker, Eugene (2012). *Risk Analysis and the Security Survey, 4th Edition.* Boston, MA: Butterworth-Heinemann.

Bureau of Justice Statistics http://www.bjs.gov/index.cfm?ty=tp&tid=941

Caplan, Joel M., and Leslie W. Kennedy (2016)."Risk Terrain Modeling: Crime Prediction and Risk Reduction." Jackson, TN: University of California Press.

Clarke, Ronald V., & Eck, John E. (2007). "Understanding Risky Facilities. Problem Specific Guide Series. Washington, DC: Office of Community Oriented Policing," U.S. Department of Justice.

Crowe, Timothy D. and Fennelly, Lawrence (2013). *Crime Prevention Through Environmental Design, 3rd Edition.* National Crime Prevention Institute, Boston, MA: Butterworth-Heinemann.

Department of the Navy, Naval Facilities Engineering Command, (1983). *Physical Security Design Manual 13.1,* Washington, DC: Government Printing Office.

Eck, John E. and Weisburd, David (1995). *Crime and Place.* Monsey, NY: Criminal Justice Press (Police Executive Research Forum).

Eck, John E., Clarke, Ronald V., and Guerette, Rob T. (2007), "Risky Facilities: Crime Concentration in Homogeneous Sets of Establishments and Facilities" in Farrell, Graham et al, ed. Imagination for Crime Prevention, Crime Prevention Studies, Volume 21, Monsey, NY: Criminal Justice Press.

Eck, John E, & Weisburd, David (Eds.). (1995)."Crime and Place. Crime Prevention Studies" 4. Monsey, NY: Criminal Justice Press.

Gottlieb, Stephen, Sheldon Arenberg, and Raj Singh (1998). *Crime Analysis: From First Report to Final Arrest.* Montclair, CA: Alpha Publishing.

International Association of Crime Analysts (2009). *Exploring Crime Analysis.* 2nd Edition. Overland Park, KS: Book Surge Publishing.

Madensen, Tamara D. and John E. Eck (2013). "Crime Places and Place Management" in Cullen, F. T., & Wilcox, P. The Oxford Handbook of Criminological Theory. New York, NY: Oxford University Press.

Miethe, Terance D. and Richard McCorkle (2005). *Crime Profiles: The Anatomy of Dangerous Persons, Places, and Situations.* 3rd Edition. Los Angeles: Oxford University Press.

National Crime Prevention Institute (2001). *Understanding Crime Prevention,* Boston, MA: Butterworth-Heinemann.

Sennewald, Charles A. (2015). *Effective Security Management.* 6th Edition. Woburn: Butterworth-Heinemann.

Sennewald, Charles A. (2012). *Security Consulting.* 4th Edition. Woburn: Butterworth-Heinemann.

U.S. Army Corps of Engineers (1990). *Security Engineering Manual*, Missouri River Division/Omaha District.

U.S. Department of Justice, Federal Bureau of Investigation, "UCR: Uniform Crime Reporting Handbook" Revised 2004, U.S. Government Printing Office, Washington, DC.

 U.S. Department of Justice (1995). "Vulnerability Assessment of Federal Facilities," Washington, DC: Government Printing Office.

Vellani, Karim H. (2020). *Strategic Security Management: A Risk Assessment Guide for Decision Makers. 2nd Edition* CRC Press.

Weisburd, David, Elizabeth Groff, and Sue-Ming Yang. (2012), *The Criminology of Place: Street Segments and Our Understanding of the Crime Problem.* Oxford: Oxford University Press.

Weisburd, David, et al. (2016), *Place Matters: Criminology for the Twenty-First Century.*  Cambridge: Cambridge University Press.

# FORENSIC SECURITY COMMITTEE MEMBERS

Norman D. Bates, Esq.,
Committee Chairman
President, Liability Consultants, Inc.

Chad Callaghan, CPP, CSC, CLSD
Premises Liability Experts, LLC

James H. Clark, CPP
Clark Security Group, LLC

Michael S. D'Angelo, CPP, CSC, CHPA
Secure Direction Consulting, LLC

Lance Foster, CPP, CSC
Security Associates, Inc.

Karim Vellani, CPP, CSC
Threat Analysis Group, LLC

Ken Wheatley, MA, CPP
Royal Security Group, LLC

Alan W. Zajic, CPP, CSP
AWZ Consulting

# NON-MEMBER CONTRIBUTORS

Steve Kaufer, CPP
Inter/Action Associates

## CASES CITING METHODOLOGY

<u>Childress v Kentucky Oaks Mall</u>, 2007 WL
2772299 (W.D. KY) 2007

<u>Reinaldo Robles DelValle, et al v Vornado Realty
Trust</u>, 06-1818USDist.Crt., Puerto Rico, 2009

<u>Jane Doe v. AE Outfitters Retail Co.</u>, United Sates
District Court for the District of Maryland,
Northern Division, 2015

## DOCUMENT REVISION HISTORY

Initial Release: June 2000 approved by the IAPSC
membership in attendance at the annual
meeting.

Revised: May 2, 2005 with approval by the
IAPSC membership in attendance at the annual
meeting.

Revised: November 2008 with approval of the
Board of Directors.

Revised: November 2011 by Forensic Security
Committee – minor formatting changes and
addition of "Premises Security Experts…" article
to bibliography.

Revised: April 28, 2014 with approval of IAPSC
Forensic Security Committee – addition of
language to Actual Crime section: "Relevant
crimes in the immediate vicinity of the facility
(three to five years prior to the date of the
incident) *as defined by and deemed relevant by
the security expert.*"

Revised: January 19, 2018 with approval by the
Board of Directors.

Revised: December 2, 2020 by Forensic Security
Committee – clarification of "security-related"
cases covered by the Methodology and types of
evidence available to the Forensic Consultant.
Updated list of committee members.

*Founded in 1984, the International
Association of Professional Security
Consultants (IAPSC) is a widely
recognized and respected association
committed to establishing and
maintaining the highest standards for
security consultants in the industry.
IAPSC members are independent, non-
product affiliated consultants who are
required to meet strict educational,
experience, and practice requirements,
ensuring that they uphold the IAPSC
code for professionalism and ethical
conduct. For more information, to find
an IAPSC security consultant, or to
become a member of the association,
visit www.iapsc.org.*

**APPENDIX C:  Crime Risk Analysis**



| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| P-002069(UI&S) | 14-071126 | | Prostitution | 7/16/2014 | 17:36 | Inside | S | A female was arrested after a prostitution sting |
| | 14-082552 | DOMESTIC ASSAULT | Assault | 8/15/2014 | 21:30 | Inside | NS | Complainant stated her boyfriend assaulted her daughter |
| | 14-083554 | FAMILY VIOLENCE BATTERY | Assault | 8/18/2014 | 18:30 | Unknown | NS | Complainant stated she was assaulted by her boyfriend after an argument |
| | 14-087431 | ROBBERY - STREET - STRONGARM | Robbery | 8/28/2014 | 23:15 | Outside | U | A former resident came to the office stating he was robbed on Memorial Drive, then left when reportee said he'd call 911 |
| P-02548-2551 | 14-094189 | Simple battery | Assault | 9/16/2014 | 18:10 | Inside | NS | Domestic altercation inside a room |
| P-02560-2562 | 14-096840 | Simple assault | Assault | 9/23/2014 | 20:45 | Outside | U | An irate customer made threatening hand gestures in the office |
| | 14-103204 | FAMILY VIOLENCE BATTERY | | 10/12/2014 | | Unknown | | |
| P-02590-2595 | 14-115579 | Battery | Assault | 11/16/2014 | 20:15 | Inside | NS | A boyfriend and girlfriend had a physical altercation |
| P-02598-2601 | 14-119898 | Simple battery | Assault | 11/30/2014 | 6:30 | Unknown | NS | Complainant stated she was assaulted by her boyfriend after an argument |
| P-00005-12 | 15-006032 | Simple battery | Assault | 1/19/2015 | 15:22 | Outside | NS | An ex-boyfriend and girlfriend had a physical altercation |
| P-00013-15 | 15-008587 | Simple assault | Assault | 1/22/2015 | 20:00 | Unknown | NS | Complainant stated she was receiving threatening messages from her partner |
| P-00019-21 | 15-015868 | Child molestation | Rape? | 2/10/2015 | 16:00 | Unknown | U | Reportee stated the victims are being exploited |
| P-00032-35 | 15-020680 | Simple battery | Assault | 3/4/2015 | 7:20 | Inside | NS | A couple had an argument and possible physical altercation |
| P-00038-49 | 15-021478 | Simple assault | Assault | 3/6/2015 | 9:00 | Unknown | NS | Complainant stated she was receiving threatening calls from her ex-boyfriend |
| | 15-037255 | Simple battery | Assault | 4/20/2015 | 5:50 | Inside | NS | Complainant was assaulted by an acquaintance after an argument |
| P-00057-62 | 15-042083 | Aggravated battery | Aggravated Assault | 5/3/2015 | 4:00 | Inside | NS | Complainant was assaulted by her boyfriend |
| | 15-042764 | PERSON DEAD | | 5/4/2015 | 12:28 | Inside | | A deceased person was found inside a room from apparent natural causes and/or prescription med OD |
| P-00127-138 | 15-046660 | Simple battery | Assault | 5/15/2015 | 20:00 | Inside | NS | Complainant was assaulted by her friend |
| P-00139-142 | 15-048684 | Child molestation | Rape | 5/17/2015 | 14:51 | Unknown | U | Complainant stated she was sexually assaulted by the suspect |
| P-000153(UI&S) | 15-0512411 | | | 5/29/2015 | 7:15 | Unknown | | Reportee stated a missing person last seen at this location was recently diagnosed with bipolar disorder and might be involved in Human Trafficking |
| | 15-059942 | FAMILY VIOLENCE BATTERY | Assault | 6/21/2015 | 13:30 | Inside | NS | Complainant was assaulted by her son |
| P-00171-180 | 15-074825 | Terroristic threats | Assault | 7/31/2015 | 18:50 | Inside | NS | Siblings has a physical altercation |
| P-00194-195 | 15-079333 | Prostitution | Prostitution | 8/12/2015 | | Inside | S | A female was arrested after a prostitution sting |
| P-00196-198 | 15-079862 | Simple battery | Assault | 8/13/2015 | 23:00 | Unknown | NS | A couple had a physical altercation |
| P-00202-204 | 15-080382 | Simple battery | Assault | 8/15/2015 | 10:30 | Unknown | NS | Complainant was assaulted by her boyfriend |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| P-00205-224 | 15-084328 | Aggravated sodomy, Armed robbery - residence - gun | Rape | 8/26/2015 | 8:30 | Inside | S | Suspects entered complainant's room after she answered a knock at the door, assaulted her, asked for money, and forced her to perform oral sex |
| P-00286-287 | 15-098929 | Battery | Assault | 10/5/2015 | 23:20 | Outside | S | Officer observed suspect strike another subject while at the location |
| P-00284-285 | 15-098918 | Runaway juvenile | | 10/5/2015 | 18:00 | Unknown | | Reportee's daughter reportedly ran away |
| P-00300-312 (redactions) | 15-102480 | Runaway juvenile | | 10/15/2015 | 17:00 | Unknown | | Reportee's nephew reportedly ran away |
| | 15-105500 | CRUELTY TO CHILDREN | | 10/24/2015 | 14:45 | Outside | NS | Domestic child abuse incident |
| P-00313-318 | 15-109144 | Pointing gun or pistol at another | Aggravated Assault Offenses Against the Family/Children | 11/3/2015 | 10:00 | Inside | NS | Complainant was assaulted by an acquaintance she was allowing to stay with her |
| P-00425-428 | 15-121930 | Cruelty to children | | 12/3/2015 | 8:00 | Unknown | NS | Cruelty to Children report involving the child's mother |
| P-00422-424 | 15-121761 | Aggravated assault - other weapon | Aggravated Assault | 12/8/2015 | 23:45 | Inside | NS | Complainant was stabbed by his friend after an argument |
| P-00429-430 | 15-122880 | Simple battery | Assault | 12/11/2015 | 20:52 | Outside | S | Complainant stated he was assaulted by an unknown male while standing outside |
| P-00480-482 | 16-000022 | Battery | Assault | 1/1/2016 | 1:40 | Unknown | NS | Complainant was assaulted by his father |
| | 16-019952 | Battery | Assault | 2/29/2016 | 9:15 | Unknown | NS | Complainant was assaulted by her child's father |
| | 16-020543 | Simple battery-DV | | 3/1/2016 | | Unknown | | |
| P-00548-549 | 16-024290 | Battery | Assault | 3/11/2016 | 17:15 | Outside | NS | Two acquaintances had a physical altercation during an argument |
| | 16-023963 | Simple assault | Assault | 3/11/2016 | 1:55 | Unknown | U | Complainant (night manager) was threated by an evicted tenant |
| | 16-029352 | Simple assault | Assault | 3/26/2016 | 4:25 | Outside | U | Complainant (employee) was threated at the office by an irate subject |
| P-00636-644 | 16-037051 | Battery | Assault | 4/18/2016 | 7:00 | Outside | S | Two subjects had a physical altercation when one tried to intervene in a domestic related argument |
| P-00665-666 | 16-041871 | Simple battery | Assault | 5/2/2016 | 5:10 | Unknown | U | A customer had a dispute and altercation with an employee |
| P-00723-724 | 16-044065 | PERSON DEAD | | 5/7/2016 | 14:30 | Unknown | | Cardiac Arrest report |
| P-00725-727 | 16-044269 | Battery | Assault | 5/8/2016 | 21:10 | Unknown | NS | Complainant stated she was assaulted by her child's father |
| P-00728-730 | 16-044575 | Battery | Assault | 5/9/2016 | 17:30 | Inside | NS | Complainant stated she was assaulted by her daughter |
| P-00737-738 | 16-048628 | Simple assault | Assault | 5/20/2016 | 18:30 | Unknown | NS | Complainant received threatening texts from her son's child's mother |
| P-00743-757 | 16-061258 | Simple battery | Assault | 6/25/2016 | 4:30 | Outside | NS | Complainant was assaulted by her boyfriend |
| P-00761-762 | 16-064239 | Simple battery | Assault | 7/3/2016 | 9:00 | Inside | NS | Complainant was assaulted by her friend's mother |
| P-00767-774 | 16-067229 | TERRORISTIC THREATS | Assault | 7/12/2016 | 13:00 | Inside | NS | Complainant was threatened by his stepson |
| P-00879-886 | 16-075112 | Simple assault | Assault | 8/1/2016 | 10:00 | Unknown | NS | Complainant stated her children's father threatened her on social media |
| P-00890-891 | 16-077771 | Battery | Assault | 8/11/2016 | 4:00 | Inside | NS | Complainant was assaulted by her boyfriend |
| P-00919-927 | 16-099863 | Simple battery | Assault | 10/12/2016 | 13:24 | Unknown | NS | Complainant was assaulted by her boyfriend |
| | 16-101891 | Battery (Family Violence) | Assault | 10/17/2016 | 21:30 | Inside | NS | Complainant was assaulted by her ex-boyfriend |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| P-00992-997 | 16-110256 | Simple assault | Assault | 11/9/2016 | 14:37 | Unknown | NS | Complainant stated she was assaulted by an acquaintance |
| P-01002-1005 | 16-111884 | Armed robbery - business - gun | Robbery | 11/14/2016 | 11:52 | Unknown | S | A suspect entered the office and demanded cash from the register |
| P-01022-1027 | 16-115605 | Simple assault | Assault | 11/24/2016 | 15:43 | Unknown | NS | A boyfriend and girlfriend had a physical altercation |
| P-01028-1037 | 16-116287 | Simple battery | Assault | 11/27/2016 | 12:20 | Outside | U | Complainant stated she was pushed by the suspect |
| P-01044-1045 | 16-126690 | Simple battery | Assault | 12/25/2016 | 3:53 | Outside | U | Complainant stated she was assaulted by a suspect |
| | 17-000573 | Battery | Assault | 1/2/2017 | 22:35 | Unknown | NS | Complainant stated he was assaulted by an acquaintance |
| P-01052-1054 | 17-009926 | Simple battery | Assault | 1/29/2017 | 5:20 | Inside | NS | Complainant was assaulted by her boyfriend |
| P-01137-1140 | 17-019941 | Runaway juvenile | | 2/23/2017 | 7:00 | Unknown | | Reportee stated her daughter was missing |
| P-01146-1148 | 17-023489 | Simple assault | Assault | 3/9/2017 | 13:08 | Unknown | NS | Complainant was threatened by her son |
| P-01143-1145 | 17-023623 | CHILD DEPRIVATION | Offenses Against the Family/Children | 3/9/2017 | 19:12 | Outside | | A child was found wandering in the parking lot |
| P-01149-1150 | 17-024070 | Battery | Assault | 3/11/2017 | 0:30 | Inside | NS | A couple had a physical altercation |
| P-01158-1163 | 17-027577 | Simple assault | Assault | 3/21/2017 | 10:50 | Inside | NS | A mother and son had a physical altercation |
| P-01164-1171 | 17-027906 | Battery | Assault | 3/24/2017 | 16:20 | Outside | NS | Complainant was assaulted by her child's father |
| P-01262-1265 | 17-037604 | Battery | Assault | 4/18/2017 | 13:00 | Outside | S | An irate guest assaulted the employee in the office |
| | 17-040719 | Simple battery; family violence | Assault | 4/26/2017 | 21:23 | Outside | NS | A couple had a physical altercation |
| | 17-042532 | Family Violence Battery | Assault | 5/2/2017 | 3:00 | Inside | NS | Complainant was assaulted by her boyfriend |
| P-02139-2144 | 17-043728 | Person Shot - Accidental Discharge | | 5/4/2017 | 20:00 | Inside | NS | A subject accidentally shot her friend while handling a firearm |
| P-02145-2146 | 17-044764 | Simple battery | Assault | 5/7/2017 | 18:00 | Unknown | NS | Complainant was pushed by her boyfriend |
| P-02157-2162 | 17-052992 | Aggravated assault - other weapon | Aggravated Assault | 5/29/2017 | 15:32 | Inside | NS | Complainant was slashed by his child's mother |
| P-02163-2183 | 17-053943 | Battery | Assault | 6/1/2017 | 0:00 | Inside & Outside | NS | Complainant was assaulted by subjects brought to the location |
| P-01374-1388 and 2184-2188 | 17-054676 | Arrest/Simple Assault | Assault | 6/2/2017 | 21:00 | Inside | NS | A couple had a physical altercation |
| | 17-055937 | FAMILY VIOLENCE BATTERY | | 6/6/2017 | | Unknown | | |
| P-01394-1395 | 17-057983 | Simple assault | Assault | 6/12/2017 | 13:00 | Unknown | NS | Complainant was threatened by her grandchild's mother |
| P-01396-1397 | 17-060244 | Simple assault | Assault | 6/18/2017 | 16:17 | Unknown | NS | Complainant was threatened by her brother-in-law |
| P-01398-1401 | 17-061038 | Simple assault | Assault | 6/20/2017 | 15:00 | Outside | NS | Complainant stated an acquaintance threw a candlestick at him; the suspect stated she's a prostitute and complainant is her pimp |
| P-01402-1410 | 17-062768 | Aggravated battery - other weapon | Aggravated Assault | 6/25/2017 | 8:00 | Unknown | NS | Complainant was assaulted by his ex-wife |
| P-01411-1414 | 17-065287 | Simple battery | Assault | 7/1/2017 | 22:00 | Inside | NS | Complainant's child's father struck her with a shopping bag |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| | 17-070366 | Simple Battery - Family Violence | Assault | 7/16/2017 | 1:00 | Unknown | NS | A couple had a physical altercation |
| P-01432-1433 | 17-072065 | Prostitution | Prostitution | 7/20/2017 | 18:00 | Inside | S | A female was arrested after a prostitution sting |
| P-01434-1435 | 17-076187 | WANTED PERSON LOCATED | | 8/1/2017 | 16:22 | Unknown | | Warrant Arrest after a dispute call |
| P-01436-1439 | 17-080677 | Battery | Assault | 8/14/2017 | 4:45 | Inside | NS | Complainant stated his child's mother assaulted him |
| P-01440-1442 | 17-083800 | Missing Persons | | 8/15/2017 | 9:00 | Unknown | | Reportee stated her bipolar daughter was missing |
| P-01510-1511 | 17-086858 | Simple assault | Assault | 8/30/2017 | 22:25 | Outside | S | Complainant stated unknown subject brandished a weapon and made verbal threats |
| P-01508-1509 | 17-086866 | Wanted person located | | 8/31/2017 | 0:00 | Unknown | | Warrant Arrest after a threats call |
| P-01512-1513 | 17-088138 | Wanted Person Located - Probation Violation | | 9/3/2017 | 13:00 | Unknown | | Warrant Arrest after Fraud investigation |
| P-01514-1515 | 17-088139 | Wanted Person Located - FTA Traffic Offense | | 9/3/2017 | 13:30 | Unknown | | Warrant Arrest after Fraud investigation |
| P-01516-1521 | 17089940 | Simple battery | Assault | 9/8/2017 | 13:13 | Outside | NS | Complainant stated he was assaulted by a subject he knew by first name |
| | 17-090888 | Battery - Family Violence | Assault | 9/11/2017 | 10:26 | Inside | NS | Complainant was assaulted by her child's father |
| P-01537-1541 | 17-092384 | DISPUTE | | 9/15/2017 | 1:40 | Unknown | | Verbal altercation between a couple |
| | 17-093010 | Theft by taking | | 9/16/2017 | | Unknown | | |
| | 17-094903 | SUICIDE ATTEMPT | | 9/22/2017 | | Unknown | | |
| P-01544-1546 | 17-095490 | Cruelty to children | Offenses Against the Family/Children | 9/24/2017 | 16:00 | Inside | NS | Report of children left alone in a room |
| | 17-100136 | Missing persons | | 10/2/2017 | 18:00 | Unknown | | Reportee stated his children's mother was missing after last being seen at this location to drop off the children |
| P-01547-1554 | 17-099123 | Battery | Assault | 10/4/2017 | 6:30 | Inside | NS | A brother and sister had a physical altercation |
| P-01614-1617 | 17-107174 | Robbery - residence - strongarm | Robbery | 10/26/2017 | 0:00 | Inside | S | Complainant was assaulted and her purse taken after answering a knock at the door |
| P-01618-1621 | 17-108624 | Creating hazardous or offensive condition | | 10/30/2017 | 16:35 | Outside | NS | A child was found wandering alone and was returned to the parents |
| P-01622-1623 | 17-110371 | Battery | Assault | 11/3/2017 | 20:10 | Inside | NS | Complainant's mother's ex-boyfriend closed her arm in a door |
| | 17-110818 | Burglary - no forced entry - residence | | 11/4/2017 | | Unknown | | |
| P-01627-1629 | 17-111423 | Missing persons | | 11/6/2017 | 14:00 | Unknown | | Reportee's girlfriend was missing after roaming off in the past |
| | 17-112308 | Theft by taking - from building | | 11/8/2017 | | Unknown | | |
| | 17-112455 | Theft by Taking | | 11/9/2017 | | Unknown | | |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| | 17-116075 | Missing persons | | 11/12/2017 | 6:00 | Unknown | | Reportee stated her brother was missing after last being seen at this location where he was staying with her |
| | 17-114280 | Theft by taking - free text | | 11/13/2017 | | Unknown | | |
| | 17-114283 | Vgcsa - possession - marijuana - onuce or less | | 11/14/2017 | | Unknown | | |
| P-01652-1666 | 17-118629 | Battery | Assault | 11/27/2017 | 16:30 | Inside | NS | Complainant was assaulted by her child's father |
| | 17-120714 | PROBATION VIOLATION | | 12/2/2017 | | Unknown | | |
| | 17-120748 | Theft by taking | | 12/2/2017 | | Unknown | | |
| P-01727-1729 | 17-122163 | Person Down | | 12/7/2017 | 1:00 | Inside | | A subject stated she fell after reports of noise; subjects inside the room were intoxicated |
| | 17-122181 | Criminal Trespass | | 12/7/2017 | | Unknown | | |
| P-01732-1734 | 17-125159 | Terroristic threats and acts | Assault | 12/15/2017 | 12:00 | Unknown | NS | Complainant received threatening messages from her child's father's girlfriend |
| | 17-125111 | Harassing phone calls | | 12/15/2017 | | Unknown | | |
| P-01735-1739 | 17-125543 | Missing persons | | 12/16/2017 | 10:00 | Unknown | | Reportee stated her son was missing and has run away previously |
| | 19-078577 | Warrant Service | | 12/18/2017 | 13:00 | Unknown | | Warrant arrest after a domestic call |
| P-01745-1746 | 17-126654 | WANTED PERSON | | 12/19/2017 | 21:30 | Unknown | | Warrant Arrest after an auto theft call |
| | 17-126642 | Theft by taking - automobile | | 12/19/2017 | | Unknown | | |
| P-01747-1756 | 17-130469 | Aggravated assault - other weapon | Aggravated Assault | 12/31/2017 | 15:00 | Inside | NS | Complainant was stabbed by her brother |
| P-01815-1820 | 18-001235 | Missing persons | | 1/4/2018 | 18:49 | Inside | | Reportee's runaway stepdaughter was tracked to the location |
| | 18-001755 | Criminal trespass - trespass | | 1/6/2018 | | Unknown | | |
| | 18-003366 | Entering an Automobile | | 1/7/2018 | | Unknown | | |
| | 18-002477 | Terroristic threats and acts | Assault | 1/9/2018 | 0:00 | Outside & Inside | S | A belligerent guest threatened Police Officers and made a bomb threat against the premises |
| P-01833-1835 | 18-009583 | Runaway Juvenile | | 1/26/2018 | 7:00 | Unknown | | Report of missing juvenile |
| | 18-008186 | Simple assault (DOMESTIC) | | 1/26/2018 | | Unknown | | |
| | 18-010108 | Financial transaction card fraud | | 1/30/2018 | | Unknown | | |
| P-01836-1837 | 18-009976 | Battery offense - free text | Assault | 1/31/2018 | 14:01 | Inside | NS | Complainant was assaulted by her boyfriend |
| P-01841-1843 | 18-010859 | Battery | Assault | 2/2/2018 | 18:35 | Inside | NS | Complainant was assaulted by her boyfriend |
| | 18-012259 | Simple battery | Assault | 2/7/2018 | 6:00 | Inside | NS | Complainant was assaulted by her boyfriend |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| P-01844-1849 | 18-012531 | Simple battery | Assault | 2/7/2018 | 20:40 | Outside | S | Complainant (desk clerk) pepper-sprayed a trespassed subject throwing items in the office |
| P-01850-1853 | 18-016665 | Simple battery | Assault | 2/20/2018 | 14:15 | Inside | NS | Complainant was assaulted by her boyfriend |
| | 18-027843 | Missing persons | | 3/4/2018 | 0:00 | Unknown | | Reportee stated his cousin was missing and believed her to be at this location |
| P-01862-1863 | 18-022797 | Wanted Person Located | | 3/10/2018 | 10:00 | Unknown | | Warrant Arrest for shoplifting after a domestic dispute call |
| | 18-022786 | Theft by taking - from building | | 3/10/2018 | | Unknown | | |
| P-01864-1873 | 18-023970 | WANTED PERSON LOCATED | | 3/13/2018 | 17:00 | Unknown | | Warrant Arrest for shoplifting after a traffic stop |
| P-01961-1962 | 18-024024 | WANTED PERSON LOCATED | | 3/13/2018 | 18:52 | Unknown | | Warrant Arrest for traffic offenses after a fight call |
| | 18-027757 | Theft by taking | | 3/24/2018 | | Unknown | | |
| | 18-030565 | Battery - Family Violence | | 4/1/2018 | | Unknown | | |
| P-01973-1976 | 18-032817 | Pointing gun or pistol at another | Aggravated Assault | 4/8/2018 | 13:15 | Outside | NS | Complainant stated an acquaintance assaulted him and pointed a firearm |
| P-01977-1979 | 18-100287 | Battery offense - free text | Assault | 4/10/2018 | 23:38 | Inside | U | A subject was found at the location with head wounds who was assaulted by unknown subject inside of a room |
| | 18-100006 | Person Dead | | 4/10/2018 | 6:45 | Inside | | A deceased subject was found after reporting a head injury from a fall at another location |
| P-01980-1982 | 18-100659 | WANTED PERSON LOCATED | | 4/12/2018 | 0:00 | Inside | | A subject missing from a group home was found at the location |
| P-01983-1984 | 18-101391 | WANTED PERSON LOCATED | | 4/14/2018 | 6:30 | Inside | | Warrant Arrest for probation violation after a dispute call |
| P-01985-1986 | 18-102327 | WANTED PERSON LOCATED | | 4/17/2018 | 9:00 | Unknown | | Warrant Arrest for probation violation after a suspicious person call |
| P-01993-2007 | 18-103027 | MURDER - OTHER WEAPON 16-5-1 | Murder | 4/19/2018 | 6:00 | Outside | NS | A subject was unresponsive after being assaulted; listed as acquaintance |
| P-01987-1992 | 18-102999 | Battery | Assault | 4/19/2018 | 3:00 | Inside | U | Complainant was assaulted by subjects who entered his room |
| P-02008-2019 | 18-105176 | Battery | Assault | 4/25/2018 | 11:00 | Inside | NS | Complainant was assaulted by her ex-boyfriend |
| | 18-107350 | Simple battery | Assault | 5/1/2018 | 22:30 | Unknown | NS | Complainant stated she was pushed by her stepfather |
| | 18-107574 | Financial transaction card fraud | | 5/1/2018 | | Unknown | | |
| | 18-108534 | Theft by taking | | 5/4/2018 | | Unknown | | |
| P-02086-2088 | 18-110995 | DECEASED PERSON LOCATED | | 5/12/2018 | 15:35 | Inside | | A deceased person was found inside a room along with a crockpot with chemical odor |
| | 18-111034 | CHEMICAL EXPOSURE | | 5/12/2018 | | Unknown | | |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| | 18-116382 | Theft by taking - free text | | 5/28/2018 | | Unknown | | |
| P-02095-2097 | 18-117684 | Child home alone | Offenses Against the Family/Children | 5/31/2018 | 12:15 | Inside | | A child was left alone in a room |
| | 18-118563 | Simple battery | Assault | 6/3/2018 | 17:45 | Inside | NS | Two sisters had a physical altercation inside a room |
| | 18-119589 | Burglary - no forced entry - non residence | | 6/6/2018 | | Unknown | | |
| | 18-119481 | Theft by taking - automobile | | 6/6/2018 | | Unknown | | |
| | 18-122123 | Stolen Vehicle Located | | 6/13/2018 | | Unknown | | |
| | 18-125511 | Battery offense - familly violence | | 6/23/2018 | | Unknown | | |
| P-02114-2115 | 18-128088 | Suspicious Activity | | 7/1/2018 | 13:30 | Unknown | | Complainant had concern over potential credit card fraud |
| P-02116-2117 | 18-128240 | Simple assault | Assault | 7/2/2018 | 4:26 | Inside | NS | Complainant had a physical altercation with a friend |
| | 18-132634 | Public Intoxication | | 7/15/2018 | | Unknown | | |
| | 18-133338 | Theft by Taking | | 7/15/2018 | | Unknown | | |
| | 18-132896 | Criminal Damage to Prop 1st - Business | | 7/16/2018 | | Unknown | | |
| | 18-134374 | Criminal trespass - damage <500 - private | | 7/19/2018 | | Unknown | | |
| P-02130-2132 | 18-139966 | Runaway juvenile | | 7/31/2018 | 5:45 | Outside | | A runaway juvenile was found walking outside at the premises |
| P-02133-2135 | 18-140173 | Obstructing or hindering law enforcement officers | | 8/6/2018 | 1:30 | Outside | | Unwanted subject was arrested for resisting/obstructing arrest |
| P-02136-2138 | 18-143246 | Robbery - forcible purse snatch | Robbery | 8/14/2018 | 2:45 | Outside | S | A subject approached complainant and snatched her purse |
| P-02661-2665 | 18-144709 | Aggravated assault - other weapon | Aggravated Assault | 8/18/2018 | 16:50 | Inside | NS | Complainant stated her boyfriend came to the room and choked her |
| | 18-148402 | Simple battery | Assault | 8/29/2018 | 5:30 | Unknown | NS | Complainant's friend spit on her after an argument |
| P-02666-2668 | 18-148697 | Simple assault | Assault | 8/29/2018 | 20:00 | Unknown | NS | A brother and sister had a physical altercation |
| | 18-149045 | Theft by Taking | | 8/30/2018 | | Unknown | | |
| P-02676-2678 | 18-151674 | Sexual assault | Rape | 9/2/2018 | 14:00 | Unknown | U | Complainant stated she was sexually assaulted |
| P-02672-2675 | 18-150961 | Simple battery | Assault | 9/5/2018 | 17:00 | Inside | U | Tenants had a physical altercation in the room, causing management to call law enforcement |
| P-02679-2683 | 18-154467 | Simple battery | Assault | 9/15/2018 | 21:00 | Outside | NS | Complainant was assaulted by subjects regarding a previous dispute |
| | 18-157167 | Theft by taking | | 9/23/2018 | | Unknown | | |
| | 18-157368 | Neighbor dispute | | 9/24/2018 | | Unknown | | |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| | 18-160708 | Criminal trespass - damage <500 - private | | 10/4/2018 | | Unknown | | |
| P-02694-2695 | 18-161411 | Battery | Assault | 10/5/2018 | 21:10 | Unknown | NS | A couple had a physical altercation |
| | 18-162704 | Vgcsa - sales - marijuana | | 10/9/2018 | | Unknown | | |
| | 18-176088 | Theft by conversion | | 10/11/2018 | | Unknown | | |
| P-02700-2704 | 18-163943 | Simple battery | Assault | 10/13/2018 | 10:00 | Inside and outside | NS | Complainant was assaulted by her boyfriend |
| P-02705-2708 | 18-166214 | Battery | Assault | 10/19/2018 | 0:09 | Inside | NS | Complainant was assaulted by her husband |
| P-02709-2710 | 18-166564 | Simple battery/Simple assault | Assault | 10/21/2018 | 2:30 | Inside | NS | A couple had an altercation |
| | 18-168101 | Battery FMILLY VIOLENCE | | 10/25/2018 | | Unknown | | |
| P-02713-2714 | 18-168170 | WANTED PERSON LOCATED | | 10/26/2018 | 0:00 | Unknown | | Warrant Arrest after a dispute call |
| P-02715-2717 | 18-172315 | Simple battery | Assault | 11/6/2018 | 22:10 | Unknown | NS | Complainant had a physical altercation with his girlfriend's son |
| P-02718-2725 | 18-174876 | Armed robbery - street - gun | Robbery | 11/14/2018 | 13:08 | Outside | U | Complainant was robbed by suspects he was trying to sell a game console to |
| P-02726-2727 | 18-174946 | WANTED PERSON LOCATED - ARREST RELEASE | | 11/14/2018 | 13:08 | Unknown | | Warrant Arrest after a robbery call (case 18-174876) |
| P-02735-2736 | 18-181963 | Obstructing or hindering law enforcement officers | | 12/5/2018 | 11:00 | Unknown | | A maintenance worker for the premises was arrested for Obstruction after being found with a subject wanted for murder out of DeKalb County |
| | 18-187908 | Theft by taking - automobile | | 12/18/2018 | | Unknown | | |
| P-02743-2744 | 18-188693 | Battery | Assault | 12/26/2018 | 4:00 | Outside | U | An intoxicated subject stated he was assaulted by an unknown suspect |
| P-02745-2749 | 19-000129 | Armed robbery - residence - gun | Robbery | 1/1/2019 | 7:00 | Inside | U | Complainant stated he was kidnapped and taken to the location to be robbed; **surveillance video showed differently and complainant was arrested for providing false statements** |
| P-02750-2757 | 19-000529 | Discharging firearm | Weapons | 1/2/2019 | 14:30 | Outside | | Arrests for Weapons, Stolen Property, Discharging a Weapon, and Obstruction after a shots fired call |
| | 19-000894 | Criminal trespass - trespass | | 1/3/2019 | | Unknown | | |
| P-02760-2762 | 19-001426 | Simple battery | Assault | 1/4/2019 | 19:50 | Outside | NS | Complainant stated she was assaulted and pepper-sprayed by an ex-friend |
| P-02763-2765 | 19-004092 | Simple battery | Assault | 1/13/2019 | 4:00 | Inside | NS | Complainant was assaulted by her boyfriend |

| Bates Number | Offense Report # | CFS Incident Type | UCR Crime | Date | Time | Location relative to Guest Rooms | Stranger or Non-Stranger | Details |
|---|---|---|---|---|---|---|---|---|
| | 19-004289 | Simple battery (DOMESTIC) | | 1/14/2019 | | Unknown | | |
| P-02769-2770 | 19-007680 | Battery | Assault | 1/24/2019 | 10:30 | Inside | NS | A boyfriend and girlfriend had a possible physical altercation |
| P-02771-2773 | 19-008484 | Simple battery | Assault | 1/26/2019 | 20:52 | Inside | NS | Complainant stated he was assaulted by his wife |