IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No. 1:20-cv-05233-SEG |
| | ) | |
| NORTHBROOK INDUSTRIES, INC., | ) | |
| d/b/a UNITED INN AND SUITES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S CONSOLIDATED MOTIONS *IN LIMINE***

## TABLE OF RESPONSES TO PLAINTIFF'S MOTIONS *IN LIMINE*

| **Motion #** | **Subject Matter** | **Page #** |
|---|---|---|
| 1. | Apportionment | 2 |
| 2. | Testimony of Detective Weber and Sergeant McClelland | 6 |
| 3. | Evidence of J.G.'s other sexual trauma | 11 |
| 4. | Evidence of J.G.'s criminal record for conduct at Stone Mountain Inn | 16 |
| 5. | Evidence of Stone Mountain Inn settlement | 18 |
| 6. | Curative instruction regarding staff records | 21 |

Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites ("Northbrook") hereby responds to the consolidated motions *in limine* filed by Plaintiff J.G. ("Plaintiff" or "J.G.").

Virtually all of Plaintiff's motions have something in common: they are Plaintiff's attempts to have the jury hear only part of the relevant story. This is an improper use of motions *in limine*. See Tannenbaum v. Clark, No. 88 C 7312, 1996 WL 147970, at *1 (N.D. Ill. March 28, 1996) (denying certain motions *in limine*; "We believe that the jury is entitled to hear the whole story, not a sanitized version.").

This case is a hotel sex-trafficking case, in which Plaintiff's alleged trafficking at United Inn in late 2018 and early 2019 is at issue. But to limit the evidence to only what happened to Plaintiff at United Inn would be to ask the jury to decide the case in a vacuum, which is antithetical to the purpose of the evidentiary rules. See Whitesell Corp. v. Electrolux Home Prods., Inc., CV 103-050, 2022 WL 3372761, at *1 (S.D. Ga. Aug. 16, 2022) (in context of deciding motions *in limine*, "[f]airness and securing a just determination of matters at issue are the hallmark of the Federal Rules of Evidence.") (internal quotation marks omitted). Plaintiff's experiences and own actions before, in between, and after the episodes of her alleged trafficking at United Inn are relevant. See Wilson v

Groaning, 25 F.3d 581, 584 (7th Cir. 1994) ("Evidence is relevant if its exclusion would leave a chronological and conceptual void in the story.").

In the pages that follow, Northbrook argues for an outcome on Plaintiff's motions *in limine* that will ensure that the jury deciding the case will have an opportunity to hear the <u>whole</u> story relevant to Plaintiff's TVPRA claim and render its verdict thereon.

## 1.    Response to Plaintiff's Motion *in Limine* #1 (Apportionment)

In her first motion *in limine*, Plaintiff moves to exclude at trial argument and evidence "regarding apportionment of damages under 18 U.S.C. § 1595(a)." Plaintiff's Consol. Motions at 2.  At one level, this motion presents the narrow issue of whether Georgia's apportionment statute applies to Plaintiff's claim under the TVPRA.  At another level, it is an issue touching Northbrook's right under the common law to introduce evidence and present argument as to the legal causes of Plaintiff's alleged harm.  Each concept is addressed here in turn.

### a.    Georgia's apportionment statute

Section 51-12-33 of the Official Code of Georgia Annotated is Georgia's apportionment statute.  In general, it provides a framework by which damages in tort actions may be apportioned among parties and nonparties according to levels of relative fault assigned by the fact finder.  <u>See generally</u> O.C.G.A. § 51-12-33(b).

2

If the Georgia apportionment statute applies in this case, then, assuming the jury found that Plaintiff proved her TVPRA claim, they would be given an opportunity in their verdict form to assign relative levels of fault (totaling 100%) among Northbrook, various nonparties previously identified by Northbrook,[1] and even Plaintiff herself.

At present, as far as Northbrook is aware there are no cases constituting binding precedent addressing the issue of whether the Georgia apportionment statute applies to cases brought under the TVPRA. The only case at any level deciding this issue is W.K. v. Red Roof Inns, Inc., Civil Action No. 1:20-cv-05263-VMC, 2024 WL 2892322 (N.D. Ga. June 10, 2024), a case in which Judge Calvert held that Georgia's apportionment statute does not apply to damages awarded under the TVPRA's civil "beneficiary" provision. 2024 WL 2892322, at *2-3.[2] The W.K. matter settled during trial and the apportionment issue was never

---

[1] Northbrook has complied with the requirement of O.C.G.A. § 51-12-33(d) that a defendant contending that a nonparty was wholly or partially at fault must give notice not later than 120 days prior to trial of its intention to seek apportionment. Northbrook filed such notice on October 11, 2023, in which it asserts notice of its intention to seek apportionment against nonparties such as Plaintiff's traffickers and their accomplices, and the corporate entities behind another hotel, Stone Mountain Inn, where Plaintiff was also trafficked. [Dkt. #85]

[2] Plaintiff also cites K.M. v. Reva Properties, LLC, Civil Action File No. 1:22-CV-3991-TWT, 2024 WL 1217420 (N.D. Ga. March 21, 2024). Plaintiff's Consol. Motions at 3. However, in K.M., Judge Thrash did not actually render a decision on whether Georgia's apportionment statute applies to the TVPRA. Instead, the court denied the plaintiff's early motion to strike the defendant's notice of

taken up on appeal.

Like Plaintiff, Northbrook will file a trial brief on the issue of the applicability of Georgia's apportionment statute to Plaintiff's TVPRA claim.

### b.    Common law principles

Plaintiff alleges that "[a]s a direct and proximate result of Northbrook's acts and omissions, and Plaintiff being trafficked for sex as a minor at the United Inn, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages."  See, e.g., Complaint [Dkt. #1] at ¶ 52.  Even if this Court were to determine that Georgia's apportionment statute does not apply to this TVPRA case, such a ruling would not impact Northbrook's right in any event to introduce evidence, present argument and obtain jury instructions on common-law principles, such as proximate cause, by which a jury could consider the role of other persons and incidents in causing Plaintiff's alleged injury.  Such common-law principles apply even though Plaintiff's claim is brought under a federal statute.

As the United States Supreme Court has explained,

> For centuries, it has been a well established principle of the common law, that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause. . . . Congress, we assume, is familiar with the common-law rule and does not mean to displace it *sub silentio*.  We have thus construed federal causes of action in a variety of contexts to incorporate a requirement of proximate

---

intention to apportion fault.  The case settled before any substantive ruling on whether the apportionment statute would be applied to the plaintiff's TVPRA claim.

causation.

Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 132 (2014) (some internal punctuation omitted).  Plaintiff's own briefing embraces this same concept.  See Plaintiff's Consol. Motions at 4 ("courts across the country have repeatedly turned to the general common law of torts to address other questions on which the TVPRA is silent to arrive at the source of the substantive rule of decision . . . .").

Thus, regardless of how the Court ultimately rules on application of Georgia's apportionment statute, Northbrook should be permitted to introduce evidence, present argument and obtain jury instructions on proximate cause and other common-law principles applicable to the claim and defenses in the case.  For example,

■    Northbrook should be permitted to introduce evidence and present argument regarding Plaintiff's trafficking at Stone Mountain Inn and at a third hotel, as such evidence is relevant to causation and damages associated with Plaintiff's claimed psychological harm.  See Northbrook's response to Plaintiff's motion in limine #3, infra p. 11.

■    Northbrook should be permitted to introduce evidence and present argument regarding Plaintiff's own conduct.  For example, J.G. has testified that she first went to United Inn in October of 2018 to be trafficked there by a man

whom she believed to be her boyfriend.  See Deposition of J.G., excerpted at Exhibit 1 hereto, at 22-25.  In January of 2019, J.G. returned to United Inn with three girls whom she knew from their group home.  Id. at 38.  The jury could find that Plaintiff's own conduct was a proximate cause of her injury and assess damages accordingly.  Indeed, "under Georgia law there maybe more than one proximate cause of an injury."  Lindsey v. Navistar Int'l Transp. Corp., 150 F.3d 1307, 1317 (11th Cir. 1998).

In short, even if this Court determines that Georgia's apportionment statute does not apply in this case, Northbrook is still entitled to present evidence, make argument and obtain jury instructions pertaining to proximate cause and other common-law principles.  Otherwise, the jury will be left with an incomplete and unfair portrayal of what happened to Plaintiff.


2.    **Response to Plaintiff's Motion *in Limine* #2 (Testimony of Detective Weber and Sergeant McClelland)**

Northbrook may introduce at trial the testimony of DeKalb County Police Detective Royal Weber and/or DeKalb County Police Sergeant Willie McClelland.  Both Detective Weber and Sergeant McClelland have, for many years (Sergeant McClelland since 2007; Detective Weber since 2016), provided evening off-duty police patrol at United Inn.  Detective Weber and Sergeant McClelland were both identified in Northbrook's Initial Disclosures.  Northbrook later tendered the

officers' affidavits (collectively, "Officer Affidavits").   See Exhibits 2 and 3 hereto.  Plaintiff never deposed either officer.

      **a.  Detective Weber and Sergeant McClelland are not offered as expert witnesses.**

Plaintiff argues in her second motion *in limine* that the Court should "sanction" Northbrook by precluding Detective Weber and Sergeant McClelland from testifying as to certain subject matter contained in their affidavits because, according to Plaintiff, they were not properly disclosed as expert witnesses.  See Plaintiff's Consol. Motions at 10-15.

The problem with Plaintiff's overzealous motion is that Northbrook does not intend, and has never intended, to offer Detective Weber and Sergeant McClelland as expert witnesses at trial.  Thus, there was no need for Detective Weber and Sergeant McClelland ever to have been designated as such, or for them to pass muster under a Rule 702/Daubert analysis, or for either of them to provide a written report.[3]  Nor were Detective Weber or Sergeant McClelland paid for their affidavit testimony, as Plaintiff now wildly speculates.

Instead, Detective Weber and Sergeant McClelland are simply lay witnesses who may be called to testify at trial primarily because both have provided off-duty patrol services at United Inn.  As lay witnesses, Detective Weber and Sergeant

---

[3] In contrast, Northbrook designated Karim Vellani as a testifying expert and Mr. Vellani provided a written report, all in compliance with Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702.

McClelland may give opinion testimony that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701 (opinion testimony by lay witnesses).

Plaintiff seems to contend that because Detective Weber and Sergeant McClelland are police officers, and their testimony relates to their experiences in the line of duty, they must be testifying as "experts."  However, a particular individual may be an expert witness in one context and a lay witness in another. "Just because a lay witness's position and experience <u>could</u> have qualified him for expert witness status does not mean that any testimony he gives at trial is considered 'expert testimony.'"  <u>U.S v. Jeri</u>, 869 F.3d 1247, 1265 (11th Cir. 2017) (emphasis in original; some internal punctuation omitted).  Moreover, "[l]ay witnesses may draw on their professional experiences to guide their opinions without necessarily being treated as expert witnesses."  <u>Id.</u> (upholding trial court's admission under Rule 701 of Homeland Security Investigations agent's testimony that, based on his experience investigating drug couriers, the defendant's actions represented a "very meticulous and a very – a thought-of plan.").

Plaintiff has identified in her briefing several statements from Detective Weber's and Sergeant McClelland's affidavits that Plaintiff contends constitute

inadmissible expert opinions.  However, a review of the statements indicates they are more akin to the opinions of lay witnesses who happen to be police officers.

For example, the officers testify in their affidavits that "[t]here are no areas on the hotel property that would provide concealment for commercial sex or other criminal activity outside, including in a car in the hotel parking lot."[4]  Officer Affidavits at ¶ 10.  This is a lay opinion that could be expressed by anyone – law enforcement professional or not – familiar with the United Inn premises.

By way of another example, each officer testifies in his affidavit that "[i]n all the time I have provided off-duty services at United Inn, I have not ever observed any activity that caused me concern that there might be sex trafficking going on there."  Officer Affidavits at ¶ 15.  This statement, to the extent it can even be characterized as an opinion, represents lay witnesses "draw[ing] on their professional experience to guide their opinions," Jeri, 869 F.3d at 1265, and thus is admissible as a lay opinion under Rule 701.

### b.    Detective Weber's and Sergeant McClelland's testimony is not improper "bolstering."

Plaintiff also complains that certain portions of Detective Weber's and Sergeant McClelland's affidavits constitute improper "bolstering" of Northbrook staff.  Plaintiff's Consol. Motions at 17-19.  Plaintiff's contention is without merit.

---

[4] J.G. alleges that she had as many as six sexual encounters a day in cars in the United Inn parking lot.

"Bolstering" is a concept typically arising in the criminal context.  <u>Garcia v. GEICO Gen. Ins. Co.</u>, 807 F.3d 1228, 1234 (11th Cir. 2015) ("[B]olstering typically comes up in criminal cases.").  "A court may exclude evidence as improper bolstering when the purpose of the evidence is to vouch for a witness's credibility."  <u>Id.</u>

In their affidavits, Detective Weber and Sergeant McClelland testify as to their roles providing off-duty police patrol at United Inn.  Among other things, the officers describe generally how they carry out their patrol duties each evening, including how they interact with hotel staff.  For example, the officers explain:

> The front-desk staff will call my cell phone if they need help or want something suspicious to be checked out.  (Officer Affidavits at ¶ 7)

> Hotel employees at the front desk monitor the security cameras, and those employees will contact the off-duty officer, or vice versa, if there is an unusual amount of activity in/around a particular room. (Officer Affidavits at ¶ 10)

> In my experience, the management at United Inn has always cooperated with police officers and any other law enforcement agencies that show up at the property.  When the police want someone removed from the property, the hotel will not continue to rent a room to that person and will not allow them to remain on the property. (Officer Affidavits at ¶ 14)

Plaintiff contends that the word "will" in each excerpt above should be read as the officers improperly vouching for Northbrook staff.

As an initial matter, the affidavits themselves are not direct evidence to be presented at trial.  More importantly, Plaintiff misinterprets the affidavit testimony.

10

The officers are not vouching for anyone in their affidavits. Nor are they suggesting that any Northbrook staff member must have done something on any particular occasion, which might implicate Federal Rule of Evidence 404 (character evidence). Rather, the word "will" in this context signifies nothing other than a description of how security issues are typically or routinely handled at United Inn.[5] Plaintiff is free to cross-examine the officers at trial to learn more.

3. **Response to Motion *in Limine* #3 (Evidence of J.G.'s other sexual trauma)**

In her third motion *in limine*, Plaintiff seeks an order excluding all evidence of her sexual history other than her being trafficked at United Inn. The requested relief would thus preclude, for instance, evidence of the fact that J.G. was trafficked at another, unrelated property, Stone Mountain Inn, both before and after her alleged trafficking at United Inn, and at another, unnamed hotel in between her stays at United Inn. Northbrook asks that this motion be denied.

Plaintiff's motion is predicated on Federal Rule of Evidence 412, which generally prohibits, in a civil or criminal proceeding involving alleged sexual misconduct, the admission of (1) evidence offered to prove that a victim engaged in other sexual behavior, or (2) evidence offered to prove a victim's sexual

---

[5] "will: . . . 2. – used to express frequent, customary, or habitual action or natural tendency or disposition ([will] get angry over nothing) ([will] work one day and loaf the next)." Merriam Webster's Collegiate Dictionary (10th ed. 1996).

predisposition.  Fed. R. Evid. 412(a).  The rule "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details . . . ."  Fed. R. Evid. 412 advisory committee note to 1994 amendments.

Rule 412 provides an express exception to this general rule in civil cases, where "the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."  Fed. R. Evid. 412(b)(2).

Despite the general prohibitions of Rule 412, courts have permitted evidence of a plaintiff's sexual history prior or subsequent to the incident in question when the plaintiff is claiming emotional or psychological injury.  In such cases, courts have found that Rule 412 does not apply to exclude the evidence and/or that the probative value of the evidence outweighs any harm or prejudice.

For example, in W.K., a recent TVPRA case in this district, Judge Calvert granted, over the plaintiffs' opposition, the Red Roof hotel defendants' motion seeking to admit evidence of the plaintiffs' sexual trauma other than the specific hotel trafficking at issue in the case.  Judge Calvert ruled that the hotel defendants

> should be allowed to present evidence that Plaintiffs suffered other sexual trauma, either before or after they were allegedly trafficked at the Red Roof hotels, as a way to contest causation and the amount of damages Plaintiffs are seeking. . . . Defendants have a right to present a defense that challenges causation and damages, and the jury should know about the full extent of Plaintiffs' sexual trauma as they

consider causation and damages.  To hold otherwise would be unfair to Defendants and misleading to the jury.

2024 WL 5114059, at *4.  The court concluded "this evidence is admissible for reasons other than the prohibited uses in Rule 412 and that the probative value of this evidence outweighs the prejudice to Plaintiffs."  Id.

Other courts have reached a similar conclusion.  See, e.g., Lane v. Am. Airlines, Inc., 18-CV-6110 (MKB), 2024 WL 1200074, at *3 (E.D.N.Y. Feb. 27, 2024) (in case alleging sexual assault during airline flight, finding Rule 412 "not applicable to evidence of [plaintiff's] trauma history"; admitting such evidence to "identify sources of her trauma other than the alleged sexual assault on the Flight or as evidence of her damages."); Doe v. Bridges to Recovery, LLC, Case No. 2:20-cv-348-SVW, 2021 WL 4690830, at *17 (C.D. Cal. May 19, 2021) (in sexual assault and battery case, "the Court finds that evidence of the prior sexual assaults is admissible to prove other sources of emotional distress . . . and FRE 412 does not compel a different conclusion.").  See also Ramsbottom v. Ashton, No. 3:21-cv-000272, 2023 WL 3098824, at *6 (M.D. Tenn. Apr. 26, 2023) (in TVPRA case, requiring, over plaintiffs' Rule 412 objection, production in discovery of information pertaining to prior sexual relationships; "[t]his information has obvious relevance to the plaintiffs' claims of mental and emotional harm.").

In the present case, Plaintiff alleges that "[a]s a direct and proximate result of Northbrook's acts and omissions, and Plaintiff being trafficked for sex as a

minor at the United Inn, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages." See, e.g., Complaint [Dkt. #1] at ¶ 52. This same plaintiff, proceeding as "A.B." in other litigation concerning her sex trafficking at Stone Mountain Inn, made the same allegation of injury in that case as a result of her sex trafficking at that property, which occurred both before and after her alleged trafficking at United Inn. See A.B. v. H.K. Grp. of Co., Inc., Case 1:21-cv-01344-VMC (N.D. Ga., filed Apr. 2, 2021), Dkt. #1 at ¶ 54 ("As a direct and proximate result of the acts and omissions of [Defendants], and Plaintiff being trafficked for sex as a minor at the Stone Mountain Inn, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.").[6] The jury in the instant case should be permitted to hear of Plaintiff's trafficking at Stone Mountain Inn and any other sexual trauma she has sustained so that it can make a determination as to what portion, if any, of Plaintiff's alleged emotional and psychological injury was caused by her trafficking at United Inn as opposed to her trafficking elsewhere, and the amount of damages, if any, to award as a result.

Plaintiff expresses concern that if she is required to testify in this case about the sexual trauma she suffered at Stone Mountain Inn, she may be subject to "retribution" from the "armed gang members" who trafficked her there. Plaintiff's Consol. Motions at 22. This is not a compelling argument, as Plaintiff already

---

[6] Plaintiff has also testified that she was trafficked for a day at a third, unnamed hotel. See Exhibit 1 hereto at 18.

publicly disclosed her allegations of being sex trafficked at Stone Mountain Inn when she filed the A.B. lawsuit. See, e.g., Bridges to Recovery, 2021 WL 4690830, at *17 (previous disclosure of prior sexual assaults mitigates danger of unfair harm or prejudice to plaintiff from admission of same information at trial). Moreover, if the Court determines that Plaintiff would truly be placed in danger by testifying in open court about her sexual trauma at Stone Mountain Inn or elsewhere, then the Court has various means at its disposal to keep the testimony from being aired publicly.

In sum, Northbrook should be permitted to present evidence of Plaintiff's sexual trauma other than her trafficking at United Inn, as it is relevant to the issues of both causation and damages. The jury should not be required to view Plaintiff's alleged trafficking at United Inn in a vacuum. To leave out the fact that Plaintiff was also sex trafficked elsewhere is to tell the jury only half the story. Excluding evidence of Plaintiff's other sexual trauma would be unfair to Northbrook and misleading to the jury, as they could improperly conclude therefrom that Plaintiff's alleged injury "must" have come from her experience at United Inn.[7]

---

[7] Rule 412 requires that a party intending to offer evidence under Rule 412(b) must file a motion to that effect at least 14 days before trial. Although some courts have concluded that under these circumstances evidence of Plaintiff's other sexual trauma would not even be governed by Rule 412, out of an abundance of caution Northbrook will file such a motion.

15

4.    **Response to Motion *in Limine* #4 (Evidence of Plaintiff's criminal record for conduct at Stone Mountain Inn)**

On March 13, 2019 – two months after J.G. alleges she was last trafficked at United Inn – J.G. was arrested and charged with, <u>inter alia</u>, pimping a minor and trafficking in conjunction with her activities with a 16-year-old girl, "C.C.," at Stone Mountain Inn.   In October of 2020, the prosecutor dropped the charges against J.G. on the basis that J.G. was herself a trafficking victim.   Plaintiff now seeks to exclude evidence of her arrest at Stone Mountain Inn under Federal Rules of Evidence 402 (relevance), 403 (prejudice) and 404 (character evidence).   <u>See</u> Plaintiff's Consol. Motions at 23-25.   Northbrook asks that Plaintiff's motion be denied.

As articulated throughout this brief, J.G.'s activities at Stone Mountain Inn are highly relevant and an important part of J.G.'s story in general.   Northbrook intends to use evidence of J.G.'s arrest for pimping and trafficking another girl at Stone Mountain Inn to demonstrate that it was not readily apparent to law enforcement officers on-scene that J.G. was herself a trafficking victim.   Such evidence is relevant to the showing that Plaintiff must make to prevail on her TVPRA claim in this case – <u>i.e.</u>, that Northbrook knew or should have known that J.G. was a minor who was being offered for commercial sex at United Inn.   <u>See</u> <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714, 726 (11th Cir. 2021) (elements of TVPRA claim).   Northbrook contends that it would not have been obvious to

United Inn management and staff that Plaintiff was a sex-trafficking victim – just as it was not obvious to law enforcement officers who encountered and arrested her at Stone Mountain Inn two months later.

In this way, Plaintiff's arrest for trafficking another girl at Stone Mountain Inn is not character evidence prohibited by Rule 404. Rule 404 prohibits the use of evidence of a person's character or character trait "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). In other words, Rule 404 "prohibits an attempt to use a person's personality or psychological propensity to prove what the person did." U.S. v. Williams, 900 F.3d 486, 490 (7th Cir. 2018) (internal quotation marks omitted).

Here, evidence of J.G.'s arrest for pimping and sex trafficking another girl at Stone Mountain Inn is not being used to prove what J.G. did. The fact that J.G. was arrested for trafficking another girl at Stone Mountain Inn is not being used, for example, to suggest that J.G. trafficked someone at United Inn. It is simply being used to demonstrate that J.G. did not readily present as a victim of sex trafficking – either at Stone Mountain Inn or at United Inn.

Plaintiff will not be prejudiced by the introduction of evidence of her arrest at Stone Mountain Inn because it will be accompanied by evidence that the criminal charges against her were subsequently dismissed because she was a trafficking victim herself.

The jury should also be permitted to consider whether being taken to jail for pimping and trafficking another girl is the cause of any of the psychological injury for which Plaintiff seeks compensation in this case.

**5.      Response to Motion *in Limine* #5 (Settlement with Stone Mountain Inn)**

In her fifth motion *in limine*, Plaintiff seeks to exclude evidence of a settlement she obtained in a separate TVPRA lawsuit she filed concerning her sex trafficking at Stone Mountain Inn – <u>A.B. v. H.K. Grp. of Co., Inc.</u>, Case 1:21-cv-01344-VMC (N.D. Ga., filed Apr. 2, 2021) (the "Stone Mountain Inn litigation"). Plaintiff's Consol. Motions at 25-28. Plaintiff's trafficking at Stone Mountain Inn occurred during the same general time period as her trafficking at United Inn, as Plaintiff moved back and forth between the properties in the summer and fall of 2018 and early 2019. The Stone Mountain Inn litigation was settled in the summer of 2022, with Plaintiff receiving an as-yet undisclosed amount in settlement.

Plaintiff contends that evidence of settlement of the Stone Mountain Inn litigation should be excluded from the trial of the present case under Federal Rules of Evidence 408 (compromise of claim), 402 (relevance) and 403 (prejudice). Plaintiff's objection to the use of this evidence is without merit, as demonstrated by the following explanation of the use to which Northbrook intends to put such evidence.

Plaintiff has testified that she was sex trafficked at three different hotels –

Stone Mountain Inn, United Inn and a third hotel on Memorial Drive in Decatur. Plaintiff sued both Stone Mountain Inn and United Inn, making in both cases the same claim for "substantial physical, emotional, and psychological harm and other damages" arising from being trafficked. But Plaintiff has not identified any expert to attempt to distinguish between J.G.'s psychological trauma caused by being trafficked at Stone Mountain Inn and her psychological trauma allegedly caused by being trafficked at United Inn, if that were even possible.

The "one-satisfaction" rule operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury. See BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271, 1276 (11th Cir. 2008) (the rule "generally provides that a plaintiff is entitled to only one satisfaction for a single injury").

There is "ample authority" for the application of the one-satisfaction rule in federal causes of action. Id. at 1278 n.7. Indeed, the rule has specifically been applied in the context of the TVPRA. See Wang v. Gold Mantis Constr. Decoration (CNMI), LLC, 705 F. Supp. 3d 1190, 1217-18  (D. N. Mar. I. 2021) (applying one-satisfaction rule to credit plaintiffs' TVPRA claim settlement with contractors against judgment against project owner).

Under the one-satisfaction rule, the monies that Plaintiff received from her Stone Mountain Inn settlement should operate as a credit against the damages for any and all injury she has sustained from her sex trafficking generally, including

her alleged trafficking at United Inn. Any other outcome would unjustly enrich Plaintiff, as she would stand to recover more than the monies that would compensate her in toto for the trauma associated with her sex trafficking.[8]

Viewed against this backdrop, evidence of the Stone Mountain Inn settlement is admissible. Rule 408 of the Federal Rules of Evidence prohibits the use of evidence of a settlement "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). However, the rule recognizes that the court "may admit this evidence for another purpose." Fed. R. Evid. 408(b). Here, the permissible purpose would be to apply the Stone Mountain Inn settlement as a credit against the total monetary damages for Plaintiff's sexual trauma.

Likewise, evidence of the Stone Mountain Inn settlement is admissible under Rule 402 because it is relevant to both Plaintiff's claim and Northbrook's defense. The jury should be permitted to consider the extent to which monies Plaintiff has already received in compensation for sex-trafficking trauma should be factored into her claim for damages for sex-trafficking trauma in this case. Moreover, evidence of the Stone Mountain Inn settlement is not confusing or a "waste of time," as Plaintiff argues, and thus is not excludable under Rule 403.

---

[8] Plaintiff alleges that the same individuals who trafficked her at Stone Mountain Inn brought her to United Inn to traffic her there. Plaintiff's Consol. Motions at 26. If that is true, then it is further evidence that Plaintiff's injury from being trafficked at United Inn is indivisible from her injury from being trafficked at Stone Mountain Inn. A credit for the Stone Mountain Inn settlement is appropriate.

Northbrook anticipates that Plaintiff may claim that evidence pertaining to the Stone Mountain Inn settlement is not admissible because the settlement is confidential. See, e.g., Exhibit 4 hereto at 2 (Plaintiff objects to production of Stone Mountain Inn settlement agreement during discovery on grounds that it is a "binding and enforceable confidential contract"). However, a party cannot hide behind a claim of confidentiality to avoid disclosure of information needed to apply the one-satisfaction rule. See, e.g., In re Enron Corp. Sec., Derivative and ERISA Litig., 623 F. Supp. 2d 798, 835-840 (S.D. Tex. 2009) (recognizing right of defendant to learn terms of plaintiffs' confidential settlements in other actions for purposes of application of one-satisfaction rule).

6.     **Response to Plaintiff's "Notice of intent to file motion for curative instruction" on Northbrook staff records**

Section 6 of Plaintiff's consolidated motions *in limine* purports to be a notice of Plaintiff's intention to move for a "curative instruction" from the Court relating to Northbrook's production of documents pertaining to its employees. Plaintiff's Consol. Motions at 28-30. Any such motion should be denied.

Plaintiff's "notice of intent" is its attempt to relitigate the very issues previously raised and disposed of by the Court in Plaintiff's motion for sanctions. By way of review, in October of 2023, Plaintiff filed a motion for sanctions against Northbrook for Northbrook's failure to conduct a reasonable initial search for

documents.  [Dkt. #86]  Among the issues raised by Plaintiff in her motion for sanctions was Plaintiff's dissatisfaction with Northbrook's production of "conflicting" or "partial" staff records for the relevant time period.  See id. at 9 n.6, 11, 24, 25.  In her motion, Plaintiff requested monetary sanctions, as well as non-monetary sanctions, including "a jury instruction on how Defendant's conflicting and partial staff records compromised Plaintiff's ability to investigate and cross examine Defendant's claims about staff crime reports and staff trainings, among other topics."  Id. at 25.  Although the Court agreed with Northbrook that the deficiency in its initial production ultimately was "harmless,"  Dkt. #138 at 45, the Court partially granted the motion for sanctions, awarding $37,100.16 to Plaintiff. Id. at 54.  Importantly for the present discussion, the Court declined Plaintiff's request for non-monetary sanctions such as the requested jury instruction on staff records.  See id. at 48-49 ("Considering the Court's determination that extended discovery and related measures cured any prejudice to Plaintiff's ability to make her case, the Court finds the requested non-monetary sanctions to be disproportionate.").  Thus, the Court has already declined to grant the additional sanction that Plaintiff seeks again here.

A curative instruction is inappropriate, as there is nothing to "cure."  This Court has previously determined that the initial deficiency in Northbrook's production was "harmless," and that "[a]ny prejudice that Plaintiff may have

suffered . . . was cured by the discovery extension that the Court granted at Plaintiff's request." Id. at 45, 47.

If Plaintiff doesn't have all the information she now wishes she had, that is Plaintiff's own doing. Plaintiff was provided in discovery with the names and job positions of more than a dozen Northbrook employees, all of whom would have been made available for deposition simply by contacting Northbrook counsel. See, e.g., Northbrook's Initial Disclosures, Exhibit 5 hereto, at Attachment A; Northbrook's Responses to First Continuing Interrogatories, Exhibit 6 hereto, at 2-3. Plaintiff deposed the Northbrook owner and United Inn manager (twice each), asking them about employee lists, payroll records and the like. Plaintiff did not depose any of the other Northbrook employees who had been identified. Plaintiff should not be heard to complain that she couldn't get all the information she wanted from Northbrook's employees when she never even bothered to depose them.

Finally, to the extent Plaintiff believes Northbrook employment records to be "conflicting" or "partial," she can cross-examine Northbrook's owner and manager about the records at trial. Indeed, Northbrook's staff records and W-2s already appear on Plaintiff's current trial exhibit list.

## **L.R. 7.1(D) CERTIFICATION**

The undersigned counsel hereby certifies that this filing has been prepared in Times New Roman (14 point), which are font and point selections approved by the Court in L.R. 5.1(C).

Respectfully submitted,

 */s/ Dana M. Richens*
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia  30309
Telephone:  (404) 815-3659
Facsimile:  (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.
d/b/a United Inn and Suites

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date served all parties with the within and foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S CONSOLIDATED MOTIONS *IN LIMINE*** via the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 14th day of March, 2025.


   */s/ Dana M. Richens*