## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **J.G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., D/B/A UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF J.G.'S RESPONSE IN OPPOSTION TO DEFENDANT'S CONSOLIDATED MOTIONS IN LIMINE

Plaintiff J.G. ("**J.G.**") hereby responds in opposition to Defendant Northbrook Industries Inc. d/b/a United Inn and Suites' ("**United Inn**") Consolidated Motions *in Limine* and submits the incorporated memorandum of law in support.

## TABLE OF MOTIONS *IN LIMINE*

| **Motion #** | **Subject Matter** | **Page #** |
|---|---|---|
| I. | Response in Opposition to Defendant's *Motions in Limine Nos.* 1 – 5. | 1 |
| II. | Response to Motion *in Limine* No. 6. | 23 |
| III. | Response to Motion *in Limine* No. 7. | 23 |
| IV. | Response in Opposition to Motion *in Limine* No. 8. | 24 |
| V. | Response in Opposition to Motion *in Limine* No. 9. | 26 |
| VI. | Response in Opposition to Motion *in Limine* No. 10. | 29 |
| VII. | Response in Opposition to Motion *in Limine* No. 11. | 30 |

I.   <u>J.G.'s Response in Opposition to Defendant's Motions *in Limine* Nos. 1–5.</u>[1]

In Motions *in Limine* Nos. 1–5 ("MILs 1–5"), United Inn seeks to exclude a "wide swath" of evidence in advance of trial that it says J.G. will use to argue that United Inn is a "bad" hotel.  The evidence at issue concerns other instances of sexual crimes and sexual violence at the hotel, including minor sex trafficking, the hotel's high crime rate, and DeKalb County's efforts to shut down the hotel because of its serial violations of DeKalb County codes.

MILs 1–5 should be denied for three reasons.  *First*, the challenged evidence is relevant to the elements of 18 U.S.C. § 1595(a), including the second element, "participation in a venture," and the fourth element, "knew or should have known that the venture violated the TVPRA as to Plaintiff."  The Court has already noted the relevance of much of the challenged evidence to J.G.'s § 1595(a) beneficiary claim.  (Doc. 138 at 22, 24).  *Second*, the challenged evidence is admissible under Rule 404(b)(2) to prove motive, opportunity, knowledge, absence of mistake, lack of accident, and *modus operandi*.  *Third*, the challenged evidence is admissible as impeachment evidence.

---

[1]  Plaintiff hereby responds jointly to MILs 1–5 because the motions raise substantially overlapping legal issues.  The respective motions seek to exclude evidence related to the following:  (1) United Inn's 2018 guilty plea to 447 violations of the DeKalb County Code, (2) minor sex trafficking at United Inn the year prior to J.G.'s trafficking there, (3-4) "other crimes or incidents at United Inn" before *and* after J.G.'s trafficking, including minor sex trafficking, and (5) United Inn's high-crime rate.  Plaintiff also addresses, *infra*, distinct arguments raised in MILs 1–5.

J.G. does not intend to use the challenged evidence to prove that United Inn is a "bad" hotel.  Rather, J.G. will prove, through the challenged evidence and other evidence, that it was not an accident or a fortuity that J.G. was sex trafficked at United Inn for nearly 40 days as a 16-year-old, even after the hotel received notice that she was a missing minor suspected of being at the hotel.  Indeed, J.G. will prove that her veteran traffickers—who were dangerous gang members—chose to operate out of multiple rooms at the hotel, for months at a time, because its operations, policies, and personnel made it the perfect place to carry out their flourishing drug and sex trafficking businesses.  J.G. was sexually assaulted over 400 times in hotel rooms and cars in the hotel parking lot because of the hotel's complicity in *and* complacency about violating the law.  J.G. will prove that United Inn condoned and facilitated J.G.'s sex trafficking through its policies, actions, and staff.

## **BACKGROUND**

Plaintiff brought two claims against United Inn: a beneficiary claim under 18 U.S.C. § 1595(a) ("**TVPRA**") and a negligence claim. (Doc. 1). The Court dismissed Plaintiff's negligence claim; trial will concern the § 1595(a) claim. (Doc. 138).

A. Overview of MILs 1–5.

In MILs 1–5, United Inn moves to exclude a "relatively wide swath of potential evidence" in advance of trial.  (Doc. 160 at 5).  MIL 1 seeks to exclude evidence of "citations, fines and related court proceedings, and media coverage

thereof" concerning 447 DeKalb County code violations assessed against United Inn during the relevant period. (Doc. 160 at 5).[2]  MIL 2 requests "an order excluding from the trial of this case testamentary and documentary evidence concerning the trafficking of A.G. and G.W. at United Inn and the related investigation and conviction of their trafficker." (*Id.* at 8). MIL 3 seeks "an order excluding from the trial of this case testamentary and documentary evidence of crimes or incidents at United Inn other than those involving Plaintiff." (*Id.* at 11). It explains: "[t]he documents that Plaintiff has identified as potential trial exhibits that fit into this category consist primarily of DeKalb County Police Department reports." (*Id.*). MIL 4 requests an "order excluding from the trial of this case testamentary and documentary evidence postdating January 2019." (*Id.* at 15). Finally, MIL 5 seeks "an order excluding from the trial of this case testamentary and documentary evidence, or argument, comprising a description or characterization of United Inn as a 'high-crime' property or location, or as being located in a 'high-crime' neighborhood or area." (*Id.* at 17).

B. <u>Factual Background Relevant to MILs 1–5.</u>

Minor sex trafficking cannot occur without a venue; there must be a place for the victims to be trafficked. This case is about the place where J.G. was sex

---

[2] Page numbers are the numbers stamped on the filed document in CM-ECF.

trafficked by violent armed gang members for nearly 40 days as a 16-year-old in 2018 and 2019: United Inn & Suites.

At trial, the evidence will show that DeKalb County Police Department considered United Inn a "problem hotel" "for drug[s] and prostitution." (Doc. 115 at 9). "It was like a radar hotel" because such crimes were so "common." (*Id.*) There were a "number of women" "working at the [United Inn]" "doing commercial sex activities" who were working for several men living at United Inn. (*Id.*)

From 2012 – 2016, the Dekalb County Police Department came to the United Inn *at least* seven times for commercial sex crimes specifically. (*Id.*)

In 2017, the year before J.G. was trafficked at United Inn, commercial sex was rampant—local or federal law enforcement came at least four times for commercial sex crimes specifically. (*Id.* at 10). In May 2017, the United Inn manager texted with a security guard at the hotel about a prostitution-related shooting at the hotel. (*Id.*) On June 2, 2017, a man was arrested after beating a woman at the United Inn over monies owed for sexual favors. (*Id.*) On June 20, 2017, police responded to a fight between a prostitute and her pimp at the United Inn. The pimp left the prostitute's room after the fight to go stay in another woman's room at the hotel (likely another prostitute). (*Id.*) From June 23 – 26, 2017, two 17-year-old girls were sex trafficked together in the same room at United Inn—A.G. and G.W. (*Id.*) On July 2 – July 4, and July 20 – July 21, G.W. was trafficked at

United Inn again. (*Id.*) On July 20, 2017, the Metro Atlanta Child Exploitation Task Force conducted an operation "in reference [to] child and adult prostitution" at the United Inn. (*Id.*)

From 2017 – 2019, ***at least 9 minors*** were sex trafficked at United Inn. Two in 2017, multiple in 2018, and six in 2019. (*Id.* (G.W. and A.G. trafficked at United Inn in June – July 2017)); (Doc. 115 at 7 (J.G. trafficked with other girls and women at United Inn in October 2018 – January 2019)); (Doc. 115-3 at 1-2 (four minors trafficked at United Inn in January 2019)); Doc. 116-7 at 39:23 – 41:11 (two other minors trafficked at United Inn in September 2019)).

This volume of commercial sex crimes does not just seem high, it is high. That's why the DeKalb County Police Department considered it a "problem hotel" with "common" drug and sex crimes. (Doc. 115 at 9).

Sex crimes—and other types of violent crime—were pervasive at United Inn day-after-day, year-after-year for a specific reason: the way the hotel was operated. The hotel "didn't care" about J.G.'s traffickers' activity. (*Id.* at 5). "[W]hen housekeeping came, nothing changed," "they didn't bother to hide nothing." (*Id.*) Girls, drugs, guns, condoms, and cash, among other paraphernalia, were plainly visible in the rooms. (*Id.*) J.G.'s traffickers were "cool with everybody who worked up there." (*Id.*) J.G.'s traffickers felt comfortable at the hotel; they chose to rent multiple rooms there at the same time for months. (*Id.*) J.G. will prove that at least

5

one of her traffickers was at United Inn with multiple rooms at least from October 2018 – January 2019, with multiple girls in the rooms. (*Id.* at 7). J.G.'s traffickers made lots of money from trafficking girls and drugs, and the hotel did, too.[3]

United Inn's staff did not just stand by as the crime proliferated at United Inn, they participated. A front desk worker bought drugs from J.G.'s trafficker, Cash, and helped his trafficking operation by warning him about too much foot traffic to the room and helping him switch rooms to avoid scrutiny and attention. (*Id.*) He paid cash under the table to be let into rooms before they were supposed to be available. (*Id.*) Front desk staff assisted J.G.'s traffickers, who already had multiple rooms rented at the same time, with regular and repeated room changes. (*Id.*)

And that is what the known staff did. In discovery, the hotel could not (or would not) identify everyone who worked at the hotel during the relevant time period. (Doc. 161 at 30-32). It initially said it ran background checks on its employees, and then said it did not. (Doc. 115 at 12).

The reason that United Inn had such prevalent crime was not just that its staff "didn't care," was "cool" with gang members and traffickers, and helped the traffickers by aiding and abetting their criminal operations, it was also because of the staff that United Inn chose *not* to have. For most of the night, United Inn had one staff person working behind thick-panned glass in the lobby at a hotel with up

---

[3] J.G. testified that she had commercial sex with over 400 sex buyers at the hotel.

to 600 guests.   (*Id.* at 11).  The DeKalb Police Department recommended more security at the hotel, but the hotel did not get it. (*Id.*)

There's also United Inn's serial disregard of the law.  At all relevant times, it did not post anti-trafficking notices, which is a criminal misdemeanor under Georgia law. (*Id.* at 12)  At all relevant times, it paid certain employees cash, did not maintain payroll records, or tax records, in violation of tax and employment laws.  (Doc. 161 at 30-32).  Also, by its owner's admission, from 2017 – 2019, it "regularly violated DeKalb County codes."  (Doc. 116-8 at 73:10-16).  After the County assessed the hotel 447 violations in 2017, the County was going to "shut down" the hotel.  (Doc. 116-2 at 350:2-6).[4]  It was not until June 2019 (after J.G. was trafficked at United) that the County agreed that United Inn was allowed to renew its business license. (*Id.* at 348:16-350:6).

The foregoing evidence, and more, proves that it was not an accident or fortuity that J.G. was trafficked at United Inn.   J.G.'s traffickers chose to rent multiple rooms at the same time at United Inn for months on end, because it was the ideal place to carry out their booming illegal sex and drug trafficking enterprises.

---

[4] As discussed *infra*, code violations at a hotel (e.g., abandoned vehicles, trash, etc.) are relevant to the amount of criminal activity at the hotel, and to J.G.'s testimony that she had commercial sex with dozens of men in cars in the parking lot. (Doc. 116-7 at 38:1-9 (hotel "[h]ad a lot of abandoned vehicles in the back side of the parking lot."); (Doc. 116-8 at 133:7-19 (regarding citations for abandoned cars)).

## **ARGUMENT**

A. <u>MILs 1–5 Should be Rejected because they Seek to Exclude Evidence Relevant to J.G.'s Beneficiary Claim under 18 U.S.C. § 1595(a).</u>

MILs 1–5 should be rejected because they seek to exclude evidence that is directly relevant to essential elements of J.G.'s beneficiary claim under 18 U.S.C. § 1595(a). The Court has previously recognized the relevance of much of the challenged evidence to J.G.'s beneficiary claim. (Doc. 138 at 22, 24).

To prevail on her beneficiary claim under 18 U.S.C. § 1595(a), J.G. must introduce evidence at trial proving that United Inn: "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the Plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to Plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

MILs 1–5 seek to exclude evidence relevant to the second and fourth elements of Plaintiff's § 1595(a) claim. Starting with the second element, J.G.'s burden at trial is to prove that United Inn "t[ook] part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 724-725. In formulating that element, the Eleventh Circuit analyzed the "plain meaning" of the phrase "participation in a venture" in § 1595(a). It cited to dictionaries defining the term, "venture," as "an undertaking or enterprise involving risk and potential profit." *Id.*

(citations omitted). And to dictionaries that define the term, "participate," as "to take part in or share with others in common or in an association." *Id.* (citations omitted). The Eleventh Circuit concluded that the "plain meaning" of "participation in a venture" is "taking part in a common undertaking or enterprise involving risk and potential profit."

Applying that definition here shows the relevance of the evidence United Inn challenges in MILs 1–5. At trial, J.G. intends to argue that United Inn "t[ook] part in a common undertaking or enterprise involving risk and potential profit" by: (1) operating a for-profit hotel on private property with a high-crime rate in a high-crime neighborhood with a history of commercial sex crimes year-after-year, (2) refusing to hire adequate security as recommended by the DeKalb County Police Department, (3) failing to properly staff the hotel (*i.e.*, employing insufficient staff, nameless staff, and unchecked staff), (4) renting multiple rooms at the hotel to the same men for months at a time (with girls, drugs, guns, and condoms in those rooms) while having inadequate security and improper staffing, (5) employing staff who aided and abetted J.G.'s traffickers, and (6) violating the law routinely through failing to post required anti-trafficking notices, violating County codes repeatedly, and disregarding employment and tax laws. Put another way: the "venture" that J.G.'s traffickers joined was a hotel with policies, practices, and personnel that promoted criminal activity all of sorts, including drug and sex trafficking. *Doe #1* referenced

the definition of "venture" in Oxford's English Dictionary (i.e., "[a]n enterprise of a business nature in which there is considerable risk of loss as well as chance of gain"), which fits like a glove here—there was "considerable risk of loss" to United Inn because of its described policies, practices, and personnel, *and*, "chance of gain," through renting rooms to J.G.'s traffickers and other gang members.

At a minimum, the challenged evidence is relevant circumstantial evidence from which a reasonable jury could draw the rational conclusion that United Inn participated in a venture with J.G.'s traffickers under 1595(a).  Doc. 138 at 23 ("It bears emphasizing that Plaintiff is not limited to direct evidence in proving her claims.") (citations omitted).

The Court has previously recognized the relevance of the challenged evidence to the second element of J.G.'s § 1595(a) claim.  For example, in its order denying United Inn's Motion for Summary Judgment on J.G.'s § 1595(a) claim, the Court said that "***the trier of fact will view***" evidence of J.G.'s trafficking at United Inn "along with ***additional, contextual evidence of a booming prostitution industry at the United Inn more generally***." (Doc. 138 at 22) (emphasis added).  The court explained (correctly) that, the "***record contains evidence that at least three other men trafficked underage girls for sex at the United Inn roughly a year before J.G. was there***."  (*Id.*) (emphasis added).  Which, the Court observed, is consistent with the testimony of Detective King "***that there were multiple men overseeing***

10

*commercial sex workers at the United Inn from 2015 to 2021*." (*Id.*) (emphasis added). The court concluded: "*A reasonable jury could find that the ubiquitous presence of sex trafficking at the United Inn during the relevant periods supports Plaintiff's claim of Northbrook's 'ongoing business relationship' with sex traffickers, and with J.G.'s traffickers in particular*." (*Id.*) (emphasis added).

In the same order, the Court noted that, "*[a] jury could find* … that *Northbrook had an ongoing interest in the success of a venture with Plaintiff's traffickers, and that it took on risk to further the ends of that venture*" based on evidence "that *sex trafficking at the hotel was 'blatant*,'" "that the DeKalb County Police Department *recommended* that Northbrook hire *additional security* guards," that United Inn "had *only one security guard on the property* between 10 p.m. and 2 a.m. and *did not have security outside of those hours*," and that United Inn "also *failed to post legally mandated anti-trafficking notices* on its property." (*Id.* at 24) (emphasis added).

The Court's analysis tracks its reasoning in other TVPRA cases, and that of other judges in this district. *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1338 (N.D. Ga. 2024) (Geraghty, J.) (analyzing "participation in a venture" element, and noting relevance of evidence that "traffickers profited from operating in an environment that was hospitable to trafficking"); *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1254 (N.D. Ga. 2023) (Ray, J.) (analyzing "participation in a

11

venture" and finding evidence showing "hotel employees regularly observed pimps and prostitutes using the rooms" and that the hotel "had received complaints of prostitution" to be relevant); *W.K. v. Red Roof Inns, Inc.*, 692 F. Supp. 3d 1366, 1380 (N.D. Ga. 2023) (Calvert, J.) (agreeing with Judge Ray's analysis).

Setting aside the "participation in a venture" element, the challenged evidence in MILs 1–5 is also relevant to the fourth element of Plaintiff's § 1595(a) claim: "that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to Plaintiff." To start, the fourth element uses the same terms, "undertaking or enterprise," analyzed above. For the same reasons described, the challenged evidence is relevant to the fourth element.

Further, in *Doe #1*, the Eleventh Circuit explained that "[k]nowledge requires '[a]n awareness or understanding of a fact or circumstance,'" and constructive knowledge means "that knowledge which 'one using reasonable care or diligence should have." *Doe #1*, 21 F.4th at 725 (citation omitted). "To prove either actual knowledge or deliberate ignorance [in § 1595(a) case], Plaintiff may rely on both direct evidence and circumstantial evidence based on the 'totality' of circumstances." *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1254 (N.D. Ga. 2023) (Ray, J.). The evidence challenged in MILs 1–5 is at least relevant circumstantial evidence of United Inn's "awareness or understanding of a ***fact or circumstance***" at issue—*i.e.*, ***the place where J.G. was trafficked for approximately***

12

***40 days***.  Trafficking requires a venue.  The relevant "facts or circumstances" here are not only those pertaining to J.G.'s victimization by her traffickers, but also those pertaining to ***the place*** where she was trafficked.  When Congress amended § 1595(a) in 2008 to expand civil liability beyond perpetrators, and to add a civil cause of action against beneficiaries, it added the "knew or should have known" standard, and necessarily expanded the "fact or circumstance" inquiry beyond the trafficking perpetrator to the trafficking beneficiary—here, the United Inn.

The challenged categories of evidence are also relevant to United Inn's constructive knowledge—*i.e.*, "knowledge which 'one using reasonable care or diligence should have.'"  The jury's assessment of United Inn's constructive knowledge will necessarily depend on context and circumstance, because "reasonable care or diligence" does.  For example, the "reasonable care or diligence" analysis for a hotel in a high-crime area with a history of sex crimes, warnings of inadequate security, and serial County Code violations leading to a threatened closure is different from the "reasonable care or diligence" analysis for a hotel in a quiet, rural area with a low-crime rate, no history of sex crimes, no known security deficits, and no history of breaking the law.

Because the challenged evidence is directly relevant to two separate elements of § 1595(a), MILs 1–5 should be rejected.

B. <u>MILs 1–5 Should be Rejected because they Seek to Exclude Admissible Evidence under 404(b)</u>.

13

Beyond the relevance of the challenged evidence to J.G.'s § 1595(a) claim, the evidence is also relevant under Rule 404(b) to prove motive, opportunity, knowledge, absence of mistake, lack of accident, and *modus operandi*. *See, e.g.*, *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000) (for evidence of other crimes, wrongs or acts to be admissible under 404(b) it must "(1) be relevant to one of the enumerated issues not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403.")

As to "motive," evidence of the hotel's Code violations are relevant to its financial motive to maximize profit and avoid necessary safety and security investments in the property. Like the hotel's unwillingness to invest in meeting basic hotel safety and security standards required by DeKalb County Code until Code Enforcement cited the hotel 447 times, fined it, brought court proceedings against it, and initiated steps to take away the business license, the hotel did not invest in needed security or adequate staffing prior to this lawsuit.

Regarding "opportunity," United Inn claims that J.G. is lying about being sex trafficked at the hotel, and it plans to introduce the testimony of security who worked at the property for four hours per day to say that J.G.'s allegations are far-fetched because the hotel was adequately secured and appropriately staffed. The evidence

14

of pervasive commercial sex crimes, including sex trafficking, on the property for years is relevant to the opportunity for J.G.'s traffickers to exploit J.G. on the property because of improper staffing and security, among other reasons. In addition, the hotel's flagrant violations of DeKalb County Code, which include citations for abandoned cars, (FN4), are relevant to opportunities to exploit J.G., who testified that she was sexually assaulted regularly in cars parked in the parking lot.

As to "knowledge," United Inn, and its owner and manager, disclaimed knowledge of commercial sex activity, prostitution, and/or sex trafficking on the property from 2017 – 2019. The evidence of pervasive commercial crime, including sex crimes and sex trafficking, on the property, is relevant to the owner's knowledge of commercial sex at United Inn. Further, evidence of the hotel's *modus operandi* can be used by the jury to reasonably infer that United Inn knew of J.G.'s sex trafficking. *Treminio v. Crowley Maritime Corp.*, 2024 WL 382400 * 7 (M.D. FL Feb. 2024) (denying defendant's motion *in limine* in TVPRA case, because evidence was sufficient to submit for jury determination of whether defendant had *modus operandi*); *Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) (ruling that establishing the defendant's *modus operandi* was a permitted method to demonstrate knowledge under the TVPRA).

With respect to "absence of mistake, or lack of accident," United Inn will likely argue that even if J.G. was in fact victimized repeatedly at United Inn, it was

15

not because of the hotel's "participation in a venture" with J.G.'s traffickers, and the hotel did not know, constructively or otherwise, about her victimization. That type of argument is, in effect, a claim that J.G.'s experience was a tragic, unfortunate "mistake" or "accident" that the hotel knew nothing about. The history of crime at the hotel, including trafficking before and after J.G.'s trafficking, is directly relevant to the question of "mistake" or "accident." So too is "modus operandi" evidence, which would prove that J.G.'s trafficking was not an unfortunate mistake or accident, but the result of United Inn's *modus operandi* to (at best) turn a blind eye to illicit conduct and criminal enterprises operating on its property, or to (at worst) facilitate them.

Thus, the challenged evidence is relevant under Rule 404(b).

C. MILs 1–5 Should be Rejected because they Seek to Exclude Admissible Impeachment Evidence.

In addition, the challenged evidence in MILs 1–5 is admissible impeachment evidence. "Impeachment evidence is evidence that is 'offered to discredit a witness ... to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony.'" *F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1180 (N.D. Ga. 2008), *aff'd,* 356 Fed. Appx. 358 (11th Cir. 2009) (quoting *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993). "Any party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607. "Impeachment by

contradiction occurs when a party offers evidence to prove that a fact to which a witness testified is not true." Federal Rules of Evidence, § 6096 Bases For Attacking Credibility—Contradiction, 27 Fed. Prac. & Proc. Evid. § 6096 (2d ed.).

In discovery, United Inn denied knowing that prostitution and sex trafficking occurred on the property during the relevant period. For example, Tahir Shareef, owner and manager of United Inn, testified that from 2017 – 2019 he was "not aware of there being any prostitution" at United Inn. (*Id.* at 64:15-65:3). He also testified that "of course" J.G. is "lying" that she had sex in cars parked in the parking lot at the hotel with dozens of men for over a month. (Doc. 116-8 at 107:10-18). Similarly, Ashar Islam, another manager, testified that he did not consider commercial sex activity to be "common" at the hotel, and did not know of prostitution on the property. (Doc. 116-6 at 55:4-9, 62:5-7).

A reasonable jury could conclude that United Inn, and its staff, knew of pervasive commercial sex activity at the hotel during the relevant period based on much of the evidence challenged in MILs 1–5, discussed *supra*. Such evidence is relevant impeachment evidence as to United Inn and its owner and managers. For example, the jury could find that J.G. is not lying, and that United Inn's owner and manager are lying about their lack of knowledge of prostitution and sex trafficking on the property. Likewise, jury could conclude that the challenged evidence in MILs 1–5, which includes evidence showing that United Inn had a high-crime rate and

prevalent commercial sex activity for years, and that at least 9 minors were trafficked at the hotel from 2017 – 2019, effectively impeaches the testimony of United Inn's owner and manager that commercial sex activity was uncommon at United Inn, and they did not know of it from 2017 – 2019.  Evidence of violent crime and sex crimes at United Inn, and commercial sex at United Inn (including trafficking), before, during, and after J.G.'s trafficking is relevant impeachment evidence and should be admitted in this case.  The challenged evidence is classic "contradiction" evidence, which, "is essentially why we have trials, whether civil or criminal." Federal Rules of Evidence § 6457 Contradiction by Another Witness, 30 Fed. Prac. & Proc. Evid. § 6457 (2d ed.).

D. Relevant to Punitive Damages.

The challenged evidence also should be admitted because it is relevant to punitive damages; it concerns United Inn's decisions to operate its property in violation of the law, to staff its property inadequately and illegally, and to condone and facilitate criminal enterprises, including drug and sex trafficking.  *See, e.g.,* *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011) ("punitive damages are generally appropriate under the TVPRA civil remedy provision because it creates a cause of action for tortious conduct that is ordinarily intentional and outrageous"); *Warfaa v. Ali*, 1 F.4th 289, 296 (4th Cir. 2021) (affirming punitive damages award under § 1595); *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) (same).

*W.K. v. Red Roof Inns, Inc.*, No. 1:20-CV-05263-VMC, 2024 WL 2892322, at *2 (N.D. Ga. June 10, 2024) (Calvert, J.) (relying on same caselaw).

E.  United Inn's Specific Arguments in MILs 1–5 Do Not Withstand Scrutiny.

Finally, in addition to the foregoing arguments—which address why the challenged evidence is relevant under Rule 401, and why its relevance is not "substantially outweighed" by one of the enumerated factors in Rule 403[5]—United Inn's specific arguments in MILs 1–5 do not withstand scrutiny:

MIL 1: United Inn claims that J.G. intends to introduce "media coverage" related to United Inn's code violations.  That's not correct.  J.G. only intends to introduce evidence of the fines, citations, and related court proceedings.  J.G. and United Inn have exchanged draft exhibit lists and have agreed to exchange substantially final exhibit lists at a future date.  Further, United Inn says the citations concern "rubbish accumulation, bathroom plumbing issues and interior structural problems."  (Doc. 160 at 3).  There were 447 code violations; some were minor, some were not.  In the aggregate, the violations were so severe that DeKalb County initiated steps to shut down the hotel.  The violations included abandoned vehicles

---

[5] Even if United Inn's arguments about Rule 403 in MILs 1–5 were correct (they are not), any risk of juror confusion or the like can be handled with an appropriate jury instruction.  None of United Inn's Rule 403 arguments justifies exclusion of the challenged evidence considering its substantial probative value.  Rule 403 does not exist to protect defendant-hotel's in TVPRA cases from persuasive evidence showing their liability.

in the back parking lot. (*See* FN4). Such violations are notable because J.G. will testify that she regularly had commercial sex in cars in the hotel parking lot. Also, there's a relationship between code compliance and crime. (Doc. 116-8 at 82:1-10). While United Inn claims that "[b]y June of 2018—well before Plaintiff claims she was ever at the property – Northbrook had remediated the problems and paid the fines," (Doc. 160 at 6), the evidence will show otherwise. On June 3, 2019, *after* J.G. was trafficked at the hotel, the owner of United Inn emailed DeKalb County to "find about [sic] the objection on me [sic] license renewal." (Ex. 1). On June 4, 2019, DeKalb County responded: "You should be able to obtain your business license. I contacted those who are in charge and send our compliance release of the business license." (*Id.*)

MIL 2: As explained, evidence that two minors were sex trafficked at United Inn the year prior to J.G. is admissible because it is relevant to elements of § 1595(a) and it satisfies 404(b). United Inn does **not** cite any TVPRA beneficiary cases against a hotel excluding evidence of other sex trafficking at the same hotel. United Inn's argument that it would be "especially misleading" to allow evidence regarding A.G.'s and G.W.'s trafficking at United Inn, because Judge Boulee dismissed their civil beneficiary claims against the hotel, is flawed. Judge Boulee did not conclude that they were not trafficked at United Inn. To the contrary, the Court can, and should, take judicial notice of the fact that A.G. and G.W. were, in fact, trafficked at

20

United Inn in 2017—their traffickers pled guilty to trafficking them at United Inn before Judge Brown. (Doc. 115 at 10, n.2). Judge Boulee did not conclude that A.G.'s and G.W.'s trafficking was not open and obvious at United Inn. Nor did he find that it was not readily observable by hotel staff and employees. Rather, he concluded that the "participation in a venture" element of a § 1595(a) beneficiary claim had not been met because it requires "more" than renting rooms to traffickers while having actual or constructive knowledge that traffickers are trafficking kids in the rooms.

MIL 3: United Inn's motion to exclude police reports referring to criminal activity at the property, including violent crimes and sex crimes, seeks to undercut J.G.'s ability to carry her burden under § 1595(a). United Inn says that the TVPRA does not address commercial sex activity generally, but any commercial sex involving a minor is, *per se*, criminal sex trafficking of a minor under 18 U.S.C. § 1591. Regardless, evidence of prostitution remains relevant to a hotel's awareness of illegal commercial sex activity on its property, including sex trafficking. *See, e.g., B.W. v. G6 Hospitality Property, LLC*, Case No. 1:24-CV-00195-JPB at 18 (N.D. Ga., Feb. 11, 2025) (Boulee, J.) ("While Defendant argues the reviews from 2017 are irrelevant, they raise much of the same concerns. Although these reviews do not use the term 'sex trafficking,' they, at least, raise alarm about a 'substantially similar crime'—prostitution.'") United Inn suggests that because J.G.'s negligence

21

claim has been dismissed, police reports and crime on the property no longer have probative value. That is incorrect; under Georgia law, a property owner has a legal duty to take reasonable actions to safeguard visitors from foreseeable crime. *See, e.g.*, *Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 890 S.E.2d 209 (2023). Property owners owe that duty regardless of whether they are sued for negligence; it is a legal duty that exists outside of litigation. United Inn is, of course, free to argue at trial that police reports J.G. uses are irrelevant and outdated, and to examine witnesses about the same. J.G. does not expect those arguments to fly because the reports at issue relate to commercial sex and sexual violence at United Inn before, during, and after the period J.G. was trafficked at United Inn.[6]

MIL 4: As described, evidence of commercial sex, including minor sex trafficking, at United Inn in the year after J.G. was trafficked there is relevant to the elements of 1595(a); to prove motive, opportunity, knowledge, absence of mistake, lack of accident, and *modus operandi* under 404(b); and to impeach.

MIL 5: For the same reasons stated as to MIL 4, evidence that United Inn has a high-crime rate and is in a high-crime neighborhood is relevant.

---

[6] United Inn is both moving to exclude all evidence of crime at the hotel, and planning to call witnesses to testify that the hotel's security efforts were "sufficient, given the size of the property and the activity on the property," and that there are no areas that provide concealment for "criminal activity." (Docs. 160-2, 160-3). United Inn cannot have it both ways.

## II.    <u>Response to Motion *in Limine* No. 6.</u>

J.G. does not oppose United Inn's Motion *in Limine* No. 6 regarding online reviews of United Inn, because J.G. does not plan to introduce online reviews into evidence at trial.  That said, J.G. reserves the right to use online reviews discussing crime on the property, including loitering, drugs, and commercial sex, as impeachment evidence.  *See infra* regarding denials by United Inn, and its owner and manager, of knowledge of commercial sex on the property from 2017 – 2019. To the extent that United Inn is seeking to preclude use of the online reviews as impeachment evidence, United Inn's request should be denied.  Finally, J.G. notes that United Inn should be precluded from affirmatively using online reviews for the same reasons it articulates in its Motion *in Limine* No. 6.

## III.    <u>Response to Motion *in Limine* No. 7.</u>

J.G. does not oppose United Inn's Motion *in Limine* No. 7 regarding evidence of United Inn's financial condition so long as the Court's Order is limited to the liability phase of the trial.  J.G. does not intend to introduce any testamentary or documentary evidence relating to Defendant's financial condition during the liability phase of the trial. J.G. *will* seek to introduce the evidence, where it is plainly relevant, during the punitive damages phase of the trial. *Lambert v. Fulton Cnty., Ga.*, 97 F. Supp. 2d 1380, 1385 (N.D. Ga. 2000), *aff'd,* 253 F.3d 588 (11th Cir. 2001)

("It is also well settled that the financial circumstances of an individual defendant may be a relevant consideration for an award of punitive damages."); *Christian v. Ford Motor Co.*, 4:22-CV-62 (CDL), 2024 WL 1496236, at *2 (M.D. Ga. Mar. 4, 2024) ("amount of a civil penalty" that "may impact a wrongdoer (and thus his conduct)" depends upon "wealth of that wrongdoer.").

Thus, J.G. does not oppose the relief United Inn seeks as to the liability phase of the trial, and the Court may defer any ruling regarding the punitive damages phase "until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).

## IV.    <u>Response in Opposition to Motion *in Limine* No. 8.</u>

J.G. opposes United Inn's Motion *in Limine* No. 8, which seeks to prohibit J.G. from testifying about how being trafficked at United Inn caused her physical, emotional, and psychological harm.

Rule 701 provides that a witness who is "not testifying as an expert," may testify "in the form of an opinion" that is "**(a)** rationally based on the witness's perception; **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Those conditions are met here. At trial, J.G. will not testify as an expert. She will testify as a lay witness. As such, J.G. is permitted to testify to her rational perceptions, which would include how being sex trafficked at United Inn for nearly 40 days, and being sexually assaulted by over 400 men there, caused her physical, emotional, and psychological harm. *See, e.g.*, Fed. R. Evid. 701, Advisory Committee Notes on Rules—2000 Amendment ("The distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.'"). How the experience of being exploited sexually as a minor affected and is affecting J.G. is not outside of her ken. Further, her challenged testimony would also satisfy prongs (b) and (c) of Rule 701. It would be "helpful to clearly understanding" her testimony "or determining a fact in issue," and would not be based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Thus, Rule 701 allows J.G. to provide the challenged testimony.

United Inn's argument that J.G. needs to call a "suitably credentialed, qualified expert to testify as to a diagnosis of any medical or psychological conditions of which J.G. complains and the purported causes thereof" (Doc. 160 at 22) misses the mark. J.G. is not required to call an expert witness under Rule 702 to opine about how J.G. was harmed by trafficking. Nobody knows that subject better

25

than J.G.  Further, she can testify about it using her rational perception and based on

"a process of reasoning familiar in everyday life" that does not require "reasoning

which can be mastered only by specialists in the field."   United Inn is free to cross-

examine J.G. about the harms she testifies to, and United Inn's apparent belief that

she is not a "suitably credentialed, qualified expert."  Also, United Inn may object

at trial if it believes that J.G.'s testimony goes beyond J.G.'s rational perception into

expert opinion testimony.

## V.    <u>Response in Opposition to Motion *in Limine* No. 9.</u>

J.G. opposes United Inn's Motion *in Limine* No. 9, which seeks to preclude

J.G. from arguing for a "specific amount of damages," because it is not supported

by the facts or the law.  (Doc. 160 at 23).

There is no Eleventh Circuit pattern jury instruction on 18 U.S.C. 1595(a),

and the parties' proposed jury instructions are not yet due.  Nonetheless, J.G. expects

the jury to be instructed, consistent with federal and Georgia law, that if it believes

J.G. is entitled to recover damages, then it shall use its enlightened conscience and

judgment to compensate Plaintiff for her non-economic damages (*e.g.*, pain and

suffering) in an amount that is fair and just.  *See, e.g.*, 3 Fed. Jury Prac. & Instr. §

128:02 (7th ed.) ("…No evidence of the value of such intangible things as mental or

physical pain and suffering has been or need be introduced.  In that respect it is not

value you are trying to determine, but an amount that will fairly compensate plaintiff

for the damages plaintiff has suffered. There is ***no exact standard for fixing the compensation*** to be awarded on account of such elements of damage. ***Any such award should be fair and just in the light of the evidence***.") (emphasis added); *see also* 66.501 Tort Damages; Pain and Suffering; Generally; Mental; Future, Ga. Suggested Pattern Jury Instructions - Civil 66.501 ("Pain and suffering is a legal item of damages. ***The measure is the enlightened conscience of fair and impartial jurors***[.]") (emphasis added).

United Inn's suggestion that J.G. should not be allowed to ask for a "specific amount of damages" because she "failed" to disclose under Rule 26(a) "the amount of" non-economic damages she will claim, and her "calculation thereof," is incorrect factually and legally. As to the factual error with United Inn's position, Plaintiff has complied with her Rule 26 disclosure obligations by providing United Inn with her testamentary and documentary evidence regarding the pain and suffering damage she has sustained as a result of being sex trafficked as a minor at United Inn. In formal discovery responses and in informal communications between counsel, J.G. and her counsel have explained to United Inn and its counsel that the amount of non-economic damages she will request at trial *depends on the documentary and testamentary evidence **admitted** at trial*. J.G. does not know what evidence the Court will or will not admit, and that will affect J.G.'s request at trial. As recently as November 20, 2024, J.G.'s counsel advised United Inn's counsel in an email

regarding the Court-ordered mediation that "[t]he amount Plaintiff will request at trial will depend on the evidence and testimony admitted. Plaintiff anticipates requesting in excess of $10M in non-economic damages at trial."

As to the legal error of United Inn's position, O'Malley's model pattern jury instructions say that, "[n]o evidence of the value of such intangible things as mental or physical pain and suffering **has been or need be introduced**." 3 Fed. Jury Prac. & Instr. § 128:02 (7th ed.). That is not only true at trial, it is also true in discovery. Non-economic damages (*i.e.*, pain and suffering damages) "generally are not amenable to the type of disclosures contemplated by Rule 26(a)(1)(A)(iii)." *Bowers v. Am. Heart Ass'n, Inc.*, No. 1:06-CV-2989-CC, 2008 WL 11407360, at *3 (N.D. Ga. Dec. 2, 2008). Finally, United Inn's motion would curtail J.G.'s constitutional right to argue for full and just damages under the Seventh Amendment.

Even if United Inn were right, and J.G. did not comply with Rule 26 (it is not right on that point), any noncompliance was harmless. United Inn did not raise the issue in this multi-year litigation until weeks before trial. *Bowers*, 2008 WL 11407360, *3 (rejecting Rule 26(a) disclosure argument where "Defendants simply waited to cry prejudice after discovery closed and the case was set for trial."). Also, United Inn's reliance on *Capital Inventory, Inc. v. Green* is misplaced. 2023 WL 2731897, at *1 (N.D. Ga. Jan. 9, 2023). In *Capital*, which concerned defamation and tortious interference with business relationships, the Court precluded a

counterclaimant from seeking "a category of damages"—"time spent reassuring customers and potential customers"—that was not "disclosed in response to an interrogatory." *Id.* That does not apply here; J.G. has said clearly and directly since filing her Complaint that she is seeking, among other things, non-economic damages (i.e., pain and suffering damages). It is beyond debate that such damages "generally are not" quantifiable. *Bowers*, WL 11407360, at *3. Thus, *Capital* is unhelpful.

Finally, United Inn did not attempt to meet the four-factor test used in this district to evaluate prejudice from a Rule 26(a) violation. *See, e.g.*, *Dodgeson v. First Advantage Background Services Corp.*, 2019 WL 2306131 (N.D. Ga., Mar. 2019) (articulating factors). Even if the Court finds that Plaintiff did not fully comply with Rule 26 (it should not), any failure to comply was harmless. Thus, MIL 9 should be rejected.

## VI.    Response in Opposition to Motion *in Limine* No. 10.

MIL 10 seeks an "order prohibiting reference at trial to the sanctions award or to any of Northbrook's acts or omissions that were the subject of Plaintiff's motion for sanctions, such as the timing, manner, or method of Northbrook's search for and production of documents." (Doc. 160 at 24). J.G. does not oppose this motion insofar as she does not intend to introduce trial evidence about the "timing, manner, or method" of United Inn's "search for and production of documents." But J.G. does oppose this motion insofar as it seeks to preclude J.G. from arguing that

she was prejudiced by United Inn's failure to identify its staff during the relevant time period. J.G. incorporates here the reasons set forth in her Consolidated Motions *In Limine* on the same topic. (Doc. 161 at 30-32).

## VII.    Response in Opposition to Motion *in Limine* No. 11.

J.G. responds in opposition to MIL 11 seeking an "order prohibiting statements or arguments (including during voir dire) characterizing sex trafficking, and/or Northbrook's alleged acts or omissions, as a threat or danger to the community or public at large." As written, United Inn's motion *in limine* is vague and ambiguous. Is United Inn suggesting that *sex trafficking* is not a "threat or danger to the community or public at large"? J.G. will argue that sex trafficking is dangerous, and that she suffered damages as a result of being trafficked at United Inn. She is not going to argue, however, that United Inn is a "threat or danger to the community or public at large." As should be clear, J.G. will argue that United Inn allowed, condoned, and facilitated dangerous activities on its property, including sex trafficking. That is critical to her § 1595(a) claim. In any event, the concern that United Inn raises in this motion *in limine* is not suited for a pre-trial order of exclusion. United Inn is free to raise at trial any objections it has to J.G.'s trial presentation, which the Court can take up contemporaneously.

This 14th day of March, 2025.

/s/ David H. Bouchard
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088
Gabriel E. Knisely
gabe@finchmccranie.com
Georgia Bar No. 367407

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone

Attorneys for Plaintiff

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 14th day of March, 2025.

<u>/s/ David H. Bouchard</u>
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Gabriel E. Knisely
gabe@finchmccranie.com
Georgia Bar No. 367407
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*