IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action File |
| v. ) | No. 1:20-cv-05233-SEG |
| ) | |
| NORTHBROOK INDUSTRIES, INC., ) | |
| d/b/a UNITED INN AND SUITES, ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF**
**DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE***

# TABLE OF MOTIONS *IN LIMINE*

| Motion # | Subject Matter | Page # |
|---|---|---|
| 1. | Evidence of Northbrook's county code enforcement citations | 1 |
| 2. | Evidence concerning the trafficking of A.G. and G.W. and investigation and conviction of their trafficker | 2 |
| 3. | Evidence of other crimes or incidents at United Inn | 4 |
| 4. | Evidence postdating Plaintiff's last alleged trafficking at United Inn | 7 |
| 5. | Description or characterization of United Inn as a "high-crime" property or being in a "high-crime" area | 8 |
| 6. | Guest reviews of United Inn | 8 |
| 7. | Evidence of Northbrook's financial condition | 10 |
| 8. | Evidence regarding Plaintiff's medical or psychological conditions resulting from alleged trafficking at United Inn | 11 |
| 9. | Evidence or argument suggesting a specific amount of damages to be awarded | 11 |
| 10. | Sanctions award against Northbrook | 13 |
| 11. | "Reptile" statements or arguments | 14 |

**Motion *in Limine* No. 1: Evidence of Northbrook's county code enforcement citations[1]**

Plaintiff argues that evidence of county health and building code citations against Northbrook are admissible under Federal Rule of Evidence 404(b) because they show "opportunity": that some of the code citations were for abandoned cars in the United Inn parking lot, and J.G. alleges that she was trafficked in cars in the parking lot. Thus, according to Plaintiff, the abandoned cars in the parking lot prove the "opportunity" for J.G. to be trafficked there. Plaintiff's Response at 15; see also Fed. R. Evid. 404(b)(2) (providing exception for "opportunity" and other enumerated purposes to general rule against use of character evidence).

But Plaintiff did not testify that she was having sex with buyers in abandoned cars in the parking lot; her testimony was that she would "meet [buyers] down in their car." J.G. Depo., excerpted at Exhibit 1 hereto, at 78; see also id. at 81 (describing that some buyers "didn't want to come in the room. They would rather do it in their car.") In other words, J.G. alleges that she had sex in the buyers' own cars, not in abandoned cars. Thus, the fact that there may have been abandoned cars on the premises has nothing to do with Plaintiff's TVPRA claim or whether there was an "opportunity" for her to be trafficked there.

---

[1] In her response brief, Plaintiff consolidates much of her argument in opposition to Northbrook's motions *in limine* nos. 1-5. Northbrook addresses those general arguments herein in the context of the specific motions.

Plaintiff describes Northbrook's code citations as part of "United Inn's serial disregard of the law." Plaintiff's Response at 7. Here, Plaintiff is suggesting that because Northbrook violated the law in the form of omissions resulting in health and building code citations, it must also have violated other laws, such as the TVPRA. This is the very definition of improper character evidence. See Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").[2]

**Motion *in Limine* No. 2:  Evidence concerning the trafficking of A.G. and G.W. and investigation and conviction of their trafficker**

Plaintiff argues that evidence of the 2017 trafficking of A.G. and G.W. at United Inn, and the related investigation and conviction of their trafficker, Mr. Obie, is relevant to two elements that Plaintiff must prove to prevail on her TVPRA claim:  one, that Northbrook participated in a venture with J.G.'s traffickers; and two, that Northbrook knew or should have known that J.G. was a minor who was being trafficked at United Inn. Plaintiff's Response at 1. This argument is without merit.

---

[2] Plaintiff also argues that allowing the deficiencies that led to the citations shows Northbrook's profit "motive" and thus the citations should come in under Rule 404(b)(2). Plaintiff's Response at 14. However, all for-profit companies are motivated to make money. The evidence is more prejudicial than probative of any issue and thus should also be excluded under Federal Rule of Evidence 403.

2

As to the "participation in a venture" element, J.G. does not allege that she was trafficked by Mr. Obie, the person who trafficked A.G. and G.W. Nor was there ever a finding that Northbrook participated in a venture with Mr. Obie. Indeed, to the contrary, Judge Boulee, who presided over the A.G. and G.W. cases, found as a matter of law that Northbrook did not participate in a venture with Mr. Obie and dismissed A.G.'s and G.W.'s TVPRA claims as a result. Thus, that A.G. and G.W. were trafficked at United Inn[3] tells us nothing about whether Northbrook participated in a venture with J.G.'s alleged traffickers.

Similarly, that A.G. and G.W. were trafficked at United Inn tells us nothing about whether Northbrook knew or should have known that J.G. was a minor who was being trafficked at United Inn. J.G. is obviously a different victim, and she alleges she was trafficked by someone other than Mr. Obie.

To allow Plaintiff to invoke A.G.'s and G.W.'s trafficking at United Inn and the subsequent conviction of their trafficker, without more, is dangerously misleading. It suggests incorrectly to the jury that Northbrook did something wrong with respect to A.G. and G.W. and thus must have done something wrong

---

[3] Plaintiff suggests that the Court take judicial notice of the fact that A.G. and G.W. were trafficked at United Inn. Plaintiff's Response at 20-21. This is not a solution to any problem, as Northbrook does not dispute that A.G. and G.W. were trafficked at United Inn (although Northbrook only learned of their trafficking when it was served with A.G.'s and G.W.'s TVPRA lawsuits in 2020, at the same time it was served with J.G.'s lawsuit). What Northbrook disputes is that their trafficking by Mr. Obie has any relevance to J.G.'s TVPRA claim.

3

with respect to J.G. as well. This is improper character evidence. For example, Plaintiff claims that evidence of A.G. and G.W.'s trafficking is evidence of Northbrook's *modus operandi*. Plaintiff's Response at 15. But Northbrook was found as a matter of law <u>not</u> to have participated in a venture with respect to A.G.'s and G.W.'s trafficker so there is no *modus operandi* to discuss. In short, evidence of A.G.'s and G.W.'s trafficking at United Inn should be excluded at trial.

In the event the Court is inclined to admit evidence regarding A.G.'s and G.W.'s trafficking at United Inn, then it should be accompanied by a jury instruction that their TVPRA claims were dismissed with prejudice when the court found as a matter of law that Northbrook did not participate in a venture with A.G.'s and G.W.'s trafficker. To do otherwise would be to mislead the jury by leaving them with only half the story.

**Motion *in Limine* No. 3: Evidence of other crimes or incidents at United Inn**

Plaintiff argues that evidence of other crimes on the premises is relevant to proving two elements of her TVPRA claim: that Northbrook "participated in a venture" and that Northbrook "knew or should have known that the venture violated the TVPRA as to Plaintiff." Plaintiff's Response at 1. But that is incorrect.

4

First, the fact that other crimes occurred on the premises – crimes involving neither J.G. nor J.G.'s traffickers – tells us nothing about whether Northbrook participated in a venture with J.G.'s traffickers.

Second, the fact that other crimes occurred on the premises sheds no light on whether Northbrook knew or should have known that J.G. was a minor who was being trafficked at the property. Here, Plaintiff is attempting to recycle her failed premises liability argument. But the actual or constructive knowledge required by the TVPRA is <u>not</u> the same as the actual or constructive knowledge required by a premises owner in the exercise of ordinary care as to an invitee. In premises liability cases, a plaintiff must prove that the defendant knew or should have known of a dangerous condition on the property. <u>See generally</u> <u>Georgia CVS Pharmacy, LLC v. Carmichael</u>, 316 Ga. 718, 890 S.E.2d 209 (2023). In contrast, to prevail on her TVPRA claim, Plaintiff must prove specifically that Northbrook knew or should have known that J.G. was a minor who was being trafficked for commercial sex at United Inn. <u>See</u> <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714, 726 (11th Cir. 2021) (elements of TVPRA "beneficiary" claim). The fact that there were other crimes on the property – even, for example, prostitution – tells us nothing about whether Northbrook knew or should have known that J.G. was a minor being trafficked for sex there.

5

In this same way, evidence of other crimes on the property does not qualify under the Rule 404(b)(2) "knowledge" exception to exclusion of character evidence, as Plaintiff argues. Plaintiff's Response at 15. The "[]other purpose" for which Rule 404(b)(2) evidence is admissible must itself be relevant. See, e.g., Peek v. Hooks, Civil Action No. 3:03cv423-MEF, 2006 WL 3883964, at *18 (M.D. Ala. Dec. 5, 2006) (under Rule 404(b), "although evidence of other crimes, wrongs, or acts is not admissible to prove character, it may be admissible for other relevant purposes.") (emphasis added). Here, generalized "knowledge" of other crimes, including prostitution, is not relevant to Plaintiff's TVPRA claim, as it does not make it more or less likely that Northbrook knew that J.G. was a minor who was been trafficked at the property. Evidence of other crimes on the property is simply Plaintiff's impermissible invitation to the jury to conclude that Northbrook runs a "bad" hotel and therefore "must" have played some role in J.G.'s trafficking.

In an attempt to avail itself of as many Rule 404(b)(2) exceptions as possible, Plaintiff also makes the crass, unsupported argument that Northbrook will contend that her trafficking at United Inn was a "mistake" or an "accident" such that Plaintiff should be able to introduce otherwise inadmissible evidence of other crimes. Plaintiff's Response at 15-16; see Fed. R. Evid. 404(b)(2) (allowing evidence of other crime, wrong or act to prove "absence of mistake" or "lack of

6

accident."). But while the concepts of "mistake" or "accident" sometimes take on legal significance, they have no place in this TVPRRA litigation, where "mistake" and "accident" are not an element of any claim or defense.

Plaintiff further contends that evidence of other crimes is admissible for impeachment, or what Plaintiff calls "classic 'contradiction' evidence." Plaintiff's Response at 18. But Northbrook does not contend that there were not other crimes at the property (although it does dispute that it had knowledge of some of them at the time they occurred). Therefore, there is nothing to "contradict" via introduction of evidence of other crimes.

**Motion *in Limine* No. 4: Evidence postdating Plaintiff's last alleged trafficking at United Inn**

In response to Northbrook's motion seeking to exclude various types of post-January 2019 evidence, Plaintiff does not reference any of such evidence other than "evidence of commercial sex, including minor sex trafficking, at United Inn," Plaintiff's Response at 22. But evidence of commercial sex at United Inn after January 2019 is not relevant to the issues in this litigation. Any such incidents do not involve J.G. or J.G.'s traffickers. Any such incidents therefore shed no light on whether Northbrook was involved in a venture with J.G.'s traffickers in late 2018 and early 2019, or whether Northbrook knew or should have known that J.G. was a minor being trafficked at United Inn in late 2018 and

7

early 2019.  See Doe #1, 21 F.4th at 726 (elements of TVPRA "beneficiary" claim).  Instead, such evidence is impermissible character evidence serving no purpose other than to further Plaintiff's improper narrative that United Inn is just a "bad" place.

**Motion *in Limine* No. 5:  Description or characterization of United Inn as a "high-crime" property or being in a "high-crime" area**

Just as evidence of other incidents of crime at United Inn is inadmissible, see supra at 4-7, so, too, is a generalized characterization of United Inn as being a "high-crime" property or being in a "high-crime" area.  Such a characterization has one, improper, purpose:  to cause the jurors to view Northbrook in a negative light for reasons having nothing to do with the issues at hand.

**Motion *in Limine* No. 6:  Guest reviews of United Inn**

Plaintiff states that she does not oppose Northbrook's motion to exclude evidence of United Inn guest reviews because she "does not plan to introduce online reviews into evidence at trial."  Plaintiff's Response at 23.  However, Plaintiff then goes on to say that she reserves the right to use online reviews discussing crime on the property as "impeachment" evidence to counter any Northbrook testimony that it did not know of commercial sex on the property.  Id.

8

This is not proper impeachment.  As Plaintiff states in her response, "[i]mpeachment by contradiction occurs when a party offers evidence to prove that a fact to which a witness testified is not true."  Plaintiff's Response at 16-17.  However, "[a] witness cannot be impeached by proving contradictory statements previously made by him as to matters not relevant to his testimony and to the case."  Knox v. Kadenzo Enter., Inc., Civil Action File No. 1:20-CV-04948-SCJ, 2023 WL 11967861, at *2 (N.D. Ga. June 23, 2023).  Here, other crimes on the property are not a proper subject of impeachment because the occurrence of other crimes on the property – and whether Northbrook knew about them – is not relevant to Northbrook's potential liability in this case.  See supra at 4-7.

Moreover, even if Northbrook's knowledge of other crimes were relevant, online reviews describing other crimes on the property would not be proper impeachment evidence anyway because the reviews do not contradict Northbrook's testimony.  If Northbrook were to testify that it was unaware of a particular crime at United Inn, an online review (assuming it was otherwise admissible) could be used for impeachment on this issue only if the review contradicted Northbrook – that is, if the review literally stated that Northbrook was, in fact, aware of that crime at United Inn.  See, e.g., Petersen v. Smith, 762 F. App'x 585, 589 (11th Cir. 2019) (evidence of prisoner's disciplinary reports regarding prior possession of knives not admissible for impeachment by

9

contradiction, as prisoner "did not testify that he has never possessed a knife or that he has never had access to a knife.").

To allow the customer reviews into evidence under the guise of impeachment would be to allow Plaintiff to do indirectly what she is not permitted to do directly: to use negative customer reviews to malign the character of Northbrook and its representatives. See Fed. R. Evid. 404(b)(1) (prohibiting use of other wrongs or acts to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.).

**Motion *in Limine* No. 7: Evidence of Northbrook's financial condition**

Northbrook has moved for an order excluding from the trial of this case testamentary and documentary evidence of Northbrook's financial condition.

The motion is unopposed as pertains to the liability phase of trial, Plaintiff's Response at 23, and thus Northbrook asks that the motion be granted to that extent. Northbrook reserves all objections to the use of any evidence, including evidence of Northbrook's financial condition, in any punitive damages phase of trial.

**Motion *in Limine* No. 8:  Evidence regarding Plaintiff's medical or psychological conditions resulting from alleged trafficking at United Inn**

Plaintiff's response to Northbrook's Motion *in Limine* No. 8 is that she should be permitted to testify as to her "rational perceptions" of harm she has sustained.  Plaintiff's Response at 25.  But Northbrook does not seek a blanket order preventing Plaintiff from testifying, in layperson's terms, as to how being sex trafficked has impacted her.  Rather, Northbrook seeks an order preventing Plaintiff from testifying that she suffers from PTSD, anxiety, depression or any other condition that would fall within an expert's clinical diagnosis.

**Motion *in Limine* No. 9:  Evidence or argument suggesting a specific amount of damages to be awarded**

Plaintiff does not dispute the general premise of Northbrook's Motion *in Limine* No. 9 – that Plaintiff was served with an interrogatory specifically requesting that Plaintiff "state the amount of damages you claim in this matter, identifying each type of damage and the calculation thereof," and Plaintiff did not provide any information as to the amount of damages or the calculation thereof in response.  As a result, Plaintiff should be precluded from arguing for a specific amount of damages or suggesting how damages could or should be calculated.

This Court's decision in Capital Inventory, Inc. v. Green, Civil Action No. 1:20-CV-3224-SEG, 2023 WL 2731897 (N.D. Ga. Jan. 9, 2023), is on point.

11

There, this Court determined that the defendants could not request from the jury a specific dollar amount for their counterclaim damages for "injury to reputation and goodwill" because "they failed, during discovery, to specify the dollar amount now claimed . . . or how the amount was calculated, despite having received an interrogatory that specifically sought this information." 2023 WL 2731897, at *1.

Plaintiff's argument that non-economic damages needn't be disclosed because they are difficult to quantify, Plaintiff's Response at 29, is unavailing. The "injury to reputation and goodwill" sought in Capital Inventory also constitutes non-economic damages. See, e.g., Skura Aerospace, Inc. v. Eaton Aerospace, L.L.C., No. 1:08 CV 1565, 2011 WL 1134591, at *2 (N.D. Ohio March 25, 2011) ("Harm to goodwill and reputation constitute non-economic losses."). Nevertheless, this Court found in Capital Inventory that the plaintiff would be prejudiced if the defendants were permitted to put forth at trial a damages amount for these losses that had not been disclosed during discovery. Capital Inventory, 2023 WL 2731897, at *1.

Plaintiff also notes that her counsel communicated to Northbrook's counsel that "Plaintiff anticipates requesting in excess of $10M in non-economic damages at trial." Plaintiff's Response at 27-28. This statement was made in an email from Plaintiff's counsel, bearing the heading "CONFIDENTIAL SETTLEMENT COMMUNICATION – SUBJECT TO FRE 408," in response to the Order

12

Scheduling Mediation from the mediator, Magistrate Judge Bly. [Dkt. #146] Judge Bly instructed that prior to mediation Plaintiff was to deliver to Northbrook, inter alia, "a written itemization of damages." Id. at 2. The result was the aforementioned statement from Plaintiff's counsel. The statement, which was made in the context of mediation and which does not identify any specific types of non-economic damages (*e.g.*, pain and suffering, etc.) or explain how such damages were calculated, does not provide the information requested in the interrogatory. The statement thus does not relieve Northbrook from the prejudice of trial by ambush.

**Motion *in Limine* No. 10:  Sanctions award against Northbrook**

Plaintiff confirms that she does not oppose Northbrook's Motion *in Limine* No. 10 except to the extent that "it seeks to preclude J.G. from arguing that she was prejudiced by United Inn's failure to identify its staff during the relevant time period." Plaintiff's Response at 29-30. However, Plaintiff previously raised her complaints about what she contends are Northbrook's production of "incomplete" or "inconsistent" staff records in her motion for sanctions and asked for monetary and non-monetary sanctions, including "a jury instruction on how Defendant's conflicting and partial staff records compromised Plaintiff's ability to investigate and cross examine Defendant's claims about staff crime reports and staff trainings,

13

among other topics." [Dkt. #86 at 25]  The Court declined the request for non-monetary sanctions.  See Dkt. #138 at 48-49 ("Considering the Court's determination that extended discovery and related measures cured any prejudice to Plaintiff's ability to make her case, the Court finds the requested non-monetary sanctions to be disproportionate.").  The Court has thus already fully addressed Plaintiff's complaints about Northbrook's staff records.  If Plaintiff has further questions about the records, she may cross-examine witnesses about them at trial.

**Motion *in Limine* No. 11:  "Reptile" statements or arguments**

Finally, in response to Northbrook's Motion *in Limine* No. 11, Plaintiff agrees that she will not argue that United Inn is a threat or danger to the community at large.  Plaintiff's Response at 30.  Plaintiff should also be precluded from arguing that sex trafficking in general is a threat or danger to the community or public at large, as any such commentary would serve no purpose other than to improperly appeal to the fears and other emotions of jurors.

## L.R. 7.1(D) CERTIFICATION

The undersigned counsel hereby certifies that this filing has been prepared in Times New Roman (14 point), which are font and point selections approved by the Court in L.R. 5.1(C).

Respectfully submitted,

 */s/ Dana M. Richens*
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia  30309
Telephone:  (404) 815-3659
Facsimile:  (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.
d/b/a United Inn and Suites

15

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this date served all parties with the within and foregoing **REPLY IN SUPPORT OF DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*** via the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 26th day of March, 2025.

                                                                   */s/ Dana M. Richens*