IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.G., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Civil Action File |
| v. | ) No. 1:20-cv-05233-SEG |
| | ) |
| NORTHBROOK INDUSTRIES, INC., | ) |
| d/b/a UNITED INN AND SUITES, | ) |
| | ) |
|    Defendant. | ) |

# **DEFENDANT'S TRIAL BRIEF**

# **TABLE OF CONTENTS**

|      |                                                                                                  | Page |
|------|--------------------------------------------------------------------------------------------------|------|
| I.   | The jury should be permitted to apportion fault among parties and nonparties.                    | 1    |
| II.  | Punitive damages are not recoverable under the TVPRA.                                            | 5    |
| III. | Plaintiff's claims for fees, costs and expenses are unsupportable under specific cited statutes. | 13   |

COMES NOW Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites ("Northbrook"), and hereby submits its trial brief in advance of the jury trial in this matter scheduled to begin on July 7, 2025.

This is a hotel sex-trafficking case. The plaintiff, proceeding under the initials "J.G." to protect her identity ("J.G." or "Plaintiff"), alleges that while a minor she was trafficked for sex at United Inn and Suites ("United Inn"), an independent hotel owned and operated by Northbrook, for five weeks in October and November 2018 and for two to three days in January of 2019.

The sole substantive claim remaining in the case is Plaintiff's claim under the "beneficiary" provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

In this brief, Northbrook addresses several outstanding legal issues pertaining to the trial.

I. **The jury should be permitted to apportion fault among parties and nonparties.**

Northbrook seeks to have the Court allow the jury to apportion damages – that is, to assign relative fault for Plaintiff's injury and harm among Northbrook, Plaintiff and other nonparties. In this way, in the event of a Plaintiff's verdict, the amount of damages awarded against Northbrook would be reflective of Northbrook's fault relative to other persons and entities. This would include not

only Plaintiff's alleged traffickers at United Inn, but also persons and entities involved in Plaintiff's trafficking at another, unrelated, property, Stone Mountain Inn.

In contrast, Plaintiff will argue for joint and several liability – that is, that Northbrook can be held liable for 100% of Plaintiff's damages even though other persons or entities – even Plaintiff herself – may be responsible for some portion of the injury or harm she claims.

The TVPRA is silent on the issue of whether apportionment, or joint and several liability, applies to civil claims brought under 18 U.S.C. § 1595(a).

Northbrook is not aware of any federal appellate decisions on the issue of whether apportionment, or joint and several liability, applies to the TVPRA. There is one trial court decision in this district[1] on the issue. In W.K. v. Red Roof Inns, Inc., Civil Action No. 1:20-cv-05263-VMC, 2024 WL 2892322 (N.D. Ga. June 10, 2024), Judge Calvert held that damages under the TVPRA are joint and several. 2024 WL 2892322, at *2-3.[2] The crux of Judge Calvert's analysis is the premise

---

[1] Plaintiff has previously cited to K.M. v. Reva Properties, LLC, Civil Action File No. 1:22-CV-3991-TWT, 2024 WL 1217420 (N.D. Ga. March 21, 2024). However, in K.M., Judge Thrash did not actually render a decision on whether apportionment applies to the TVPRA. Instead, the court denied the plaintiff's early motion to strike the defendant's notice of intention to apportion fault.

[2] The W.K. matter settled during trial and thus the apportionment issue was never taken up on appeal.

that "[j]oint and several liability is the traditional rule for federal torts." 2024 WL 2892322, at *1. However, federal common law "generally comports with" the Restatement of Torts. U.S. v. Milner, 583 F.3d 1174, 1182 (9th Cir. 2009) (applying Restatement of Torts to federal trespass action).[3] And the Restatement provides, in relevant part:

> Damages for harm are to be apportioned among two or more causes where
>
> (a)   there are distinct harms, or
>
> (b)   there is a reasonable basis for determining the contribution of each cause to a single harm.

Restatement (Second) of Torts § 433A (Am. Law Inst. 1965).

The present situation fits either mold. There may be "distinct harms" – that is, various episodes of Plaintiff being trafficked in different hotels by different traffickers, each contributing in some way to Plaintiff's non-economic damages. Alternatively, there may be a "single harm" – that is, harm to Plaintiff from having been sex-trafficked generally, as to which Plaintiff's own testimony as to her

---

[3] The Eleventh Circuit looks to the Restatement for guidance on federal common law in a variety of contexts. See, e.g., Various Insurers v. Gen. Elec. Int'l, Inc., 131 F.4th 1273, 1277 (11th Cir. 2025) (third-party beneficiary); Griffin v. Coca-Cola Refreshments USA, Inc., 989 F.3d 923, 932 (11th Cir. 2021) (ERISA); Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1363 n.13 (11th Cir. 1995) (conflict of laws). This Court has also pointed to the Restatement as a source of common-law principles to be applied to federal statutes. See Summary Judgment Order, Dkt. # 138, at 26-27 (quoting United States Supreme Court's reference to Restatement of Agency to ascertain federal common law standard of vicarious liability).

experiences will guide the jury in determining the relative contribution of each party or nonparty to that harm. Either way, the Restatement contemplates an apportionment of damages.

Also, state law can be instructive on the federal common law affecting torts. "In some instances, controversies governed by federal law do not inevitably require resort to uniform federal rules, and it may be appropriate to borrow from state law for the rule of decision." Milner, 583 F.3d at 1182 n.6 (some internal punctuation omitted); Fed. Deposit Ins. Corp. v. Ashley, 749 F. Supp. 1065, 1067 (D. Kan. 1990) (incorporating state law of comparative negligence as federal rule of decision). Here, state law would militate in favor of apportionment. Section 51-12-33 of the Official Code of Georgia Annotated is Georgia's apportionment statute. In general, it provides a framework by which damages in tort actions may be apportioned among parties and nonparties according to levels of relative fault assigned by the fact finder. See generally O.C.G.A. § 51-12-33(b).[4,5]

---

[4] Judge Calvert concluded in W.K. that Georgia's apportionment statute would not apply to the TVPRA because "[u]nder Georgia law, the apportionment statute does not abrogate the common law of joint and several liability when tortfeasors engage in concerted action or a civil conspiracy" that results in indivisible fault. 2024 WL 2892322, at *2-3. However, that analysis does not fully encompass the situation here, where Plaintiff alleges she was trafficked at different times, in different places, by different traffickers who did not act in concert or conspire with one another.

[5] Northbrook has complied with the requirement of O.C.G.A. § 51-12-33(d) that a defendant contending that a nonparty was wholly or partially at fault must give

4

In short, both federal common law, and borrowed state law, support the apportionment of fault among parties and nonparties to this action, with any damages awarded against Northbrook limited to its relative degree of fault.[6]

## II. Punitive damages are not recoverable under the TVPRA.

Plaintiff has signaled her intention, if she is successful on her TVPRA claim, to also seek an award of punitive damages. It is Northbrook's contention that punitive damages are not recoverable under the TVPRA.

The TVPRA expressly states the types of recovery available to a successful plaintiff on a TVPRA claim, and punitive damages is not one of them. Instead, the statute contemplates that the successful plaintiff "may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). There is no reference to punitive damages.

---

notice not later than 120 days prior to trial of its intention to seek apportionment. Northbrook filed such notice on October 11, 2023, in which it asserts notice of its intention to seek apportionment against nonparties such as Plaintiff's traffickers and their accomplices, as well as the corporate entities behind Stone Mountain Inn, where Plaintiff was also trafficked. [Dkt. #85]

[6] Regardless of how this Court ultimately rules on apportionment, Northbrook should be permitted to introduce evidence, obtain jury instructions and present argument on other common-law principles, such as causation and damages, by which a jury could consider the role of other incidents of sexual trauma, and the conduct of other persons – including Plaintiff herself – in Plaintiff's alleged injury and damages.

The Eleventh Circuit has not ruled on the issue of whether a successful TVPRA plaintiff can seek punitive damages. However, the Eleventh Circuit, as well as trial courts in this district, have rejected claims for punitive damages for violation of a federal statute where the statute does not expressly contemplate recovery of punitive damages. This practice has been applied to a wide range of federal statutes. See, e.g., Lengen v. Dept. of Transp., 903 F.2d 1464, 1468 (11th Cir. 1990) (Rehabilitation Act); Bishop v. Osborn Transp., Inc., 838 F.2d 1173, 1174 (11th Cir. 1988) (affirming denial of punitive damages in ERISA case; "nothing in the statutory language . . . supports the employee's position that punitive damages are recoverable . . . ."); Walker v. Ford Motor Co., 684 F.2d 1355, 1364 (11th Cir. 1982) (Title VII); Gober v. Newton Cty. Bd. of Health, Civil Action No. 1:21-cv-01612-WMR-CCB, 2021 WL 7632542, at *12 (N.D. Ga. Dec. 17, 2021) (in Family Medical Leave Act ("FMLA") case, recommending granting motion to strike any prayer for relief; "[u]nder the FMLA, punitive damages are . . . not available," citing to case from sister court "noting that the FMLA does not provide for punitive damages."); Cason v Coca-Cola Co., Civil Action No. 1:17-CV-3891-JPB-JSA, 2020 WL 13654235, at *25 (N.D. Ga. March 23, 2020) (in Fair Labor Standards Act ("FLSA") case, granting summary judgment on standalone claim for punitive damages; "[t]he only claim that would survive to trial . . . would be Plaintiff's FLSA claim, which does not provide for 'punitive'

6

damages"); Best v. Marix Servicing, LLC, Civil Action No. 1:11-CV-2233-AT, 2013 WL 12100762, at *15 (N.D. Ga. Sept. 10, 2013) (dismissing claim for punitive damages in Real Estate Settlement Procedures Act ("RESPA") case; "RESPA does not provide for punitive damages for a violation of [the statute]."); Hennington v. Bank of Am., Civil Action File No. 1:10-CV-1350-WSD, 2010 WL 5860296, at *9 n.15 (N.D. Ga. Dec. 21, 2010) (dismissing claim for "sanctions" in Truth in Lending Act ("TILA") case; "TILA does not provide for punitive damages").  See also Aronson v. Creditrust Corp., 7 F. Supp. 2d 589, 593-94 (W.D. Pa. 1998) (in Fair Debt Collection Practices Act ("FDCPA") case, in analysis of statutory language, "[n]otably there is no reference to punitive damages being an option.  Based upon the plain language of the statute, and in the absence of any legislative history to the contrary, I find that punitive damages are not recoverable under the FDCPA.").

Northbrook acknowledges that the Ninth and Tenth circuits have ruled that punitive damages are available under the TVPRA.  See Ditullio v. Boehm, 662 F.3d 1091 (9th Cir. 2011); Francisco v. Susano, 525 F. App'x 828 (10th Cir. 2013).  However, these decisions are predicated on an interpretation of the TVPRA that differs in material respects from the way in which the statute has been interpreted in the Eleventh Circuit.

In <u>Ditullio</u>, the Ninth Circuit considered whether the TVPA (the predecessor to the TVPRA) allowed for an award of punitive damages to a successful plaintiff. The court observed that "[a] plaintiff bringing a civil action under the TVPA must prove that the defendant has engaged in human trafficking, which Congress described as 'a contemporary manifestation of slavery,'" and that "[s]uch conduct obviously meets the common law standards for award of punitive damages because it is both intentional and outrageous."  662 F.3d at 1098.

This description by the Ninth Circuit of what gives rise to civil liability under the TVPA is vastly different from the Eleventh Circuit's interpretation of the TVPRA.  While the <u>Ditullio</u> court stated that a successful TVPA plaintiff "must prove that the defendant has engaged in human trafficking," the Eleventh Circuit, in <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714 (11th Cir. 2021), declined to "transpos[e] the statutory definition from [the] criminal section to the civil cause of action."  21 F.4th at 724.  The result is that, in this circuit, "participation in a venture" does <u>not</u> require participation in human trafficking.  Thus, as this Court stated in its summary judgment order in the present case:

> The result here for Plaintiff is that she need not show, for purposes of proving "participation in a venture," that Northbrook "knowingly assist[ed], support[ed], or facilitate[ed] an act of sex trafficking, as would be required under the criminal code provision. . . . Put another way, J.G. need not show that Northbrook participated directly in sex trafficking.

8

Summary Judgment Order, [Dkt. #138] at 15; see also id. at 13 (finding that Plaintiff need not make a showing that Northbrook "was '*in on*' Plaintiff's sex trafficking" or that Northbrook "took part with others in a 'common undertaking of sex trafficking.'") (emphasis in original).

In short, the Ditullio court decided that the TVPA must be read to provide for punitive damages because a person held liable under its provisions must have "engaged in sex trafficking" – *i.e.*, conduct that is so outrageous as to rise to the level of a crime. See Ditullio, 662 F.3d at 1097 ("Punitive damages are warranted when the defendant is found liable for conduct involving some element of outrage similar to that usually found in crime.") (internal quotation marks omitted).[7] But the Eleventh Circuit does not interpret the TVPRA to require a defendant to have engaged in sex trafficking for civil liability to attach, and thus the Ninth Circuit's reasoning in Ditullio that a TVPA violation justifies a punitive damages award does not apply with equal force here.

Similarly, the Ditullio court opines that punitive damages are appropriate under the TVPA because the conduct that is the subject of the statute is "intentional." 662 F.3d at 1098. However, in Red Roof, the Eleventh Circuit explained that liability under the TVPRA does not require that a defendant

---

[7] The Ninth Circuit's analysis may have been influenced by the fact that the defendant in Ditullio was, in fact, a criminal – he had previously pled guilty to conspiracy to commit sex trafficking of children. 662 F.3d at 1094.

9

"knowingly" assisted, supported or facilitated sex trafficking, as would be required for criminal liability. 21 F.4th at 724. In this circuit, TVPRA liability can attach even for *unintentional* conduct – that is, when the defendant had not actual knowledge, but mere constructive knowledge – *i.e.*, "should have known" – that a violation of the TVPRA as to the plaintiff was occurring. 21 F.4th at 725. Simply put, the Ninth Circuit's standard for what constitutes actionable conduct under the TVPRA – intentional and outrageous acts akin to criminal conduct that would naturally give rise to an award of punitive damages – is not the same standard in effect in the Eleventh Circuit.[8]

Northbrook submits that a more appropriate analysis in view of the Eleventh Circuit's different interpretation of the TVPRA is that expressed by Judge Consuelo Callahan in her dissent in Ditullio. Judge Callahan opined that the TVPRA should *not* be interpreted to provide for an award of punitive damages, for the following reasons:

▪ The majority in Ditullio concluded that punitive damages are recoverable under the TVPRA; however, the majority's reliance on common law is misplaced. By 2000, when the TVPA was enacted, "whether a federal statute authorized punitive damages depended on Congressional intent rather than on the

---

[8] The Tenth Circuit's opinion in Francisco came two years after the Ditullio decision and relied heavily on the Ninth Circuit's conclusion therein. See, e.g., Francisco, 525 F. App'x at 835 ("We thus agree with the only other circuit to address the matter and hold punitive damages to be available under § 1595.").

existing common law." 662 F.3d at 1103 (tracing history of Section 1983, Title VII and amendment of Tax Code treatment of punitive damages as representative of Congress' "ability to include, or not include, claims for punitive damages when it enacts legislation.").

- ■ While a first draft of the TVPA provided for a civil action and for damages to include punitive damages, the actual statute as enacted in 2000 did not create a private cause of action for damages, ordinary or punitive. Id. at 1104.

- ■ Congress reconsidered the TVPA in 2003. An initial draft of a civil damages provision contained language expressly contemplating an award of punitive damages. However, when the law was actually enacted, "[t]he provision for punitive damages was dropped," possibly as a compromise in response to a letter from the Department of Justice opposing the creation of a private right of action in the first instance. Id.

- ■ Congress' omission of a punitive damages remedy from the TVPRA must be given effect. "It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Id. at 1105 (quoting Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19 (1979)).

As Judge Callahan concludes,

> In sum, a review of the TVPA's legislative history shows that far from deferring to federal common law, Congress in 2003, when it created a

11

>private cause of action under TVPA, considered and declined to adopt language authorizing punitive damages. . . .
>
>TVPA's legislative history shows that Congress deliberately limited civil remedies to compensatory damages and attorneys' fees. We should not go further.

Id. at 1104-05 (Callahan, J., dissenting).

Plaintiff will likely argue that the general reference to "damages" in the language of the TVPRA is broad enough to encompass punitive, as well as compensatory, damages. However, Congress has expressly authorized a remedy of punitive damages in a wide variety of other contexts, literally using the term "punitive damages" in the text of the statute. See, e.g., 15 U.S.C. § 1691e (Equal Credit Opportunity Act); 18 U.S.C. § 2520 (civil remedies for unauthorized use of intercepted wires); 49 U.S.C. § 20109 (railroad employee discrimination); 50 U.S.C. § 1810 (civil liability for foreign intelligence surveillance); 18 U.S.C. § 248 (civil liability for denying access to reproductive health clinic entrances); 25 U.S.C. § 305e (misrepresentation of Indian produced goods); 15 U.S.C. § 1679g (consumer credit repair practices). "[W]here Congress knows how to say something but chooses not to, its silence is controlling." U.S. v. Pate, 84 F.4th 1196, 1202 (11th Cir. 2023). Congress intentionally omitted reference to punitive damages under the TVPRA. Thus, as Judge Callahan concluded, "we should not go further." Ditullio, 662 F.3d at 1105 (Callahan, J., dissenting).

12

For all of the foregoing reasons, even if Plaintiff were to prevail on her TVPRA claim, she should be precluded from seeking punitive damages.[9]

### III. Plaintiff's claims for fees, costs and expenses are unsupportable under specific cited statutes.

Plaintiff states in the current iteration of the proposed Pretrial Order that she "will seek to recover her reasonable attorneys' fees, costs, and expenses under the TVPRA, O.C.G.A. § 13-6-11, O.C.G.A. § 9-11-68, and any other fee-shifting authority." See Proposed Consolidated Pretrial Order [Dkt. # 141], Attachment "C."

Northbrook notes the following:

- While the TVPRA contemplates that a plaintiff may recover "damages and reasonable attorneys fees," 18 U.S.C. § 1595(a), it says nothing about the recovery of costs or expenses of litigation.

- Any claim by Plaintiff for attorney's fees or other expenses of litigation pursuant to O.C.G.A. § 13-6-11[10] is without merit, as Plaintiff's sole

---

[9] Northbrook further notes that O.C.G.A. § 51-12-5.1, which is Georgia's punitive damages statute, does not afford Plaintiff the opportunity to seek punitive damages because Plaintiff's state-law claim for negligence/premises liability was dismissed on summary judgment. [Dkt. #138]

[10] "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly

13

substantive state-law claim – for premises liability/negligence – was dismissed at summary judgment. [Dkt. #138] Plaintiff's § 13-6-11 claim was derivative of her state-law substantive claim only. When the state-law substantive claim was dismissed, so, too, was the state-law derivative claim for expenses of litigation under § 13-6-11, notwithstanding the remaining federal claim under the TVPRA. See Perkins v. Thrasher, 701 F. App'x 887, 891 (11th Cir. 2017) (granting summary judgment to defendant on O.C.G.A. § 13-6-11 claim when state-law substantive claims dismissed, notwithstanding pendency of federal § 1983 claims).

■ Similarly, any claim by Plaintiff for reasonable attorney's fees and expenses under O.C.G.A. § 9-11-68[11] is without merit, as Plaintiff's sole substantive state-law claim – for premises liability/negligence – was dismissed at summary judgment. [Dkt. #138] "That O.C.G.A. § 9-11-68 only applies to **state** tort claims is not controversial." Leonard v. State Farm Mut. Auto. Ins. Co., Civil Action No. 1:14-CV-1074-AT, 2014 WL 12219378, at *3 (N.D. Ga. June 17, 2014) (emphasis added).

---

litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." O.C.G.A. § 13-6-11.

[11] O.C.G.A. § 9-11-68 is Georgia's "offer of settlement" statute. In general terms, it provides for a plaintiff to recover certain reasonable attorney's fees and expenses of litigation if the plaintiff presents a qualifying offer of settlement to the defendant, the defendant rejects the offer, and the plaintiff then recovers a final judgment in an amount greater than 125 percent of the offer of settlement.

14

Respectfully submitted,


*/s/ Dana M. Richens*
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia 30309
Telephone: (404) 815-3659
Facsimile: (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.,
d/b/a United Inn and Suites

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this date filed the within and foregoing **DEFENDANT'S TRIAL BRIEF** using the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 23rd day of June, 2025.

*/s/ Dana M. Richens*