## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **J.G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., D/B/A UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff hereby submits the enclosed trial brief addressing the following issues:

- Joint and several liability under 18 U.S.C. § 1595(a);

- Punitive damages under 18 U.S.C. § 1595(a);

- Deposition designations for United Inn's 30(b)(6) representative;

- Adverse inference arising from United Inn's failure to identify its staff.

**<u>Plaintiff's Trial Brief on Joint and Several Liability under 18 U.S.C. § 1595(a)</u>**[1]

In 2003, when Congress empowered sex-trafficking victims to pursue civil remedies under the TVPRA,[2] it did so against the general common law of torts. *E.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). The traditional damages rule for torts is joint and several liability—not apportionment. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003) ("joint and several liability is the traditional rule").

To abrogate that traditional rule, Congress would need to speak directly to it. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). But Congress said nothing about joint and several liability (the default, common-law rule) or apportionment (a special rule) in the TVPRA civil-liability statute. That silence reveals Congress' intent, because Congress *did* say something about apportionment in another TVPRA section, specifically allowing apportionment for restitution. 18 U.S.C. § 1593(b)(2). Thus, Congress's intent was for TVPRA civil liability to be joint and several—consistent with the common law of torts.

---

[1] In her motions *in limine*, Plaintiff outlined why liability under the TVPRA is joint and several and expressed her intent to submit a more fulsome trial brief on the topic. This brief serves that purpose.

[2] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, sec. 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)). In 2008, Congress amended § 1595 to allow sex-trafficking victims to sue those who knowingly benefit from their sex trafficking. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067 (codified at § 1595(a)).

Whether United Inn will be jointly and severally liable for a judgment is not a question the Court can answer until there is a verdict. But the Court can rule that joint and several liability is available for TVPRA claims.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Civil liability under the TVPRA is joint and several.

Congress enacted the TVPRA "to combat trafficking in persons, … to ensure just and effective punishment of traffickers, and to protect their victims."[3] The TVPRA civil-liability statute, 18 U.S.C. § 1595(a), empowers Plaintiffs to pursue dual goals of compensation and punishment. It ensures that Plaintiffs can, if they prevail, achieve these goals by making liability for TVPRA civil damages joint and several and permitting sex-trafficking victims to pursue and receive punitive damages. The conclusion that the TVPRA's provision of civil liability is joint and several follows directly from the TVPRA's statutory text and structure and reflects the general common law of torts.

In 2008, Congress drastically expanded § 1595 to allow sex-trafficking victims to sue those who knowingly benefited from their being sex trafficked.[4] "Participation in a venture," an essential part of a TVPRA beneficiary claim, means "taking part in a common undertaking or enterprise involving risk and potential

---

[3] Pub. L. 106-386, § 102(a), 114 Stat. 1464, 1466.

[4] *See supra* n.1.

3

profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). Congress therefore knew that a beneficiary claim necessarily *required others' involvement* to trigger liability. *K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (Thrash, J.). Yet Congress said nothing about apportionment in § 1595. Both the federal common law and the TVPRA's structure confirm that liability is joint and several under § 1595.

### A. Federal common law calls for joint and several liability, not apportionment.

When Congress creates a new tort action, it does so against the backdrop of the general common law of torts. *Staub*, 562 U.S. at 417 (2011); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that "ordinary tort-related vicarious liability rules" apply to discrimination claim under Fair Housing Act that was "in effect, a tort action"). The TVPRA, like other federal statutes, was passed against the backdrop of the federal common law of torts, which demands joint and several liability, not apportionment.

"[J]oint and several liability is the traditional rule." *Norfolk,* 538 U.S. at 163 (rejecting apportionment under the Federal Employers' Liability Act). It "applies when there has been a judgment against multiple defendants," and makes each defendant "liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." *Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017). It also applies where judgment is entered against one defendant

for damages arising from a single, indivisible injury caused by the defendant and one or more nonparties. *See The Atlas*, 93 U.S. 302, 306 (1876) ("An innocent party, injured by the co-operative negligence of several persons, can sue them jointly or severally, and recover from either compensation for the injury done by all.").

In rejecting the defendant's effort to apportion liability under the Federal Employers' Liability Act, the Supreme Court in *Norfolk* was unpersuaded by the claim that "the modern trend is to apportion damages between multiple tortfeasors." 538 U.S. at 164. Rather, the Court noted that "many States retain full joint and several liability," "even more retain it in certain circumstances," and "most of the recent changes away from the traditional rule have come through legislative enactments rather than judicial development of common-law principles." *Norfolk*, 538 U.S. at 164–65. In other words, new legislative developments are not expressions of the common law; they are examples of legislation *abrogating* the default rule. *Cf. FDIC v. Loudermilk*, 305 Ga. 558, 576 (2019) ("Georgia's apportionment statute, O.C.G.A. § 51-12-33, did not abrogate Georgia's common-law rule imposing joint and several liability on persons who act in concert.").

Legislative silence about the common law does not abrogate it. For Congress "to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993). To overcome Congress's "expectation that" "well established" common law rules

apply, "a statutory purpose to the contrary" must be "evident." *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108. The TVPRA exhibits no such purpose. In fact, as shown below, the TVPRA's text and the circumstances of its passage and amendment all confirm Congress intended to preserve joint and several liability.

### B.    The TVPRA's text confirms Congress intended to render civil defendants jointly and severally liable.

The contrast between the TVPRA's civil beneficiary provision and the statute's other remedial measures further shows that, in passing the TVPRA, Congress did not abrogate the common law rule of joint and several liability. As Judge Thrash has recognized, the TVPRA's restitution statute "plainly *does* allow for apportionment." *K.M.*, 2024 WL 1217420, at *2. That statute, 18 U.S.C. § 1593(b)(2), requires judges to order restitution to be "issued and enforced in accordance with section 3664," which, in turn, permits courts to "make each defendant liable for payment of the full amount of restitution," or to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." *Id.*

Congress's choice not to mention apportionment in § 1595 when adding beneficiary claims—even though "it was foreseeable that others would be involved in these claims"—is telling, particularly in light of its direct statement about apportionment in the TVPRA's restitution statute. *Id.* After all, "when Congress includes particular language in one section of a statute but omits it in another section

6

of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452 (2002). Thus, the omission of apportionment for civil beneficiary claims is presumed to be intentional and purposeful.

Indeed, as Judge Thrash also acknowledged, it would be "surprising that Congress intended to permit apportionment without saying so"—especially "since allowing civil beneficiary defendants to apportion fault to traffickers, individuals who sexually assault victims, and other beneficiaries would drastically undermine the effect of the civil beneficiary provision." *K.M.*, 2024 WL 1217420, at *2. The notion that Congress's silence is a tacit invitation to apportion is especially improbable given Congress's willingness to amend the TVPRA. Despite amending § 1595 four times since 2003,[5] Congress has never added anything about apportionment.

Elsewhere, courts apply federal common law to speak where the TVPRA is silent. For example, while the TVPRA's civil liability provision is silent as to punitive damages for civil beneficiary claims, courts have applied the general common law of torts to fill the gaps and allowed plaintiffs to recover such damages.

The Ninth Circuit was the first circuit to consider the question of punitive

---

[5] *See* Pub. L. 110-457, Title II, § 221(2), 122 Stat. 5067 (2008); Pub. L. 114-22, Title I, § 120, 129 Stat. 247 (2015); Pub. L. 115-164, § 6, 132 Stat. 1255 (2018); Pub. L. 117-347, Title I, § 102, 136 Stat. 6200 (2023).

damages under the TVPRA, and it found that the meaning of "damages" within § 1595(a) is "ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three." *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011).[6] To resolve the ambiguity, the Ninth Circuit used "common law principles" because "[t]he Supreme Court has looked to the common law to determine the remedies available under federal statutes creating causes of action sounding in tort." *Id.* at 1097–98. And reasoning that punitive damages in tort actions are "awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future," the Ninth Circuit held that "punitive damages are available under 18 U.S.C. § 1595." *Id.* at 1098. In reaching this conclusion, the Ninth Circuit also relied on the Supreme Court's direction that, "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 70–71 (1992); *see also Ditullio*, 662 F.3d at 1096 (quoting same language).

Since *Ditullio*, the only other circuit to address the availability of punitive damages under § 1595(a) has agreed—and did so without reservation. *Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013). Other circuits have affirmed

---

[6] Though *Ditullio* interpreted the TVPRA's 2003 version, the interim changes are immaterial to this point.

punitive-damages awards in TVPRA cases without questioning the availability of such damages. *E.g.*, *Warfaa v. Ali*, 1 F.4th 289, 293, 296 (4th Cir. 2021) (affirming punitive-damages award of $100,000 under § 1595); *Roe v. Howard*, 917 F.3d 229, 238, (4th Cir. 2019) (affirming punitive-damages award of $2 million under § 1595); *accord Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017) (distinguishing the TVPRA from Iraqi law because "the TVPRA authorizes punitive damages"). Federal district courts around the country agree.[7]

Just as courts apply federal common law to conclude the TVPRA countenances punitive damages, this Court should apply federal common law to fill the gaps on the issue of joint and several liability.

---

[7] *E.g.*, *Moore v. Rubin*, --- F. Supp. 3d ----, 2024 WL 1191135, at *8 (E.D.N.Y. Mar. 20, 2024) ("Rubin's final argument is that the TVPA does not provide for punitive damages. Every Court of Appeals to address this issue (as well as a district court within this district) has held otherwise."); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1175 (D. Kan. 2018) (holding that "plaintiff deserves to recover punitive damages under the TVPRA and state human trafficking laws"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013) ("Where federal statutes sounding in tort are silent on the availability of punitive damage, courts look to common law principles to determine the scope of remedies. … Punitive damages are therefore available under the TVPA."); *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Indeed, '[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.'" (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021))); *J.C. v. Choice Hotels Int'l*, No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) ("[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." (citing *Meyer v. Holley*, 537 U.S. 280, 287–91 (2003)).

### C.    Federal courts apply joint and several liability to federal causes of action.

Under multiple federal statutes providing civil remedies like that provided in the TVPRA, silence as to apportionment has led federal courts to rule that liability is joint and several.

For example, liability under 42 U.S.C. § 1983—another federal statute creating a civil remedy compensating victims and holding wrongdoers to account— is joint and several. *E.g.*, *Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989); *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019). Likewise, courts have often held that "federal law" governs "the availability of joint and several liability" under the Fair Housing Act. *Whyte v. Alston Mgmt., Inc.*, No. 10-cv-81041, 2012 WL 11789773, at *1 (S.D. Fla. Apr. 11, 2012) (collecting cases). In an action by the Federal Trade Commission related to a fraudulent telemarketing scheme, the Eleventh Circuit held that "joint and several liability was available." *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017). Joint and several liability can arise either from the defendant's participation in a "common enterprise" or by providing "substantial assistance" to another person violating the telemarketing regulations. *Id.* at 1239–40. In holding that "substantial assistance" justified joint and several liability, the Eleventh Circuit emphasized that wrong's "resemblance to a well-established torts concept": "aiding and abetting," which "can result in joint and several liability." *Id.* at 1240. "In tort, the aider-abettor is liable to

10

the injured party for the entire harm." *Id.* at 1240-1.

**D.    Georgia's apportionment statute cannot overcome federal law's presumption favoring joint and several liability.**

Georgia's apportionment statute—which abrogated "the traditional common law rule of joint and several liability" in some circumstances for the purposes of Georgia state law claims—does not supplant joint and several liability for federal statutory claims.

As explained above, there is a well-established body of federal common law applying joint and several liability to federal statutory torts. And as Judge Thrash noted in *K.M.*, applying the apportionment statute instead of joint and several liability would likewise undermine the TVPRA's remedial purpose. 2024 WL 1217420, at *2.

Not only that, courts applying the TVPRA have not interpreted it to allow for apportionment of a TVPRA beneficiary claim. Plaintiff is not aware of any court allowing apportionment of fault for a TVPRA beneficiary claim. "It would be surprising if civil beneficiary defendants have always been permitted to apportion their damages to nonparties but have never attempted to do so." *Id.*

**E.    Under the general common law of torts, joint and several liability exists under additional grounds.**

The evidence will establish other bases for finding joint and several liability under general common law, including aiding and abetting principles. *See, e.g.*, *FTC*,

11

877 F.3d at 1239–40. Further, the evidence will establish that Plaintiffs suffered a single, indivisible injury due to being trafficked at United Inn, which also supports a joint and several judgment.

Applying general common-law principles of torts and damages, federal courts hold that single, indivisible injuries call for joint and several liability. The Seventh Circuit, for example, held that "[i]t is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury. In such a case the injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions." *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) (citing Restatement (Second) of Torts, §§ 875, 879). Likewise, the Supreme Court in the admiralty context has noted that "the common law" permitted "an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979) (citing Restatement (Second) of Torts §§ 433A, 875 (1965 and 1979) along with classic torts treatises by Thomas Cooley (1879) and William Prosser (1971)). This is consistent with the Supreme Court's direction that, "[w]hen two or more causes produce a single, indivisible harm," courts should "refuse[] to make an arbitrary apportionment for its own sake, and

each of the causes is charged with responsibility for the entire harm." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614–15 (2009).

The Eleventh Circuit recently discussed the relationship between the default rule of joint and several liability and the possibility of apportionment for an indivisible injury. In so doing, it held that "apportionment is appropriate only where 'there are *distinct harms*' or where 'there is a reasonable basis for determining the contribution of each *cause* to a single harm." *FTC*, 877 F.3d at 1242 (quoting Restatement (Second) of Torts § 433A(1)(a) & (b) (1965)). Because the harm was indivisible and there was "no reasonable basis on which to determine the relative contribution of [one defendant's] conduct to the single harm," the Eleventh Circuit affirmed the joint and several judgment. *Id.* at 1242, 1244.

This basis for joint and several liability applies to this case involving trauma resulting from child sex trafficking, because parsing apart or apportioning Plaintiff's trauma from being sex trafficked as a child among various tortfeasors is not feasible.

Furthermore, for purposes of federal principles of joint and several liability (as opposed to Georgia principles), Plaintiff need not show individual tortfeasors were working in concert or planned to inflict damage on Plaintiff. For example, a court in the Southern District of Florida found joint and several liability proper on a federal statutory claim, even where defendants were acting "perhaps independently." *Whyte*, 2012 WL 11789773, at *1–2. This is because it was impossible to divide

13

Plaintiff's *emotional* injury caused by the independent actions of others. *Id.* In sum, evidence that Plaintiffs' mental and emotional injuries are indivisible further supports imposition of joint and several liability.

## CONCLUSION

For the foregoing reasons, the Court should rule that joint and several liability is available under the TVPRA.

## **Plaintiff's Trial Brief on Punitive Damages under 18 U.S.C. § 1595(a)**

Plaintiff requests that the Court find that 18 U.S.C. § 1595(a) authorizes a victim to recover punitive damages. In support, Plaintiff incorporates here, in full, the argument and authority on pages 7 - 9 of her trial brief on joint and several liability, in which she discussed punitive damages under the TVPRA. In summary, Plaintiff highlighted that the Ninth and Tenth circuits have held that the TVPRA authorizes recovery of punitive damages and so have numerous district courts nationwide.  In addition, the Fourth and Fifth circuits have approved punitive damages awards in TVPRA cases without analyzing the issue.  Plaintiff is unaware of any federal court finding that 18 U.S.C. § 1595(a) does not permit recovery of punitive damages.  For these reasons, and those set forth more fully in the above-referenced section of Plaintiff's trial brief on joint and several liability, Plaintiff requests that the Court find that 18 U.S.C. § 1595(a) authorizes a victim to recover punitive damages.

## Plaintiff's Trial Brief on Deposition Designations of
## United Inn's 30(b)(6) Representative

Plaintiff requests that the Court authorize her to play at trial certain designated portions of a video recorded deposition of United Inn's 30(b)(6) representative.

At trial, Plaintiff's counsel intends to play designated portions of United Inn's 30(b)(6) representative's testimony, *and*, separately, to call Tahir Shareef live as a witness in his personal capacity (as the manager of United Inn). Though Mr. Shareef served as United Inn's 30(b)(6) representative, the 30(b)(6) testimony at issue is not Mr. Shareef's personal testimony. It is United Inn's corporate testimony. With an appropriate jury instruction, the jury would be so advised.

United Inn's counsel has suggested that it may object to Plaintiff playing certain designated portions of the 30(b)(6) deposition because the corporate representative, Tahir Shareef, will be present in the courtroom during the trial and available to testify in person. In other words, United Inn's objection (as Plaintiff's counsel understands it), may not be to the deposition itself, or to the designated portions of the transcript that Plaintiff seeks to play, but instead to the concept of playing a video recorded 30(b)(6) deposition when the 30(b)(6) representative is present in the courtroom.

In advance of the pre-trial conference, where Plaintiff's counsel expect this issue to be discussed in greater detail, Plaintiff's counsel raises the following points for the Court's consideration:

Under Fed. R. Civ. P. 32(a)(3), "an adverse party **may use for any purpose** the **deposition of a party or** anyone who, when deposed, was **the party's** officer, director, managing agent, or **designee under Rule 30(b)(6)** or 31(a)(4)." (emphasis added). The plain language of the rule shows that it does *not* hinge on whether the 30(b)(6) representative is absent from the courtroom at trial; that's not a condition of the rule. "As stated, the Rule permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial." *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir. 1978)[8]; *Walker v. Banks, Finley, White & Co. of Georgia, P.C.*, No. 1:19-CV-5461-CAP, 2023 WL 11909753, at *9 (N.D. Ga. Jan. 3, 2023) (Pannell, J.) ("The defendant moves preclude the plaintiff from presenting deposition designations for witnesses who are available to testify at trial. … With respect to White, Sr. **Rule 32(a)(3) specifically allows the use of his Rule 30(b)(6) deposition by the plaintiff**."); In *Re 3M Combat Arms Earplug Prods.*, No. 3:19-MD-2885, 2022 WL 822460, at *6 (N.D. Fla. Jan. 26, 2022), *report and recommendation adopted sub nom. In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19MD2885, 2022 WL 741934 (N.D. Fla. Mar. 11, 2022) ("Thus, Plaintiffs, as adverse parties, are entitled to use Berger's 30(b)(6)

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

17

deposition testimony 'for any purpose,' independent of whether Berger is or is not unavailable.")

Even if Rule 32(a)(3) did not resolve it (it does), other provisions in the same rule justify admission of the subject 30(b)(6) deposition designations.  Indeed, Rule 32(a)(1) says: "At a hearing *or trial*, *all or part of a deposition may be used against a party on these conditions*: (A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is used to the extent it would be admissible under the Federal  Rules of Evidence if the deponent were present and testifying; and (C) the use is allowed by Rule 32(a)(2) through (8)." (emphasis added). Each of those conditions is met here—United Inn had reasonable notice of the subject 30(b)(6) depositions and was represented by counsel, the testimony is admissible under Fed. R. Evid., 801(d)(2)(C) and (D) (as an admission by party opponent), and its use is allowed by Rules 32(a)(2) through (8).

Therefore, Federal Rule of Civil Procedure 32(a)(3) and Federal Rules of Evidence 801(d)(2)(C) and (D)[9] permit Plaintiff to play portions of United Inn's

---

[9] Rule 801(d)(2) provides an independent basis for the admission of the subject 30(b)(6) deposition testimony. *See, e.g., In re Reserve Fund Sec. & Derivative Litig.*, No. 09 CIV. 4346, 2012 WL 12354233, at *4 n.5 (S.D.N.Y. Oct. 3, 2012) ("Depositions admissible under Fed. R. Evid. 801(d)(2) need not be separately analyzed under Fed. R. Civ. P. 32(a)."); *see also MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 574 (S.D.N.Y. 2017) ("Rule 801(d)(2)(D) provides an independent basis — separate from Rule 32(a)(3)—for admitting deposition testimony."); *Carpenter v. Forest Meadows Owners Ass'n*, No.

30(b)(6) deposition, *and*, separately, to call Mr. Shareef in his individual capacity at trial.  Neither set of rules says that a 30(b)(6) deposition may be used only if the 30(b)(6) deponent will not be present in the courtroom at trial. That is not a relevant condition.[10]

Undersigned counsel recognizes that under Federal Rule of Evidence 611 the court can manage the presentation of evidence to streamline trials.  Counsel intends to try a direct and efficient case. To that end, undersigned counsel will ***not*** duplicate or repeat questions covered in the designated video-recorded portions of the 30(b)(6) deposition in Mr. Shareef's personal testimony. In Mr. Shareef's live examination in his personal capacity, Plaintiff's counsel would cover new ground.

United Inn's proposal—that Plaintiff be required to call Mr. Shareef live to cover *both* 30(b)(6) topics *and* to answer questions in his individual capacity— would violate the foregoing rules, and lead to jury confusion and inefficiency/delay. As to jury confusion, Plaintiff's counsel would have to navigate the arduous task of

---

1:09-cv-01918-JLT, 2011 WL 3207778, at *5 (E.D. Cal. July 27, 2011) ("The Court agrees that the Federal Rules of Evidence provide an independent basis from Rule 32(a)(3) for admitting deposition testimony."); *Fair Fight Action, Inc. v. Raffensperger*, 599 F. Supp. 3d 1337, 1343 (Jones, J.) (N.D. Ga. 2022) ("Because Mr. Harp's testimony may be imputed to the SEB under Rule 801(d)(2)(D), the Court declines to address Plaintiffs' second argument concerning whether Mr. Harp's testimony may also be imputed to the SEB under Rule 32(a)(3).")

[10] True, Fed. R. Civ. P. 32(a)(4) asks whether "a witness" is "unavailable." But that is not the rule on point here.  Rule 32(a)(3) specifically concerns the deposition at issue here—that is, the "deposition of a party, agent, or designee."

questioning Mr. Shareef in one examination in both his personal capacity and in his

30(b)(6) capacity, and then sift through the same issues as part of any impeachment.

As to inefficiency and delay, if (and more likely, when) there were contradictions

between Mr. Shareef's testimony, and the prior video-recorded 30(b)(6) deposition,

Plaintiff would need to impeach Mr. Shareef with the transcript from the prior

30(b)(6) deposition, which would lead to inefficiency and delay. [11]  The probability

and frequency of time-consuming impeachments would be reduced materially by

allowing Plaintiff's counsel—in conformity with the Federal Rules of Civil

Procedure—to play designated portions of United Inn's 30(b)(6) deposition, and,

separately, to call Mr. Shareef in his personal capacity to cover new ground (e.g.,

documents and issues not addressed in the video excerpts).

For these reasons, Plaintiff requests that the Court authorize her to play at trial

certain designated portions of a video recorded deposition of United Inn's 30(b)(6)

representative.

---

[11] Plaintiff's counsel anticipates impeachments would be necessary because Mr. Shareef was deposed as United Inn's 30(b)(6) representative twice following United Inn's discovery misconduct.  In the second deposition, his testimony differed on key points from the first deposition.

While Plaintiff's counsel of course reserves the right to impeach Mr. Shareef as warranted at trial, undersigned counsel represents to the court that it is likely that the need for and frequency of impeachments would be reduced by allowing Plaintiff to proceed her with stated plan, which is also authorized by the Federal Rules.

**Plaintiff's Trial Brief on Adverse Inference at Trial**

Plaintiff requests that the Court grant her request for an adverse inference at trial stemming from United Inn's failure (or refusal) to identify all people who worked at the hotel during the relevant period and to provide their contact information. In failing to do so, United Inn violated Rules 26(a) and (e).

In October 2023 (before the Eleventh Circuit issued its unpublished, *per curiam Riti* opinion), Plaintiff's counsel wrote in her motion for sanctions:

> Defendant should not be allowed to introduce evidence or argument at trial that its staff never reported concerns about commercial sex at the hotel, … and that none of its staff had criminal records or were complicit in crime at the hotel, because it has produced inconsistent, incomplete information about who worked at the hotel. Plaintiff cannot confront Defendant's claims about staff reports of crime, staff trainings, and vetting of staff because Plaintiff does not know who Defendant's employees were and cannot find them. *... **Alternatively, Plaintiff requests a jury instruction on how Defendant's conflicting and partial staff records compromised Plaintiff's ability to examine Defendant's claims about staff crime reports, staff trainings, and vetting of staff, among other topics***.

(Doc. 86 at 27-28) (emphasis added). Post-*Riti*, Plaintiff's counsel's request has even greater urgency. Indeed, because of United Inn's discovery abuse, Plaintiff's ability to prove "some connection between the hotel operator's and the trafficker's actions," and identifiable "actions the operator took to advance the object of the joint undertaking," (Doc. 138 at 19), has been prejudiced materially.[12]

_____

[12] Plaintiff incorporates the arguments she previously raised in her sanctions briefing (Doc. 86, 91), and in her motion *in limine* (Doc. 161 at 30 – 32), regarding

In advance of trial, Plaintiff submitted to United Inn three proposed stipulations regarding the discovery misconduct at issue:

    i.   At all relevant times, Northbrook Industries, Inc. d/b/a United Inn & Suites did not keep records to identify all of the people who worked at the hotel.

    ii.   In discovery, Northbrook Industries, Inc. d/b/a United Inn & Suites produced different lists of staff who worked at the hotel during the relevant period.

    iii.   At all relevant times, Northbrook Industries, Inc. d/b/a United Inn & Suites paid at least some of the people who worked at the hotel in cash and did not maintain tax records.

United Inn refused to agree to any of these proposed stipulations.

In her draft proposed jury instructions, which she has sent to opposing counsel, Plaintiff proposed the below jury instruction from *Federal Jury Practice and Instructions*:

## Failure to Produce Evidence Under Party's Control

If a party fails to produce evidence under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have

---

the prejudice she has suffered (and will suffer at trial) because of United Inn's violation of discovery rules. References to page numbers are to the CM-ECF page numbers stamped on the as-filed document.

produced it and did not. 3 Kevin F. O'Malley, Jay E. Grenig, & William C. Lee, *Federal Jury Practice and Instructions* § 104:26 (7th ed.).

Plaintiff has not yet received United Inn's response but anticipates United Inn will object. In the meantime, Plaintiff raises this issue for the Court's consideration in advance of the pre-trial conference.

This 23rd day of June, 2025.

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 23rd day of June, 2025.

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

*Attorney for Plaintiff*
