IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **J.G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **v.** | : | |
| | : | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., d/b/a UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

## PROPOSED CONSOLIDATED PRETRIAL ORDER

Plaintiff J.G. and Defendant Northbrook Industries, Inc. d/b/a United Inn & Suites, by and through their undersigned counsel, hereby submit this proposed consolidated pretrial order. The parties reserve the right to submit supplemental pretrial orders up to the pre-trial conference as the parties continue trial preparations.

**1.**

**There are no motions or other matters pending for consideration by the court except as noted:**

The parties' opposed *Daubert* motions are pending for consideration by the Court. The *Daubert* motions, and the experts to whom the motions relate, are on the docket at the below locations:

- Naeshia McDowell (ECF Nos. 99, 119, 125)

- Darrell Chaneyfield (ECF Nos. 100, 118, 124)

- Karim Vellani (ECF No. 109, 117, 129)

The parties' opposed motions *in limine* are pending for consideration by the Court at the below locations:

- Plaintiff's Motions *in Limine* (ECF Nos. 161, 165, 173)

- Defendant's Motions *in Limine* (ECF Nos. 160, 167, 172)

Defendant's opposed Rule 412 motion is pending for consideration by the Court at the below location:

- Defendant's Rule 412 Motion (ECF No. 175, 176, 178)

The parties' trial briefs are pending for consideration by the Court at the below locations:

- Plaintiff's Trial Brief (ECF No. 188)

- Defendant's Trial Brief (ECF No. 187)

Plaintiff intends to file a motion for protective order to permit Plaintiff to be referred to by her first name during trial.  Defendant does not intend to oppose this motion.

## 2.

**All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery.  (Refer to LR 37.1B).  Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.**

Pursuant to agreement, the parties will cooperate to schedule trial depositions, if any, subject to the limitation articulated in the preceding paragraph.

**3.**

**Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.**

The parties are correctly identified.

**4.**

**Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)**

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims arising under 18 U.S.C. § 1595(a).

**5.**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

**Plaintiff:**

David H. Bouchard
Georgia Bar No. 712859
david@finchmccranie.com
Finch McCranie, LLP
229 Peachtree St. NE, Suite 2500
Atlanta, GA 30303

**Defendants:**

Dana M. Richens
Georgia Bar No. 604429
drichens@sgrlaw.com
Smith, Gambrell & Russell, LLP
1105 West Peachtree Street N.E.
Suite 1000
Atlanta, Georgia 30309

**Other parties:**

None

**6.**

**Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.**

None.

**7.**

**The captioned case shall be tried ( X ) to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.**

**8.**

**State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.**

Plaintiff requests a bifurcated trial under Fed. R. Civ. P. 42(b) and Fed. R. Evid. 611, with the first phase concerning liability and compensatory damages, and the second phase concerning punitive damages. The trial should be bifurcated for efficiency, economy, and the orderly presentation of evidence.

4

Defendant does not concede that Plaintiff is entitled to pursue a claim of punitive damages. If the Court determines that Plaintiff may pursue such a claim, then Defendant requests that the Court follow the procedure set forth in O.C.G.A. § 51-12-5.1(d)—that is, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made, as indicated in an appropriate form of verdict. If it is found that punitive damages are to be awarded, then the trial shall immediately be recommenced in order to receive evidence on that issue.

**9.**

**Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.**

See Attachment "A" concerning proposed joint jury questionnaire.

**10.**

**Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination. Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination. Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination. The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.**

See Attachments "B-1" and "B-2."

## 11.

**State any objections to plaintiff's voir dire questions:**  See below.

**State any objections to defendant's voir dire questions:**  See below.

**State any objections to the voir dire questions of the other parties, if any:**

The parties have conferred and made a good-faith effort to resolve objections. Where the parties were unable to agree, the parties have indicated the same in Attachments "B-1" and "B-2" by incorporating objections in bold beneath the subject voir dire question.

## 12.

**All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise.  The parties must state in the space provided below the basis for any requests for additional strikes.  Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870.  *See* Fed.R.Civ.P. 47(b).**

Given the potentially sensitive nature of the subject matter of the lawsuit, which may involve discussion of sex trafficking, including physical violence, sexual violence, and sexual trauma, the parties propose a larger panel of 30 potential jurors with each side being entitled to 4 peremptory strikes.

Furthermore, given the nature of the facts at issue, the parties also propose that the jurors complete a questionnaire in advance of voir dire. A questionnaire

permits jurors to disclose sensitive information in a more discreet manner than if questions were posed in open court. The parties have conferred and prepared a joint questionnaire—*see* Attachment "A."

## 13.

**State whether there is any pending related litigation. Describe briefly, including style and civil action number.**

**Plaintiffs' position**:

1. The matter *Northfield Insurance Company v. Northbrook Industries, Inc., d/b/a United Inn and Suites, and J.G.* (Case No. 1:23-cv-03596-SEG) is now pending before the Court. The case concerns Northfield Insurance Company's Complaint for Declaratory Judgment relating to an insurance policy in effect at United Inn and Suites at the time J.G. was sex trafficked at the hotel.

2. The matters *A.G. v. Northbrook Industries, Inc., d/b/a United Inn and Suites* (Case No. 1:20-cv-05231-JPB) and *G.W. v. Northbrook Industries, Inc., d/b/a United Inn and Suites* (Case No. 1:20-cv-05232-JPB). The A.G. and G.W. cases involve legal claims arising from minor sex trafficking at United Inn & Suites in 2017, the year before J.G. was trafficked at United Inn & Suites. Judge Boulee granted summary judgment, and his orders are the subject of pending appeals to the Eleventh Circuit.

**Defendants' position**:

Defendant notes that Judge Boulee granted summary judgment to Northbrook in the above-referenced A.G. and G.W. matters.  Further, Defendant does not concede that the facts relating to those matters are relevant here.

## 14.

**Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence.  All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading.  In negligence cases, each and every act of negligence relied upon shall be separately listed.  For each item of damage claimed, plaintiff shall separately provide the following information:  (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.**

## 15.

**Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence.  All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading.  For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed:  (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.**

**16.**

**Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the noncooperating counsel.**

See Attachment "E."

**17.**

**The legal issues to be tried are as follows:**

**By Plaintiffs:**

(1) Whether Defendant United Inn & Suites is liable to Plaintiff under the TVPRA, 18 U.S.C. § 1595(a).

(2) Whether Defendant United Inn & Suites's acts or omissions were the proximate cause of Plaintiff's injuries or damages.

(3) Whether Defendant United Inn & Suites is liable to Plaintiff for damages, and the amount of such damages, including general damages, compensatory damages, economic damages, non-economic damages, consequential damages, and punitive damages.

(4) Whether Defendant United Inn & Suites is liable to Plaintiff for costs, expenses, and reasonable attorneys' fees, including fees pursuant to the 18 U.S.C. § 1595(a), O.C.G.A. § 13-6-11, and/or O.C.G.A. §9-11-68(e), and any other fee-shifting statute.

(5) Whether the default federal common law rule of joint and several liability applies to Plaintiff's claims under 18 U.S.C. § 1595(a), a federal statute.

(6) Whether Plaintiff is entitled to punitive damages against Defendant under 18 U.S.C. § 1595(a).

(7) Any additional legal issues raised by any affirmative defenses or counterclaims Defendant may assert.

(8) Legal issues addressed in Plaintiff's trial brief and motions *in limine* briefing.

**By Defendants:**

(1) Whether Plaintiff is a victim of a violation of Chapter 77 of the United States Code Annotated.

(2) Whether Northbrook knowingly benefited, as such term is used in 18 U.S.C. § 1595(a).

(3) Whether Northbrook participated in a venture, as such term is used in 18 U.S.C. § 1595(a).

(4) Whether the alleged venture violated the TVPRA as to Plaintiff.

(5) Whether Northbrook knew or should have known that the alleged venture violated the TVPRA as to Plaintiff.

(6) Whether alleged knowledge, acts or omissions of Northbrook's employees are imputable to Northbrook.

(7) Whether Northbrook's acts or omissions were the cause in fact and proximate cause of Plaintiff's injuries or damages.

(8) Whether Plaintiff's injuries or damages were caused, in whole or in part, by pre-existing and subsequent conditions and events unrelated to the subject matter of this case.

(9) Whether the injury or damage to Plaintiff was caused by the conduct of persons other than Northbrook.

(10) Whether Plaintiff's own acts or omissions caused or contributed to her injury and damages.

(11) The amount of damages, if any, to which Plaintiff is entitled.

(12) Whether damages, if any, to which Plaintiff is entitled are subject to apportionment pursuant to federal law and/or O.C.G.A. § 51-12-33.

(13) Whether Plaintiff is entitled to an award of punitive damages, and, if so, the amount of such damages.

(14) Whether Plaintiff is entitled to an award of attorneys' fees and, if so, in what amount.

## 18.

**Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness. All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.**

*See* Attachments "F-1" and "F-2."

## 19.

**Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.**

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits. Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity. Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

The parties have prepared and exchanged exhibit lists and objections. The parties are conferring in good faith to resolve as many objections as possible in advance of the pre-trial conference and to formalize stipulations as to evidentiary issues. Some of the objections may be resolved by this Court's rulings on motions *in limine*. The parties intend to submit exhibit lists to the Court prior to the pre-trial conference.

**20.**

**The following designated portions of the testimony of the persons listed below may be introduced by deposition:**

Plaintiff has identified for Defendant the portions of United Inn's 30(b)(6) deposition testimony that Plaintiff may use at trial. Defendant is reviewing those portions for objections and counter-designations.

**Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.**

**21.**

**Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.**

*See* Attachments "H-1" and "H-2."

**22.**

**In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions,**

**covering both claims and defenses, which the court may use in its charge to the jury.**

**Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.**

The parties are working in good faith to prepare requests to charge and will submit them "no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial," as set forth above.

## 23.

**If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.**

The parties have attached hereto as Exhibits "I-1" and "I-2" their respective proposed verdict forms.

## 24.

**Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.**

The parties request that they be permitted up to 30 minutes for opening statements and up to 40 minutes for closing arguments.

**25.**

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

**26.**

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on March 14, 2023, and plan to meet again on May 13, 2024, to discuss in good faith the possibility of settlement of this case. The court (__X___) has or (_____) has not discussed settlement of this case with counsel. It appears at this time that there is: (_____) A good possibility of settlement. (_____) Some possibility of settlement. (__X__) Little possibility of settlement. (_____) No possibility of settlement.

**27.**

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

**28.**

The plaintiff estimates that she will need approximately 3 days to present her evidence. The defendant estimates that it will require approximately 2 days to present its evidence. It is estimated that the total trial time is 5-6 days.

**29.**

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless

**specifically authorized in writing by the court. IT IS SO ORDERED this** **_____ day of _____, 20_____.**


_____
**UNITED STATES DISTRICT JUDGE**


Each of the undersigned counsel for the parties hereby consents to entry of the

foregoing pretrial order, which has been prepared in accordance with the form

pretrial order adopted by this court.


_/s/_____                    _/s/_____
David H. Bouchard                        Dana M. Richens
**Counsel for Plaintiff**                    **Counsel for Defendant**

## <u>ATTACHMENT A - JOINT PROPOSED JURY QUESTIONNAIRE</u>

Plaintiff J.G. ("Plaintiff") and Defendant Northbrook Industries, Inc., d/b/a United Inn & Suites ("Defendant") hereby submit the following proposed jury questionnaire.  After conferring, there remains one objection by Defendant to a question proposed by Plaintiff, which is noted herein.

In selecting a jury, we would like to understand if you, or anyone you know, has certain knowledge or experience that may be relevant to this case.

1.      Where were you born?  Where did you grow up?  How long have you lived in the Atlanta area?

2.      Have you, or anyone you know, worked:

        a.      For a motel, hotel, or inn?

        b.      In any role in the hospitality industry?

        c.      For law enforcement?

        d.      As security?

        e.      As a housekeeper?

        f.      As a maid?

        g.      In the legal industry?

        h.      For a law firm, or law office?

        i.      For a prosecutor's office?

        j.      For a defense attorney's office?

3.      Have you, or anyone you know, worked for a business with an annual

revenue of more than one million dollars?

      a.      When?

      b.      What type?

**Defendant objects to the above question, proposed by Plaintiff, as seeking to
improperly introduce the irrelevant and prejudicial topic of Northbrook's
financial status.**

4.      Have you, or anyone you know, ever owned a business?

      a.      When?

      b.      What type?

      c.      How many employees?

5.      Have you, or anyone you know, managed people?

      a.      When?

      b.      How many?

      c.      What was the job?

6.      Have you, or anyone you know, ever trained people in their jobs?

      a.      When?

      b.      For what?

7.      Have you ever been sued? [If so: When? Nature of the lawsuit?

Result?]

8.      Have you ever filed a lawsuit, or have a family member or close friend

who has filed a lawsuit? [If so: When? Nature of the lawsuit? Result?]

9.      Have you ever been accused of a crime, or have a family member or close friend accused of a crime? [If so: Who? When? What? Result?]

10.     Have you ever been convicted of a crime, or have a family member or close friend who has been convicted? [If so: Who? When? What? Result?]

11.     Do you have any knowledge or information about the United Inn & Suites located at 4649 Memorial Drive, Decatur, GA 30032?

12.     Have you ever been homeless?

13.     Have you ever lived in a group home?  If yes, please explain the circumstances.

14.     Do you or someone close to you suffer from any mental health issues, such as anxiety, depression, and/or post-traumatic stress disorder (PTSD)?

15.     Have you ever been the victim of, or do you know of anyone who has been the victim of, any form of physical violence or abuse?

16.     Have you ever been the victim of, or do you know of anyone who has been the victim of, sex trafficking, sexual abuse or assault, or other sexual trauma? If yes, please describe.

17.     Have you ever made allegations against someone else of physical or sexual abuse?  If yes, what happened to the case?

18.     Have allegations of physical or sexual abuse ever been made against

you or someone you know?  Who were the allegations made against?  What happened?  Did you think you/he/she was treated fairly?

19.    Have you ever reported physical or sexual abuse to a co-worker, a manager, a boss, a supervisor, law enforcement, or someone else?  What did you report?  Was it for yourself, or on someone else's behalf?  And whom were the allegations against?

20.    Have you ever been a mandatory reporter?  In what context?  In that capacity, have you ever submitted a report regarding physical or sexual abuse?

21.    Have you, or has someone close to you, ever been the victim of a violent crime?  If yes, please describe.

22.    Have you ever received or given professional counseling related to physical or sexual violence, abuse, or trauma?  If yes, please indicate if counseling is still ongoing.

23.    Have you ever worked with or had personal experience with minors involved in the foster system, juvenile justice, or youth shelters?  If yes, please describe.

24.    Are you involved in or a supporter of any victim's rights, victim's advocacy, or victim's assistance programs?  If yes, please describe.

25.    Do you have beliefs or biases about the sex trafficking of minors that would prevent you from being fair and impartial in this case?  If yes, please explain.

Respectfully submitted,

_____
David H. Bouchard
Georgia Bar No. 346750
FINCH McCRANIE, LLP
225 Peachtree Street N.E.
1700 South Tower
Atlanta, Georgia  30303
Telephone:  (404) 658-9070
Facsimile:  (404) 688-0649
david@finchmccranie.com

Attorney for Plaintiff J.G.


_____
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 Peachtree NE, Suite 1000
Atlanta, Georgia  30309
Telephone:  (404) 815-3659
Facsimile:  (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.
d/b/a United Inn and Suites

**ATTACHMENT B – 1**
**PLAINTIFF J.G.'s PROPOSED VOIR DIRE QUESTIONS**

**Request for Additional Qualifying Questions**

Plaintiff requests the following additional qualifying voir dire questions:

26. Is English your native language? If not, would you have difficulty understanding Court proceedings and following instructions?

27. Is there anyone who is already leaning towards the Plaintiff or the Defense? Is there anyone's mind that is not completely impartial between the Plaintiff and the Defense?

**Individual Questions**

Plaintiff filed a lawsuit against United Inn & Suites, a hotel in DeKalb County, and alleges that she was sex trafficked there at the age of 16 for over 35 days.  She alleges that the hotel violated a federal law called the Trafficking Victims Protection Reauthorization Act, and through her lawsuit she seeks to have Northbrook found civilly liable and to obtain an award of monetary damages.

The purpose of these voir dire questions is to assist the lawyers with selecting jurors for this case.  We thank you for participating and answering our questions directly.  We will move through them efficiently.

(1) As I said, this case concerns the United Inn & Suites, located at 4649 Memorial Drive, Decatur, GA 30032.

    a.  Is anyone here familiar with the United Inn & Suites?

    b.  If anyone here has <u>never</u> stayed at a hotel, will you please raise your hand?

    c.  Raise your hand if safety and security at a hotel is important to you when you stay at a hotel. Why? **(Defendant objects as confusing and misleading)**

    d.  Raise your hand if you believe that a hotel has a responsibility to keep guests at the hotel safe and secure. How come? **(Defendant objects as confusing and misleading, and invades the province of the Court**

**to instruct the jury on the applicable law)**

    e.  What do you expect a hotel to do to keep guests safe and secure? Do you expect it to have adequate staffing, security monitoring, or to call the police in response to crime? **(Defendant objects as confusing and misleading)**

    f.  Raise your hand if you expect a hotel to notify the police about criminal activities at the hotel, like guests who are selling drugs or girls for sex?

(2) Has anyone ever stayed at an extended stay hotel?

    a.  In your mind, how is an extended stay different from a regular hotel where people might only stay for one or two nights and then leave?

    b.  For those who answered yes, that they have stayed at an extended stay hotel, did you become familiar with hotel staff?

(3) This case is about sex trafficking.

    a.  Raise your hand if you are familiar with the term sex trafficking. What do you understand it to mean?

    b.  Raise your hand if you know of someone who is the victim of sex trafficking.

    c.  Raise your hand if you think you know the difference between sex trafficking and prostitution. How would you describe the difference?

    d.  Raise your hand if you have ever seen a person who you believed was engaged in prostitution.  What made you think that?

    e.  Raise your hand if you believe there is a difference between sex trafficking of a 16-year-old and sex trafficking of an adult. What's the difference?

    f.  Raise your hand if you believe a minor can <u>consent</u> to sex trafficking. Why do you believe that?

    g.  Raise your hand if you believe <u>force and coercion</u> play a role in distinguishing sex trafficking and prostitution. How so?

    h.  Some people believe that trafficking only happens overseas or in movies.  What have you heard or seen about sex trafficking in the United States?

    i.  Would you expect hotel managers to be familiar with sex trafficking because of the industry they work in?

(4) The federal age of consent is 18 years of age.

    a.  Raise your hand if you disagree with that law.  Why?  **<u>(Defendant objects as confusing and misleading)</u>**

    b.  Raise your hand if you do not think that should be the law.  Why? **<u>(Defendant objects as confusing and misleading)</u>**

    c.  Raise your hand if you'd refuse to apply the federal law on the age of

consent simply because you disagree with the federal law. **(Defendant objects as confusing and misleading)**

    d.  Raise your hand if you view 16-year-old as adults.  How about as children?

(5) Is anyone here familiar with what a BOLO notice is?

    a.  This case concerns a lawsuit against a hotel company.  Raise your hand if you believe that a sex trafficking victim should not be able to sue a hotel where the victim was sex trafficked. How come?

    b.  Raise your hand if you believe a hotel has a duty to protect their guests from criminal activity—or is that asking too much? **(Defendant objects as confusing, misleading and argumentative)**

(6) You will hear about people who worked at Defendant's hotel.

    a.  Has anyone here had to undergo a background check prior to getting a job?  Is that important?  Why? **(Defendant objects as confusing, misleading and argumentative)**

    b.  Raise your hand if you believe it's important for a hotel to maintain records of its employees.  Why? **(Defendant objects as confusing, misleading and argumentative)**

    c.  Raise your hand if you believe it's important for a hotel to train its employees.  Why? **(Defendant objects as confusing, misleading and**

**argumentative)**

    d.  What responsibility does a hotel have to supervise its employees?

       **(Defendant objects as it invades the province of the Court to instruct the jury on the applicable law)**

(7) Closing items.

    a.  Raise your hand if you would be unwilling to award damages for pain and suffering, or mental anguish, regardless of the evidence and the law.

    b.  The standard in this case is not, "beyond a reasonable doubt." In cases like this case—which is a civil case, not a criminal case—we have a different standard.  It's called, "Preponderance of the Evidence."  It's, in effect, a fancy way of saying, "more likely than not."  Is there anyone here that would refuse to follow the standard for this case because you feel it should be different?

    c.  Monetary compensation is the way that civil cases are resolved. Raise your hand if you believe that money is not a fair way to resolve disputes.  Why or why not?

    d.  Please raise your hand if you have an unfavorable opinion of people who file lawsuits against others seeking monetary damages

    e.  Raise your hand if you believe that jury verdicts are too high these

days.

f.  If you have an unfavorable view of seeking monetary damages in the civil justice system, please raise your hand.

g.  If you have an unfavorable view of the civil justice system for any reason, please raise your hand.

h.  Raise your hand if you have heard of the 2025 Georgia Tort Reform agenda. If you support tort reform, please tell us why.

i.  At the end of trial, Plaintiff intends to ask for a significant verdict in the millions of dollars.  Is there anyone here who would never be willing to award a significant verdict in the millions of dollars, even if it is justified by the evidence and the law? **(Defendant objects as improper attempt to unduly influence the jury by preconditioning or anchoring the jury to a substantial verdict)**

Respectfully submitted, this _____ day of _____, 2025.

*[signature block on next page]*

FINCH McCRANIE, LLP

/s/ David H. Bouchard
David H. Bouchard
Georgia State Bar No. 712859
david@finchmccranie.com
Oto U. Ekpo
Georgia State Bar No. 327088
oto@finchmccranie.com
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 | Telephone
(404) 688-0649 | Facsimile

*Attorneys for Plaintiff*

**<u>Attachment "B-2" – Defendant Northbrook's General Questions for Voir Dire</u>**

In addition to the Court's standard qualifying questions and background questions, Defendant Northbrook requests the opportunity to propound the following additional questions to prospective jurors during voir dire.

**<u>General</u>**

1.    Do you know any of the other members of this jury panel?

       a.    If yes, whom do you know?

**<u>Work Experience</u>**

2.    Have you, or anyone close to you, worked in a medical or healthcare field?

       a.    If yes, who, for how long and in what specific capacity?

3.    Have you, or anyone close to you, worked in counseling or social work?

       a.    If yes, who, for how long and in what specific capacity?

4.    Have you, or anyone close to you, worked in or at a hotel?

       a.    If yes, who, state name and location of hotel, how long and job title/description.

5.    Have you, or anyone close to you, worked in the legal field?

       a.    If yes, who, for how long and in what specific capacity?

6.    Have you, or anyone close to you, worked in law enforcement?

       a.    If yes, who, what agency and for how long?

**Hotel-Related**

7.    Have you ever stayed at a budget, or economy, hotel – that is, a small to midsize property that offers basic facilities and service for a low price?

8.    Have you ever stayed at an extended stay hotel?

9.    Are you familiar with United Inn and Suites, located at 4649 Memorial Drive in Decatur?

   a.    If yes, how so?

10.    Have you, or anyone close to you, ever stayed at United Inn and Suites, located at 4649 Memorial Drive in Decatur?

   a.    If yes, who, when and for how long?

**General Attitudes**

11.    The Court will instruct you that as a juror, you decision must be based only on the evidence presented during the trial.  You must not be influenced in any way by either sympathy for or prejudice against anyone.  You must follow the law as the Court explains it, even if you do not agree with it.  Is there anyone who feels they would not be able to follow such instructions for any reason?  [If anyone responds in the affirmative, why not?]

12.    By a show of hands, how many of you would <u>strongly agree</u> with the statement, "A lawsuit would not make it to trial unless the plaintiff had a legitimate claim against the defendant."

      a.    If yes, please explain.

13.    Under the law, a corporation and an individual must be treated equally in a lawsuit, without favoritism for one over the other.  Please raise your hand if you think it will be difficult for you to follow this requirement.

      a.    If yes, please explain.

## Attitudes toward Law Enforcement

14.    Some of the witnesses in this case may be members of law enforcement. Have you, or someone close to you, ever had an interaction with law enforcement – such as an arrest, charge or conviction – that you believe might affect your ability to be fair and impartial in this case?

      a.    If yes, please describe.

15.    Have you or any member of your immediate household ever had an experience or encounter with any member of the DeKalb County Police Department?

      a.    If yes, please describe.

## Lawsuits/Damages

16.    Does anyone think they would have a hard time sending the Plaintiff Jhorydn home with a no-money verdict at the end of this trial even if the law and evidence warranted such an outcome?

      a.    If yes, please explain.

17.    Is there anyone who will not be able to follow the Court's instruction that compensatory damages, if any, must be proven by the plaintiff?

**<u>Final Questions</u>**

18.    Is there anything about your experiences, your views, the people you know, or anything else that you think the judge or the attorneys working on this trial would want to know?

19.    Based on what you've heard, is there any reason whatsoever why you feel you would not be able to render a fair and impartial judgment in this case?  [For anyone who gave a positive response, are you saying that you would not be able to listen to the evidence presented by both sides?  And are you saying that you would not be able to apply the law as instructed by the judge?]

## <u>Attachment C – Plaintiff J.G.'s Outline of the Case</u>

### I.   Brief Factual Summary

Plaintiff alleges that: (1) she was sex trafficked at the age of 16 years old at United Inn & Suites, 4649 Memorial Drive, Decatur, GA 30032; (2) during the relevant period Defendant owned, managed, and controlled United Inn & Suites and profited from her sex trafficking at the hotel; and (3) she suffered injuries and damages as a result of being trafficked at United Inn & Suites.  Plaintiff further alleges that Defendant allowed, facilitated, aided and abetted, permitted, and/or condoned Plaintiff's sex trafficking at United Inn & Suites.

Based on evidence to be introduced at trial (which is not set forth herein), Plaintiff asserts that Defendant violated the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. 1595(a) ("TVPRA") by knowingly benefiting, or attempting or conspiring to benefit, financially or by receiving anything of value from taking part in a common undertaking or enterprise involving risk and potential profit which Defendant knew or should have known involved the sex trafficking of Plaintiff at United Inn & Suites.  Plaintiff contends that she has suffered substantial harm, including but not limited to physical, emotional, and psychological harm, as a direct, cause-in-fact, foreseeable, and proximate result of Defendant's violation of section 1595(a).  Plaintiff asserts that Defendant's actions or lack thereof directly contributed to and were interrelated in facilitating Plaintiff's sex trafficking from

which she suffered irreparable harm. Plaintiff contends that Defendant is liable to Plaintiff for her damages in an amount to be proven at trial, including but not limited to reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

Plaintiff brought this action to recover for the substantial and indivisible harm Defendant has caused her. Plaintiff will seek economic and non-economic damages under the TVPRA, which includes Plaintiff's past, present, and future physical and mental harm and pain and suffering, in an amount to be determined by the enlightened conscience of the jury. Plaintiff reserves the right to determine what she will ask the jury to award in economic and non-economic damages up to and during trial based on the evidence and testimony admitted at trial; at this point, she intends to request at least $10 million based on the significant trauma Plaintiff suffered as a child sex trafficking victim at Defendant's hotel for weeks, where she was falsely imprisoned, recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, and solicited for the purpose of commercial sex with hundreds of sex buyers.

Plaintiff also seeks punitive damages under the TVPRA in an amount to be determined by the jury. Plaintiff reserves the right to determine what she will ask the jury to award in punitive damages up to and during trial based on the evidence and testimony admitted at trial; at this point, she intends to request at least $10

million based on the Defendant's actions and inactions to allow, facilitate, aid and abet, permit, and/or condone Plaintiff's sex trafficking at United Inn & Suites.

Finally, Plaintiff will seek to recover her reasonable attorneys' fees, costs, and expenses under the TVPRA and any other fee-shifting authority.

Plaintiff reserves the right to pursue all damages allowed under federal law for her injuries and Defendant's unlawful actions, including but not limited to all general, compensatory, economic, non-economic, special, consequential, general, punitive, and all other damages permissible under Georgia and federal law.

## II. Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Caselaw.

Plaintiff incorporates here the representative rules, regulations, statutes, ordinances, and caselaw contained in her response to Defendant's motion for summary judgement, her motion *in limine* briefing, and her response to Defendant's motions *in limine*. Further, Plaintiff cites the following rules, regulations, statutes, ordinances, and caselaw:

- 28 U.S.C. § 1331 (federal question)

- 28 U.S.C. § 1391 (venue generally)

- 18 U.S.C. § 1591 (TVPRA – criminal provision)

- 18 U.S.C. § 1595(a) (TVPRA – civil provision)

- O.C.G.A. § 16-5-46 (trafficking a person for labor or sexual servitude)

- O.C.G.A. § 16-5-47 (posting model notice to enable persons who are subject of human trafficking to obtain help and services)

- TVPRA cases

    a. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)

    b. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023)

    c. *Jane Doe 1 v. Red Roof Inns, Inc., et al.*, Case 1:19-cv-03840-WMR (N.D. Ga. Feb. 3, 2021)

    d. *H.H. v. G6 Hosp.*, LLC, No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio 2019)

    e. *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)

    f. *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020)

    g. *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV, 2020 WL 6121939 (S.D. Fla. Sept. 30, 2020)

    h. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019)

    i. *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020)

    j. *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251 (M.D. Fla. 2020)

    k. *W.K. v. Red Roof Inns, Inc.*, 2024 WL 2892322 (N.D. Ga. 2024)

    l. *Arreguin v. Sanchez*, 398 F.Supp.3d 1314 (S.D. Ga. 2019)

     m. *Doe v. MG Freesites, LTD*, 707 F.Supp.3d 1157 (N.D. Al. 2023)

     n. *Doe v. Howard*, No. 1:11-cv-1105, 2012 WL 3834867 (E.D. Va. Sept. 4, 2012)

- Georgia law on duty of owner/occupier to secure property

     a. *Georgia CVS Pharmacy v. Carmichael,* 362 Ga. App. 59 (2023)

- Agency and vicarious liability

     a. *Doe (K.B.) v. G6 Hosp., LLC*, No. 1:23-CV-2597-TWT, 2023 WL 8650785, at \*7 (N.D. Ga. Dec. 14, 2023) (collecting cases applying state law on vicarious liability to TVPRA claims).

     b. Georgia law on vicarious liability, including, for example: Ga. Civil Pattern Instruction 60.310, 60.320; *Broadnax v. Daniel Custom Const., LLC*, 315 Ga. App. 291, 297 (2012); *Brown v. AMF Bowling Centers, Inc.*, 236 Ga. App. 277, 278 (1999)

     c. Restatement of Agency Law

     d. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)

- Similar Acts Evidence

     a. 11th Cir. Criminal Pattern Instructions, T.1 Cautionary Instruction, Similar Acts Evidence (Rule 404(b), Fed. R. Evid.)

     b. 11th Cir. Criminal Pattern Instructions S4.2 Similar Acts Evidence – Identity (2024 Edition)

    c. *Treminio v. Crowley Maritime Corp.*, 2024 WL 382400 * 7 (M.D. FL

       Feb. 2024)

    d. *Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) .

- Joint and several liability under TVPRA

    a. *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003)

    b. *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)

    c. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)

    d. *United States v. Texas*, 507 U.S. 529 (1993)

    e. *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438 (2002)

    f. *K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT,

       2024 WL 1217420 (N.D. Ga. Mar. 21, 2024) (Thrash, J.).

    g. *The Atlas*, 93 U.S. 302 (1876)

    h. 18 U.S.C. § 1593(b)(2)

    i. *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985)

    j. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599,

       614–15 (2009).

- Punitive damages under TVPRA

    a. *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

    b. *Francisco v. Susano*, 525 F. App'x. 828 (10th Cir. 2013)

    c. *K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT, 2024 WL 1217420 (N.D. Ga. Mar. 21, 2024) (Thrash, J.).

    d. *Warfaa v. Ali*, 1 F.4th 289 (4th Cir. 2021)

    e. *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019)

    f. *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017)

    g. *Moore v. Rubin*, --- F. Supp. 3d ----, 2024 WL 1191135 (E.D.N.Y. Mar. 20, 2024)

    h. *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013)

    i. Restatement (Second) of Torts

- Inference arising from discovery misconduct / failure to produce information in party's control

    a. O.C.G.A. § 24-14-22 (presumption arising from failure to produce evidence)

    b. *Federal Jury Practice and Instructions* by Kevin F. O'Malley, Jay E. Grenig, & William C. Lee, "Failure to Produce Evidence Under Party's Control" in 7th edition at § 104:26.

- Federal Rules of Civil Procedure, including but not limited to Rules 26, 32, 37, and 42

- Federal Rules of Evidence, including but not limited to Rules 611 and 613

- Jury Instructions

  a. Eleventh Circuit Pattern Jury Instructions

  b. *Federal Jury Practice and Instructions* by Kevin F. O'Malley, Jay E. Grenig, & William C. Lee

  c. Georgia Pattern Civil Jury Instructions

- Fees, costs, expenses

  a. 18 U.S.C. § 1595(a)

  b. O.C.G.A. § 9-11-68 (written offers to settle tort claims; liability of refusing party for attorney's fees and expenses)

  c. O.C.G.A. § 13-6-11 (expenses of litigation)

- Plaintiff anticipates she will rely on common law negligence principles and case law pertaining to negligence, damages (including punitive damages), and attorneys' fees.

- Dekalb County Municipal Ordinances, including but not limited to Chapter 18 (Nuisances), Article III (Property Maintenance), and Article VI (Hotels, Motels, Extended Stays).

- Department of Homeland Security ("DHS") published guidelines for the hospitality industry on sex trafficking red flags.

- The Tourism Child-Protection Code of Conduct, ECPAT, published guidelines for the hospitality industry on sex trafficking red flags.

42

- All authorities relied on by Defendant.

## Attachment "D" – Defendant Northbrook's Outline of the Case

### I.    Brief Factual Summary

Defendant Northbrook Industries, Inc. ("Northbrook") owns and operates the United Inn and Suites located at 4649 Memorial Drive, Decatur, Georgia, where Plaintiff J.G. alleges she was trafficked for sex in late 2018 and early 2019.

The sole substantive claim remaining in the case is Plaintiff's claim under the "beneficiary" provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

On the question of liability, Northbrook intends to demonstrate that it is not liable to Plaintiff under the TVPRA because Northbrook did not (1) knowingly benefit (2) from participating in a venture, (3) which venture violated the TVPRA as to Plaintiff; and/or that (4) Northbrook did not have actual or constructive knowledge that any such venture violated the TVPRA as to Plaintiff.  Among other things, Northbrook will contend that alleged wrongful employee conduct (*e.g.*, acting as a "lookout") and the knowledge of any such rogue employee is not imputable to Northbrook.

Northbrook will argue that its acts or omissions were not the cause in fact or proximate cause of injury or harm to Plaintiff.  Instead, Plaintiff's injury and harm were caused, in whole or in part, by pre-existing and subsequent conditions and

events unrelated to the subject matter of this case, and/or the conduct of persons other than Northbrook, and/or Plaintiff's own acts or omissions.

As to Plaintiff's claim for damages against Northbrook, Northbrook will argue that it is entitled to seek apportionment of such damages against other actors. Northbrook will argue that it is entitled to a credit against any damages award for any settlement or judgment obtained from other persons or entities relating to Plaintiff's sex trafficking.

On the question of punitive damages, Northbrook contends that the TVPRA does not contemplate the recovery of punitive damages, and that state law does not provide a punitive damages remedy in this federal-question case. Northbrook further contends that even if the remedy of punitive damages were available under applicable law, Plaintiff has not made the showing required for the imposition of punitive damages.

II.   Relevant Rules, Regulations, Statutes, Ordinances and Illustrative Case Law

18 U.S.C. § 1591 (sex trafficking)

18 U.S.C. § 1595(a) (TVPRA "beneficiary" provision)

O.C.G.A. § 51-12-33 (apportionment)

TVPRA cases:

Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714 (11th Cir. 2021)

Doe (K.B.) v. G6 Hospitality, LLC, Civil Action File No. 1:23-CV-2597-TWT, 2024 WL 4701891 (N.D. Ga. Nov. 5, 2024)

K.H. v. Riti, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024)

C.C. v. H.K. Group of Co., Inc., Civil Action File No. 1:21-cv-1345-TCB, 2022 WL 467813 (N.D. Ga. Feb. 9, 2022)

A.B. v. H.K. Group of Co., Inc., Civil Action File No. 1:21-cv-1344-TCB, 2022 WL 467786 (N.D. Ga. Feb. 9, 2022)

A.G. v. Northbrook Indus., Inc., No. 1:20-CV-05231, Dkt. #151  (N.D. Ga. June 14, 2024)

G.W. v. Northbrook Indus., Inc., No. 1:20-CV-05232-JPB, 2024 WL 3166083 (N.D. Ga. June 14, 2024)

J.G. v. Northbrook Indus., Inc., No. 1:20-CV-05233-SEG, 2024 WL 4513034 (N.D. Ga. Aug. 15, 2024)

Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017)


Vicarious liability/imputation of knowledge:

Carter v. Riggins, 748 S.E.2d 117 (Ga. App. 2013)

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)

Estes v. Standard Fire Ins. Co., 66 Ga. App. 775 (1942)

Am. Oil Co. v. McCluskey, 119 Ga. App. 475 (1969)

Cadet v. Fla. Dep't of Corr., 85 F.3d 1216 (11th Cir. 2017)

Roylston v. Bank of Am., N.A., 660 S.E.2d 412 (Ga. App. 2008)

Restatement (Second) of Agency § 228, 229, 235, 280

Causation:

Bourn v. Herring, 225 Ga. 67 (1969)

Jackson v. Sauls, 206 F.3d 1156 (11th Cir. 2000)
W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts,* §§ 41–42
(5th ed.1984)

Apportionment:

U.S. v. Milner, 583 F.3d 1174 (9th Cir. 2009)

Restatement (Second) of Torts § 433A (Am. Law Inst. 1965)

Damages/attorneys fees:

Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd., 329 F.3d 1241
(11th Cir. 2003)

Maiz v. Virani, 253 F.3d 641 (11th Cir. 2001)

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003)

Ditullio v. Boehm, 662 F.3d 1091 (9th Cir. 2011) (Callahan, J., dissenting)

Perkins v. Thrasher, 701 F. App'x 887 (11th Cir. 2017)

Leonard v. State Farm Mut. Auto. Ins. Co., Civil Action No. 1:14-CV-1074-
AT, 2014 WL 12219378 (N.D. Ga. June 17, 2014)

BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271 (11th Cir. 2008)

Wang v. Gold Mantis Constr. Decoration (CNMI), LLC, 705 F. Supp. 3d 1190 (D. N. Mar. I. 2021)

In re Enron Corp. Sec., Derivative and ERISA Litig., 623 F. Supp. 2d 798 (S.D. Tex. 2009)

All authorities relied on by Plaintiff

**Attachment E**

The parties, J.G. and United Inn, have agreed that the following facts are true and correct:

I.   At all relevant times, Northbrook Industries, Inc. d/b/a United Inn & Suites solely owned, operated, and managed the hotel property located at 4649 Memorial Drive, Decatur, GA 30032.

II.  At all relevant times, United Inn & Suites had 172 guest rooms.

**Attachment F-1 – Plaintiff J.G.'s Witness List**

| Witness Names | Contact information | Call Status |
|---|---|---|
| FBI Agent KJ Strickler | FBI Atlanta, 2635 Century Pkwy NE #400, Atlanta, GA 30345 | May call |
| Lieutenant C.D. King | Henry County Sherriff's Office, 120 Henry Pkwy, McDonough, GA 30253 | **Will call** |
| DeKalb County District Attorney's Office Investigator Benton | 556 N McDonough St #700, Decatur, GA 30030 | May call |
| Ashar Islam | Contact through Defense counsel | May call |
| Tahir Shareef | Contact through Defense counsel | May call |
| United Inn 30(b)(6) Representative | Contact through Defense counsel | May call |
| Harsimran Sabharwal | Contact through Defense counsel | May call |
| C.C. | Contact through Plaintiff's counsel | May call |
| G.W. | Contact through Plaintiff's counsel | May call |
| A.G. | Contact through Plaintiff's counsel | May call |
| N.S. | Contact through Plaintiff's counsel | May call |
| J.G. | Contact through Plaintiff's counsel | **Will call** |
| Claudette Grimes | Contact through Plaintiff's counsel | May call |
| Shameka Grimes | Contact through Plaintiff's counsel | May call |
| Keisha Grimes | Contact through Plaintiff's counsel | May call |
| Sonya Madison | House of Hope, PO Box 21283 St. Simons Is, GA 31522, 912-223-8023 | May call |
| Naeshia McDowell | Contact through Plaintiff's counsel | May call |
| Darrell Chaneyfield | Contact through Plaintiff's counsel | May call |

**Summary of Expert Witness Testimony**

The following is a summary of the expected testimony of both of Plaintiff's expert witnesses:

1. Naeshia McDowell: Ms. McDowell is the Director of the Commercial Sexual Exploitation of Children (CSEC) Response Team for Children's Advocacy Centers of Georgia. Based on her education, training, and professional experience with approximately 500 child victims of sex trafficking, Ms. McDowell will testify about the relational, emotional, and

psychological dynamics involved in minor sex trafficking, including recruitment, entrapment, and enmeshment, as well as common behaviors displayed by minor victims of sex trafficking while being trafficked. She will also testify about those dynamics in Plaintiff's trafficking experience, among other issues addressed in greater detail in Ms. McDowell's expert report and deposition testimony.

2.  <u>Darrell Chaneyfield</u>: Mr. Chaneyfield works as a director of security and crisis management for IHG hotels. He will testify about security measures a reasonable hotelier should exercise in the face of known signs of prostitution and sex trafficking, especially when the signs have been known in the hotel industry for years. He will also opine regarding the Defendant's failure to take sufficient steps to address prostitution and sex trafficking occurring at the hotel. He will address other issues identified in his previously disclosed expert report and in his deposition testimony. And he may serve to rebut the testimony of defense expert Karim Vellani.

Attachment F-2
J.G. v Northbrook Industries, Inc., d/b/a United Inn and Suites
Case 1:20-cv-05233-SEG
Defendant's Trial Witness List

**Witnesses whom Northbrook <u>will</u> have present at trial:**

    1.    Tahir Shareef.  May be contacted through counsel for Northbrook.

    2.    Ashar Islam.  May be contacted through counsel for Northbrook.

**Witnesses whom Northbrook <u>may</u> have present at trial:**

    3.    Corita Gram.  May be contacted through counsel for Northbrook.

    4.    Keten Patel.  May be contacted through counsel for Northbrook.

    5.    Rossa Mandosa.  May be contacted through counsel for Northbrook.

    6.    Jassie Gram.  May be contacted through counsel for Northbrook.

    7.    Sheakh Muhammad.  May be contacted through counsel for Northbrook.

    8.    Sergeant Willie McClelland.  DeKalb County Police Department, 1960 W. Exchange Place, Tucker, Georgia  30084.

    9.    Detective Royal Weber.  DeKalb County Police Department, 1960 W. Exchange Place, Tucker, Georgia  30084.

    10.    B.W. O'Brien.  DeKalb County Police Department, 1960 W. Exchange Place, Tucker, Georgia  30084.

    11.    H.M. Belle.  DeKalb County Police Department, 1960 W. Exchange Place, Tucker, Georgia  30084.

    12.    N.D. Craft.  DeKalb County Police Department, 1960 W. Exchange Place, Tucker, Georgia  30084.

13.    Sergeant C.D. King.  Henry County Sheriff's Office, 120 Henry Parkway, McDonough, Georgia  30253.

14.    Karim Vellani.  See below.

Northbrook reserves the right to call Plaintiff J.G. and any other witness listed by Plaintiff.

**Northbrook's expert witness:**

Karim Vellani.  Threat Analysis Group.  P.O. Box 16640, Sugar Land, Texas 77496.

Mr. Vellani's expected testimony will include the subject matter of his June 14, 2023 expert report and November 28, 2023 deposition, including, but not limited to:  sex-trafficking victim identification, including comparison of sex-trafficking identification in the hotel setting to other settings, such as the healthcare setting; sex trafficking as a "clandestine" crime; the efficacy of sex-trafficking "indicators" as a means to reliably identify sex-trafficking activity; crime risk analysis of United Inn; description and assessment of the security features and measures at United Inn, including opinion as to adequacy of such features and measures; and rebuttal of the testimony of Plaintiff's proffered security expert Darrell Chaneyfield.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **J.G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., D/B/A UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff hereby submits the enclosed trial brief addressing the following issues:

- Joint and several liability under 18 U.S.C. § 1595(a);

- Punitive damages under 18 U.S.C. § 1595(a);

- Deposition designations for United Inn's 30(b)(6) representative;

- Adverse inference arising from United Inn's failure to identify its staff.

## **Plaintiff's Trial Brief on Joint and Several Liability under 18 U.S.C. § 1595(a)**[1]

In 2003, when Congress empowered sex-trafficking victims to pursue civil remedies under the TVPRA,[2] it did so against the general common law of torts. *E.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). The traditional damages rule for torts is joint and several liability—not apportionment. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003) ("joint and several liability is the traditional rule").

To abrogate that traditional rule, Congress would need to speak directly to it. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). But Congress said nothing about joint and several liability (the default, common-law rule) or apportionment (a special rule) in the TVPRA civil-liability statute. That silence reveals Congress' intent, because Congress *did* say something about apportionment in another TVPRA section, specifically allowing apportionment for restitution. 18 U.S.C. § 1593(b)(2).  Thus, Congress's intent was for TVPRA civil liability to be joint and several—consistent with the common law of torts.

---

[1] In her motions *in limine*, Plaintiff outlined why liability under the TVPRA is joint and several and expressed her intent to submit a more fulsome trial brief on the topic.  This brief serves that purpose.

[2] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, sec. 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)). In 2008, Congress amended § 1595 to allow sex-trafficking victims to sue those who knowingly benefit from their sex trafficking. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067 (codified at § 1595(a)).

2

Whether United Inn will be jointly and severally liable for a judgment is not a question the Court can answer until there is a verdict. But the Court can rule that joint and several liability is available for TVPRA claims.

## ARGUMENT AND CITATION OF AUTHORITY

### I.  Civil liability under the TVPRA is joint and several.

Congress enacted the TVPRA "to combat trafficking in persons, … to ensure just and effective punishment of traffickers, and to protect their victims."[3] The TVPRA civil-liability statute, 18 U.S.C. § 1595(a), empowers Plaintiffs to pursue dual goals of compensation and punishment. It ensures that Plaintiffs can, if they prevail, achieve these goals by making liability for TVPRA civil damages joint and several and permitting sex-trafficking victims to pursue and receive punitive damages. The conclusion that the TVPRA's provision of civil liability is joint and several follows directly from the TVPRA's statutory text and structure and reflects the general common law of torts.

In 2008, Congress drastically expanded § 1595 to allow sex-trafficking victims to sue those who knowingly benefited from their being sex trafficked.[4] "Participation in a venture," an essential part of a TVPRA beneficiary claim, means "taking part in a common undertaking or enterprise involving risk and potential

---

[3] Pub. L. 106-386, § 102(a), 114 Stat. 1464, 1466.

[4] *See supra* n.1.

3

profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). Congress

therefore knew that a beneficiary claim necessarily *required others' involvement* to

trigger liability. *K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT,

2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (Thrash, J.). Yet Congress said

nothing about apportionment in § 1595. Both the federal common law and the

TVPRA's structure confirm that liability is joint and several under § 1595.

### A. Federal common law calls for joint and several liability, not apportionment.

When Congress creates a new tort action, it does so against the backdrop of

the general common law of torts. *Staub*, 562 U.S. at 417 (2011); *see also Meyer v.

Holley*, 537 U.S. 280, 285 (2003) (holding that "ordinary tort-related vicarious

liability rules" apply to discrimination claim under Fair Housing Act that was "in

effect, a tort action"). The TVPRA, like other federal statutes, was passed against

the backdrop of the federal common law of torts, which demands joint and several

liability, not apportionment.

"[J]oint and several liability is the traditional rule." *Norfolk,* 538 U.S. at 163

(rejecting apportionment under the Federal Employers' Liability Act). It "applies

when there has been a judgment against multiple defendants," and makes each

defendant "liable for the entire amount of the harm; provided, however, that the

plaintiff recover only once for the full amount." *Honeycutt v. United States*, 581 U.S.

443, 447–48 (2017).  It also applies where judgment is entered against one defendant

4

for damages arising from a single, indivisible injury caused by the defendant and one or more nonparties. *See The Atlas*, 93 U.S. 302, 306 (1876) ("An innocent party, injured by the co-operative negligence of several persons, can sue them jointly or severally, and recover from either compensation for the injury done by all.").

In rejecting the defendant's effort to apportion liability under the Federal Employers' Liability Act, the Supreme Court in *Norfolk* was unpersuaded by the claim that "the modern trend is to apportion damages between multiple tortfeasors." 538 U.S. at 164. Rather, the Court noted that "many States retain full joint and several liability," "even more retain it in certain circumstances," and "most of the recent changes away from the traditional rule have come through legislative enactments rather than judicial development of common-law principles." *Norfolk*, 538 U.S. at 164–65. In other words, new legislative developments are not expressions of the common law; they are examples of legislation *abrogating* the default rule. *Cf. FDIC v. Loudermilk*, 305 Ga. 558, 576 (2019) ("Georgia's apportionment statute, O.C.G.A. § 51-12-33, did not abrogate Georgia's common-law rule imposing joint and several liability on persons who act in concert.").

Legislative silence about the common law does not abrogate it. For Congress "to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993). To overcome Congress's "expectation that" "well established" common law rules

apply, "a statutory purpose to the contrary" must be "evident." *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108. The TVPRA exhibits no such purpose. In fact, as shown below, the TVPRA's text and the circumstances of its passage and amendment all confirm Congress intended to preserve joint and several liability.

**B.      The TVPRA's text confirms Congress intended to render civil defendants jointly and severally liable.**

The contrast between the TVPRA's civil beneficiary provision and the statute's other remedial measures further shows that, in passing the TVPRA, Congress did not abrogate the common law rule of joint and several liability. As Judge Thrash has recognized, the TVPRA's restitution statute "plainly *does* allow for apportionment." *K.M.*, 2024 WL 1217420, at *2. That statute, 18 U.S.C. § 1593(b)(2), requires judges to order restitution to be "issued and enforced in accordance with section 3664," which, in turn, permits courts to "make each defendant liable for payment of the full amount of restitution," or to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." *Id.*

Congress's choice not to mention apportionment in § 1595 when adding beneficiary claims—even though "it was foreseeable that others would be involved in these claims"—is telling, particularly in light of its direct statement about apportionment in the TVPRA's restitution statute. *Id.* After all, "when Congress includes particular language in one section of a statute but omits it in another section

of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452 (2002). Thus, the omission of apportionment for civil beneficiary claims is presumed to be intentional and purposeful.

Indeed, as Judge Thrash also acknowledged, it would be "surprising that Congress intended to permit apportionment without saying so"—especially "since allowing civil beneficiary defendants to apportion fault to traffickers, individuals who sexually assault victims, and other beneficiaries would drastically undermine the effect of the civil beneficiary provision." *K.M.*, 2024 WL 1217420, at *2. The notion that Congress's silence is a tacit invitation to apportion is especially improbable given Congress's willingness to amend the TVPRA. Despite amending § 1595 four times since 2003,[5] Congress has never added anything about apportionment.

Elsewhere, courts apply federal common law to speak where the TVPRA is silent. For example, while the TVPRA's civil liability provision is silent as to punitive damages for civil beneficiary claims, courts have applied the general common law of torts to fill the gaps and allowed plaintiffs to recover such damages.

The Ninth Circuit was the first circuit to consider the question of punitive

---

[5] *See* Pub. L. 110-457, Title II, § 221(2), 122 Stat. 5067 (2008); Pub. L. 114-22, Title I, § 120, 129 Stat. 247 (2015); Pub. L. 115-164, § 6, 132 Stat. 1255 (2018); Pub. L. 117-347, Title I, § 102, 136 Stat. 6200 (2023).

damages under the TVPRA, and it found that the meaning of "damages" within § 1595(a) is "ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three." *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011).[6] To resolve the ambiguity, the Ninth Circuit used "common law principles" because "[t]he Supreme Court has looked to the common law to determine the remedies available under federal statutes creating causes of action sounding in tort." *Id.* at 1097–98. And reasoning that punitive damages in tort actions are "awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future," the Ninth Circuit held that "punitive damages are available under 18 U.S.C. § 1595." *Id.* at 1098. In reaching this conclusion, the Ninth Circuit also relied on the Supreme Court's direction that, "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 70–71 (1992); *see also Ditullio*, 662 F.3d at 1096 (quoting same language).

Since *Ditullio*, the only other circuit to address the availability of punitive damages under § 1595(a) has agreed—and did so without reservation. *Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013). Other circuits have affirmed

---

[6] Though *Ditullio* interpreted the TVPRA's 2003 version, the interim changes are immaterial to this point.

punitive-damages awards in TVPRA cases without questioning the availability of such damages. *E.g.*, *Warfaa v. Ali*, 1 F.4th 289, 293, 296 (4th Cir. 2021) (affirming punitive-damages award of $100,000 under § 1595); *Roe v. Howard*, 917 F.3d 229, 238, (4th Cir. 2019) (affirming punitive-damages award of $2 million under § 1595); *accord Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017) (distinguishing the TVPRA from Iraqi law because "the TVPRA authorizes punitive damages"). Federal district courts around the country agree.[7]

Just as courts apply federal common law to conclude the TVPRA countenances punitive damages, this Court should apply federal common law to fill the gaps on the issue of joint and several liability.

---

[7] *E.g.*, *Moore v. Rubin*, --- F. Supp. 3d ----, 2024 WL 1191135, at *8 (E.D.N.Y. Mar. 20, 2024) ("Rubin's final argument is that the TVPA does not provide for punitive damages. Every Court of Appeals to address this issue (as well as a district court within this district) has held otherwise."); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1175 (D. Kan. 2018) (holding that "plaintiff deserves to recover punitive damages under the TVPRA and state human trafficking laws"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013) ("Where federal statutes sounding in tort are silent on the availability of punitive damage, courts look to common law principles to determine the scope of remedies. … Punitive damages are therefore available under the TVPA."); *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Indeed, '[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.'" (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021))); *J.C. v. Choice Hotels Int'l*, No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) ("[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." (citing *Meyer v. Holley*, 537 U.S. 280, 287–91 (2003)).

## C.    Federal courts apply joint and several liability to federal causes of action.

Under multiple federal statutes providing civil remedies like that provided in the TVPRA, silence as to apportionment has led federal courts to rule that liability is joint and several.

For example, liability under 42 U.S.C. § 1983—another federal statute creating a civil remedy compensating victims and holding wrongdoers to account—is joint and several. *E.g.*, *Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989); *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019). Likewise, courts have often held that "federal law" governs "the availability of joint and several liability" under the Fair Housing Act. *Whyte v. Alston Mgmt., Inc.*, No. 10-cv-81041, 2012 WL 11789773, at *1 (S.D. Fla. Apr. 11, 2012) (collecting cases). In an action by the Federal Trade Commission related to a fraudulent telemarketing scheme, the Eleventh Circuit held that "joint and several liability was available." *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017). Joint and several liability can arise either from the defendant's participation in a "common enterprise" or by providing "substantial assistance" to another person violating the telemarketing regulations. *Id.* at 1239–40. In holding that "substantial assistance" justified joint and several liability, the Eleventh Circuit emphasized that wrong's "resemblance to a well-established torts concept": "aiding and abetting," which "can result in joint and several liability." *Id.* at 1240. "In tort, the aider-abettor is liable to

10

the injured party for the entire harm." *Id.* at 1240-1.

**D.    Georgia's apportionment statute cannot overcome federal law's presumption favoring joint and several liability.**

Georgia's apportionment statute—which abrogated "the traditional common law rule of joint and several liability" in some circumstances for the purposes of Georgia state law claims—does not supplant joint and several liability for federal statutory claims.

As explained above, there is a well-established body of federal common law applying joint and several liability to federal statutory torts. And as Judge Thrash noted in *K.M.*, applying the apportionment statute instead of joint and several liability would likewise undermine the TVPRA's remedial purpose. 2024 WL 1217420, at *2.

Not only that, courts applying the TVPRA have not interpreted it to allow for apportionment of a TVPRA beneficiary claim. Plaintiff is not aware of any court allowing apportionment of fault for a TVPRA beneficiary claim. "It would be surprising if civil beneficiary defendants have always been permitted to apportion their damages to nonparties but have never attempted to do so." *Id.*

**E.    Under the general common law of torts, joint and several liability exists under additional grounds.**

The evidence will establish other bases for finding joint and several liability under general common law, including aiding and abetting principles. *See, e.g.*, *FTC*,

877 F.3d at 1239–40. Further, the evidence will establish that Plaintiffs suffered a single, indivisible injury due to being trafficked at United Inn, which also supports a joint and several judgment.

Applying general common-law principles of torts and damages, federal courts hold that single, indivisible injuries call for joint and several liability. The Seventh Circuit, for example, held that "[i]t is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury. In such a case the injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions." *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) (citing Restatement (Second) of Torts, §§ 875, 879). Likewise, the Supreme Court in the admiralty context has noted that "the common law" permitted "an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979) (citing Restatement (Second) of Torts §§ 433A, 875 (1965 and 1979) along with classic torts treatises by Thomas Cooley (1879) and William Prosser (1971)). This is consistent with the Supreme Court's direction that, "[w]hen two or more causes produce a single, indivisible harm," courts should "refuse[] to make an arbitrary apportionment for its own sake, and

12

each of the causes is charged with responsibility for the entire harm." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614–15 (2009).

The Eleventh Circuit recently discussed the relationship between the default rule of joint and several liability and the possibility of apportionment for an indivisible injury. In so doing, it held that "apportionment is appropriate only where 'there are *distinct harms*' or where 'there is a reasonable basis for determining the contribution of each *cause* to a single harm." *FTC*, 877 F.3d at 1242 (quoting Restatement (Second) of Torts § 433A(1)(a) & (b) (1965)). Because the harm was indivisible and there was "no reasonable basis on which to determine the relative contribution of [one defendant's] conduct to the single harm," the Eleventh Circuit affirmed the joint and several judgment. *Id.* at 1242, 1244.

This basis for joint and several liability applies to this case involving trauma resulting from child sex trafficking, because parsing apart or apportioning Plaintiff's trauma from being sex trafficked as a child among various tortfeasors is not feasible.

Furthermore, for purposes of federal principles of joint and several liability (as opposed to Georgia principles), Plaintiff need not show individual tortfeasors were working in concert or planned to inflict damage on Plaintiff. For example, a court in the Southern District of Florida found joint and several liability proper on a federal statutory claim, even where defendants were acting "perhaps independently." *Whyte*, 2012 WL 11789773, at *1–2. This is because it was impossible to divide

13

Plaintiff's *emotional* injury caused by the independent actions of others. *Id.* In sum, evidence that Plaintiffs' mental and emotional injuries are indivisible further supports imposition of joint and several liability.

## CONCLUSION

For the foregoing reasons, the Court should rule that joint and several liability is available under the TVPRA.

**Plaintiff's Trial Brief on Punitive Damages under 18 U.S.C. § 1595(a)**

Plaintiff requests that the Court find that 18 U.S.C. § 1595(a) authorizes a victim to recover punitive damages. In support, Plaintiff incorporates here, in full, the argument and authority on pages 7 - 9 of her trial brief on joint and several liability, in which she discussed punitive damages under the TVPRA. In summary, Plaintiff highlighted that the Ninth and Tenth circuits have held that the TVPRA authorizes recovery of punitive damages and so have numerous district courts nationwide.  In addition, the Fourth and Fifth circuits have approved punitive damages awards in TVPRA cases without analyzing the issue.  Plaintiff is unaware of any federal court finding that 18 U.S.C. § 1595(a) does not permit recovery of punitive damages.  For these reasons, and those set forth more fully in the above-referenced section of Plaintiff's trial brief on joint and several liability, Plaintiff requests that the Court find that 18 U.S.C. § 1595(a) authorizes a victim to recover punitive damages.

**<u>Plaintiff's Trial Brief on Deposition Designations of</u>**
**<u>United Inn's 30(b)(6) Representative</u>**

Plaintiff requests that the Court authorize her to play at trial certain designated portions of a video recorded deposition of United Inn's 30(b)(6) representative.

At trial, Plaintiff's counsel intends to play designated portions of United Inn's 30(b)(6) representative's testimony, *and*, separately, to call Tahir Shareef live as a witness in his personal capacity (as the manager of United Inn). Though Mr. Shareef served as United Inn's 30(b)(6) representative, the 30(b)(6) testimony at issue is not Mr. Shareef's personal testimony. It is United Inn's corporate testimony. With an appropriate jury instruction, the jury would be so advised.

United Inn's counsel has suggested that it may object to Plaintiff playing certain designated portions of the 30(b)(6) deposition because the corporate representative, Tahir Shareef, will be present in the courtroom during the trial and available to testify in person. In other words, United Inn's objection (as Plaintiff's counsel understands it), may not be to the deposition itself, or to the designated portions of the transcript that Plaintiff seeks to play, but instead to the concept of playing a video recorded 30(b)(6) deposition when the 30(b)(6) representative is present in the courtroom.

In advance of the pre-trial conference, where Plaintiff's counsel expect this issue to be discussed in greater detail, Plaintiff's counsel raises the following points for the Court's consideration:

16

Under Fed. R. Civ. P. 32(a)(3), "an adverse party **may use for any purpose** the **deposition of a party or** anyone who, when deposed, was **the party's** officer, director, managing agent, or **designee under Rule 30(b)(6)** or 31(a)(4)."  (emphasis added). The plain language of the rule shows that it does *not* hinge on whether the 30(b)(6) representative is absent from the courtroom at trial; that's not a condition of the rule. "As stated, the Rule permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial." *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir. 1978)[8]; *Walker v. Banks, Finley, White & Co. of Georgia, P.C.*, No. 1:19-CV-5461-CAP, 2023 WL 11909753, at *9 (N.D. Ga. Jan. 3, 2023) (Pannell, J.) ("The defendant moves preclude the plaintiff from presenting deposition designations for witnesses who are available to testify at trial. … With respect to White, Sr. **Rule 32(a)(3) specifically allows the use of his Rule 30(b)(6) deposition by the plaintiff**."); In *Re 3M Combat Arms Earplug Prods.*, No. 3:19-MD-2885, 2022 WL 822460, at *6 (N.D. Fla. Jan. 26, 2022), *report and recommendation adopted sub nom. In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19MD2885, 2022 WL 741934 (N.D. Fla. Mar. 11, 2022) ("Thus, Plaintiffs, as adverse parties, are entitled to use Berger's 30(b)(6)

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

17

deposition testimony 'for any purpose,' independent of whether Berger is or is not unavailable.")

Even if Rule 32(a)(3) did not resolve it (it does), other provisions in the same rule justify admission of the subject 30(b)(6) deposition designations.  Indeed, Rule 32(a)(1) says: "At a hearing *or trial*, *all or part of a deposition may be used against a party on these conditions*: (A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is used to the extent it would be admissible under the Federal  Rules of Evidence if the deponent were present and testifying; and (C) the use is allowed by Rule 32(a)(2) through (8)." (emphasis added). Each of those conditions is met here—United Inn had reasonable notice of the subject 30(b)(6) depositions and was represented by counsel, the testimony is admissible under Fed. R. Evid., 801(d)(2)(C) and (D) (as an admission by party opponent), and its use is allowed by Rules 32(a)(2) through (8).

Therefore, Federal Rule of Civil Procedure 32(a)(3) and Federal Rules of Evidence 801(d)(2)(C) and (D)[9] permit Plaintiff to play portions of United Inn's

---

[9] Rule 801(d)(2) provides an independent basis for the admission of the subject 30(b)(6) deposition testimony. *See, e.g., In re Reserve Fund Sec. & Derivative Litig.*, No. 09 CIV. 4346, 2012 WL 12354233, at *4 n.5 (S.D.N.Y. Oct. 3, 2012) ("Depositions admissible under Fed. R. Evid. 801(d)(2) need not be separately analyzed under Fed. R. Civ. P. 32(a)."); *see also MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 574 (S.D.N.Y. 2017) ("Rule 801(d)(2)(D) provides an independent basis — separate from Rule 32(a)(3)—for admitting deposition testimony."); *Carpenter v. Forest Meadows Owners Ass'n*, No.

30(b)(6) deposition, *and*, separately, to call Mr. Shareef in his individual capacity at trial.  Neither set of rules says that a 30(b)(6) deposition may be used only if the 30(b)(6) deponent will not be present in the courtroom at trial. That is not a relevant condition.[10]

Undersigned counsel recognizes that under Federal Rule of Evidence 611 the court can manage the presentation of evidence to streamline trials.  Counsel intends to try a direct and efficient case. To that end, undersigned counsel will ***not*** duplicate or repeat questions covered in the designated video-recorded portions of the 30(b)(6) deposition in Mr. Shareef's personal testimony. In Mr. Shareef's live examination in his personal capacity, Plaintiff's counsel would cover new ground.

United Inn's proposal—that Plaintiff be required to call Mr. Shareef live to cover *both* 30(b)(6) topics *and* to answer questions in his individual capacity— would violate the foregoing rules, and lead to jury confusion and inefficiency/delay. As to jury confusion, Plaintiff's counsel would have to navigate the arduous task of

---

1:09-cv-01918-JLT, 2011 WL 3207778, at *5 (E.D. Cal. July 27, 2011) ("The Court agrees that the Federal Rules of Evidence provide an independent basis from Rule 32(a)(3) for admitting deposition testimony."); *Fair Fight Action, Inc. v. Raffensperger*, 599 F. Supp. 3d 1337, 1343 (Jones, J.) (N.D. Ga. 2022) ("Because Mr. Harp's testimony may be imputed to the SEB under Rule 801(d)(2)(D), the Court declines to address Plaintiffs' second argument concerning whether Mr. Harp's testimony may also be imputed to the SEB under Rule 32(a)(3).")

[10] True, Fed. R. Civ. P. 32(a)(4) asks whether "a witness" is "unavailable." But that is not the rule on point here.  Rule 32(a)(3) specifically concerns the deposition at issue here—that is, the "deposition of a party, agent, or designee."

questioning Mr. Shareef in one examination in both his personal capacity and in his

30(b)(6) capacity, and then sift through the same issues as part of any impeachment.

As to inefficiency and delay, if (and more likely, when) there were contradictions

between Mr. Shareef's testimony, and the prior video-recorded 30(b)(6) deposition,

Plaintiff would need to impeach Mr. Shareef with the transcript from the prior

30(b)(6) deposition, which would lead to inefficiency and delay. [11] The probability

and frequency of time-consuming impeachments would be reduced materially by

allowing Plaintiff's counsel—in conformity with the Federal Rules of Civil

Procedure—to play designated portions of United Inn's 30(b)(6) deposition, and,

separately, to call Mr. Shareef in his personal capacity to cover new ground (e.g.,

documents and issues not addressed in the video excerpts).

For these reasons, Plaintiff requests that the Court authorize her to play at trial

certain designated portions of a video recorded deposition of United Inn's 30(b)(6)

representative.

---

[11] Plaintiff's counsel anticipates impeachments would be necessary because Mr. Shareef was deposed as United Inn's 30(b)(6) representative twice following United Inn's discovery misconduct. In the second deposition, his testimony differed on key points from the first deposition.

While Plaintiff's counsel of course reserves the right to impeach Mr. Shareef as warranted at trial, undersigned counsel represents to the court that it is likely that the need for and frequency of impeachments would be reduced by allowing Plaintiff to proceed her with stated plan, which is also authorized by the Federal Rules.

## **Plaintiff's Trial Brief on Adverse Inference at Trial**

Plaintiff requests that the Court grant her request for an adverse inference at trial stemming from United Inn's failure (or refusal) to identify all people who worked at the hotel during the relevant period and to provide their contact information.  In failing to do so, United Inn violated Rules 26(a) and (e).

In October 2023 (before the Eleventh Circuit issued its unpublished, *per curiam Riti* opinion), Plaintiff's counsel wrote in her motion for sanctions:

> Defendant should not be allowed to introduce evidence or argument at trial that its staff never reported concerns about commercial sex at the hotel, … and that none of its staff had criminal records or were complicit in crime at the hotel, because it has produced inconsistent, incomplete information about who worked at the hotel. Plaintiff cannot confront Defendant's claims about staff reports of crime, staff trainings, and vetting of staff because Plaintiff does not know who Defendant's employees were and cannot find them. ... ***Alternatively, Plaintiff requests a jury instruction on how Defendant's conflicting and partial staff records compromised Plaintiff's ability to examine Defendant's claims about staff crime reports, staff trainings, and vetting of staff, among other topics***.

(Doc. 86 at 27-28) (emphasis added).  Post-*Riti*, Plaintiff's counsel's request has even greater urgency.  Indeed, because of United Inn's discovery abuse, Plaintiff's ability to prove "some connection between the hotel operator's and the trafficker's actions," and identifiable "actions the operator took to advance the object of the joint undertaking," (Doc. 138 at 19), has been prejudiced materially.[12]

---

[12] Plaintiff incorporates the arguments she previously raised in her sanctions briefing (Doc. 86, 91), and in her motion *in limine* (Doc. 161 at 30 – 32), regarding

In advance of trial, Plaintiff submitted to United Inn three proposed stipulations regarding the discovery misconduct at issue:

   i.   At all relevant times, Northbrook Industries, Inc. d/b/a United Inn & Suites did not keep records to identify all of the people who worked at the hotel.

  ii.   In discovery, Northbrook Industries, Inc. d/b/a United Inn & Suites produced different lists of staff who worked at the hotel during the relevant period.

 iii.   At all relevant times, Northbrook Industries, Inc. d/b/a United Inn & Suites paid at least some of the people who worked at the hotel in cash and did not maintain tax records.

United Inn refused to agree to any of these proposed stipulations.

In her draft proposed jury instructions, which she has sent to opposing counsel, Plaintiff proposed the below jury instruction from *Federal Jury Practice and Instructions*:

### Failure to Produce Evidence Under Party's Control

If a party fails to produce evidence under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have

---

the prejudice she has suffered (and will suffer at trial) because of United Inn's violation of discovery rules. References to page numbers are to the CM-ECF page numbers stamped on the as-filed document.

produced it and did not. 3 Kevin F. O'Malley, Jay E. Grenig, & William C. Lee, *Federal Jury Practice and Instructions* § 104:26 (7th ed.).

Plaintiff has not yet received United Inn's response but anticipates United Inn will object. In the meantime, Plaintiff raises this issue for the Court's consideration in advance of the pre-trial conference.

This 23rd day of June, 2025.

/s/ *David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
pmcdonough@atclawfirm.com
Georgia Bar No. 489855

ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone

*Attorneys for Plaintiff*

23

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 23rd day of June, 2025.

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,                                       )
                                            )
        Plaintiff,                          )
                                            )        Civil Action File
v.                                          )        No. 1:20-cv-05233-SEG
                                            )
NORTHBROOK INDUSTRIES, INC.,                )
d/b/a UNITED INN AND SUITES,                )
                                            )
        Defendant.                          )

**<u>DEFENDANT'S TRIAL BRIEF</u>**

# TABLE OF CONTENTS

Page

I.   The jury should be permitted to apportion fault among          1
     parties and nonparties.

II.  Punitive damages are not recoverable under the TVPRA.           5

III. Plaintiff's claims for fees, costs and expenses are unsupportable   13
     under specific cited statutes.

COMES NOW Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites ("Northbrook"), and hereby submits its trial brief in advance of the jury trial in this matter scheduled to begin on July 7, 2025.

This is a hotel sex-trafficking case. The plaintiff, proceeding under the initials "J.G." to protect her identity ("J.G." or "Plaintiff"), alleges that while a minor she was trafficked for sex at United Inn and Suites ("United Inn"), an independent hotel owned and operated by Northbrook, for five weeks in October and November 2018 and for two to three days in January of 2019.

The sole substantive claim remaining in the case is Plaintiff's claim under the "beneficiary" provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

In this brief, Northbrook addresses several outstanding legal issues pertaining to the trial.

## I.   The jury should be permitted to apportion fault among parties and nonparties.

Northbrook seeks to have the Court allow the jury to apportion damages – that is, to assign relative fault for Plaintiff's injury and harm among Northbrook, Plaintiff and other nonparties. In this way, in the event of a Plaintiff's verdict, the amount of damages awarded against Northbrook would be reflective of Northbrook's fault relative to other persons and entities. This would include not

only Plaintiff's alleged traffickers at United Inn, but also persons and entities involved in Plaintiff's trafficking at another, unrelated, property, Stone Mountain Inn.

In contrast, Plaintiff will argue for joint and several liability – that is, that Northbrook can be held liable for 100% of Plaintiff's damages even though other persons or entities – even Plaintiff herself – may be responsible for some portion of the injury or harm she claims.

The TVPRA is silent on the issue of whether apportionment, or joint and several liability, applies to civil claims brought under 18 U.S.C. § 1595(a).

Northbrook is not aware of any federal appellate decisions on the issue of whether apportionment, or joint and several liability, applies to the TVPRA.  There is one trial court decision in this district[1] on the issue.  In W.K. v. Red Roof Inns, Inc., Civil Action No. 1:20-cv-05263-VMC, 2024 WL 2892322 (N.D. Ga. June 10, 2024), Judge Calvert held that damages under the TVPRA are joint and several. 2024 WL 2892322, at *2-3.[2]  The crux of Judge Calvert's analysis is the premise

---

[1] Plaintiff has previously cited to K.M. v. Reva Properties, LLC, Civil Action File No. 1:22-CV-3991-TWT, 2024 WL 1217420 (N.D. Ga. March 21, 2024). However, in K.M., Judge Thrash did not actually render a decision on whether apportionment applies to the TVPRA.  Instead, the court denied the plaintiff's early motion to strike the defendant's notice of intention to apportion fault.

[2] The W.K. matter settled during trial and thus the apportionment issue was never taken up on appeal.

that "[j]oint and several liability is the traditional rule for federal torts." 2024 WL 2892322, at *1. However, federal common law "generally comports with" the Restatement of Torts. U.S. v. Milner, 583 F.3d 1174, 1182 (9th Cir. 2009) (applying Restatement of Torts to federal trespass action).[3] And the Restatement provides, in relevant part:

> Damages for harm are to be apportioned among two or more causes where
>
> (a)   there are distinct harms, or
>
> (b)   there is a reasonable basis for determining the contribution of each cause to a single harm.

Restatement (Second) of Torts § 433A (Am. Law Inst. 1965).

The present situation fits either mold. There may be "distinct harms" – that is, various episodes of Plaintiff being trafficked in different hotels by different traffickers, each contributing in some way to Plaintiff's non-economic damages. Alternatively, there may be a "single harm" – that is, harm to Plaintiff from having been sex-trafficked generally, as to which Plaintiff's own testimony as to her

---

[3] The Eleventh Circuit looks to the Restatement for guidance on federal common law in a variety of contexts. See, e.g., Various Insurers v. Gen. Elec. Int'l, Inc., 131 F.4th 1273, 1277 (11th Cir. 2025) (third-party beneficiary); Griffin v. Coca-Cola Refreshments USA, Inc., 989 F.3d 923, 932 (11th Cir. 2021) (ERISA); Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1363 n.13 (11th Cir. 1995) (conflict of laws). This Court has also pointed to the Restatement as a source of common-law principles to be applied to federal statutes. See Summary Judgment Order, Dkt. # 138, at 26-27 (quoting United States Supreme Court's reference to Restatement of Agency to ascertain federal common law standard of vicarious liability).

experiences will guide the jury in determining the relative contribution of each party or nonparty to that harm. Either way, the Restatement contemplates an apportionment of damages.

Also, state law can be instructive on the federal common law affecting torts. "In some instances, controversies governed by federal law do not inevitably require resort to uniform federal rules, and it may be appropriate to borrow from state law for the rule of decision." <u>Milner</u>, 583 F.3d at 1182 n.6 (some internal punctuation omitted); <u>Fed. Deposit Ins. Corp. v. Ashley</u>, 749 F. Supp. 1065, 1067 (D. Kan. 1990) (incorporating state law of comparative negligence as federal rule of decision). Here, state law would militate in favor of apportionment. Section 51-12-33 of the Official Code of Georgia Annotated is Georgia's apportionment statute. In general, it provides a framework by which damages in tort actions may be apportioned among parties and nonparties according to levels of relative fault assigned by the fact finder. <u>See generally</u> O.C.G.A. § 51-12-33(b).[4],[5]

---

[4] Judge Calvert concluded in <u>W.K.</u> that Georgia's apportionment statute would not apply to the TVPRA because "[u]nder Georgia law, the apportionment statute does not abrogate the common law of joint and several liability when tortfeasors engage in concerted action or a civil conspiracy" that results in indivisible fault. 2024 WL 2892322, at *2-3. However, that analysis does not fully encompass the situation here, where Plaintiff alleges she was trafficked at different times, in different places, by different traffickers who did not act in concert or conspire with one another.

[5] Northbrook has complied with the requirement of O.C.G.A. § 51-12-33(d) that a defendant contending that a nonparty was wholly or partially at fault must give

In short, both federal common law, and borrowed state law, support the apportionment of fault among parties and nonparties to this action, with any damages awarded against Northbrook limited to its relative degree of fault.[6]

## II.    Punitive damages are not recoverable under the TVPRA.

Plaintiff has signaled her intention, if she is successful on her TVPRA claim, to also seek an award of punitive damages.  It is Northbrook's contention that punitive damages are not recoverable under the TVPRA.

The TVPRA expressly states the types of recovery available to a successful plaintiff on a TVPRA claim, and punitive damages is not one of them.  Instead, the statute contemplates that the successful plaintiff "may recover damages and reasonable attorneys fees."  18 U.S.C. § 1595(a).  There is no reference to punitive damages.

---

notice not later than 120 days prior to trial of its intention to seek apportionment. Northbrook filed such notice on October 11, 2023, in which it asserts notice of its intention to seek apportionment against nonparties such as Plaintiff's traffickers and their accomplices, as well as the corporate entities behind Stone Mountain Inn, where Plaintiff was also trafficked.  [Dkt. #85]

[6] Regardless of how this Court ultimately rules on apportionment, Northbrook should be permitted to introduce evidence, obtain jury instructions and present argument on other common-law principles, such as causation and damages, by which a jury could consider the role of other incidents of sexual trauma, and the conduct of other persons – including Plaintiff herself – in Plaintiff's alleged injury and damages.

The Eleventh Circuit has not ruled on the issue of whether a successful TVPRA plaintiff can seek punitive damages.  However, the Eleventh Circuit, as well as trial courts in this district, have rejected claims for punitive damages for violation of a federal statute where the statute does not expressly contemplate recovery of punitive damages.  This practice has been applied to a wide range of federal statutes.  See, e.g., Lengen v. Dept. of Transp., 903 F.2d 1464, 1468 (11th Cir. 1990) (Rehabilitation Act); Bishop v. Osborn Transp., Inc.,  838 F.2d 1173, 1174 (11th Cir. 1988) (affirming denial of punitive damages in ERISA case; "nothing in the statutory language . . . supports the employee's position that punitive damages are recoverable . . . ."); Walker v. Ford Motor Co., 684 F.2d 1355, 1364 (11th Cir. 1982) (Title VII); Gober v. Newton Cty. Bd. of Health, Civil Action No. 1:21-cv-01612-WMR-CCB, 2021 WL 7632542, at *12 (N.D. Ga. Dec. 17, 2021) (in Family Medical Leave Act ("FMLA") case, recommending granting motion to strike any prayer for relief; "[u]nder the FMLA, punitive damages are . . . not available," citing to case from sister court "noting that the FMLA does not provide for punitive damages."); Cason v Coca-Cola Co., Civil Action No. 1:17-CV-3891-JPB-JSA, 2020 WL 13654235, at *25 (N.D. Ga. March 23, 2020) (in Fair Labor Standards Act ("FLSA") case, granting summary judgment on standalone claim for punitive damages; "[t]he only claim that would survive to trial . . . would be Plaintiff's FLSA claim, which does not provide for 'punitive'

damages"); <u>Best v. Marix Servicing, LLC</u>, Civil Action No. 1:11-CV-2233-AT, 2013 WL 12100762, at *15 (N.D. Ga. Sept. 10, 2013) (dismissing claim for punitive damages in Real Estate Settlement Procedures Act ("RESPA") case; "RESPA does not provide for punitive damages for a violation of [the statute]."); <u>Hennington v. Bank of Am.</u>, Civil Action File No. 1:10-CV-1350-WSD, 2010 WL 5860296, at *9 n.15 (N.D. Ga. Dec. 21, 2010) (dismissing claim for "sanctions" in Truth in Lending Act ("TILA") case; "TILA does not provide for punitive damages"). <u>See also</u> <u>Aronson v. Creditrust Corp.</u>, 7 F. Supp. 2d 589, 593-94 (W.D. Pa. 1998) (in Fair Debt Collection Practices Act ("FDCPA") case, in analysis of statutory language, "[n]otably there is no reference to punitive damages being an option. Based upon the plain language of the statute, and in the absence of any legislative history to the contrary, I find that punitive damages are not recoverable under the FDCPA.").

Northbrook acknowledges that the Ninth and Tenth circuits have ruled that punitive damages are available under the TVPRA. <u>See</u> <u>Ditullio v. Boehm</u>, 662 F.3d 1091 (9th Cir. 2011); <u>Francisco v. Susano</u>, 525 F. App'x 828 (10th Cir. 2013). However, these decisions are predicated on an interpretation of the TVPRA that differs in material respects from the way in which the statute has been interpreted in the Eleventh Circuit.

In <u>Ditullio</u>, the Ninth Circuit considered whether the TVPA (the predecessor to the TVPRA) allowed for an award of punitive damages to a successful plaintiff. The court observed that "[a] plaintiff bringing a civil action under the TVPA must prove that the defendant has engaged in human trafficking, which Congress described as 'a contemporary manifestation of slavery,'" and that "[s]uch conduct obviously meets the common law standards for award of punitive damages because it is both intentional and outrageous." 662 F.3d at 1098.

This description by the Ninth Circuit of what gives rise to civil liability under the TVPA is vastly different from the Eleventh Circuit's interpretation of the TVPRA. While the <u>Ditullio</u> court stated that a successful TVPA plaintiff "must prove that the defendant has engaged in human trafficking," the Eleventh Circuit, in <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714 (11th Cir. 2021), declined to "transpos[e] the statutory definition from [the] criminal section to the civil cause of action." 21 F.4th at 724. The result is that, in this circuit, "participation in a venture" does <u>not</u> require participation in human trafficking. Thus, as this Court stated in its summary judgment order in the present case:

> The result here for Plaintiff is that she need not show, for purposes of proving "participation in a venture," that Northbrook "knowingly assist[ed], support[ed], or facilitate[ed] an act of sex trafficking, as would be required under the criminal code provision. . . . Put another way, J.G. need not show that Northbrook participated directly in sex trafficking.

Summary Judgment Order, [Dkt. #138] at 15; see also id. at 13 (finding that Plaintiff need not make a showing that Northbrook "was '*in on*' Plaintiff's sex trafficking" or that Northbrook "took part with others in a 'common undertaking of sex trafficking.'") (emphasis in original).

In short, the Ditullio court decided that the TVPA must be read to provide for punitive damages because a person held liable under its provisions must have "engaged in sex trafficking" – *i.e.*, conduct that is so outrageous as to rise to the level of a crime. See Ditullio, 662 F.3d at 1097 ("Punitive damages are warranted when the defendant is found liable for conduct involving some element of outrage similar to that usually found in crime.") (internal quotation marks omitted).[7]  But the Eleventh Circuit does not interpret the TVPRA to require a defendant to have engaged in sex trafficking for civil liability to attach, and thus the Ninth Circuit's reasoning in Ditullio that a TVPA violation justifies a punitive damages award does not apply with equal force here.

Similarly, the Ditullio court opines that punitive damages are appropriate under the TVPA because the conduct that is the subject of the statute is "intentional."  662 F.3d at 1098.  However, in Red Roof, the Eleventh Circuit explained that liability under the TVPRA does not require that a defendant

---

[7] The Ninth Circuit's analysis may have been influenced by the fact that the defendant in Ditullio was, in fact, a criminal – he had previously pled guilty to conspiracy to commit sex trafficking of children.  662 F.3d at 1094.

"knowingly" assisted, supported or facilitated sex trafficking, as would be required for criminal liability.  21 F.4th at 724.  In this circuit, TVPRA liability can attach even for *unintentional* conduct – that is, when the defendant had not actual knowledge, but mere constructive knowledge – *i.e.*, "should have known" – that a violation of the TVPRA as to the plaintiff was occurring.  21 F.4th at 725.  Simply put, the Ninth Circuit's standard for what constitutes actionable conduct under the TVPRA – intentional and outrageous acts akin to criminal conduct that would naturally give rise to an award of punitive damages – is not the same standard in effect in the Eleventh Circuit.[8]

Northbrook submits that a more appropriate analysis in view of the Eleventh Circuit's different interpretation of the TVPRA is that expressed by Judge Consuelo Callahan in her dissent in Ditullio.  Judge Callahan opined that the TVPRA should *not* be interpreted to provide for an award of punitive damages, for the following reasons:

■    The majority in Ditullio concluded that punitive damages are recoverable under the TVPRA; however, the majority's reliance on common law is misplaced.  By 2000, when the TVPA was enacted, "whether a federal statute authorized punitive damages depended on Congressional intent rather than on the

---

[8] The Tenth Circuit's opinion in Francisco came two years after the Ditullio decision and relied heavily on the Ninth Circuit's conclusion therein.  See, e.g., Francisco, 525 F. App'x at 835 ("We thus agree with the only other circuit to address the matter and hold punitive damages to be available under § 1595.").

existing common law." 662 F.3d at 1103 (tracing history of Section 1983, Title VII and amendment of Tax Code treatment of punitive damages as representative of Congress' "ability to include, or not include, claims for punitive damages when it enacts legislation.").

■      While a first draft of the TVPA provided for a civil action and for damages to include punitive damages, the actual statute as enacted in 2000 did not create a private cause of action for damages, ordinary or punitive.  Id. at 1104.

■      Congress reconsidered the TVPA in 2003.  An initial draft of a civil damages provision contained language expressly contemplating an award of punitive damages.  However, when the law was actually enacted, "[t]he provision for punitive damages was dropped," possibly as a compromise in response to a letter from the Department of Justice opposing the creation of a private right of action in the first instance.  Id.

■      Congress' omission of a punitive damages remedy from the TVPRA must be given effect.  "It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  Id. at 1105 (quoting Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19 (1979)).

As Judge Callahan concludes,

In sum, a review of the TVPA's legislative history shows that far from deferring to federal common law, Congress in 2003, when it created a

private cause of action under TVPA, considered and declined to adopt language authorizing punitive damages. . . .

TVPA's legislative history shows that Congress deliberately limited civil remedies to compensatory damages and attorneys' fees. We should not go further.

Id. at 1104-05 (Callahan, J., dissenting).

Plaintiff will likely argue that the general reference to "damages" in the language of the TVPRA is broad enough to encompass punitive, as well as compensatory, damages. However, Congress has expressly authorized a remedy of punitive damages in a wide variety of other contexts, literally using the term "punitive damages" in the text of the statute. See, e.g., 15 U.S.C. § 1691e (Equal Credit Opportunity Act); 18 U.S.C. § 2520 (civil remedies for unauthorized use of intercepted wires); 49 U.S.C. § 20109 (railroad employee discrimination); 50 U.S.C. § 1810 (civil liability for foreign intelligence surveillance); 18 U.S.C. § 248 (civil liability for denying access to reproductive health clinic entrances); 25 U.S.C. § 305e (misrepresentation of Indian produced goods); 15 U.S.C. § 1679g (consumer credit repair practices). "[W]here Congress knows how to say something but chooses not to, its silence is controlling." U.S. v. Pate, 84 F.4th 1196, 1202 (11th Cir. 2023). Congress intentionally omitted reference to punitive damages under the TVPRA. Thus, as Judge Callahan concluded, "we should not go further." Ditullio, 662 F.3d at 1105 (Callahan, J., dissenting).

For all of the foregoing reasons, even if Plaintiff were to prevail on her TVPRA claim, she should be precluded from seeking punitive damages.[9]

## III.   Plaintiff's claims for fees, costs and expenses are unsupportable under specific cited statutes.

Plaintiff states in the current iteration of the proposed Pretrial Order that she "will seek to recover her reasonable attorneys' fees, costs, and expenses under the TVPRA, O.C.G.A. § 13-6-11, O.C.G.A. § 9-11-68, and any other fee-shifting authority."   See Proposed Consolidated Pretrial Order [Dkt. # 141], Attachment "C."

Northbrook notes the following:

■     While the TVPRA contemplates that a plaintiff may recover "damages and reasonable attorneys fees," 18 U.S.C. § 1595(a), it says nothing about the recovery of costs or expenses of litigation.

■     Any claim by Plaintiff for attorney's fees or other expenses of litigation pursuant to O.C.G.A. § 13-6-11[10] is without merit, as Plaintiff's sole

---

[9] Northbrook further notes that O.C.G.A. § 51-12-5.1, which is Georgia's punitive damages statute, does not afford Plaintiff the opportunity to seek punitive damages because Plaintiff's state-law claim for negligence/premises liability was dismissed on summary judgment.  [Dkt. #138]

[10] "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly

substantive state-law claim – for premises liability/negligence – was dismissed at summary judgment. [Dkt. #138] Plaintiff's § 13-6-11 claim was derivative of her state-law substantive claim only. When the state-law substantive claim was dismissed, so, too, was the state-law derivative claim for expenses of litigation under § 13-6-11, notwithstanding the remaining federal claim under the TVPRA. See Perkins v. Thrasher, 701 F. App'x 887, 891 (11th Cir. 2017) (granting summary judgment to defendant on O.C.G.A. § 13-6-11 claim when state-law substantive claims dismissed, notwithstanding pendency of federal § 1983 claims).

■    Similarly, any claim by Plaintiff for reasonable attorney's fees and expenses under O.C.G.A. § 9-11-68[11] is without merit, as Plaintiff's sole substantive state-law claim – for premises liability/negligence – was dismissed at summary judgment. [Dkt. #138] "That O.C.G.A. § 9-11-68 only applies to **state** tort claims is not controversial." Leonard v. State Farm Mut. Auto. Ins. Co., Civil Action No. 1:14-CV-1074-AT, 2014 WL 12219378, at *3 (N.D. Ga. June 17, 2014) (emphasis added).

---

litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." O.C.G.A. § 13-6-11.

[11] O.C.G.A. § 9-11-68 is Georgia's "offer of settlement" statute. In general terms, it provides for a plaintiff to recover certain reasonable attorney's fees and expenses of litigation if the plaintiff presents a qualifying offer of settlement to the defendant, the defendant rejects the offer, and the plaintiff then recovers a final judgment in an amount greater than 125 percent of the offer of settlement.

Respectfully submitted,


 /s/ Dana M. Richens
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia  30309
Telephone:  (404) 815-3659
Facsimile:  (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.,
d/b/a United Inn and Suites

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date filed the within and foregoing **DEFENDANT'S TRIAL BRIEF** using the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 23rd day of June, 2025.


*/s/ Dana M. Richens*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **J.G.,** | : |
| | : |
| **Plaintiff,** | : |
| | :    **CIVIL ACTION FILE** |
| **vs.** | : |
| | :    **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES,** | : |
| **INC., D/B/A UNITED INN AND** | : |
| **SUITES,** | : |
| | : |
| **Defendant.** | : |

## VERDICT FORM

1. Is United Inn liable to Jhordyn under the TVPRA?

   **Circle one**:          YES                    NO

   If you answered **Yes**, please proceed to question 2 below.

   If you answered **No**, please sign and date the verdict form, as this ends your deliberations.


2. The amount of Jhordyn's damages is: $_____

   _____
   Jury Foreperson


   _____
   Print Name


   _____
   Date

54

## <u>VERDICT FORM – PHASE TWO</u>

1. Is United Inn liable to Jhordyn for punitive damages?

   **Circle one**:          YES                    NO

   If you answered **Yes**, please proceed to question 2 below.

   If you answered **No**, please sign and date the verdict form, as this ends your deliberations.


2. The amount of punitive damages imposed against United Inn is: $_____

   _____
   Jury Foreperson


   _____
   Print Name


   _____
   Date

55

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,                                          )
                                               )
     Plaintiff,                          )
                                               )        Civil Action File
v.                                             )        No. 1:20-cv-05233-SEG
                                               )
NORTHBROOK INDUSTRIES, INC.,                   )
d/b/a UNITED INN AND SUITES,                   )
                                               )
     Defendant.                          )


## DEFENDANT'S PROPOSED VERDICT FORM

### (VERSION #1: WITH APPORTIONMENT)


    1.    Do you find that Jhordyn was a victim of sex trafficking at United Inn and Suites?

    Answer "Yes" or "No"

    ____ YES          ____ NO


    2.    Do you find that Northbrook participated in a venture with one or more of Jhordyn's traffickers at United Inn?

    Answer "Yes" or "No"

    ____ YES          ____ NO

3.     Do you find that Northbrook knowingly benefited from participation in the venture described in Question #2?

Answer "Yes" or "No"

\_\_\_\_ YES                    \_\_\_\_ NO

4.     Do you find that the venture described in Question #2 above caused Jhordyn, a minor, to engage in a commercial sex act?

Answer "Yes" or "No"

\_\_\_\_ YES                    \_\_\_\_ NO

5.     Do you find that Northbrook knew or should have known that Jhordyn was a minor?

Answer "Yes" or "No"

\_\_\_\_ YES                    \_\_\_\_ NO

6.     Do you find that Northbrook knew or should have known that the venture described in Question #2 above caused Jhordyn to engage in a commercial sex act?

Answer "Yes" or "No"

\_\_\_\_ YES                    \_\_\_\_ NO

**INSTRUCTION:  If you have answered "Yes" to all of Questions ##1 through 6 above, then proceed to Question #7.  Otherwise, STOP HERE, and have the foreperson sign the verdict form.  You do not need to answer any further questions.**

57

7.    What amount of damages, if any, do you award to Jhordyn?

$ _____

**INSTRUCTION:  Proceed to Question #8.**

8.    If you find any of the persons or entities below, to include each party to this action as well as other persons or entities who are not parties to this action, caused or contributed to Plaintiff's injury and damages, then it is necessary for you to determine the percentage of fault for each.  If you find no fault, then you should place a "0" by that name.  **Your allocation of fault must add up to 100%.**

_____%    Jhordyn

_____%    Northbrook

_____%    Jhordyn's traffickers at United Inn and Suites
their accomplices

_____%    The men who purchased sex from
Jhordyn at United Inn and Suites

_____%    Stone Mountain Inn and
Suites and associated corporate entities

_____%    Jhordyn's traffickers at Stone Mountain Inn
and their accomplices

_____%    The men who purchased sex from Jhordyn at Stone
Mountain Inn

TOTAL:    100 %

**[If Court finds that TVPRA allows for award of punitive damages]**

**INSTRUCTION:  Proceed to Question #9.**

9.    Do you find that Jhordyn proved by clear and convincing evidence that Northbrook's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences?

Answer "Yes" or "No"

_____ YES              _____ NO

This is our unanimous verdict, reached on the ___ day of _____, 2025.

_____
Foreperson

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,                                      )
                                           )
     Plaintiff,                     )
                                           )          Civil Action File
v.                                         )          No. 1:20-cv-05233-SEG
                                           )
NORTHBROOK INDUSTRIES, INC.,               )
d/b/a UNITED INN AND SUITES,               )
                                           )
     Defendant.                     )


## <u>DEFENDANT'S PROPOSED VERDICT FORM</u>

## (VERSION #2: WITHOUT APPORTIONMENT)

1.    Do you find that Jhordyn was a victim of sex trafficking at United Inn and Suites?

    Answer "Yes" or "No"

    ____ YES          ____ NO


2.    Do you find that Northbrook participated in a venture with one or more of Jhordyn's traffickers at United Inn?

    Answer "Yes" or "No"

    ____ YES          ____ NO


3.    Do you find that Northbrook knowingly benefited from participation in the venture described in Question #2?

Answer "Yes" or "No"

_____ YES                _____ NO

4.    Do you find that the venture described in Question #2 above caused Jhordyn, a minor, to engage in a commercial sex act?

Answer "Yes" or "No"

_____ YES                _____ NO

5.    Do you find that Northbrook knew or should have known that Jhordyn was a minor?

Answer "Yes" or "No"

_____ YES                _____ NO

6.    Do you find that Northbrook knew or should have known that the venture described in Question #2 above caused Jhordyn to engage in a commercial sex act?

Answer "Yes" or "No"

_____ YES                _____ NO

**INSTRUCTION:  If you have answered "Yes" to all of Questions ##1 through 6 above, then proceed to Question #7.  Otherwise, STOP HERE, and have the foreperson sign the verdict form.  You do not need to answer any further questions.**

7.    Do you find that Northbrook caused any injury or harm to Jhordyn?

Answer "Yes" or "No"

_____ YES                    _____ NO

**INSTRUCTION:  Proceed to Question #8 below.  If you answered "No" to Question #6, then enter Zero ("0") as your answer to Question #7.**

8.    What amount, if any, do you award to Jhordyn to compensate her for injury or damage that Northbrook caused her?

$ _____

**[If Court finds that TVPRA allows for award of punitive damages]**

**INSTRUCTION:  Proceed to Question #9.**

9.    Do you find that Jhordyn proved by clear and convincing evidence that Northbrook's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences?

Answer "Yes" or "No"

_____ YES                    _____ NO

This is our unanimous verdict, reached on the ___ day of _____, 2025.

_____
Foreperson

62