UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,

           Plaintiff,

     v.

NORTHBROOK INDUSTRIES,
INC., D/B/A UNITED INN AND
SUITES,

           Defendant.

CIVIL ACTION NO.

1:20-CV-5233-SEG

## O R D E R

This case is before the Court on Plaintiff J.G.'s motions in limine (Doc. 161), and Defendant Northbrook Industries, Inc.'s ("Northbrook") motions in limine (Doc. 160) and motion pursuant to Federal Rule of Evidence 412 (Doc. 175.)  After careful consideration, the Court enters the following order.

## I.     Legal Standard

A judge may rule on motions in limine pursuant to the district court's inherent authority to manage the course of trials.  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)).  "Courts have broad discretion in deciding whether to grant a motion in limine."  *Quantum Cap., LLC v. Banco De Los Trabajadores*, 720 F. App'x 539, 540 (11th Cir. 2017) (citing *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005)).

Rulings on motions in limine are provisional, and "the trial judge may always change his mind during the course of a trial." *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). "The real purpose of a Motion in Limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably affect the fairness of the trial." *Soto v. Geico Indem. Co.*, No. 6:13-CV-181-ORL-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014) (citation and punctuation omitted). "Motions in limine merely asking the court to apply the law or the Federal Rules of Evidence are disfavored." *Mitchell v. Jones*, No. 5:22-CV-60, 2024 WL 1056026, at *1 (S.D. Ga. Mar. 11, 2024). "The Court will grant a motion in limine to exclude evidence only if the evidence in question is clearly inadmissible." *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009).

## II.    Plaintiff's Motions in Limine

### 1. Apportionment of Damages Under 18 U.S.C. § 1595(A).

J.G. seeks to exclude all argument, and related evidence, concerning apportionment of damages pursuant to 18 U.S.C. § 1595(a). (Doc. 161 at 4-7.) J.G. contends that the TVPRA follows the traditional rule of joint and several liability for federal torts. Northbrook opposes the motion, arguing that Georgia's apportionment statute, O.C.G.A. § 51-12-33, applies to TVPRA

claims.  (Doc. 165 at 4-6.)  Both parties have submitted trial briefs that address the issue of apportionment.  (Doc. 187 at 3-7, Doc. 188.)

For the reasons below, the Court finds that liability under the TVPRA is joint and several.  While no federal court of appeals appears to have decided whether damages awarded under the TVPRA are joint and several, two courts in this district have addressed the issue.  In *W.K. v. Red Roof Inns, Inc.*, Judge Calvert held that because the TVPRA is silent on apportionment, it follows the traditional common-law principle of joint and several liability.  *See W.K. v. Red Roof Inns, Inc.*, No. 1:20-CV-05263-VMC, 2024 WL 2892322, at *1 (N.D. Ga. June 10, 2024) ("[J]oint and several liability is the traditional rule for federal torts, so the TVPRA is properly understood to follow this rule absent language to the contrary.").  Further, Judge Thrash concluded, in *K.M. v. Reva Props., LLC*, that the structure and purpose of the TVPRA suggest that Congress did not intend to authorize apportionment for civil beneficiary claims.  *K.M. v. Reva Props., LLC*, No. 1:22-CV-3991-TWT, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) ("It would . . . be surprising that Congress intended to permit apportionment without saying so since it was foreseeable that others would be involved in these claims and since allowing civil beneficiary defendants to apportion fault to traffickers . . . would drastically undermine the effect of the civil beneficiary provision.").

The Court finds the reasoning in *W.K.* and *K.M.* persuasive. As a threshold matter, because the TVPRA is a federal statute, and no state law claims remain in this case, Georgia's apportionment statute does not apply. *See, e.g.*, *Murphy v. City of Flagler Beach*, 846 F.2d 1306, 1309 (11th Cir. 1988) ("[F]ederal standards govern the determination of damages under the federal civil rights statutes." (quoting *Garrick v. City and County of Denver*, 652 F.2d 969, 971 (10th Cir. 1981)). Moreover, the traditional rule for torts created by federal statute is joint and several liability, not apportionment. *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003); *see also Finch v. City of Vernon*, 877 F.2d 1497, 1502 (11th Cir. 1989) (explaining that "[u]nder 42 U.S.C.A. § 1988, federal courts look first to federal law to determine whether a damages rule for a particular case exists[,]" and affirming a district court's application of the "federal rule" of joint and several liability). The TVPRA is entirely silent on apportionment, providing that plaintiffs "may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). As such, the traditional common-law principle of joint and several liability applies.

Northbrook emphasizes that even if liability is joint and several under the TVPRA, it should still be permitted to argue that any alleged TVPRA violation was not the proximate cause of J.G.'s injuries. The Court agrees—

and J.G. does not dispute—that Northbrook may present evidence and argument challenging proximate cause.  (Doc. 173 at 3-4.)

Accordingly, J.G.'s motion is **GRANTED**.  Northbrook may not argue for apportionment of damages at trial.

### 2. Expert Testimony of Detective Weber and Sergeant McClelland

Detective Royal Weber and Sergeant Willie McClelland are DeKalb County Police officers who provided off-duty security services at United Inn. (*See* Doc. 161-2, 161-3.)  J.G. moves to preclude the officers from providing expert opinions at trial because Northbrook failed to identify them as experts during discovery.  (Doc. 161 at 7-21.)

Specifically, J.G. contends that several statements in affidavits submitted by Weber and McClelland constitute expert testimony, including: (1) "I believe that this four-hour time block is an appropriate window for an off-duty officer to be on-site"; (2) "I also believe that having one off-duty officer on the property at a time is appropriate and sufficient, given the size of the property and the activity on the property"; (3) "There are no areas on the hotel property that would provide concealment for commercial sex or other criminal activity outside, including in a car in the hotel parking lot"; (4) "In the case of United Inn, such activity is attributable to United Inn being in an area with

homelessness and high foot traffic, off a main street, with easy in-and-out access to a main highway (I-285)"; (5) "I have not ever observed any activity that caused me concern that there might be sex trafficking going on there"; and (6) "I have had the opportunity to evaluate the general security profile of the property . . . nor are there any changes that I would recommend given the existing security posture at the property." (*Id.* at 10.)

J.G. also argues that several averments in the affidavits are speculative and intended to improperly bolster Northbrook's employees, including: (1) "The front-desk staff will call my cell phone if they need help or want something suspicious to be checked out"; (2) "Hotel employees at the front desk monitor the security cameras, and those employees will contact the off-duty officer, or vice-versa, if there is an unusual amount of activity in/around a particular room"; and (3) "When the police want someone removed from the property, the hotel will not continue to rent a room to that person and will not allow them to remain on the property." (*Id.* at 11.)

Northbrook opposes the motion on the grounds that the statements identified by J.G. do not constitute expert opinion and that neither Weber nor McClelland intend to offer expert testimony. (Doc. 165 at 8-13.) Furthermore, Northbrook contends that the "will" statements—that J.G. objects to as

speculative and bolstering—are admissible descriptions about the routine security operations at United Inn.

Northbrook has the better argument. "A witness's lay opinion is admissible if it is 'rationally based on the witness's perception,' 'helpful to clearly understanding the witness's testimony or determining a fact in issue,' and 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Gaddy v. Am. Interstate Ins. Co.*, No. 1:14-CV-1928-WSD, 2018 WL 1737597, at *2 (N.D. Ga. Apr. 10, 2018). "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Gallagher Benefit Servs., Inc. v. Campbell*, 528 F. Supp. 3d 1326, 1350 (N.D. Ga. 2021) (quoting Fed. R. Evid. 701, advisory committee's note to 2000 amendment).

Here, the statements identified by J.G. do not appear to constitute expert testimony. For example, J.G. objects to Weber's and McClelland's statement that a "four-hour time block" from 10 pm to 2 am "is an appropriate window for an off-duty officer to be on-site" at the United Inn. Although J.G. asserts that this statement is expert opinion, she fails to explain why that is so. The idea that it is appropriate to have security from 10 pm to 2 am, and no other

time—whether right or wrong—is not one that necessarily relies upon technical and specialized knowledge. *See* Fed. R. Evid. 701(c). Indeed, one would presume that business owners and managers across the country, who do not have any specialized security knowledge, routinely decide whether and for what time periods to hire security based on their experience.

Another statement, that "[t]here are no areas on the hotel property that would provide concealment for commercial sex or other criminal activity outside," while perhaps of questionable accuracy, does not immediately implicate technical or specialized security knowledge. Anyone who works at a hotel, in a security capacity or not, might hold lay opinions "rationally based on [their] perception[,]" Fed. R. Evid. 701(a), about whether there are certain hidden areas that could be used for criminal activity.

To the extent that J.G. contends that Weber and McClelland are expert witnesses merely because they might draw on their experience as police officers to guide their opinions, the Court respectfully disagrees. As the Eleventh Circuit has held, "[l]ay witnesses may draw on their professional experiences to guide their opinions without necessarily being treated as expert witnesses." *United States v. Jeri*, 869 F.3d 1247, 1265 (11th Cir. 2017); *United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011) ("Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from

their own personal experiences."). "Indeed, law-enforcement officers can testify as lay witnesses even though their expertise often makes them more efficient or productive at their jobs." *Jeri*, 869 F.3d at 1265. Weber and McClelland will only cross the line into expert opinion if they begin testifying "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

In short, the Court finds that the statements identified by J.G. as expert opinion likely constitute lay witness testimony, depending, of course, on the form in which they are presented at trial. J.G. may raise an objection at trial if she believes that Northbrook is offering improper expert testimony in violation of Rules 701 and 702. Moreover, several of the "will" statements identified in J.G.'s motion, (Doc. 161 at 11), may be admissible evidence of Northbrook's habit or routine practice. Fed. R. Evid. 406. J.G.'s concerns regarding speculative or bolstering testimony can be properly handled through objections at trial. J.G.'s motion is therefore **DENIED**.

### 3. J.G.'s Sex Trafficking at Locations Other than United Inn

The Court refers the parties to its discussion of Northbrook's Rule 412 motion below. (*See infra* at 40-48.)

### 4.  J.G.'s Prior Arrest

J.G. moves to exclude evidence related to her arrest and charges for sex trafficking another minor at Stone Mountain Inn in early 2019.  (Doc. 161 at 25-27.)  The charges were dropped when law enforcement realized that J.G. was herself an underage victim of sex trafficking.  J.G. argues that such evidence is irrelevant, more prejudicial than probative, and constitutes improper character evidence.

Northbrook opposes the motion, contending that J.G.'s arrest demonstrates that "it was not readily apparent to law enforcement officers on-scene that J.G. was herself a trafficking victim[,]" and thus it would not have been apparent to Northbrook's staff either.  (Doc. 165 at 18-20.)  Further, Northbrook argues that the jury should be allowed to consider whether J.G.'s arrest and subsequent time in jail caused psychological injuries that J.G. alleges she suffered.

The Court finds that evidence related to J.G.'s arrest and charges for sex trafficking is not relevant to her TVPRA claim.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Irrelevant evidence is not admissible.  Fed. R. Evid. 402. J.G.'s arrest for sex trafficking at a completely different hotel, Stone Mountain Inn,

does not appear germane to any element of J.G.'s TVPRA claim, which is based on her sex trafficking at United Inn.

Northbrook attempts to draw the inference that because law enforcement did not recognize J.G. as a sex trafficking victim at Stone Mountain Inn, Northbrook also would not have had knowledge that J.G. was being sex trafficked at United Inn. Such an inference appears tenuous at best. Northbrook does not point to any record evidence establishing the circumstances under which J.G. was arrested and the reasons why police decided to arrest J.G. There may have been several reasons for J.G.'s arrest at Stone Mountain Inn, including reasons completely unconnected to whether United Inn staff knew or should have known J.G. was being sex trafficked at their hotel. Indeed, Northbrook has provided no basis for comparing the knowledge of police at a different hotel and a different time, to the knowledge of United Inn staff during the period that J.G. was trafficked there. As such, any argument that connects the knowledge of the two groups—police officers at Stone Mountain Inn and hotel staff at United Inn—appears to be highly speculative.

In addition, the Court concludes that, even if J.G.'s arrest and charges had some minimal relevance to the issues in the case or to damages, its limited probative value is substantially outweighed by a danger of unfair prejudice to

J.G.  *See* Fed. R. Evid. 403.  Presenting evidence of J.G.'s arrest and charges may prompt jurors to draw an undue inference that J.G. was involved in sex trafficking others or even played a role in her own sex trafficking.  Such an inference, based on dismissed criminal charges, would be unfairly prejudicial to J.G.  *See, e.g.*, *Gibson v. Wash Box, LLC,* No. 1:17-CV-1965-MHC, 2019 WL 13330953, at *2 (N.D. Ga. July 15, 2019) (expressing skepticism "that the probative value of evidence of [the plaintiff's] arrests and criminal convictions prior to this lawsuit is not substantially outweighed by the danger of unfair prejudice"); *Childs v. DeKalb Cnty. Georgia*, No. 1:05-CV-2463-JTC, 2009 WL 10670880, at *1 (N.D. Ga. Sept. 18, 2009) (concluding that the plaintiffs' previous arrests, which did not result in convictions, were "irrelevant" and that "the probative value of the evidence is outweighed by the danger of unfair prejudice."); *see also Atkins v. Att'y Gen. of State of Ala.*, 932 F.2d 1430, 1433 (11th Cir. 1991) (finding, in the criminal context, that "evidence of a prior arrest can prejudice a defendant's trial").

J.G.'s motion is therefore **GRANTED** in that Northbrook is precluded from introducing evidence or argument related to J.G.'s arrest and charges for sex trafficking at Stone Mountain Inn.

### 5. Evidence Regarding Stone Mountain Inn Litigation

J.G. seeks to preclude evidence regarding her lawsuit and subsequent settlement with Stone Mountain Inn. (Doc. 161 at 27-30.) J.G. argues that the evidence is inadmissible under Rule 408's prohibition on admission of a settlement "to prove or disprove the validity or amount of a disputed claim," is not relevant to any claim or defense, and poses a risk of unfair prejudice and confusion of the issues.

Northbrook opposes the motion on the ground that disclosing the settlement amount to the jury is required to prevent double recovery of J.G.'s injuries in violation of the "one-satisfaction rule." (Doc. 165 at 20-23.) Because J.G. was trafficked at three different hotels during the same general time period, Northbrook contends that the source of J.G.'s injuries cannot be distinguished between the trafficking that occurred at those three hotels. As a result, Northbrook argues, it should be permitted to present J.G.'s settlement as a "credit against the damage for any and all injury she has sustained from her sex trafficking generally, including her alleged trafficking at United Inn." (Doc. 165 at 19-20.)

Northbrook's argument that the one-satisfaction rule applies in this case is unpersuasive. The one-satisfaction rule "operates to prevent double recovery, or the overcompensation of a plaintiff" where there are actual or

alleged "joint tortfeasors." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277 (11th Cir. 2008). The rule "provides that a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." *Id.* at 1276.

In this matter, however, Northbrook and Stone Mountain Inn are neither actual nor alleged joint tortfeasors. J.G.'s civil beneficiary TVPRA claim is brought exclusively against Northbrook with respect to sex trafficking that occurred at Northbrook's hotel, the United Inn. There are no allegations or record evidence that Stone Mountain Inn was involved in, or benefitted from, J.G.'s sex trafficking at United Inn, which is completely unaffiliated with Stone Mountain Inn. In other words, J.G. has brought two separate TVPRA claims against two different defendants for two distinct courses of conduct that occurred at different times and places. The Court therefore finds that the one-satisfaction rule does not apply.

Nor is application of the one-satisfaction rule necessary to prevent double recovery for J.G.'s injuries. As the Court explains with respect to Northbrook's Rule 412 motion below, Northbrook may present evidence regarding J.G.'s sex trafficking at Stone Mountain Inn and a third hotel to contest causation and damages. Northbrook may also argue to the jury that

some or all of J.G.'s damages were caused by her sex trafficking at these other locations.

Because the one-satisfaction rule does not apply, J.G.'s lawsuit and settlement with Stone Mountain Inn are not relevant to the present case. Moreover, even if evidence regarding the Stone Mountain Inn litigation could be considered minimally relevant, the Court finds that the probative value of such evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403. Were the jury to hear about J.G.'s lawsuit against Stone Mountain Inn, the jury might perceive J.G. to be unnecessarily litigious. Furthermore, delving into the circumstances of the Stone Mountain Inn litigation might confuse the jury and prompt questions about the connection between Stone Mountain Inn's TVPRA liability and that of Northbrook. The focus at trial should instead be on the issues of whether Northbrook participated in a venture that violated the TVPRA as to J.G. and had knowledge of J.G.'s sex trafficking *at United Inn*.

Accordingly, J.G.'s motion is **GRANTED**. Northbrook is not permitted to reference J.G.'s litigation or settlement involving Stone Mountain Inn.

### 6. Notice of Intent to File a Curative Instruction

J.G. provides notice of her intent to file a motion for a curative instruction related to Northbrook's discovery misconduct. (Doc. 161 at 30-32.)

Because J.G. has not yet requested any relief, the Court will defer consideration of this issue until a motion, if any, is made. The Court notes, however, that it has granted Northbrook's tenth motion in limine, which precludes J.G. from asserting that Northbrook violated discovery rules or disclosing any resulting sanctions at trial. (*See infra* at 38-39.)

### III.    Defendant's Motions in Limine

#### 1. Evidence of Northbrook's County Code Enforcement Citations

Northbrook seeks to exclude evidence concerning several hundred citations it received for violating DeKalb County health and building codes in 2017. (Doc. 160 at 5-8.) It also moves to exclude the fact that it paid over $60,000 in fines to resolve the code citations in 2018. (*Id.*) Northbrook argues that the code enforcement citations have no connection with J.G.'s sex trafficking and are irrelevant to her TVPRA claim. In the alternative, Northbrook contends that even if the code citations were relevant, their probative value is substantially outweighed by a danger of unfair prejudice under Federal Rule of Evidence 403.

J.G. opposes the motion, arguing that the "code violations at [the] hotel (e.g., abandoned vehicles, trash, etc.) are relevant to the amount of criminal activity at the hotel, and to J.G.'s testimony that she had commercial sex with

dozens of men in cars in the parking lot." (Doc. 167 at 9 n.4, 22.)  In addition, J.G. contends that "evidence of the hotel's Code violations are relevant to its financial motive to maximize profit and avoid necessary safety and security investments in the property." (*Id.* at 16.)  J.G. attempts to draw a direct connection between code citations for "abandoned cars" and "opportunities to exploit J.G., who testified that she was sexually assaulted regularly in cars parked in the parking lot." (*Id.* at 17.)

The Court finds that, with one exception related to abandoned cars, Northbrook has the better argument. *See* Fed. R. Evid. 401, 402.  The fact that Northbrook was cited for violating several building and health codes (and paid fines to resolve those citations) does not appear germane to any element of J.G.'s TVPRA claim.  For instance, Northbrook's citation for failing to maintain a property "in a clean and sanitary condition free from any accumulation of rubbish or garbage" (Doc. 160-1) or failing to ensure that "interior walls, ceilings and floors shall be structurally sound, in good repair, [and] free from defects" (Doc. 160-3) does not bear on whether Northbrook participated in a venture that violated the TVPRA, or had knowledge that the venture violated the TVPRA as to J.G.  In short, J.G. has not identified—save for one exception explained below—any factual proposition "of consequence in determining the

action" that is made more or less probable by Northbrook's violation of DeKalb County building and health codes.  Fed. R. Evid. 401.

Moreover, J.G.'s argument that the code violations demonstrate that Northbrook had a financial "motive" to maximize profit and insufficiently invest in safety and security takes the form of improper character evidence under Rule 404(b).[1]  While J.G. suggests that she intends to use the code violation evidence for the permitted purpose of proving Northbrook's "motive," her argument relies on an improper propensity inference.  Specifically, J.G. implies that because Northbrook previously failed to adequately invest in safety and security, as evidenced by the code violations, it was thus also more likely to insufficiently invest in security measures to prevent J.G.'s sex trafficking.  (*See* Doc. 167 at 16 ("Like the hotel's unwillingness to invest in meeting basic hotel safety and security standards required by DeKalb County

---

[1] While J.G. has not raised the argument, the Court acknowledges that whether Rule 404(b)(1)—which speaks in terms of a "person"—applies to corporate entities is an "open question."  Wright & Miller, 22B Fed. Prac. & Proc. Evid. § 5234 (2d ed.); *see also United States v. AseraCare Inc*, No. 2:12-CV-245-KOB, 2015 WL 5444124 (N.D. Ala. Sept. 15, 2015) (stating that "[t]he court has uncovered no Eleventh Circuit case precluding it from applying Rule 404 to 'other actions' of a corporation by its agents or employees.").  For purposes of this order, the Court assumes without deciding that Rule 404(b)(1) applies to Northbrook.  Even if Rule 404(b)(1) did not apply to Northbrook, the Court would exclude the same evidence pursuant to Rule 403 due to its probative value being substantially outweighed by a danger of unfair prejudice.

Code until Code Enforcement cited the hotel 447 times, . . . the hotel did not invest in needed security or adequate staffing prior to this lawsuit.").) Such an argument is prohibited under Rule 404(b)(1). *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

In addition, the Court concludes that, aside from one category of code violations discussed below, the probative value of the code violation evidence is substantially outweighed by the risk of unfair prejudice under Rule 403. *See* Fed. R. Evid. 403. Specifically, jurors may generally perceive United Inn as a bad actor because of the code violations or draw an undue inference that the high volume of code violations at United Inn makes it more likely that Northbrook violated the TVPRA. The focus at trial should instead be on the issues of whether Northbrook participated in a venture that violated the TVPRA as to J.G. and had knowledge of J.G.'s sex trafficking.

The Court will, however, permit evidence with respect to a specific category of code violations. J.G. contends that Northbrook was cited for code violations regarding "abandoned cars" which are relevant to "opportunities to exploit J.G., who testified that she was sexually assaulted regularly in cars parked in the parking lot." (Doc. 167 at 17.) Code violations related to

abandoned cars on Northbrook's property are therefore relevant as it would render the factual proposition that J.G. was sexually assaulted in vehicles at United Inn more probable.  Northbrook objects that at her deposition, J.G. only testified that she had sex with buyers in their own cars, not in abandoned cars. (*See* Doc. 172 at 3.)  Even so, J.G. may argue that the presence of abandoned cars concealed J.G.'s sex trafficking in other, non-abandoned vehicles in the United Inn parking lot.  J.G. may also clarify her testimony at trial to demonstrate that she did have sex with buyers in abandoned cars.  At this time, the Court will leave open the possibility that code violations related to abandoned cars *may* be relevant and admissible.

Accordingly, Northbrook's motion in limine is **GRANTED IN PART**. J.G. may not present evidence of Northbrook's code violations with one exception.  If J.G. presents evidence that she engaged in commercial sex in vehicles on United Inn property, she may also introduce evidence of code violations that are related to the presence of abandoned cars.  This ruling is subject to modification if Northbrook opens the door to other types of code violations at trial.

### 2. Evidence Concerning the Trafficking of A.G. and G.W. and Investigation and Conviction of Their Trafficker

Northbrook moves to exclude evidence regarding the sex trafficking of two other minors, A.G. and G.W., at United Inn and the investigation and conviction of their sex trafficker. (Doc. 160 at 8-10.) It contends that evidence related to A.G.'s and G.W.'s trafficking is irrelevant because J.G. must prove that Northbrook participated in a venture that violated the TVPRA and knew of the TVPRA violation *as to her*. Northbrook stresses that A.G.'s and G.W.'s trafficker is not alleged to have trafficked J.G. In the alternative, Northbrook argues that even if A.G.'s and G.W.'s trafficking at United Inn were relevant, the evidence should be excluded under Rule 403 because it is likely to confuse the issues and mislead the jury.

J.G. opposes Northbrook's motion, arguing that evidence about other sex trafficking occurring at United Inn—including A.G.'s and G.W.'s trafficking—is, at minimum, relevant circumstantial evidence that Northbrook participated in a venture with J.G.'s traffickers and had actual or constructive knowledge of J.G.'s trafficking. (Doc. 167 at 12-14.)

The Court agrees that evidence about other, recent sex trafficking at United Inn is relevant. Per Plaintiff, A.G. and J.W. were trafficked at the United Inn approximately 16 months before Plaintiff was trafficked there.

(Doc. 167 at 7.)   As the Court noted in its summary judgment order, with respect to the second element of Plaintiff's TVPRA claim, "[a] reasonable jury could find that the ubiquitous presence of sex trafficking at the United Inn during the relevant periods supports Plaintiff's claim of Northbrook's 'ongoing business relationship' with sex traffickers, and with J.G.'s traffickers in particular."   (Doc. 138 at 22); *see, e.g., Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1254 (N.D. Ga. 2023) (analyzing "participation in a venture" and finding evidence showing "hotel employees regularly observed pimps and prostitutes using the rooms" and that the hotel "had received complaints of prostitution" to be relevant); *W.K. v. Red Roof Inns, Inc.*, 692 F. Supp. 3d 1366, 1380 (N.D. Ga. 2023).   Moreover, as to the fourth element of a TVPRA claim, evidence of other sex trafficking occurring at United Inn may support J.G.'s contention that Northbrook had actual or constructive knowledge about sex trafficking occurring at its hotel more broadly and may serve as circumstantial evidence that Northbrook had knowledge that J.G. was being sex trafficked in particular.   *See Does 1-4*, 688 F. Supp. 3d at 1254 ("To prove either actual knowledge or deliberate ignorance" in a TVPRA case, a plaintiff "may rely on both direct evidence and circumstantial evidence based on the 'totality' of circumstances.").

The Court is also not persuaded by Northbrook's Rule 403 objection that evidence of A.G.'s and G.W.'s trafficking is likely to confuse the issues and mislead the jury.  Further, Northbrook may object at trial to non-germane or cumulative evidence regarding A.G.'s and G.W.'s trafficking.  The jury will be instructed on the elements of a TVPRA claim, and where necessary, limiting instructions can be issued to prevent any confusion.

In sum, the Court finds that evidence of other sex trafficking at United Inn, including the trafficking of A.G. and G.W., is relevant to Plaintiff's TVPRA claim.  Northbrook's motion is therefore **DENIED**.

### 3.  Evidence of Other Crimes or Incidents at United Inn

Northbrook seeks to exclude evidence of other crimes or incidents at United Inn that do not include J.G.  (Doc. 160 at 11-15.)  It argues that such evidence is irrelevant to J.G.'s TVPRA claim.  Alternatively, Northbrook contends that even if evidence of other crimes were relevant, it would constitute improper character evidence and/or should be excluded under Rule 403 as unfairly prejudicial.

Northbrook's motion is due to be granted in part and denied in part.  As the Court explained with respect to Northbrook's second motion in limine, evidence of other sex trafficking that occurred at United Inn is relevant to J.G.'s TVPRA claim.  In addition, the Court finds that other commercial sex

crimes, such as prostitution, are closely related to sex trafficking and therefore relevant to proving the venture and knowledge elements of a TVPRA claim. *See, e.g.*, *Does 1-4*, 688 F. Supp. 3d at 1254 ("[A] jury could find that the Red Roof Defendants had an ongoing business relationship with known pimps and prostitutes in which they rented rooms to be used for commercial sex and that Defendants knew or should have known that this venture involved violations of the TVPRA.").

Moreover, such evidence does not constitute impermissible character evidence. J.G. does not seek to introduce evidence of other crimes at United Inn for the improper purpose of showing conformity with character, but rather to demonstrate Northbrook's "knowledge," and "absence of mistake," which are permitted uses of evidence of other wrongs under Rule 404(b)(2). Fed. R. Evid. 404(b)(2) (evidence of other crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). Several courts have permitted evidence of a defendant's "modus operandi" to establish knowledge of a TVPRA violation. *See, e.g.*, *Treminio v. Crowley Mar. Corp.*, No. 322CV00174CRKPDB, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024) ("Under the TVPRA, courts have allowed a showing of a defendant's modus operandi to be sufficient for establishing knowledge."); *Ardolf v. Weber*, 332

F.R.D. 467, 475 (S.D.N.Y. 2019) (holding that establishing the defendant's modus operandi was a permitted method to demonstrate knowledge under the TVPRA).  Here, a jury might properly rely on contextual evidence of other commercial sex crimes at United Inn to evaluate whether Northbrook participated in a venture which violated the TVPRA and had knowledge of J.G.'s sex trafficking.

As for Northbrook's Rule 403 argument, the Court does not agree that evidence of other commercial sex crimes at United Inn would be unduly prejudicial.  Northbrook has not sufficiently explained how the probative value of such evidence would be substantially outweighed by the risk that its admission will create undue prejudice or mislead the jury.  This is especially so given the relevance of commercial sex crime that occurred at United Inn to the venture and knowledge elements of J.G.'s TVPRA claim.[2]

However, the Court agrees with Northbrook that crimes other than those related to sex trafficking, or commercial sex more broadly, have little to no relevance to J.G.'s TVPRA claim.[3]  For instance, incidents involving harassing

---

[2] Northbrook may, of course, raise trial objections regarding cumulative evidence and/or the temporal proximity of other commercial sex crimes to J.G.'s trafficking.

[3] Even if the commission of non-commercial sex crimes at United Inn has some minimal relevance, under the theory that sex trafficking and other criminal

phone calls (Doc. 160-10) or automobile theft (Doc. 160-11) at United Inn have no apparent connection to Northbrook's alleged participation in a venture that violated the TVPRA or knowledge of sex trafficking.  As such, the Court will preclude J.G. from presenting evidence about crimes unrelated to commercial sex.  Of course, where J.G. can identify a specific relationship between sex trafficking and other crimes—for instance, if a sex trafficker was also dealing illicit substances—she may present evidence related to those crimes.

Northbrook's motion is thus **GRANTED IN PART** and **DENIED IN PART**.  J.G. may introduce evidence about sex trafficking and other commercial sex crimes that occurred at United Inn.  However, J.G. may not present evidence concerning crimes with no relationship to sex trafficking or commercial sex.

### 4. Evidence Postdating Plaintiff's Last Alleged Trafficking at United Inn

Northbrook moves to exclude evidence about events that occurred after January 2019, the last month during which J.G. alleges she was sex trafficked at United Inn.  (Doc. 160 at 15-17.)  It contends both that such evidence is

---

activity go hand-in-hand, the Court finds that the probative value of such evidence is substantially outweighed by the risk of unfair prejudice and confusing the jury.  *See* Fed. R. Evid. 403.  Jurors may, for instance, draw an improper inference that United Inn violated the TVPRA merely because it was a "bad" or "unsafe" motel located in a high-crime area.

irrelevant and should be excluded under Rule 403 because it poses a risk of misleading the jury.  J.G. opposes Northbrook's motion on the ground that post-January 2019 evidence is relevant to elements of her TVPRA claim and "to prove motive, opportunity, knowledge, absence of mistake, lack of accident, and *modus operandi* under 404(b)[.]"  (Doc. 167 at 24.)

Some courts have recognized that evidence postdating the incident at issue in a suit can nevertheless be relevant for proving a certain practice or modus operandi.  For example, in the Section 1983 context, the Eleventh Circuit has noted that "post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."  *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015).  Moreover, at least one court considering a TVPRA claim concluded that "[t]he geographical, temporal, and behavioral similarities" of subsequent incidents was "sufficient to submit for jury determination of whether [the defendant] had an established modus operandi."  *Treminio*, 2024 WL 382400, at *7.

At this stage, without knowing the precise contours of the post-event evidence that J.G. intends to introduce, the Court cannot issue a categorical bar on the introduction of post-event evidence.  Accordingly, Northbrook's motion is **DENIED**.  However, Plaintiff is cautioned that any post-event evidence must be narrowly tailored to satisfy a permissible purpose under Rule

404(b).  The evidence presented at trial should be focused on the issues of whether Northbrook participated in a venture that violated the TVPRA as to J.G. and had knowledge of J.G.'s sex trafficking.  Northbrook may renew its objection to the admission of post-event evidence at trial.

### 5. Description or Characterization of United Inn as a "High-Crime" Property or Being in a "High-Crime" Area

Northbrook seeks to preclude J.G. from presenting evidence or argument that characterizes United Inn as a "high-crime" property or as being located in a "high-crime" area.  (Doc. 160 at 17-19.)  Northbrook argues that such descriptions are irrelevant and pose a danger of unfair prejudice and confusion under Rule 403.  To illustrate its concern, Northbrook points to a police memorandum (that J.G. may seek to introduce) listing United Inn as one of the "locations [which] have the highest crime rate [sic] within our business community."  (Doc. 160-19 at 3.)

The Court has previously explained its view that the prevalence of commercial sex crimes at United Inn is relevant to J.G.'s TVPRA claim, while the commission of other crimes is unlikely to be relevant.  The label "high-crime," when applied to a hotel, might encompass both commercial sex crimes, as well as other unrelated criminal activity.  Because the term "high-crime" may, in certain contexts, be relevant to the presence of commercial sex crime,

the Court considers the relief sought by Northbrook to be overbroad and unworkable.  The Court will not categorically bar J.G. from presenting evidence that refers to United Inn as a "high-crime" property or location.

However, the Court also recognizes that excessive use of the "high-crime" label may prejudice Northbrook.  Although Northbrook's motion is **DENIED**, Plaintiff should avoid excessive reference to United Inn as a "high-crime" hotel or location.  Northbrook may renew its objection in response to developments at trial.

### 6. Guest Reviews of United Inn

Northbrook moves to prevent J.G. from presenting guest reviews of United Inn.  (Doc. 160 at 19-22.)  J.G. does not oppose the motion but reserves her right to use guest reviews as impeachment evidence.  (Doc. 167 at 25.) Accordingly, Northbrook's motion is **GRANTED**.   The Court defers any decision regarding the admissibility of guest reviews for impeachment until trial.

### 7. Evidence of Northbrook's Financial Condition

Northbrook seeks to exclude evidence of its financial condition.  (Doc. 160 at 22-24.)  J.G. does not oppose Northbrook's motion with respect to the liability phase of trial but plans to introduce evidence of financial condition during the punitive damages phase, if any, of trial.   (Doc. 167 at 25-26.)   As such,

Northbrook's motion is **GRANTED IN PART** as to the liability phase of the trial.  The Court defers any decision concerning the admissibility of evidence about Northbrook's financial condition with respect to punitive damages.

### 8. Evidence Regarding Plaintiff's Medical or Psychological Conditions Resulting from Alleged Trafficking at United Inn

Northbrook moves to preclude J.G. from testifying or presenting evidence that "she experiences or exhibits symptoms or signs of depression, anxiety, post-traumatic stress disorder or other similar clinical diagnoses, and/or that such conditions are caused by her alleged sex trafficking at United Inn."  (Doc. 160 at 24-25.)  Northbrook contends that only a qualified expert may testify as to such matters.  Because J.G. has not identified an expert for trial, Northbrook argues, the Court should bar J.G. from testifying about any medical or psychological conditions that she may have suffered.

J.G. opposes the motion, arguing that under Federal Rule of Evidence 701, J.G. is permitted to testify—as a lay witness—to how being sex trafficked at United Inn "caused her physical, emotional, and psychological harm."  (Doc. 167 at 26-28.)

The Court finds that J.G. has the better argument.  "A witness's lay opinion is admissible if it is 'rationally based on the witness's perception,' 'helpful to clearly understanding the witness's testimony or determining a fact

in issue,' and 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Gaddy v. Am. Interstate Ins. Co.*, No. 1:14-CV-1928-WSD, 2018 WL 1737597, at *2 (N.D. Ga. Apr. 10, 2018). Plaintiffs are routinely permitted to testify, as lay witnesses, about their own physical, emotional, and psychological injuries and the causes of those injuries. *See, e.g.*, *Walker v. Banks, Finley, White & Co. of Georgia, P.C.*, No. 1:19-CV-5461-CAP, 2023 WL 11909753, at *8 (N.D. Ga. Jan. 3, 2023) ("[I]f evidence of her emotional distress is probative of a relevant fact, a lay witness who has personal knowledge of her emotional distress may testify about it."); *Tindall v. H & S Homes, LLC*, No. 5:10-CV-044 CAR, 2011 WL 5007827, at *6 (M.D. Ga. Oct. 20, 2011) ("Plaintiff may testify as to her own mental suffering and her lay opinion as to its cause."); *Brown v. Worstell*, No. CV 03-466, 2005 WL 8252589, at *6 (W.D. Pa. July 28, 2005) (finding that a plaintiff had "more than a reasonable basis grounded in experience to testify as to the mental and emotional injuries he suffered" from two alleged assaults); *see also United States v. Rodriguez*, 581 F.3d 775, 808 (8th Cir. 2009) ("This court concludes that a sexual-assault victim's testimony of psychological injury is sufficient by itself to establish serious bodily injury, even if unaccompanied by a medical diagnosis of PTSD.").

Of course, J.G. may not offer expert testimony that is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c); *see Gallagher Benefit Servs., Inc. v. Campbell*, 528 F. Supp. 3d 1326, 1350 (N.D. Ga. 2021) ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." (quoting Fed. R. Evid. 701, advisory committee's note to 2000 amendment)). While Northbrook is correct that J.G. may not offer opinions as to formal medical diagnoses, Northbrook's motion goes a step too far by attempting to preclude J.G. from testifying about symptoms she experienced and their causes.

Accordingly, Northbrook's motion is **DENIED** as stated. Northbrook may raise an objection at trial if it believes that J.G. is offering improper expert testimony in violation of Rules 701 and 702.

### 9. Evidence or Argument Suggesting a Specific Amount of Damages to be Awarded

Northbrook seeks to prevent J.G. from offering evidence or argument requesting a specific damages award from the jury. (Doc. 160 at 25-26.) During discovery, Northbrook served an interrogatory on J.G. asking that she "state the amount of damages you claim in this matter, identifying each type

of damage and the calculation thereof." (Doc. 160-22 at 39-40.) In response, J.G. listed several categories of damages that she allegedly sustained but failed to specify any dollar amount for her damages. (*Id.*) Northbrook argues that J.G.'s failure to specify a dollar amount for damages in her interrogatory response should preclude her from requesting a specific dollar amount at trial. (Doc. 160 at 25-26.)

J.G. opposes Northbrook's motion. (Doc. 167 at 28-31.) At a pretrial hearing on June 30, 2025, J.G. disclosed that she will be exclusively seeking noneconomic damages at trial. J.G. contends that under Georgia and federal law, there is "no exact standard for fixing the compensation to be awarded" for noneconomic damages. (Doc. 167 at 28-29 (quoting 3 Fed. Jury Prac. & Instr. § 128:02 (7th ed.)).) Because of the imprecision of formulating noneconomic damages, J.G. argues, they "generally are not amenable to the type of disclosures contemplated by" Rule 26. *Id.* at 30 (quoting *Bowers v. Am. Heart Ass'n, Inc.*, No. 1:06-CV-2989-CC, 2008 WL 11407360, at *3 (N.D. Ga. Dec. 2, 2008)). In addition, J.G. represents that her damages request will be affected by the documentary evidence and testimony that is admitted at trial. Furthermore, J.G. contends that even if her disclosures were insufficient, any noncompliance with Rule 26 was harmless. (Doc. 167 at 30.)

The parties' dispute is governed by Federal Rules of Civil Procedure 26(e) and 37(c). Rule 26(e) provides, in relevant part, that a party "who has responded to an interrogatory, [or] request for production . . . must supplement or correct" the response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) states that, where "a party fails to provide information" required by Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Although Northbrook's motion presents a close call, the Court finds that J.G. should be permitted to request a dollar amount of noneconomic damages at trial. Courts are divided on the question of whether plaintiffs must disclose a specific computation of noneconomic damages in response to discovery requests and initial disclosure requirements. *See Lewis v. Cabana Coaches, LLC*, No. 12-20783-CIV, 2012 WL 12896353, at *2 (S.D. Fla. Oct. 19, 2012) ("As to computation for non-economic damages, courts are divided as to whether calculations are required under Rule 26."). As J.G. argues, "several courts have recognized that non-economic damages are not conducive to the type of computation contemplated by Rule 26." *Smith v. City of Chicago*, No. 15 CV

3467, 2020 WL 13599000, at *4 (N.D. Ill. Nov. 4, 2020) (listing cases); *see Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26[ ]."). As such, plaintiffs are often not required to provide a specific dollar amount for noneconomic damages in discovery. *See, e.g., Gray v. Florida Dept. of Juvenile Justice*, No. 3:06-cv-990-J020MCR, 2007 WL 295514, at *2 (M.D. Fla. Jan. 30, 2007) ("Plaintiff is not required to provide Defendant with a calculation of her suggested compensatory damages for emotional distress pursuant to Rule 26(a)(1)(c)."); *Wong v. Seattle Sch. Dist. No. 1*, No. C16-1774 RAJ, 2018 WL 4630385, at *6 (W.D. Wash. Sept. 27, 2018) (noting that "a line of cases in this Circuit that hold that parties need not disclose a precise computation of emotional distress damages in their initial disclosures or before trial" and listing cases).

Some courts have found, however, that where a plaintiff "decides not to disclose a computation for non-economic damages during discovery, [the] [p]laintiff shall be precluded from suggesting *any* amount of non-economic damages to the jury at any point or manner during the trial." *Lewis*, 2012 WL 12896353, at *3 (S.D. Fla. Oct. 19, 2012); *see, e.g., Nagele v. Delta Air Lines*,

*Inc.*, No. 17-22559-CIV, 2017 WL 6398337, at *2 (S.D. Fla. Dec. 13, 2017) (same); *King v. City of Waycross, Georgia*, No. CV 5:14-CV-32, 2015 WL 5468646, at *3 (S.D. Ga. Sept. 17, 2015) ("[C]ourts have excused plaintiffs from including a calculation of noneconomic damages in their disclosures only *on the condition* that the plaintiffs give up the ability to ask the jury for a specific dollar amount or a range of non-economic damages at trial." (emphasis added)); *see also Cap. Inventory, Inc. v. Green*, No. 1:20-CV-3224-SEG, 2023 WL 2731897 (N.D. Ga. Jan. 9, 2023) (precluding counterclaimant from requesting from the jury a specific dollar amount for "injury to reputation and goodwill" where the same was not disclosed in an interrogatory response and the case-specific circumstances showed prejudice to plaintiff).

J.G. contends that any alleged breach of her discovery obligations was harmless. "The determination of whether a Rule 26[ ] violation is justified or harmless is entrusted to the broad discretion of the district court." *Bowers*, 2008 WL 11407360, at *2 (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). Several factors are useful for determining whether a Rule 26 violation is harmless, including "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the

36

non-disclosing party's explanation for its failure to disclose the evidence." *L.A. v. Riverside Mil. Acad. Found., Inc.*, No. 2:18-CV-00215-RWS, 2021 WL 8998914, at *3 (N.D. Ga. Sept. 30, 2021).  A party is considered prejudiced when "late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Paul v. Aramark Healthcare Support Servs., LLC*, No. 1:15-cv-189-MHC, 2016 WL 7888045, at *4 (N.D. Ga. June 2, 2016).  "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

While the Court does not condone J.G.'s failure to disclose a more specific damages request during discovery, it agrees that J.G.'s violation of Rule 26, if any, was harmless on the particular facts of this case.  As explained above, noneconomic damages for pain and suffering and emotional injury are often not subject to precise calculation.  Thus, "[o]ther than providing a general estimate, any disclosure that Plaintiff might have made in this regard likely would have done little to guide Defendant['s] discovery efforts." *Bowers*, 2008 WL 11407360, at *3.  Moreover, given the context of this case, the details of J.G.'s allegations, and the amount demanded at mediation, Northbrook was on

notice that J.G. would seek a high amount of noneconomic damages. The Court also considers the fact that Northbrook did not move to compel a more complete answer to its interrogatory during discovery and did not, until filing its motions in limine, alert the Court to the deficiency in J.G.'s discovery responses. *Id.* ("While the fact that Defendants did not file a motion to compel does not excuse Plaintiff's failure to make her required disclosures, the Court finds it supports Plaintiff's contention that the failure was harmless." (cleaned up)). In sum, the Court concludes that Northbrook was not prejudiced by J.G.'s failure to specify a dollar amount of noneconomic damages during discovery. The Court will, however, direct J.G. to disclose her damages request to Northbrook before trial begins.

Accordingly, Northbrook's motion is **GRANTED IN PART** and **DENIED IN PART**. J.G. is **DIRECTED** to disclose to Northbrook the dollar amount of noneconomic damages she intends to request at trial **by Thursday, July 3, 2025.** Consistent with her representations to the Court, J.G. will only be permitted to seek noneconomic damages at trial.

### 10.    Sanctions Award Against Northbrook

The Court previously entered discovery sanctions against Northbrook for its failure to conduct a reasonable inquiry in response to J.G.'s discovery requests. (Doc. 138 at 44.) Northbrook moves to preclude J.G. from referencing

Northbrook's discovery violations and associated sanctions at trial. (Doc. 160 at 26.) In its order imposing discovery sanctions, the Court already determined that non-monetary sanctions, including any potential disclosure of Northbrook's discovery violations to the jury, were unwarranted because the extended discovery period and monetary sanctions cured any prejudice J.G. had suffered. (Doc. 138 at 48-49.) J.G., moreover, has not shown that Northbrook possesses employment or staffing documents that it *failed* to produce in discovery. Rather, she opines that Northbrook may have maintained spotty and incomplete employment records, such that the documents Northbrook *did* produce do not fully reflect its staffing during the relevant period.

As such, Northbrook's motion is **GRANTED IN PART**. J.G. may not assert that Northbrook violated discovery rules or disclose any resulting sanctions at trial. However, J.G. is permitted to introduce as evidence any staff list or similar document that she believes is deficient and may elicit testimony and offer argument about those deficiencies at trial. Northbrook may, of course, raise trial objections to the introduction of such evidence on other grounds.

### 11.    "Reptile" Statements or Arguments

Northbrook seeks to preclude J.G. from making any "reptile" statements that "appeal to the survival instincts of jurors by portraying a defendant's conduct as a threat to the community at large."  (Doc. 160 at 27.)  The Court finds Northbrook's motion to be vague and overbroad as stated.  Northbrook's motion is therefore **DENIED**.  Northbrook's concerns can be properly handled through objections made at trial.

## IV.    Defendant's Rule 412 Motion

Northbrook has moved to admit certain evidence, potentially related to J.G.'s other sexual behavior, under Federal Rule of Evidence 412.  (Doc. 175.)  Rule 412 prohibits the following evidence in a case involving alleged sexual misconduct: "1) evidence offered to prove that a victim engaged in other sexual behavior; or 2) evidence offered to prove a victim's sexual predisposition."  Fed. R. Evid. 412(a).  The rule also contains an exception applicable to civil cases— namely, "the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."  Fed. R. Evid. 412(b)(2).  Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of

sexual innuendo into the factfinding process." *United States v. Sarras*, 575 F.3d 1191, 1212 n.25 (11th Cir. 2009) (quoting Fed. R. Evid. 412, advisory committee's note to 1994 amendment). In addition, "[b]y affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." *Id.*

"If a party intends to offer evidence under Rule 412(b), the party must . . . file a motion that specifically describes the evidence and states the purpose for which it is to be offered[.]" Fed. R. Evid. 412(c)(1). "Before admitting evidence under Rule 412, "the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard. Unless the court orders otherwise, the motion, related materials, and the record of the hearing must be and remain sealed." Fed. R. Evid. 412(c)(2).

Northbrook timely filed a motion seeking to admit evidence under Rule 412. (Doc. 175.) On June 30, 2025, the Court held an in camera hearing, in accordance with the requirements of Rule 412(c)(2). Northbrook seeks to present six categories of evidence at trial that may implicate Rule 412: (1) the fact that J.G. was trafficked for sex at Stone Mountain Inn and a third hotel, neither of which are affiliated with Northbrook; (2) the dates and duration of stays during which J.G. was trafficked for sex at Stone Mountain Inn and the

third hotel, and the number of sexual encounters at each on a daily, and total, basis; (3) evidence as to how and why J.G. arrived at, stayed at, and left Stone Mountain Inn and the third hotel for each of her stays; (4) the identity of J.G.'s traffickers at Stone Mountain Inn and the third hotel, a description of any accomplices, and whether J.G. was threatened with or subjected to non-sexual violence during her stays, including the presence or use of weapons; (5) evidence regarding J.G.'s litigation against Stone Mountain Inn; and (6) evidence of Plaintiff's March 2019 arrest at Stone Mountain Inn for several sex trafficking-related charges.

J.G.'s motions in limine initially appeared to oppose the admission of any evidence related to J.G.'s sex trafficking at locations other than United Inn. (Doc. 161 at 21-25.) However, at the Rule 412 hearing, J.G. clarified that she does not oppose admission of the first category of evidence—the fact that J.G. was trafficked at Stone Mountain Inn and an unknown third hotel—for the purpose of contesting causation and damages. With respect to the second category of evidence, J.G. does not oppose admission of the dates and duration of stays during which she was trafficked at the two other hotels. But J.G. does object to evidence of the number of sexual encounters she had at each hotel and opposes the introduction of any evidence in the remaining categories.

In resolving J.G.'s motions in limine, the Court determined that evidence regarding J.G.'s litigation against Stone Mountain Inn (category 5) and evidence of J.G.'s arrest and charges for sex trafficking at Stone Mountain Inn (category 6) is inadmissible on non-Rule 412 grounds.  (*See supra* at 10-15.)  As such, the Court does not address those categories of evidence again here.

The Court begins its analysis with the first and second categories of evidence that Northbrook intends to present at trial.  While the Court is sensitive to J.G.'s concerns about the pain of testifying about her past sexual trauma, it agrees with the parties that at least some evidence related to J.G.'s sex trafficking at Stone Mountain Inn and the third hotel is admissible under Rule 412.  Northbrook intends to present evidence of J.G.'s sex trafficking at other hotels to challenge causation and damages.  Specifically, Northbrook argues that some portion of J.G.'s damages may have been caused by sex trafficking at Stone Mountain Inn or a third hotel, rather than at United Inn.  Put another way, Northbrook contends that even if a jury finds that Northbrook violated the TVPRA, the jury might award lower damages on the basis that some of J.G.'s injuries are attributable to being sex trafficked at other hotels.

The threshold inquiry of whether Rule 412 is applicable to a victim's past sexual trauma, introduced to challenge causation and damages, is a difficult

one.  On one hand, the plain language of Rule 412 is quite broad, prohibiting any "evidence offered to prove that a victim engaged *in other sexual behavior*[.]" An individual's experience being sex trafficked might be construed as "other sexual behavior."   Nevertheless, several "courts have found that, when a plaintiff alleges emotional or psychological injury, evidence of prior sexual abuse or assaults is admissible [under Rule 412] to show other sources of that injury[.]"   *Lane v. Am. Airlines, Inc.*, No. 18-CV-6110 (MKB), 2024 WL 1200074, at *3 (E.D.N.Y. Mar. 20, 2024) ("Rule 412 is not applicable to evidence of Lane's trauma history, including any sexual abuse or assaults that she experienced prior to the [sexual assault], to the extent Defendant offers such evidence to prove causation of Lane's psychological injuries . . . ."); *see, e.g.*, *Doe v. Bridges to Recovery, LLC*, No. 20-CV-348, 2021 WL 4690830, at *16 (C.D. Cal. May 19, 2021) ("[Rule] 412 is inapplicable to the evidence of prior sexual assaults because that evidence is not being offered to prove that [the plaintiff] engaged in other sexual behavior or to prove her sexual predisposition. Rather, the evidence of prior sexual assaults is offered to identify other sources of emotional distress."); *Montanez v. City of Syracuse*, No. 16-CV-550, 2019 WL 4257134, at *4 (N.D.N.Y. Sept. 9, 2019) ("[E]vidence concerning past sexual trauma may be relevant to a determination of damages."); *Delaney v. City of Hampton*, 999 F. Supp. 794, 796 (E.D. Va. 1997) (admitting evidence of the

44

plaintiff's history of prior sexual abuse and other incidents because "these stressors may have contributed to her current psychiatric problem" and thus were relevant to the defendant's liability); *see also Judd v. Rodman*, 105 F.3d 1339, 1343 (11th Cir. 1997) (holding that whether the plaintiff contracted genital herpes from the defendant or another individual posed an issue of causation, and as such, "evidence of prior sexual relationships and the type of protection used during sexual intercourse was highly relevant" to the defendant's liability and admissible under Rule 412(b)).

Even assuming that Rule 412 applies to J.G.'s history of being sex trafficked, the Court finds that—for the narrow purpose of contesting causation and damages—the probative value of J.G.'s sex trafficking at other hotels substantially outweighs the danger of harm or prejudice to J.G. *See W.K. v. Red Roof Inns, Inc.*, No. 1:20-CV-05263-VMC, 2024 WL 5114059, at *4 (N.D. Ga. June 10, 2024) (concluding, in a similar TVPRA case, that "the danger of harm or prejudice to Plaintiffs by the introduction of their history of sexual trauma is outweighed by its probative value"). J.G.'s sex trafficking at Stone Mountain Inn and a third hotel may have contributed to her physical, psychological, and emotional injuries. A jury therefore may decide to consider that sex trafficking in its determination of damages J.G. has suffered, and whether Northbrook's violation of the TVPRA, if any, caused those damages.

Accordingly, the Court will permit Northbrook to introduce evidence in the first and second categories, namely, (1) the fact that J.G. was trafficked at two other hotels, and (2) the dates of her stays at those hotels, along with an estimate of the number of commercial sex buyers to whom she was trafficked.

While the third and fourth categories of evidence proposed by Northbrook do not squarely implicate Rule 412, the Court excludes them on other grounds. The third category, concerning evidence as to how and why J.G. arrived at, stayed at, and left the other two hotels, does not appear to be relevant to a claim or defense in the case. The nature of J.G.'s movements between hotels does not, for instance, bear on whether Northbrook participated in a venture that violated the TVPRA, or had knowledge that the venture violated the TVPRA as to J.G.

Even if J.G.'s movements have some minimal relevance to J.G.'s TVPRA claim, the Court finds that the evidence's probative value is substantially outweighed by a risk of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403; *see also* Fed. R. Evid. 412(b)(2). Exploring J.G.'s sex trafficking at other hotels in excessive detail risks creating a series of mini-trials about the culpability of actors that are not defendants in this matter. *See Chavis v. Clayton Cty. Sch. Dist.*, 147 F. App'x 865, 867-68 (11th Cir. 2005) (affirming a district court's ruling that excluded testimony due to the risk that a "set of

46

mini-trials" could have "confused the jurors into thinking that the mini-trials were the main case"). The Court also notes that J.G. is a minor who, under the TVPRA, could not consent to engage in commercial sex acts. *See* 18 U.S.C. § 1591(a)(2) (making it a crime to "knowingly" benefit from "participation in a venture," that causes a child to engage in a commercial sex act, even absent the use of force or coercion). Thus, to the extent that Northbrook intends to suggest that J.G. contributed to her own sex trafficking by voluntarily moving between several hotels, the proposed evidence would mislead the jury as to the elements of J.G.'s TVPRA claim.

The fourth category of evidence, regarding the identity of J.G.'s traffickers at the other hotels and whether J.G. was threatened with non-sexual violence, is excluded on similar grounds. While these details about J.G.'s trafficking at Stone Mountain Inn and the third hotel might have some minimal relevance, the Court finds that the evidence's probative value is substantially outweighed by a risk of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403. As explained above, probing unnecessary details of J.G.'s sex trafficking at different locations risks creating mini-trials on side issues that are far afield from J.G.'s TVPRA claim. The focus at trial should instead be on the issues of whether Northbrook participated in a venture that

violated the TVPRA as to J.G. and had knowledge of J.G.'s sex trafficking *at United Inn.*

Moreover, the Court concludes that permitting Northbrook to present evidence in its first and second proposed categories, but not the remaining categories, strikes the right balance between the parties' competing concerns. The introduction of evidence in the first two categories is sufficient to enable Northbrook to fairly contest causation and damages based on J.G.'s sex trafficking at other hotels, while not straying too far from the issues central to J.G.'s TVPRA claim.

Northbrook's Rule 412 motion is therefore **GRANTED IN PART** and **DENIED IN PART**.  Northbrook is permitted to present evidence in the first and second categories—that is, (1) the fact that J.G. was trafficked at two other hotels, and (2) the dates of her stays at those hotels, and an estimate of the number of commercial sex buyers to whom she was trafficked at each—***for the limited purpose of contesting causation and damages.***  Northbrook may not introduce evidence in the remaining categories, or any other evidence that falls within Rule 412(a).

### V.    Conclusion

For the reasons stated above, Plaintiff's motions in limine (Doc. 161) are

**GRANTED IN PART** and **DENIED IN PART.**    Defendant's motions in

limine (Doc. 160) and Rule 412 motion (Doc. 175) are likewise **GRANTED IN**

**PART** and **DENIED IN PART**.

**SO ORDERED**, this 2nd day of July, 2025.

SARAH E. GERAGHTY
United States District Judge