UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.G., <br><br>     Plaintiff, <br><br> v. <br><br> NORTHBROOK INDUSTRIES, INC., D/B/A UNITED INN AND SUITES, <br><br>     Defendant. | CIVIL ACTION NO. <br><br> 1:20-CV-5233-SEG |

## MEMORANDUM OPINION

This matter is before the Court on the parties' disputes regarding the availability of punitive damages under 18 U.S.C. § 1595(a), and the use of 30(b)(6) deposition designations at trial. At the pretrial conference held on July 2, 2025, the Court ruled that 18 U.S.C. § 1595(a) authorizes Plaintiff J.G. to seek punitive damages. Moreover, at the July 3, 2025, pretrial conference, the Court decided that Plaintiff may play video footage of Defendant Northbrook Industries, Inc.'s ("Northbrook") 30(b)(6) deposition at trial. This memorandum explains the Court's reasoning.

### I.   Punitive Damages Under 18 U.S.C. § 1595(a)

J.G. seeks to recover punitive damages on her TVPRA claim, arguing that the relevant statute, 18 U.S.C. § 1595(a), should be read to authorize

punitive damages. (Doc. 188 at 7-9, 15.) Northbrook opposes J.G.'s request for punitive damages, contending that punitive damages are not recoverable under the TVPRA. (Doc. 187 at 7-15.)

The plain language of the TVPRA is silent with respect to punitive damages. The statute, 18 U.S.C. § 1595(a), provides that a plaintiff who successfully brings a TVPRA claim "may recover damages and reasonable attorneys fees[,]" but does not clarify which types of damages a plaintiff may seek.

Where a federal statute does not specify the availability of damages, the Supreme Court has instructed that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 70-71 (1992); *see also id.* at 66 ("From the earliest years of the Republic, the Court has recognized the power of the Judiciary to award appropriate remedies to redress injuries actionable in federal court, . . . ."); *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.").

The question then becomes whether punitive damages constitute an "appropriate" form of relief for violation of a particular statutory right. The Supreme Court considered, in *Barnes v. Gorman*, whether punitive damages were appropriate in a private cause of action brought under § 202 of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 183 (2002). As an initial matter, the Court determined that the remedies for violating those provisions—based on language in the respective statutes—were "coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, which prohibits racial discrimination in federally funded programs and activities." *Id.* at 185.

In considering whether punitive damages were available under Title VI, the Court focused primarily on the nature of the statute, finding that it was "much in the nature of a *contract*: in return for federal funds, the [recipients] agree to comply with federally imposed conditions." *Id.* at 186 (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)). Because Title VI's requirements sounded in contract, the Court reasoned that a remedy would only be "appropriate" "if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature." *Id.* at 187. Moreover, "[a] funding recipient is generally on notice that it is subject

3

not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract" under common law. *Id.* As such, the Court concluded that a Title VI claimant could recover compensatory damages, which is a "form[ ] of relief traditionally available in suits for breach of contract[,]" but not punitive damages because they "are generally not available for breach of contract[.]" *Id.*

The Court also noted that its interpretation of Title VI was "consistent with the 'well settled' rule that . . . courts may use any available remedy to make good the wrong done." *Id.* at 189 (quoting *Bell v. Hood*, 327 U.S. at 684). "When a federal-funds recipient violates conditions of Spending Clause legislation," the Court explained, "the wrong done is the failure to provide what the contractual obligation requires; and that wrong is 'made good' when the recipient *compensates* the Federal Government or a third-party beneficiary . . . for the loss caused by that failure." *Id.* Punitive damages, which are not compensatory, would therefore go beyond the traditional remedial purpose to "make good the wrong done" in the Title VI context. *Id.*

The two federal courts of appeals to have addressed the question of whether punitive damages are available under the TVPRA (or its predecessor, the TVPA) have concluded that they are. In *Ditullio v. Boehm*, the Ninth Circuit considered whether punitive damages were available for a civil TVPA

4

claim brought under 18 U.S.C. § 1595 against a sex trafficker who recruited several minors to engage in commercial sex. *Ditullio v. Boehm*, 662 F.3d 1091, 1093 (9th Cir. 2011). The *Ditullio* court first noted that, "[s]tanding alone, the term "damages" is ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three." *Id.* at 1096. It further recognized that—in the face of a federal statute's silence on punitive damages—"[t]he Supreme Court has looked to the common law to determine the remedies available under federal statutes creating causes of action sounding in tort." *Id.* at 1097. Because the common law has long provided for punitive damages in tort actions, the *Ditullio* court reasoned that punitive damages should also be available under the TVPA, which is rooted in tort rather than contract. *Id.* (citing *Barry v. Edmunds*, 116 U.S. 550, 562 (1886)). Looking to common law principles, the Ninth Circuit concluded that "[p]unitive damages are generally appropriate under the TVPA civil remedy provision because it creates a cause of action for tortious conduct that is ordinarily intentional and outrageous." *Id.* at 1098.

The Tenth Circuit, in *Francisco v. Susano*, agreed that "[p]unitive damages are a well-established component of traditional common law remedies" and noted that the Supreme Court has "recognized punitive damages as a remedy under various federal statutes that did not expressly

5

provide for such relief." *Francisco v. Susano*, 525 F. App'x 828, 833 (10th Cir. 2013). It determined that the TVPA's cause of action for labor trafficking was consistent with "the traditional use of punitive damages . . . to punish and deter misconduct involving an element of outrage." *Id.* at 834. Thus, the *Francisco* court held that punitive damages are available under 18 U.S.C. § 1595(a). *Id.* at 835.[1]

Here, J.G.'s claim against Northbrook for benefitting from her sex trafficking sounds in tort rather than contract, *see Barnes*, 536 U.S. 181, 186 (2002), and involves "an element of outrage similar to that usually found in crime." *See Ditullio*, 662 F.3d at 1097 (quoting Restatement (Second) of Torts § 908, cmt. B. (1979)). Indeed, to succeed on her civil beneficiary claim under the TVPRA, J.G. must prove, *inter alia*, that Northbrook knowingly benefited from participation in a venture which it knew or should have known engaged in the crime of sex trafficking a minor. 18 U.S.C. § 1595(a); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). Accordingly, when looking to the *nature* of the statutory right at issue under the TVPRA, punitive damages are an "appropriate" remedy "to make good the wrong done." *Bell*, 327 U.S. at 684;

---

[1] The Fifth Circuit has also remarked, in passing, and citing to *Ditullio* and *Francisco*, that the "the TVPRA authorizes punitive damages[.]" *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017).

6

*see also Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000) ("Punitive damages are generally available for willful or intentional violations of a common law or statutory duty, and their purpose is to punish and deter the wrongdoer rather than to compensate the aggrieved party.").

Northbrook argues, however, that the Eleventh Circuit's interpretation of civil beneficiary claims under the TVPRA renders punitive damages inappropriate. (*See* Doc. 187 at 9-12.) Specifically, Northbrook contends that because the Eleventh Circuit has determined that the "participation in a venture" element of a civil beneficiary claim does not require showing that a defendant directly committed the crime of sex trafficking, and liability can attach when a defendant has constructive knowledge rather than actual knowledge that the venture violated the TVPRA, the prescribed conduct is insufficiently outrageous or intentional enough to warrant punitive damages. (*Id.*) But it is not clear why these two features of civil beneficiary claims should alter the traditional availability of punitive damages for tortious conduct. Depending on the particular facts of a case, participating in a venture that one knows or should know is engaging in sex trafficking, even without directly committing the act of sex trafficking, may be outrageous and reckless enough for a jury to appropriately award punitive damages. As the Supreme Court has recognized, "punitive damages in tort cases may be awarded not only for

7

actual intent to injure or evil motive, but also for recklessness, serious indifference to or disregard for the rights of others, or even gross negligence." *Smith v. Wade*, 461 U.S. 30, 48 (1983). In addition, Northbrook has failed to point to any precedent suggesting that a statute's mere inclusion of constructive knowledge as a basis for liability bars the availability of punitive damages.

In sum, the Court finds that punitive damages are available for civil beneficiary claims brought pursuant to 18 U.S.C. § 1595(a). Should J.G. prevail on her TVPRA claim at trial, she may seek an award of punitive damages from the jury.

## II. Use of 30(b)(6) Deposition Designations at Trial

J.G. sought to play at trial video footage of designated portions of Northbrook's 30(b)(6) representative's testimony, Tahir Shareef. (*See* Doc. 188 at 16-20.) Separately, J.G. also sought to call Mr. Shareef live as a witness in his personal capacity as the manager of United Inn. (*Id.*) Counsel for J.G. represented that he expected to play a limited number of excerpts of Mr. Shareef's 30(b)(6) deposition, totaling approximately fifteen minutes of testimony. (Pretrial Conference, July 2, 2025.)

Northbrook opposed J.G.'s use of the 30(b)(6) deposition designations during trial. (*Id.*) Specifically, Northbrook argued that because Mr. Shareef

8

would be present in the courtroom at trial, he should be permitted to testify in person consistent with the general preference for live testimony. Moreover, Northbrook argued that playing footage of Mr. Shareef's 30(b)(6) deposition in court—and also eliciting live testimony from him in his personal capacity soon afterwards—risked confusing the jury.

Pursuant to Federal Rule of Civil Procedure 32(a)(3), "an adverse party may use *for any purpose* the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 32(a)(3) (emphasis added). The former Fifth Circuit, in precedent binding on this court,[2] has held that the plain language of Rule 32(a)(3) (formerly Rule 32(a)(2)) "permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial." *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir. 1978). Several district courts in this circuit have similarly found that Rule 32(a)(3) authorizes a party to use its adversary's 30(b)(6) deposition at trial whether or not the deponent is available to testify at trial. *See, e.g.*, *Walker v. Banks, Finley, White & Co. of Georgia, P.C.*, No.

---

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

9

1:19-CV-5461-CAP, 2023 WL 11909753, at *9 (N.D. Ga. Jan. 3, 2023) (ruling that "Rule 32(a)(3) specifically allows the use of [defendant's] Rule 30(b)(6) deposition by the plaintiff" at trial); *Jenkins v. Corizon Health Inc.*, No. CV418-099, 2022 WL 332383, at *1 (S.D. Ga. Feb. 3, 2022) ("Courts in this circuit have held that Rule 32(a)(3) permits use of a corporate designee's deposition testimony regardless of the adversary's availability to testify at trial." (cleaned up)); *Mt. Hawley Ins. Co. v. Tactic Sec. Enf't, Inc.*, No. 616CV1425ORL40TBS, 2018 WL 10690250, at *1 (M.D. Fla. Apr. 5, 2018) ("Plaintiff may . . . introduce portions of depositions during its case of individuals described under Rule 32(a)(3), regardless of such individual(s)' availability to testify live at trial.").[3]

Moreover, while the Court recognized that it has discretion to manage the presentation of evidence at trial under Federal Rule of Evidence 611, it was not persuaded that J.G.'s limited use of the relevant 30(b)(6) deposition designations would be confusing for the jury or disrupt the efficient presentation of evidence during trial. To the contrary, the clear demarcation

---

[3] In its argument at the pretrial conference, Northbrook cited *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999), for the proposition that "[m]any trial judges require that a deposed witness testify live, if available." While the *Dhyne* court opined that the practice of requiring an adversary's corporate officer to testify live did not cause unfair prejudice, and was "at worst harmless error[,]" it nevertheless recognized that the practice was "arguably inconsistent with the language of Rule 32(a)(2)[.]" *Id.* at 990.

10

between Mr. Shareef's 30(b)(6) deposition played on video, and his live testimony in his personal capacity, may aid the jury in distinguishing between the two distinct roles that each portion of testimony serves. As such, the Court concluded that J.G. could present video footage of Mr. Shareef's 30(b)(6) deposition to the jury.

### III. Conclusion

For the foregoing reasons, if Plaintiff succeeds on her TVPRA claim at trial, she will be permitted to seek punitive damages pursuant to 18 U.S.C. § 1595(a). In addition, for the foregoing reasons, Plaintiff was permitted to present video footage of Mr. Shareef's 30(b)(6) deposition to the jury.

**SO ORDERED**, this 9th day of July, 2025.

_____
SARAH E. GERAGHTY
United States District Judge