UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

Case No. 1:20-cv-05233-SEG

J.G.,

      Plaintiff,

v.

NORTHBROOK INDUSTRIES,
INC., d/b/a UNITED INN AND
SUITES,

      Defendant.

**DEFENDANT NORTHBROOK INDUSTRIES, INC.'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
UNDER FEDERAL RULE OF CIVIL PROCEDURE 50 AS TO
LIABILITY OR, ALTERNATIVELY, AS TO PUNITIVE DAMAGES**

Defendant, Northbrook Industries, Inc., renews its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) as to liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, or, alternatively, moves for judgment as a matter of law as to punitive damages, and, in support thereof, states as follows:

## BACKGROUND

This was a tragic case of a minor Plaintiff ("J.G.") who was trafficked at age 16 at the United Inn and Suites located at 4649 Memorial Drive, Decatur, Georgia, during late 2018 and early 2019.  She sued Northbrook Industries, Inc., owner and operator of the United Inn, alleging that hotel staff ignored visible red flags and that Northbrook knowingly benefited financially from the room rentals, participating in a venture it knew or should have known violated the TVPRA.

J.G. asserted both a TVPRA beneficiary claim and a negligence claim under Georgia law.  Northbrook denied liability, maintaining it had no knowledge of trafficking, provided ordinary hotel services, and was not responsible for employees' acts outside the scope of employment.  Discovery revealed approximately $6.8 million in hotel revenue from 2016–2023, partial trespass logs, and police reports identifying the property as a prostitution hotspot in DeKalb County.

On August 16, 2024, the Court denied summary judgment on the TVPRA

1

claim, citing disputes over Northbrook's participation in a venture, knowledge—actual or constructive—of trafficking, and financial benefit. The Court identified four potential bases for liability: repeated rentals despite warning signs, staff assistance with room re-entries, failure to act despite awareness of prostitution, and financial incentives. The Court granted summary judgment on negligence, however, holding that because J.G. was a licensee due to her unlawful purpose, Northbrook's only duty was to avoid willful or wanton injury.

The Court ruled pretrial that punitive damages are available under § 1595(a), relying on *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011). Trial was bifurcated and conducted from July 7–11, 2025. In Phase I, J.G. testified (describing coercion, staff interactions, and red flags), along with three other survivors and law enforcement officers regarding trafficking indicators and the hotel's reputation. Hotel owner Tahir Shareef admitted awareness of prostitution but denied knowledge of minors. Exhibits included police reports, Backpage ads, financials, and hotel photographs. Northbrook's case included testimony from Shareef, employees, security staff, and expert Karim Vellani, who opined that security was adequate. The Court denied Northbrook's motion for judgment as a matter of law. On July 11, 2025, the jury found Northbrook liable under the TVPRA and awarded $10 million in compensatory damages. In Phase II, based on the Phase I record, the jury awarded $30 million in

punitive damages, for a total judgment of $40 million.

Northbrook now seeks relief under Rule 50(b) (renewed JMOL for insufficiency and unavailability of punitive damages). The award is excessive under *BMW v. Gore*, 517 U.S. 559 (1996). The outcome diverges from other Northern District of Georgia rulings granting summary judgment to hotels, e.g., *G.W. v. Northbrook Industries, Inc.*, 739 F. Supp. 3d 1243 (N.D. Ga. 2024), and raises issues under Eleventh Circuit precedent, including *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), and *K.H. v. Riti, Inc.*, 2024 WL 505063 (11th Cir. Feb. 9, 2024).

## **ARGUMENT**

### I. **DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S TVPRA CLAIM**

"Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1192 (11th Cir. 2004). Judgment as a matter of law is warranted where, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in her favor, no reasonable jury could find for the nonmovant. *MidlevelIU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir. 2021).

The TVPRA imposes civil liability on a defendant who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]."  18 U.S.C. § 1595(a).  The Eleventh Circuit has outlined the following elements for TVPRA claims: The defendants "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to the [plaintiff]; and (4) the [defendant] knew or should have known that the venture violated the TVPRA."  *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

Northbrook renews its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).  J.G.'s evidence, even when properly viewed in the light most favorable to her, failed to establish essential elements of her claim under the TVPRA.  The evidence at trial was legally insufficient on the first and second elements, and this is reinforced by Judge Boulee's order in *G.W. v. Northbrook Industries, Inc.*, 739 F. Supp. 3d 1243 (N.D. Ga. 2024), where the court granted *Northbrook* summary judgment in an identical case against *the same defendant* for conduct that occurred *at the same hotel*.

Furthermore, the verdict form here did not require the jury to affirmatively find that each element of the TVPRA claim was satisfied.  [Trial Tr. vol. 5, at 727–28.]  Instead, the jury rendered a general verdict on liability, answering only whether Northbrook was "liable to J.G. under the TVPRA"

(yes/no) and, if yes, the amount of damages. [Trial Tr. vol. 5, at 727–28.] Given the insufficient evidence on whether Northbrook "knowingly benefited" from or "participated in a venture" under *Red Roof Inns*, this reinforces that no reasonable jury could have found for J.G. on all elements based on the trial evidence, warranting judgment as a matter of law. The jury's ability to make only a general finding of liability should be reexamined.

### A. Insufficient Evidence That Northbrook "Knowingly Benefited" from an Alleged Venture

The first element requires proof that Northbrook "knowingly benefited" financially or otherwise from the venture. *Red Roof Inns*, 21 F.4th at 723–24. In other words, the benefit must be from participating in the illegal scheme with knowledge of furthering the scheme. *Id.* at 727.

Here, no witness quantified benefits from Plaintiff's specific room rentals or demonstrated Northbrook charged premiums, accepted bribes, or derived value beyond ordinary hospitality. Financial exhibits were presented in an aggregate amount and were unconnected to trafficking. Shareef did not admit knowingly deriving monetary gains from violations of anti-trafficking laws. Like in *G.W.*, where eleven nights of cash rentals from traffickers did not establish a *knowing* benefit without some sort of evidence of illicit enhancement, 739 F. Supp. 3d at 1247–48, the evidence here fell short.

At the close of J.G.'s case in chief, Northbrook directed the Court's attention to its summary-judgment order where the Court stated that J.G. must show at least some connection between *Northbrook's* conduct and *the traffickers'* actions and was required to identify *what actions* the operator took to advance the alleged illegal scheme.  The Court's pretrial ruling emphasized that "knowing benefit" requires more than incidental revenue, but respectfully, trial evidence, including Shareef's denials and the absence of evidence establishing trafficking-linked profits, failed to meet this standard.

## B.    Insufficient Evidence That Northbrook Participated in a "Venture"

The second element requires a plaintiff to prove the defendant participated in a venture.  *Red Roof Inns*, 21 F.4th at 724.  The Eleventh Circuit interprets this "venture" element to mean "an undertaking or enterprise involving risk and potential profit."  *Id.* at 724–25.  The evidence must be "stronger than just a [hotel] operator renting rooms to a trafficker." *K.H.*, 2024 WL 505063, at *3.

*K.H.* is highly instructive with comparable facts.  In *K.H.*, a 16-year-old runaway was trafficked, abused, and starved in Jonesboro, Georgia, for nearly four years.  *Id.* at *1.  The trafficking involved daily coercion: K.H. was forced to perform sex acts, with the trafficker taking the proceeds and using a portion to book future lodging at the motel.  *Id.*  Payments for rooms were made in cash

for one night at a time, with the trafficker extending the stay before check-out each day. *Id.* This pattern allowed the operation to continue uninterrupted. *Id.* K.H. later sued the owner and manager of the hotel, alleging that he knew or should have known about the trafficking generally and her victimization specifically due to the hotel's operational structure and visible indicators. *Id.* at *2.

The district court dismissed the complaint, finding that K.H. failed to allege participation in a "venture" under *Red Roof Inns*. *K.H.*, 2024 WL 505063, at *2. The court reasoned that mere knowledge of trafficking and continued rentals does not constitute participation. *Id.* "[O]bserving something is not the same as participating in it." *Id.* at *3 (quoting *Red Roof Inns*, 21 F.4th at 727). The Eleventh Circuit affirmed in an unpublished opinion. *Id.* at *4.

Here, in denying summary judgment, this Court distinguished *K.H.*, reasoning that J.G. had "presented evidence from which a jury could find that [Northbrook] did not merely observe signs of sex trafficking *but took part* in a common undertaking involving risk and potential profit." [Doc. 138, at 28–29 (emphasis added).] The Court identified potential bases for a jury to find participation such as J.G.'s evidence of Northbrook employees acting as "lookouts" and Northbrook and the traffickers engaging in "commercial dealings" for profit to the hotel. [Doc. 138, at 19–21.] **However**, after a full

7

trial with all evidence presented.  There was never any evidence presented showing kickbacks, profit-sharing, or active enabling by the United Inn ownership, management, or lower level employees.

For instance, Plaintiff's claim of Northbrook employees acting as "lookouts" by warning about "too much traffic" or "to keep it down," was unsupported at trial.  [Trial Tr. vol. 3, at 347–72.]  J.G.'s only evidence was uncorroborated, speculative, and legally insufficient to support a jury verdict. She testified that staff warned of high visitor traffic and "too much" noise to avoid complaints or being removed from the hotel.  No other testimony or any of J.G.'s exhibits, however, corroborated this allegation.  *Green v. Sch. Bd. of Hillsborough Cnty., Fla.*, 25 F.3d 974, 979 (11th Cir. 1994) (reversing a finding of intentional discrimination when the "only shred of direct evidence . . . is [plaintiff's] own uncorroborated testimony").  Other survivors lacked corroboration and law enforcement found no facilitation.  Shareef characterized these warnings as routine policy, not complicity.  No police reports, Backpage ads, or logs confirmed any "lookout" behavior, coordination, or undertaking.  On cross-examination, J.G. admitted no third-party witnesses or documents supported her claim; it was her "perception."  [Trial Tr. vol. 3, at 416.]  This testimony, too, is insufficient as a matter of law.  *See Palmeri v. Live Nation Utours (USA), Inc.*, 2011 WL 13274223, at *4 (N.D. Ga. Mar. 8, 2011) (finding testimony based on one's "impression" is "too speculative").

8

J.G.'s side of the facts simply was too speculative as a matter of law to prove a TVPRA claim.

Regarding ongoing rentals and the allegations of a "commercial dealing" with the hotel, J.G. presented only evidence of cash payments and short stays. [Trial Tr. vol. 3, at 347–72.] There was no testimony or evidence of a pattern exceeding something of a *routine* stay. *See K.H.*, 2024 WL 505063, at *3. Staff assistance was *routine* customer service, not active enabling. *See id.*

This Court, respectfully, should reconsider its interpretation of *K.H.* In *K.H.*, the Eleventh Circuit noted how similar allegations were legally insufficient, particularly compared to *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017). The Eleventh Circuit wrote: " [T]he motel operator and the trafficker "exchang[ed] high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which [the trafficker's] coercive and abusive treatment of [plaintiff] as a sex slave had become apparent to [the operator]." *K.H.*, 2024 WL 505063, at *3 (alterations in original). No similar conduct by the owner was identified in this case.

Judgment for Northbrook as a matter of law would align with *G.W. v. Northbrook Industries, Inc.*, 739 F. Supp. 3d 1243 (N.D. Ga. 2024). The issue of the hotel's "hotspot" status for prostitution (based on police reports, online reviews, and so-called "red flags" like cash payments, discarded condoms, and frequent visitors) was central in both cases. Yet Judge Boulee concluded, *based*

9

*on identical facts*, that Northbrook did not 'participate in a venture' within the meaning of § 1595. *G.W.*, 739 F. Supp. 3d at 1254. While *G.W.* granted summary judgment in favor of Northbrook, this case proceeded to a jury trial, where the jury awarded $40 million. These inconsistent rulings are legally untenable, and, respectfully, this Court should revisit this issue and enter judgment for Northbrook.

## II. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO PUNITIVE DAMAGES

Next, Northbrook moves for judgment as a matter of law as to the punitive damages awarded by the jury. There are two bases: First, the Court misinterpreted the TVPRA in finding that the statute allows for a plaintiff to seek punitive damages. Second, the amount of punitive damages awarded by the jury is unconstitutionally excessive as a matter of law and should be vacated. Each issue is discussed in turn.

### A. The TVPRA Does Not Provide for an Award of Punitive Damages

The damages provision in the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter . . . may recover damages and reasonable attorneys' fees." 18 U.S.C. § 1595(a). Interpreting this provision as "silent with respect to punitive damages" the Court opined that the TVPRA "does not clarify which types of damages a plaintiff may seek." [Doc. 218, at 2–7.] The Court engaged in extensive statutory construction and ultimately

10

ruled that "damages" as used in the TVPRA included *punitive* damages, and the Court permitted J.G. to seek punitive damages against Northbrook. [Doc. 218, at 2–7.] Northbrook contends the Court's ruling is inconsistent with the plain language of the TVPRA, and the structure and context of the TVPRA.

### 1. The Plain Language of the TVPRA Does Not Provide for an Award of Punitive Damages

On issues of statutory interpretation, the Court must "start, as always, with the language of the statute," *Williams v. Taylor*, 529 U.S. 420, 431 (2000), because the best indication of Congress's intent is the "text of the language of the statute itself," *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998). In reading statutes, the Supreme Court has instructed lower courts to read words in "their ordinary meaning at the time Congress enacted the statute." *Wisc. Cent. Ltd. v. United States*, 585 U.S. 274, 278 (2018).

Respectfully, the Court should reevaluate the availability of punitive damages in light of the plain language of the TVPRA. The statute *does* "clarify which types of damages a plaintiff may seek" because the ordinary term "damages," when used without a preceding adjective or modifier, historically meant only *compensatory* damages. *See Nationwide Mut. Ins. Co. v. Knight*, 237 S.E.2d 341, 345 (N.C. Ct. App. 1977) (interpreting the generic term "damages" not to include *punitive damages*, even recognizing "[t]he commonly accepted definition of the term 'damages' does not include punitive damages").

11

Undefined terms in a statute are defined with their plain and ordinary meaning "at the time Congress enacted" the law. *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 492 (2005). When Congress passed the TVPRA, the generic term "damages" was defined as "[m]oney . . . as compensation for loss or injury" or "the sum of money which a person wronged is entitled to receive from the wrongdoer as compensation for the wrong." *Damages*, *Black's Law Dictionary* (7th ed. 1999). Under either definition of the term in 2003, damages were intended to (1) *compensate* (2) *the person wronged by the conduct of the wrongdoer*. *See id.* *Punitive* damages, on the other hand, "are not intended to make the plaintiff whole again." *Hoover v. Marks*, 993 F.3d 1353, 1359 (11th Cir. 2021). They are "aimed *not* at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008) (emphasis added). In other words, punitive damages are "intended to punish and thereby deter blameworthy conduct." *Punitive Damages*, *Black's Law Dictionary* (7th ed. 1999). Rather than (1) *compensating* (2) *the person wronged by the conduct of the wrongdoer*, punitive damages (1) *punish* (2) *the wrongdoer*. *See id.*

Courts must assume Congress "says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). When Congress intends to provide for punitive damages under a specific statute, it does so with express language. For instance, it used

express language in the Foreign Sovereign Immunities Act. *See* 28 U.S.C. § 1605A(c) ("[D]amages may include economic damages, solatium, pain and suffering, and punitive damages."); *Opati v. Republic of Sudan*, 590 U.S. 418, 427 (2020) ("Congress was as clear as it could have been when it authorized plaintiffs to seek and win punitive damages for past conduct using § 1065A(c)'s new federal cause of action."). And in the Wiretap Act. *See* 18 U.S.C. § 2520(b)(2) ("In an action under this section, appropriate relief includes . . . damages under subsection (c) and punitive damages in appropriate cases . . . ."). It did in the Child Protection and Obscenity Enforcement Act. *See* 18 U.S.C. § 2252A(f)(2)(B) ("In any action commenced in accordance with paragraph (1), the court may award appropriate relief, including . . . compensatory and punitive damages."). And in the Stored Communications Act ("SCA"). *See* 18 U.S.C. § 2707(c). In fact, in the SCA, it used the generic term "damages" and then, later, clarified that additional conduct could trigger the assessment of punitive damages. *Id.*

These are but four examples of Congress's intent to specifically and unequivocally *include* punitive damages in a statute when it intends to make such damages available. And "where Congress knows how to say something but chooses not to, its silence is controlling." *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1209 (11th Cir. 2009). The Supreme Court has been even more direct: Silence in a statute is to be

construed "as exactly that: silence." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). Thus, the most logical interpretation of Congress's use of the broad term "damages" does not include *punitive* damages.

Furthermore, courts are guided by the interpretive canon of *expressio unius est exclusio alterius* — "the mention of one thing implies the exclusion of another." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1192–93 (11th Cir. 2011). Notably, Congress expressly included attorney's fees in the TVPRA. *See* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter . . . may recover damages and reasonable attorneys' fees."). Attorney's fees are not a traditional remedy; they must be provided for by statute or contract. *E.g., Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). Thus, the express *inclusion* of attorney's fees under the TVPRA demonstrates that Congress intended *only* those as nontraditional remedies.

Because Congress used only "damages" in the TVPRA, by its plain language, it provides for only "damages" in their ordinary sense. Thus, the TVPRA does *not* allow for punitive damages.

### 2. The Court Should Strictly Construe the TVPRA

Respectfully, the Court should apply the plain language of the TVPRA rather than rely on cases such as *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), or *Bell v. Hood*, 327 U.S. 678, 687 (1946).

14

*Franklin* and *Bell* are inapposite. In *Franklin*, the Supreme Court noted that "[f]rom the earliest years of the Republic, the Court has recognized the power of the Judiciary to award appropriate remedies to redress injuries actionable in federal court." 503 U.S. at 66. However, *Franklin* assessed redressability under a statute and, because the Supreme Court found the statute created an implied private cause of action, it "presume[d] the availability of *all appropriate remedies* unless Congress has expressly indicated otherwise." *Id.* (emphasis added). In other words, since the statute creates a cause of action and the statute is silent on the remedies available, courts have the inherent power to award "all appropriate remedies." *Id.*

*Franklin* did not address *which subsets* of damages were available under the statute. Neither did *Bell*. *See* 327 U.S. at 684 ("[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, *federal courts may use any available remedy* to make good the wrong done." (emphasis added)). The question was far broader: *which remedies* were available. *Franklin*, 503 U.S. at 70–71. The question was whether the statute provided for damages *at all*. *Id.* Unlike *Franklin*, where Title IX's implied right required judicial crafting of remedies, the TVPRA explicitly provides for "damages and reasonable attorneys fees," limiting courts to interpreting only that express remedy. This Court's reliance on *Franklin* improperly expanded § 1595 beyond its text.

15

Unlike *Franklin*, Congress's policy determination of *whether* to provide damages under the TVPRA is clear and unequivocal. Nevertheless, the Court misapprehended *Franklin* and misinterpreted its inherent power to determine the "appropriate remedies" under the TVPRA. This was improper, and the Court should now revisit this issue.

The Court, in its own words, noted that this analysis applies "[w]here a federal statute *does not specify the availability of damages*." [Doc. 218, at 2 (emphasis added).] Then, the Court relied on *Barnes v. Gorman*, 536 U.S. 181 (2002), for support. In *Barnes*, the Supreme Court held that punitive damages were not available under Title VI of the Civil Rights Act, the Americans with Disabilities Act, or § 504 of the Rehabilitation Act because they are contractual in nature under the Spending Clause. 536 U.S. at 186. The Supreme Court reasoned that the policy goal of such statutes was ensuring compliance with Congress's funding conditions, not punishing egregious conduct. *Id.* at 189–90. Finding punitive damages, in the absence of express language, would overstep this goal, disrupting federal-state funding relationships. *Id.*

The Court likened *Barnes* by distinguishing it. The Court reasoned that the TVPRA aims to punish traffickers and deter trafficking, a tort policy that differs from *Barnes*'s regulatory focus. [Doc. 218, at 4–7.] Respectfully, this was flawed. While the TVPRA's criminal provisions target traffickers, the civil-beneficiary claim under § 1595 extends to third parties like Northbrook,

16

and allowing punitive damages would exceed the statutory purpose of victim compensation.  The evidence presented at trial, which shows passive inaction at worst, not malice or intentional conduct, does not support punitive damages, even under a tort framework.  The tort analogy to *Barnes* overlooks the fact that Northbrook was not a trafficker.

> **3.    This Court Should Apply the Dissenting Opinion in *Ditullio* Which Emphasized Strict Application of the TVPRA**

Only one published opinion, from the Ninth Circuit Court of Appeals, has recognized the availability of punitive damages under the TVPRA.[1]    *See Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).   Northbrook respectfully contends, however, that the majority in *Ditullio* went beyond the plain statutory language, and this Court is not bound by the decision.  *See Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985) ("[A]uthority from one circuit of the United States Court of Appeals is not binding upon another circuit.");

*Hialeah, Inc. v. Fla. Horsemen's Benevolent & Protective Assn, Inc.*, 899 F.

---

[1] The Tenth Circuit did analyze this question in *Francisco v. Susano*, 525 F. App'x 828 (10th Cir. 2013).  However, while opinions from another circuit are not binding on this Court, *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985), *unpublished opinions* from another circuit are *even less* persuasive, *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004). They "have no precedential value," *Va. Props., Inc. v. Home Ins. Co.*, 74 F.3d 1131, 1132 n.2 (11th Cir. 1996); "they bind no one," *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016); *see also* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent . . . .").

Supp. 616, 623 (S.D. Fla. 1995) ("A decision of a sister circuit court of appeals is not binding precedent on a district court in another circuit, but is merely persuasive authority."). Rather, the dissenting opinion in *Ditullio* is more faithful to Congress's intent and interprets the TVPRA with fidelity to its plain language. This Court should apply the dissent.

As Judge Callahan wrote in her dissent in *Ditullio*, "It may be desirable to authorize the recovery of punitive damages under § 1595, but Congress has yet to do so, and we are not empowered to do so for Congress." 662 F.3d at 1102 (Callahan, J., dissenting). This echoes the Chief Justice in *National Federation of Independent Businesses v. Sebelius*, 567 U.S. 519 (2012), where he wrote: "Members of this Court are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments. Those decisions are entrusted to our Nation's elected leaders, who can be thrown out of office if the people disagree with them." *Id.* at 538.

Judge Callahan's dissent further recognizes that the TVPRA's "damages" term is limited to compensation by its plain meaning and structure, applying *expressio unius est exclusio alterius* to exclude punitive damages given the explicit inclusion of attorneys' fees. *Id.* at 1101. She distinguishes *Franklin*, noting § 1595's express remedies limit judicial expansion, and warns against importing common-law punitive damages for a novel statutory right absent clear Legislative intent. *Id.* This Court's adoption of *Ditullio*'s majority

18

overlooked these textual constraints.  Accordingly, Northbrook respectfully requests the Court to reevaluate this issue and enter judgment for Northbrook as a matter of law on the punitive damages claim.

**B.    The  \$30  Million  Punitive  Damages  Award  Is Unconstitutionally Excessive as a Matter of Law and Should Be Vacated**

Alternatively, and independent of the availability of punitive damages under the TVPRA, the jury's award of \$30 million in punitive damages is unconstitutional as a matter of law, violative of the due-process clause of the Fifth Amendment, and this Court should vacate it.

First, a point of clarification: Northbrook does not seek a "remittitur," but rather a ruling from the Court that the jury award of \$30 million is unconstitutional as a matter of law.  As the Eleventh Circuit explained in *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir. 1999):

> A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages.  The court orders a remittitur when it believes the jury's award is *unreasonable* on the facts.  A constitutional reduction, on the other hand, is a determination that the law does not permit the award.  Unlike a remittitur, which is discretionary with the court and which we review for an abuse of discretion, a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.

*Id.* (internal citations omitted) (emphasis in original).  Thus, "[a] constitutionally reduced verdict . . . is really not a remittitur at all."  *Id.* at 1331.  While the Seventh Amendment generally prohibits a federal court from

19

reducing the amount of damages awarded by a jury, *id.* at 1328 (citing *Kennon v. Gilmer*, 131 U.S. 22, 29 (1889)), the due-process clause protects a defendant's right not to face a "grossly excessive" amount of damages, even as a punishment, *id.* (citing *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 454 (1993)). Therefore, "a court proceeds under Rule 50, not Rule 59, in the entry of judgment for a constitutionally reduced award and the Seventh Amendment is not implicated in this legal exercise." *Id.* at 1331.

In *BMW of North America v. Gore*, 517 U.S. 559 (1996), the Supreme Court established the required analysis to be undertaken to determine the constitutionality of the amount of punitive damages awarded to a plaintiff. First, the tortious conduct must have occurred in a single state. *Id.* at 575. It must also "reflect a legitimate state interest in punishing and deterring that conduct." *Johansen*, 170 F.3d at 1333 (citing *BMW*, 517 U.S. at 575). The Supreme Court further recognized that the Constitution demands that "the defendant had fair notice that its conduct could result in punitive damages and in the severity of the potential damages." *Johansen*, 170 F.3d at 1333 (citing *BMW*, 517 U.S. at 575). The Supreme Court established three "guideposts" for determining whether an award exceeds "the upper limit" permitted by the Constitution and whether the defendant had such fair notice:

> (1) the degree of reprehensibility of the defendant's conduct;

(2) the ratio of punitive damages to the actual harm inflicted on plaintiffs; and

(3) the comparison between punitive damages and potential civil or criminal penalties for defendant's conduct.

*Id.* (citing *BMW*, 517 U.S. at 575).

Northbrook does not challenge the notion that the conduct at issue occurred only in Georgia, nor does it challenge the notion that Georgia has a strong and legitimate interest in "punishing and deterring" trafficking of minors. Northbrook cannot be any clearer: The criminal activity by the actual tortfeasors in this case is abhorrent and in no way does Northbrook condone or attempt to justify it. However, as a third-party hotel operator, *not the trafficker*, Northbrook's conduct lacks the egregiousness to justify the $30 million award, and it thus violates its due process.

### 1. Degree of Reprehensibility

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW*, 517 U.S. at 575. Certainly, "the crime of forced labor and trafficking is particularly depraved." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 27 (D.D.C. 2013).

*BMW* identifies factors for reprehensibility: physical vs. economic harm, indifference to health/safety, targeting vulnerable victims, repeated conduct, and malice/deceit. 517 U.S. at 575–76. Here, no evidence shows any physical

harm caused *by Northbrook*; J.G.'s harm came from her trafficker. Nor is there any evidence of *Northbrook* deliberately targeting J.G. There is no evidence of any malice or deceit *by Northbrook*. Trial testimony from J.G. [Trial Tr. vol. 3 at 300–416] and survivors alleged only passive red flags (cash payments, traffic), not *active facilitation*. Shareef denied knowledge of minors [Trial Tr. vol. 2 at 98–205], and no evidence showed intentional indifference beyond routine operations. At most, Northbrook's failure to act on red flags reflects negligence, not the "particularly depraved" conduct of traffickers. This supports a *low* reprehensibility finding for the first factor.

### 2. Ratio of Punitive Damages to Actual Harm

The second guidepost examines the ratio of punitive damages to compensatory damages, reflecting the actual harm to the plaintiff. *BMW*, 517 U.S. at 580–81. The $30 million punitive-damages award, compared to $10 million compensatory damages, yields a 3:1 ratio. While single-digit ratios are generally permissible, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003), this 3:1 ratio is unconstitutionally excessive given Northbrook's low reprehensibility as the *non-trafficker*.

There is no mathematical formula or bright-line test. But, here, J.G.'s $10 million compensatory damages award already fully compensates her severe harm. A three-times' award of punitive damages against Northbrook serves no purpose and violates its due process. Northbrook's role was passive,

at worst, and a $30 million punishment is unsupported by the trial evidence, which does not support egregious intent.

### 3.   Sanctions for Comparable Misconduct

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *BMW*, 517 U.S. at 583.  The TVPRA's criminal penalties under 18 U.S.C. § 1591 impose fines from $250,000 to $500,000 or imprisonment for actual traffickers.  *See* 18 U.S.C. § 3571(b), (c).  Georgia law caps punitive damages at $250,000 absent specific intent.  O.C.G.A. § 51-12-5.1(g).  Finally, jury awards cannot be "so flagrantly excessive . . . in light of the evidence" such that the amount is "a clear implication of bias, prejudice, or gross mistake on part of the jurors."  *Lang v. Sig Sauer, Inc.*, 766 F. Supp. 3d 1217, 1241 (N.D. Ga. 2025).

Even in *Carazani*, where the defendant was *the trafficker*, not a third-party purveyor or enabler, the District of Columbia awarded $543,041.28 in punitive damages.  972 F. Supp. 2d at 26–27.  That is in line with the fines assessed under 18 U.S.C. § 1591 and nearly 60 times lower than the punitive damages awarded here.  This disparity highlights the excessiveness of the $30 million awarded by the jury.

Northbrook was *not* a trafficker, and such a severe penalty violates Northbrook's due process.  The $30 million award grossly exceeds sanctions for

23

comparable criminal conduct, requiring this Court to vacate the award under Rule 50.

**WHEREFORE**, Defendant Northbrook Industries, Inc. respectfully requests the Court to grant Defendant's Renewed Motion for Judgment as a Matter of Law as to Plaintiff's TVPRA Claim, to vacate the Final Judgment, and to enter judgment in favor of Defendant.

Alternatively, Defendant Northbrook Industries, Inc. respectfully requests the Court to grant Defendant's Motion for Judgment as a Matter of Law as to Punitive Damages: (1) vacating the punitive damages award and finding that the TVPRA does not provide for punitive damages, or (2) vacating the punitive damages award and finding that the $30 million punitive damages award is unconstitutionally excessive and violates Defendant's due-process rights.

Respectfully submitted,

<table>
<tr><td>

*/s/* Dana M. Richens
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia 30309
Telephone: (404) 815-3659
Facsimile: (404) 685-6959
drichens@sgrlaw.com
*Attorney for Defendant Northbrook Industries, Inc., d/b/a United Inn and Suites*

</td><td>

*/s/* Jack R. Reiter
Jack R. Reiter
Florida Bar No. 0028304
GRAYROBINSON, P.A.
333 SE Second Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
jack.reiter@gray-robinson.com
*Admitted Pro Hac Vice*

</td></tr>
</table>

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)</u>

I hereby certify that the foregoing **DEFENDANT NORTHBROOK INDUSTRIES, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50 AS TO LIABILITY OR, ALTERNATIVELY, AS TO PUNITIVE DAMAGES** has been prepared with a typeface and point selection approved by the Court in LR 5.1, NDGA.  Specifically, the above-mentioned pleading was prepared using Century Schoolbook typeface in 13-point font size.

<u>/s/ Jack R. Reiter</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date filed the within and foregoing **DEFENDANT NORTHBROOK INDUSTRIES, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50 AS TO LIABILITY OR, ALTERNATIVELY, AS TO PUNITIVE DAMAGES** using the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 27th day of August 2025.

<u>/s/ Jack R. Reiter</u>