## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **J.G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs.** | : | |
| | : | **NO. 1:20-cv-05233-SEG** |
| **NORTHBROOK INDUSTRIES,** | : | |
| **INC., D/B/A UNITED INN AND** | : | |
| **SUITES,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S SUPPLEMENTAL MOTION PURSUANT TO LR54.2, NDGa FOR ATTORNEY'S FEES AND EXPENSES

Under LR54.2, NDGa and Federal Rule of Civil Procedure 54, Plaintiff hereby supplements her August 14, 2025, motion for reasonable attorney's fees and non-taxable expenses. (Doc. 240). Through this supplemental motion, Plaintiff provides the "detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation" required by LR54.2(A)(3). In particular, Plaintiff provides:

- Fees and expenses charts from Plaintiff's counsel at Finch McCranie, LLP and Andersen, Tate & Carr, P.C. (Exs. A-4 – A-5 and B-4 – B-5)

- Affidavits from Plaintiff's attorneys (David Bouchard and Oto Ekpo at Finch McCranie, LLP, and Pat McDonough, Jon Tonge, and Rory Weeks at Andersen, Tate & Carr, P.C.), as well as affidavits from firm paralegals,

1

who participated in the preparation of the same fees and expenses charts. (Exs. A-1 – A-3 and B-1 – B-3)

- Declaration from Tianna S. Mykkeltvedt, a partner at Bondurant Mixon & Elmore, LLP, who is an expert in commercial litigation and sex trafficking litigation, and who provides her expert opinion regarding the reasonableness of Plaintiff's lodestar calculation, including the reasonableness of the hours recorded, the reasonableness of the hourly rate proposed in Plaintiff's fees charts, and the reasonableness of Plaintiff's expenses. (Ex. C)

Based on the foregoing, as well as the legal authority discussed below, Plaintiff hereby supplements her motion under LR54.2, NDGa and Federal Rule of Civil Procedure 54 for reasonable attorney's fees and non-taxable expenses.

## **LEGAL AUTHORITY**

Plaintiff is entitled to recover reasonable attorney's fees and expenses under 18 U.S.C. § 1595(a), a fee-shifting statute, because she prevailed at trial. With this supplemental motion, Plaintiff provides reliable evidence to establish that her lodestar calculation is the product of a reasonable hourly rate multiplied by a reasonable number of hours. Further, Plaintiff shows that her requested expenses are reasonable. Because Plaintiff meets her burden to show entitlement to the requested fees and expenses, she requests that the Court grant her motion.

I.      **18 U.S.C. § 1595(a) is a Fee-Shifting Statute that Permits the Prevailing Party to Recover "Reasonable Attorney's Fees."**

18 U.S.C. § 1595(a) is a fee-shifting statute that permits the award of "reasonable attorneys fees" to sex trafficking victims who prevail at trial.

Under the traditional "American Rule," each party to a litigation is responsible for its own attorney's fees. *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Circ. 2019). There are three exceptions to that traditional rule: "(1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith." *Id.* "These exceptions—when one party pays for the other's attorney's fees—describe fee-shifting cases." *Id.*

The first "exception" applies here—*i.e.*, § 1595(a) "grants [the] [C]ourt the authority to direct the losing party to pay attorney's fees." It says, in full:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Thus, if a sex trafficking victim proves—and a jury finds—that a defendant sued for violation of § 1595(a) did, in fact, violate § 1595(a), then that victim "may recover damages and reasonable attorneys fees." Conversely, if the victim does

3

not prove a defendant's liability, then the victim is not entitled to recover damages and fees.

Because J.G. prevailed at trial in her § 1595(a) claim against Defendant, Plaintiff "may recover… reasonable attorneys fees," which means the Court has "authority to direct the losing party to pay attorney's fees."

## II. The Lodestar Method is Used to Calculate Reasonable Attorney's Fees for the Prevailing Party in a 18 U.S.C. § 1595(a) Case.

Under federal fee-shifting statutes like § 1595(a), attorney's fees are calculated using the lodestar method. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence."). With the "lodestar method, courts determine attorney's fees based on the product of the reasonable hours spent on the case and a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The product is known as the lodestar." *In re Home Depot Inc.*, 931 F.3d at 1076.

The fee applicant "bears the burden of establishing entitlement" to the requested fees. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (1988). To meet that burden, the applicant must present reliable evidence as to the two elements of the lodestar calculation, namely, hours and hourly rates.

a. **Hours.**

As to hours, Plaintiff must submit "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* at 1303. "A well-prepared fee petition" includes "a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.*

Evidence of hours worked must be reliable. While such evidence may come in the form of contemporaneous attorney time records, contemporaneous time records are ***not*** required to support a fee petition. *See Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983), *holding modified by Gaines v. Dougherty Cnty. Bd. of Educ.*, 775 F.2d 1565 (11th Cir. 1985); *see also Jean v. Nelson*, 863 F.2d 759 (11th Cir. 1988).

In *Johnson*, the plaintiff's attorneys in a successful Title VII civil rights case appealed the district court's decision to "cut the [attorney's logged] hours by one-third for failure to maintain contemporaneous records." 706 F.2d at 1207. The Eleventh Circuit reversed, and found, "[t]he district court did not have to accept [the attorney's] claim of 100 hours as true, just as it would not have had to do so if the assertion had been supported by contemporaneous billing records." *Id.* "The lack of contemporaneous records [did] not justify an automatic

reduction in the hours claimed." *Id.* (citing *Harkless v. Sweeny Independent School District*, 608 F.2d 594, 597 (5th Cir.1979) (affirming award despite absence of time records)).  The *Johnson* Court focused on the reliability of the evidence submitted to support the hours requested—*not* the absence of contemporaneous time records. Because "[the attorney's] testimony and secondary documentation support[ed] her claim" for fees, it did not matter that she did not provide "contemporaneous billing records." *Id.*

Similarly, in *Jean* the Eleventh Circuit rejected the government's challenge to the district court's reliance on "'reconstructed' time records" to award attorney's fees under the Equal Access to Justice Act. *Jean*, 863 F.2d at 772. The Court emphasized that unlike some other circuits, "[o]ur court … has held that contemporaneous time records are ***not*** indispensable where there is other reliable evidence to support a claim for attorney's fees." *Id.* (citing *Johnson v. University College*, 706 F.2d 1205, 1207 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983) (emphasis added)). The government's categorical objection to "reconstructed time records" fell short because it "pointed to no particular fee record considered by the district court which was so unreliable as to require that the district court reject it as a basis for part of the award." *Id.*  Because the district court based its findings on reliable evidence—

6

at least in part "reconstructed time records"—the Court held that the district court did not abuse its discretion in its fee award.

The hours covered in a fee petition must cover "compensable activities," which span a broad gamut, including "pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorneys' fees." *Webster Greenthumb Co. v. Fulton Cnty., Ga.*, 112 F. Supp. 2d 1339, 1350 (N.D. Ga. 2000) (Thrash, J.); *City of Riverside v. Rivera,* 477 U.S. 561, 573 n. 6, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (allowing compensation for productive attorney discussions and strategy conferences); *Webb v. Board of Ed.,* 471 U.S. 234, 243, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (allowing compensation for pre-litigation services in preparation of suit); *Cruz v. Hauck,* 762 F.2d 1230, 1233-34 (5th Cir.1985) (allowing compensation for preparing and litigating fee request); *Adams v. Mathis,* 752 F.2d 553, 554 (11th Cir.1985) (holding that measures to enforce judgment are compensable); *New York State Assoc. for Retarded Children v. Carey,* 711 F.2d 1136, 1146 & n. 5 (2d Cir.1983) (allowing compensation for background research and reading in complex cases); *Brewster v. Dukakis,* 544 F.Supp. 1069, 1079 (D.Mass.1982) (compensating for

negotiation sessions), *aff'd as modified,* 786 F.2d 16, 21 (1st Cir.1986); *In re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1296, 1321, 1348 (E.D.N.Y.1985) (compensating routine activities such as telephone calls or reading mail that contribute to the litigation); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir.1983) ("All reasonable expenses and hours incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988.").

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. But work performed by multiple attorneys is *not* subject to reduction where the attorneys were not unreasonably doing the same work. *Jones v. Central Soya Co.*, 748 F.2d 586, 594 (11th Cir.1984); *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir.1983).

### b.  <u>Hourly rate.</u>

Plaintiff also "bears the burden of producing satisfactory evidence that the requested [hourly] rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299. "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.*

To meet her burden, Plaintiff must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 n.11 (1984). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Norman*, 836 F.2d at 1299. "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id*.

In complex federal litigation, the Court may also consider recognized attorney's fee matrices, like the *Laffey* Matrix, in its evaluation of hourly rates.[1] *See, e.g., Eley v. D.C.*, 793 F.3d 97, 100 (D.C. Cir. 2015) ("We allow a fee applicant to submit attorneys' fee matrices as one type of evidence that provide a useful starting point in calculating the prevailing market rate… The most

---

[1] The *Laffey* matrix is attached as Exhibit D. In *DL v. D.C.*, 924 F.3d 585 (D.C. Cir. 2019), the D.C. Circuit provided an overview of the history of the *Laffey* matrix and how it is updated to remain current for D.C.-area lawyers handling complex federal litigation. While this complex federal litigation does not involve D.C.-area lawyers, the matrix nonetheless provides a helpful point of comparison for the hourly rates used by Plaintiff's Atlanta-based lawyers.

commonly used fee matrix is the '*Laffey* Matrix'—the schedule of prevailing rates compiled in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 371 (D.D.C.1983)") (cleaned up); *Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995) ("[P]laintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community.") (cleaned up); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 416 (3d Cir. 2013) ("We thus affirm the District Court's use of the LSI-updated *Laffey* Matrix to determine the prevailing rates in the Washington, D.C. market.") (cleaned up).

Finally, in evaluating the reasonableness of a proposed hourly rate, the Court *may* consider a list of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974), *abrogated on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).[2] To be clear, the Supreme Court has critiqued the *Johnson* factors as "redundant to the lodestar analysis because they are almost always subsumed in

---

[2] The twelve *Johnson* factors are as follows: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases. *Johnson,* 488 F.2d at 717-19

the lodestar." *In re Home Depot*, 931 F.3d at 1090 (the "reasonable hourly rate" portion of the lodestar analysis already considers the "prevailing market rate" for "lawyers of reasonably comparable skills, experience, and reputation," so the *Johnson* factors may be redundant). For that reason, district courts are not required to "slog through" the factors. *Id.* at 1091. If this Court were to consider the *Johnson* factors, it would only be appropriate to do so "to determine if the proposed rate accurately reflects the true worth of counsel." *Id.* (citing *Norman*, 836 F.2d at 1299–1300).

III.  **Plaintiff Has Met Her Burden and Provided Reliable Evidence that Her Lodestar Calculation is the Product of Reasonable Hours and Reasonable Hourly Rates.**

Plaintiff has carried her burden and produced reliable evidence in her fee charts, her counsel's affidavits, and Ms. Mykkeltvedt's declaration to establish that her lodestar calculation is the product of reasonable and conservative hours and hourly rates.

a.  **Hours.**

Plaintiff has presented reliable attorney fee charts "show[ing] the time spent" litigating this action over five years (to date) and setting out the "general subject matter of the time expenditures [] with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Plaintiff's fee petition is "well-prepared," because it "include[s] a

summary, grouping the time entries by the nature of the activity or stage of the case." *Id.*; *see* Ex. A-4 and B-4 (Finch McCranie and Andersen, Tate, & Carr fee charts grouping summary time entries by the nature of the activity or stage of the case).

Further, the affidavits submitted by Plaintiff's attorneys David Bouchard, Oto Ekpo, Pat McDonough, Jon Tonge, and Rory Weeks (Exs. A-1 – A-2 and B-1 – B-3), as well as the affidavits submitted by their paralegals (Ex. A-3), explain in detail the reliable methodology they followed to reconstruct the hours they worked on the case. As attested in the affidavits, the attorneys and the paralegals reconstructed their respective time working on the case by reviewing available contemporaneous hourly records, expense records, emails, pleadings, discovery materials, case files, and calendar entries, among other materials. *C.f. Johnson*, 706 F.2d at 1207 (11th Cir. 1983) (reversing district court's "automatic reduction" of attorney's fees claim for lack of contemporaneous attorney time records, because attorney's reliance on "diary entries and work product found in her files" to reconstruct her time adequately "support[ed] her claim" for fees).[3]

---

[3] Attorneys Bouchard, Ekpo, McDonough, Tonge, and Weeks—all of whom have extensive experience representing survivors in federal court TVPRA litigation— attested in their affidavits that it is *not* usual or customary for Plaintiff's lawyers representing trafficking survivors to maintain contemporaneous time records. (Exs. A-1 – A-2 and B-1 – B-3). In the vast majority of trafficking cases, preparing contemporaneous time records would serve no function for Plaintiff's lawyers representing survivors on contingency, and would only distract them

As lead counsel for Plaintiff, Mr. Bouchard attests in his affidavit that the hours listed in the attorney's fees chart submitted by Finch McCranie are reasonable, conservative, and underinclusive for at least seven reasons:

- *First*, the only hours recorded in the Finch McCranie fees chart from pre-suit investigation in 2020 through September 10, 2024 (when Oto Ekpo filed her notice of appearance) are David Bouchard's. The only hours recorded in the Finch McCranie fees chart at any point in time are for Finch McCranie lawyers who appeared at trial (David Bouchard and Oto Ekpo). The Firm's fee chart does not include any time from other Firm partners who were intimately involved in numerous conversations relating to discovery strategy, settlement strategy, declaratory judgment strategy, and trial strategy over the course of the five-year litigation (100+ hours).

- *Second*, the fees chart does not include extensive time (100+ hours) spent by a former Finch McCranie associate (former federal law clerk), because that clerk is now employed by a new firm and did not record their time before departing.

---

from assisting their clients with substantive legal needs. It is also not required under Georgia or federal law. *See, e.g., Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 94, 885 S.E.2d 671, 708 (2023) (Georgia law does not require contemporaneous time records); *see also Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983), *holding modified by Gaines v. Dougherty Cnty. Bd. of Educ.*, 775 F.2d 1565 (11th Cir. 1985) (federal law does not require contemporaneous time records)

- *Third*, the fees chart does not include time spent researching and drafting the instant motion for attorneys' fees, preparing the 40+ page fee chart, coordinating with co-counsel on their fee chart, preparing affidavits, coordinating with co-counsel on preparation of their affidavits, and engaging expert T. Mykkeltvedt (40+ hours in total).

- *Fourth*, the fees chart only uses a .1 multiplier for emails, even though there is extensive email correspondence in the case for which .1 is dramatically underinclusive.

- *Fifth*, the fees chart does not include time devoted to trial-prep work (including focus group exercises, witness prep sessions, deposition review, document review, etc.) that was duplicated following the re-scheduling of the trial from April 2025 to July 2025.

- *Sixth*, the fees chart does not include telephone conferences with opposing counsel during the five-year pendency of the litigation (20+ hours).

- *Seventh*, the fees chart does not include time spent by summer law clerks over multiple summers with the case pending for five years (100+ hours).[4]

---

[4] Mr. McDonough attests that the attorney's fees chart submitted by Andersen, Tate, & Carr is reasonable, conservative, and underinclusive for many of the same reasons, including that it omits associate-level time, even though associates worked on this case at various points over the five year litigation, and omits any time associated with preparation of the instant motion and the supporting materials.

Additionally, Plaintiff's fee charts record "compensable activities," such as "pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorneys' fees." *Webster*, 112 F. Supp. 2d at 1350 (collecting cases); *see also Dowdell*, 698 F.2d at 1192 ("All reasonable expenses and hours incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988.")

Plaintiff has also carried her burden to show that the fee charts do not include unreasonable duplication. The Eleventh Circuit has "recognized that the retention of multiple counsel in complex cases is understandable and not a ground for reducing the hours claimed because the use in involved litigation of a team of attorneys who divide up the work is common for both plaintiff and defense work." *Jean*, 863 F.2d at 772–73. Reducing a fee for duplication of effort is proper "only if the attorneys are *unreasonably* doing the *same* work." *Johnson,* 706 F.2d at 1208 (emphasis added). That does not apply here, because this is a "complex" and "involved litigation" matter where engagement of multiple lawyers is "understandable" and necessary. *Jean*, 863 F.2d at 772–73. Further,

Plaintiff's attorney's affidavits attest that they have made a good-faith effort to eliminate unreasonable duplication of work in their fee charts. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

For example, Mr. Bouchard attests that, as Plaintiff's lead counsel, he made a good-faith effort to ensure that the hours recorded in his firm's fees chart were not excessive, redundant, or otherwise unnecessary. From pre-suit investigation in 2020 through September 10, 2024 (when trial co-counsel Oto Ekpo filed a notice of appearance), the only attorney time reflected in Finch McCranie's fee chart is Mr. Bouchard's. He excluded all associate time, even though a former Finch McCranie associate (former federal law clerk) worked extensively on the case (100+ hours). Likewise, Mr. Bouchard excluded time his partners spent strategizing with him over the five-year litigation (100+ hours) on a litany of strategic issues relating to discovery and trial. The only attorney time included in Finch McCranie's fee chart is Mr. Bouchard's, except for time entries after September 10, 2024, when Ms. Ekpo's time is included as well. Mr. Bouchard attests that inclusion of Ms. Ekpo's time is not excessive, redundant, or otherwise unnecessary because she served as his trial co-counsel and performed a wide variety of essential and discrete tasks pre-trial to ensure Finch McCranie was ready and prepared to obtain a historic and precedent-setting verdict at trial in this novel and complex case.

16

Mr. Bouchard also attests that he made a good-faith effort to ensure that Andersen, Tate, & Carr's recorded hours were not excessive, redundant, or otherwise unnecessary when considered alongside Finch McCranie's. In his affidavit, Mr. Bouchard attests as lead counsel that this litigation has been protracted, complex, and novel, and that he has relied on his co-counsel at Andersen, Tate, & Carr throughout the pendency of this litigation at many different stages for strategic insights, legal research, review of drafts, among many, many other issues, which are reflected in that firm's fee chart. He attests that the time reflected in Andersen, Tate, & Carr's chart reflects the valuable and necessary contributions made to Plaintiff's representation in this case, and is not excessive, redundant, or otherwise unnecessary.[5]

Further, Tianna Mykkeltvedt, a partner at Bondurant, Mixson, & Elmore, LLP, and an expert in commercial litigation and sex trafficking litigation,[6] has

---

[5] Mr. McDonough and Mr. Tonge attest in their affidavits that the time reflected in Andersen, Tate, & Carr's fee chart also does not include unreasonable duplication. They explain in their affidavits that they generally engaged in different, though complimentary work, in this case. Mr. McDonough attests that he is a seasoned trial lawyer, with decades of experience. Throughout this case, his work has related mostly to litigation and trial strategy, examination and investigation of witnesses, evidence and depositions, and trial and hearing work. Mr. Tonge's work has consisted largely of conducting legal research and writing and drafting of arguments and briefs.

[6] Ms. Mykkeltvedt was co-lead counsel in the first civil TVPRA trial against a hotel in United States history, which was tried in the Northern District of Georgia. The case resolved before a verdict was rendered.

reviewed the docket and pleadings in this case, the fee charts at Exs. A-4 and B-4, the hours recorded therein, and the descriptions of the work performed, and concluded that the fee charts are reasonable and conservative for litigation of this complexity, novelty, magnitude, and duration.

Thus, Plaintiff has provided sufficient reliable evidence that the hours in her fee chart are reasonable and conservative.

**b.  <u>Hourly Rate.</u>**

Plaintiff has also presented reliable evidence that the hourly rate included in her fee charts is reasonable and conservative, and "in line with prevailing market rates" "for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.

Ms. Mykkeltvedt's expert declaration, on its own, establishes the reasonableness of Plaintiff's requested hourly rate. Ms. Mykkeltvedt opines that the requested rates "are substantially in accord with prevailing rates for civil sex trafficking litigation in the relevant legal market," and are "reasonable given the Atlanta market conditions and the skills, qualifications, experience, and reputation of Plaintiff's Counsel." Ex. C. Ms. Mykkeltvedt bases her opinion on her familiarity litigating sex trafficking cases like this case, and her knowledge of Plaintiff's counsel's skills, qualifications, experience, and reputation. Ex. C. In addition, Ms. Mykkeltvedt draws upon her experience as a partner at

Bondurant, Mixson, and Elmore, where one of her duties is "setting the rates for 17-20 partners, 12-15 associates and five paralegals, at all seniority levels." Ex. C. In discharging her duties, she has "reviewed billing rate information from several sources, including but not limited to industry resources, publications and private commissioned studies, and other sources. Although none are dispositive alone, these studies and sources have informed my opinions as to reasonable billing rates." Ex. C. Further, Ms. Mykkeltvedt has "associated co-counsel in various cases and obtained their billing rates as a part of that process. Further, I have filed, responded to and reviewed fee applications in numerous cases. And I have served as an expert witness on the reasonableness of attorneys fees."  Ex. C.

The affidavits of Mr. Bouchard, Ms. Ekpo, Mr. McDonough, Mr. Tonge, and Mr. Weeks also support that the hourly rates proposed are "in line with prevailing market rates" "for similar services by lawyers of reasonably comparable skills, experience, and reputation." Ex. A-1 – A-2 and Ex. B-1 – B-3. For example, Mr. Bouchard's affidavit states that he graduated from law school in 2012, and worked as an associate at Jones Day in the Atlanta office, where he focused his practice on complex federal litigation. By 2019, when Mr. Bouchard left Jones Day's Atlanta office to work at Finch McCranie (his current firm), he was 7 years out of law school. At that time, Mr. Bouchard was billing

19

at an hourly rate of $600-$650 for complex federal litigation matters. Ex. A-1. It is now 2025, Mr. Bouchard is nearly 14 years out of law school, he is an equity partner at Finch McCranie, and he (along with his co-counsel) is among the most experienced lawyers handling civil TVPRA litigation in the country. Ex. A-1. Mr. Bouchard further attests that he has worked on hourly matters for Finch McCranie business and white-collar clients and charged rates consistent with the rates requested here.

The *Laffey* matrix further confirms the reasonableness of the proposed hourly rates. While the matrix is based on average rates for lawyers practicing complex federal litigation in the D.C.-area, it provides a useful point of comparison for the Atlanta-area attorneys in this case practicing complex federal litigation. Under the *Laffey* Matrix, the hourly rate for attorneys practicing complex federal litigation with the experience of Mr. McDonough (20+ years) would be $1,141/hour, with the experience of Mr. Bouchard, Ms. Ekpo, and Mr. Weeks (11-19 years) would be $948/hour, and with the experience of Mr. Tonge (8-10 years) would be $839/hour. Ex. D.  All of those rates are consistent and in line with the proposed partner rate of $900/hour in this case.

Finally, the *Johnson* factors confirm that the proposed hourly rate is reasonable. *See In re Home Depot Inc.*, 931 F.3d 1065 (2019) (emphasizing that district courts are not required to "slog through" the *Johnson* factors but may

consider them "to determine if the proposed rate accurately reflects the true worth of counsel.").[7] All of the *Johnson* factors support the requested hourly rate, and none cut against it.

The <u>*first*</u> factor, "time and labor required," and the <u>*second*</u> factor, "the novelty and difficulty of the questions," both support the reasonableness of the proposed hourly rates. As reflected in the affidavits from Plaintiff's counsel, nearly all the issues related to this litigation were theoretical and/or issues of first impression when this case was filed, and Plaintiff's attorneys had to develop arguments from first principles and related case law. For example, Plaintiff's attorneys established the arguments in the first instance that the TVPRA required joint and several liability, that punitive damages are allowed under the TVPRA, that intervention in this case was inappropriate, that the insurance provisions at issue did not bar coverage, that Rule 412 excluded certain evidence in the sex trafficking context, and that the one-satisfaction rule did not bar recovery in this case, among other issues. Plaintiff's counsel drafted many of the jury charges

---

[7] Again, the twelve *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases. *Johnson,* 488 F.2d at 717-19

here without the benefit of any pattern instructions because of the novelty of the legal issues. The legal landscape changed after the filing of this case with the *Red Roof* decision in 2021. To make matters more complex, district court opinions in this district varied greatly on dispositive issues throughout the litigation, showing that district courts could read the same *Red Roof* decision and yet apply it differently to similar facts. In short, the level of difficulty in litigating the issues in this case was extraordinarily high and legal issues were fluid. And the challenges continue. The litigation is ongoing, and multiple appeals are pending, and more may be coming.

Because of the high degree of complexity and novelty of the issues in the case, the <u>third</u> factor ("the skill requisite to perform the legal service properly"), also points in favor of the proposed hourly rate.[8]

Likewise, the thousands of hours devoted to this complex federal litigation establish that the <u>fourth</u> factor ("the preclusion of other employment by the attorney due to acceptance of the case") also supports the proposed hourly rate.

---

[8] Defendant is represented by Dana Richens, sophisticated counsel at Smith Gambrell & Russell, a firm founded in 1893 with the "vision of building one of the country's premier full-service business firms." https://www.sgrlaw.com/about-sgr/. Ms. Richens is a partner in the litigation section at Smith Gambrell & Russell and served as "[h]ead of SGR's Atlanta Litigation Section." https://www.sgrlaw.com/attorneys/drichens/. Ms. Richens has capably represented Defendant at a high level at every stage of the litigation, which has added to the challenge and complexity for Plaintiff's counsel in this novel action.

As to the <u>fifth</u> factor ("the customary fee") and the <u>sixth</u> factor ("whether the fee is fixed or contingent"), the attorney's affidavits establish that virtually all trafficking survivors are represented on a contingency basis. These factors are neutral, although the declaration from Ms. Mykkeltvedt, and the affidavits from Plaintiff's attorneys, attest that the proposed hourly rates are reasonable.

On the <u>seventh</u> factor ("time limitations imposed by the client or the circumstances"), this factor is neutral. Although, as noted, the case has required substantial time and labor to litigate novel and difficult legal questions.

As to the <u>eighth</u> factor ("the amount involved and the results obtained") and the <u>twelfth</u> factor ("awards in similar cases"), Plaintiff's counsel attest that they obtained an unprecedented verdict and exceeded the last and best pre-trial offer ($500,000) by 80 times. These factors support the proposed hourly rate.

Regarding the <u>ninth</u> factor ("the experience, reputation and ability of the attorneys"), the affidavits submitted by Plaintiff's attorneys establish their significant experience, reputation, and ability in handling sex trafficking cases. Further, the affidavits show that the attorneys are well regarded and respected in the legal community for their training, competence, ability, and leadership roles within the community and the Bar, all of which is confirmed in the affidavit from Ms. Mykkeltvedt. This factor supports the proposed hourly rate.

As to the <u>tenth</u> factor ("the 'undesirability' of the case"), Plaintiff's counsel filed the instant action with a legal theory that was untested and unproven regarding a difficult subject matter that many lawyers would shy away from. This factor supports the proposed hourly rate.

On the <u>eleventh</u> factor ("the nature and length of the professional relationship with the client"), Plaintiff's counsel has represented Plaintiff for five years and has litigated the case for five years (to date). The litigation is ongoing, and multiple appeals are pending, with more potentially emerging.

Therefore, Plaintiff's counsel has provided sufficient reliable evidence to prove that the proposed hourly rate is reasonable through Ms. Mykkeltvedt's expert declaration, (Ex. C), the affidavits of Mr. Bouchard, Ms. Ekpo, Mr. McDonough, Mr. Tonge, and Mr. Weeks, (Exs. A-1 – A-2 and B-1 – B-3), Plaintiff's comparison of the rates in the *Laffey* matrix to the rates proposed in this case, and Plaintiff's application of the *Johnson* factors to the proposed hourly rates.

## IV. **Plaintiff Has Met Her Burden and Provided Reliable Evidence that her Expenses are Reasonable and Justified.**

Plaintiff has also carried her burden and produced reliable evidence that her *expenses* are reasonable through the expense charts and the accompanying affidavits. Exs. A-5 and B-5. "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred

in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988," and "the standard of reasonableness is to be given a liberal interpretation." *NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir.1987) (quoting *Dowdell*, 698 F.2d at 1192). There is no reason to apply a different rule to expenses here. As attested in the declaration and the affidavits, the expenses in Plaintiff's billing charts are reasonable and include only well-established, uncontroversial expenses in a case like this, such as court reporter fees for depositions, expert witness fees, filing fees, and document copying and delivery expenses, among others.

## <u>CONCLUSION</u>

Plaintiff's motion for fees and expenses should be approved because she has carried her burden to show that the requested fees and expenses are reasonable. Because this litigation is ongoing, Plaintiff reserves the right to submit an amended fees and expenses chart with additional time that her attorneys spend and expenses they incur litigating the case to completion.[9]

---

[9] Under Eleventh Circuit precedent, an evidentiary hearing on a motion for attorney's fees is required "where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact." *Caplan v. All American Auto Collision, Inc.*, 36 F.4th 1083, 1093-1094 (2022) (citing *Norman*, 836 F.2d at 1303-1304). It is too early for Plaintiff to determine whether "there are disputes of fact," and, if so, whether "the written record [is] sufficiently clear to allow the trial court to resolve the disputes." Out of an abundance of caution, Plaintiff requests an evidentiary

This 15th day of September, 2025.

/s/ David H. Bouchard
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

---

hearing but notes that she cannot yet assess whether such a hearing would be helpful
to the Court.

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorney for Plaintiff*

27

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 15th day of September, 2025.

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile