# Exhibit A-1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. 1:20-cv-05233-SEG |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | |
| | : | |
| Defendant. | : | |

**<u>AFFIDAVIT OF DAVID H. BOUCHARD IN SUPPORT OF PLAINTIFF
J.G.'S MOTION FOR ATTORNEYS' FEES UNDER 18 U.S.C. § 1595</u>**

My name is David H. Bouchard. I have personally appeared before an officer duly authorized to administer oaths, and after being duly sworn, testify as to the following:

**A.     Professional Background and Expert Qualifications**

1. I am over the age of eighteen, I am competent to provide the testimony in this affidavit, and I have personal knowledge of the matters contained in this affidavit.

2. I am lead counsel for Plaintiff J.G., and I am an equity partner at Finch McCranie, LLP. Finch McCranie has been in operation for 60 years, and, as such, is one of the oldest plaintiff-side tort firms in the state of Georgia. The Firm's partners include Larry Thompson, Walter Jospin, Richard Hendrix, Michael

1

Sullivan, Carl Lietz, and Oto Ekpo.[1] The firm's website is available here: https://www.finchmccranie.com/

3. In 2008, I graduated *cum laude* from Northwestern University with a Bachelor of Arts degree in History and Political Science. In 2008, I received a Fulbright Fellowship, and I served as a Fulbright Fellow in Haiphong, Vietnam for one year through the United States Department of State. In 2012, I graduated from New York University School of Law. While in law school, I was a member of NYU Law's Moot Court Board, where I was recognized for excellence in oral advocacy after winning the Orison S. Marden oral advocacy competition.

4. In October 2012, I was sworn in as a member of the State Bar of Georgia. I have been practicing for 13 years, with an emphasis the entire time on complex civil litigation in federal and state courts. For the first seven years of my career, I worked as an associate at Jones Day, an international law firm. During my tenure at Jones Day, I defended major companies in complex civil litigation matters in courts across the United States, and I also worked on white-collar criminal matters in federal court.

5. In November 2019, I stopped working at Jones Day, and in December

---

[1] The Firm's partners have served in leadership roles within the United States Department of Justice, the United States Securities and Exchange Commission, the DeKalb District Attorney's Office, international law firms, and more. Senior United States District Judge Thomas W. Thrash is a former partner of the Firm.

2

2019, I began working at Finch McCranie. While at Finch McCranie, I have continued to focus my work on complex civil litigation in federal and state courts, with particular emphasis on handling various types of serious tort cases in federal and state courts.

6. I have devoted a significant chunk of my practice at Finch McCranie to screening, investigating, and litigating sex trafficking cases under the TVPRA in federal court. I have personally litigated or screened more than two dozen sex trafficking cases, and I have studied and read nationwide caselaw relating to the TVPRA extensively. I have presented CLEs on trafficking litigation under the TVPRA. I am one of the most experienced lawyers in the country in the litigation of civil trafficking cases in federal court under the TVPRA.

7. I am licensed to practice law in Georgia. I am admitted to practice before the Northern District of Georgia, Middle District of Georgia, Southern District of Georgia, and the Eleventh Circuit, among other courts.

8. I have been recognized in *Best Lawyers*, *Chambers USA*, and *Super Lawyers* for excellence in civil litigation and trial advocacy based on nominations and reviews by my peers and colleagues.

9. I am a member of the Executive Committee for the Clarence Cooper Inn of Court at Emory University School of Law. I am a member of the Board of Directors for The Girl Scouts of Greater Atlanta, and I am also a member of the

Advisory Board for The Posse Foundation of Atlanta. I am a graduate of LEAD Atlanta, and I am a member of the Leadership DeKalb Class of 2025. Beginning in January 2026, I will be an adjunct faculty member teaching trial advocacy at The Georgia State University of College of Law.

10. Because of my firm's focus on sex trafficking cases, I regularly review potential trafficking cases. I only take select cases that I believe have significant merit. I spend substantial time making the decision to take a case (or to decline). One of the most important services we provide to potential clients and the civil justice system is to vet cases carefully and to avoid litigation when justified. Over the course of my practice at Finch McCranie, I have screened (and declined) and/or litigated more than two dozen trafficking cases.

11. Based on my qualifications, experience, and expertise, I consider myself an expert, as defined by the Rules of Evidence, on the issue of reasonable attorney fees and other litigation expenses for representation of plaintiffs in a sex trafficking cases like this one.

**B.   My Role in This Litigation**

12. I have personal knowledge of the work that I performed and that other attorneys and employees at my firm performed in this matter. I also have personal knowledge of the work performed by lawyers at Andersen, Tate, & Carr in this matter. I am the lead attorney in this case, and as such, I have managed and overseen

4

this litigation every step of the way. I drafted and served all discovery requests and responses; I was the taking attorney in all depositions noticed by Plaintiff; I attended all depositions noticed by Defendant; I served all of Plaintiff's subpoenas in the case; I was integrally involved in reviewing all of Defendant's discovery responses, document productions, and pleadings; I conferred with Defendant's counsel regarding all discovery matters; I authored every brief filed on behalf of Plaintiff; I oversaw and led trial preparation and the Plaintiff's trial presentation in the jury trial; I argued all pre-trial motions and jury charges; I assisted in juror selection at trial; and I handled direct or cross examination of many critical witnesses at trial and I delivered the closing argument.

C. **It is Usual and Customary for Law Firms that Represent Plaintiffs on a Contingency Fee Basis not to Contemporaneously Record Time and to Reconstruct Time (if needed after a verdict)**

13. In the more than two dozen trafficking cases that I have litigated or screened as part of the intake process at Finch McCranie, all of my work has been on a contingency basis. I have never met a sex trafficking client or potential client who would be able to afford to hire a lawyer on an hourly basis. In other words, no sex trafficking survivor I have ever met would be able to seek justice through the civil courts unless the attorneys took the case on a contingency basis.

14. More generally, Finch McCranie has represented tort victims in Georgia for 60 years; thousands of clients in total. Virtually all (if not all) of those

5

clients have been represented on a contingency basis, including trafficking survivors and civil rights plaintiffs. Virtually none of the Firm's tort clients over its 60-year history could have afforded to hire the firm on an hourly basis.

15.    Based on my education, training, and experience, in any case Finch McCranie brings under a fee-shifting statute, like the TVPRA, if the plaintiff prevailed at trial, I would reconstruct my time in the manner I have done so herein and as permitted under Eleventh Circuit caselaw.

16.    Based on my education, training and experience, it is rare and almost unheard of for attorneys representing plaintiffs on a contingency basis to contemporaneously record their time. There are a few reasons for this. First, as discussed above, the client is not paying the attorney on an hourly basis. Second, such records are potentially relevant in extremely rare scenarios. In all of my work on trafficking cases, and in complex federal litigation, I have never had to prepare a fee petition. In the ordinary course, it would be a waste of time and resources for an attorney representing survivors on contingency to record their time; the attorney's time could be better spent on productive legal work for the survivors they are representing. Third, Georgia law and Eleventh Circuit caselaw do not require contemporaneous time records to support fee petitions.[2]

---

[2] *See, e.g., Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 94, 885 S.E.2d 671, 708 (2023) (Georgia law does not require contemporaneous time records); *see also Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1207

6

**D.     The Time Reflected in the Finch McCranie Attorney's Fees Chart (Exhibit A-4) was Reconstructed Using a Reasonable and Conservative Approach**

17.     I personally managed and oversaw the preparation of the Attorney's Fees chart submitted by Finch McCranie at Exhibit A-4, and it is a fair and accurate rendering of the time devoted by Finch McCranie lawyers and paralegals to litigating this action. It was prepared using a reasonable and conservative methodology, and it only reflects compensable activities under Eleventh Circuit caselaw.

18.     I conferred extensively with lawyers Pat McDonough, Jon Tonge, and Rory Weeks at Andersen, Tate, & Carr about the preparation of the Attorney's Fees chart submitted by Andersen, Tate, & Carr at Exhibit B-4, and it is a fair and accurate rendering of the time devoted by Andersen, Tate, & Carr lawyers and paralegals in this matter to compensable activities under Eleventh Circuit caselaw.

19.     I calculated my hours in the Attorney's Fees chart at Exhibit A-4 after reviewing available contemporaneous hourly records, as well as expense records, emails, pleadings, discovery materials, case files, and calendar entries, among other materials. I relied on the foregoing materials to refresh my recollection and to prepare a reasonable and conservative estimate of my time in this matter.

20.     Oto Ekpo (Finch McCranie partner) and Melissa Millen (Finch

---

(11th Cir. 1983), *holding modified by Gaines v. Dougherty Cnty. Bd. of Educ.*, 775 F.2d 1565 (11th Cir. 1985) (federal law does not require contemporaneous time records).

McCranie paralegal) calculated their respective time by following the same process, and the fees chart at Exhibit A-4 reflects the aggregate total hours devoted to each of the specified tasks by Finch McCranie lawyers, David Bouchard and Oto Ekpo, and Finch McCranie paralegal, Melissa Millen.

21. The hours listed in the Attorney's Fees chart submitted by Finch McCranie at Exhibit A-4 are reasonable, conservative, and underinclusive for at least seven reasons. *First*, the only hours recorded in the Finch McCranie fees chart from pre-suit investigation in 2020 through September 10, 2024 (when my trial co-counsel Oto Ekpo filed her notice of appearance) are my own. The only hours recorded in the Finch McCranie fees chart at any point in time are for Finch McCranie lawyers who appeared at trial (me and Oto Ekpo). The Firm's fee chart does not include any time from other Firm partners who were intimately involved in numerous conversations relating to discovery strategy, settlement strategy, declaratory judgment strategy, and trial strategy over the course of the five-year litigation (100+ hours). *Second*, the fees chart does not include extensive time (100+ hours) spent by a former Finch McCranie associate (former federal law clerk), because that clerk is now employed by a new firm and did not record their time before departing. *Third*, the fees chart does not include time spent researching and drafting the motion for attorneys' fees, preparing this fee exhibit, coordinating with co-counsel on their fee exhibit, preparing my affidavit, coordinating with co-counsel on preparation of their

affidavits, and engaging expert T. Mykkeltvedt (40+ hours). *Fourth*, the fees chart only uses a .1 multiplier for emails, even though there is extensive email correspondence in the case for which .1 is dramatically underinclusive. *Fifth*, the fees chart does not include time devoted to trial-prep work (including focus group exercises, witness prep sessions, deposition review, document review, etc.) that was duplicated following the re-scheduling of the trial from April 2025 to July 2025. *Sixth*, the fees chart does not include telephone conferences with opposing counsel during the five-year pendency of the litigation (20+ hours). *Seventh*, the fees chart does not include time spent by summer law clerks over multiple summers with the case pending for five years (100+ hours).

22. In compiling Finch McCranie's hours in this case, I made a good-faith effort to ensure that the Firm's recorded hours were not excessive, redundant, or otherwise unnecessary. From pre-suit investigation in 2020 through September 10, 2024 (when trial co-counsel Oto Ekpo filed a notice of appearance), the only attorney time reflected in the fee chart is my own. I excluded all associate time, even though a former Finch McCranie associate (former federal law clerk) worked extensively on the case (100+ hours). Likewise, I excluded time my partners spent strategizing with me over this five-year litigation (100+ hours) on a litany of strategic issues relating to discovery, briefing, and trial. The only attorney time included in the fee chart is my own, except for time entries after September 10, 2024,

9

when Oto Ekpo's time is included as well. Inclusion of Oto Ekpo's time is not excessive, redundant, or otherwise unnecessary because she served as my trial co-counsel and performed a wide variety of essential and discrete tasks pre-trial to ensure we were ready and prepared to obtain a historic and precedent-setting verdict at trial in this novel and complex case.

23. Similarly, I made a good-faith effort to ensure that Andersen, Tate, & Carr's recorded hours were not excessive, redundant, or otherwise unnecessary when considered alongside Finch McCranie's. This litigation has been protracted, complex, and novel. It has raised a wide range of legal issues that are matters of first impression or early impression. Andersen, Tate, & Carr is one of the most experienced firms in the country in the litigation of civil trafficking cases under the TVPRA. I relied on my co-counsel at Andersen, Tate, & Carr throughout the pendency of this litigation at many different stages for strategic insights, legal research, review of drafts, among many, many other issues. The time reflected in Andersen, Tate, & Carr's chart reflects the valuable and necessary contributions made to Plaintiff's representation in this case, and is not excessive, redundant, or otherwise unnecessary.

E.  **A $900/hour rate for Partner-Level Attorney Time and $250/hour rate for Paralegal-Level Time is Conservative and Reasonable**

24. Based on my education, training, and experience, a $900 hourly rate for the work performed by me, Oto Ekpo, Pat McDonough, Jon Tonge, and Rory Weeks,

is conservative and, thus, reasonable. Given the complexity of this action and the expertise and experience of myself and these lawyers, a $900 hourly rate for partner-level attorney time and $250 for paralegal time is no more than usual Atlanta market rates.

25. I graduated law school in 2012. When I left Jones Day in 2019, I was an associate focusing on complex federal litigation, and I was billing my time in the range of $600 - $650/hour. Now, it is 2025, I have been practicing for nearly 14 years, and I am an equity partner at Finch McCranie. While most of my complex federal litigation work is performed on a contingency basis, I have worked on some hourly matters at Finch McCranie for business and white-collar clients, and in those matters I have billed clients at or around (and in some cases above) $900/hour. Likewise, I have billed paralegals at or around (and in some cases above) $250/hour.

26. This case is complex and precedent-setting. It was filed in 2020, before there was any Eleventh Circuit precedent on point. The first circuit court opinion in the country on the TVPRA in this context came in August 2017, with the First Circuit's *Ricchio v. McLean* decision. 853 F.3d 553 (1st Cir. 2017). That remained the only circuit opinion until the *Red Roof* decision in the Eleventh Circuit in 2021.

27. Nearly all the issues related to this litigation were theoretical when this case was filed and had to be established by Plaintiff's attorneys (including me). Many issues in this five-year litigation were issues of first (or early)

11

impression, and involved arguments made from first principles or other related caselaw. For example, Plaintiff's attorneys (including me) established the arguments in the first instance that the TVPRA requires joint and several liability, that punitive damages are allowed under the TVPRA, that intervention in this case was inappropriate, that the insurance provisions at issue did not bar coverage, that Rule 412 excluded certain evidence in the sex trafficking context, and that the one-satisfaction rule did not bar recovery in this case, among other issues. The legal landscape changed after the filing of this case with the *Red Roof* decision in 2021. To make matters more complex, district court opinions in this district varied greatly on dispositive issues throughout the litigation, showing that district courts could read the same *Red Roof* decision and yet apply it differently to similar facts. In short, the level of difficulty in litigating the issues in this case was extraordinarily high and the legal issues were fluid. And it is not done. Though Plaintiff's counsel (including me) has represented Plaintiff for six years and has litigated the case for five years (to date), the litigation is ongoing, and multiple appeals are pending.

F.  **The Verdict—as Compared to the Pre-Trial Settlement Demands and Offers—Underscores the Quality of the Work Performed in this Historic Case.**

28. The jury verdict for $40,000,000 reflects the quality of legal work performed in this case. This is the first jury verdict in a civil case against a hotel

under the Trafficking Victim Protection Reauthorization Act in the country—though hundreds of such cases have been filed across the country. It is also by far the largest sex trafficking result for any reported outcome—whether through settlement, mediation, or trial—in the country.

29. The final and largest pre-trial settlement offer in this case was $500,000. The result reached here (80x greater than the best settlement offer) underscores the quality of the legal work of Plaintiff's team as compared to the Defendant's estimation of the case's anticipated outcome.

**G. Finch McCranie, LLP has Advanced $43,648.62 in Expenses (*see* Exhibit A-5).**

30. As a partner at Finch McCranie, and as the lead lawyer in this case, I have personal knowledge of or am familiar with the expenses my firm has advanced on behalf of Plaintiff.

31. A true and correct copy of my firm's expense report is attached to the Attorney's Fees and Expenses Chart. Plaintiff, pursuant to the attorney-client agreement, owes all these expenses.

32. I have reviewed and familiarized myself with this report. The report contains a true and accurate reflection of the expenses Finch McCranie advanced on behalf of Plaintiff during the pendency of this action.

33. As confirmed by Exhibit A-5, the amount of expenses advanced by my firm in this litigation is $43,648.62. The expenses shown include, but are not limited

to, expenses relating to expert witnesses, copying, postage, delivery, medical records, court reporters, mileage, travel, hotels, meals, professional attire purchases (for Plaintiff, a minor sex trafficking victim, to wear to Court), and eyewear (so Plaintiff could read evidence and see the trial proceedings clearly). The total amount of these expenses is reasonable for this type of complex action and for the relevant time period. Moreover, each individual expense itself is reasonable and was reasonably incurred to successfully represent the Plaintiff against Defendant.

*(SIGNATURES ON FOLLOWING PAGE)*

My testimony is true and correct and made under penalty of perjury, and I have executed this affidavit on September 15, 2025.

_____
David H. Bouchard

This affidavit has been sworn to and subscribed before me on September 15, 2025.

_____
Notary Public
My Commission Expires:

L Melissa Millen
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires 10/19/2027

15