# Exhibit B-2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| J.G., | : |
| | : |
| Plaintiff, | : |
| | :  CIVIL ACTION FILE |
| vs. | : |
| | :  NO. 1:20-cv-05233-SEG |
| NORTHBROOK INDUSTRIES, | : |
| INC., D/B/A UNITED INN AND | : |
| SUITES, | : |
| | : |
| Defendant. | : |

### AFFIDAVIT OF JONATHAN TONGE IN SUPPORT OF PLAINTIFF J.G.'S MOTION FOR ATTORNEYS' FEES UNDER 18 U.S.C. § 1595

My name is Jonathan S. Tonge. I have personally appeared before an officer duly authorized to administer oaths, and after being duly sworn, testify as to the following:

### A. Professional Background and Expert Qualifications

1. I am over the age of eighteen, I am competent to provide the testimony in this affidavit, and I have personal knowledge of the matters contained in this affidavit.

2. I have been an attorney for 9 years, having attended law school as a second career. In law school, through my published note, I came up with the idea of representing sex trafficking survivors in civil cases against hotels. Since 2014, that has been the only career goal I have had and it guided every career change and decision I have made since law school. I changed jobs four times in the first four years of my practice in order to bring sex trafficking cases against hotels. In 2019, that goal became a reality and representing sex trafficking survivors has been 100% of my practice since that time. *See, e.g.*, https://podcasts.apple.com/us/podcast/throw-away-kids-with-lawyer-jonathan-tonge/id1504750205?i=1000581900571.

1

3. I graduated from the University of Georgia in 2003 with a A.B.J. in newspaper journalism and a minor in English.

4. In 2016, I graduated from the University of Georgia School of Law, finishing in the top 5% of my class and earning Order of the Coif recognition, and winning several awards for academics in that time. I participated in the inaugural class of the Wilbanks Children's Endangerment and Sexual Exploitation Clinic (CEASE) due to my desire to represent trafficking victims upon graduation.

5. After graduation, I clerked for the Honorable Timothy C. Batten Sr. on the U.S. District Court for the Northern District of Georgia.

6. I have been a frequent guest lecturer at the UGA School of Law's CEASE Clinic for the last 5 years. I have also been a guest lecturer at the University of Alabama School of Law and Mercer University's law school regarding human trafficking litigation. I have conducted many CLE presentations to lawyers about sex trafficking litigation.

7. In 2024, I created and taught the first Human Trafficking Litigation course in Georgia. As an adjunct professor, I now teach that class at the University of Georgia School of Law.

8. In 2016, I was sworn in as a member of the State Bar of Georgia. I am licensed to practice law in Georgia. I am also admitted to practice before the United States District Court for the Northern District of Georgia and the U.S. Court of Appeals for the Eleventh Circuit. I am an equity partner at Andersen, Tate, & Carr, www.atclawfirm.com.

9. Beginning in 2016, myself and my partner Pat McDonough, created the practice of representing sex trafficking survivors in civil cases against beneficiaries. No other attorneys had ever filed such a case in Georgia history. We spent several years researching, analyzing, and

developing this practice before we ever had a client. We considered several cases that were unworkable. Our dedicated website for sex trafficking cases can be found at www.inthelifelaw.com.

10.     In 2019, I filed the first civil sex trafficking cases in Georgia history. (*See, e.g.,* https://www.ajc.com/news/crime--law/breaking-atlanta-area-hotels-face-sex-trafficking-lawsuits/B9Wy8bMUOV60eWuqdjlWWN/?utm_source=chatgpt.com.) I have settled 82 cases and collected over $100 million for survivors. I have participated in all aspects of this litigation including discovery, client depositions, 30(b)(6), expert depositions, motions practice including arguments for summary judgment, mock trials, focus groups, pretrial conferences, and trial.

11.     No other law firm or attorneys in Georgia that I am aware of focus their entire practice on representing sex trafficking survivors. And no attorneys in the country have been as successful as our firm in recovering substantial sums for sex trafficking survivors.

12.     In 2021, I helped author the briefing in the first Eleventh Circuit appellate decision regarding civil sex trafficking cases under the Trafficking Victims' Protection Reauthorization Act. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).

13.     In 2023, I briefed the Georgia Court of Appeals decision establishing that negligence claims could be brought in the context of sex trafficking civil cases. *Suresh & Durga, Inc. v. Doe*, 369 Ga. App. 787, 894 S.E.2d 602 (2023)

14.     In 2024, I participated in the first jury trial against a hotel brand in the country. The trial lasted three weeks and settled the day we closed the Plaintiffs' cases. That case lasted over four years and involved 11 plaintiffs. I examined four plaintiffs and the only accused sex trafficker at that trial, among other responsibilities.

15.     In 2025, I testified twice before the Georgia legislature in support of an exception

3

to the "tort reform" bill that eventually passed regarding the effect of that bill on the claims of sex trafficking survivors. Because of that effort and the effort of several of my clients, sex trafficking survivors were made exempt from the changes to Georgia's negligence and nuisance law. I was awarded a Champions of Justice award from the Georgia Trial Lawyers Association as a result.

### B. My Role in This Litigation

16. I have personal knowledge of the work that I performed and that other attorneys and employees at my firm performed on this matter. I also have personal knowledge of the work performed by lawyers at Finch McCraine in this matter. I provided research, editing and drafting of all major motions during the four years of litigation. I was heavily involved in reviewing Defendants' document production and pleadings. I reviewed every brief filed on behalf of Plaintiff in the case. I was involved in trial preparation and motions in limine. I heavily researched the Defendant, the members of that corporation, and frequently provided legal ideas and advice as to strategy and substantive motions based on my experience in this and other cases.

### C. It is Usual and Customary for Law Firms that Represent Plaintiffs on a Contingency Fee Basis not to Contemporaneously Record Time and to Reconstruct Time (if needed after a verdict)

17. In the 82 cases I have brought and the many other cases I have reviewed or have in intake, it is customary to take all sex trafficking cases on a contingency basis. In fact, I have never met a sex trafficking client or potential client who would be able to afford to hire a lawyer on an hourly basis. In other words, no sex trafficking survivor I have ever met would be able to seek justice through the civil courts unless the attorneys took the case on a contingency basis.

18. Based on my education, training and experience, in any case we have brought under a fee-shifting statute like the TVPRA, if the plaintiff prevailed at trial, I would reconstruct my time in the manner I have done so herein and as permitted under Eleventh Circuit caselaw.

4

19.     Based on my education, training and experience, it is quite rare and almost unheard of for attorneys representing plaintiffs on a contingency basis to contemporaneously record their time. There are a few reasons for this. First, as discussed above, the client is not paying the attorney on an hourly basis. Second, the instance where such records would become relevant are extremely rare, thus it is a waste of the attorney's time and resources that could be better spent in productive work on behalf of the client. For example, having settled 82 cases on behalf of sex trafficking victims, this is the first time (1/82, or 1.22% of my cases) where such a calculation has become relevant through a jury verdict. To spend resources tracking time that is relevant in roughly 1% of cases is time better spent on substantive legal work for the client.

### D. The Attorney's Fees Reflected in the Attorney's Fees Chart (Exhibit B-4) were Reconstructed Using a Reasonable and Conservative Approach

20.     The fees listed in Exhibit B-4 to this affidavit were calculated conservatively. Contemporaneous hourly records were reviewed, as well as expense records, emails, pleadings, discovery materials, case files, and calendar entries, among other materials, to refresh my recollection and to prepare this reasonable and conservative estimate of ATC's time.

21.     The hours listed in Exhibit B-4 are underinclusive and conservative of the time actually spent on this case. The fee chart does not include any time entries for any associate-level work, nor any paralegal work, though associates and paralegals conducted significant work on this case at various times throughout the five years. Several other ATC attorneys were consulted at different stages of the litigation for various legal or strategy discussions, but none of that time is included in the fee chart. The fees chart also does not include any time spent researching and drafting the motion for attorney's fees or any activity related thereto. The fees chart only uses a .1 multiplier for emails, even though there is substantial email correspondence in this case for which

.1 is dramatically underinclusive.

22. Myself and Pat McDonough generally engage in different, though complimentary work. Mr. McDonough is a seasoned trial lawyer, with decades of experience. Throughout this case, my work consists of the bulk of the legal research, writing and drafting of arguments and briefs. Many of these arguments I developed from researching the TVPRA since 2014, long before any hotel case had ever been litigated in the country. Mr. McDonough's work relates mostly to litigation and trial strategy, examination and investigation of witnesses, evidence and depositions, and trial and hearing work. A large part of our firm's success is due to this separation of responsibility and mine and Mr. McDonough's complimentary strengths. As a result of this division of labor, myself and Pat McDonough's time is not excessive or redundant.

23. Myself, Pat McDonough, and Rory Weeks oversaw and prepared the Andersen, Tate & Carr fee chart and it is a fair and accurate, but conservative, representation of the time spent by our firm's attorneys on this case. It was prepared using a reasonable and conservative methodology and represents only fees that are compensable under Eleventh Circuit caselaw.

24. Myself, Pat McDonough, and Rory weeks also conferred with David Bouchard at Andersen, Tate & Carr about the preparation of Finch McCranie's fee chart and it is a fair and accurate representation of the time spent by Finch McCranie attorneys and paralegals in this matter, representing only compensable fees under Eleventh Circuit caselaw.

25. I calculated my hours in the ATC attorney fees chart at Exhibit B-4 after reviewing available contemporaneous hourly records, expense records, emails, pleadings, discovery materials, case files, and calendar entries, among other materials. I relied on these records to refresh my recollection to prepare a reasonable and conservative estimate of my time in this case.

26. Pat McDonough (ATC partner) and Rory Weeks (ATC of counsel) calculated their

time following the same process and the fees chart at Exhibit B-4 shows the aggregate total hours devoted to each of the phases of the case by Andersen, Tate & Carr attorneys Jonathan Tonge, Pat McDonough, and Rory Weeks.

27. In compiling Andersen, Tate & Carr's time in this case, and as described above, I made a good-faith effort to ensure that the firm's recorded hours were not excessive, redundant, or unnecessary. I also made a good-faith effort to ensure that Finch McCranie's recorded hours were not excessive, redundant or otherwise unnecessary. As described in David Bouchard's affidavit, that time was also conservatively accounted for, leaving out large amounts of time from various attorneys over the years.

28. I have worked with Finch McCranie and David Bouchard since the pendency of this case, which was also the pendency of sex trafficking litigation in Georgia. Finch McCranie is one of the most experienced and successful law firms in litigating civil sex trafficking cases not only in Georgia, but in the country. David Bouchard is an extremely brilliant and accomplished attorney and through the years he has been responsible for successful and innovative legal developments in this burgeoning field. Andersen, Tate & Carr relied on Finch McCranie to lead this case from inception to trial, which they did with exceptional effort and results. The time reflected in Find McCranie's fee chart is indicative of the valuable and necessary work of leading and running Plaintiff's case and is not excessive, redundant, or otherwise unnecessary.

### E. A $900/hour rate for Partner-Level Attorney Time, $400/hour rate for Associate-Level Attorney Time, and $250/hour rate for Paralegal-Level Time is Conservative and Reasonable

29. Based on my education, training, and experience, a $900 hourly rate for the work performed by me, Oto Ekpo, Pat McDonough, and Rory Weeks, is conservative and, thus, reasonable. Furthermore, we used various associate level attorneys. Given the complexity of this

7

action and the expertise and experience of myself and these lawyers, a $900 hourly rate for partner-level attorney time, $400 hourly rate for associate-level attorney time, and $250 for paralegal time is no more than usual Atlanta market rates.

30. This case was exceptionally complex and precedent-setting. It was filed in 2020, before there was any Eleventh Circuit precedent on the issue. The first circuit court opinion in the country on the TVPRA in this context only came in August of 2017, with the First Circuit's *Ricchio v. McLean* decision. 853 F.3d 553 (1st Cir. 2017). That remained the only circuit opinion until the *Red Roof* decision in the Eleventh Circuit in 2021.

31. Nearly all the issues related to this litigation were theoretical when this case was filed and had to be established by Plaintiff's attorneys. This group of attorneys, including myself, established the arguments in the first instance that the TVPRA required joint and several liability, intervention in this case was inappropriate, that the insurance provisions did not bar coverage, that Rule 412 excluded certain evidence in the sex trafficking context, that the one-satisfaction rule did not bar recovery in this case, among other issues. Many issues in this five-year litigation were issues of first or early impression whose arguments were made from first principles or other related case law. The context was completely new and the legal landscape literally changed after the filing of this case with the *Red Roof* decision in 2021. To make matters more complex, district court opinions in this district varied greatly on dispositive issues throughout the litigation, showing that district courts could read the same *Red Roof* decision and yet apply it differently to similar facts. In short, the level of difficulty in litigating the issues during this litigation was extraordinarily high.

### F. The Verdict—as Compared to the Pre-Trial Settlement Demands and Offers— Underscores the Quality of the Work Performed in this Historic Case

32. The result reached in this case by the jury, an award of $40,000,000, reflects the quality of the legal work performed in this case. This is the first jury verdict in a civil case against

a hotel under the Trafficking Victim Protection Reauthorization Act in the country. It is also by far the largest sex trafficking result for any reported outcome—whether through settlement, mediation, or trial—in the country.

33. The final and largest pre-trial settlement offer in this case was $500,000. The result reached here shows the quality of the legal work of the Plaintiff's team as compared to the Defendant's estimation of the case's anticipated outcome.

*(SIGNATURES ON FOLLOWING PAGE)*

My testimony is true and correct and made under penalty of perjury, and I have executed this affidavit on September 15, 2025.

_____
Jonathan Tonge

This affidavit has been sworn to and subscribed before me on September 15, 2025.



_____
Notary Public
My Commission Expires: March 23, 2027

10