IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,                                      )
                                           )
        Plaintiff,                         )
                                           )        Civil Action File
v.                                         )        No. 1:20-cv-05233-SEG
                                           )
NORTHBROOK INDUSTRIES, INC.,               )
d/b/a UNITED INN AND SUITES,               )
                                           )
        Defendant.                         )

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S SUPPLEMENTAL MOTION
PURSUANT TO LR54.2, NDGa FOR
<u>ATTORNEY'S FEES AND EXPENSES</u>**

Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("Northbook") hereby responds to "Plaintiff's Supplemental Motion Pursuant to LR54.2, NDGa for Attorney's Fees and Expenses" [Dkt. #255] (the "Supplemental Motion" or "Supp. Motion").

Plaintiff J.G. ("Plaintiff" or "J.G.") purports to provide support for her claim for attorneys' fees and expenses incurred in this litigation.[1]  However, as explained below, Plaintiff is not entitled to the attorney's fees and expenses she seeks.

---

[1] By Northbrook's calculation, the fees and expenses enumerated in the Supplemental Motion total $2,606,591.15 ($2,553,060.00 in fees, and $53,531.15 in expenses).

As to her claim for attorney's fees, Northbrook disputes that Plaintiff's requested hourly rate of $900 reflects a market rate to be applied in this case. Further, Plaintiff has failed to provide adequate support as needed to demonstrate the amount of fees incurred and the reasonableness thereof, and has improperly included fees for tasks unrelated to or unnecessary for this litigation.

As to her claim for expenses, Plaintiff is not entitled to expenses because the underlying statute, the TVPRA, does not provide for recovery of expenses. Moreover, even if expenses were recoverable under the statute, Plaintiff would not be entitled to many of the categories of expenses she seeks, which are unnecessary and/or unreasonable.

Northbrook's opposition is supported by the Declaration of Dana M. Richens ("Richens Decl."), lead counsel for Northbrook in this matter, Exhibit 1 hereto, and by the Declaration of James D. Blitch, IV ("Blitch Decl.), Exhibit 2 hereto.

## I.    <u>Introduction to Methodology</u>

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate."   <u>Norman v. Housing Auth. of Montgomery</u>, 836 F.2d

1292, 1299 (11th Cir. 1988). The result of that calculation is known as the "lodestar." Id. at 1299.

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1303.

## II. <u>Hourly rate</u>

Plaintiff advocates for an across-the-board hourly rate of $900 for partners.[2] See, e.g., Mykkeltvedt Decl., Dkt. #255-11 at ¶ 14. This is not a reasonable rate, for the following reasons.

### A.    $650 hourly rate previously recognized as reasonable

This Court already established $650 as a reasonable hourly rate in this case in the context of Plaintiff's motion for sanctions. There, the Court awarded fees at a rate of $650 per hour, as requested by Plaintiff's counsel Mr. Bouchard, who represented that $650 was a reasonable hourly rate.   [Dkt. #86-33 at 2-3.][3] Northbrook did not object to that rate. There is no reason to believe that market

---

[2] Plaintiff proposes a $400 hourly rate for associates – a fiction, since Plaintiff has not identified any associate hours for which it seeks compensation, other than block billing for emails, which is not compensable, see infra at 12. Plaintiff also proposes a paralegal rate of $250, except that paralegal fees are not recoverable here, see infra at 17.

[3] Referenced page numbers are those found on the header applied by the Court's CM/ECF system upon filing.

rates would have increased by more than one-third (from $650 to $900) since August of 2024, when the Court awarded the fees.  Blitch Decl. at ¶ 27.

### B.    Mykkeltvedt Declaration

While Plaintiff relies on the expert opinion of Bondurant partner Tiana Mykkeltvedt that $900 is a reasonable rate, Ms. Mykkeltvedt cannot be objective in this regard, as she represents plaintiffs in TVPRA cases on a contingency-fee basis and thus would stand to benefit from precedent establishing $900 as a reasonable hourly rate in such cases.  See IceMOS Tech. Corp. v. Omron Corp., No. CV-17-02575-PHX-JAT, 2019 WL 4750129, at *8 (D. Ariz. Sept. 30, 2019) ("[A]n expert generally must be disqualified where the expert has a direct financial interest in the case beyond simply getting paid for rendering an expert opinion and testifying about it."); Blitch Decl. at ¶ 9; Richens Decl. at ¶ 13.  Moreover, as a law firm representing clients in "high-stakes litigation," as Ms. Mykkeltvedt describes it, Mykkeltvedt Decl. at ¶ 4, Bondurant bills at a premium rate not indicative of a market rate, which is the standard here.  Blitch Decl. at ¶ 30; Richens Decl. at ¶ 13.

### C.    Level of Experience

Plaintiff seeks the same hourly rate for all partners, regardless of level of experience.  For example, Mr. McDonough has been practicing law for 34 years,

while Mr. Tonge has been practicing for just nine years, but Plaintiff seeks the same $900 rate for both. Assigning the same rate to all partners, regardless of experience, is not in keeping with how market rates are established. Blitch Decl. at ¶ 23, Richens Decl. at ¶ 14.

Indeed, the Eleventh Circuit has advised against this practice. <u>See</u> <u>Norman</u>, 836 F.2d at 1300 ("No two lawyers possess the same skills, and no lawyer always performs at the same level of skill. Accordingly, the parties ought to provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients, so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar."). Northbrook respectfully asks the Court to account for the differences in experience among J.G.'s counsel and reject an across-the-board $900 rate.

### D.    The **Laffey** matrix

Plaintiff points to the "<u>Laffey</u> matrix" as supporting her requested rates. Supp. Motion at 9-10. However, the <u>Laffey</u> matrix does nothing to support Plaintiff's position.

The <u>Laffey</u> matrix[4] sets hourly rates for attorneys engaged in civil work in the Washington, D.C., metropolitan area based on years of experience. <u>S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.</u>, Civil Action No. 1:16-CV-2871-CAP, 2020 WL 13544121, at *4 (N.D. Ga. Mar. 10, 2020). Although regularly adjusted for cost-of-living changes in the D.C. area, the <u>Laffey</u> matrix has been widely criticized as outdated and irrelevant to legal markets outside of Washington, D.C., including by courts in this district. <u>See, e.g.</u>, <u>Hansraj v. Cooling & Winter LLC</u>, Civil Action No. 1:19-CV-00259-CAP, 2019 WL 13212710, at *5 (N.D. Ga. Oct. 17, 2019) (noting the "limited value" of the <u>Laffey</u> matrix; "It was not designed for use in this district, and any attempt to apply it to this matter by adjusting it for cost of living is speculative, as many factors other than the cost of living account for rate differences across legal markets."); <u>Collett v. Commercial Recovery Sys., Inc.</u>, Civil Action No. 2:13-00098-WCO-JCF, 2013 WL 12382834, at *1 (N.D. Ga. Dec. 3, 2013) ("the Laffey Matrix factors in changes in the *Washington D.C. area* cost of living as part of its computation. . . . Therefore, the court declines to consider the rates states in the Laffey Matrix as part of its analysis.") (emphasis in original); <u>Kinnard v. Kelly</u>, Civil Action No. 1:08-cv-01824-JOF, 2010 WL761230, at *5 (N.D. Ga. Mar. 2, 2010) (discussing matrix, "[w]hat is

---

[4] <u>See</u> <u>Laffey v. Northwest Airlines, Inc.</u>, 572 F. Supp. 354 (D.D.C. 1983).

reasonable in the District of Columbia is not necessarily reasonable in this case where the relevant legal community is Atlanta.").

As one commentator has written, "[A]fter puzzling the profession for 50 years, the Laffey matrix has earned its retirement." William B. Rubenstein, 5 Newberg and Rubenstein on Class Actions § 15:43 (6th ed. June 2025 update) (some punctuation omitted).

Moreover, even if the matrix were considered, it actually undermines Plaintiff's argument for a $900 across-the-board rate, as the matrix demonstrates that lawyers with different levels of experience naturally should earn fees at different rates.


### E.    Improper reliance on offers of settlement

Northbrook agrees with Plaintiff that a "slog" through the Johnson factors is largely redundant as duplicative of factors underlying the lodestar analysis. See In re Home Depot Inc., 931 F.3d 1065, 1091 (11th Cir. 2019); see also Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1352 (11th Cir. 2008) ("The Johnson factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar—doing so amounts to double-counting.").

However, Northbrook does take issue with Plaintiff's touting that the jury verdict "exceeded the last and best pre-trial offer ($500,000) by 80 times," Supp. Motion at 23, and that the result thus "underscores the quality of the legal work of Plaintiff's team as compared to the Defendant's estimation of the case's anticipated outcome." Bouchard Aff. [Dkt. #255-1] at ¶ 29. This argument should be disregarded, for two reasons. First, evidence of settlement offers is inadmissible. Fed. R. Evid. 408. Second, respectfully, the claims in this case were the subject of an underlying (and still ongoing) insurance coverage dispute, which significantly impacted settlement negotiations and any prospect of settlement.[5] Richens Decl. at ¶ 12.

**Conclusion on hourly rate**

Based on all of the foregoing, Northbrook asks the Court to reject Plaintiff's proposed flat rate of $900 for all partners. Instead, Northbrook proposes a base hourly rate of $650, which, consistent with this Court's sanctions award, would apply to Pat McDonough, Oto Ekpo and David Bouchard, given their levels of experience. Blitch Decl. at ¶ 31. For other counsel, (Jonathan Tonge and Rory Weeks), Northbrook proposes $500-550 per hour as a reasonable rate. Id.

---

[5] The coverage dispute is the subject of a separate declaratory judgment action that was before this Court and is now on appeal. Northfield Ins. Co. v. North Brook Indus., Inc. d/b/a United Inn and Suites; and J.G., Case 1:23-cv-03596-SEG (N.D. Ga., filed 8/14/23).

## III.    <u>Number of hours expended</u>

There are several reasons why the number of hours reported by Plaintiff's counsel should be reduced by the Court.

### A.    **Lack of supporting documentation**

Plaintiff has failed to discharge her burden to properly document the hours purportedly incurred.

"[F]ee counsel should . . . maintain[] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." <u>Norman</u>, 836 F.2d at 1303. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

Plaintiff's counsel did not keep contemporaneous records of their hours worked. Plaintiff brushes off this failing, asserting that because Plaintiff's counsel would be paid on a contingency-fee basis (*i.e.*, a percentage of any recovery), there was no need for them to keep records of their time. This is a poor, short-sighted excuse for not keeping time records. Plaintiff's counsel knew from the inception of this case that they were filing a TVPRA claim and that the TVPRA contemplates an award of "reasonable attorneys fees." The claim for fees is made and repeated in Plaintiff's Complaint for Damages. <u>See</u> Dkt. #1 at ¶¶ 82, 115. In

other words, the claim for fees was not an afterthought.  It was always a claim in the case, as framed by Plaintiff's counsel themselves, and thus should have been documented as such.  Blitch Decl. at ¶ 36.

The obvious problem with Plaintiff's attempt to reconstruct a billing history after the fact is that this procedure does not provide sufficient detail for the reader to determine what work was actually performed and whether it was reasonable. Instead, Plaintiff's counsel appear to have essentially reviewed the docket and reconstructed a billing history containing a generalized description of the types of tasks that most likely would have been performed in conjunction with each docket entry.  This approach results in a "block billing" problem and other issues described below.

Plaintiff argues that she compensated for the deficiencies in counsel's recordkeeping and the inaccuracies associated therewith by not billing for certain tasks.  But leaving out some tasks to account for problems inherent in reconstructing records for the others does not solve the problem – it merely exacerbates the extent to which the "documentation" presented by Plaintiff fails to accurately reflect the work performed.

**B.      Block billing**

"'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC, 476 F. App'x 198, 203 (11th Cir. 2012).  "Generally, block billing makes [review of bills] unnecessarily difficult." Capital Inventory, Inc. v. Green, Civil Action No. 1:20-CV-3224-SEG, 2024 WL 1480484, at *6 (N.D. Ga. Feb. 20, 2024) (Geraghty, J.).  It results in imprecision in an attorney's billing records and creates a problem for which the opponent should not be penalized. Ceres, 476 F. App'x at 203 (affirming district court's 10% reduction in hours for counsel's block billing of time).

Plaintiff's charts purporting to show hours expended demonstrate classic, impermissible block billing.  By way of example, the Finch McCranie chart shows entries purporting to capture time for a month's worth (606 hours) of "trial preparation," without breaking down the time spent on specific tasks or identifying who performed them.  See Dkt. #255-4 at 34.  Blitch Decl. at ¶ 37.  Moreover, there is no way to tell whether hours are redundant because it is not clear which person or persons did what.

The Anderson Tate chart fares no better, showing hours spent on "Client Meetings and Intake," "Case Preparation through Discovery," "Trial Preparation

and Trial," and "Post-Judgment," without any breakdown of these hours by task or attorney. <u>See</u> Dkt. #255-9.

Northbrook respectfully asks the Court for a substantial across-the-board reduction in hours due to the failure of Plaintiff's counsel to properly record and present the hours for which they seek an award. <u>See</u> <u>Ceres</u>, 476 F. App'x at 203 ("Courts have . . . approved across-the-board reductions in block-billed hours to offset the effects of block billing.").

### C.    Billing for emails

Plaintiff seeks fees of one-tenth of an hour ("0.1" entries) for *each* attorney or paralegal email in the case. The result: Plaintiff seeks a patently outrageous $727,040 in fees relating just to emails.[6]

The obvious problem with this approach is that it is entirely arbitrary. There is no indication as to what work, if any, was performed in relation to each email. Plaintiff has simply taken some total number of emails (sent and received, apparently) and, without more, assigned time to each one. Aside from not giving a reviewer the opportunity to test these fees for reasonableness and necessity, the approach is easily susceptible to double counting, as emails would naturally be part and parcel of substantive work for which Plaintiff has separately sought fees

---

[6] This breaks down to $684,990 for partners, $7,600 for associates, $34,450 for paralegal. Dkt. #255-4 at 35; 255-9 at 4.

elsewhere in her presentation, Blitch Decl. at ¶ 39, or susceptible to improperly including intraoffice communications, see, e.g., Capital Inventory, 2024 WL 1480484, at *8 ("Courts can and do often apply across-the-board reductions to fee petitions seeking compensation for excessive intraoffice communications."). Plaintiff has utterly failed to satisfy her burden to properly document and justify fees independently related to emails. Northbrook asks that these purported fees be summarily excluded.

### D.    Fees related to insurance coverage action

Plaintiff has improperly included 57.5 hours of partner time and 1.5 hours of paralegal time[7] for work on the separate declaratory judgment action filed by Northfield Insurance Company on the issue of insurance coverage of Plaintiff's claims, and appeal thereof.[8] See Dkt. #255-4 at 38-42.

The issues raised and decided in the insurance coverage matter are separate and distinct from the issues raised in the instant litigation. Indeed, Northbrook and J.G. have a shared interest in a finding of coverage in the declaratory judgment action (with J.G. repeatedly adopting Northbrook's briefing). Northbrook should

---

[7] These claimed fees total $52,125.

[8] Northfield Ins. Co. v. North Brook Indus., Inc. d/b/a United Inn and Suites; and J.G., Case 1:23-cv-03596-SEG (N.D. Ga., filed 8/14/23).

not be charged with J.G.'s fees in the matter.  Northbrook requests that these hours and resulting fees be eliminated entirely from consideration.

### E.   Failure to segregate fees for unsuccessful negligence claim

"Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his [or her] successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  Mills by Mills v. Freeman, 118 F.3d 727, 733 (11th Cir. 1997).

Plaintiff brought two substantive claims in this case:  a claim under the federal TVPRA, and a claim for negligence/premises liability under Georgia law. Plaintiff's state-law claim was disposed of on summary judgment.  [Dkt. # 138] As such, time spent by Plaintiff's counsel on the state-law claim should be excluded in considering the amount of a reasonable fee.

The elements of the claims are distinct and do not overlap.  On summary judgment, argument on the TVPRA focused on two of the four elements of a successful claim under the statute:  whether Northbrook participated in a venture with Plaintiff's traffickers, and whether Northbrook knew or should have known that the venture violated the TVPRA as to Plaintiff.  See generally Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 723-26 (11th Cir. 2021); see also Summary Judgment Order [Dkt. #138] at 10-33.

In contrast, the legal issues under the state-law negligence/premises liability claim focused on a) whether Plaintiff was an invitee as to Northbrook; b) whether it was foreseeable that Plaintiff could suffer injury on the property; and c) whether Northbrook had superior knowledge of a dangerous condition on the property. See, e.g., Memorandum of Law in Support of Defendant's Motion for Summary Judgment [Dkt. #104]. The question of whether Plaintiff was an invitee on the property was an especially hard-fought issue and ultimately the issue on which the Court granted summary judgment to Northbrook. See Dkt. #138 at 33-37. That issue alone was the subject of supplemental briefing in addition to the summary judgment briefing, see Dkt. ## 136, 137. Yet the question of Plaintiff's status as an invitee is entirely unrelated to whether Northbrook is liable to Plaintiff under the TVPRA.

In short, Plaintiff is not entitled to recover those fees attributable to her unsuccessful negligence/premises liability claim. Because Plaintiff has failed to discharge her obligation to segregate her fees between the two claims brought in the case, Northbrook asks the Court to reduce by 50% all fees predating the Court's entry of summary judgment in favor of Northbrook on the negligence claim.

**F.    Plaintiff's expert Darrell Chaneyfield**

Plaintiff's documentation shows more than 52 attorney hours relating to an expert report and deposition of J.G.'s proffered security expert Darrell Chaneyfield, and Northbrook's motion to exclude his testimony.  Mr. Chaneyfield was discredited in Northbrook's motion to exclude [Dkt. ##100, 124, 216 (Order)], and ultimately did <u>not</u> testify at trial.  Plaintiff's effort spent on Mr. Chaneyfield was pointless and, accordingly, Northbrook asks that the associated attorney fees be excluded.  <u>See</u> <u>Fernandez v. Bailey</u>, No. 1:10CV00084 SNLJ, 2010 WL 5399220, at *2 (E.D. Mo. Dec. 23, 2010) ("Fees for experts who do not testify at trial are not recoverable.").

**G.    Focus group exercises**

Plaintiff has included 17 hours of partner time for four separate focus group exercises in advance of trial.  [Dkt. #255-4 at 35.]  However, focus groups and mock trials are strategic luxuries that are not recoverable.  As one court aptly put it, "Although the State may have reasonably believed that a focus group and mock trial were necessary to adequately prepare for trial . . . [t]he State is entitled to recover its fees for preparing for only one trial – the real trial."  <u>Cooke v. Town of Colorado City</u>, No. CV-10-08105-PCT-JAT, 2015 WL 1806751, at *5 (D. Ariz.

Apr. 21, 2015) (disallowing fees for focus group and mock trial). Northbrook asks that these fees be excluded.

### H.    Paralegal fees

Plaintiff's fee request includes 345 hours of time ($86,250.00) incurred by paralegal Melissa Millen. [Dkt. #255-4 (last column, and total at 42.] Fees for paralegal work are recoverable "*only to the extent that the paralegal performs work traditionally done by an attorney*." Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988) (emphasis in original). Here, there is no description of what work Ms. Millen did, nor any indication that such time is for work that would otherwise have been performed by an attorney. Northbrook asks that these fees be excluded.

## IV.    Expenses

In addition to attorney's fees, Plaintiff's Supplemental Motion also seeks litigation expenses. Plaintiff baldly states that she is "entitled to recover reasonable attorney's fees and expenses under 18 U.S.C. § 1595(a)." See Supplemental Motion at 2. In actuality, however, the TVPRA states merely that a plaintiff may recover "damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). The statute makes no mention of a recovery of expenses.

On issues of statutory interpretation, the Court must "start, as always, with the language of the statute," <u>Williams v. Taylor</u>, 529 U.S. 420, 431 (2000), because the best indication of Congress's intent is the "the language of the statute itself," <u>United States v. Steele</u>, 147 F.3d 1316, 1318 (11th Cir. 1998).  In reading statutes, the Supreme Court has instructed lower courts to read words in "their ordinary meaning at the time Congress enacted the statute."  <u>Wisc. Cent. Ltd. v. United States</u>, 585 U.S. 274, 278 (2018) (some punctuation omitted).  Courts must assume Congress "says in a statute what it means and means in a statute what it says there."  <u>Conn. Nat'l Bank v. Germain,</u> 503 U.S. 249, 253-54 (1992).

In the TVPRA, Congress chose to provide for prevailing-plaintiff attorney's fees.  Congress's inclusion of "attorneys fees," but not litigation expenses, demonstrates its intent to provide only the former.  <u>See</u> <u>Christian Coal. of Fla., Inc. v. United States</u>, 662 F.3d 1182, 1192-93 (11th Cir. 2011) (discussing the interpretive canon of *expressio unius est exclusio alterius* – "the mention of one thing implies the exclusion of another").

Consequently, the Northern District of California has rejected the same argument advanced by J.G. here:

> The TVPRA provides that a prevailing plaintiff "may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).  The statute makes no mention of litigation expenses.  <u>See id.</u>  As the United States Supreme Court recently explained, "That 'expenses' and 'attorney's fees' appear in tandem across various statutes shifting litigation costs indicates that Congress understands the two terms to

be distinct and not inclusive of each other." <u>Peter v. Nantkwest, Inc.</u>, 140 S. Ct. 365, 373 (2019).    Thus, **the statute's provision authorizing an award of attorneys' fees does not also authorize an award of litigation expenses.**

<u>Lesnik v. Eisenmann SE</u>, Case No. 16-cv-011230-BLF, 2023 WL 4477211 at \*2 (N.D. Cal. July 11, 2023) (emphasis added).    Consistent with foundational principles of statutory construction, this Court should follow <u>Lesnik</u> and find that the TVPRA does not provide for litigation expenses.

Moreover, even if Plaintiff *were* entitled to an award of litigation expenses, such an award would be limited to those that are reasonable and necessary to the litigation.    Here, however, Plaintiff's request seeks an award of expense items that are unnecessary and inappropriate, including the following:

■    Expenses totaling $6,941.43[9] pertaining to Plaintiff's expert Darrell Chaneyfield and his company, Hospitality's Finest, LLC.    Mr. Chaneyfield did not testify at trial.    <u>See</u> <u>supra</u> at 16.

■    Expenses totaling $4,485.58[10] pertaining to multiple focus group exercises conducted by Plaintiff's counsel.    Fees and expenses relating to focus group and mock trial exercises are not recoverable, <u>see</u> <u>supra</u> at 16.

---

[9] These expenditures are highlighted in Exhibit 3 hereto.

[10] These expenditures are highlighted in Exhibit 4 hereto.

■    $1,429.44 for "[c]hildcare for J.G.'s daughter during trial week." [Dkt. #255-5 at 4.] Upon information and belief, J.G.'s daughter does not live with J.G.; and, even if she did, this is an expense that is tangential to, and not directly related to, the litigation.

■    $2,315.84 for "[l]odging during trial week for JG (6 nights in Atlanta) and business attire and prescription glasses eyewear for JG during Trial." [Id.] Upon information and belief, J.G. lives in the metropolitan Atlanta area, so there is no reason she would need other lodging during the trial. Moreover, Plaintiff's counsel's purchase of clothing and eyewear for J.G. so that she would look a certain way at trial is a strategic trial luxury, not necessary to the conduct of the litigation.

■    Expenses totaling $3,734.21 for Plaintiff's counsel Pat McDonough to stay at the Ritz-Carlton Atlanta, and associated fine dining, during trial.[11] Mr. McDonough's involvement in the actual trial was *de minimis*; he examined one witness on a single day of trial. Moreover, Mr. Donough lives in the Atlanta metropolitan area. There was no need for him to stay in a hotel – let alone the Ritz-Carlton – during trial. Expenditures for the mere convenience or comfort of counsel are not recoverable.[12]

---

[11] These expenditures are highlighted in Exhibit 5 hereto.

[12] "Viewed from another perspective it is doubtful whether counsel would have asked the Plaintiff[] to pay for the same, the very measure of good billing judgment." Beckford v. Dep't of Corr., Case No. 06-14324-CIV-Martinez/Lynch,

Northbrook asks that the Court deny Plaintiff's request for expenses, as expenses are not recoverable under the TVPRA. If the Court deems expenses to be recoverable, then Northbrook asks that the expenditures listed above be excluded as unreasonable and/or unnecessary.

## CONCLUSION

Northbrook respectfully requests that the Court consider the above legal authority and argument in assessing and ruling on Plaintiff's Supplemental Motion. To the extent the Court determines that a hearing (evidentiary, or argument only) on these matters would be helpful, Northbrook stands ready to appear and participate.

## L.R. 7.1(D) CERTIFICATION

The undersigned counsel hereby certifies that this filing has been prepared in Times New Roman (14 point), which are font and point selections approved by the Court in L.R. 5.1(C).

---

2008 WL 11333851, at *4 (S.D. Fla. Sept. 5, 2008) (questioning plaintiffs' counsel's submission of expenses for items such as dry cleaning and a movie).

Respectfully submitted,


 /s/ Dana M. Richens
Dana M. Richens
Georgia Bar No. 604429
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, Georgia  30309
Telephone:  (404) 815-3659
Facsimile:  (404) 685-6959
drichens@sgrlaw.com

Attorney for Defendant
Northbrook Industries, Inc.
d/b/a United Inn and Suites

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date served all parties with the within and foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL MOTION PURSUANT TO LR54.2, NDGa FOR ATTORNEY'S FEES AND EXPENSES** via the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 13th day of October, 2025.


*/s/ Dana M. Richens*