# **Exhibit 2**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J.G.,<br><br>　　Plaintiff,<br><br>v.<br><br>NORTHBROOK INDUSTRIES, INC.<br>d/b/a UNITED INN AND SUITES,<br><br>　　Defendant. | CIVIL ACTION NO.<br>1:20-cv-05233-SEG |

**DECLARATION OF JAMES D. BLITCH IV IN RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

1.　My name is James D. Blitch IV. I make this Declaration pursuant to 28 U.S.C. § 1746. I am more than twenty-one years of age and am competent to present this Declaration, of which I have personal knowledge.

**Overview**

2.　This Declaration is based upon my own personal knowledge about attorney fees in response to Plaintiff's request that she recover her attorney's fees and litigation expenses in the above-styled action.

3.　I have been retained by Dana Richens, lead counsel for Defendant Northbrook Industries, Inc. d/b/a United Inn and Suites ("Defendant Northbrook"),

1

to provide expert testimony as to attorneys' fees. My opinions here pertain to the reasonableness of the hourly rate and number of hours Plaintiff uses in calculating the amount of fees she seeks to recover.

**Qualifications**

4. I am a partner with Blitch Law, PC, a litigation firm in Atlanta that I founded in 2011. I have been a member of the State Bar of Georgia in good standing since 1996 and have practiced in Atlanta since 1999. I have an AV Preeminent Peer Review rating from Martindale-Hubbell, and I have been selected to Super Lawyers in Georgia for business litigation for the years 2009, 2011-2026.

5. I received my J.D. and M.B.A. from the University of Georgia in 1996 after completing a dual-degree program in the School of Law and Terry College of Business.

6. I am a past president of the Atlanta Bar Association (2015-16) and past chair of the Litigation Section of the Atlanta Bar (2010-11). In 2009 I received the Professionalism Award from the Atlanta Bar Association for the "Lincoln on Professionalism" project. In 2013 I received the Distinguished Service Award from the Atlanta Bar Association. I have served on the Board of Governors for the State Bar of Georgia since 2018. In 2021, I served as chair of the Lawyer Referral and Information Service (LRIS) of the Atlanta Bar Association.

7. I routinely practice in the federal and state courts in Georgia. I am admitted to the Eleventh Circuit Court of Appeals and the United States District Courts for the Northern District of Georgia and the Middle District of Georgia. I am also admitted to the Supreme Court of the United States, the Supreme Court of Georgia, and the Court of Appeals of Georgia. I also routinely practice in the courts of sister states by *pro hac vice* admission.

8. My litigation practice covers a wide range of litigation matters in Georgia and other states where my fees are paid based on my customary hourly rate. Claims for attorneys' fees are frequently asserted in cases I am involved with, in which instances I commonly learn the hourly billing rates of attorneys in the case. I consider myself well informed as to the hourly billing rates that attorneys in Atlanta charge, both in federal and state courts. I am well versed in how attorneys keep records of their time and expenses when litigating a case.

9. The hourly rate I am charging for my services as an expert witness on attorney fees in this action is $525; this is also my current hourly rate.

**Case Filings Reviewed**

10. I have reviewed the following filings in this case:

- Complaint (Doc. 1)

- Answer (Doc. 45)

3

- Plaintiff's Motion for Sanctions (Doc. 86) and the Affidavit of David H. Bouchard (Doc. 86-33)

- Order (Doc. 138) on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Sanctions

- Consolidated Pretrial Order (Doc. 215) and Supplemental Consolidated Pretrial Order (Doc. 216)

- Plaintiff's Motion Pursuant to LR54.2 NDGa for Attorney's Fees and Expenses (Doc. 240)

- Plaintiff's Supplemental Motion Pursuant to LR54.2 NDGa for Attorney's Fees and Expenses (Doc. 255) and all of its exhibits

**Legal Authority**

11.     I am familiar with the law as it pertains to an award of attorney fees in federal court under a fee-shifting statute and grounds for objections to fees an attorney seeks to recover. My opinions are guided by my understanding of the law in this area, and the core legal principles that guide my analysis and opinions are set forth below in ¶¶ 12-19.

12.     I have reviewed the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595, and read *Doe #1 v. Red Roof Inn*, 21 F.4th

4

714 (11th Cir. 2021). The TVPRA has a fee-shifting provision that permits an award of reasonable attorney fees. 18 U.S.C. § 1595.

13. I am familiar with the lodestar method for calculating reasonable attorney fees and the Supreme Court's view that the evidence of reasonable attorney fees must be objective. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.").

14. I am also familiar with the twelve *Johnson* factors for an award of attorney fees found in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Following instruction from the U.S. Supreme Court in fee-shifting cases, the Eleventh Circuit views these factors as "largely redundant to the lodestar analysis." *See In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019) (noting it is inefficient for district courts to have to "slog through" the *Johnson* factors when making fee awards); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) ("The Supreme Court elected the lodestar approach because it produces a more objective estimate and ought to be a better assurance of more even results.").

15. "[C]ounsel's declarations on their own do not establish the reasonableness of the hourly rate." *Cap. Inventory, Inc. v. Green*, No. 1:20-CV-3224-SEG, 2024 WL 1480484, at *4 (N.D. Ga. Feb. 20, 2024) (Geraghty, J.). "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299.

16. "[F]ee counsel should ... maintain[ ] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

17. "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task. In *Barnes,* we noted that block billing resulted in 'imprecision' in an attorney's records and described it as a 'problem' for which the opponent should not be 'penalized,' and approved the opponent's solution of dividing each day's hours by the number of tasks listed and assigning the quotient to each task. 168 F.3d at 429. Courts have also approved across-the-board reductions in block-billed hours to offset the effects of block billing." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012) (affirming a district court's discretion in applying a

6

10% reduction to counsel's billing of hours); *see also Cap. Inventory*, 2024 WL 1480484, at *6 (citing *Ceres* as to block billing) (Geraghty, J.)

18. "A party opposing a fee application is obligated to identify the hours that should be excluded from the Court's lodestar calculation in 'specific and reasonably precise' terms." *Gibson v. Wash Box, LLC*, No. 1:17-CV-1965-MHC, 2019 WL 13330952, at *2 (N.D. Ga. Mar. 5, 2019) (Cohen, J.)

19. "[T]he district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941.

**Plaintiff's Hourly Rate**

20. A reasonable hourly rate for Plaintiff's lead attorneys in this action is $650. This rate has already been determined reasonable by the Court in granting Plaintiff's Motion for Sanctions. *See* Order at 54 (Doc. 138) (granting Plaintiff's Motion for Sanctions and awarding Plaintiff $36,075 in fees for 55.5 hours at $650/hour). Further, Mr. Bouchard testified that $650 is a reasonable hourly rate. Affidavit of David H. Bouchard, ¶ 8 (Doc. 86-33). Defendant Northbrook did not object to this hourly rate.

7

21. In my opinion, in the instant request for an award of fees, the hourly rate of $650 should apply to the hours of David Bouchard and Oto Ekpo of the Finch McCranie firm given their level of experience – admitted to practice in Georgia in 2012 and 2009, respectively – and status as partners.

22. I also believe the hourly rate of $650 should apply to the hours of Patrick McDonough of the Andersen Tate Carr firm given his level of experience – admitted to practice in Georgia in 1994 – and status as partner.

23. I do not think the same hourly rate of $650 should apply to the work of Jonathan Tonge and Rory Weeks given that they were admitted in 2016 and 2014, respectively, and are less experienced than Mr. McDonough. It is common for members of a firm to charge different rates based on their level of experience and status within the firm (partner, associate, of counsel), and Mr. Tonge is much less experienced than Mr. McDonough, as is Mr. Weeks who is of counsel.

24. I was surprised to see the affidavits of Mr. Bouchard (Doc. 255-1), Ms. Ekpo (Doc. 255-2), Mr. McDonough (Doc. 255-6), Mr. Tonge (Doc. 255-7), and Mr. Weeks (Doc. 255-8) all use the same hourly rate of $900 regardless of level of experience and standing within their firms. This is not in keeping with market rates for attorneys with different levels of experience based on their years of practice. Further, even if the rates should be the same regardless of experience, these attorney

8

declarations under Eleventh Circuit law do not establish the reasonableness of the chosen hourly rate.

25. Knowing that their own declarations are not sufficient, Plaintiff's attorneys have also provided the Court with an expert opinion on attorney fees through the Declaration of Tiana S. Mykkeltvedt (Doc. 255-11). Ms. Mykkeltvedt states that $900/hour is a reasonable market rate for attorneys who handle sex trafficking cases and should be the hourly rate used in this case.

26. I have a number of concerns about Ms. Mykkeltvedt's opinion that $900 is a reasonable hourly rate that should be used in this case.

27. First, she ignores the fact that the Court has already determined – based on the testimony of Mr. Bouchard and the absence of any objection by Defendant Northbrook – that a reasonable hourly rate is $650. I cannot believe that market rates have increased 38.5% (900/650) since August 16, 2024, the date of the Court's order awarding fees to Plaintiff on her Motion for Sanctions. Ms. Mykkeltvedt offers no proof to support an increase of this amount.

28. Second, Ms. Mykkeltvedt cannot be objective when it comes to sex trafficking cases under the TVPRA and thus cannot satisfy the requirement that evidence about reasonable hourly rates for attorneys must be objective. *See supra* ¶ 13. She states that she has experience with *nine* TVPRA cases filed in federal court

9

where she represents the plaintiff and works with the Andersen Tate Carr firm. Mykkeltvedt Decl., ¶ 6 (Doc. 255-11). She has strong motive to want the attorney fee hourly rate to be high in that this could be used in one of her cases to set the hourly rate at $900.

29. Third, while she states that TVPRA cases are difficult and that "in my experience, defendants in civil sex trafficking cases tended to contest every issue" (*id.* ¶ 8), I see no reason to think that the defendants in these types of cases are any more litigious than defendants in any number of insurance defense cases where issues are vigorously contested. In my view, these types of cases are frequently defended by attorneys who are charging far less than $900/hour.

30. Fourth, I am familiar with the Bondurant firm and know it to be a firm that represents plaintiffs and defendants in "high-stakes litigation," as Ms. Mykkeltvedt states. (*Id.*, ¶ 4.) I know a number of the attorneys at Bondurant and am presently litigating a case in a Georgia court with Bondurant on the other side. I have no reason to disagree with Ms. Mykkeltvedt's assessment of the kinds of cases Bondurant handles. I do, however, disagree with the idea that the types of cases Bondurant handles and the rates their attorneys charge are representative of the wider Atlanta market. My view based on my experience with a wide variety of complex business litigation cases is that there are many attorneys who charge *less than* $900

10

per hour, and I do not think it reasonable or objective to use Bondurant's rates and the rates of attorneys opposite of Bondurant in "high-stakes litigation" as representative of a reasonable rate in the overall Atlanta market.

31.  In sum, I think a reasonable hourly rate to use in this case for awarding attorney fees to Plaintiff should definitely be less than $900, and as already stated, I think the rate of $650 is reasonable for the lead attorneys for Plaintiff. For the attorneys who are not lead counsel, these being Mr. Tonge and Mr. Weeks, my opinion is that an hourly rate of $500-550 is reasonable.

32.  To be clear, my opinions here about reasonable rates should not be interpreted to mean that I think Plaintiff's attorneys are not excellent lawyers. The Finch McCranie and Andersen Tate Carr firms are top-notch firms with excellent trial attorneys. But this does not change my view about what an objective, reasonable hourly rate should be for an award of fees. I believe that rate should be $650.

**Plaintiff's Number of Hours**

33.  I also have concerns about the number of hours Plaintiff's attorneys indicate they have spent on this matter. These concerns come from my examination of the hours set forth in the charts prepared by Finch McCranie (Doc. 255-4) and Andersen Tate Carr (Doc. 255-9).

34. These concerns fall into four categories: (1) impermissible block billing, (2) failure to break down tasks by individual attorneys, (3) inappropriate billing for emails, and (4) unrecoverable hours for insurance coverage claims.

35. First, the attorneys from Finch McCranie and Andersen Tate Carr make the point that attorneys who work on contingency fee cases frequently do not contemporaneously log their hours. Ms. Mykkeltvedt makes the same point. I understand this to be the case with many contingency fee cases.

36. However, the TVPRA has a fee-shifting provision, and attorneys with the level of experience handling TVPRA cases like the attorneys in this case know from the start that there may be an opportunity, outcoming depending, to recover attorney fees. Well-established federal law requires that attorneys *maintain* records showing time spent on tasks in order to recover attorney fees. *See supra* ¶¶ 16-17. Thus, the explanations about how contingency fee cases generally work are not compelling in cases under federal statutes like the TVPRA, and the efforts of Plaintiff's attorneys to recreate their hours have led to problems.

   a. **Finch McCranie Chart**

37. With the Finch McCranie chart (Doc. 255-4), there are two sets of hours for *trial preparation* where they show 288 partner and 57 paralegal hours on 6/9/25-6/27/25, and 216 partner and 45 paralegal hours on 6/28/25-7/6/25. These hours –

606 in total – do not break down time spent on specific tasks by attorney and paralegal. These hours are classic block billing that is not acceptable when awarding fees. Thus, I believe these hours, and any other instances of block billing the Court finds, should be reduced by whatever percent the Court in its judgment thinks appropriate. (This problem could have easily been avoided had the attorneys kept track of their time from the start, knowing that the TVPRA has a fee award provision and that the law requires attorneys to maintain records of their time spent.)

38.  I do not take issue with the hours for *trial* (160 hours) as these hours are the same for each attorney given their presence together in the courtroom and the fact that it would be unreasonable to expect a specific account of hours spent by attorney.

39.  This chart also shows *email correspondence* and seeks recovery for partner emails in amount of 587.5 hours. I am not familiar with recovery for reading emails and understand that dealing with emails is almost always tied up with a specific task. In this instance, the specific emails (which number 4,759 for Mr. Bouchard and 1,116 for Ms. Ekpo) are not included or mentioned in any specific way, leaving one to wonder whether the emails are substantive or cursory (e.g., "I'll call you in 5 minutes."). This is more than just a block billing problem since emails are likely intimately entwined with legal work for which hours are provided

elsewhere. In short, it strikes me as duplicative to try and recover for reading emails, and in this situation, I find it objectionable to recover over $528,750 ($900/hour x 587.5 hours) for reading emails and believe these hours should be removed completely. This objection applies equally to 137.8 paralegal hours for email correspondence.

40. Finally, the Finch McCranie chart shows 21.9 hours for *declaratory judgment action in district court* and 35.6 hours for *declaratory judgment appeal*, for a total of 57.5 hours. These hours are for an issue that pertains to insurance coverage, and thus they are not recoverable in terms of the TVPRA sex trafficking claims that were tried to a jury. Further, from speaking with Dana Richens, I understand that counsel for Plaintiff and Northbrook were aligned in efforts to obtain coverage. In my opinion, these hours should be removed completely from any calculation of fees.

### b. Andersen Tate Carr Chart

41. The Andersen Tate Carr chart shows hours spent on *Client Meetings and Intake, Case Preparation through Discovery* (242.9 hours), *Trial Preparation and Trial* (151 hours (237-86 trial hours)), and *Post-Judgment* (23.6 hours) without any breakdown of these hours by task and attorney. This is block billing that will not suffice for an award of attorney fees, in my judgment.

14

42.   As with the Finch McCranie chart, I do not have objections as to the trial hours (86 hours).

43.   This chart also seeks recovery for *Email Correspondence*, in the amount of $173,340 ($900/hour x 192.6 hours). For these same reasons stated as to the Finch McCranie emails, the 192.6 hours for emails should be removed completely from any calculation of fees, in my opinion.

44.   In short, I believe that the Andersen Tate Carr chart for number of hours spent – after removing all email correspondence hours and allowing for the 86 trial hours without reduction – has problems that require a reduction in hours by whatever percentage the Court in its judgment thinks appropriate.

**Summary**

45.   In sum, my opinions about the Court's award of attorney fees to Plaintiff in this action are as follows:

- A reasonable hourly rate based on the Atlanta market as a whole is $650; this rate should be applied to the hours of Mr. Bouchard, Ms. Ekpo, and Mr. McDonough; a rate of between $500-550 would be reasonable to apply to the hours of Mr. Tonge and Mr. Weeks provided there is a proper showing of their hours;

15

- The *trial preparation* hours for the Finch McCranie firm for its attorneys and paralegal in the amount of 606 hours (Doc. 255-4 at 33) should be reduced by a percentage amount the Court finds reasonable on account of block billing, along with any other instances of block billing;

- All *email correspondence* hours for Finch McCranie in the amount of 587.5 partner hours and 137.8 paralegal hours (Doc. 255-4 at 34), and for the Andersen Tate Carr firm in the amount of 192.6 attorney hours (Doc. 255-9 at 3) should be eliminated altogether;

- After eliminating the email correspondence hours, all other hours of the Andersen Tate Carr firm on its chart – except for *Trial* hours in the amount of 86 hours (Doc. 255-9 at 3) – should be reduced by a percentage amount the Court finds reasonable on account of block billing; and

- The hours of Finch McCranie for work on the declaratory judgment action in the district court and appellate court in the amount of 57.5 total hours (Doc. 255-4 at 37-41) should be eliminated altogether.

46. My opinions in this Declaration are guided by my understanding of the law and how it should be applied to an award of attorney fees in federal court under

a fee-shifting statute based on evidence Plaintiff has put forward. These opinions should not be viewed in any way to suggest that I think Plaintiff's attorneys are anything less than excellent lawyers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This 13th day of October, 2025.

Respectfully submitted,

BLITCH LAW, P.C.

/s/ James D. Blitch IV
James D. Blitch IV
Georgia Bar No. 063405

4200 Northside Parkway, NW
Building 1, Suite 100
Atlanta, Georgia 30327
(404) 221-0401
jim@blitchlaw.com