## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| J.G., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| vs. | : | |
| | : | NO. 1:20-cv-05233-SEG |
| NORTHBROOK INDUSTRIES, | : | |
| INC., D/B/A UNITED INN AND | : | |
| SUITES, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION PURSUANT TO LR54.2, NDGa FOR ATTORNEY'S FEES AND EXPENSES

The parties agree that Plaintiff is entitled to recover reasonable attorney's fees under 18 U.S.C. § 1595(a), and that the Court should apply the lodestar method to calculate those fees. In its objections to Plaintiff's lodestar calculation, Defendant glosses over authoritative caselaw and misconstrues the record. For the Court's convenience, Plaintiff addresses Defendant's objections in the order in which they are raised in Defendant's response brief.

## I. <u>Hourly rate</u>

Plaintiff's hourly rate is reasonable and should be approved.

### A. **The requested $900/hour rate is reasonable.**

Defendant objects to Plaintiff's requested $900/hour rate and contends that the Court has "already established $650 as a reasonable hourly rate in this case in the context of Plaintiff's motion for sanctions." Doc.268 at 3. True, in a discovery dispute, Plaintiff's lead counsel, David Bouchard, asked for a "modest and reasonable rate" of $650/hour, which the Court approved. Doc.86-33 at 2-3. Mr. Bouchard did not say that was his market rate, and the Court did not make such a finding. Mr. Bouchard expressly noted in his affidavit attached to Plaintiff's motion for sanctions:

> I have charged **a range of rates** in my career as a lawyer at Jones Day and at Finch McCranie, LLP working on a variety of matters, including business litigation, tort litigation, and federal criminal litigation. Considering the range of rates I have charged on these matters, as well as the market rates for a lawyer with my experience, **the $650 rate in the chart is a modest and**

1

**reasonable rate. I have been and am involved with now other matters where my rate is materially higher**.

Doc.86-33 at 2-3 (emphasis added). Mr. Bouchard explained in his affidavit attached to Plaintiff's motion for attorney's fees:

> I graduated law school in 2012. **When I left Jones Day in 2019, I was an associate focusing on complex federal litigation, and I was billing my time in the range of $600 - $650/hour. Now, it is 2025, I have been practicing for nearly 14 years, and I am an equity partner at Finch McCranie**. While most of my complex federal litigation work is performed on a contingency basis, I have worked on some hourly matters at Finch McCranie for business and white-collar clients, and in those matters **I have billed clients at or around (and in some cases above) $900/hour.** Likewise, I have billed paralegals at or around (and in some cases above) $250/hour.

Doc.255-1 at 11.

Mr. Bouchard's affidavits about the "range of rates" he charges in the market are credible and unimpeached. *See, e.g., Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) ("What an attorney charges his paying clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'") (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)).

When Mr. Bouchard sought a $650/hour rate for a discovery dispute, he sought a "modest and reasonable" rate because of the special and limited nature of the fees request, *i.e.*, sanctions for Defendant's discovery misconduct. To handle a case from start to finish—from pre-trial investigation through complaint through discovery through motions practice through trial and on appeal—Mr. Bouchard's

market rate is $900/hour. Mr. Bouchard proposed a reduced hourly rate to cover his fees to handle a discrete discovery dispute, but he is now proposing his full market rate to handle a complex federal litigation for five plus years from beginning to end. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates.").

Tianna Mykklevedt, a partner at Bondurant, Mixson & Elmore, LLP, attests in a sworn expert declaration that the requested $900/hour rate is "no more than usual Atlanta market rates," "substantially in accord with prevailing rates for civil sex trafficking litigation in the relevant legal market," and "reasonable given the Atlanta market conditions and the skills, qualifications, experience, and reputation of Plaintiff's Counsel." Doc.255-11 at 9, 8 ("As a part of my duties as a partner in setting rates, I have reviewed billing rate information from several sources, including but not limited to industry resources, publications and private commissioned studies, and other sources… I have also associated co-counsel in various cases and obtained their billing rate as a part of that process.")

Defendant's lead counsel, Dana Richens, challenges the requested $900/hour rate in her affidavit, but does not identify her market rate at Smith, Gambrell & Russell or that of her partners. Doc.268-1. The natural inference is that Defendant's

3

counsel charges a higher rate. In a 2010 opinion on a motion for attorney's fees, Judge Shoob reviewed the billing rates for "four Atlanta law firms included" in *The National Law Journal*'s 2009 survey of "average partner hourly rates." *Kenny A. by Winn v. Perdue*, 1:02-CV-1686-MHS, 2010 WL 11639982, at *7 (N.D. Ga. May 13, 2010). That survey—from **16 years ago**—included Alston & Bird ($602 per hour), Kilpatrick Stockton ($375-$700 per hour), ***Smith Gambrell & Russell ($325-$740 per hour)***, and Sutherland Asbill & Brennan ($420-$800 per hour). *Id.* In the interim 16 years, legal rates have dramatically risen through inflation and price increases, which is confirmed in Ms. Mykklevedt's affidavit and Mr. Bouchard's affidavit.[1]

Both Ms. Richens and Defendant's expert, James D. Blitch IV, suggest that civil TVPRA cases are typically handled by insurance defense firms charging less than $900/hour. Doc.268-1 at 4; Doc.268-2 at 11.[2] Yet Smith, Gambrell & Russell is not an insurance defense firm, and Ms. Richens and Mr. Blitch do not say

---

[1] To counsel's knowledge, the *National Law Journal* has discontinued the survey.

[2] Mr. Blitch has never litigated a TVPRA case, yet he opines: "In my view, these types of cases are frequently defended by attorneys who are charging far less than $900/hour." Doc.268-2 at 11. He does not cite any evidence in support, identify Ms. Richens's rate at Smith, Gambrell & Russell, or discuss the parade of Am Law 200 firms defending hotels in civil trafficking litigation. *See, e.g., Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) (identifying DLA Piper as counsel for Red Roof on appeal, and Jones Day as counsel for *amicus* International Franchise Association). When the *Red Roof* case went to trial before Judge Calvert, Case No. 1:20-CV-05263-VMC, Greenberg Traurig represented Red Roof. The same firms, and their competitors (including Smith, Gambrell & Russell), remain involved in many Section 1595(a) matters—including this litigation.

otherwise. *See* https://www.sgrlaw.com/about-sgr/ ("Since Smith Gambrell Russell began practicing law in 1893, we have pursued a vision of building one of the country's premier full-service business firms."). Of course, Plaintiff's counsel also do not work at insurance defense firms. Whatever rates may be charged by insurance defense firms has no relevance here. That some Section 1595(a) defendants may select firms charging lower rates to defend them has no bearing whatsoever on the reasonableness of the rates proposed by Plaintiff's counsel.

While both Ms. Richens and Mr. Blitch suggest that all Section 1595(a) cases are simple and straightforward, federal judges in this district have emphasized their difficulty. *See, e.g., G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1249 (N.D. Ga. 2024), *reconsideration denied,* No. 1:20-CV-05232-JPB, 2025 WL 494620 (N.D. Ga. Feb. 13, 2025) (Boulee, J.) ("The elements of a [18 U.S.C.] § 1595(a) beneficiary claim have been the source of much debate among the courts."); *C.B. v. Naseeb Invs., Inc.*, 748 F. Supp. 3d 1338, 1341 n.4 (N.D. Ga. 2024) (Totenberg, J.) (analyzing the elements of Section 1595(a) and opining that "[t]he Circuit's more comprehensive revisiting of the statute would be helpful to the district courts handling these difficult issues"). At least five Section 1595(a) cases are currently before the Eleventh Circuit on statutory interpretation questions: *C.B. v. Naseeb Investments*, No. 24-13294 (11th Cir.); *Jane Doe v. G6 Hospitality, LLC,* No. 25-11345 (11th Cir.); *Hare Krishna Savannah Hotel, LLC v. Jane Doe*, No. 25-

90009 (11th Cir.); *A.G. v. Northbrook Industries, Inc.*, No. 25-10816 (11th Cir.); *G.W. v. Northbrook Industries, Inc.*, No. 25-10829 (11th Cir.).[3]

Finally, Mr. Blitch's hourly rate for every matter may be $525/hour. Doc.268-2 at 4. He is a solo practitioner, https://blitchlaw.com/, so his rates are not comparable to the rates of partners at law firms with 10 or more lawyers, like Plaintiff's counsel and Ms. Mykkeltvedt (and Ms. Richens, for that matter). Firms with 10 or more lawyers can (and do) handle large, sophisticated, complex federal litigation matters that a solo practitioner cannot—like this case. The rates charged by a solo practitioner, like Mr. Blitch, are unhelpful. That Mr. Blitch has never litigated a TVPRA case, and that he only reviewed Section 1595(a) and the *Red Roof* opinion to get up to speed for his engagement here, further undermines the reliability of his opinions about market rates in civil TVPRA litigation. *Id.* at 6.

Therefore, the requested $900/hour rate is reasonable.

**B.    Ms. Mykkeltvedt's declaration is reliable and credible.**

Defendant claims that Ms. Mykkeltvedt "cannot be objective" because

---

[3] Defendant stated in the Joint Preliminary Report that this case is "complex" because "it possesses one or more of the features listed below," namely: "extended discovery period is needed," "pending parallel investigations or actions by government," and "multiple use of experts." Doc.19 at 7.

"she represents plaintiffs in TVPRA cases on a contingency-fee basis and thus would stand to benefit from precedent establishing $900 as a reasonable hourly rate in such cases." Doc.268 at 3. The argument does not hold up.

Ms. Mykkeltvedt is not involved in this case. She has no financial interest in the outcome of it. Unlike Defendant's expert (Mr. Blitch), Ms. Mykkeltvedt has litigated numerous civil TVPRA cases. Her experience as lead counsel on such cases *adds* to her expertise, it does not detract from it.

Defendant's objection about Ms. Mykkeltvedt "stand[ing] to benefit" is academic. Ms. Mykkeltvedt is not actively litigating a civil TVPRA case; all the TVPRA cases she has litigated have been resolved. Doc.255-1 at 5-6. This is one of the first civil TVPRA cases to go to verdict in American history, and any conceivable risk of some hypothetical future "benefit" to Ms. Mykkeltvedt is a matter of credibility, not reliability. *See, e.g., United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001) ("Generally, evidence of bias goes toward the credibility of a witness, not his competency to testify, and credibility is an issue for the jury."); *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1312 (10th Cir. 2007) (distinguishing between the credibility of an expert versus the reliability of the principles and methods the expert applied and concluding that payment of the expert's fee goes to credibility). In any event, Ms. Mykkeltvedt, a partner with sterling and unimpeached credentials, is both credible and reliable.

Defendant's argument that Ms. Mykkeltvedt bills at a "premium rate not indicative of a market rate" (Doc.268 at 4) conflicts with what she says in her declaration, (Doc.255-11 at 9 ($900/hour rate is "no more than usual Atlanta market rates," "substantially in accord with prevailing rates for civil sex trafficking litigation in the relevant legal market," and "reasonable given the Atlanta market conditions and the skills, qualifications, experience, and reputation of Plaintiff's Counsel.")) It also ignores Mr. Bouchard's affidavit about his rates at both Jones Day and Finch McCranie. Doc.86-33 at 2-3; Doc.255-1 at 11.[4] Finally, Defendant's dismissal of Ms. Mykkeltvedt as a "premium rate" litigator handling "high-stakes" litigation is self-defeating. Ms. Mykkeltvedt has handled numerous Section 1595(a) cases, which undercuts Defendant's argument that such cases are basic and often handled by lawyers charging lower hourly rates. Defendant's challenges fall short.

### C. Plaintiff considered level of experience in the $900/hour rate.

Contrary to what Defendant argues, Plaintiff *did* provide the Court with a range of market rates through the *Laffey* matrix and affidavits. *See, e.g.*, Doc.86-33 at 2-3 (discussing "range of rates"); Doc.255-1 at 11 (same). Plaintiff proposed a single market rate for Plaintiff's lawyers at a *middle ground* within the range that the individual Plaintiff's lawyers command.

---

[4] Again, Ms. Richens's affidavit is silent as to her market rate, and as to that of her partners at Smith, Gambrell & Russell.

Defendant cites *Norman*, which focuses on the "skill levels" of the lawyers "as measured by quality and quantity of experience." 836 F.2d at 1300. As attested in their affidavits, the lawyers here have a vast "quality and quantity of experience" in civil TVPRA litigation—arguably more than any other lawyers in the country. *See, e.g.,* Doc.255-1 at 6; *see also* Doc.255-6 at 4. Defendant (and Mr. Blitch, who has not litigated a civil TVPRA matter) do not contest the point. It is true that, "[n]o two lawyers possess the same skills," and it is also true that the lawyers here are exceptionally experienced in civil TVPRA litigation. *Norman* authorizes the Court to "interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar." *Id.*; *see also Kenny A. by Winn v. Perdue*, No. 1:02-CV-1686-MHS, 2010 WL 11639982, at *8 (N.D. Ga. May 13, 2010) (Shoob, J.) (approving rates that "are somewhat higher than [] Atlanta averages" because of the "the above average skill and experience of plaintiffs' co-lead counsel and the above average quality of plaintiffs' counsel's work in this case."). The jury verdict in this case speaks for itself, and Mr. Blitch says repeatedly in his affidavit that Plaintiff's counsel are "excellent" lawyers.[5]

***If*** the Court credits Defendant's argument and finds that there should be a range of rates across Plaintiff's counsel, then Mr. Bouchard's rate still should be $900/hour. As he attests in his unchallenged affidavit, he bills at that rate. There

---

[5] Counsel says this not to self-aggrandize, only to address the *Norman* criteria.

is no intelligible basis to distinguish between the rates for Mr. Bouchard and Ms. Ekpo, who are partners, and who have been practicing for 13 and 16 years, respectively. Mr. McDonough, who has been practicing for 34 years, would be entitled to a rate higher than $900/hour. Mr. Weeks, who has been a lawyer for 12 years, and who completed a district court and circuit court clerkship, also commands $900/hour. Mr. Tonge, who has been a lawyer for 9 years, is entitled to close to $900/hour for this case given his unique experience and expertise in Section 1595(a) litigation.

### D.    The *Laffey* matrix supports Plaintiff's request but is not essential to it.

Plaintiff's requested hourly rate is based on Ms. Mykkeltvedt's declaration and the affidavits from Plaintiff's counsel. Through those materials, Plaintiff has discharged her duty to "produce satisfactory evidence … that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 n.11 (1984). As Plaintiff argued, the Court "may also consider" the *Laffey* matrix "in its evaluation of hourly rates." Doc.255 at 9. But the *Laffey* matrix is not essential as a factual matter, because Mr. Mykkeltvedt's declaration and the affidavits from Plaintiff's counsel establish the reasonableness of the requested hourly rate.

### E.    Plaintiff properly analyzed the *Johnson* factors, including the relevance of Defendant's pre-trial settlement offers.

Even though, "[t]he *Johnson* factors are to be considered in determining the lodestar figure," Defendant does not address Plaintiff's analysis of the factors. *Bivins v. Wrap It Up*, Inc., 548 F.3d 1348, 1352 (11th Cir. 2008). Apparently, Defendant does not dispute it with one exception—Plaintiff's argument that the verdict "exceeded the last and best pre-trial offer ($500,000) by 80 times." Doc.268 at 8. Defendant's objection, based on Federal Rule of Evidence 408 and an insurance coverage dispute, does not hold water.

Rule 408 is an evidentiary rule concerning admissibility of settlement communications at trial. It does not apply in the context of this post-trial briefing. The delta between Defendant's pre-trial settlement offer, and the jury's verdict after hearing the evidence, is relevant to measuring the reasonableness of attorney's fees incurred in the process of securing that verdict.

Defendant's post-verdict contention that an insurance coverage dispute "significantly impacted settlement negotiations and any prospect of settlement" may be true.[6] But the insurance dispute is between Defendant and its insurer. It

---

[6] Even if true, Defendant nonetheless presented a fulsome defense at trial and contested liability and damages every step of the way. In its case-in-chief, it called two police officers who worked at the hotel off duty, a hotel security expert, an officer who encountered Plaintiff at Defendant's hotel, and Defendant's owner. In closing argument, Ms. Richens argued for Defendant, "So, ladies and gentlemen,

does not bear on the *Johnson* factors, which the Eleventh Circuit has instructed "are to be considered in determining the lodestar figure." *Bivins*, 548 F.3d at 1352. Plaintiff's counsel does not raise the "80 times" argument to puff; it is part of the *Johnson* analysis. For example, the third factor ("the skill requisite to perform the legal service properly"), the fifth factor ("the customary fee"), the sixth factor ("whether the fee is fixed or contingent"), the eighth factor ("the amount involved and the results obtained"), the tenth factor ("the 'undesirability' of the case"), and the twelfth factor ("awards in similar cases") all pertain to the 80 times argument.

### F.    Conclusion on hourly rate

For these reasons, Defendant's objections to the hourly rate are unavailing and should be overruled.

## II.   Hours

Plaintiff's hours on this historic and unprecedent litigation are reasonable and should be approved.

### A.    Plaintiff's hours are adequately supported.

Fee petitions need not be based on contemporaneous time records. Doc. 255 at 5-7 (citing *Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*,

---

having walked you through these four elements, I submit there is no path to finding in favor of Plaintiff on each of these elements." T.704-705.

706 F.2d 1205 (11th Cir. 1983), *holding modified by Gaines v. Dougherty Cnty. Bd. of Educ.*, 775 F.2d 1565 (11th Cir. 1985); *see also Jean v. Nelson*, 863 F.2d 759 (11th Cir. 1988)). The law Plaintiff has cited is sufficient, on its own, to dismiss Defendant's objection to "lack of supporting documentation."

Defendant derides Plaintiff's counsel for providing a "poor, short-sighted excuse for not keeping time records," (Doc.268 at 9-10), but does not address *Johnson* or *Jean* in its brief. Defendant's argument that "Plaintiff's counsel knew from the inception of this case" that they were seeking attorney's fees under the TVPRA (Doc.268 at 9-10) does not work, because *Johnson* and *Jean* were the law long before Plaintiff's counsel prepared and filed the lawsuit. Defendant's quarrel is with Eleventh Circuit precedent, which governs here.

To the extent *Johnson* and *Jean* do not resolve Defendant's objection, Plaintiff's counsel explained in their sworn affidavits that there is "supporting documentation" for the hours claimed in the form of "contemporaneous hourly records, as well as expense records, emails, pleadings, discovery materials, case files, and calendar entries, among other materials." *See, e.g.,* Doc.255-1 at 8.

Defendant says there are "obvious problem[s]" with "reconstruct[ing] a billing history," (Doc.268 at 10), but *Johnson* and *Jean* approved reconstruction. According to Defendant, reconstructing time "does not provide sufficient detail for the reader to determine what work was actually performed and whether it was

reasonable." *Id.* Defendant speculates that Plaintiff's counsel "appear[s] to have essentially reviewed the docket and reconstructed a billing history containing a generalized description of the types of tasks that most likely would have been performed in conjunction with each docket entry." *Id.* Plaintiff's counsel at Finch McCranie provided a comprehensive, 43-page fee chart, which is corroborated by unimpeached sworn affidavits from lawyers in good standing with the State Bar of Georgia, and which an independent expert attested is reasonable for this litigation. Defendant's blanket objection to the concept of reconstructing time records, without pointing to any specific entries that it challenges, is impermissible and conflicts with *Johnson* and *Jean*.[7]

**B.    Plaintiff's time entries are adequately specific and detailed.**

Defendant's "block billing" objections ignore legal principles and misconstrue the record. In *Norman*, the Eleventh Circuit said that a plaintiff must submit "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each

---

[7] Defendant accuses Plaintiff's counsel of "compensate[ing] for the deficiencies in counsel's recordkeeping and the inaccuracies associated therewith" by omitting time elsewhere. Doc.268 at 11. The requested hours are accurate and supported by sworn affidavits. Plaintiff's counsel has provided seven reasons why the hours requested "are reasonable, conservative, and underinclusive." Doc.255 at 13.

activity." 836 F.2d at 1303. "A well-prepared fee petition" includes "a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* Summary means summary; a fee applicant is "not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983).

Here, Plaintiff's counsel at Finch McCranie provided a comprehensive, 43-page "summary" that "group[s] the time entries by the nature of the activit[ies] or stage of the case." Plaintiff's counsel did not record "in great detail how each minute of [their] time was expended," but that is not required. Defendant does ***not*** challenge the reasonableness of any of the time entries in those 43 pages. Therefore, Plaintiff's counsel has complied with *Norman* and *Hensley*, and Defendant's blanket objections fall flat.

The Supreme Court stressed in *Hensley*, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

Plaintiff's counsel obtained a historic $40 million verdict. The 606 hours that Finch McCranie devoted to trial preparation (across two partner lawyers and

one paralegal) was reasonable in such a momentous case. Defendant does not argue otherwise; it does not claim that the 606 hours were not "reasonably expended" in this litigation that produced an unprecedented verdict. *Id.*

Instead, Defendant claims that Finch McCranie's "trial preparation" hours "demonstrate classic, impermissible block billing." Plaintiff disputes that characterization; she has complied with *Norman* and *Hensley*. Plaintiff's counsel Mr. Bouchard and Ms. Ekpo have attested to the hours they worked each day during the subject "trial preparation" period (*i.e.*, June 9, 2025 – July 6, 2025) and provided a "summary, grouping the time entries by the nature of the activity or stage of the case," which is all that *Norman* requires.  At page 34 of Doc.255-4, the Finch McCranie chart lists the discrete tasks performed for "trial preparation" and "group[s] the time entries by the nature of the activity or stage of the case." From pages 30–34 of the same document, Plaintiff's counsel itemized additional specific tasks that they performed during the subject "trial preparation" period. The foregoing detail distinguishes this case from *Ceres*, where the district court was critical of ambiguous time entries like, "working with [John Doe]," and "continuing work on case." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203–04 (11th Cir. 2012).[8]

---

[8] The Eleventh Circuit has never said that a block bill (assuming *arguendo* that characterization applies here) *requires* a reduction of a fees request. It has found that trial courts did not abuse their discretion for reducing fee requests based on block

Therefore, Defendant's request for a "substantial across-the-board reduction in hours" is unwarranted and should be rejected.

### C.    Plaintiff's time on emails is reasonable.

Defendant does not contest that Plaintiff's counsel has sent and reviewed thousands of emails in this protracted and ongoing five-year litigation. Still, it charges that assigning a time unit of .1 to each email is "patently outrageous" and that all time spent by Plaintiff's lawyers on emails—in a 21st century law practice—should be "summarily excluded." Doc.268 at 13. That cannot be the law in the digital age. The .1 time unit applied by Plaintiff's counsel is reasonable and conservative in this multi-year, complex federal litigation.

There are at least three major flaws with Defendant's argument that time on emails should be excluded because of Defendant's limited "opportunity to test these fees for reasonableness and necessity." *Id.* at 12. *First*, Plaintiff's emails are attorney work product and not discoverable. The Court may opt to review them *in camera*. In the meantime, sworn affidavits by lawyers in good standing with the State Bar of Georgia about the reason and need for the emails suffice.

---

bills. But the Eleventh Circuit has not addressed cases—like this one—where the results were historic and unprecedented, *and* the lawyers itemized time they were omitting (like time preparing the instant motion) for the purpose of being underinclusive and conservative in their fee petitions. *C.f. Kenny A. by Winn v. Perdue*, No. 1:02-CV-1686-MHS, 2010 WL 11639982, at *4 (N.D. Ga. May 13, 2010) (Shoob, J) (approving request for 134.77 attorney and paralegal hours spent on preparing application for fees and expenses).

*Second*, the only emails counted on Finch McCranie's chart are for two partners (Mr. Bouchard and Ms. Ekpo) and a paralegal (Ms. Millen). Ms. Ekpo did not join Finch McCranie until June 2024 and she did not file a notice of appearance in this case until September 10, 2024 (four years after it was filed). That's why Mr. Bouchard has four times more emails on the matter than Ms. Ekpo. There were no unnecessary "intraoffice communications," as Defendant insinuates, for the thousands of emails that Mr. Bouchard has that Ms. Ekpo does not have.

*Third*, and finally, Finch McCranie's lawyers represented Plaintiff on a contingency basis. They were not paid by the hour. As such, they had no interest (or incentive) to pad hours or to waste time on emails. The time that Plaintiff's counsel spent on emails (and other aspects of the case) was necessary to litigate the case to a successful and historic result.

## D.   The insurance coverage dispute is intertwined with this litigation.

Although Defendant and Plaintiff have a "shared interest in a finding of coverage," Section 1595(a) permits recovery of "reasonable attorney's fees" to the prevailing party in the litigation. The insurance coverage dispute only arose because of—and it is inextricably connected with—Plaintiff's instant lawsuit. Without it, there would be no declaratory judgment action. As such, it is part of the "reasonable attorney's fees" requested here.

18

**E.    Plaintiff's unsuccessful negligence claim is intertwined with her successful Section 1595(a) claim.**

Defendant's failure-to-segregate argument falls short under *Hensley* because Plaintiff's claims in her original lawsuit—*i.e.*, Section 1595(a) and negligence—arose from the same facts and were inextricably intertwined.

In *Hensley*, the Court said that "[w]here the plaintiff has failed to prevail on a claim that is distinct ***in all respects*** from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." 461 U.S. at 440 (emphasis added). But where claims "involve a common core of facts" or are "based on related legal theories[,] much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* Such cases "cannot be viewed as a series of discrete claims." *Id.* "Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*; *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1187 (11th Cir. 1983) ("The theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit.").

Plaintiff's Section 1595(a) and negligence claims involved a "common core of facts" and were "based on related legal theories"—*i.e.*, among other things, that Defendant knew or should have known that Plaintiff was a child sex

19

trafficking victim regularly exploited at Defendant's hotel, and that Defendant violated Section 1595(a) and Georgia negligence law by allowing and facilitating her trafficking at the hotel. In discovery, Plaintiff pursued a "common core of facts" to establish her "related legal theories." Given Plaintiff's theories were overlapping and intertwined, Defendant's request that the Court "reduce by 50% all fees predating the Court's entry of summary judgment in favor of Northbrook on the negligence claim" (Doc.268 at 15) is unsupported and should be rejected.

**F.    Attorney time on expert Darrell Chaneyfield is recoverable.**

Defendant cites an out-of-circuit district court case from 2010 to support its novel argument that attorney's fees related to an expert who is not called to testify at trial are not recoverable. Doc.268 at 16 (citing *Fernandez*). Aside from not being authoritative, *Fernandez* is also not persuasive because it concerned a claim for fees under the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, which has a distinct (and inapplicable) legal standard for recovery of attorney's fees. In addition to the lack of caselaw supporting Defendant's argument, there is no basis for the Court to find that "reasonable attorney's fees" under Section 1595(a) do not include fees related to experts who are not ultimately called as witnesses at trial. There are a host of strategic and other reasons counsel may choose not to

call a witness (including an expert) at trial. The "reasonable attorney's fees" analysis does hinge on the call-no call decision.

### G. Plaintiff's focus group exercises were a reasonable expenditure of time in this historic and unprecedent case.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

Defendant calls focus groups "strategic luxuries." Doc.268 at 16. But extensive, methodical, careful preparation for trial is essential to success in any trial. Testing case themes, theories, and arguments with focus groups is a well-established and widely used practice by trial lawyers. It was especially useful here where Plaintiff achieved a historic and unprecedented outcome. Few juries have been asked to address Section 1595(a) cases, and not one has rendered a verdict like that here. There are no pattern jury instructions for Section 1595(a) cases, and as noted, district courts have diverged in their approaches to civil-beneficiary claims. *See, e.g., G.W.*, 739 F. Supp. 3d at 1249 ("The elements of a [18 U.S.C.] § 1595(a) beneficiary claim have been the source of much debate among the courts."). Plaintiff's success at trial did not just happen; it took time and preparation. Defendant's citation to an outlier 2015 opinion from an out-of-circuit district court is unhelpful.

21

**H.    Plaintiff's paralegal fees are reasonable and related to the litigation.**

Defendant asks for paralegal fees to be "excluded" (Doc.268 at 17) because the requested fees do not pertain to attorney work. But Mr. Bouchard attested in his affidavit that he "personally managed and oversaw the preparation of the Attorney's Fees chart submitted by Finch McCranie at Exhibit A-4, and it is a fair and accurate rendering of the ***time devoted by*** Finch McCranie lawyers and ***paralegals to litigating this action***" and that it "only reflects compensable activities under Eleventh Circuit caselaw." Doc.255-1 at 8 (emphasis added). He made a similar attestation about ATC's fees chart.

The Court saw Ms. Millen function as the lead trial paralegal in court; she sat in court every day and served in that indispensable role. As part of her role, she assisted with managing evidence, witnesses, courtroom technology, communications with courtroom staff, and a litany of other essential litigation tasks. Prior to trial, Ms. Millen was the lead paralegal on the case, which entailed typical paralegal functions that would otherwise be handled by an attorney, like preparing initial drafts of various correspondence and other case materials; serving discovery; calendaring; reserving court reporters; preparing subpoenas and deposition notices; proofreading; filing documents with the Court; maintaining the case file; and handling certain client communications, among myriad other litigation tasks. As discussed, Finch McCranie's lawyers

represented Plaintiff on a contingency basis. They were not paid by the hour. As such, they did not have an incentive to direct their paralegal to spend unnecessary time on the case, and they did not do so, as attested in their sworn affidavits.

The Eleventh Circuit has expressly admonished that ratifying Defendant's request—and finding that Ms. Millen's paralegal work is not part of the litigation—is "counterproductive" because it "encourage[s] attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost." *Jean*, 863 F.2d at 778.

## III.  Expenses

Defendant cites a California district court case on expenses that diverges from the law in this circuit. The Eleventh Circuit has held that the prevailing party in a 42 U.S.C. § 1988 litigation is entitled to recover "reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation.'" *Thompson v. Smith*, 805 F. App'x 893, 910 (11th Cir. 2020) (quoting *Dowdell*, 698 F.2d at 1190). The language in § 1988 ("a reasonable attorney's fee") is nearly identical to that in Section 1595(a) ("reasonable attorneys fees"), and there is no reason to conclude that the Eleventh Circuit would find expenses to be recoverable under Section 1988 but not under Section 1595(a). The animating concerns in the *Dowdell* analysis of expenses apply with equal force to expenses in sex trafficking cases under Section 1595(a).

On the expenses Defendant challenges, Plaintiff adopts her earlier explanation regarding Mr. Chaneyfield and the focus groups. Regarding childcare expenses, Plaintiff watches her daughter and needed childcare for her during trial. Regarding Plaintiff's lodging, eyewear, and trial attire, Plaintiff lives in Carrollton, Georgia (approximately 50 miles from downtown Atlanta), so it was not feasible for her to meet with her legal team before and after trial while living in Carrolton. She did not have current prescription eyewear and needed it to review evidence and see witnesses, the Court, and the jury. She needed professional clothing before testifying in front of the jury about child sex trafficking. Finally, Mr. McDonough lives in Alpharetta (approximately 31 miles from downtown Atlanta). He needed to stay near the courthouse, where there are limited options. If Defendant argues that his hotel price is too high, then Plaintiff does not oppose its reduction.

## CONCLUSION

For these reasons, and those set forth in her original motion, Plaintiff's motion for fees and expenses should be approved. If the Court believes that "the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact[,]" then Plaintiff reiterates her request for an evidentiary hearing. *Caplan v. All American Auto Collision, Inc.*, 36 F.4th 1083, 1093-1094 (2022).

This 10th day of November, 2025.

/s/ David H. Bouchard
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859
Oto U. Ekpo
oto@finchmccranie.com
Georgia Bar No. 327088

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing pleading has been prepared with a font and point selection approved by the Court in LR 5.1., NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman font of 14-point size.

Respectfully submitted,

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that Plaintiff, through her attorneys, has served a true and correct copy of the foregoing pleading into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 10th day of November, 2025.

*/s/ David H. Bouchard*
David H. Bouchard
david@finchmccranie.com
Georgia Bar No. 712859

FINCH McCRANIE, LLP
229 Peachtree Street, NE
Suite 2500
Atlanta, Georgia 30303
(404) 658-9070 – Telephone
(404) 688-0649 – Facsimile