UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

Case No. 1:20-cv-05233-SEG

|  |  |
|---|---|
| J.G.,<br><br>       Plaintiff,<br><br>v.<br><br>NORTHBROOK INDUSTRIES,<br>INC., d/b/a UNITED INN AND<br>SUITES,<br><br>       Defendant. |  |

**DEFENDANT NORTHBROOK INDUSTRIES, INC.'S
SUPPLEMENTAL BRIEF ADDRESSING PUNITIVE DAMAGES
PURSUANT TO THE COURT'S ORDER DATED MARCH 30, 2026**

**INTRODUCTION**

Northbrook Industries did not traffic J.G., yet a jury punished Northbrook as though it were the trafficker itself through a $30 million punitive damages award.  No one condones the horrific tragedy that J.G. suffered or disputes the devastating harm she endured.  But the due-process clause of the Fifth Amendment simply does not permit a community's outrage over a crime to be foisted onto a party who did not commit it, especially at three times the rate of compensation.  Facing an unconstitutionally excessive $30 million punitive-damage verdict, Northbrook has moved for judgment as a matter of law.  [Doc. 247.]  And this Court has indicated that it finds Northbrook's arguments "persuasive . . . and . . . is seriously considering reducing the punitive damages award."  [Doc. 277.]

Since the filing of that motion, the Eleventh Circuit issued *Edwards v. Grubbs*, No. 24-12787, 2026 WL 706637 (11th Cir. Mar. 13, 2026).  In *Edwards*, the Eleventh Circuit affirmed a district court's reduction of punitive damages from $20 million to $1 million.  *Edwards* strengthens Northbrook's position.  It confirms that even a 1:1 ratio of compensatory-to-punitive damages can be unconstitutionally excessive and establishes that a party who fails to propose an alternative maximum award forfeits the ability to contest the figure the court selects.  *Edwards*, 2026 WL 706637, at *14–15.  Northbrook respectfully submits that if this Court sustains any punitive damages award, the

1

constitutional maximum supported by this record is $250,000.[1]

## DISCUSSION

### I. *EDWARDS* CONFIRMS THE COURT HAS A MANDATORY DUTY TO VACATE OR REDUCE CONSTITUTIONALLY EXCESSIVE PUNITIVE DAMAGES

As discussed in Northbrook's motion, the due-process clause of the Fifth Amendment protects a defendant's constitutional right not to face a "grossly excessive" amount of damages, *even as a punishment. Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999) (citing *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 454 (1993)). This is not a discretionary matter like motions for remittitur. *Id.* at 1331. Motions under Rule 50 seek "the entry of judgment for a constitutionally reduced award." *Id.* In such cases, "a court has a *mandatory* duty to correct an unconstitutionally excessive verdict." *Id.* (emphasis added).

*Edwards*, citing *Johansen* approvingly, reaffirms the mandatory nature of this correction. 2026 WL 706637, at *10–11 (distinguishing discretionary motions for remittitur and mandatory motions under Rule 50). Accordingly, "a court proceeds under Rule 50 . . . in the entry of judgment for a constitutionally

---

[1] Pursuant to the Court's order, Northbrook addresses only the issue of reducing the punitive damage award consistent with the analysis from *Edwards*. By filing this supplemental brief, however, Northbrook does not intend in any way to abandon its position that the punitive damages award should be vacated in whole. [Doc. 247, at 19–24.]

reduced award." *Id.* at *11 (quoting *Johansen*, 170 F.3d at 1331).

## II.    ALL THREE *BMW* GUIDEPOSTS SUPPORT VACATUR OR A DRAMATICALLY LOWER AWARD

In *BMW of North America v. Gore*, 517 U.S. 559 (1996), the Supreme Court established three "guideposts" for determining whether an award exceeds "the upper limit" permitted by the Constitution and whether the defendant had such fair notice:

(1) the degree of reprehensibility of the defendant's conduct;

(2) the ratio of punitive damages to the actual harm inflicted on plaintiffs; and

(3) the comparison between punitive damages and potential civil or criminal penalties for defendant's conduct.

*Id.* at 575; *Johansen*, 170 F.3d at 1333; *Edwards*, 2026 WL 706637, at *10.

Here, when considering the facts presented at trial and the Eleventh Circuit's line of case law, the jury's award of $30 million in punitive damages exceeds "the upper limit" for which due process allows and is unconstitutional as a matter of law.  In light of *Edwards*, this conclusion is now even clearer.

The facts of *Edwards* are instructive.  The defendant was a police officer who, without warning, deployed a taser against the back of an unarmed individual, sending him down a thirty-foot embankment, where he suffered traumatic brain injury and was left quadriplegic.  2026 WL 706637, at *1–2. The jury awarded the individual's guardian $100 million—$60 million against

3

the city, $20 million in compensatory damages against the officer, and $20 million in punitive damages against the officer. *Id.* at *2. Post-trial, the district court reduced the punitive damages from $20 million to $1 million. *Id.*

### A.    Reprehensibility: Northbrook's Conduct Is Far Less Reprehensible Than the Defendant in *Edwards*

The first guidepost established by the Supreme Court—the degree of reprehensibility of the defendant's conduct—is "[p]erhaps the most important indicum of the reasonableness of a punitive damages award." *BMW*, 517 U.S. at 575. *BMW* identifies factors for reprehensibility: physical vs. economic harm, indifference to health/safety, targeting vulnerable victims, repeated conduct, and malice/deceit. *Id.* at 575–76.

Certainly, "the crime of forced labor and trafficking is particularly depraved." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 27 (D.D.C. 2013). But *Northbrook* did not personally harm J.G.; *the trafficker* did. *Northbrook* did not target J.G.; *the trafficker* did. *Northbrook* had no malice towards J.G., nor did it deceive J.G.; these were mental states of *the trafficker*. On these factors alone, the punitive-damage award is "suspect." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.").

*Edwards* makes this conclusion inescapable. In *Edwards*, the

4

defendant-officer's actions caused direct and severe physical harm to a specific victim.  2026 WL 706637, at *1–2.  But that did not justify a $20 million punitive-damage award, as the court found the officer was "not motivated by intentional malice."  *Id.* at *12.

Conversely, the trial record established, at most, that Northbrook failed to act on circumstantial red flags: cash payments, foot traffic, and other passive indicators.  [Trial Tr. vol. 3, at 344:23–345:3, 381:19–382:10.]  The owner of the hotel denied knowledge of minors being involved, and no evidence showed intentional indifference beyond routine operations at the hotel.  [Trial Tr. vol. 2, at 98–205.]

Just as inflicting direct physical harm in *Edwards* could not sustain a 1:1 ratio of punitive damages, passive failure to act is even less compelling under the due-process clause to sustain a higher ratio of 3:1.  The first guidepost supports Northbrook's motion.

### B.    Ratio:  A  3:1  Punitive-to-Compensatory  Ratio  Is Unconstitutional on These Facts

After careful consideration and thorough analysis, the Eleventh Circuit affirmed the district court's reduction of punitive damages down to a 1:1 ratio. *Edwards*, 2026 WL 706637, at *13.  This baseline reinforces the conclusion here that a 3:1 ratio exceeds the "outer limits" of constitutionally permissible punitive damages.

Even if this Court were to probe further than the basic comparator of 3:1 versus 1:1, a reduction of punitive damages here is necessary because due process prefers a sliding scale in this comparative analysis between *compensatory damages* and punitive damages. *Edwards* noted that higher compensatory damages tend to reduce the amount of punitive damages— simply, for no reason other than the fact that the compensatory damages are substantial. *Edwards*, 2026 WL 706637, at *13 (citing *State Farm*, 538 U.S. at 425) ("When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."). *Johansen* is but another example of this principle in action. *Edwards*, 2026 WL 706637, at *13 (citing *Johansen*, 170 F.3d at 1334) ("[T]he ratio of compensatory and punitive damages in this case must necessarily account for the high compensatory award.").

The $10 million compensatory-damage award to J.G. is substantial, and the 3:1 ratio of punitive damages is unconstitutionally excessive. If the judgment is allowed to stand, Northbrook maintains that the $10 million compensatory damages award fully compensates J.G. A three-times' award of punitive damages serves no purpose and violates due process.

### C. Comparable Sanctions: Statutory Penalties Anchor the Constitutional Maximum

The third guidepost requires comparing "the punitive damages award

and the civil or criminal penalties that could be imposed for comparable misconduct." *BMW*, 517 U.S. at 583. Due process demands that a defendant have fair notice of potential punishment, and that notice comes from "the available civil and criminal penalties the state provides for such conduct." *Johansen*, 170 F.3d at 1337.

*Edwards* is instructive on this guidepost for two reasons. First, the Eleventh Circuit justified the reduction based on the *demonstrable* contrast between the punitive damages initially awarded and the penalties imposed under comparable criminal statutes. 2026 WL 706637, at *13. Second, *Edwards* looks to "comparable cases" to gauge a constitutionally permissible amount. *Id.* Both inquiries compel vacating or reducing the punitive damages.

The TVPRA's criminal penalties under 18 U.S.C. § 1591 impose fines from $250,000 to $500,000 for *actual traffickers*. *See* 18 U.S.C. § 3571(b), (c). Georgia law caps punitive damages at $250,000 absent specific intent. O.C.G.A. § 51-12-5.1(g). The $30 million punitive-damage award against Northbrook—a non-trafficker—is 60 to 120 times the maximum criminal fine imposed on the trafficker directly. No principle of fair notice can support this disparity.

The pattern across TVPRA litigation is equally telling. In the overwhelming majority of cases where a court has calculated punitive damages, the defendant was a *direct perpetrator*—a trafficker, a forced-labor

7

employer, or a person who committed some underlying crime in furtherance of the TVPRA violation.  Still, the punitive-damage awards were far lower than a 3:1 ratio and $30 million.

- In *Carazani*, the defendant was *the trafficker*, not a third-party purveyor or enabler.  972 F. Supp. 2d at 26–27.  The district court awarded $543,041.28 in punitive damages, *id.*, which is in line with the fines assessed under 18 U.S.C. § 1591, *see* 18 U.S.C. § 3571(b), (c), and nearly 60 times lower than the punitive damages awarded here.

- In *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019), the Fourth Circuit affirmed a 2:1 ratio when the compensatory damages were limited to $1 million.  *Id.* at 238.

- In *Arreguin v. Sanchez*, 398 F. Supp. 3d 1314 (S.D. Ga. 2019), a court within this District awarded a 2:1 ratio against a defendant who personally recruited workers from Mexico, transported them to Georgia, forced them to work without pay under threats of deportation, and subjected them to dangerous and deplorable living conditions for weeks.  *Id.* at 1329.  Even there— against a direct perpetrator of sustained and egregious conduct in this very district—the court awarded only 2:1.  *Id.*

- In *Ross v. Jenkins*, 325 F. Supp. 3d 1141 (D. Kan. 2018), the court awarded a 1:1 ratio against a religious group leader and religious organizations for forced labor and trafficking of a former member of the religious group that began when he was 11 years of age.  *Id.* at 1175.

Comparable cases demonstrate the ceiling for TVPRA cases is a 2:1 ratio; the common award is 1:1.  And Northbrook has not identified a case where the compensatory damages were as substantial as $10 million.  Northbrook received a 3:1 ratio with high compensatory damages as a *non-perpetrator third party*.  All three *BMW* guideposts compel vacatur or a dramatic reduction.

8

III. **CONSISTENT WITH *EDWARDS*'S PARTY-PRESENTATION PRINCIPLE, THE AWARD SHOULD BE REDUCED TO NO MORE THAN $250,000**

Finally, *Edwards* makes clear that the parties—not the court—bear the responsibility of proposing a constitutionally permissible figure. A party that takes an all-or-nothing position and fails to "suggest any alternative lower figure" forfeits its ability to contest the number the court selects, leaving the court to adopt whatever figure is presented. *Edwards*, 2026 WL 706637, at *14–15. If this Court finds vacatur not to be proper, Northbrook submits that the record supports a reduction to $250,000 for four reasons.

*The TVPRA criminal fine ceiling of $500,000 on actual traffickers under 18 U.S.C. § 3571(b), (c).* A punitive award against a third-party hotel operator should not constitutionally exceed the criminal fine imposed on the perpetrator of the very crime at issue. $500,000 is the maximum criminal fine for an actual trafficker. It was the benchmark in *Carazani*.

*The comparable-case anchor.* The 3:1 ratio here is an outlier. The case law supports anywhere from 1:20 in *Edwards* to 2:1 in *Roe* and *Arreguin*.

*The Georgia statutory cap.* While the Georgia cap does not apply directly in this federal action, it is a relevant benchmark under the third *BMW* guidepost. The $250,000 reflects the state's assessment about the appropriate outer limit of punishment for conduct without specific intent, and Northbrook's conduct did not rise to that level.

9

*The sliding scale. Edwards* makes clear that the higher compensatory damages should yield lower punitive damages. The $10 million compensatory-damage award is higher than every comparative case found by Northbrook. The punitive damages should account for this high compensatory award.

All four methodologies point to the same number. The constitutional maximum on this record should be no more than $250,000.

## CONCLUSION

For the reasons stated in Northbrook's motion and this supplemental brief, the $30 million punitive-damage award is unconstitutionally excessive and must be vacated. Alternatively, all three *BMW* guideposts and *Edwards* compel reduction to no more than $250,000.

                                        Respectfully submitted,

/s/ Dana M. Richens                     /s/ Jack R. Reiter
Dana M. Richens                         Jack R. Reiter
Georgia Bar No. 604429                  Florida Bar No. 0028304
SMITH, GAMBRELL & RUSSELL, LLP          GRAYROBINSON, P.A.
1105 W. Peachtree NE, Suite 1000        333 SE Second Avenue, Suite 3200
Atlanta, Georgia 30309                  Miami, Florida 33131
Telephone: (404) 815-3659               Telephone: (305) 416-6880
Facsimile: (404) 685-6959               Facsimile: (305) 416-6887
drichens@sgrlaw.com                     jack.reiter@gray-robinson.com
*Attorney for Defendant Northbrook*     *Admitted Pro Hac Vice*
*Industries, Inc., d/b/a United Inn and*
*Suites*

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)

I hereby certify that the foregoing **DEFENDANT NORTHBROOK INDUSTRIES, INC.'S SUPPLEMENTAL BRIEF ADDRESSING PUNITIVE DAMAGES PURSUANT TO THE COURT'S ORDER DATED MARCH 30, 2026** has been prepared with a typeface and point selection approved by the Court in LR 5.1, NDGA.  Specifically, the above-mentioned pleading was prepared using Century Schoolbook typeface in 13-point font size.

/s/ Jack R. Reiter

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date filed the within and foregoing **DEFENDANT NORTHBROOK INDUSTRIES, INC.'S SUPPLEMENTAL BRIEF ADDRESSING PUNITIVE DAMAGES PURSUANT TO THE COURT'S ORDER DATED MARCH 30, 2026** using the Court's CM/ECF electronic filing system, which will automatically provide notice of filing constituting service to all counsel of record.

This 27th day of April 2026.

/s/ Jack R. Reiter