UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J.G.,

     Plaintiff,

v.

NORTHBROOK INDUSTRIES, INC.
D/B/A UNITED INN AND SUITES,

     Defendant.

CIVIL ACTION FILE

NO. 1:20-cv-5233-SEG

## PLAINTIFF'S SUPPLEMENTAL BRIEF ON CONSTITUTIONALITY OF PUNITIVE DAMAGES IMPOSED ON UNITED INN

ANDERSEN, TATE & CARR, P.C.

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com


One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, GA 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

FINCH McCRANIE, LLP

DAVID H. BOUCHARD
david@finchmccranie.com
Georgia Bar No. 712859
OTO U. EKPO
oto@finchmccranie.com
Georgia Bar No. 327088




229 Peachtree Street, NE
Suite 2500
Atlanta, GA 30303
(404) 658-9070 | Telephone
(404) 688-0649 | Facsimile


*Attorneys for Plaintiff*

## INTRODUCTION

The jury's $30 million assessment of punitive damages against United Inn is constitutionally valid and should remain unchanged. Nothing in *Edwards v. Grubbs*, 169 F.4th 1261 (11th Cir. 2026), suggests otherwise. That is confirmed by *Faulk v. Dimerco Express USA Corp.*, --- F.4th ----, 2026 WL 936026 (11th Cir. Apr. 7, 2026). Should the Court disagree, any reduction should be to the constitutional limit.

## ARGUMENT

### I.    The records in this case and *Edwards* tell wildly different tales.

This case is not like *Edwards*.[1] The factual and legal differences are legion. That is why *Edwards* does not support reducing the punitive-damages verdict here.

Start with what happened in *Edwards*. Officer Jon Grubbs tased an unarmed, 65-year-old homeless man in the back after the man ran when Grubbs approached him for panhandling near an on-ramp to Interstate 20 in Atlanta. The man, Jerry Blasingame, fell down an embankment and hit his head. Officer Grubbs called 911. The fall left Blasingame with a traumatic brain injury and a spinal injury rendering

---

[1] J.G. first addresses the record differences between *Edwards* and this case because the Court directed the parties to "submit supplemental briefing addressing [the] applicability" of *Edwards* "to the present case." Doc. 277 at 3. In doing so, the Court observed that *Edwards* noted the "'difficulty'" of "'trying to figure out the maximum amount of punitive damages that a jury could have constitutionally awarded' **on the record before it**." *Id.* at 3 (quoting *Edwards*) (emphasis added). After outlining the record differences, J.G. explains why the punitive-damages assessment should stand.

him quadriplegic. *See* 169 F.4th at 1271–73. Blasingame's guardian and conservator sued Grubbs under 42 U.S.C. § 1983 and for state-law assault and battery. *Id.* at 1273. The jury awarded compensatory damages of $20 million and imposed punitive damages of $20 million. *Id.* at 1274. At trial, plaintiff's counsel introduced no evidence of Officer Grubbs' financial condition, Ex. 1 at 1533, 1531, and devoted only half a transcript page to arguing punitive damages, *id.* at 1580–1581. There was no evidence that Officer Grubbs had misused his taser before or that other officers in Atlanta (or nationally) did so.

Compare that with what happened here. As a child, J.G. was sold for sex for weeks at United Inn, a commercial-sex crimes "hotspot" and one of DeKalb County's "top five" worst hotels for those crimes. When J.G. was trafficked at United Inn, she was not alone: as many as 10 to 20 girls or women were being sexually exploited at the hotel at any given time.[2] J.G. was trafficked in rooms and the parking lot, where about half of the sex buyers directed her. When hotel staff entered the rooms where J.G. was trafficked, the rooms were littered with criminal paraphernalia; still nothing changed. United Inn ignored police recommendations to hire more security; refused to post mandatory anti-trafficking notices; skipped training

---

[2] J.G. was trafficked at United Inn twice: first for about 35 days from October to November 2018; and second for several days in January 2019—when she and three more children were brought to the hotel to be sold for sex. One of J.G.'s October traffickers was still living there in January and still operating his businesses.

its staff on sex-trafficking indicators; and lied about using off-duty police officers working at the hotel to run staff background checks (several had criminal records). Worse, United Inn received multiple BOLO notices identifying J.G. as a missing child—with her name, picture, age, and physical description—while she was being trafficked, but United Inn did nothing with them. United Inn did, however, continue to sell J.G. condoms for weeks *after* receiving the BOLOs while scores more men exploited her. Plus, United Inn's night manager (the only hotel staff most of the night) acted as a lookout for J.G.'s trafficker. J.G. did not feel "safe going to staff at United Inn to report what was happening" because "they were helping" her exploiters. Doc. 262 at 27.[3] The jury awarded $10 million in compensatory damages and imposed punitive damages of $30 million. At trial, J.G. adduced evidence of United Inn's efforts to sell the hotel for $6.8 million and argued in closing about the need to deter complicit hotels in Georgia and nationwide.

The chart below highlights some key record differences between the cases.

| *Edwards* | *J.G.* |
|---|---|
| Individual Defendant (law enforcement officer) | Corporate Defendant (hotel with insurance) |
| Victim was fleeing adult suspect *Edwards*, 169 F.4th at 1271 | Victim was runaway 16-year-old child |

---

[3] United Inn rented rooms to children without proper identification. T.293–94, 251.

| *Edwards* | *J.G.* |
|---|---|
| Single incident under one minute<br>*Edwards*, 169 F.4th at 1285 | Scores of incidents over 35 days<br>Doc. 262 at 3–4[4] |
| Officer called ambulance and attempted to help suspect<br>*Edwards*, 169 F.4th at 1285 | Hotel disregarded BOLOs, front desk clerk helped J.G.'s trafficker, and hotel rented rooms to children without IDs<br>Doc. 262 at 4–5, T.293–94, 251 |
| Officer did not try to "cover up" what happened<br>*Edwards*, 169 F.4th at 1285 | Hotel owner impeached at trial about knowledge of commercial-sex crimes on property<br>Doc. 262 at 27 |
| No evidence of pattern of misconduct—"isolated" incident<br>*Edwards*, 169 F.4th at 1285 | Extensive pattern evidence<br>(child victimized at hotel known as vice den that disregarded security recommendations and Georgia laws)<br>Doc. 262 at 2–3 |
| No specific notice of risk—no warnings about embankment | Repeated specific notice of risk—BOLO notices about J.G.<br>Doc. 262 at 4–5 |
| No evidence of officer's financial condition<br>Ex. 1 at 1533, 1531 | Evidence of hotel's financial condition—$6.8 million proposed sale based on occupancy and profitability<br>Doc. 262 at 3 n.2 |
| No deterrence evidence—no evidence that Defendant or other officers misused tasers at other times | Significant deterrence evidence—United Inn was one of the worst hotels in DeKalb County for vice crimes<br>Doc. 262 at 3; T.672–73, 737 |
| State and federal claims | Federal claim only |
| Extensive examples of punitive damages under § 1983 | Limited examples of punitive damages under § 1595 |

---

[4] Cites are to the CM-ECF page numbers stamped on the top of the filed document.

| *Edwards* | *J.G.* |
|---|---|
| Half page of jury argument on punitive damages Ex. 1 at 1580–81 | More than 10 pages of jury argument on punitive damages T.729–38 |

Given these many material factual and legal differences, the Court should not rely on *Edwards* to reduce the punitive damages against United Inn.

## II.     All three *Gore* guideposts support the constitutionality of the jury's assessment of punitive damages against United Inn.

The Court evaluates the constitutionality of a punitive-damages verdict by following three "guideposts": (1) "the degree of reprehensibility" of United Inn's conduct; (2) "the disparity between the harm or potential harm suffered by" J.G. and the punitive damages imposed on United Inn; and (3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *BMW of N. Am. v. Gore*, 517 U.S. 559, 574–75 (1996). Here, all guideposts support the jury's verdict. That makes this case profoundly different from *Edwards*, where two guideposts undercut constitutionality and the third was neutral. Because *Edwards* is inapposite, the Court should not rely on its reasoning to find a reduction necessary.

## III.     United Inn's misconduct was exceedingly reprehensible.

The first guidepost—"the degree of reprehensibility"—is "[t]he most important." *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 417 (2003). It is "essentially a judgment about facts" for "the district court" to make. *Edwards*, 169

5

F.4th at 1282 (citation modified). Following *State Farm*, the reprehensibility assessment focuses on five factors: (1) "whether the harm caused was physical as opposed to economic"; (2) whether the misconduct "evinced an indifference to or a reckless disregard of the health or safety of others"; (3) "whether the target of the conduct was financially vulnerable"; (4) "whether the conduct involved repeated actions or was an isolated incident"; and (5) "whether the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Faulk*, 2026 WL 936026, at *13 (citation modified). "[R]eprehensibility grows more likely as more factors are present." *Cote v. Philip Morris USA, Inc.*, 985 F.3d 840, 847 (11th Cir. 2021).

In *Edwards*, the district court (Judge Steve Jones) found that "Officer Grubbs' conduct was reprehensible but not overly egregious." 169 F.4th at 1284; Order at 23–27, *Edwards v. Grubbs*, No. 1:19-cv-2047 (N.D. Ga. Aug. 9, 2024), ECF No. 270. That finding largely drove Judge Jones' reduction to $1 million and the Circuit's affirmance, *see* Order at 35 ("*With particular emphasis on the Court's determination of some, but overall, minor reprehensibility*, the Court concludes that an equal punitive damages award to the already large compensatory damages awarded in this case cannot stand." (emphasis added)); *Edwards*, 169 F.4th at 1285 ("Officer Grubbs' conduct, though reprehensible, was not so egregious as to support a $20 million award.").

The record here, however, proves that United Inn's misconduct was not only

6

"minor" or "isolated" or "not so egregious." Each reprehensibility factor favors J.G.

*One.* The first factor strongly favors J.G. because she suffered severe physical and mental trauma. *See Faulk*, 2026 WL 936026, at *13 (holding that "emotional harm" is physical, not economic). United Inn foists all blame on J.G.'s traffickers. *See* Docs. 247 at 21–22; 267 at 9. That's wrong. Because TVPRA civil liability is joint and several, Doc. 204 at 2–4, and the jury found United Inn proximately caused J.G.'s harm, *see* Doc. 231 at 16, United Inn is to blame for all harm J.G. suffered at the hotel. *See Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017) ("If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm . . . ."). United Inn's refusal to accept any responsibility in litigation or at trial justifies high punitive damages. *See Andrews v. Autoliv Japan, Ltd.*, 669 F. Supp. 3d 1273, 1319 (N.D. Ga. 2021) (Jones, J.) (imposing punitive damages of $100 million after bench trial based in part on recalcitrance).

*Two.* The second factor strongly favors J.G. because United Inn's misconduct—profiting from J.G.'s exploitation—evinced indifference to or reckless disregard of others' health or safety. United Inn "knew or should have known that the common undertaking or enterprise engaged in an act in violation of the TVPRA *as to the Plaintiff*." Doc. 231 at 10 (emphasis added).[5] Because United Inn knowingly

---

[5] After the trial, the Eleventh Circuit held that the "as to the Plaintiff" language in *Red Roof* was dicta—and wrong. "The plain language of § 1595(a) does not support *Red Roof*'s requirement that a victim asserting a beneficiary claim must prove a

benefitted financially with actual or constructive knowledge that J.G., a child, would be sold for sex, its misconduct "was outrageous, either because of [its] evil motive or reckless indifference to the rights of others." Doc. 232 at 1. That knowingly making money from child-sex trafficking shows indifference to or reckless disregard of others' health and safety is, as near as possible, self-evidently true.

*Three.* The third factor strongly favors J.G. because she was a financially vulnerable missing child who was serially exploited at United Inn for weeks.

*Four.* The fourth factor strongly favors J.G. because United Inn's profiteering from J.G.'s trafficking was hardly an isolated incident. From October to November 2018 and in January 2019, J.G. was exploited by scores of men for approximately **35** days at United Inn, including after the hotel received multiple BOLOs about J.G. And each day J.G. suffered, United Inn cashed in. But United Inn's profiteering from the hotel's commercial-sex-trade "problem"—including the sex trafficking of more children—didn't start or stop with J.G. The evidence showed that United Inn was a vice "hotspot" for years—which, in turn, raised occupancy rates and revenue so that the owners could try to sell the hotel for their preferred price of $6.8 million.

United Inn's repeated profiteering from the exploitation of J.G. (and others)

---

defendant's knowledge that the common enterprise engaged in a TVPRA violation *as to the victim*." *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1270 (11th Cir. 2026). Instead, "Section 1595's knowledge element requires constructive or actual knowledge that the undertaking or enterprise violated the TVPRA, nothing more." *Id.* So J.G. prevailed despite being held to a *higher* burden of proof.

distinguishes this case from *Edwards*, where Officer Grubbs' misconduct (unconstitutional use of excessive force) was "an isolated incident" occurring over seconds that did not involve a profit motive. *Edwards* Order at 26; *Edwards*, 169 F.4th at 1285 (emphasizing that "this constitutional violation was isolated" and that the "entire chase and use of force lasted less than one minute"). United Inn's multiyear pattern of making money from the commercial-sex trade of women and girls makes this case more like *Faulk*, where the company's "racially motivated hiring practices were consistent with its refusal to hire [the plaintiff]." 2026 WL 936026, at *14. In *Faulk*, that fact meant "[t]he fourth factor strongly favors [the plaintiff]." *Id.* The Court should reach the same conclusion here.

**Five.** The fifth factor strongly favors J.G. because United Inn knowingly benefited financially from J.G.'s sex trafficking while it knew or should have known it was doing so. That is no "mere accident." It is "outrageous" complicity that shows either an "evil motive or reckless indifference to the rights of others." Doc. 232 at 1. Profiting with actual or constructive knowledge that the money came from the selling of a vulnerable child for sex scores of times (while ignoring the missing-child BOLOs identifying her) is the epitome of "malice": "[r]eckless disregard of the law or of a person's legal rights" or "[i]ll will; wickedness of heart." *Malice*, Black's Law Dictionary (12th ed. 2024). Importantly, that's unlike an officer firing a nonlethal taser at a fleeing homeless man (and calling an ambulance afterward) when

nothing in the record suggested "intentional malice" toward that man. *Cf. Edwards*, 169 F.4th at 1285.

Thus, United Inn's misconduct was "exceedingly reprehensible" under each *State Farm* factor, which "warrants a *significant* punitive damages award." *Faulk*, 2026 WL 936026, at *14 (emphasis added); *Cote*, 985 F.3d at 847 ("[R]eprehensibility grows more likely as more factors are present."). Because the reprehensibility of Officer Grubbs' conduct was only "minor," *Edwards* is inapposite, and the Court should not take guidance from it.

## IV.    The 3:1 ratio of punitive-to-compensatory damages is not excessive.

The second guidepost—"the disparity between the harm or potential harm suffered by" J.G. and the punitive damages imposed on United Inn, *Gore*, 517 U.S. at 575—creates no bright-line of unconstitutionality for the ratio of punitive-to-compensatory damages, *see Cote*, 985 F.3d at 848 ("There is no certain ratio at which a constitutionally permissible award is transformed into an unconstitutionally excessive one."). The 3:1 punitive-to-compensatory damages ratio here is smaller than ratios the Eleventh Circuit has upheld. *See, e.g., Faulk*, 2026 WL 936026, at *14 ("The ratio of Faulk's punitive damages to his compensatory damages—7.69 to 1—falls short of the high end of the range that is ordinarily constitutionally permissible." (citation modified)); *Cote*, 985 F.3d at 850 (affirming punitive damages of $20.7 million with punitive-to-compensatory ratio of 3.3-to-1).

10

In *Edwards*, the jury's ratio was 1:1, making it "not presumptively unconstitutional." 169 F.4th at 1285. That's also true of the jury's 3:1 ratio here. Aside from *Edwards*, the Eleventh Circuit has never held that a 3:1 ratio is unconstitutionally excessive (to counsel's knowledge). In the end, *Edwards* treats the 1:1 ratio as "neutral" in its constitutionality analysis. *Id.*

Here, the 3:1 ratio is not "neutral"; it favors upholding the punitive-damages assessment against United Inn because the hotel's misconduct was extremely reprehensible. The Eleventh Circuit has "never held a single-digit ratio unconstitutionally excessive when a defendant's conduct involved a high degree of reprehensibility." *Faulk*, 2026 WL 936026, at *15. And Eleventh Circuit caselaw undermines the idea that due process caps punitive damages at a 1:1 ratio when compensatory damages are "substantial."[6] Indeed, the cases "have made clear that a substantial compensatory damages award may support an even higher punitive damages award when a defendant's misconduct is exceedingly reprehensible." 2026 WL 936026, at *15 (citing cases). Plus, "requiring a 1-to-1 ratio whenever a defendant asserts that the compensatory damages are 'substantial' would impose a 'bright-line ratio' that the Supreme Court has *expressly declined to adopt*." *Cote*, 985 F.3d at 849 (emphasis added) (citation modified).

---

[6] What makes compensatory damages "substantial" can vary by court, context, and damages type. *See, e.g.*, *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071 (7th Cir. 2019) (collecting cases identifying "substantial" damages benchmarks).

*Faulk* put the point plainly: "perusing the Federal Reporter to find smaller or larger punitive damages awards will not answer the question in this [case]: whether *this* award, on *these* facts, is *constitutionally* excessive." 2026 WL 936026, at \*15. Because United Inn's conduct involved a high degree of reprehensibility and severe physical and mental harm to a child, the facts justified the jury's 3:1 ratio.

## V. The punitive damages imposed do not excessively deviate from analogous civil penalties.

The third guidepost—comparing "the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct," *Gore*, 517 U.S. at 583—"*is accorded less weight than the first two guideposts*," *Cote*, 985 F.3d at 850 (emphasis added) (citation modified).[7] In *Edwards*, the court connects the concepts of "constitutionally adequate notice" that conduct could result in a particular punitive damages award and "the available civil and criminal penalties the state provides for such conduct." 169 F.4th at 1286 (citation modified). Here, the appropriate "interests" are the federal government's—not Georgia's—because J.G.'s TVPRA cause of action is federal.

What civil penalties are available for United Inn's misconduct? The obvious

---

[7] In *State Farm*, the Supreme Court omitted *Gore*'s reference to "criminal penalties" in its articulation of the third guidepost, focusing solely on "the civil penalties authorized or imposed in comparable cases." 538 U.S. at 428. While conceding that earlier cases reference criminal penalties, *State Farm* underscored that criminal penalties have "less utility" to determine the maximum constitutional "dollar amount" for punitive damages and should be used with "[g]reat care." *Id.*

answer is punitive damages recoverable under § 1595(a). Congress has imposed no statutory cap or limit on TVPRA punitive damages. *Cf. Faulk*, 2026 WL 936026, at *16 ("We are hesitant to limit recovery under section 1981 when Congress has declined to do so."). TVPRA punitive damages are limited only by the Constitution.

A less obvious answer is civil property forfeiture. Under 18 U.S.C. § 981(a)(1)(C), the federal government can forfeit "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" sex trafficking under § 1591. Seeing that § 981(a)(1)(C) reaches § 1591 requires leaping across title 18: first, § 981(a)(1)(C) to § 1956(c)(7)(A), defining "specified unlawful activity" in the money-laundering statute; next, from § 1956(c)(7)(A) to § 1961(1)(B), defining "racketeering activity" in the federal RICO Act, which includes "sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)" as predicate acts.

What criminal penalties are available for United Inn's misconduct? Possible penalties for corporations convicted of sex trafficking, 18 U.S.C. § 1591, include (1) probation, (2) fines of up to $500,000 for each offense, (3) mandatory restitution, (4) forfeiture of all interests in property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the crime along with any real or personal property traceable to that property whether directly or indirectly, and (5) special assessments. *See* 18 U.S.C. §§ 3551(c), 3571(c), 1593(a), 1594(d) & 3013(a)(2)(B). Perhaps the most important criminal penalty for "notice" purposes in

13

this hotel case is the *mandatory* property-forfeiture penalty. § 1594(d). The value of real property, of course, varies by parcel, location, and myriad other details. But the broad mandatory-forfeiture provision applies equally to the shabbiest no-tell motel in rural Georgia and to the swankiest hotel tower in Manhattan. That law put United Inn on notice that the TVPRA's criminal penalties against corporations could easily exceed $500 million (absent some constitutional limit). *See, e.g.*, Julie Satow, N.Y. Times, *Deal Is Reached to Sell the Plaza Hotel* (May 3, 2018), https://www.ny-times.com/2018/05/03/nyregion/plaza-hotel-sale.html.

What about awards in other TVPRA actions? The lack of comparable punitive-damages assessments plays a significant role in *Edwards*. *See* 169 F.4th at 1286–87 (noting "the award of $20 million here exceeds punitive damages awarded and upheld in comparable cases"). In *Edwards*, the lack of comparators mattered because § 1983 excessive-force claims have had decades to generate punitive-damages comparators.

That is not true for TVPRA civil-beneficiary claims. This was the first TVPRA civil-beneficiary case against a hotel tried to verdict, so no apples-to-apples comparators exist. But other TVPRA cases support the verdict. In January 2026, Judge Tom Thrash awarded a sex-trafficking victim $10 million in compensatory damages and imposed $30 million in punitive damages. *See J.M. v. Gibson*, No. 1:22-cv-4343 (N.D. Ga. Jan. 6, 2026), ECF No. 19.

Congress has chosen not to cap TVPRA punitive damages and has chosen to allow for the civil forfeiture of proceeds of sex trafficking. Congress has also chosen to require as a TVPRA criminal penalty mandatory property forfeiture, which is effectively uncapped. Having done so, United Inn cannot now claim to have had no "notice" that its exceedingly reprehensible misconduct could end with the jury imposing punitive damages totaling three times the compensatory damages.

## CONCLUSION

This case is not like *Edwards*. Two differences matter most: reprehensibility and notice. The reprehensibility of Officer Grubbs' misconduct was "minor" while United Inn's was extreme. And unlike Officer Grubbs, who had no notice, United Inn had notice from uncapped TVPRA civil punitive damages, civil property forfeiture, and mandatory property forfeiture for TVPRA crimes.

The Court should hold that the jury's $30 million punitive-damages verdict did not violate due process—under the facts of *this* case—and deny United Inn's JMOL. Should the Court disagree, J.G. requests that the punitive-damages verdict be reduced to the constitutional limit. And if J.G. must give the amount of that limit, that limit should be no lower than $20 million. And given United Inn's extreme reprehensibility, due process does not require less than a 1:1 ratio—$10 million.

15

Respectfully submitted on April 27, 2026.

ANDERSEN, TATE & CARR, P.C.

/s/ Rory A. Weeks
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, GA 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

FINCH McCRANIE, LLP

/s/ David H. Bouchard
DAVID H. BOUCHARD
david@finchmccranie.com
Georgia Bar No. 712859
OTO U. EKPO
oto@finchmccranie.com
Georgia Bar No. 327088

229 Peachtree Street, NE
Suite 2500
Atlanta, GA 30303
(404) 658-9070 | Telephone
(404) 688-0649 | Facsimile

*Attorneys for Plaintiff*

16

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, GA 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile